**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NANCY MARTIN and MARY BETH BRACKIN,** | ) | |
| **PLAINTIFFS,** | ) | |
| **vs.** | ) | **CASE NO: 1:05CV1172-F** |
| | ) | **JURY DEMAND** |
| **CITY OF DOTHAN; JUDGE ROSE EVANS-GORDON, in her Individual capacity;** | ) | |
| **DEFENDANTS.** | ) | |

**AMENDED COMPLAINT**

## I. PURPOSE OF AMENDMENT

This Amendment is intended to supplant and replace the Plaintiffs' original Complaint. The original pleadings are being amended pursuant the grant provided by Rule 15 A. The original Complaint has been substantially changed and modified to address some of the objections raised by the parties and to correct certain typographical errors and errors of omission.

## II. PRELIMINARY STATEMENT

This is a combined civil rights action brought by a former City Magistrate, Mary Brackin, and, Nancy Martin, former Administrator of the City's Magistrate's Office. Both of these Plaintiffs were terminated from their employment with the City because of their race, white, and for exercising rights protected by the First and Fourteenth Amendments to the U. S. Constitution. In addition to using race as a proxy for her personnel decision-making, Defendant Gordon, has subjected some of the white administrative employees, including Mrs. Brackin, to police state tactics intended to coerce confessions of administrative misconduct in job performance. She has required

these employees, under threat of job termination, to sign consent agreements, agreeing to be interrogated by a special investigative unit of the Dothan Police Department. Finally, one of the Plaintiffs, Mrs. Brackin, was denied minimum requirements of procedural due process during her post termination hearing.

**III. JURISDICTION**

1. This is a civil action for declaratory relief, injunctive relief, and damages and other relief, as authorized by 42 U.S.C. 1983 which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

and; 42 U. S. C. 1988; 28 U.S.C. 1651, 2201, and 2202 , Rules 57 and 65 of the Federal Rules of Civil Procedure, and under state law.

2. The jurisdiction of this Court is invoked under 28 U.S.C. 1331, 1343 (a), and the First and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is also invoked pursuant to the provisions of Title VII, 42 U.S.C. 2000e-5 and 2000e-16(c). The Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367 which are so related to the federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

3. Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b), wherein Plaintiffs reside, where all Defendants regularly conduct business, and where all the wrongful conduct occurred.

4. At all times material to this cause Defendants acted under color of state law, including statutes, ordinances, regulations, customs and usages.

## IV. EXHAUSTION

5. Plaintiff, Martin has exhausted her administrative remedies in accordance with 42 U.S.C. § 2000e-16(c). Plaintiff Brackin has not yet exhausted her administrative remedies in accordance with 42 U.S.C. § 2000e-16(c), however she will shortly exhaust and will seek to amend accordingly. Plaintiff Brackin is not here claiming a violation under Title VII; however she will seek to amend after exhaustion has been completed.

## V. PARTIES

6. Plaintiff, Mary Brackin, (Mrs. Brackin) was first employed into her competitive merit system employment with the City of Dothan, Alabama on May 1, 1992. At all relevant times, Mrs. Brackin was employed as a City Magistrate. In addition to being the subject of disparate race-based discipline, she has been forced to submit to no less than four separate police interrogations designed to coerce confessions from her.

7. Plaintiff, Nancy Martin, (Mrs. Martin) was hired by the City of Dothan, Alabama on January 16, 2004. Mrs. Martin was hired to be the Administrator of the City Magistrate Department. It was understood upon her hire that she was to closely monitor and, where possible, discipline, three white employees of the Magistrates' office. When Mrs. Martin elected to supervise and discipline black employees of the Magistrate office, she was terminated.

8. Defendant City of Dothan (City) is an instrumentality of state government.

9. Defendant, Rose Evans-Gordon (Gordon) was an attorney before she became a Municipal Judge. In both capacities she is presumed to know the law, especially first amendment jurisprudence. Gordon is not being sued in her capacity as Municipal Judge but only in her individual capacity. As will be established upon the Plaintiffs' offer of proof, Defendant Gordon has engaged in a pattern and practice of racially discriminatory discipline and other acts of preferential treatment.. She has disciplined numerous white employees of the Magistrate office while refusing to either discipline the black employees or permit others to discipline them. Further, Gordon has forced certain white employees under her charge to submit to police interrogations and has used the results to justify her decision to sanction them. . Under the sanction of job loss, she has forced staff to submit to the criminal process when they have not been accused of a crime, and have used this process to coerce confessions of administrative misconduct. Finally, Gordon has disciplined and/or terminated the Plaintiffs for exercising rights protected by the First and Fourteenth Amendments to the United States Constitution.

.

## VI. NATURE OF THE ACTION AND RELIEF SOUGHT

10. This is an employment termination claim by two former state employees alleging discriminatory conduct against them because of their race and because they exercised rights protected by the free speech and/or freedom of association clauses of the United States Constitution. This action also challenges the City's policy and practice of forcing its employees to consent to the coercive requirement of submitting to police

interrogations as part Defendant Gordon's administrative investigation of alleged employee misconduct.

11. This also is an action under the common law of the State of Alabama for intentional infliction of emotional distress and for breach of contract.

12. Plaintiffs seek a declaration that the acts of the Defendants intentionally and unlawfully discriminated against them because of their race, and because they spoke out on matters of public concern. They are therefore seeking appropriate injunctive relief, lost pay, compensatory, emotional distress and punitive damages.

13. Plaintiffs additionally, and independent of the claims against the City and its subdivisions, seek appropriate injunctive relief and compensatory and punitive damages against the individual defendant.

## VII. BRACKIN'S FACTS

14. Mrs. Brackin became employed with the City as a City Magistrate on May 1, 1992. She retained this position initially until August 20, 1095 at which time she transferred to the Mobile Police Department as a Secretary. Mrs. Brackin resumed her Magistrate position on April 22, 2001.

15. During her first period of employment as a Magistrate, Mrs. Brackin received satisfactory to exemplary annual evaluations. She received similar markings during her stint with the police force.

16. After her return as City Magistrate Mrs. Brackin continued to receive satisfactory or better annual evaluations.

17. During Mrs. Brackin's first 10 years of public sector employment with the City, not once was she disciplined.

18. The first hint of discipline occurred during the first few months of 2003. Defendant Gordon received word that Mrs. Brackin allegedly had informed a criminal defendant that if he was dissatisfied with his current public defender, he could ask for another.

19. Though the allegation referenced above was purely administrative (and not criminal), Defendant Gordon instructed the City Police Department to conduct a closed-door vigorous interrogation of Mrs. Brackin, flesh out the truth, and report back to her.

20. Mrs. Brackin was instructed that she either had to sign a document consenting to the police interrogation or she would be charged with insubordination—an immediately dischargeable offense.

21. Nothing in the Civil Services Act of Dothan, or the City of Dothan's Personnel Rules and Regulations permits using the City Police to interrogate City Magistrate employees for non-criminal offenses.

22. Mrs. Brackin disputed that she had either directly, or indirectly, disparaged a public defender. She was not told of the results of the interrogation, or what was reported to Defendant Gordon, but there was a cryptic notation of the incident placed in her personnel file. No further disciplinary action was taken.

23. The first official discipline arose from an incident occurring on or about January 7, 2004. On this day, a citizen informed Mrs. Brackin that he had been wrongfully arrested. He asked her who he should see to seek recourse for the arrest.

24. Mrs. Brackin informed this citizen that if he so desired that he could file a claim with the City Clerk. This is a requirement of state law for torts against the City.

25. Informing a citizen of his rights to seek redress of a grievance against the City is a matter of public concern.

26. The City and Defendant Gordon clearly recognize the right to inform citizens of their rights to initiate complaints with the City Clerk For on January 8, 2003, Defendant Gordon issued an interoffice memorandum providing:

INTEROFFICE MEMORANDUM

TO: Judicial Department Personnel
FROM: Rose Evans-Gordon,
Municipal Court Judge
January 8, 2003



DATE:
SUBJ:
Public Relations

It **is of** the utmost import that we as City employees use courtesy and discretion **in our** dealings with the public. The City Manager has stressed the significance of diplomatically referring those citizens making allegations of liability on the part of the City to the City Clerk's "Office without commenting on the possibility of liability.

Again, Mr. Rubin directs that citizens inquiring about reimbursement from the City for perceived liability on the City's part be directed to the City Clerk's Office and that no comment be made regarding the possible liability. Immediately apprise Ms. King in writing of the situation so that appropriate action can be taken .

27. When Defendant Gordon learned that Mrs. Brackin had provided information to the wrongfully-arrested citizen, she summoned Mrs. Brackin to come to her office.

28**.** Again, Defendant Gordon informed Mrs. Brackin that she must sign the consent to interrogation or be found insubordinate.

29. Again, Mrs. Brackin signed the required form, reported to the interrogation room, and was interrogated by two City police officers.

30. Mrs. Brackin was not provided the results of the interrogation until 4 ½ months later.

31. Subsequent to Mrs. Martin assuming the position of Administrator of the Magistrates' Office, Mrs. Martin was instructed by Defendant to draft and execute a Disciplinary Action Report against Mrs. Brackin based upon the January 8th incident. The fact that Mrs. Martin was not employed during the incident, and did not know any of the particulars, was not deemed important by Defendant Gordon.

32. On April 23, 2004, Mrs. Brackin was given a notice that she had committed a major infraction, would be suspended for 10 days without pay and placed on probation for 2 years.

33. Under the City's Personnel Rules and Regulations a second major offense within a two year period will result in job termination.

34. Under the City's Personnel Rules and Regulations the only recourse for a suspension is to seek a hearing before the Appointing Authority. Defendant Gordon is the Appointing Authority for Mrs. Brackin. No further appeal is permissible.

35. Mrs. Brackin was suspended, without pay, on April 26, 2004, for 10 working days.

36. On or around the same time that Defendant Gordon learned that Mrs. Brackin had received a complaint regarding her handling a citizen's complaint,, Ricky Stokes, a local web news reporter lodged a complaint against Lavera McClain, an African-American Magistrate.

37. The complaint against Ms. McClain did not warrant a police interrogation or any disciplinary action.

38. When Mrs. Brackin returned to service, Defendant Gordon asked her if she wanted to resign. She assured her that she did not.

39. Mrs. Brackin, realizing that Defendant Gordon was closely monitoring her behavior, made diligent efforts to obey all rules and regulations of the City.

40. It was known by everyone in the Magistrate's office that Mrs. Brackin and Mrs. .Mary Turner was very close friends. They went to church together, socialized after work together, discussed social and political issues, and frequently corresponded with each other by telephone during non-business hours.

41. No other employee of the Magistrate's office shared the closeness with Mrs. Turner as did Mrs. Brackin.

42. On or about March 3, 2005, while conducting Traffic Court, Defendant Gordon was advised by a defendant appearing before her on a speeding violation, that it was his opinion that the ticket was resolved by the intervention of City Magistrate, Mary Turner. He went on to state that the ticket, originally issued on April 14, 2003, was placed back on the trial docket by Mrs. Turner because he had failed to complete roof repair work on her home.

43. Mrs. Brackin was not involved in the above referenced ticket dispute nor has she ever been accused of such involvement.

44. Defendant Gordon turned the ticket processing matter over to the City Police Department, not the City Prosecutor.

45. On March 10, 2005, prior to Mrs. Turner being formally charged with anything, Defendant Gordon suspended Mrs. Turner. On this same day she issued a memo directing the entire Magistrate staff that they are to have no contact with Mrs. Turner. Simultaneously, Defendant Gordon met with staff and assured them, when the question was asked, that this no-contact directive was absolute, including social contact.

46. Subsequent to Mrs. Turner's suspension, Defendant Gordon assigned most, if not all, of Mrs. Turner's job responsibilities to Mrs. Brackin.

47. Almost simultaneous with Mrs. Turner's suspension, local news reporter, Ricky Stokes ran a story on his web page relative to Mrs. Turner's suspension.

48. Subsequent to Mr. Stokes' article, Defendant Gordon caused the Dothan Police Department to again interrogate Mrs. Brackin. This time she was told by the interrogators that if they had reason to believe that she was being dishonest they would administer a lie detector test and if she refused, it would be the basis for job termination.

49. Among the things that the interrogators asked was whether she had spoken to Mr. Stokes and if she had made any contact with Mrs. Turner. Mrs. Brackin denied any contact with Mr. Stokes but acknowledged one brief business related telephone contact with Mrs. Turner. The contact with Mrs. Turner was limited to job-related question regarding the location of a certain document.

50. The results of the interrogation were given to Defendant Gordon who, without questioning Mrs. Brackin, summarily terminated her employment for "disobeying a directive."

51. A second reason was also tacked on. This reason alleged that Mrs. Brackin had been negligent in carrying out her assigned duties of processing a traffic ticket log during the year 2002..

52. At a subsequent administrative hearing it was reveled that the ticket log indicating that a certain traffic ticket had been voided was in Mrs. Brackin's handwriting. Though she didn't recall the three-year old incident, the officer who wrote the ticket in 2002, Corporal Jon Eric Duhaime acknowledged that he had given permission for the ticket to be voided. Officer's Duhaime's statement of responsibility was communicated to Defendant Gordon prior to her decision to terminate Mrs. Brackin.

53. Mrs. Brackin's forbidden contact with Mrs. Turner was the principle cause

54. As the first step in pursuing an administrative appeal of a decision to terminate a merit system employee, the employee must seek review from the Appointing Authority. On May 2, 2005 Mrs. Brackin appeared before the Appointing Authority, Defendant Gordon, who after a brief hearing affirmed her initial decision.

55. The next step is to appeal the decision to the Personnel Board of the City of Dothan. Mrs. Brackin filed a timely appeal with the Board.

56. Prior to the date set for the hearing, Mrs. Brackin, by counsel, requested transcripts, or the raw tapes of the various interrogation sessions which she was forced to attend. Each of these hearings had been tape- recorded and, possibly transcribed.

57. Defendant City, via Defendant Gordon, had access to and had reviewed the above referenced transcripts. Indeed the City used these transcripts to prepare their defense to Mrs. Brackin's appeal.

58. Counsel for the City advised Mrs. Brackin's counsel, both before and during the hearing, that Mrs. Brackin would not be given access to these transcripts or tapes.

59. Access to the transcripts concerning Mrs. Brackin's statements to the interrogators was critical to the prosecution of Mrs. Brackin's case.

60. Over objection from the City, the Personnel Board, during the June 1, 2005, hearing, refused to permit Mrs. Brackin the ability to raise issues relative to Defendant's discriminatory disciplinary policies and other issues deemed not relevant to the Board's inquiry.

61 Under Alabama law, the Board could only consider whether the Appointing Authority's decision was supported by substantial evidence, not whether it was unconstitutional, violative of constitutional due process, or otherwise discriminatory.

62. On August 19, 2005 the Board, without comment, summarily affirmed the administrative decision of Defendant Gordon to terminate Mrs. Brackin.

63. As a direct result of her unlawful job termination, Mrs. Brackin has been caused to suffer a loss of income, emotional distress, humiliation, forced to sell her home, stress in her marriage, an increase of her husband's medical insurance premiums, and her husband has been caused to suffer humiliation due to the adverse publicity surrounding his wife's job termination.

**VIII. MARTIN'S FACTS**

64**.** During the latter part of 2004, Defendant City was desirous of filling the vacant position for Administrator of the Magistrate office. Mrs. Martin applied for the position.

65. Mrs. Martin was required to sit for two separate interviews; both presided over by Defendant Gordon.

66. During the latter of these interviews, Defendant Gordon informed Mrs. Martin that, if hired, she would be required to keep a close eye on, and closely monitor, three City Magistrates. Mrs. Martin later learned that these three white magistrates included Mrs. Brackin and Mrs. Turner.

67. With the understanding that she would keep a close eye on these three employees, Mrs. Martin was hired on January 16, 2004. Her first day on the job was postponed until February 10.

68 Shortly after Mrs. Martin's hire, a City Magistrate position became available. An interview was set up for a black applicant Tonja. Mrs. Martin requested of Defendant Gordon that she be allowed to participate in the interview since she was the new Administrator of the department. Defendant Gordon declined her offer to participate.

69. Mrs. Martin was later to learn, and now believes that Tonja was a friend of the office only two black Magistrates, who had lobbied for her hire.

70. Defendant Gordon offered the position to Tonja who quickly accepted.

71. Prior to Mrs. Martin's official start date, Defendant Gordon caused the Magistrate's office to relocate to a new facility. There was a shortage of available offices at the new facility. At Defendant's Gordon's direction, Mrs. Turner, one of the more senior Magistrates, was not given an office; instead she was placed in a common area.

72. Immediately after Tonja was hired, Defendant Gordon insisted that Mrs. Martin provide her one of the better offices. This would have required that Nancy displace one of the white Magistrates. Defendant Gordon was insistent, undeterred that

her insistence on giving the least senior employee one of the better offices was causing resentment among the white staff. Mrs. Martin consented to spare no effort in finding Tonja “a better office”.

73. Within a few months of Mrs. Martin’s employment, Defendant Gordon instructed her to write up a suspension on Mrs. Brackin for an alleged incident which occurred before her tenure and of which she knew nothing.

74. Black Magistrate, Lavera McClain’s annual evaluation was due, and Mrs. Martin was instructed to perform Lavera’s evaluation. When Mrs. Martin submitted the completed evaluation she was instructed to make it more favorable. Mrs. Martin was reminded that she was on probation and could be terminated for any reason. The evaluation was changed and made more favorable.

75. From time to time Defendant Gordon would direct Mrs. Martin’s attention to a white Magistrate who had caused a wrongful arrest and instructed her that if it happened again to be sure to write it up.

76. Mrs. Martin has observed and been informed and believes it to be true that on numerous occasions two black Magistrates, Lavera McClain and Eunice Knight have, due to their extreme negligence, caused citizens to be wrongfully arrested. Mrs. Martin brought to Defendant Gordon’s attention on several occasions that Ms. McClain and Ms. Knight were making numerous computer errors on court cases causing the other Magistrates to spend hours correcting the same. Defendant Gordon has never initiated any disciplinary or other adverse administrative action saying simply that “every one make mistakes”.

77. Mrs. Martin has been informed and does believe that, despite being informed on several occasions that Ms. Knight and Ms. McClain have caused the wrongful arrest of citizens, Defendant Gordon has never initiated any disciplinary, or other adverse administrative action, saying simply that “every one make mistakes”.

78. On at least two occasions Mrs. Martin approached Defendant Gordon and informed her that Ms. Knight had committed insubordination, and on both occasions this Defendant forbade her from preparing a disciplinary action notice or taking any other steps to discipline this employee.

79. These instances were brought to the attention of the Personnel Director, Kai Davis, who opined that Eunice should be written up, however since Defendant Gordon had forbade it Mrs. Martin took no further action.

80. On at least one occasion Mrs. Martin approached Director Davis and expressed her concern that Judge Gordon was showing racial preference among the Magistrates. Mrs. Davis acknowledged that she had been made aware of the problem by other staff members. Director Davis instructed Mrs. Brackin to keep written notes so that specific instances could be documented. The Director committed to do an internal investigation. No internal investigation was conducted.

81. During her short tenure, Mrs. Martin began to observe that one particular bonding company,” Get Out Bonding” appeared to get preferential treatment from Defendant Gordon. Defendants bonded by this outfit appeared to get lesser sentences and/or have their charges dropped with more frequency than other bonders. Further, upon no show court appearances, Get Out bonding was frequently not required to pay their forfeitures.

82. When Mrs. Martin brought to Judge Gordon's attention her concern about the favorable treatment received by Get Out Bonding, a black owned bonding company, Defendant Gordon became visibly upset, angry and suggested that it was not Mrs. Martin's concern.

83. Noticing that Ms. McClain and Ms. Knight were spending a considerable amount of time with personal telephone calls, socializing with each other, and socializing with Defendant Gordon; on September 24, 2004, Mrs. Martin gave them notice of her intent to add a few more assigned tasks. This resulted in a memo from both of these Magistrates protesting the additional job assignments.

84.. Ms McClain's and Ms. Knight's memos were copied to Defendant Gordon who intervened immediately, and by memo dated September 28, 2004, instructed Mrs. Martin to cease and desist from making any job assignment until she advised her otherwise.

85. Making job responsibilities was a primary function of Mrs. Martin's job.

86. Subsequent to Defendant Gordon's September 28th memos, Mrs. Martin met with Defendant Gordon and informed her that when she makes job assignments respecting the white Magistrates, there is no problem. However, when she attempts to make assignments with respect to the black Magistrates, Gordon comes to their defense. Mrs. Martin told Defendant Gordon that she needed to be able to supervise all of the Magistrates, not just the white ones. Defendant Gordon became visibly upset, stated that she was "tired of all this" and walked out.

87. After the meeting, Defendant Gordon stopped returning Mrs. Martin's calls and instead instructed her assistant to run interference on all communication.

88.. On October 12, 2004, Defendant Gordon served upon Mrs. Martin a Disciplinary Action Report indicating that she was being discharged for unsatisfactory work performance during the probationary period.

89. The only reasons advanced for Defendant Gordon's "unsatisfactory work performance" were some cryptic, pretextual conclusions which were not supported by a narrative.

90 According to the City's well-established policy, a person hired into the position of Administrator of the Magistrates must have a working test period of 12 months. During this test period, the Appointing Authority is required to do a quarterly evaluation every three months.

91. Mrs. Martin received one favorable evaluation after her third month of employment but received no other evaluations until her discharge.

92. The City's Personnel Rules and Regulations at Sec. 2-80 permits discharge of an employee during the employee's working test period but **only** if:

> "…inadequate job progress and/or deficiencies (have been) pointed out to the employee and the employee (has been) given the opportunity to improve and/or correct the inadequacies and/or deficiencies before being removed from the position"

93. At no time, in writing or otherwise, did Defendant Gordon discuss, point out or give Mrs. Martin an opportunity, reasonable or otherwise, to correct perceived deficiencies.

94.. As a direct and proximate result of her wrongful termination, Mrs. Martin has been caused to suffer and has suffered a loss of income, loss of health care coverage, humiliation, stresses in her marriage, extreme emotional distress, and loss of reputation.

## IX. BRACKIN'S CLAIMS

**Count One**
**Violation of the First Amendment Freedom of Speech Clause of the United States Constitution**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

95. On or about January 8, Mrs. Brackin instructed a citizen where he could go to submit a claim against the City.

96. Such instruction is a matter of public concern even if it was "calculated to disclose wrongdoing, inefficiency, or other malfeasance on the part of governmental officials in the conduct or their official duties."

97. Mrs. Brackin's free speech interest far outweighed any possible interest in the City in promoting the efficiency of public services.

98. The advice given by Mrs. Brackin was the sole reason for her April 23, 2004, suspension and 2-year probation

99. The acts described immediately above violated Mrs. Brackin's rights protected by the First and Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**Count Two**
**Violation of the First Amendment Freedom of Speech Clause of the United States Constitution**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

100. Defendant Gordon on March 10, 2005 issued a memo and followed the memo with a clarifying speech which was intended to be a prior restraint upon Mrs.

Brackin to have no contact with Mrs. Turner for an indefinite period of time during a police investigation. This prior restraint prohibited both protected and unprotected speech.

101. Defendant Gordon's March 10 prior restraint mandate was overbroad and not narrowly tailored to achieve any legitimate governmental interest.

102. As a direct and proximate result of this mandate Mrs. Brackin was caused to lose a valuable property right, her government job.

103. The acts described immediately above violated Mrs. Brackin's rights protected by the First and Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially..

**Count Three**
**Violation of the First Amendment Freedom of Association**
**Clause of the United States Constitution**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

104. Defendant Gordon on March 10, 2005 issued a memo and followed the memo with a clarifying speech which was intended to be a prior restraint upon Mrs. Brackin to have no contact with Mrs. Turner for an indefinite period of time. This prior restraint prohibited both protected and unprotected speech.

105. Defendant Gordon's March 10 prior restraint mandate was overbroad and not narrowly tailored to achieve any legitimate governmental end.

106. At the time that this prior restraint was issued Defendant Gordon was well aware that Mrs. Turner and Mrs. Brackin were very close friends who frequently socialized after work hours.

107. As a direct and proximate result of this mandate Mrs. Brackin was caused to lose a valuable property right, her government job.

108. The acts described immediately above violated Mrs. Brackin's rights protected by the First and Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. . This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**Count Four**
**Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

109. On no less than 4 separate occasions, Defendant Gordon has used her influence as a sitting Municipal Judge to solicit Defendant Dothan Police Department to investigate and interrogate Mrs. Brackin for non-criminal alleged job infractions. Mrs. Brackin was required to submit to this criminal process even thought she had not committed a crime, or been accused of committing a crime.

110. On at least two of these occasions Mrs. Brackin has been caused to suffer adverse job consequences as a direct result of these interrogations.

111. No personal policy rule, regulation or prior practice permits such intrusive and coercive interrogation of municipal city employees.

112. The acts described immediately above violated Mrs. Brackin's rights protected by the Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

## Count Five

**Violation of the Substantive Due Process requirement of the Fourteenth Amendment to the United States Constitution.**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

113. On no less than 4 separate occasions Defendant Gordon has used her influence as a sitting Municipal Judge to solicit Defendant Dothan Police Department to investigate and interrogate Mrs. Brackin for non-criminal alleged job infractions. Mrs. Brackin was required to submit to this criminal process even thought she had not committed a crime, or been accused of committing a crime.

114. On at least two of these occasions Mrs. Brackin has been caused to suffer adverse job consequences as a direct result of these interrogations.

115. No personal policy rule, regulation or prior practice permits such intrusive and coercive interrogation of municipal city employees.

116. The acts described immediately above violated Mrs. Brackin's rights protected by the Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**Count Six**
**Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

117. Mrs. Brackin was forced to submit to three separate police interrogations. Each of these interrogations was recorded. In addition, other witnesses were interviewed and their statements recorded.

118. The results of Mrs. Brackin's interrogations and the statements were used by Defendant Gordon in support of her decision to suspend Mrs. Brackin and, ultimately, to terminate her employment.

119. The City's attorney had access to the transcripts of Mrs. Gordon and the witnesses during the Due Process hearing before the Personnel Board. These transcripts were consulted during the City counsel's case-in-chief and during his cross-examination of Mrs. Brackin's witnesses.

120. As permitted by the City's Personnel Rules and Regulations, Mrs. Brackin was entitled to access to the transcripts and other documents relative to her case.

121. Despite Mrs. Brackin's counsel written request for specific documents including the transcripts the City refused to release the documents.

122. The acts described immediately above violated Mrs. Brackin's rights protected by the Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought only against Defendant City officially.

**Count Seven**
**Violation of the Substantive Due Process requirement of the Fourteenth Amendment to the United States Constitution.**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

123. Defendant Gordon terminated Mrs. Brackin for making a single contact with her friend and coworker in violation of this Defendant's directive.

124. The termination based upon a single telephone call did not implicate a legitimate governmental interest and was advanced for an improper motive, to deprive Mrs. Brackin of her job.

125. This act constituted a substantive due process violation because it resulted in the deprivation of a property interest for an improper motive, by means that were pretextual, arbitrary and capricious, unrelated to a proper reason for the termination, and without any rational basis.

126. The acts described immediately above violated Mrs. Brackin's rights protected by the Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**Count Eight**
**Racial Discrimination**
**42 U.S.C § 1983**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

127. This claim is authorized and instituted pursuant to the provisions of 42 U.S.C. § 1983, for relief based upon the unlawful employment practices of the above-named Defendant City. Specifically, Mrs. Brackin complains of this Defendants' violation of § 1983's prohibition against discrimination in employment based, in whole or

in part, upon an employee's race as made applicable by the Equal Protection Clause of the Fourteenth Amendment. .

128. During her employment with the City of Dothan, Mrs. Brackin was a member of a class protected under equal protection against raced based discrimination by her employer, or by its supervisory personnel.

129. Mrs. Brackin was and remains a member of a protected group. She was qualified to hold the position that she had, and her job performance was satisfactory. She suffered an adverse employment action. There are circumstances which give rise to an inference that racial discrimination played a part in the City’s decision to terminate her employment.

130. The reason given for terminating Mrs. Brackin, her making a telephone call to a co-worker after being told not to, was a pretext for unlawful discrimination, which is evidenced by the fact that Mrs. Brackin made the telephone call as a necessary function of her job and the call did not adversely effect a legitimate interest of her employer, the City of Dothan.

131. At all times relevant, Defendant City knew that the discriminatory conduct complained of herein was without cause as Mrs. Brackin had consistently satisfied and/or exceeded all the requirements of the position that she held.

132. As a result of Defendant’s' employment policies, procedures and practices, Mrs. Brackin was unjustly and discriminatorily deprived of equal employment opportunities because of her race, white.

133. As a further result of the City’s supervisory employee’s above stated actions, Mrs. Brackin has been, is being, and will be deprived of income in the form of

wages and prospective retirement benefits, and other benefits, promotion opportunities, and job assignments due to her as an employee, but denied because of her race, in an amount to be proven at trial.

134. The City's supervisory employee's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Mrs. Brackin.

135. Furthermore, the City intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Mrs. Brackin, contrary to her federally- protected rights as guaranteed to her under 42 U.S.C. § 1983.

136. The intentional and discriminatory conduct of the City's supervisory employee complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous, warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to this Defendant and others who would commit similar illegal acts.

137. Since the City engaged in discriminatory employment practices with malice or with reckless indifference to Mrs. Brackin's' federally-protected rights, she is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under 42 U.S.C. § 1983. This Count is brought only against Defendant City officially.

**Count Nine**
**False Imprisonment, State Claim**

Paragraphs 14 through 63 are incorporated herein by reference and made a part hereof.

138. False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty. For there to be a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.

139. Defendant Gordon's act of coercing Mrs. Brackin under the penalty of job loss to submit to a police interrogation in an interrogation room where she did not want to be, and was not free to leave without sanction, satisfies the tort of false imprisonment.

## IX. MARTIN'S CLAIMS

**Count Ten**
**<u>Violation of the First Amendment Freedom of Speech</u>**
**<u>Clause of the United States Constitution</u>**

Paragraphs641 through 94 are incorporated herein by reference and made a part hereof.

140. Near the end of her employment, Mrs. Martin expressed her concern about whether Defendant Gordon was showing favoritism to one of the Bonding outfits that operate in the City and service the bond requirements of defendants who appear before Dothan Municipal Court..

141. Such speech is a matter of public concern even if it was "calculated to disclose wrongdoing, inefficiency, or other malfeasance on the part of governmental officials in the conduct or their official duties."

142. Mrs. Martin's free speech interest far outweighed any possible interest in the City in promoting the efficiency of public services.

143. The questions raised by Mrs. Martin were among the reasons that Defendant Gordon terminated her during her working test period.

144. The acts described immediately above violated Mrs. Martin's rights protected by the First and Fourteenth Amendment to the United States Constitution for which 42 U. S. C. 1983 provides a remedy. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**Count Eleven**
**Racial Discrimination**
**Title VII**

Paragraphs 64 through 94 are incorporated herein by reference and made a part hereof.

145. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants City . Specifically, Mrs. Martin complains of City's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race. The City's supervisory employee's practice of terminating white employees, including two prior Administrators and several white Magistrates, while shielding black employees from discipline and terminating Mrs. Martin for attempting to do so has effectively deprived Mrs. Martin of employment opportunities as are enjoyed by similarly-situated blacks.

146. During her employment with the City of Dothan, Mrs. Martin was a member of a class protected under Title VII against raced based discrimination by her employer, or by its supervisory personnel.

147. Mrs. Martin was and remains a member of a protected group. She was qualified to hold the position that she had, and her job performance was satisfactory. She suffered an adverse employment action. There are circumstances which give rise to an inference that racial discrimination played a part in the City's decision to terminate her employment.

148. The reason given for terminating Mrs. Martin, poor job performance, was a pretext for unlawful discrimination, which is evident by the fact that the only prior evaluation Mrs. Martin received from the City's supervisory employee was satisfactory and she was fired shortly after she attempted to assign new duties to certain black employees.

149. At all times relevant, the City knew that the discriminatory conduct complained of herein was without cause as Mrs. Martin had consistently satisfied and/or exceeded all the requirements of the position that she held.

150. As a result of City's employment policies, procedures and practices, Mrs. Martin was unjustly and discriminatorily deprived of equal employment opportunities because of her race, white.

151. As a further result of the City's supervisory employee's above stated actions, Mrs. Martin has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities

and job assignments due to her as an employee, but denied because of her race, in an amount to be proven at trial.

152. The above-named City's supervisory employee's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Mrs. Martin.

153. Furthermore, the City's supervisory employee intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Mrs. Martin, contrary to her federally-protected rights as guaranteed to her under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §(s) 2000e et seq.

154. The intentional and discriminatory conduct of the City's supervisory employee complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to this Defendant and others who would commit similar illegal acts.

155. Since the City's supervisory employee engaged in discriminatory employment practices with malice or with reckless indifference to Mrs. Martin' federally-protected rights, she is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §(s) 2000e et seq., as amended. This Count is brought only against Defendant City officially.

**Count Twelve**
**Racial Discrimination**
**42 U.S.C § 1983**

Paragraphs 64 through 94 are incorporated herein by reference and made a part hereof.

156. This claim is authorized and instituted pursuant to the provisions of 42 U.S.C. § 1983, for relief based upon the unlawful employment practices of the above-named Defendant City. Specifically, Mrs. Martin complains of this Defendants' violation of § 1983's prohibition against discrimination in employment based, in whole or in part, upon an employee's race via application of the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution..

157. During her employment with the City of Dothan, Mrs. Martin was a member of a class protected under § 1983 against raced-based discrimination by her employer, or by its supervisory personnel.

158. Mrs. Martin was and remains a member of a protected group. She was qualified to hold the position that she had, and her job performance was satisfactory. She suffered an adverse employment action. There are circumstances which give rise to an inference that racial discrimination played a part in the City's supervisory employee's decision to terminate her employment.

159. The reason given for terminating Mrs. Martin, poor job performance, was a pretext for unlawful discrimination, which is evident by the fact that the only prior evaluation Mrs. Martin received from Defendant Gordon was satisfactory, and she was fired shortly after she attempted to assign new duties to certain black employees.

160. At all times relevant, City knew that the discriminatory conduct complained of herein was without cause as Mrs. Martin had consistently satisfied and/or exceeded all the requirements of the position that she held.

161. As a result of City's employment policies, procedures and practices, Mrs. Martin was unjustly and discriminatorily deprived of equal employment opportunities because of her race, white.

162. As a further result of the City's supervisory employee's above stated actions, Mrs. Martin has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to her as an employee, but denied because of her race, in an amount to be proven at trial.

163. The City's supervisory employee's conduct was a direct and proximate cause of the injuries, damages and harm suffered by Mrs. Martin.

164. Furthermore, the City's supervisory employee intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Mrs. Martin, contrary to her federally-protected rights as guaranteed to her under 42 U.S.C. § 1983.

165. The intentional and discriminatory conduct of City's supervisory employee complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous, warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to this Defendant and others who would commit similar illegal acts.

166. Since a City supervisory employee engaged in discriminatory employment practices with malice or with reckless indifference to Mrs. Martin' federally-protected rights, she is entitled to punitive/exemplary damages in addition to

compensatory damages and other remedies available under 42 U.S.C. § 1983. This Count is brought only against Defendant City officially.

**Count Thirteen**
**Negligence; State Claim**

Paragraphs 64 through 94 are incorporated herein by reference and made a part hereof.

167.. Defendant Gordon owed Mrs. Martin, as a probationary employee pursuant to the City's Personnel Rules and Regulations Sec. 2-80, a duty to point out her deficiencies and provide her a reasonable opportunity to cure those deficiencies.

168. Defendant Gordon breached her duty of care when she failed to provide Mrs. Martin a reasonable opportunity to cure any deficiencies noted so that she could become a productive member of the work force.

169. As a direct and proximate result of Defendant Gordon's breach of duty, Mrs. Martin was caused to suffer injury in the form of a loss of income and other privileges and benefits of employment.

170. For the above stated reasons, Mrs. Martin is entitled to recover damages attributed to this Defendant's negligence. This Count is brought against Defendant Gordon in her individual capacity and against Defendant City officially.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs pray that Defendants be cited to appear and answer in this action, and that upon the evidence, finding of the jury, and applicable law, the Court enter judgment:

A. Declaring that the actions of the Defendants set forth above were unconstitutional and illegal;

B. Declaring unlawful Defendant Gordon's and the Police Department's practice of subjecting, under the sanction of job termination, employees, who have not been accused of a criminal offense, to police interrogations;

C. Directing Defendant Gordon and the City, by appropriate injunctive order(s), to eliminate such policy and practice;

D. Directing Defendant City to restore the Plaintiffs to their prior positions with all the emollients and benefits of such position including full seniority, retirement benefits as if there had never been a separation in their employment. If such prior employment cannot, as of the date of the Court's Judgment, be restored, and then award them front- pay until such time as they may be restored to their prior positions;

E. Directing the Defendants to take specific corrective action for the discrimination against the Plaintiffs which occurred in the past and protecting Plaintiffs from further acts of discrimination and retaliation in the future;

F. Awarding Plaintiffs back pay, compensatory damages, emotional distress damages, and punitive damages where permitted by law and against those permitted by law;

G. Determining and awarding a reasonable attorney's fee and the cost and expenses of this action to Plaintiffs and their counsel against the Defendants and each of

them, and providing interim payment in the case of an appeal of the judgment by the Defendants or any one of them;

H. Including prejudgment and post judgment interest as provided by law on both the Plaintiffs' damages and the attorney fee award; and

I. Award such other and further relief to which the Plaintiffs or any one of them may be entitled in law, or in equity.

**DEMAND FOR JURY TRIAL**

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 28th day of February 2006

s/Ishmael Jaffree________________
Ishmael Jaffree (1791 F36I)
951 Government St. Bldg.
Ste. 415
Mobile Alabama 36604
251-694-9090 Fax 694-9090
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2006 electronically served a copy of the foregoing Amended Complaint with the Clerk using the CM/ECF system which will send notification to counsel who have entered an appearance on behalf of the Defendants.

s/ Ishmael Jaffree___
Ishmael Jaffree