IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NANCY MARTIN and, ) | |
| MARY BETH BRACKIN, ) | |
| PLAINTIFFS, ) | CASE NO. 1:05-CV-1172-MEF |
| Vs. ) | |
| CITY OF DOTHAN; JUDGE ROSE ) | |
| EVANS-GORDON, | |
| DEFENDANTS | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS CERTAIN COUNTS**

The Defendants desire dismissal, on the pleadings, of certain counts included in Plaintiffs' Complaint. Understandably, the law imposes an exacting standard before a complaint can be dismissed on the pleadings. All factual allegations in the complaint must be accepted as true, and all reasonable inferences arising from those facts are construed in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).Motions to dismiss on the pleadings will only be granted when, and if, the moving party demonstrates, beyond doubt, that the plaintiff can prove no set of facts in support of their claim which would entitle them to relief. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

1

**A: COUNT ONE**

As best as can be determined, Defendants' challenge to Count One of Plaintiffs' Complaint is limited to a claim that a suspension, followed by a two year probationary period, is not an interest in property, or liberty, which will trigger the Due Process Clause. Not being thus protected, the Plaintiffs can not advance their claim under 42 U.S. C. § 1983.

Count One seeks redress for a Free Speech violation made applicable to the states via the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Mrs. Brackin, on April 23, 2004, was suspended without pay and placed on 2 year probation. This action was imposed because Mrs. Brackin instructed a citizen where to go ( to the City Clerk's office) to file a claim if they thought that they had a claim against the City.

It has long been recognized in this Circuit that governmental employment may not be conditioned upon the relinquishment of constitutional rights. *Wilson v. Taylor,* 658 F.2d 1021, 1027 (5th Cir. 1981).  It is equally true that a state may not discipline an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech. *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). As the Supreme Court has stated, "the theory that public employment, which may be denied altogether, may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents*, 385 U.S. 589, 605-06, 87 S. Ct. 675, 684, 17 L. Ed. 2d 629 (1967). This rule applies to public employees who exercise

2

their first amendment rights of free speech: "every public employee is largely free to express his views, in public or private orally or in writing." *Abood v. Detroit Board of Education*, 431 U.S. 209, 230, 97 S. Ct. 1782, 1797, 52 L. Ed. 2d 261 (1977) (fn8).

Because the Defendants, in their Count One challenge, have not made a frontal assault on Mrs. Brackin's Free Speech claims , we will not discuss here whether the speech made the subject of the discipline was in fact "protected speech". The Defendants appear to suggest that regardless of the constitutional provision at issue, mere suspension, followed by probation, is not protected. No authority is offered in support this position. The Defendants argument, however, is attached to the Due Process Clause.

As stated above, Plaintiffs' Count One is not premised upon a procedural or substantive due process analysis. However, if it was, Mrs. Brackin would still have a protectable property interest in her employment. A person's interest in a benefit is 'property' for due process purposes if there are such rules or mutually explicit understandings that support their claim of entitlement and the deprivation of which will entitle them to a hearing. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699, 33 L. Ed. 2d 570 (1972). In *Bishop v. Wood*, 426 U.S. 341, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976), the court considered whether a police officer's employment status was a protected property interest, and its opinion reaffirmed the Sindermann language by stating that a "property interest . . . can, of course, be created by ordinance, or by implied contract." Id. at 344, 96 S. Ct. at 2077. *Bishop*

3

explained, however, that "the sufficiency of the claim of entitlement must be decided by reference to state law." Id.

In Alabama it is clear that "an employee who has established the right to permanent employment pursuant to a civil service statute . . . has as 'property right' in his job which may not be taken away or altered without due process of law. *Berryman v. Civil Service Bd. Of Muscle Shoals* 571 So.2d 1122, 1124 (Ala. Civ. App. 1990).

Dothan's Civil Service Act, Section 22 provides:

> **Section 22. SUSPENSIONS**. An appointing Authority may, from time to time, suspend an employee without pay or other compensation, as punishment for improper behavior, but no employee may be suspended for 3 period or periods within the aggregate of more that [sic] 30 days in any year's service. A suspension may be effected by serving written notice upon the employee together with a statement clearly setting forth the causes thereof; a copy of which must be forthwith mailed or delivered to the Director. The suspended employee may file with the Board and the Appointing Authority a written answer or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record and the Board may, for cause shown, set aside such suspension order.
>
> Section 1. Sections 3, 6, 8, i3, 14,19, 21, 23, 24, 26, and 31 of "the Civil Service Act of Dothan", Act No. 273, S. 292, of the 1947 Regular Session (Local Acts of Alabama, 1947, p. 196)

The relevant implementing Personnel Rules and Regulations provide, in pertinent part:

> **Sec. 3-30.** **(4)** Final Warning and One To Twenty Days Suspension Without Pay: This is the disciplinary action that follows violation of any offense classified as "Major." A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV). The supervisor will meet in a formal discussion with the

4

>employee explaining the exact offences(s) the employee violated and the seriousness and consequences of the offences(s). The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem. The supervisor shall explain to the employee that the violation of any further "Major Offense" within two years from the date of record of this offense is grounds for discharge. At the time of the meeting, the supervisor will have completed the Personnel form #147 report documenting all points discussed in the formal meeting. He signs the Form and gives a copy to the employee. The original is forwarded to the Personnel Department, which becomes a part of the employee's personnel file. (PBA 5/9/94)

As did the statute under review in *Hatcher v. Board of Public Education and Orphanage for Bibb County*, 809 F.2d 1546 (11th Cir. 02/17/1987)] Alabama statutes give rise to a legitimate claim of entitlement, and the due process clause applies. Mrs. Brackin clearly qualifies as a classified Municipal Magistrate under the Civil Service Act and as such her rights as a covered government employee extended to not being suspended, or placed on probation except by the specified procedures and for the specified reasons.

If the Defendants' contention bottoms on the theory that suspensions and probations do not trigger due process concerns because they are not property or liberty interest, then the cases cited by them do not aid in this analysis. They cite *Paul v. Davis* 424 U.S. 693, 701, 96 S. Ct. 1155, 1160 47 L. Ed. 2d 405 (1976). In Davis a photograph of the plaintiff bearing his name was included in a "flyer" of "active shoplifters," After his arrest and the dismissal of the charge, he brought a due process claim based upon the adverse effects the flyer had on his reputation. Citing Kentucky law, the Court ruled that Defendants' action in distributing the

5

flyer did not deprive respondent of any "liberty" or "property" rights secured against state deprivation by the Due Process Clause of the Fourteenth Amendment.

Neither the facts of Davis nor the case law derived there from offer any support for Defendants' challenge to Count One of the Complaint. Davis did not balance limited deprivation of property verse total deprivation. Nor did the case address adverse disciplinary action premised upon the scope of a free speech analysis.

The second case offered by Defendants similarly provides no aid to their argument. *Brescher v. Stein,* 904 F.2d 572 (11th Cir. 06/27/1990) involved a plaintiff's arrest for renting a structure used for prostitution. The plaintiff brought an action containing two civil rights claims under Title 42, Section 1983, which alleged that Plaintiff was illegally arrested and defamed by the defendant's statements to the media at the arrest scene. The Court, in reversing a jury verdict in favor of the plaintiff, stated that in the defamation context there must be a dismissal from a job or in the termination or significant alteration of some other legal right or status before defamation will suffice to constitute a deprivation sufficient to state a claim under section 1983. Id at 583.

The job dismissal language in Stein was dicta. The case involved a local businessman seeking recovery for defamation. This was not a First Amendment case which is subject to a different legal standard than state tort defamation cases. Neither this case nor Davis, supra, cast doubt on the viability of Mrs. Brackin's Count One Free Speech claim. There have been several cases where the Courts

6

found no difficulty in applying the Due Process Clause to job suspensions. See for example; *Mullins v. City of Huntsville* 785 F.2d 1529 (11th Cir 1986) (10 day suspension); *Green v. Hill* 954 F.2d 694 (11Cir. 1992) (12 day suspension) and *Scala v. City of Winter Park*, 116 F.3d 1396 (11th Cir. 07/10/1997) (3 day suspension).

No cognizable basis has been advance for the dismissal of Count One and Defendants' Motion to Dismiss, as to this count, must be denied.

**B: COUNTS TWO AND THREE**

Defendants challenged Counts Two and Three of Plaintiffs' Complaint suggesting that there are insufficient facts to demonstrate a public concern. Count Two alleged an unlawful prior restraint on all speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Count Three alleged an unlawful prior restraint on association, in violation of the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs do not dispute the general test fashioned by the Supreme Court in determining what speech is protected. The general standard has recently been articulated again in *Cook v. Gwinnett County School, 414 F.3d 1313 (11th Cir. 2005)*;

> To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. Bryson, 888 F.2d at 1565-66. If an

7

> employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech. Id. The first two steps are questions of law; the final two steps are "questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech." *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1219-20 (11th Cir. 2001).
>
> Id. at 1318.

Mrs. Brackin's case does not fit neatly under the general test. What the Judge, acting in her capacity as Appointing Authority, prohibited was all contact with a co-worker. This mandate restrained all speech and all association. A state official can not prohibit all speech. *United States v. Corrigan*, 144 F.3d 763 (11th Cir. 1998). A state actor's prohibition on all speech, or other communication, is a prior restraint on future speech in violation of the First and Fourteenth Amendments to the Constitution. *Saia v. New York*, 334 U.S. 558, 559-60, 68 S.Ct. 1148, 1149 (1948).

Defendant Gordon expressed no concerned of the nature of the speech which violated her prior restrain mandate. She was incensed that speech had occurred at all. Indeed, even under traditional analysis of protected speech; Mrs. Brackin's speech was protected. Her speech was initiated to enable her to fashion an appropriate information letter to the public informing them of their rights and responsibilities in relation to Municipal Court procedures. The Defendants have

8

not articulated a compelling need to restraint this speech or that they had a legitimate interest in such restraint.

Prior restraints on speech prohibit, or censors, speech before it can take place. *Alexander v. United States*, 509 U.S. 544, 553, 113 S. Ct. 2766, 2773 (1993). Classic prior restraints have involved judge-issued injunctions against the publication of certain information. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556-58, 96 S. Ct. 2791, 2801-03 (1976). Prior restraints have also been found where the government has unbridled discretion to limit access to a particular public forum. See for example, *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) (finding prior restraint where a National Park Service licensing scheme gave park official unlimited power to grant or deny permits to protest in the park). The principles enunciated in these cases apply with equal force where, as here, a state official, under the sanction of job termination, instructs an employee to not speak with a co-worker. It is no defense that the prior restraint was designed to protect the integrity of a police investigation.

A content-based restriction on speech must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Perry Educational Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). The state may enforce restrictions of the time, place and manner of expression, as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry*, 460 U.S. at 45, 103 S. Ct. at 954.

Here, Defendant Gordon's prohibition was sweeping and absolute, leaving no room for or tolerance of "alternate channels of communication". Nor was it narrowly tailored to serve a legitimate governmental end. Assuming arguendo that Defendant Gordon had a legitimate interest in maintaining the integrity of another department's investigation of a single speeding ticket, her sweeping restraint on contact was not the least restrictive means of achieving this objective A less restrictive means may have been simply to instruct staff to not discuss anything that they know about the investigation with the suspect. Given the presumption of innocence, and the right to call witnesses on one's behalf, it is doubtful that this "least restrictive means" would have met constitutional muster.

There may not have been a lawful manner for the state here to prohibit all contact with Mrs. Turner during a police investigation. . In order for the state to show that the prohibition on speech sought here was narrowly tailored, they must demonstrate that it did not "unnecessarily circumscrib[e] protected expression." *Brown v. Hartlage*, 456 U.S. 45, 54 (1982). This they have not done. This they can not do.

Count Three, in spite sharing nearly identical language with Count Two, addresses a different right which has been infringed. Implicit in the restraint upon speech is the restraint upon association. This is especially true here, where the party signaled for censure was a good friend and confidant of Mrs. Brackin. The Defendants have not made a direct attack on Mrs. Brackin's association claims, choosing instead to list these claims under the rubric of their Free Speech

defenses. However, restrains upon the right to freely associate is even more circumscribed that restraints upon free speech.

With respect to the right to freedom of association the Supreme Court has noted:

> Our decisions have referred to constitutionally protected 'freedom of association' in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."
>
> *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984).

The association prohibition is no longer tied to the freedom to join groups or otherwise associate for the purpose of political discourse. A case in point is *Wilson v. Taylor*, 733 F.2d 1539 (11th Cir. 1984). *Wilson* involved a police officer who was fired for refusing to discontinue dating a woman whose father was a convicted felon. The *Wilson* court stated that freedom of association is no longer merely tied to the advancing of political beliefs. "By limiting the power of the states to interfere with freedom of speech and freedom of association, the

Fourteenth Amendment protects all persons no matter what their views or means of expression. It is too late in the day to doubt that this freedom of association extends only to political or conventional associations and not to the social or the unorthodox." Id at 1544.

The *Wilson* court additionally stated that the freedom of association now includes more than associations for the purpose of advancing shared beliefs and, in fact, includes the right to simply meet with others. "More recent cases have properly recognized that the First Amendment also applies to social and personal associations, including those which do not purport to express and advocate ideas." *McKenna v. Peekskill Housing Authority*, 497 F. Supp. 1217, 1221 (S.D.N.Y. 1980) (as quoted in *Wilson,* 733 F.2d at 1544).

The Defendants have not stated a reason justifying the prohibition of Mrs. Brackin from associating with Mrs. Turner. If they advance the same reasoning justifying the restraint upon speech—maintaining the integrity of a police investigation—they must fail for the same reasons, overbroad and not narrowly tailored to a legitimate governmental end. Further, just as an uncharged suspect has a due process right to contact a potential witness in their potential defense, a potential witness has a right to offer testimony in defense of a potential defendant. Defendant Gordon's prior restrain on contacts frustrated both citizens' rights.

Having raised no compelling justification for dismissal of Counts Two and Three, the Defendants' Motion to Dismiss as to these counts should be denied.

**C: COUNT SEVEN**

Defendants challenge to Count Seven is premised upon an allegation that the substantive provisions of the Due Process Clause do not address employment terminations carried out for arbitrary and capricious reasons, or for reasons otherwise prohibited by state law. This argument is correct as far as it goes.

The seminal case in the Eleventh Circuit on the scope of the substantive provisions of the Due Process Clause is *McKinney v. Pate* 20 F.3d 1550 (11th Cir. 05/05/1994). In reversing a prior line of 11th Circuit jurisprudence, which had held that substantive due process did include arbitrary and capricious governmental job loss, the Court cited the following Supreme Court history:

> The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937).(fn7) The Supreme Court has deemed that most--but not all--of the rights enumerated in the Bill of Rights are fundamental; certain unenumerated rights (for instance, the penumbral right of privacy, see *Planned Parenthood v. Casey*, ___ U.S. ___, ___, 120 L. Ed. 2d 674, 112 S. Ct. 2791, 2807 (1992)) also merit protection. It is in this framework that fundamental rights are incorporated against the states. (fn8) A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, ___ U.S. ___, ___, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986)).

Id at 1556.

The Court went further to observe:

> Substantive due process rights differ from their procedural counterparts in a second, important fashion: the manner in which a violation of the right occurs. A violation of a substantive due process right, for instance, is complete when it occurs; hence, the availability vel non of an adequate post-deprivation state remedy is irrelevant. Because the right is "fundamental," no amount of process can justify its infringement

Id at 1556-57.

Finally, the Court acknowledged

> In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

Id at 1559.

The above acknowledgment directed future litigants that to advance a substantive Due Process claim, there must be facts to support that the adverse employment action was done to curtail a constitutional right, most probably a fundamental one. Plaintiffs' factual allegations, scattered thru out their Complaint, must be read in para materia with Count Seven.

Mrs. Brackin was caused to suffer the grievous loss of a valuable property interest in continued employment because she chose, over protest, to exercise

rights protected by the First and Fourteenth Amendments. As above noted this wrong is redressable under the substantive provisions of the Due Process Clause.

Mrs. Brackin's injury was complete when she was summarily terminated for exercising rights protected by the First Amendment. No amount of process would cure this invasion upon rights implicit in and fundamental to an ordered society. Defendants' challenge to Count Seven is due to be denied.

**D: COUNTS FOUR AND FIVE**

Defendants cast their objections to Counts Four and Five as a Motion to Dismiss. In fact they seek an order for a more definite statement. They question the existence of facts supporting adverse job consequences resulting from the police interrogations. They further seek clarity on what law, or laws, support Mrs. Brackin's claims.

Paragraphs 23 to 32 set out a series of facts which resulted in Mrs. Brackin's suspension, without pay, and her two year probation. The police interrogations, relative to these paragraphs, were ordered by Defendant Gordon to flesh out what Mrs. Brackin may have said to a citizen with respect to their rights to seek regress of grievances from the City. As a direct and proximate result of these interrogations, Mrs. Brackin was caused to suffer, and did suffer loss of income, a change in her job status, embarrassment and emotional distress.

Notwithstanding the subsequent suspension and probation, using the police to coerce the identity of information given to a citizen, which information is

15

protected free speech, singlely frustrates and otherwise chills rights protected by the First and Fourteenth Amendment to the United States Constitution.

Paragraphs 48-50 addresses the police interrogation ordered by Defendant Gordon to determine if her "don't contact Mrs. Turner", instruction had been violated. As a direct and proximate result of this interrogation (which was preceded with the threat that if the interrogator perceived lying, then a lie detector test would be administered) Mrs. Brackin was caused to suffer and did suffer job loss, income loss, embarrassment and emotional distress. This entire process was infected with an unlawful intrusion upon Mrs. Brackin's free speech and free association rights.

The ordering of the police interrogations designed to expose speech and associations alone violated the First Amendment. The liberty interest imbued in the Due Process Clause provides a cause of action for violations of the First Amendment. Further, the substantive provisions of Constitutional Due Process encompass a cause of action for violations of fundamental rights of which the First Amendment is preeminent.

Mrs. Gordon employs police interrogations under the threat of job loss. This is part of her administrative disciplinary procedure. This practice is not authorized by, nor condoned by, the Civil Service Act of the City of Dothan. These interrogations are extra administrative, and are, and are designed to be, coercive. Further, based solely upon the finding of the interrogators, who are employed by a different department, disciplinary action is immediately

16

administered. These interrogations are, therefore, violative of the procedural protections provided by the Due Process Clause of the United States Constitution.

Extracting involuntary confession by coercion does implicate procedural due process.. *Haynes v. Washington*, 373 U.S. 503, 513-15) (1963), *Spano v. New York*, 360 U.S. 315, 320-23 (1959). In unusual cases, depending upon the method and manner of the interrogation, coercive interrogations can trigger the substantive provisions of the Due Process Clause. Extracting an involuntary confession by coercion is a due process violation. See *Chavez v. Martinez 538 U.S. 760, 780, 123 S.Ct. 1994, 2008, 155 L.Ed.2d 984 (2003)*. *Chavez,* and its family of cases, limited the availability of the substantive provisions of due process to the most extraordinary cases. These cases arise out of criminal investigations and the courts' need the balance the need for information to prosecute the criminal case with rights of the accused defendant. There is reason to believe that in the civil context, where the person being interrogated is not the purported defendant, or a person of interest, but only an employee suspected of a policy breach, the balance will be tipped more in favor of the plaintiff, and the test will prove less exacting.

Defendants, having failed to carry their burden as to why Counts Four and Five should be dismissed, should be required to answer, defend and otherwise litigate this action.

**CONCLUSION:**

For the reasons stated above the Defendants' Motion To Dismiss should be denied in its entirety.

Respectfully submitted this 21st day or March 2006

                                                  <u>s/ Ishmael Jaffree</u>
                                                **Ishmael Jaffree (IXJ))2**
                                                **Attorney for Plaintiffs 951**
                                                **Government St. Bldg. Ste. 415**
                                                **Mobile, Alabama 36604**
                                                **(251) 694-9090**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: F. .Lenton White and Joe E. Herring Jr.

                                                <u>s/ Ishmael Jaffree</u>
                                                **Ishmael Jaffree**