IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| NANCY MARTIN and ) <br> MARY BETH BRACKIN, ) <br>  ) <br>    PLAINTIFFS, ) <br> vs. ) <br>  ) <br> CITY OF DOTHAN; JUDGE ROSE ) <br> EVANS-GORDON,  in her ) <br> Individual capacity; ) <br>  ) <br>    DEFENDANTS. ) <br> _____ ) | CASE NO: 1:05CV1172-F <br> JURY DEMAND |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS'
JULY 20th MOTION TO DISMISS**

The Defendants seek to dismiss Counts One, Two, Three, Four, Five, Seven, Ten and Thirteen of Plaintiffs' Second Amended Complaint (hereinafter referred to as "Complaint" or Plaintiffs' Complaint) The Plaintiffs will respond to each of the challenges as they are presented.

The law imposes an exacting standard before a complaint, or its claims, can be dismissed at the pleading stage. All factual allegations in the complaint must be accepted as true, and all reasonable inferences arising from those facts are construed in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). .Motions to dismiss on the pleadings will only be granted when, and if, the moving party demonstrates, beyond doubt, that the plaintiff can prove no set of facts in support of his their claim (s) which would entitle them to relief. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

## A. Count One:

As best as can be determined, Defendants' challenge to "Count One" of Plaintiffs' Complaint is limited to an assertion that a suspension, even if followed by a loss of pay, followed by a 2 year probation, are not sufficient interest in property, or liberty, to trigger the Due Process Clause. Continuing, absent a judiciable property interest, the Plaintiffs can not advance a claim under 42 U.S. C. § 1983.

Count One seeks redress from a Free Speech violation of the First Amendment, made applicable to the states via the Due Process Clause of the Fourteenth Amendment. Mrs. Brackin, on April 23, 2004, was suspended, without pay, and placed on 2 year probation. This action was imposed because Mrs. Brackin had advised a citizen who to see and where to go if they thought that they had a claim against the City.

It has long been recognized that governmental employment may not be conditioned upon the relinquishment of constitutional rights. *Wilson v. Taylor*, 658 F.2d 1021, 1027 (5th Cir. 1981). It is equally true that a state may not discipline an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.' *Rankin v. McPherson,* 483 U.S. 378, 383 (1987). As the Supreme Court has stated, "the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents*, 385 U.S. 589, 605-06, (1967). This rule applies to public employees who exercise their first amendment rights of free speech because: "every public employee is largely free to express his views, in public or private orally or in writing." *Abood v. Detroit Board of Education*, 431 U.S. 209, 230 (1977).

Because the Defendants have not made a frontal assault on Mrs. Brackin's Free Speech claims in their challenge to this count, Plaintiffs will not discuss here whether the speech made the subject of the discipline was in fact protected. The Defendants appear to suggest that regardless of the constitutional provision, mere temporary job loss, followed by probation, is not protected. No authority is offered to support this position. The Defendants argument, however, appear linked to the Due Process Clause.

As suggested above, Count One is not premised upon a procedural due process analysis. However, Mrs. Brackin had a valuable property interest in her former employment. A person's interest in a benefit is 'property,' for due process purposes, if there are such rules or mutually explicit understandings that support their claim of entitlement, and if its deprivation would entitle them to a hearing. *Perry v. Sindermann*, 408 U.S. 593, 601, (1972).

In *Bishop v. Wood*, 426 U.S. 341, (1976), the court considered whether a police officer's employment status was a protectable property interest, and its opinion reaffirmed *Sindermann* by stating that a "property interest . . . can, of course, be created by ordinance, or by implied contract." Id. at 344. *Bishop* explained, however, that "the sufficiency of the claim of entitlement must be decided by reference to state law." Id.

It has been long settled in Alabama that "an employee who has established the right to permanent employment pursuant to a civil service statute . . . has as 'property right' in his job which may not be taken away or altered without due process of law. *Berryman v. Civil Service Bd. Of Muscle Shoals* 571 So.2d 1122, 1124 (Ala. Civ. App. 1990).

Dothan Civil Service Act, at Section 22 provides:

> Section 22. SUSPENSIONS. An appointing Authority may, from time to time, suspend an employee without pay or other compensation, as punishment for improper behavior, but no employee may be suspended for 3 period or periods within the aggregate of more that [sic] 30 days in any year's service. A Suspension may be effected by serving written notice upon the employee together with a statement dearly setting forth the causes thereof; a copy of which must be forthwith mailed or delivered to the Director. The suspended employee may file with the Board and the Appointing Authority a written answer or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record and the Board may, for cause shown, set aside such suspension order.

The relevant implementing Personnel Rules and Regulations provide, in pertinent part:

> Sec. 3-30.   (4) **Final** Warning **and One To Twenty Days Suspension Without Pay:** This is thedisciplinary action that follows violation of any offense classified as "Major." A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV). The supervisor will meet in a formal discussion with the employee explaining the exact offences(s) the employee violated and the seriousness and consequences of the offences(s). The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem. The supervisor shall explain to the employee that the violation of any further "Major Offense" within two years from the date of record of this offense is grounds for discharge. At the time of the meeting, the supervisor will have completed the Personnel form #147 report documentin*g* all points discussed in the formal meeting. He signs the Form and gives a copy to the employee. The original is forwarded to the Personnel Department, which becomes a part of the employee's personnel file.

As did the statute under review in *Hatcher v. Board of Public Education and Orphanage for Bibb County, 809 F.2d 1546 (11th Cir. 02/17/1987, Alabama* statutes give rise to a legitimate claim of entitlement, and the due process clause applies. Mrs. Brackin clearly qualifies as a tenured Municipal Magistrate under the Civil Service Act and as such her rights as a covered government employee extended to not being suspended or placed on probation except by the specified procedures and for the specified reasons.

If the Defendants' contention bottoms on the theory that suspensions and probations do not trigger due process concerns because they are not "property interest" or "liberty interest" then the authority cited by them do not support their position. *Paul v. Davis* 424 U.S. 693, (1976 is one case cited by the Defendants). In *Paul,* a photograph of the plaintiff bearing his name was included in a "flyer" of "active shoplifters," After his arrest and the dismissal of the charge, he brought a due process claim based upon the adverse effects that the flyer had on his reputation. Citing Kentucky law, the Court ruled that Defendants' action in distributing the flyer did not deprive the respondent of any "liberty" or "property" rights secured against state deprivation by the Due Process Clause of the Fourteenth Amendment.

Neither the facts of *Paul* nor the law offer any support to the present Defendants' challenge to Count One of Plaintiffs' Complaint. *Paul* did not balance limited deprivation verse total deprivation of property. Nor did the case address adverse disciplinary actions taken against a government employee for engaging in acts protected by the first amendment.

5

The second case offered by the Defendants similarly provides no assistance to their argument. *Brescher v. Stein*, 904 F.2d 572 (11th Cir. 1990) involved a plaintiff's arrested for renting a structure used for prostitution. The plaintiff brought an action containing two civil rights claims under 1983, which alleged that Plaintiff was illegally arrested and was defamed by the defendant's statements made to the media at the arrest scene. The Court, in reversing a jury verdict in favor of the plaintiff, stated that in the defamation context, there must be a dismissal from a job or in the termination or significant alteration of some other legal right or status before defamation will suffice to constitute a deprivation sufficient to state a claim under section 1983. Id at 583.

The job dismissal language in *Stein* was dicta. *Stein* involved a local businessman seeking recovery for defamation. This was not a First Amendment case, which is subject to a different analysis than a state tort defamation case. Neither *Stein,* nor *Davis,* cast doubt on the viability of Plaintiffs' Count One Free Speech claim. No recognizable basis has been advance for the dismissal of Count One and Defendants' Motion to Dismiss as to this claim must be denied.

**B.  Counts Two and Three:**

Defendants challenge Counts Two and Three of Plaintiffs' Complaint suggesting that there are insufficient facts to demonstrate a public concern. Count Two alleged an unlawful prior restraint on all speech in violation of the First and Fourteenth Amendments to the United States Constitution. Count Three alleged an unlawful prior restraint upon association in violation of the First and Fourteenth Amendments to the United States Constitution.

6

Plaintiffs do not dispute the general test fashioned by the Supreme Court in determining what speech is protected. The general standard has recently been articulated in *Cook v. Gwinnett County School* No. 04-12914 (11th Cir. 06/29/2005);

To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. Bryson, 888 F.2d at 1565-66. If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech. Id. The first two steps are questions of law; the final two steps are "questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech." Anderson v. Burke County, Ga., 239 F.3d 1216, 1219-20 (11th Cir. 2001).

This case does not fit neatly under the general test. What the Judge, acting as Appointing Authority, prohibited was all contact with another citizen; this mandate restrained all speech and all association. A state official can not prohibit all speech. *United States v. Corrigan*, 144 F.3d 763 (11th Cir. 06/25/1998). A state actor's prohibition on all speech, or other communication, is a prior restraint on future speech in violation of the First and Fourteenth Amendments to the Constitution. *Saia v. New York*, 334 U.S. 558, 559-60, 68 S.Ct. 1148, 1149 (1948).

The Appointing Authority prohibited all speech with no time, date or content exceptions.. The challenge to this restraint is its over breath and potential chill on

7

protected speech. The speech restriction was principally designed to protect the integrity of a police investigation. However, even if the speech was limited to matters involving the police investigation, its sweep was still overbroad. The subject of the investigation might have needed to discuss matters related to their defense which likely would have been a matter of public concern. Further, the Appointing Authority's prohibition also restricted contact with the press. This restriction was also overbroad.

The court in *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756 (11th Cir. 01/30/1991) observed

> To establish that a facial challenge to a governmental act presents a real and substantial controversy, a plaintiff must show he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act.. The injury requirement is most loosely applied -- particularly in terms of how directly the injury must result from the challenged governmental action -- where first amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced.( internal and external citations omitted).

> Id. at 760

In *Bourgeois v. Peters*, 387 F.3d 1302 (11th Cir.2004) the City of Fort Benning, Georgia executed a policy requiring everyone wishing to protest in a political protest to submit to a magnetometer search for metal objects. In finding this non intrusive search a prior restrain on speech the Court noted five problems, four of which are implicated in the present case

> The City's search policy also violates the First Amendment in five ways. First, it is a burden on free speech and association imposed through the exercise of a government official's unbridled discretion; restrictions on First

8

> Amendment rights may not be left to an executive agent's uncabined judgment. Second, the searches were a form of prior restraint on speech and assembly; to participate in the protest, individuals had to receive the prior permission of officers manning the checkpoints. Third, the search policy was implemented based on the content of the protestors' speech. Fourth, even assuming the searches were implemented exclusively for content-neutral reasons, they were impermissible because they did not constitute reasonable time, place, and manner limitations, which are the only permissible content-neutral burdens that may be placed upon free speech and association. Finally, even putting aside First Amendment analysis, the search policy constitutes an "unconstitutional condition;" protestors were required to surrender their Fourth Amendment rights (as discussed in Part II) in order to exercise their First Amendment rights.
> **Id at 1316**.

The Defendants have cited no authority suggesting that a government employer who subjects his/her employees to a total band on speech can do so with impunity. Mrs. Brackin has stated a claim in Count Two of her Complaint. The strength of this claim will be measured, in part, by the four–stage Pickering/Connick test [*Pickering v. Board of Educ.*, 391 U.S. 563 (1968)] [*Connick v. Myers*, 461 U.S. 138 (1983)].

The next challenge is to Count Three of Plaintiffs' Complaint. No reasons are given for this challenge. Presumably Defendants' argument is the same as advance in their challenge to Count Two. Count Three alleges an infringement by the City upon Mrs. Brackin's rights of association. The rights of association contain no "matter of public concern" qualifier. In regard to the right to freely associate, the United States Supreme Court has written:

> ```
> "Our      decisions     have     referred    to
> constitutionally    protected    'freedom    of
> association' in two distinct senses. In one
> line of decisions, the Court has concluded that
> ```

9

> choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."
>
> ***Roberts v. United States Jaycees***, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984) See also ***Wilson v. Taylor***, *supra*, 733 F.2d 1539 (11th Cir. 1984)

The government's complete bar on contact between two friends who attended church together and socialized with each off work hours, was an unlawful restraint on association prohibited by the first amendment. Whether the government had a legitimate interest to prohibit such association, and, whether the restriction was narrowly tailored, is yet to be determined. Mrs. Brackin has stated a viable claim in her Complaint.

**C.  Counts Four and Five:**

Defendants are troubled by Counts Four and Count Five of the Complaint. Count Four allege procedural due process problems and Count Five allege violations of substantive due process. Both counts incorporate paragraphs 14 through 63 and 97 through 100 of the Complaint.

Implicit among Mrs. Brackin's claims is an assertion that corrosive police interrogations were used by the City, by and through its Appointing Authority, (paras 11,21,28-30,49-50) as an instrument to discover, and then suppress, Mrs. Brackin's free

speech and free association rights ((paras 19-20,24-25,and 46). As a direct result of the use of this tactic, she was suspended, lost wages, placed on a two year probation and ultimately, terminated.(33-34, 36, 51). Further, such procedures, thou used as part of the City's disciplinary process, were not permitted by the City' laws and/or regulations (Para 22).

The City offers no due process recourse for suspensions (para. 35). Mrs. Brackin, as a merit system employee, had a property interest in continued employment, absent good cause, and, therefore, was entitled to minimum procedural due process procedures. The loss of income was the loss of property, but since the City does not permit a due process hearing on suspensions, Mrs. Brackin suffered this property loss in violation of procedure due process. Regardless of the adequacy of the procedures, as a matter of substantive law Mrs. Brackin should not have been suspended for the reasons that she was. This is the hub of the claims made in Counts Four and Five of the Complaint.

The Supreme Court has interpreted the due process clause as providing two distinct guarantees: substantive due process and procedural due process. *Zinermon v. Burch*, 494 U.S. 113, 125, (1990). Substantive due process includes both the protections of most of the Bill of Rights, as incorporated through the Fourteenth Amendment, and also the more general protection against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Id. (quoting *Daniels v. Williams*, 474 U.S. 327, 331, (1986)). . "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected

liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).

Having properly pled her due process claims, it is Mrs. Brackin burden to prove facts necessary to establish the elements of each claim. The pleading stage is not the proper place to test Mrs. Brackin's evidence. Counts Four and Five has been sufficiently pled.

**D. Count Seven:**

Count Seven's challenge appears hinged upon the single word "pretexual referenced within the body of the Count. Count Seven raises a Substantive Due Process claim for the Defendants' termination of Mrs. Brackin for her violation of Defendant's "do not contact" directive. The nature of Mrs. Brackin's relationship with the person, whom she was prohibited from contacting, was referenced in the body of complaint. The challenged directive placed restraints upon expression, association and even assembly rights protected by the First and the Fourteenth Amendment to the United States Constitution. As stated above, these are precisely the liberties that the Substantive Due Process Clause was designed to protect.

*McKinney v. Pate* 20 F.3d 1550 (11th Cir. 1994) established the law of this Circuit that employment terminations cases premised   solely on a "property right" denial, tethered to substantive due process, is no longer actionable. However, it is not true that *McKinney* preclude all government employment termination cases brought under the Substantive Due Process Clause. In *McKinney*, the Court held that "areas in which substantive rights are

12

created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process" rights are created only by the Constitution.'" *McKinney,* 20 F.3d at 1556.

In; *Beckwith v. City of Daytona Beach Shores*, *Fla*. 58 F.3d 1554 (11th Cir. 1995), a case decided shortly after McKinney, the Court clarified the limited reach of McKinney:

> Unlike McKinney, Appellant seeks to vindicate a right arising from the First Amendment of the Constitution,… not one which is created by the state. A state employee does not need a protectable property interest, or any other state-created right, in order to maintain a First Amendment retaliatory discharge claim. In Rankin v. McPherson, the Supreme Court explained that "even though [the plaintiff] was merely a probationary employee, and even if she could have been discharged for any reason or for no reason at all, she may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression." 483 U.S. 378, 383-84, 107 S. Ct. 2891, 2896, 97 L. Ed. 2d 315 (1987). In Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, the Court held that "even though [plaintiff] could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms." 429 U.S. 274, 284, 97 S. Ct. 568, 574, 50 L. Ed. 2d 471 (1977) (citations omitted). In Perry v. Sindermann, the Court held that the plaintiff's lack of "a contractual or tenure right to re-employment" did not defeat his First Amendment claim. 408 U.S. at 597, 92 S. Ct. at 2697.

Id. at 1562

Since Mrs. Bracken's Count Seven is premised upon adverse action taken against her because she was engaging in actions protected by the United States Constitution, not state tort law, *McKinney* does not bar her claim.

**E.  Counts Ten and Thirteen:**

Defendants attack Counts Ten and Thirteen as retaliation claims which can only be brought under Title VII and not under 1983. Cited in support are two advisory but not controlling cases.

Defendants' cite *Brown v. Opelika* 2006 WL 1515836 (M.D. Ala. May 30, 2006) in support of their claim that a 1983 action may not be predicated on allegations of retaliation. Without comment, *Brown*, in a single sentence, cited as authority for its ruling dismissing Ms. Brown 1983 retaliation claim, a footnote in *Gamper v. State of Ala. Dept of Corr*. 968 F. Supp 1483, 1499 (M.D. Ala. 1997)[1] No analysis was provided. The Court didn't attempt to distinguish contrary Eleventh Circuit opinion. More importantly, *Brown* is currently on appeal to the Eleventh Circuit, therefore the trial court decision no longer represents the law of the case[2].

In reaching its conclusion *Brown* did not distinguish *Webster v. Fulton* County, Georgia 283 F.3d 1254, 1256 (11th Cir. 2002) where the Court, with approval, stated "We have previously concluded that Section 1981 supports a retaliation cause of action. *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998)" Section 1983 is the vehicle through which 1981 claims are brought against governmental entities. The Court in *Andrews* acknowledged that the legislative history for the 1991 Civil Rights

---

[1] For an exhaustive history of the changing law in this area see Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405, (11th Cir. 05/15/1998) referenced below.

[2] Brown cited Gamper which in turn cited to Lightner v. Town of Ariton Alabama 902 F. Supp. 1489 (M.D. Ala. 1995) However, a close reading of Lightner reveals that the case did not hold that 1983 can not sustain a retaliation claim. It recognized that the 1991 amendments to the Civil Rights Act had changed the landscape.

Act supports the conclusion that Congress intended retaliation claims to be cognizable under § 1981.

Plaintiffs assume that Defendants cited *Brown* to challenge only those retaliation claims which would be cognizable under a Title VII analysis. Plaintiffs' additionally assume that Defendants did not intend to suggest that *Brown* barred First Amendment free speech or free association retaliation claims.

To establish a First Amendment retaliation claim under § 1983, the Plaintiffs need only show (1) their speech involved a matter of public concern, (2) their speaking outweighs the government's legitimate interest in efficient public service, (3) the speech played a substantial part in the challenged employment decision, and (4) the Appointing Authority would not have made the same employment decision in the absence of the protected speech. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1565 (11th Cir. 1995). See also Bryson *v. City of Waycross*, 888 F.2d 1562, 1564 (11th Cir. 1989).

Both Counts Ten and Thirteen of Plaintiffs' Complaint incorporates other facts alleged in the Complaint. Mrs. Martin' claim at Count Thirteen must be considered a claim of retaliation for complaining about something that the law makes illegal-race discrimination. She alleges that, in part, her termination was the result of her complaining that black employees were being treated preferentially. Additionally, she allege that . . black bonding companies were getting special treatment. These allegations support an inference that her termination was in retaliation for speaking out on matters that the law makes unlawful and retaliation for exercising free speech. Both are matters of public concern. Similarly, in Count Ten, Mrs. Brackin alleges that that she was first suspended

15

for speaking out on a matter of public concern (rights of citizens to seek recourse from their government) and later terminated because she did not adhere to mandated restraints on her speech and association. Both actions were taken, she allege, in retaliation for engaging in protected activity.

Whether Plaintiffs can survive dispositive motions or win their case at trial, turns on the facts as applied to controlling law. They have pleaded a case which does survive a judgment on the pleadings. "Whether a governmental employer has improperly infringed on an employee's First Amendment rights turns on the specific facts of the particular case: a 'case-by-case' analysis is required" *Bates v. Hunt*, 3 F.3d 374, 378 (11th Cir.1993). Under the facts as plead, Counts Ten and Thirteen each state a claim which, if proved, would entitle the Plaintiffs to relief.

**CONCLUSION**

For the reasons stated above, the Defendants' Motion to Dismiss must be denied in each of the particulars and the Defendants should be made to answer or otherwise defend the Complaint.

Respectfully submitted this 31st day of July 2006

s/Ishmael Jaffree_____
Ishmael Jaffree (1791 F36I)
951 Government St. Bldg.
Ste. 415
Mobile Alabama 36604
251-694-9090 Fax 694-9090
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that on this 31st day of July 2006 electronically served a copy of the foregoing Plaintiffs' Brief in Response to Defendants' Motion to Dismiss with the Clerk using the CM/ECF system which will send notification to counsel who have entered an appearance on behalf of the Defendants.

                                             s/ Ishmael Jaffree___
                                             Ishmael Jaffree