IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NANCY MARTIN, *et. al.*, | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-1172-MEF |
| | ) | (WO) |
| CITY OF DOTHAN, *et. al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Nancy Martin and Mary Brackin bring this action against Defendants City of Dothan and Municipal Judge Rose Evans-Gordon (in her individual capacity) alleging wrongful termination of employment on the basis of race and for exercising their First Amendment rights. Specifically, Plaintiffs allege violations of the First and Fourteenth Amendments, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* (hereinafter "Title VII"), and 42 U.S.C. § 1983. Plaintiffs also allege retaliation in violation of § 1981 and § 1983. Plaintiffs further allege violations of their Fourteenth Amendment procedural and substantive due process rights. Finally, Plaintiffs allege Alabama state law claims of false imprisonment, negligence, and breach of contract. This cause is presently before the Court on Defendants' Motion to Dismiss (Doc. # 36), filed on July 20, 2006.[1]

---

[1] This motion to dismiss addresses the Second Amended Complaint (Doc. # 38) filed on July 21, 2006. (A motion to amend the complaint was filed on June 24, 2006 with the proposed Second Amended Complaint attached, which is why Defendants were able to file the motion to dismiss prior to the filing of the Second Amended Complaint.)

## I. Jurisdiction and Venue

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## II. Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 476 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 765 F.2d 965, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

## III. Facts

Taking all of the well-pleaded allegations in the Second Amended Complaint as true, the following are the facts relevant to the Motion to Dismiss.

*A.*   *Facts Pertaining to Brackin*

Brackin, a white female, was employed by the City of Dothan as a City Magistrate from May 1, 1992 to August 20, 1995 and from April 22, 2001 through mid-2005. From the start of her employment through early 2003, Brackin received satisfactory or better annual evaluations and was never disciplined.

During the first few months of 2003, Defendant Rose Evans-Gordon, a Municipal Judge with Appointing Authority for the Dothan Magistrate Office, discovered that Brackin had allegedly informed a criminal defendant that if he was dissatisfied with his current public defender, he could ask for another. Gordon instructed the City of Dothan Police Department (hereinafter "police") to conduct an investigation of Brackin concerning this incident and report back to Gordon. Brackin was told that she either had to sign a document consenting to the interrogation or be charged with insubordination, which is an offense that subjects the employee to immediate discharge. Neither the Civil Services Act of Dothan nor the City of Dothan Personnel Rules and Regulations permit using City police to interrogate City Magistrate employees for non-criminal offenses. During the interrogation, Brackin denied that she disparaged a public defender. Following the interrogation, a notation of the incident was placed in her personnel file, but no other disciplinary action was taken.

On or about January 7, 2004, a citizen informed Brackin that he had been wrongfully arrested and asked her who he could contact to seek recourse. Brackin informed him that he could file a claim with the City Clerk, as required under state law for making tort claims

against the city.[2]  When Gordon learned about this exchange, she again required Brackin to consent to an interrogation by the police.  Brackin was then interrogated by two police officers.  Brackin did not hear anything about the results of the interrogation until April 23, 2004, when she was given notice that she had committed a major infraction, and that she would be suspended for 10 days without pay and placed on probation for two years.  The suspension began on April 26, 2004.  When Brackin returned to work following the suspension, Gordon asked her if she wanted to resign.  Brackin replied that she did not want to resign.  Brackin, realizing that Gordon was closely watching her, made diligent efforts to obey all rules and regulations.

On March 10, 2005, Gordon suspended City Magistrate Mary Turner, a white female, due to concerns about the processing of a speeding ticket.  On the same day, Gordon issued a memo directing the entire Magistrate staff not to have any contact with Turner.  In a subsequent meeting with staff, Gordon stated that this included social contact.  Brackin and Turner were close friends who frequently socialized outside of work.  A local news reporter, Ricky Stokes, ran a story on his web page concerning Turner's suspension.  Following publication of the article, Brackin was again interrogated by the police and was told that if they believed she was being dishonest, they would administer a lie detector test, and if she refused to submit to the test, she would be fired.  The interrogators asked whether she had

---

[2] A January 8, 2003 memorandum from Gordon to the Judicial Department personnel also states that the proper procedure for handling citizens making allegations of liability on the part of the City is to refer them to the City Clerk's office.

had any contact with Stokes or Turner. She denied any contact with Stokes, but admitted that she made one brief work-related phone call to Turner.[3] The call was limited to a work-related question involving the location of a certain document. Following the interrogation, Brackin was summarily terminated by Gordon for "disobeying a directive."

Gordon claims that another reason Brackin was terminated was that she was negligent in processing a traffic ticket log in 2002. The log indicated that a certain traffic ticket that had been voided was in Brackin's handwriting. Corporal Jon Eric Duhamie, the officer who wrote the ticket, acknowledged to Gordon (prior to her decision to terminate Brackin) that he had given permission for the ticket to be voided.

The first step in pursuing an administrative appeal of a decision to terminate a merit system employee is to seek review from the appointing authority. On May 2, 2005, Brackin sought review of her termination from her Appointing Authority, Gordon, who affirmed the initial decision after a brief hearing. Brackin then filed an appeal with the Personnel Board of the City of Dothan. Prior to the hearing, counsel for Brackin requested transcripts or tapes of the various interrogation sessions. Though counsel for the City had access to the transcripts, they refused to give counsel for Brackin access to them. The hearing took place on June 1, 2005. During the hearing, the Board refused to allow Brackin to raise issues relative to the Defendants' discriminatory policies and other issues deemed to be irrelevant to the Board's inquiry. Under Alabama law, the Board could only consider whether the

---

[3] Following Turner's suspension, almost all of Turner's responsibilities were assigned to Brackin.


Approving Authority's decision was supported by substantial evidence, not whether it was unconstitutional or otherwise discriminatory. On August 19, 2005, the Board summarily affirmed Gordon's decision.

Brackin alleges that black City Magistrates, including Lavera McClain and Eunice Knight, have been negligent in carrying out their assigned duties but have not been disciplined by Gordon or by other City employees.

*B.     Facts Pertaining to Martin*

Martin applied for the position of Administrator of the Magistrate office. During an interview with Gordon, Gordon told Martin that, if hired, she would be required to keep a close eye on three City Magistrates. Later, Martin learned that these were three white Magistrates, including Brackin and Turner. Martin was hired on January 16, 2004 and began work on February 10, 2004.

Shortly after Martin began work, a City Magistrate position became available. Tonja, a black female, was interviewed and hired. Martin, even though she was the new Administrator, was not permitted to participate in the interview. Prior to Martin's start date, the office had relocated to a new facility where there was a shortage of office space. At Gordon's direction, Turner, though one of the more senior Magistrates, was not given an office, but was placed in a common area. However, immediately after Tonja was hired, Gordon insisted that she be given one of the better offices, even though it meant that Martin would have to displace one of the white Magistrates.

Sometime within the next few months, Gordon asked Martin to write up Brackin's suspension for the January 7, 2004 incident, even though the incident had allegedly occurred prior to Martin's start date.

Gordon instructed Martin to write up the annual evaluation of City Magistrate McClain, a black female. When Martin submitted the completed evaluation, she was instructed to make it more favorable and was reminded that she was on probation and could be terminated for any reason.[4]  Martin changed the evaluation to make it more favorable.

From time to time, Gordon would direct Martin's attention to a white Magistrate who had caused a wrongful arrest and would instruct her to write it up if it happened again. However, Martin has observed and has been informed by others that on numerous occasions two of the black City Magistrates, McClain and Knight, have negligently caused citizens to be wrongfully arrested and have made numerous computer errors that needed to be corrected by other Magistrates.  Martin brought this to Gordon's attention, but Gordon never initiated any disciplinary or other adverse administrative action against them, saying that "every one [sic] makes mistakes."  On at least two occasions, Martin informed Gordon that Knight had committed insubordination and Gordon forbade Martin from taking any disciplinary action against Knight.  Martin brought these two incidents to the attention of the Personnel Director, Kai Davis, who stated that Knight should be written up.  However, since Gordon had prohibited Martin from disciplining Knight, Martin took no further action.

---

[4]The first year as an Administrator is considered to be a "test" or probation period.

On at least one occasion, Martin expressed to Davis her concern that Gordon was showing racial preference among the Magistrates.  Davis acknowledged that she had been made aware of the problem by other staff members.  She instructed Martin to keep written notes so that specific instances could be documented.  Davis also committed to conducting an internal investigation, but no investigation ever occurred.

Martin noticed that one particular bonding company, Get Out Bonding, appeared to get preferential treatment from Gordon.  Get Out Bonding is a black-owned bonding company.  When Martin told Gordon of her concern about the favorable treatment received by Get Out Bonding, Gordon became upset and angry and suggested that it was not Martin's concern.

Martin noticed that McClain and Knight were spending considerable time on personal telephone calls and socializing with each other and with Gordon. Therefore, on September 24, 2004, Martin gave them notice of her intent to assign them more tasks.  They each drafted a memo protesting the additional assignments and sent copies of their memos to Gordon.  Gordon immediately instructed Martin not to make any additional job assignments unless otherwise instructed.

Martin later met with Gordon and confronted her about her preferential treatment of black Magistrates concerning job assignments.  Gordon became upset, said she was "tired of all this," and walked out.  Thereafter, Gordon stopped returning Martin's phone calls and "otherwise refused to allow her to do her job as Administrator."

8

On October 12, 2004, Gordon served upon Martin a Disciplinary Action Report indicating that she was being discharged for unsatisfactory work performance during the probationary period. During the test period, the Appointing Authority is required to do an evaluation every three months. Martin received a favorable evaluation after the first three months, but no evaluation thereafter until her discharge. An employee may be discharged during the probationary period only if job deficiencies have been pointed out to the employee and the employee has been given the opportunity to correct the deficiencies before being removed. Gordon never discussed any deficiencies with Martin nor gave her the opportunity to correct them.

## IV. Discussion

Defendants' Motion to Dismiss requests that the Court dismiss Counts One, Two, Three, Four, Five, Seven, Ten, and Thirteen of the Amended Complaint, all for failure to state a claim upon which relief can be granted.

*A.  Count One*

Count One of the Amended Complaint alleges that Defendants violated the First and Fourteenth Amendments by suspending Brackin and putting her on probation for instructing a citizen on where he could go to submit a claim against the city. This claim is brought against Gordon in her individual capacity and against the City of Dothan pursuant to 42 U.S.C. § 1983. Defendants assert that Count One fails to allege a deprivation of a liberty or property interest sufficient to state a claim under § 1983 for violation of the Due Process

Clause.[5]  However, Count One is not asserting a procedural due process claim; it is asserting a First Amendment claim via § 1983.  Therefore, Defendants' motion to dismiss Count One is due to be denied.

*B.     Counts Two and Three*

Counts Two and Three allege that Defendants violated the First Amendment by terminating Brackin for contacting Turner.  Specifically, Plaintiffs claim that Gordon's prohibition on contact with Turner was an unconstitutional prior restraint on Brackin's freedom of speech (Count Two) and freedom of association (Count Three) and that the restriction was unconstitutionally overbroad.  Defendants claim that Brackin's conversation with Turner was not about a matter of public concern, and therefore was not protected by the First Amendment.

In order for a government employee to prevail on a freedom of speech claim, the employee "must show that (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action."  *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir.

---

[5]In their reply brief, Defendants for the first time assert a number of other arguments as to why Count One should be dismissed.  Because there is no reason why these arguments could not have been raised in Defendants' initial brief in support of their motion to dismiss and because the arguments are outside of the scope of the initial brief, such arguments are not properly before the Court and will not be addressed.  *See McCulley v. Allstates Technical Svcs*. No. Civ. A. 04-0115-WS-B, 2005 WL 1475314, at *6 n.15 (S.D. Ala. June 21, 2005).

2005).⁶  Thus, as a threshold matter, the Court must decide if Brackin's speech involved a matter of public concern.

A government employee's speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).  In order to determine whether an employee spoke "primarily as a citizen on behalf of the public or primarily as an employee upon matters of personal interest," *Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000), a court must examine the "content, form, and context of a given statement." *Connick*, 461 U.S. at 147-48.  "The mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 2000).  The relevant inquiry is "whether the purpose of the plaintiff's speech was to raise issues of public concern or further her own private interest." *Maggio*, 211 F.3d at 1352 (internal quotation marks and citations omitted).  Here, the purpose was Brackin's own private interest in performing her job duties.  Thus, there is no way she can prevail on her freedom of speech claim as to her phone call to Turner.

However, Plaintiffs also appear to be making a facial challenge to the regulation, claiming that it is unconstitutionally overbroad.  If Plaintiffs can show that they have

---

⁶ Although *Cook* involved punishment for speech after the fact, this same test is also used to evaluate prior restraints on public employee speech.  *See Maldonado v. City of Altus*, 433 F.3d 1294, 1310 (10th Cir. 2006).

standing to pursue this claim, that the restriction is still in effect, and that it is "substantially overbroad," they may succeed on their facial challenge. *See CAMP Legal Defense Fund, Inc, v. City Of Atlanta*, 451 F.3d 1257, 1271-72 (11th Cir. 2006). Therefore, the motion to dismiss this claim is due to be denied.

Count Three's freedom of association claim requires a different analysis. In the context of freedom of association claims, there is no requirement that the associational activity be related to a matter of public concern. *Hatcher v. Bd. of Pub. Educ. and Orphanage for Bibb County*, 809 F.2d 1546, 1558 (11th Cir. 1987). The first step in analyzing a freedom of association claim is to determine whether the employee's association interests outweighed the efficiency interests of the State as an employer. *See Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1310 (11th Cir. 1999). The Court finds that it would be possible for Brackin to show that her interest in associating with Turner outweighed the interests of her employer. Therefore, the motion to dismiss Count Three is due to be denied.

C.   *Counts Four and Five*

Count Four of the Complaint alleges Fourteenth Amendment procedural due process violations in requiring Brackin to submit to interrogations by the Dothan police. Count Five alleges Fourteenth Amendment substantive due process violations for the same reason.

Defendants first request that these counts be dismissed because they do not conform to the heightened pleading standard for § 1983 complaints against public officials. The heightened pleading standard, however, is only applicable in the context of a claim of

qualified immunity, which is not at issue here. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166-67 (1993)(reserving judgment on whether "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials"). Therefore, failure to meet the heightened pleading standard is not grounds for dismissal of these counts.

Defendants next assert that Counts Four and Five are due to be dismissed because they fail to assert a deprivation of a constitutionally protected right as a result of the interrogations. Both counts assert that Brackin has suffered "adverse job consequences" as a result of the interrogations. Both counts also incorporate paragraphs 14 through 65 and 97 through 100 of the Complaint, which allege that the interrogations resulted in Brackin's suspension and two-year probation. The suspension may be considered an alleged constitutional deprivation. Thus, Counts Four and Five cannot be dismissed for failure to allege a constitutional deprivation.

Finally, Defendants claim that Count Five is due to be dismissed because the interrogations alone do not constitute substantive due process violations. However, Count Five does not only allege that the interrogations were unconstitutional, but also alleges that the resulting suspension and two year probation were unconstitutional. Defendants do not present any reasons why the suspension and/or probation could not constitute substantive due process violations. Therefore, Count Five cannot be dismissed for failure to state a substantive due process claim.

*D.     Count Seven*

Count Seven alleges that Defendants violated the substantive due process component of the Fourteenth Amendment by terminating Brackin for her phone call to Turner. Defendants assert that Count Seven is due to be dismissed because a public employee cannot assert a substantive due process claim for being terminated from her employment for a pretextual reason. While it is true that employment termination which only violates state law cannot give rise to a Fourteenth Amendment substantive due process claim, termination which violates a constitutional right of an employee may violate the employee's Fourteenth Amendment substantive due process rights. *See Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995). In Count Seven, Brackin is alleging that she was terminated for exercising her First Amendment rights. In claiming a constitutional violation, she has stated a cognizable substantive due process claim. Therefore, Defendants' motion to dismiss Count Seven is due to be denied.

*E.     Counts Ten and Thirteen*

Count Ten alleges that Brackin was terminated in violation of § 1983 in retaliation for exercising her free speech and free association rights. Count Thirteen alleges that Martin was not permitted to perform her duties as Administrator in violation of § 1981 (through § 1983) in retaliation for complaining about Gordon's discriminatory practices. Defendants assert that Counts Ten and Thirteen are due to be dismissed because § 1983 claims cannot be predicated on allegations of retaliation.

As to Count Ten, Defendants are incorrect in asserting that Brackin cannot bring a retaliation claim pursuant to § 1983.[7] Section 1983 permits claims for retaliation in violation of the First Amendment, which is the type of retaliation alleged in Count Ten. *See Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004). However, in order to state a claim for retaliation in violation of the First Amendment, an employee must show that her employer retaliated against her because of her speech on a matter of public concern. *Id.* As discussed above, Brackin's phone call to Turner was not a matter of public concern, therefore she cannot state a retaliation claim for exercising her free speech rights. On the other hand, Brackin may be able to show that she was exercising her free association rights, and thus may be able to show that she was retaliated against for exercising those rights. Accordingly, Defendants motion to dismiss Count Ten as to Brackin's free speech retaliation claim is due to be granted, but as to Brackin's free association retaliation claim, it is due to be denied.

As to Count Thirteen, Martin alleges retaliation in violation of § 1981 via § 1983.[8] Although § 1981 does not specifically reference retaliation, the Eleventh Circuit has held that

---

[7] Two of the Middle District of Alabama cases cited by Defendants in support of their assertion that retaliation cannot be claimed pursuant to § 1983, *Gamper v. State of Alabama Department of Corrections*, 968 F. Supp. 1483 (M.D. Ala. 1997) and *Lightner v. Town of Ariton, Alabama,* 902 F. Supp. 1489 (M.D. Ala. 1995), appear to be referring only to claims of retaliation based on the filing on an EEOC Charge.

[8] While § 1981 provides a cause of action against state actors, a § 1981 claim against a state actor must be made pursuant to § 1983. *Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000).

§ 1981 encompasses claims of retaliation in the employment discrimination context. *See Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998). In the Eleventh Circuit, it is not clear what types of protected conduct are covered by retaliation claims made pursuant to § 1981. *See Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1463 n.4 (11th Cir. 1998). Therefore, Martin may be able to make a § 1981 claim that she was retaliated against for complaining about Gordon's discriminatory practices and Defendants' motion to dismiss Count Thirteen is due to be denied.

## V. Conclusion

For the reasons set forth above, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. # 36) is GRANTED IN PART and DENIED IN PART.

DONE this 27th day of August, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE