Commissioners, and Personnel Director to question and investigate why they have been unable to keep a Court Administrator since Judge Rose Gordon was appointed Municipal Court Judge.

With all the problems associated with the Court Administrator position, I still love my job. It is a challenge that I was very ready for. If terminated, I will have lost a great opportunity to advance my knowledge and skills. The Court Administrator position is a tremendous job that not many people now employed with the City would take on. There are approximately 17,000 tickets and approximately 5,000 misdemeanor cases processed by this office per year. Even with some problems present with some Magistrates, they are a great group of women who possess a vast amount of knowledge and experience in the workings of the criminal court system.

These Magistrates are not just "glorified secretaries". They are part of the Municipal Court system who are required by law to go through two years of training and have at least two years of experience in a Magistrate position before being certified. The are also required to keep their certification current by attending annual maintenance training where they receive the updates of recent changes in the law, as well as other information concerning their job duties.

It is my understanding that the Magistrates office has long had a reputation of a problem office. Supposedly all the Magistrates are problem employees that should have been terminated long ago. I agree that past supervisors, along with Judge Gordon, have been negligent in not terminating some personnel in the Magistrates office. However, they have not been treated with much respect or received much recognition for their hard work in past years.

I have attempted during my short tenure to turn the Magistrates office around and make it the best in the State of Alabama. There were numerous policies and procedures already in place when I began that I started enforcing as well as adding and enforcing some additional policies and procedure. There was and is some resistance to my efforts because some people have been allowed by the Judge to operate under a different set of policies and procedures. This has caused most of the problems and the reputation of the Magistrates office.

I have dealt fairly and consistently with every staff member in this Magistrates office. I have gone over and beyond being sensitive to their personal problems and their limitations in performing their job duties. I have rewarded them with flowers, special gifts, lunches, and praise while at the same time giving them constructive criticism. I believe they have been treated better by me than most previous Court Administrators they have been supervised by.

I could write a book on all the events, good and bad, that have occurred in the short eight months I have been employed as Court Administrator for the City of Dothan. From being lead to believe that I was hired to manage and supervise the Magistrates office

without interference from Judge Rose Gordon, to subjected to gross racial discrimination in said office, and finally to being disciplined by possible termination, by a Judge whose rulings, procedures, relationships with certain bonding companies, attorneys, defendants, co-employees, trustees, and subordinates, should have been investigated by this City long ago. I can only assume that the City has not pursued any investigation into the vast number of complaints by the staff of the Magistrates office or other departments, defendants not favored by the Judge, bonding companies not favored by the Judge, and attorneys not favored by the Judge, because in Judge Gordon's own words to me many times, "I am a black, female judge. The City is not ever going to get rid of me or buy out my contract. They know better". I sincerely hope this is not true.

I first would like to provide some background information concerning my interviews and hiring by the City of Dothan. To the best of my memory, I was first interviewed sometime during the month of December by Judge Rose Gordon, Kai Davis, and Jim Smith. My second interview was a few days to a week later with I believe, Judge Rose Gordon, Kai Davis and Kathleen Nemish.

I had been employed with Legal Services Corporation of Alabama for the past 19 years as Executive Secretary to the Managing Attorney and also functioned as Office Manager, and was a certified Paralegal. I had successfully supervised three to four Legal Secretaries for approximately 11 years of that employment. I also had other legal experience as well as years of banking experience, and a decree from TSUD in Business Management. I gave up my position with Legal Services of 19 years to take the Municipal Court Administrator position on the promises of full support by Judge Rose Gordon, Personnel Director Kai Davis, and others employed by the City. I am at a loss of words to describe how I feel about the breach of those promises.

During my interviews for this position, I was advised over and over concerning the "problems" with the Magistrates, and how I could never comprehend what some of them were capable of doing to me. I was questioned repeatedly about how I would handle the Magistrates' bad behavior. I was told of previous incidents with some of the Magistrates and what action had been taken against them. When leaving the interview, Cpt. Smith was walking out about the same time, and I'll never forget his statement to me. He said, "run while you can". I can only assume he was giving me a hint not to take this job. I assumed he was referring to all the problems with the Magistrates; however, in hindsight, I believe he could have been warning me about the problems I would encounter with Judge Gordon.

When I was offered this position, the salary and benefits were not enough to cause me to leave my position with Legal Services Corporation of Alabama and take on all the responsibility and problems of the Magistrates office. I advised Michelle Sellers that I would have to be offered a specific amount of money for me to take the position. Since I didn't hear back from her, I assumed the job had been accepted by someone else.

I was contacted again around the first of January of this year and asked what salary I had stated previously that it would take for me to accept the Court Administrator position.

I advised Michelle Sellers of the amount. I was contacted a little later and offered this position at the higher rate of pay. As I have stated many times to Kai Davis, Judge Gordon, Jerry Corbin, and others, this position pays no where near the salary it should pay for all the responsibility and problems you have to deal with. Also, the Court Administrator position should be a Department Head position and not under the control of the Municipal Court Judge. Had I known the "true" problems of this department are caused primarily by the Judge in her preferential treatment of the black Magistrates, I would never have accepted this position.

I did have great respect for Judge Gordon when I was interviewed and began work here because I had seen her during arraignments on one occasion and thought she was very good with dealing with the young people by making sure they understood what they were charged with, what rights they had, and talking to them about what would happen if they continued speeding, driving while intoxicated, using drugs, etc. However, that respect soon wavered after attending court for three to four weeks. I still showed respect to Judge Gordon and did not allow any other employees to show disrespect to her. I did what she told me to do regardless of whether I agreed or not.

However, it is unbelievable that the City of Dothan has not audited or performed an internal investigation into the cases handled through Judge Gordon's court, or that AOC or some other Judicial Agency has not conducted an audit. I cannot possibly remember all the questionable or illegal activities I have become aware of during my employment, however, I believe the Judge has improper dealings with Get Out Bonding as does some jail personnel. I basically have been told by the Judge "it's not my concern" when I asked why Get Out Bonding bonds more Defendants than any other bonding agency. I believe jail personnel point Defendants toward calling Get Out Bonding instead of others. I believe there is a monetary limit on bonds that can be posted by a bonding agency with the City, however, when I asked the Judge about this limit, she said there was not a limit and wanted to know why I was asking so many questions. I know for a fact that the Judge does not adhere to the law on final forfeitures and drags out the final forfeiture process probably to benefit Get Out Bonding. I believe Get Out Bonding was only closed down in September because the Judge had no other choice. I understand the Judge was furious when Gary Shirah called and questioned her about why Victor Cason with Get Out Bonding was posting cash bonds for Defendants after Get Out Bonding was closed down. I also believe the Judge has enjoyed some "perks" from some Defendants in exchange for a lesser sentence or dismissal of their case.

According to my research, the Court Clerk is the person who is to prepare and file the Revocation of Surety paperwork with the City's Business License Department when the Judge orders final forfeitures on bonding companies for failure to present the defendant or the money owed on a bond. However, when I asked Michelle Sellers wasn't I supposed to prepare and sign the necessary paperwork for this procedure, I was advised no that she and the Judge were doing that. I had to call Gary Shirah in the Business License Department to even find out for sure if Get Out Bonding had been closed down so I and the Magistrates would know not to accept bonds from them. No information

concerning this process was ever given to me orally or in writing by the Judge or Michelle Sellers. In fact, this whole process was kept very secretive from me and some of the Magistrates.

     I also have not been privy to possible changes in the CRO program nor invited to recent meetings held by the Judge concerning CRO, where at one meeting Commissioner Reading and, Ashley, a black female employee with the current CRO Program were in attendance. I have observed that Ashley, the black female with CRO, is usually sitting in the Judge's office socializing with the Judge, Lavera, and others before court, however, Lori, the white female CRO employee is hardly ever even acknowledged by the Judge.

**Because of the short notice given of my Determination Hearing, I have not had sufficient time to fully respond to everything alleged in the Disciplinary Action Report Form presented to me yesterday, however, I will respond as best I can at this time, below.**

First, I would like to point out that I was employed by the City of Dothan on January 15, 2004, as Municipal Court Administrator/Court Clerk. I was advised at the time that I would be on probationary status for 1 year from that date with an evaluation being performed every three months. My first evaluation was signed and dated by Judge Rose Gordon on April 19, 2004, and I signed and dated it on April 21, 2004, after Judge Gordon and I went over the evaluation. (See attached Evaluation) I received a satisfactory rating and was recommended for continued employment.

To the best of my knowledge, at no time since that evaluation have I received any written complaint, disciplinary form, or memo from Judge Gordon advising me of my unsatisfactory work performance or anything else for that matter. I did receive one memo from Judge Gordon two to three weeks ago to please refrain from changing any job duties of the Magistrates or Clerks without first consulting her, however, I do not consider this written notice of unsatisfactory work performance. (See attached Memos).

This memo was prompted by Lavera McClain and Eunice Knight's memo to me and copied to the Judge, advising me that they couldn't possibly handle the additional minor job duty I had assigned them. As always, the Judge came to their rescue because they are her black friends. This was an interference by the Judge of my supervision of Lavera and Eunice. More details are provided concerning this incident below.

My second evaluation should have been completed and submitted to Personnel by July 26, 2004. However, this evaluation was not performed by the Judge until October 5, 2004, as indicated by the Judge's signature and date contained thereon. I have asked the Judge's Assistant, Michelle Sellers, as well as the Judge, every couple of weeks since around mid-July, if the Judge was going to complete my evaluation. I was advised every time that she was. I had also during that time spoke with Martha in Personnel to inquire as to when my evaluation was due and had been advised that it was due by July 26, 2004, but had not yet been submitted by the Judge. I also spoke with Kai Davis, Personnel Director, a few weeks ago about why my evaluation had not been performed. I was advised that she did not know why it had not been done, but it was due by July 26, 2004 (which was by then approximately two months past due).

I believe my second evaluation was not performed by the Judge in a timely manner partly because of the unsatisfactory annual evaluation I did of Lavera McClain. I believe this because Lavera's evaluation was done by me after my first evaluation when I received a good evaluation and everything was fine with me and the Judge. However, after the Judge and I met to discuss the unsatisfactory evaluation I had done on Lavera, things were never the same between the Judge and I.

I had done Lavera's evaluation as I was instructed by Martha in Personnel during the time that Lavera was out on sick leave for surgery. I discussed the evaluation with Lavera upon her return to work and I was very candid with Lavera that the original evaluation was changed only because the Judge had insisted and that I would not be changing her evaluation again. Lavera's evaluation was originally an unsatisfactory evaluation (because Lavera does not perform her job duties properly for a Magistrate with her experience), but I felt forced to change to a satisfactory evaluation after Judge Gordon threatened my job when she said to me: "This is not a threat, but I'm reminding you, you are still on probation" when she begged me to reconsider my evaluation of Lavera to see if I could give her a "few points" here and there. Judge Gordon could not believe that I would rate Lavera unsatisfactory on any job duties since her previous evaluations had been satisfactory. I had reviewed a couple of Lavera's previous evaluations that appear they had basically been copied from the one done the previous year. During Lavera's evaluation discussion, I went over with her areas that she needed to improve upon.

## MY RESPONSE TO THE 2ND EMPLOYEE JOB PERFORMANCE EVALUATION FORM

### SECTION I

Task I: Collects and accounts for money received for payments of fines; prepares monthly tax report memo and monthly reports for distribution of Court Costs to the State Treasurer.   (2 - Satisfactory)

**My Response: Agreed**

Task II: Supervise and train Magistrates and oversee Municipal Court Operations.

(1 - Unsatisfactory) There have been several problems since Nancy's last evaluation in this area. At one point we were unable to have scheduled trials for two weeks because no one was assigned by Ms. Martin to posts dockets.

**My Response:**   **In response to the first sentence, I have never received any written notice of problems since my last evaluation. By the Judge's own mandate, all complaints, counseling sessions, etc., are to be in writing.**

**In response to the second sentence, I never received written notice of dockets not posted nor court not held because of**

same. The Judge is incorrect in her allegation concerning court dockets not being posted or court not being held. I do not at this time have access to the court dockets to prove that dockets were posted and court was held, however, those can be obtained in the Magistrates office. Mary Beth Brackin, who was suspended for two weeks (from April 26 - May 7, 2004) from a disciplinary action (which I was made to administer even though the violation had occurred before my employment with the City of Dothan and should have been administered by Judge Gordon), was responsible for posting court dockets in advance. The correct information concerning this allegation is we had no court sessions during the week of April 26th as it is the last week in the month and is a "no court week", therefore there is no docket and no court was held. Mary Beth had already posted the court dockets for the week of May 7th before being suspended so there were dockets for that week and there are completed dockets proving that court was in fact held that whole week. Mary Beth immediately posted trial dockets upon her return for the next couple of weeks and court was held as always. **In any event, I was new to this office and was still learning the trial procedures. I expect my employees to cover their job duties when they are out of the office; however, since this was an unexpected sudden departure for Mary Beth, she did not have time to do so. The other Magistrates are well aware that they are to either cover the necessary job duties of another Magistrate or advise me someone needs to be appointed to handle the job duty, in an emergency situation.

Given there is proof available that dockets were posted and court was held, this task was rated incorrectly and should be rated again based on the correct information.

Task III: Issues warrants of arrest by determining probable cause, then processes the warrant and forwards to the Police Department for execution.

(Not rated)

**My Response:** I am capable of performing this task; however, it is an assigned job duty of other Magistrates.

Task IV: Process traffic and parking tickets for Municipal Court (including accountability of tickets.

(Not rated)

**My Response:** I do on occasion process traffic tickets and/or parking tickets for Municipal Court; however, Tonja is assigned this job duty.

Task V: Types Municipal Judge's correspondence, assist public, outside agencies, and department employees with information about Municipal court activities, answers telephone and maintain court files.

(1 - Since Ms. Martin's last evaluation, there has been a deterioration in Ms. Martin's relationships with other departments and Ms. Martin has been advised of this.)

**My Response:** I have not been advised of any deterioration in my relationships with other departments. I therefore request a copy of written documentation that was given to me concerning this.

I met with Chief White a few weeks after I began work here to discuss ways that I could help create a better relationship between the police officers and the Magistrates office. I assured Chief White that if there were problems, I was more than willing to work with him or his supervising officers to come up with a solution. Judge Gordon relayed to me a week or so after my meeting with Chief White that Chief White had complained about me. I asked her what had he complained about and where was the written complaint. Of course, I was provided no written complaint, nor do I believe Chief White complained about me.

I have talked with Cpt. Givens several times and offered my cooperation in working out any problems between the police department and the Magistrates office. Officer Tim Ward and Cpt. Givens have made requests by email to me that only the Judge can approve and I have forwarded those requests to Judge Gordon. However, to my knowledge, she has not responded to those requests.

I have spoken with Kai Davis about the possibility of training for the Magistrates to help build a "team" of Magistrates working together and helping each other. I have also spoken with a member of the SEC Team about a possible Task Force made up of Police Department personnel and Judicial Department personnel to build a better relationship between the two departments.

> I have a good relationship with someone in most all departments of the City and am not aware of a deterioration of these relationships and have not received any written complaints.
>
> I am cooperative and nice to the public and outside agencies. I answer the telephone and answer questions from employees, Defendants, attorneys, etc.
>
> If there are any complaints from attorneys, bondsmen, Defendants, etc., I would guess they are due to the fact that I am enforcing policies that were mandated by the Judge previously and recently, some of which have been in effect for several years, but have not been enforced by prior Court Administrators or they were not allowed to enforce them.

Task VI: Approves appearance bonds on misdemeanor cases for Municipal Court, and also approves appeal bonds.

    (Not rated)

**My Response:**    **I usually don't approve appearance bonds, but am capable of doing so. I do approve appeal bonds every time there is one to approve.**

    **This task was incorrectly rated since I do perform part of this job duty on a regular basis and the Judge should be required to properly rate me on this duty.**

Task VII: Scheduling and processing Traffic and Non-Traffic cases for Court appearance and Trials.

    (Not rated)

**My Response:**    **I agree. I don't perform these duties because a Magistrate is assigned to these job duties; however, I am capable of doing so.**

Task VIII: Assists Municipal Judge with all Municipal Court activities.

    (1 - There have been several instances of poor performance in this area since Ms.

Martin's last evaluation for which Ms. Martin has been counseled.)

**My Response:** I recall receiving one memo from the Judge regarding a minor change in job duties I made recently. Her memo to me said to please refrain from changing job duties without first speaking with her. I discussed this memo with the Judge and advised her that I had made minor changes to the job duties twice since they had gone into effect the end of June and not discussed it with her and there had been no complaints. I told her none of the minor changes pertained to working court or the fines room, so I didn't see a need to discuss the changes with her. I also told her the main reason for the minor changes was to add an additional job duty to Lavera McClain and Eunice Knight who seem to have too much free time on their hands. I asked her to please let me supervise everyone in the Magistrates office, not just some. I have had a continuing problem with the Judge in being allowed to supervise, discipline, even encouraged to discipline the white employees, but not allowed to discipline, supervise, or discipline the black employees.

The Judge's memo to me was prompted by Lavera McClain and Eunice Knight's complaints to the Judge that I had given them more job duties and they felt they can't possibly perform the job duties they were already assigned. However, they do have time to stay on the phone on numerous personal phone calls; surf the internet; have visitors in the office without approval; take long lunch hours without approval; run errands without approval; and both sit up at the front window all day when only one is assigned that job duty as the primary on that day.

I request a copy of any written documentation of my poor performance and where I was counseled for same.

**Task IX:** Process necessary paperwork involved in Appeal Cases from the Municipal Court to the Circuit Clerk.

(Not rated)

**My Response:** Mary Beth Brackin is assigned to do appeals to Circuit Court. I sign both the Notice of Appeal and approve the Appeal Bond for every appeal filed.

The Judge should be required to rate me on this task based on the part that I perform.

Task X: Issues subpoenas as needed for Municipal Court Trial and Hearings.

(Not rated)

**My Response:** I issue subpoenas when I continue arraignments or trials; however, these are usually done by Valarie Savage.

The Judge should be required to rate me on this task as I do issue subpoenas.

## SECTION II

1. Quality of Work

Since Nancy's three month evaluation her work performance has declined.

(1 - Unsatisfactory)

**My Response:** I request copies of any written notice(s) of this allegation of declining work performance. My work performance has not declined, it has improved. I have gained knowledge about the municipal court system and the computer system. I have made some positive changes to the Magistrates office and the Courtroom. I have tried to change the image of the Magistrates. I have encouraged them, rewarded them, have maintained my distance in order to be able to supervise them, and think I have gained their respect.

2. Initiative

(2 - Satisfactory)

**My Response:** I agree.

3. Cooperation

Nancy's cooperation with other departments and her supervisor has deteriorated.

(1 - Unsatisfactory)

**My Response:** Again the Judge makes reference to my dealings with other departments; however, I have received no written complaints to justify her statements. I request copies of all written complaints concerning my inability to cooperate with other departments. If my cooperation with my supervisor has deteriorated, it is her fault. I have tried to do what she wants me to do; however, I have a problem with not being able to supervise all employees in my office. I have a problem with her making light of mistakes that Lavera, Eunice and Tonja make, but makes a major ordeal out of mistakes that the others make. I agreed with the Judge when I took this job that we may not always agree, but we would agree to talk about it. I have always been willing and ready to discuss things with the Judge; however, the Judge gives me very little time to speak to her. I have a list of issues that we need to discuss, but I can't seem to get her to meet with me. The Judge and I need some time every week to discuss things that have come up that she needs to make a decision on; things that I need help with; requests from other departments; signing travel requests, my leave requests, etc.; and she needs to include me in meetings she holds to discuss changes in CRO, Maximus, special court sessions with special judges; etc.

4. <u>Safety Consciousness</u>

(Not rated)

**My Response:** I am very safety conscious; however, the Judge is not concerned about the safety of anyone in this office. Since there are thousands of dollars taken in daily in this office and the volatile nature of some of the persons obtaining warrants or paying fines/costs, I assumed when I began work here that this office had a security system. I assumed wrong. I have been asking for the security system to be installed since I began work here in February, and I have been told we are getting one when there is time to install it. The Magistrates working the front windows should have a panic button installed which has not been done either. I also requested that there be cameras mounted in the lobby which we have not received. We need security in this office.

Task 5 - <u>Quantity of Work</u>

(2 - Satisfactory)

**My Response:**    I agree.

Task 6 - <u>Job Knowledge</u>

Nancy's lack of job knowledge regarding Municipal Court and Magistrate duties prevents her from effectively overseeing the Magistrates under her command.

(1 - Unsatisfactory)

**My Response:**    First let me say that the Judge cannot properly evaluate my job knowledge or performance since she is never in the Magistrates office and gets the majority of her information from hearsay from Lavera McClain.

All parties that interviewed me for this position had a copy of my Resume and were well aware that I was not a Certified Magistrate and had never been a Magistrate or Court Clerk. I was advised that they were seeking to hire someone from outside the City who was experienced in management, and who the Judge could hand the Magistrates office over to so she didn't have to deal with it because she had enough to handle with Court. I was assured by the Judge that she would be fully supportive of my decisions and would allow me to supervise without her interference. I was advised that I would be required to obtain my Magistrate Certification within the next four years. I have completed all four Orientation sessions, making a 100 on every exam given at each session, and was to begin my Magistrate Certification in December.

I have learned a great deal in the eight months I have been employed. Since there was no Court Administrator here to train me, I was basically thrown in to learn it myself with the help of the Magistrates. I had very, very little training on the computer court system, but have managed to learn a lot and in fact know more in 8 months than one of the Magistrates knows after attending training for weeks and using the system since November, 2003.

The Magistrates office was in very, very bad shape when I took over as Administrator. The white employees were basically being told what to do by Lavera McClain, who is black and a very, very

good friend of the Judge. If they did anything Lavera didn't like she called the Judge or went over to the Judge's office to tell her so she could take care of it. Even after I began work there, Lavera was still acting as if she was in charge of the office making decisions without my knowledge and going straight to the Judge with requests instead of through me. I even spoke to the Judge about this many, many times during my tenure here and her response has been that Lavera was just trying to help because the Judge trusted her because of their friendship. The Judge should never have formed a close friendship with an employee she supervises. That is the first rule of good management.

**Michelle Sellers has been little help with assisting me in learning the operation of the Court or on the computer court system, since she herself is not a certified Magistrate and has never learned how to use the computer court system. In fact, Michelle adds more to my job duties since she doesn't perform some of hers. We have always had a problem getting the supplies we need for our office which is Michelle's responsibility. We have to continually resubmit our supply list from a previous week(s) to Michelle. Sometimes we don't receive any of the supplies listed and sometimes we receive some of the supplies. We didn't have ink pens for about a month because supposedly we didn't have the money in our budget, however, I know for a fact that Michelle had boxes of pens in her office. The Judge at one point begged me to take over purchasing supplies so we would have what we needed and so Michelle wouldn't not be out of the office a whole day running around getting supplies. The Judge complained to me about her being gone for the office doing this, but never wrote Michelle up for it. I have been more than frustrated about travel requests sent to Michelle to obtain the Judge's signature for approval on that she can't seem to locate for days or weeks at a time; she doesn't follow-up with the Judge to see if she has signed; she doesn't get them to Joette in a timely manner for the City Manager's approval, thus causing panic to the person(s) requesting the travel advance and to accounting to have to make a special check run. The Judge and I have discussed Michelle's inability to perform this duty also, and the Judge's answer was for me to just walk it through to her and then to Joette instead of going through Michelle, which again makes me having to take on another one of Michelle's job duties.**

Task 7 - <u>Dependability</u>

    (2 - Satisfactory)

Task 8 - <u>Dealing With The Public</u>

    (1 - Unsatisfactory)

    Nancy seems to be a bit adversarial in her dealings with the public.

**My Response:** I would need to be made aware of specific information about how I am adversarial with the public since no one to my knowledge has ever filed a complaint against me, or at least I have not received a written complaint that someone has filed against me. I do keep complaint forms in my office to give to anyone who has a complaint against any staff member, including myself. I have always handled the public with a firm but cooperative and helpful attitude. I'm sure some attorneys and bondsmen don't like the professional way I handle matters. I don't show favoritism to some attorneys and bondsmen. I treat them all the same.

I also do not "encourage" people to file written complaints against anyone in the Magistrates office, or against the Judge, or Michelle Sellers or against anyone in any other department as Michelle Sellers and Judge Gordon does in their office.

    I could go on and on in response to this evaluation; however, time does not permit. I hope all of the above will be taken into consideration and something can be worked out. If any more information is needed, I will be glad to provide it.

    Thank you.

*Nancy C. Martin*
10/13/04