# THE CITY OF DOTHAN
## EMPLOYEE JOB PERFORMANCE EVALUATION FORM

| NAME | PERIOD COVERED DUE IN PERSONNEL | TYPE | STATUS CODE |
|---|---|---|---|
| MARTIN   NANCY   C | 07-26-2004 | D | CB |

| SOCIAL SECURITY NUMBER | DEPARTMENT | EVALUATOR(S) |
|---|---|---|
| 104631 | JUDICIAL DEPARTMENT | |

| JOB TITLE | HIRE DATE | STATUS DATE | ANN DATE |
|---|---|---|---|
| 00013   MUNICIPAL COURT ADMINISTRATOR | 01-16-2004 | | 01/16 |

INSTRUCTIONS: EVALUATING SUPERVISOR COMPLETES SECTION I BY RATING EMPLOYEE (1-3) ON JOB PERFORMANCE ACCORDING TO THE BASIC TASK LIST RATING GUIDE FOR THE EMPLOYEE'S POSITION. COMMENTS MUST ACCOMPANY EACH TASK RATING OF UNSATISFACTORY OR EXCEPTIONAL IN THE SPACE PROVIDED.

RATING SCALE:  1 = UNSATISFACTORY    2 = SATISFACTORY    3 = EXCEPTIONAL

## SECTION I

| BASIC TASK FOR POSITION AS DETAILED ON RATING GUIDE | 1 | 2 | 3 |
|---|---|---|---|
| TASK 1: COMMENTS | ☐ | ☒ | ☐ |
| TASK 2: COMMENTS  There have been several problems since Nancy's last evaluation in this area. At one point we were unable to have scheduled trials for two weeks because no one was assigned by Ms. Martin to post dockts. | ☒ | ☐ | ☐ |
| TASK 3: COMMENTS  On further review it has been determined that Ms. Martin does not perform this function | ☐ | ☐ | ☐ |
| TASK 4: COMMENTS  Ms. Martin does not perform this task. | ☐ | ☐ | ☐ |
| TASK 5: COMMENTS  Since Ms. Martin's last evaluation there has been a deterioration in Ms. Martin's relationships with other departments and Ms. Martin has been advised of this. | ☒ | ☐ | ☐ |
| TASK 6: COMMENTS  Ms. Martin does not perform this task. | ☐ | ☐ | ☐ |
| TASK 7: COMMENTS  Ms. Martin does not perform this task. | ☐ | ☐ | ☐ |
| TASK 8: COMMENTS  There have been several instances of poor performance in this area since Ms. Martin's last evaluation for which Ms. Martin has been counseled. | ☒ | ☐ | ☐ |
| TASK 9: COMMENTS  Ms. Martin does not perform this task. | ☐ | ☐ | ☐ |
| TASK 10: COMMENTS  Ms. Martin does not perform this task. | ☐ | ☐ | ☐ |

| NUMBER OF TASKS RATED ON: | 4 | TOTAL RATING SECTION I | 5 |
|---|---|---|---|

PF 102 REV. 1-99 (8th edition)

DOTHAN/Martin & Brackin 1085
Confidential Subject to Protective Order

## SECTION II - TO BE COMPLETED BY EVALUATING SUPERVISOR

RATE EMPLOYEE BY CHECKING APPROPRIATE RATING (1 - 3) ON EACH FACTOR BELOW. COMMENTS MUST ACCOMPANY EACH RATING OF UNSATISFACTORY OR EXCEPTIONAL.

RATING SCALE:  1 = UNSATISFACTORY   2 = SATISFACTORY   3 = EXCEPTIONAL

| # | Factor | Comments | 1 | 2 | 3 |
|---|---|---|---|---|---|
| 1. | QUALITY OF WORK | Since Nancy's three month evaluation her work performance has declined. | X | | |
| 2. | INITIATIVE | | | X | |
| 3. | COOPERATION | Nancy's cooperation with other departments and her supervisor has deteriorated. | X | | |
| 4. | SAFETY CONSCIOUSNESS | | | | |
| 5. | QUANTITY OF WORK | | | X | |
| 6. | JOB KNOWLEDGE | Nancy's lack of job knowledge regarding Municipal Court and magistrate duties prevents her from effectively overseeing the magistrates under her command. | X | | |
| 7. | DEPENDABILITY | | | X | |
| 8. | DEALING WITH THE PUBLIC | Nancy seems to be a bit adversarial in her dealings with the public. | X | | |

RECORD THE NUMBER OF TASKS RATED ON IN SECTION II HERE ▶: **6**

RECORD TOTAL RATING FOR SECTION II HERE ▶: **8**

## SECTION III - OVERALL RATING TO BE COMPLETED BY EVALUATING SUPERVISOR

TO DETERMINE EMPLOYEE'S OVERALL PERFORMANCE RATING, DIVIDE THE SUM OF THE RATINGS FOR SECTION I AND SECTION II BY THE TOTAL COUNT OF TASKS ON WHICH THE EMPLOYEE WAS RATED.

| | RATING | | TASKS | | |
|---|---|---|---|---|---|
| SECTION I | 5 | | 4 | | |
| SECTION II + | 10 | | 7 | | |
| TOTAL = | 15 | ÷ | 11 | = | 1.3 |
| | | | | | TOTAL SCORE |

HAS EMPLOYEE BEEN PROMOTED, DEMOTED, TRANSFERRED OR HAD A SIMILAR CHANGE IN POSITION OR SUPERVISION DURING THIS RATING PERIOD? IF YES, EACH SUPERVISOR COMPLETES A PERFORMANCE EVALUATION FORM FOR EACH SUCH OCCURRENCE AND THE CURRENT SUPERVISOR AVERAGES THE SCORES TO DETERMINE THE EMPLOYEE'S TOTAL SCORE FOR THE RATING PERIOD.

1.00 - 1.99 UNSATISFACTORY    2.00 - 2.99 SATISFACTORY    3.00 EXCEPTIONAL

USE THIS SPACE TO CONTINUE COMMENTS FOR ITEMS IN SECTION I OR SECTION II OR TO DOCUMENT SEPARATE RATINGS.

DOTHAN/Martin & Brackin 1086
Confidential Subject to Protective Order

PF 102 REV. 1-99 (8th edition)

## PERFORMANCE EVALUATION INFORMATION

| | | |
|---|---|---|
| **AUTHORITY:** | (1) CIVIL SERVICE ACT, SECTION 9, PERSONNEL DIRECTOR<br>(2) PERSONNEL RULES AND REGULATIONS VII - JOB PERFORMANCE EVALUATIONS | |
| **EMPLOYEE STATUS CODES:** | CA - REGULAR FULL TIME    CB - PROBATIONARY FULL TIME    CC - PART TIME | |
| **TYPES OF PERFORMANCE EVALUATIONS:** | ANNUAL TYPES:<br>6 MONTH PROBATION TYPES: | G - ANNUAL PERFORMANCE EVALUATION<br>A - PROBATION I<br>    (END OF FIRST 3 MONTHS)<br>C - PROBATION II/REGULAR STATUS<br>    (END OF SECOND 3 MONTHS) |
| | 12 MONTH PROBATION TYPES: | A - PROBATION I<br>    (END OF FIRST 3 MONTHS)<br>D - PROBATION II<br>    (END OF SECOND 3 MONTHS)<br>E - PROBATION III<br>    (END OF THIRD 3 MONTHS)<br>F - PROBATION IV/REGULAR STATUS<br>    (END OF FOURTH 3 MONTHS) |
| | *SECTION 7-40 TYPES: | SA - END OF FIRST TWO MONTHS<br>SB - END OF SECOND TWO MONTHS<br>SC - END OF THIRD TWO MONTHS |
| | *PERSONNEL RULE 7-40 | |
| **DEFINITION OF PERFORMANCE LEVELS** | UNSATISFACTORY | PERFORMANCE CONSISTENTLY FAILS TO MEET JOB REQUIREMENTS |
| | SATISFACTORY | PERFORMANCE CONSISTENTLY MEETS JOB REQUIREMENTS |
| | EXCEPTIONAL | PERFORMANCE CONSISTENTLY EXCEEDS JOB REQUIREMENTS |
| **DEFINITION OF SECTION II FACTORS** | QUALITY OF WORK | EXTENT TO WHICH WORK IS ACCURATE, COMPLETE, TIMELY, THOROUGH, ERROR FREE, ORGANIZED, ETC. |
| | INITIATIVE | EXTENT TO WHICH EMPLOYEE IS A SELF STARTER, TAKES RESPONSIBILITY IN COMPLETING WORK WITHOUT BEING DIRECTED; SEEKS TO IMPROVE WORK METHODS OR PROCEDURES. |
| | COOPERATION | EXTENT TO WHICH EMPLOYEE SHOWS INTEREST IN AND ENTHUSIASM FOR WORK; TEAM SPIRIT; COOPERATIVE WITH COWORKERS AND SUPERVISOR(S). |
| | SAFETY CONSCIOUSNESS | AWARE OF SAFE WORK PRACTICES; DEMONSTRATES SAFE WORK PRACTICES AND EXHIBITS UNDERSTANDING OF IMPORTANCE OF SAFETY IN PERFORMANCE OF ASSIGNMENTS. |
| | QUANTITY OF WORK | AMOUNT OF WORK PERFORMED TO ACCOMPLISH JOB TASKS IN A TIMELY AND ACCURATE MANNER. |
| | JOB KNOWLEDGE | EXTENT TO WHICH EMPLOYEE EXHIBITS UNDERSTANDING OF FUNDAMENTAL PRINCIPLES AND PRACTICES ASSOCIATED WITH THE JOB AND THE ACTIONS NECESSARY TO APPLY THEM TO ACCOMPLISH JOB. |
| | DEPENDABILITY | RELIABLE, PUNCTUAL, GOOD ATTENDANCE, MEETS DEADLINES WITHOUT SACRIFICING ACCURACY OR QUALITY; CARRIES ASSIGNMENTS THROUGH TO COMPLETION. |
| | DEALING WITH THE PUBLIC | EXTENT TO WHICH EMPLOYEE EFFECTIVELY INTERACTS WITH PUBLIC AND CUSTOMERS IN PERFORMANCE OF DUTIES. |

DOTHAN/Martin & Brackin 1087
Confidential Subject to Protective Order

PF 102 REV. 1-99 (8th edition)

## SECTION III (CONTINUED FROM PAGE 2)

EVALUATOR'S COMMENTS: It is with deep disappointment that I must decline to re-
o~~end~~ Ms. Martin for continued employment with the City of Dothan. I had fer-
ve~~ntl~~y hoped that Ms. Martin would be able to correct the shortcomings in her sup-
ervisory style and rise to the admittedly difficult task before her. However, it
has become painfully obvious that she cannot or will not.

EVALUATING SUPERVISOR SIGNATURE: *Rose Gordon*  DATE: 10.5.04

## SECTION IV - REVIEWING DIVISION HEAD OR NEXT HIGHER REVIEWING SUPERVISORY LEVEL.

REVIEWER'S COMMENTS:

REVIEWER'S SIGNATURE: *Rose Gord—*  DATE: 10.12.04

## SECTION V - APPROVING AUTHORITY COMPLETES THIS SECTION BEFORE THE EVALUATING SUPERVISOR CONDUCTS THE PERFORMANCE INTERVIEW SESSION WITH THE EMPLOYEE.

ADDITIONAL PERSONNEL ACTIONS (STATUS CHANGE) REQUESTED BY APPROVING AUTHORITY.

**IS THIS EMPLOYEE BEING RECOMMENDED FOR CONTINUED EMPLOYMENT?**     YES ☐   NO ☒
IF NO, EXPLAIN FULLY BY ATTACHING ADDITIONAL SUPPORTING DOCUMENTATION.
IF YES, AND THIS IS A TYPE C OR TYPE F PROBATIONARY EVALUATION, COMPLETE
A STATUS CHANGE FORM (PF#101) AND SUBMIT WITH THIS FORM.

APPROVING AUTHORITY (DEPARTMENT HEAD) COMMENTS:

APPROVING AUTHORITY SIGNATURE: *(signature)*  DATE: 10/7/04

## SECTION VI - EMPLOYEE PERFORMANCE REVIEW AND INTERVIEW SESSION

EMPLOYEE COMMENTS ON JOB PERFORMANCE EVALUATION AND INTERVIEW SESSION:

DATE OF PERFORMANCE INTERVIEW SESSION:

EMPLOYEE'S SIGNATURE:  DATE:
EVALUATING SUPERVISOR SIGNATURE: *Rose Gordon*  DATE: 10.12.04

## SECTION VII - TO BE COMPLETED BY PERSONNEL

| DATE / TYPE OF NEXT EVALUATION: DATE | TYPE: |
|---|---|
| SCORE | AVERAGE |
| STATUS CODE | |
| REGULAR STATUS EFFECTIVE DATE | AS400 |

F 102 REV. 1-99 (8th edition)

DOTHAN/Martin & Brackin 1088
Confidential Subject to Protective Order

4

## Attachment 1

It is with utmost disappointment that I must decline to recommend Ms. Martin for continued employment with the City of Dothan. I had fervently hoped that Ms. Martin would be able to correct the shortcomings in her supervisory style and rise to the admittedly difficult task before her. However, it has become painfully obvious that she cannot.~~or will not~~. The reasons for this decision are as follows.

1. Ms. Martin is apparently unable to interact professionally with personnel from the various private attorneys' offices who practice in City Court, the City Attorney's Office, contract personnel and the various public defenders' offices to the point that staff from these offices actually call my office to avoid having to call the Magistrates' Office saying that employees of that office are incredibly nasty to deal with. Further, several attorneys have approached me with horror stories regarding their inability to obtain the assistance needed to carryout their normal day-to-day duties on behalf of their clients with cases in City Court. One especially troubling incident involved Ms. Martin refusing to allow an attorney to file a motion in the Magistrates' Office. Although the motion was late, the attorney should simply have been allowed to file the motion which should have then been put before me accompanied by the applicable paperwork for me to rule upon. Ms. Martin took it upon herself to turn the attorney away, refusing to allow the motion to be filed until the attorney threatened further action. On another occasion, I called the Magistrates' Office and asked Ms. Mary Turner to pull the paperwork on a defendant and send that paperwork to me to ensure that a warrant would not be issued for the defendant's arrest as this gentleman is from out-of-state and had sent in the requisite documents pursuant to his agreement with the City Prosecutor. After this, Ms. Martin directed that the warrant be issued contrary to my wishes because the defendant had called the Magistrates' Office and was belligerent when told, erroneously, that his documents had

DOTHAN/Martin & Brackin 1089
Confidential Subject to Protective Order

not been received and that he would have to drive back to Dothan from Michigan or have a warrant issued for his arrest although the documents had been sent and received well in advance of this court date. The defendant did in fact drive back to Dothan from Michigan as a result. Ms. Martin issued this directive without the paperwork which was in the Court's possession in an effort to prevent the erroneous issuance of this warrant. After addressing the issue with Ms. Martin, I dismissed her actions as being a result of her newness to the position and unfamiliarity with magisterial procedure; I now perceive that it was the beginning of a pattern of behavior on her part. As troubling as these incidents involving attorneys are, the incidents that cause me the most concern are those regarding citizens who are not represented by counsel. The attorneys at least know how to gain recourse from these arbitrary decisions; however, the average citizen might have no idea where to turn for help. The idea of public service, far from increasing in import since Ms. Martin's hire, seems to be ever diminishing in import.

2. The attitudes of the employees of the Magistrates' Office towards one another have also deteriorated. The back-biting that had begun to diminish while the employees had to pull together to accomplish their work after the loss of Ms. Bettye King has now increased alarmingly. Rather than continuing to work together effectively, there appears to be an endless parade of tattling on each other, recounting false and/or unsubstantiated and unwritten allegations which Ms. Martin spends an enormous amount of time investigating.

3. Traditionally, I have tried to make it clear to the personnel under my supervision that an honest mistake, made through no malice on the part of the employee would not be punished if the employee in question made every effort to correct the mistake and deal with any repercussions arising from the incident. Ms. Martin herself failed to re-assign the duties of Ms. Mary Beth Brackin when Ms. Brackin was out of work for an extended period due to disciplinary measures. Because no dockets were posted while Ms. Brackin was

2

DOTHAN/Martin & Brackin 1090
Confidential Subject to Protective Order

absent, no officers were notified to be in Court and the City was unable to prosecute without witnesses. Many of the defendant' missed work to come to court only to have their cases continued because the City had no witness.

4. The various personalities of the employees in my department are, by necessity, well-known to me. I have interacted with all of my employees on a regular basis for the close to five years of my tenure as Municipal Judge. Therefore, it is quite difficult for anyone to tell me something erroneous about the work habits of one of my employees. Ms. Martin recently completed a performance evaluation on one of our most efficient, effective and pleasant employees so negative that it would have deprived the employee in question of her step increase in pay. This immediately raised caution flags in my mind for several reasons. First, Ms. Martin has been employed by the City only a short time at that point and six weeks of that time the employee evaluated was out of work for surgery, thus giving Ms. Martin little time to observe her work habits. Secondly, a striking disparity between prior evaluations of the employee prepared by previous supervisors and the one prepared by Ms. Martin was apparent upon cursory examination of the two, as the employee had previously been consistently rated above average. Thirdly, a careful perusal of the evaluation prepared by Ms. Martin revealed that Ms. Martin, in her ignorance of magisterial procedure, had relied on information from outside sources. While her lack of knowledge is certainly understandable given her short tenure, unsubstantiated and unsupported allegations are certainly not acceptable reasons for cutting an employee's evaluation score. In support of the evaluation, Ms. Martin cited events which occurred before her hire date, clearly something of which Ms. Martin could not have had personal knowledge. After consulting with another department head, the Interim City Manager and a representative from the Personnel Department regarding my concerns about the evaluation, I called Ms. Martin into my chambers to request that she review the previous evaluations of the employee, copies of which I provided her, and review her evaluation as

3

DOTHAN/Martin & Brackin 1091
Confidential Subject to Protective Order

*the vague and unsubstantiated basis of the allegations coupled with the short time she had been able to observe the employee, the long, favorable work history of the employee and the enormity of the possible economic deprivation to the employee caused me to fear that the employee would have ground to appeal this evaluation.*

DOTHAN/Martin & Brackin 1092
Confidential Subject to Protective Order

4

## Attachment 2

As of this date, July 8, 2004, my concern regarding the state of affairs at the Magistrates' Office continues to deepen steadily. On or about June 8, 2004 I met with Ms. Martin in my chambers and requested that she address the problems outlined in Attachment 1 with all due haste. I have been sadly disappointed in her response, or rather, the lack thereof. Further, additional problems have become apparent since the aforementioned missive was penned. I outline those problems below.

1. It appears that Ms. Martin applies discipline and personnel rules in an arbitrary and capricious manner. One example occurred when the daughter of one of our magistrates (who had ample accrued leave time) was diagnosed with a tumor which required an additional biopsy to determine the extent of surgery required to remove all of the cancerous growth. This magistrate advised Ms. Martin of the aforementioned facts and requested to be allowed to take the day of the second biopsy off from work to attend to her daughter. The employee was advised that she would have to return to work immediately upon her daughter leaving the surgical facility, and furthermore, that she would be required to bring a note from her daughter's surgeon advising the length of the procedure and at what time the employee left the facility. The employee, not knowing the extent of the surgical procedure needed until after the second biopsy, advised Ms. Martin that, depending on the results of the procedure and her daughter's mental and physical state, she might not be able to work on the day following the surgery, whereupon Ms. Martin told the employee that if she was not at work on that date, she would be written up. Ms. Martin has confirmed the majority of these allegations. My secretary (our payroll clerk) advised Ms. Martin that this was not acceptable according to Personnel Regulations and advised Ms. Martin of the location of the pertinent rules in our Employee Handbook. Last week another magistrate called in with the news that her husband's niece had been diagnosed with toxic shock syndrome and would need to seek treatment for this

DOTHAN/Martin & Brackin 1093
Confidential Subject to Protective Order

malady in Birmingham, AL. This magistrate (who did not have accrued leave to cover this absence) was granted four (4) days of leave by Ms. Martin to assist with the care of the niece. This contradicted Personnel Rules and Regulations which require a department head to approve leave requests involving an employee without accrued leave time and which restrict use of sick leave to the care of immediate family members. The disparity between the treatment received by the first employee and that received by the second employee seems to make it alarmingly clear that different magistrates are treated very differently when it comes to leave time.

2. Ms. Martin's ability to interact successfully with attorneys both within the City and those privately employed has not improved appreciably since my counseling session with her. A stand-out example of this involves an incident in which a magistrate in the Courtroom took offense at a remark allegedly made by the City Prosecutor during a trial and called Ms. Martin to complain. Ms. Martin took the magistrate's comments at face value and without any further investigation "took the City Prosecutor to task" for her remark, resulting in a verbal altercation. It should first be noted that I was present when the problem arose and the Prosecutor's remark was not out of line, but even if it had been, Ms. Martin should have addressed this through me, not directly with the Prosecutor. Ms. Martin's comments to the City Prosecutor were unprofessional enough by themselves, but at one point Ms. Martin consistently refused to speak to this attorney in the Courtroom or elsewhere after this incident, creating an extremely tense atmosphere for all who work with the Court.

3. Ms. Martin took it upon herself to inform an employee whose evaluation she reviewed at my request that she (Ms. Martin) did not appreciate having been "forced" to change this evaluation and that it would not happen again. This was something that the employee had no knowledge of and which came as quite an unpleasant shock to her. Remarks like this do not contribute to a pleasant working environment for the employees of this department and are both unprofessional

2

DOTHAN/Martin & Brackin 1094
Confidential Subject to Protective Order

*and counter-productive to the job performance that I expect from departmental employees and supervisors.*

Following this incident Ms. Martin alleged to me that I had "threatened" her with firing if she did not give the employee in question a favorable evaluation. I vehemently deny this allegation and aver that I only exercised my authority as department head to ask Ms. Martin to review prior evaluations of the employee and <u>review</u> the evaluation.

3

DOTHAN/Martin & Brackin 1095
Confidential Subject to Protective Order

## Attachment 3

Although every opportunity has been extended to Ms. Martin to correct the short-comings outlined in Attachments 1 and 2, no progress is evident on her part. In fact the problems seem to grow exponentially with the passage of time. As of this date, September 30, 2004, the following issues have arisen.

1. A magistrate had stock-piled case files in her office for several months, resulting in <u>several</u> cases to be transferred for felony cases not being prosecuted by the proper court, meaning that the defendant was not and will not be prosecuted for these <u>felony</u> offenses. For this serious error, the magistrate in question was issued a memo by Ms. Martin. Both the Assistant City Attorney and I discussed the seriousness of this matter with Ms. Martin and advised her that this infraction warranted more disciplinary action than a memo. I requested that Ms. Martin inform me of what further action was taken, but Ms. Martin has failed to inform me of any further action on her part so I must assume that none was taken.

2. Another magistrate failed to recall a warrant <u>after</u> accepting money from a defendant for payment of a fine, resulting in the defendant's arrest later for a warrant that should have been recalled. No action has yet been initiated by Ms. Martin regarding this situation.

3. Ms. Martin was standing in the Courtroom on Tuesday, the 28th of September, 2004 during Traffic Arraignments when I realized that we needed another magistrate in the Courtroom to help enter youthful offender defendants into the computer system. Since Ms. Martin was already present in Court, it would seem that she would have assisted, however she was completely unable to do so as she lacks even rudimentary understanding of the process involved.

4. On Tuesday, September 29th, 2004, Ms. Martin stood in the front area of the Magistrates' Office without intervening as one magistrate, in the words of another magistrate present at the time "bellowed" at a fellow magistrate for a perceived error. Ms. Martin never did intervene in the situation.

DOTHAN/Martin & Brackin 1096
Confidential Subject to Protective Order