| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement completing this form. | AGENCY<br>☐ FEPA<br>☒ EEOC | CHARGE NUMBER<br>130-2005-02706 |
|---|---|---|

_____ None _____ and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) Mrs. Nancy C. Martin | HOME TELEPHONE (Include Area Code) 334-702-4778 | |
|---|---|---|
| STREET ADDRESS 408 Christopher Drive | CITY, STATE AND ZIP CODE Dothan, Alabama, 36301 | DATE OF BIRTH 4/28/56 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME City of Dothan | NUMBER OF EMPLOYEES, MEMBERS More than 20 | TELEPHONE (Include Area Code) 334-615-3000 |
|---|---|---|
| STREET ADDRESS 126 North St. Andrews Street, Dothan, AL 36301 | | COUNTY Houston |
| NAME (Indicate Mr., Ms., Mrs.) Rose Evans-Gordon (Municipal Judge) | HOME TELEPHONE (Include Area Code) 334-615-3000 | |
| STREET ADDRESS 126 North St. Andrews Street, Dothan, AL 36301 | | COUNTY Houston |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es)):

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)  LATEST (ALL)
10/18/2004

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On January 16, 2004, I, Nancy C. Martin (white), was hired by the City of Dothan to be the Municipal Court Administrator. Taking part in the initial hiring decision was my immediate Supervisor, Judge Rose Evans-Gordon (black). Though I was never given a formal written job description designed expressly for the Court Administrator, it was explained to me that I was expected to be the direct supervisor over 9 Court Magistrates (3 black and 6 white), and two Clerk/Typists (both white).

On October 12, 2004, I was abruptly given a Disciplinary Action Report Form, Notice of Determination Hearing and Possible Disciplinary Action, a copy of my second probationary

(Continued)

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) _Martha Vallule_<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br>2/22/05  _Nancy C. Martin_<br>Date   Charging Party (Signature) | SIGNATURE OF COMPLAINANT _Nancy C. Martin_<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>22 Feb 2005 |

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 1, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITERS


DEFENDANT'S EXHIBIT 33

DOTHAN/Martin & Brackin 1045
Confidential Subject to Protective Order

<u>**Nancy C. Martin**</u>     **Continuation of Charge of Discrimination – Page 2**

Employee Job Performance Evaluation Form (which was due in Personnel by July 26, 2004, but not performed by the Judge until October 5, 2004), and an Interoffice Memorandum notifying me that I was being placed on administrative leave pending a final decision. I was served by a City of Dothan police officer a Notice of Termination made effective October 18, 2004. I believe that I was terminated and made to suffer adverse terms and conditions of employment (hostile work environment) prior to my termination for the following reasons:

A.   During the initial and subsequent job interview, it was made clear to me that I must closely supervise, and be prepared to discipline 3 or 4 Magistrates. I was to learn after my hire that all of these employees were white.

B.   During one of my interviews, and also immediately after my hire for the position of Court Administrator, I was instructed by the Judge that I was to prepare two Disciplinary Notices, both to white Magistrates. I was not employed during the time that these white Magistrates allegedly committed the offenses.

C.   After my hire, and in spite of my request to do so, Judge Gordon denied my request to participate, or at least sit in, on the interviews of potential applicants for a Court Magistrate vacancy. On information and belief, the Judge had every intention of hiring a black applicant and did not desire my potential interference.

D.   In approximately January, 2004, Judge Gordon permitted one of the black Magistrates to assign offices and engineer the relocation of the Magistrates Office to a new facility. This black Magistrate assigned some of the larger, and acoustically better, offices to the black Magistrates. A white Magistrate, who was the Magistrate with the most seniority, but who had lost favor with Judge Gordon, was not given an office, but merely assigned a desk in a corner, not suitable for functioning effectively.

E.   After the new Magistrate (black) was offered the position with the Magistrates Office, Judge Gordon pressured me to assign this new employee one of the better offices.

F.   For the first few months of my employment, I went along with what the Judge asked or instructed me to do in order to get along; and, on April 19, 2004, when my first evaluation was due, it was positive.

G.   On or about the last week of April, 2004, I was required by the City Personnel Department to do an annual evaluation on Lavera McClain (black), the Magistrate who also made the office assignments. When I delivered the evaluation to Judge Gordon, I advised her that we would need to talk about the evaluation because I was sure she would be upset about the ratings. Instead of meeting with me first concerning the ratings, she met with Jerry Corbin, then Interim City Manager; one of the Personnel Department employees (don't recall the name); and, I believe, one other person (name not known). It was after the Judge had discussed this evaluation with those persons, that she called me to come to her office to discuss Lavera's unsatisfactory evaluation. She first asked couldn't I reconsider my ratings. She noted that my ratings were out of

DOTHAN/Martin & Brackin 1046
Confidential Subject to Protective Order

**Nancy C. Martin**          **Continuation of Charge of Discrimination - Page 3**

line with ratings that Ms. McClain had received in the past. Judge Gordon was not persuaded by my argument that my ratings represented my best judgment, and the past ratings appeared to be carbon copies of each other. After much discussion, I was reminded by the Judge that I was still on probation. I was instructed to take the evaluation home and see if I could not agree that some of my ratings were too harsh, and if so, make adjustments. Feeling my job had been threatened by the Judge reminding me I was still on probation, I saw no alternative but to take it home and reconsider my ratings.

H.   From time-to-time Judge Gordon instructed me to write up disciplinary actions against white Magistrates. I was never instructed to write up black Magistrates.

I.   As part of my job duties I would, from time-to-time, make or change job assignments. On September 23, 2004, I made revised job assignments giving two black Magistrates what I viewed as, very minor additional job duties. This was made necessary because these Magistrates appeared to have too much free time on their hands. These Magistrates complained to Judge Gordon. I was subsequently warned by the Judge not to make new job assignments without first running the changes through her.

J.   On September 29, 2004, because I was upset about the memo the Judge had done to me regarding the minor job duty changes and also about a wrongful arrest handled very inconsistent of the policy and procedure by Lavera and Eunice, I went to talk to the Personnel Director. I advised the Personnel Director that I had been telling her that the problems in the Magistrates Office were not racially motivated because I wanted to get along with the Judge and because I feared I would lose my job. I told her that I was admitting to her on that date that I believed the problems in the Magistrates Office were racially motivated by the Judge showing favoritism to the black Magistrates. I was advised by the Personnel Director to keep a calendar documenting every day the incidents that happened and to keep it with me at all times and not let anyone else see it. I began on this date keeping notes, and also went back to the days I remembered what had happened and filled those in also. She also advised me that she was going to do some checking into the claims of the problems being racially motivated.

K.   After the above incident on September 23, 2004, the Judge made herself scarce and would seldom return my calls or make herself available for meeting with me. On October 12, 2004, I received my second three month evaluation (two and a half months late), which recommended my immediate termination. The reason advanced, unsatisfactory job performance, was pretextual. The real reason I was terminated was that I would not go along with the Judge's disparate treatment of the black Magistrates.

DOTHAN/Martin & Brackin 1047
Confidential Subject to Protective Order