DEC - 8 2006



DEFENDANT'S
EXHIBIT
36

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 242-4621), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2006-2007

---

### 2050558

---

### City of Dothan

### v.

### Mary Beth Brackin

### Appeal from Houston Circuit Court
### (CV-05-5144)

CRAWLEY, Presiding Judge.

Mary Beth Brackin, a magistrate for the Dothan Municipal Court, was dismissed from her employment with the City of Dothan after having been found guilty of two major offenses under the City's Personnel Department Rules and Regulations

2050558

("the Personnel Rules"), namely: insubordination and negligence in carrying out assigned tasks, within 24 months of a previous major offense. Brackin appealed her dismissal to the City's Personnel Board, which affirmed the dismissal. Brackin then appealed the Personnel Board's affirmance of the dismissal to the Houston Circuit Court. The circuit court reversed the decision of the Personnel Board, and the City appealed to this court.

<u>Standard of Review</u>

"The trial court's review of the Board's decision is limited to 'the record made before the Board and to questions of law presented, and that court must affirm the judgment of the Board if there is substantial evidence to support its findings.' <u>City of Mobile v. Seals</u>, 471 So. 2d 431, 433 (Ala. Civ. App. 1985). If there is substantial evidence to support the Board's determination, the trial court must affirm the Board's decision and may not substitute its judgment for that of the Board. <u>Id.</u> The trial court is not permitted to judge the wisdom of the decision of the Board. <u>Creagh v. City of Mobile Police Dep't</u>, 543 So. 2d 698 (Ala. Civ. App. 1989)."

<u>City of Mobile v. Robertson</u>, 897 So. 2d 1156, 1159 (Ala. Civ. App. 2004). Substantial evidence is "relevant evidence ... that might be accepted by reasonable minds as adequate to support a conclusion." <u>City of Mobile v. Trott</u>, 596 So. 2d 921, 922 (Ala. Civ. App. 1991). In the administrative-law

2

2050558

context, substantial evidence exists if there is "'a rational basis for the conclusions approved by the administrative body.'" City of Mobile v. Seals, 471 So. 2d 431, 434 (Ala. Civ. App. 1985)(quoting Ex parte Morris, 263 Ala. 664, 668, 83 So. 2d 717, 720 (1955)).    Thus, if the Personnel Board properly applied the law and there was substantial evidence to support its decision, the circuit court was bound to affirm its decision. City of Dothan Personnel Board v. Herring, 612 So. 2d 1231, 1232-33 (Ala. Civ. App. 1992).    "'This court is likewise governed by the same standard as the [trial] court; if we conclude that substantial evidence existed to support the Board's decision, we must uphold it.'" City of Mobile v. Robertson, 897 So. 2d at 1159 (quoting Creagh v. City of Mobile Police Dep't, 543 So. 2d 698, 699 (Ala. Civ. App. 1989)).

## Factual Background

Brackin worked as a magistrate for the City from May 1992 until May 2005.    During the time at issue in this case, Brackin's supervisor was Municipal Judge Rose Evans-Gordon. One of Brackin's job duties was to process uniform traffic tickets and complaints ("UTTCs") filed in the municipal court.

3

2050558

Brackin administered oaths to police officers, received
tickets filed by the police officers, and accounted for those
tickets on UTTC transmittal forms.

On April 22, 2004, Brackin received a 10-day suspension
and 2 years' probation for violating § 3-42(6) of the
Personnel Rules -- action(s) or lack of actions(s) that could
cause undue financial loss to the City -- and § 3-42(14) of
the Personnel Rules -- insubordination -- both of which are
designated as major offenses.  Brackin testified that both
charges were based on the fact that she had informed a citizen
who believed that he had been falsely arrested that he could
file a complaint in the City clerk's office.  On cross-
examination, Brackin was asked whether she had informed the
citizen that the warrant for his arrest had been wrongly
issued and that his arrest was, therefore, illegal.  Brackin
denied giving the citizen that information.  Brackin did not
appeal her suspension to the Personnel Board.

Sometime in early 2005, another city magistrate, Mary
Turner, was placed on administrative leave pending a police
department investigation of allegations that Turner had
"fixed" a traffic ticket issued by Cpl. Eric Duhaime of the

4

2050558

Dothan police department to Stephen Phelps on November 24, 2002.[1]  After Turner was placed on leave, Judge Evans-Gordon instructed all the other magistrates to cooperate fully with the investigation and "to strictly refrain from any contact with Ms. Turner."  Brackin inquired whether the prohibition extended to after-hours contact with Turner because, she said, she and Turner attended the same church.  The judge replied that the prohibition extended to any contact with Turner.

On April 29, 2005, Brackin was charged with two major offenses.  The first was insubordination, based upon the allegation that Brackin had willfully disobeyed the judge's instruction to refrain from contact with Turner.  Brackin acknowledged that she had contacted Turner. Brackin testified that, after Turner was placed on leave, she was assigned to take over Turner's job duties.  Brackin explained that she had been unable to complete one of those duties without having access to a form for a letter that she was required to send to youthful offenders who had failed to appear in court.  Brackin testified that she thought the form letter was on Turner's

_____

[1] The investigation ultimately revealed that Turner had promised to fix Phelps's speeding ticket in return for Phelps's doing work on Turner's roof.

2050558

computer desktop, but, she said, all employees had been
forbidden to go into Turner's office or to use Turner's
computer, so Brackin telephoned Turner to inquire where she
could find the form letter.  On cross-examination, Brackin
conceded that, after the judge's order, there were other
occasions when she had conversations with Turner, but, she
said, she did not recall the content of those conversations.

The second major offense with which Brackin was charged
on April 29, 2005, was violating § 3-42(6) of the Personnel
Rules -- negligence in carrying out assigned duties by failing
to account for a traffic ticket issued by a Dothan police
officer.  That charge arose out of the same nucleus of
operative facts for which Turner had been placed on leave.

The evidence was undisputed that, on November 24, 2002,
Cpl. Eric Duhaime issued a speeding ticket to Stephen Phelps.
Cpl. Duhaime testified that, on December 4, 2002, he turned in
that ticket and others he had recently issued, along with a
UTTC transmittal form, to Brackin.  Cpl. Duhaime acknowledged
the tickets under oath before Brackin and left the
magistrates' office.    Later, Cpl. Duhaime said, Turner
contacted him, told him that she knew Stephen Phelps, and

6

2050558

asked if Cpl. Duhaime would be willing to "void [the ticket]
out."  Duhaime agreed to void the ticket and asked Turner to
return the copies of the ticket to him.  Turner mailed all
copies of the ticket to Cpl. Duhaime.

The  record  contains  a  UTTC  transmittal  form,  dated
December 4, 2002, and signed by Brackin.  On the form, the
space provided for the "court case number" with respect to the
Phelps ticket is lined through and replaced with the  the word
"VOID."  Upon being shown the form, Brackin acknowledged that
she had lined through the space for the court case number and
had  written  the  word  "VOID,"  but,  she  said,  she  had  no
specific recollection of the Phelps ticket or why she wrote
the word "VOID" on the form.  In answer to a question by her
attorney, she acknowledged that "[i]f the officer said that he
gave the okay for the ticket to be retrieved, that [could have
been] the basis for triggering [the] void."  Brackin testified
that,  because  the  Phelps  ticket  was  not  with  the  UTTC
transmittal form and the other tickets listed on the form, the
Phelps ticket was "not in the system."  She also stated that
she was "not part of the process [that brought] the ticket out
of the system."  Brackin testified that she did not void the

7

2050558

Phelps ticket; by writing the word "VOID" on the UTTC transmittal form, she merely reflected the reality that the ticket had already been voided.

Cpl. Duhaime testified that a police officer has unlimited discretion as to whether to issue a ticket to a motorist. He stated that sometimes, after an officer has issued a ticket, there is a valid reason to void the ticket. For example, Cpl. Duhaime said that if an officer writes a ticket for failure to have proof of insurance and, before the officer leaves the scene, the motorist finds his insurance card, the officer will void the ticket and write on the ticket the reason for voiding it. Cpl. Duhaime explained, however, that an officer has to account for all tickets, even those that have been voided. Cpl. Duhaime said that an officer is required to turn in all tickets to the magistrates' office and to provide a copy of a voided ticket to a superior officer.[2]

_____

[2]The UTTC is reproduced as Attachment One to Rule 19, Ala. R. Jud. Admin. The UTTC contains a page of "Instructions to Officers" that includes the following statement:

"5. All copies of a voided ticket must be returned to the local issuing office."

2050558

Judge Evans-Gordon testified that once a police officer has "sworn to" a ticket before a magistrate, the ticket becomes a "complaint" and neither the officer nor the magistrate can void the ticket. The ticket can be disposed of only by the court. The judge stated that, although the Dothan Municipal Court had no internal manual or memoranda that specifically addressed the instant situation, the magistrate's handbook "tells ... how a UTTC is supposed to be handled." The record does not contain a copy of the magistrate's handbook. Cpl. Duhaime testified that, at the time he agreed to void the Phelps ticket, he was unaware that he did not have the discretion to void a ticket that had been "sworn to" before a magistrate. He stated that for his participation in voiding the Phelps ticket he was charged with a major offense and placed on two years' probation.

### The Charge of Failing to Account for a Traffic Ticket

With respect to the charge that Brackin violated § 3-42(6) of the Personnel Rules by failing to account for a traffic ticket issued by a Dothan police officer, the circuit court's judgment reversing the Personnel Board's decision to uphold Brackin's dismissal states:

9

2050558

"Evidence concerning the authority of a police officer to void traffic citations after they are issued seemed open to various interpretations at the time of and prior to Mary Beth Brackin's termination. Most witnesses seemed to agree that the issuing officer could void a citation for any reason prior to filing with the Magistrate's Office. Officer Duhaime apparently felt that he had this authority, as did Mrs. Brackin, at any time prior to its being assigned a city court case number and being transmitted to that Court. The City of Dothan, on the other hand, insists that once a citation is filed with the Magistrate's Office that it can only be disposed of by action of the City Judge.

"In the Court's opinion, the City's position is the more logical and sound policy for handling traffic citations. What is clear, however, is that no set policy was in place for Magistrates to follow in situations such as that presented to Mary Beth Brackin. What was she supposed to do when she began assigning case numbers for citations [listed on the UTTC transmittal form filed by Cpl. Duhaime] and discovered that Corporal Duhaime and Mary Turner had voided the citation to Stephen Phelps? Should she have insisted that Duhaime return the citation? Did she have that authority? Was it her responsibility to investigate what had happened and then 'blow the whistle' on Mary Turner and Corporal Duhaime?

"Perhaps, in hindsight, a policy should be adopted whereby every citation voided after it is filed with the City Magistrate's Office should be flagged so that it can be investigated by the City Judge. Mary Beth Brackin didn't try to conceal anything. She had not voided the citation, nor had she sought permission to void it, nor did she know why it was voided. She simply marked the record to reflect the truth of the matter as she understood it, and for this she was charged with negligence. If she was negligent, there were others higher in

10

2050558

the chain of custody of the Transmittal Sheet who were likewise negligent in not questioning why the citation was voided. The Transmittal Sheet is an official record and was on file with the City Court for almost eighteen (18) months prior to these charges being made.

"In the opinion of the Court, there was not substantial evidence of negligence on [Brackin's] part. Had a firm policy been established and made known to all Magistrates beforehand, then a departure from it could be deemed negligence. That didn't happen here."

In Lawrence v. State, 601 So. 2d 194, 195 (Ala. Crim. App. 1992)(quoting Brown v. State, 565 So. 2d 585, 599 n. 16 (Ala. 1990) (Maddox, J., dissenting)), the Court of Criminal Appeals explained the procedure established by statute and by rule for the issuance and handling of UTTC's:

> "'To prevent the improper issuance of traffic tickets, and to prevent a law enforcement officer or other person from tearing up a ticket, there are strict accountability requirements in the statutes and in Rule 19[, Ala. R. Jud. Admin.,] for each and every Uniform Traffic Ticket and Complaint "issued to law enforcement officers." See § 12-12-54[, Ala. Code 1975,] and Rule 19(a)(5) [now Rule 19(A)(5)(a), Ala. R. Jud. Admin.].'"

Section 12-12-54, Ala. Code 1975, provides, in pertinent part:

> "The judge or judges and the clerk of the district court shall designate personnel to be responsible for accounting for all uniform traffic tickets and complaints issued to law enforcement

11

2050558

    officers or others in their jurisdiction and for the proper disposition of the forms and shall cause to be prepared records and reports relating to the uniform traffic tickets and complaints in the manner and at the time as may be prescribed by rule of the Supreme Court."

Section 12-12-56, Ala. Code 1975, provides:

    "(a) No law enforcement officer or other officer or public employee shall dispose of a uniform traffic ticket and complaint or any portion thereof or the record of issuance thereof in a manner other than as required under rules or regulations promulgated pursuant to this subsection.

    "(b) Any person who solicits or aids in the disposition or attempted disposition of a uniform traffic ticket and complaint or any portion thereof in any unauthorized manner is subject to the criminal contempt power of the district or municipal court."

Rule 19(A)(5), Ala. R. Jud. Admin., entitled "Accountability

for Tickets," states:

    "(a) Law Enforcement Agencies. Each law enforcement agency shall be responsible for the proper accounting and use of all tickets stocked by that agency. Each law enforcement officer issuing a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon the defendant and, without unnecessary delay, normally within 48 hours, acknowledge under oath the facts alleged therein before any person within the judicial branch of government who is authorized by the State of Alabama to administer oaths and file the court copies of the ticket with the court having jurisdiction over the alleged offense.

2050558

"(b) Courts. The presiding circuit judge, other judge, or clerk of each court shall designate personnel to be responsible for accounting for all tickets used in such court. The designated personnel shall be responsible for the proper disposition and accounting of such tickets and shall cause to be prepared and submitted such records and reports relating to the tickets as may be requested by the [Administrative Director of Courts]."

Rule 43, Ala. R. Jud. Admin., entitled "Minimum Accounting Requirements for Municipal Courts," provides, in pertinent part:

"(A) Internal Controls Over Records and Cash. The magistrate or the municipal judge should design a system of internal control over all court records. Those controls should address [UTTC] numbers and procedures for accounting for all UTTC numbers. They should also address assignment of case numbers and accounting for all cases and their disposition. The procedures should set out responsibilities of court personnel and segregate duties to the extent possible with the number of employees assigned. The procedures for the internal-control system should be set out in writing.

"....

"(B) Uniform Traffic Ticket and Complaint Forms. ...

"....

"When an officer transmits to the court UTTC forms that have been issued, he or she should list each ticket in numerical sequence on a UTC Transmittal Form (Form UTC-3, attached to this rule as Appendix C), arrange the tickets ... in the order

13

2050558

that they appear on the Form UTC-3 and submit both copies of this form to the court clerk.

"The court clerk should assign a case number to each citation issued on the Form UTC-3, write the case number in the appropriate space on the form, and return the copy to the officer for his or her records.

"NOTE: The UTTC Transmittal Forms should then be placed in a permanent record book (a three-ring binder is ideal for this purpose if the holes are punched in the transmittal). The forms should be filed in <u>case number</u> sequence. The permanent record of UTTC forms received, issued to officers, and received after issuance by the officers, and the permanent record book of UTTC Transmittal Forms should be kept in a secure place."

The circuit court's judgment states that "[e]vidence concerning the authority of a police officer to void traffic citations after they are issued seemed open to various interpretations at the time of and prior to Mary Beth Brackin's termination." Although that statement may be true, it is irrelevant to the issue presented. A police officer's authority to void a ticket after it has been "sworn to" is not the issue in this case. The issue is what a police officer (and, subsequently what a magistrate like Brackin) must <u>do</u> with all tickets, whether they have been "voided" or not. The facts and the law pertaining to that issue are clear. Cpl. Duhaime testified that a police officer has to account for all

14

2050558

tickets, even those that have been voided. Cpl. Duhaime said
that an officer is required to turn in all tickets to the
magistrates' office and to provide a copy of a voided ticket
to a superior officer. The "Instruction to Officers" section
of the UTTC itself states that "[a]ll copies of a voided
ticket must be returned to the local issuing office." By
asking Turner to mail the copies of the Phelps ticket to him,
Cpl. Duhaime violated § 12-12-56(a), Ala. Code 1975, which
provides:

> "(a) No law enforcement officer or other officer
> or public employee shall dispose of a uniform
> traffic ticket and complaint or any portion thereof
> or the record of issuance thereof in a manner other
> than as required under rules or regulations
> promulgated pursuant to this subsection."

The evidence was undisputed that, on December 4, 2002,
Brackin placed Cpl. Duhaime under oath, Cpl. Duhaime
acknowledged the facts underlying the issuance of the Phelps
traffic ticket, and Cpl. Duhaime turned in that ticket, along
with a UTTC transmittal form listing that ticket, to Brackin.
Pursuant to § 12-12-54, Ala. Code 1975, Brackin was thereafter
"responsible for accounting for [the Phelps ticket] ... and
for the proper disposition of the [transmittal form]."
Pursuant to Rule 43(B), Ala. R. Jud. Admin., Brackin was

15

2050558

required to "assign a case number to [the Phelps] citation ...

on the [Transmittal] Form ..., write the case number in the

appropriate space on the form, and return the copy to [Cpl.

Duhaime] for his ... records." She did none of those things.

The circuit court asked the following questions:

> "What was [Brackin] supposed to do when she began
> assigning case numbers for citations [listed on the
> UTTC transmittal form filed by Cpl. Duhaime] and
> discovered that Corporal Duhaime and Mary Turner had
> voided the citation to Stephen Phelps?    Should
> [Brackin] have insisted that Duhaime return the
> citation?  Did she have that authority?  Was it her
> responsibility to investigate what had happened and
> then 'blow the whistle' on Mary Turner and Corporal
> Duhaime?"

The circuit court's first question is based upon an assumption

not supported by the evidence.    The record contains no

evidence indicating that Brackin "discovered that Corporal

Duhaime and Mary Turner had voided the citation to Stephen

Phelps."  The evidence indicated only that Brackin discovered

that the Phelps citation, which Cpl. Duhaime had listed on the

UTTC transmittal form, was missing.    Thus, if the circuit

court's first question is rephrased to inquire, "What was

Brackin supposed to do when she began assigning case numbers

for the citations listed on the UTTC transmittal form filed by

Cpl. Duhaime and discovered that the Phelps citation was

16

2050558

missing," the answer is:  When Brackin began assigning case
numbers for all the traffic citations on the UTTC transmittal
form filed by Cpl. Duhaime and she noticed that the Phelps
citation was missing, she should have, pursuant to § 12-12-54
and Rule 43(B), Ala. R. Jud. Admin., assigned a case number
for the Phelps citation and allowed the matter to proceed to
municipal court where, no doubt, the municipal judge could
have sorted out questions of authority, blame, whistle-blowing
and investigation.    As  the  facts  of  this  case  and  the
applicable  law  demonstrate,  the  circuit  court  erred  by
concluding  that  the  law  pertaining  to  the  disposition  of
voided traffic tickets is ambiguous.   The court also erred in
determining  that  the  Dothan  Municipal  Court  had  no  "firm
policy [regarding the disposition of UTTCs] ... made known to
all [municipal court] magistrates," and, thus, that there was
not  substantial  evidence  of  Brackin's  negligence.    On  the
contrary, a firm policy is set out in the applicable statutes
and  court  rules  regarding  the  handling  and  disposition  of
UTTCs.

   We  hold  that  the  Personnel  Board  had  before  it
substantial evidence indicating that Brackin was negligent in

17

2050558

failing to account for a traffic ticket issued by a Dothan
police officer.   The circuit court erred in concluding
otherwise.

### The Charge of Insubordination

With respect to the charge that Brackin violated § 3-
42(14) of the Personnel Rules by being insubordinate to her
supervisor, the circuit court's judgment reversing the
Personnel Board's decision to uphold Brackin's dismissal
states:

> "As to the charge of insubordination, [Brackin]
> did not violate the spirit of the City Judge's
> Order; that is, she didn't contact Mary Turner in an
> effort to compromise the City's investigation of Ms.
> Turner in any way.  To say that what [Brackin] did
> was insubordinate stretches the meaning and intent
> of that term considerably."

In Maddox v. Clark, 422 So. 2d 791, 794 (Ala. Civ. App.
1982), this court stated:

> "'"Insubordination" has been defined by our
> Courts as the wilful refusal of an employee to obey
> an order of a superior officer so long as that order
> is reasonably related to the duties of the employee.
> Heath v. Alabama State Tenure Commission, 401 So. 2d
> 68 (Ala. Civ. App. 1981); Howell v. Alabama State
> Tenure Commission, 402 So. 2d 1041 (Ala. Civ. App.
> 1981).'"

(Quoting the trial court's judgment).  See also Fuqua v. City
Council of Ozark, 567 So. 2d 354, 357 (Ala. Civ. App.

18

2050558

1990)(quoting <u>Heath v. Alabama State Tenure Comm'n</u>, 401 So. 2d
68, 70 (Ala. Civ. App. 1981))(stating that "[i]nsubordination
has been defined 'as the refusal to obey some order which a
superior officer is entitled to give and entitled to have
obeyed so long as such order is reasonably related to the
duties of the employee'").

In <u>City of Mobile v. Mills</u>, 500 So. 2d 20, 22 (Ala. Civ.
App. 1986), Cpl. Milton Mills of the Mobile police department
was dismissed from his employment.  He was charged, among
other things, with insubordination arising out of his
disobedience of a rule restricting him from entering the
female housing areas of the city jail alone.  When the jail
warden confronted Cpl. Mills regarding his violation of the
rule, Cpl. Mills responded "that he [Mills] did not have to
listen to anyone; that he set his own rules."  500 So. 2d at
22.  This court determined that the Mobile Personnel Board had
before it substantial evidence supporting Cpl. Mills's
dismissal.

We conclude that the circuit court erred when it decided
that Brackin did not violate the spirit of the municipal
judge's order not to contact Turner.  Although Brackin

19

2050558

presented evidence indicating that one of her contacts with
Turner was prompted by a job-related necessity, she conceded
that she had not sought Judge Evans-Gordon's permission before
making the job-related telephone call.   From that evidence,
the Personnel Board could have concluded that Brackin was, in
effect, "set[ting] [her] own rules."  City of Mobile v. Mills,
500 So. 2d at 22.   Moreover, Brackin also acknowledged that
she had had other conversations with Turner after the judge
issued the no-contact order, but, she said, she did not recall
the content of those conversations.    In light of the fact
that Brackin had  specifically inquired whether the judge's
order applied to after-hours contact with Turner and the judge
had replied that the order applied to "all contact," the
Personnel Board was authorized to conclude that Brackin
willfully disregarded the judge's directive.

Brackin cites Wilson v. Taylor, 733 F.2d 1539 (11th Cir.
1984), and Milligan v. Albertville City Board of Education,
628 So. 2d 625 (Ala. Civ. App. 1993), in support of the
argument she made to the Personnel Board that the judge's
order violated her First Amendment right to freely associate

2050558

with Turner during her after-hours time.  We find <u>Wilson</u> and <u>Milligan</u> distinguishable.

In <u>Wilson</u>, a city police officer was fired for dating the daughter of a convicted felon and reputed member of organized crime.  The officer appealed his dismissal, asserting that the city had infringed upon his right to freedom of association. The city took the position that dating was not the type of association protected by the First Amendment, asserting that only those associations aimed at the advancement of beliefs and ideals were intended to be constitutionally protected.

The United States Court of Appeals for the Eleventh Circuit determined that the First Amendment freedom of association extends even to purely social and personal associations such as dating; therefore, it held, the officer was fired for a reason infringing on a constitutionally protected right.  In so holding, the court cautioned:  "This is a narrow holding.  We do not hold that a law enforcement officer may <u>never</u> be fired because of associations with others."  733 F.2d at 1544 n.3 (emphasis added).  The court then cited decisions upholding an employer's right to curtail certain personal associations because of "'the exigencies of

21

2050558

... discipline'" or the interest in "'instill[ing] public confidence in the law enforcement institution.'"  Id.

In Milligan, a probationary teacher's aide sued a city board of education, alleging that she had been dismissed from her employment in violation of her First Amendment right to freedom of association.  In opposition to the board's motion for a summary judgment, the teacher's aide submitted an affidavit from one of the school board members.  The affidavit averred that the aide had been placed on a list of persons to be dismissed as a "bargaining chip" in order to force the school board member, who had a close personal association with the aide and her family, to vote a certain way.  When the school board member declined to vote as requested, the aide was dismissed.  The circuit court entered a summary judgment for the board, and the aide appealed.  On appeal, the board asserted that the aide had failed to present any evidence indicating that she had been dismissed because of her exercise of rights protected under the First Amendment; instead, it said, her dismissal was the lawful dismissal of an "at will" employee.

2050558

This court reversed, holding that there was a genuine issue of material fact regarding whether the aide had been dismissed in violation of a constitutionally protected right. As guidance for the trial court on remand, this court stated that the aide would have the burden of establishing that her conduct was constitutionally protected and that her constitutionally protected conduct was a substantial or motivating factor in the adverse employment decision. 628 So. 2d at 629. If she met that burden, the board would then be required to show by a preponderance of the evidence that it would have reached the same employment decision in the absence of the protected conduct. Id.

Wilson and Milligan should be read as decisions disapproving adverse actions against employees based solely upon the existence of the employees' social and personal associations. In the present case, Brackin was not dismissed because of the existence of a personal or social relationship with Turner, but because she disobeyed her supervisor's directive to curtail, for a limited time, acting on that relationship. The judge's order prohibiting contact with Turner was a reasonable and limited restriction on Brackin's

23

2050558

right to freedom of association that, by its terms, was to last only for the duration of a police investigation into illegal conduct in the magistrates' office. Clearly, the judge's order was one "'which a superior officer [was] entitled to give and entitled to have obeyed,'" see Heath v. Alabama State Tenure Comm'n, 401 So. 2d at 70, because it was "'reasonably related to the duties of the employee,'" id. City magistrates have a duty to adhere to the "'strict accountability requirements in the statutes and in Rule 19[, Ala. R. Jud. Admin.,]" regarding "'each and every [UTTC] "issued to law enforcement officers."'" Lawrence v. State, 601 So. 2d at 195. Judge Evans-Gordon could reasonably have decided that, under the circumstances, that duty encompassed the obligation to avoid the appearance of impropriety that might arise if one city magistrate were to converse with another city magistrate during an investigation of the second magistrate for flouting the accountability requirements.

The Personnel Board was authorized to conclude that the directive prohibiting even after-hours contact with Turner was warranted by the judge's understandable concern that any fraternization with Turner by another magistrate who continued

24

2050558

to work in, and have access to computer records of, a public agency in which a "ticket-fixing" incident had allegedly occurred, could compromise or call into question the integrity of the police investigation into the illegal conduct. We hold that the circuit court erred in determining that the Personnel Board was not presented with substantial evidence indicating that Brackin was insubordinate by conversing with Turner in violation of Judge Evans-Gordon's order.

### The Probation Violation

The Personnel Rules outline a system of progressive employee discipline. For a "minor offense," the first step is formal counseling, which involves a conversation between a supervisor and an employee about a performance issue. The next step is a written warning, followed by a final warning, or a final warning and a one- to five-day suspension without pay, after which discharge may occur.

The disciplinary action that follows the commission of a "major offense" is a final warning and a 1- to 20-day suspension without pay. The employee who commits a "major offense" is, in effect, put on a two-year probationary period. Section 3-20(2)(b) of the Personnel Rules provides:

25

2050558

"The disciplinary progression period for 'Major' category offenses shall be twenty-four consecutive months from the date of the last 'Major' category offense violation. In order for an employee to clear his record of 'Major' category offenses, the employee must not commit any major category disciplinary offenses during the twenty-four month progression period."

The commission of any other "major offense" within 24 months after having been disciplined for a previous "major offense" is a ground for discharge. Section 3-30(4) of the Personnel Rules provides, in pertinent part:

"<u>Final Warning and One to Twenty Days Suspension Without Pay</u>. This is the disciplinary action that follows violation of any offense classified as 'Major.' A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV). The supervisor will meet in a formal discussion with the employee explaining the exact offense(s) the employee violated and the seriousness and consequences of the offense(s). The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem. The supervisor shall explain to the employee that the violation of any further 'Major Offense' within two years from the date of record of this offense is grounds for discharge."

Section 3-30(5), entitled "Discharge," provides:

"Discharge is the most severe disciplinary action that may be taken against an employee. A due process hearing (Determination Hearing) must be conducted with an employee prior to making a decision to discharge an employee (Personnel

26

2050558

      Regulation IV). An employee who does not correct
performance and/or behavioral problems after the
progressive discipline process for 'Minor' and/or
'Major Offenses' or an employee who commits an
'Intolerable Offense' is indicating an inability or
unwillingness to correct his/her behavior. By
utilizing progressive discipline, it is hoped that
many employee problems can be corrected at an early
stage, thereby benefitting both employees and the
City by eliminating an employee's discharge from
his/her position with the City of Dothan."

At the Personnel Board hearing, Brackin argued that the
conduct made the basis of the § 3-42(6) charge against her --
that she was negligent in failing to account for the Phelps
ticket -- occurred on December 4, 2002, but that the Personnel
Board erroneously treated the conduct, for purposes of the
two-year major-offense probationary period, as having occurred
on April 29, 2005 -- the date Judge Evans-Gordon discovered
the conduct and signed the City of Dothan Employee
Disciplinary Action Report Form ("the disciplinary form").
Brackin maintained that, because she did not commit the
alleged offense within two years after April 22, 2004, when
she was disciplined for a prior major offense, the alleged
offense could not have been used as a ground for her
dismissal. The City argues that the date of the second
offense was, as a matter of law, April 29, 2005, and not

27

2050558

December 4, 2002.  It bases that argument on the fact that
Brackin signed a disciplinary form containing the following
notation:

> "The offense[-]free time period required to clear a
> disciplinary record of ... MAJOR offenses is 24
> months from the 'date of record' for last offense
> committed.  ('Date of Record' is date form signed by
> department head)."

For three reasons, we hold that the Personnel Board erred
as a matter of law in determining that the "date of record"
for Brackin's most recent major offense was April 29, 2005,
rather than December 4, 2002.  First, the actual wording of
the notation on the disciplinary form does not support the
City's interpretation.  The notation establishes the "date of
record" only for an employee's last (or prior) major offense
(which, in this case, was April 22, 2004, the date Brackin was
suspended for giving a citizen information about filing a
claim for false arrest).  Neither the notation nor the
Personnel Rules purports to establish the "date of record" for
a subsequent major offense, the offense that triggers the
discharge option outlined in § 3-30(5) of the Personnel Rules.
See Personnel Rules, § 3-20(2)(b):

> "The disciplinary progression period for 'Major'
> category offenses shall be twenty-four consecutive

28

2050558

> <u>months from the date of the last 'Major' category
> offense</u> violation.   In order for an employee to
> clear his record of 'Major' category offenses, the
> employee <u>must not commit</u> any major category
> disciplinary offenses during the twenty-four month
> progression period."

(Emphasis added.)

Second, the City's interpretation is at odds with the
purposes of its progressive discipline policy.  That policy is
based on the assumption that an employee who has engaged in
unacceptable behavior will be counseled, given a fair
opportunity to modify his or her behavior, and warned that
another infraction may lead to discharge.  <u>See generally</u>
William J. Sonnenstuhl et al., <u>Employee Assistance and Drug
Testing: Fairness and Injustice in the Workplace</u>, 11 Nova L.
Rev. 709, 716 (Winter 1987) (stating that "[t]he purposes of
progressive discipline ... are to give employees feedback on
their behavior, to discover and correct the underlying causes
of poor performance, and to induce employees, by progressive
sanctions, to conform to standards <u>in the future</u>").  The
City's Personnel Rules are based on the concept that

> "[b]y utilizing progressive discipline, it is hoped
> that many employee problems <u>can be corrected</u> at an
> early stage, thereby benefitting both employees and
> the City by eliminating an employee's discharge from
> his/her position with the City of Dothan."

29

2050558

Personnel Rules, § 3-30(5) (emphasis added).  Section 3-30(4)

of the Personnel Rules provides, in pertinent part:

> "The supervisor will meet in a formal discussion
> with the employee explaining the exact offense(s)
> the employee violated and the seriousness and
> consequences of the offense(s).  The supervisor
> shall instruct the employee how he/she may correct
> his/her performance and/or behavioral problem.  The
> supervisor shall explain to the employee that the
> violation of any further 'Major Offense' within two
> years from the date of record of this offense is
> grounds for discharge."

(Emphasis added.)  By treating conduct that allegedly occurred

in 2002 as having occurred in 2005, the City thwarted two of

the purposes for the progressive discipline policy: giving the

offending employee the opportunity to modify or correct her

behavior after counseling; and warning the offending employee

that a future infraction could lead to dismissal.

Third, the City's progressive discipline policy is

sufficiently analogous to the recidivist provisions of our

Criminal Code that decisions interpreting the Alabama Habitual

Felony Offender Act are persuasive.  Section 13A-5-9, Ala.

Code 1975, provides that "[i]n all cases when it is shown that

a criminal defendant has been previously convicted of a felony

and after the conviction has committed another felony," the

criminal defendant must be sentenced to an enhanced penalty as

2050558

a repeat offender. The Court of Criminal Appeals has consistently held that "the recidivist statute comes into play only when a defendant commits an offense after he has previously been convicted of a felony." Burgess v. State, 412 So. 2d 298, 299 (Ala. Crim. App. 1982)(first emphasis in original; second emphasis added). See also Bridges v State, 563 So. 2d 13 (Ala. Crim. App. 1989); and Hamm v State, 439 So. 2d 829 (Ala. Crim. App. 1983). Similarly, the discharge option outlined in § 3-30(5) of the City's Personnel Rules comes into play only when an employee commits a major offense within 24 months after she has been disciplined for a previous major offense.

## Conclusion

Under the Personnel Rules, an employee who commits a major offense within 24 months after having been disciplined for a previous major offense is subject to dismissal. See § 3-30(4) and § 3-30(5), Personnel Rules. As we have explained, Brackin's December 4, 2002, offense cannot be considered as a second major offense committed within 24 months after having been disciplined for a previous major offense on April 22, 2004. The Personnel Board's August 19, 2005, order does not

31

2050558

state whether it determined that Brackin committed either or both of the major offenses of insubordination and negligence in carrying out assigned duties. The order merely states that the Personnel Board "affirms the department head's decision to terminate [Brackin's] employment."

Accordingly, we reverse the judgment of the Houston Circuit Court and remand the cause with instructions to that court to remand the cause to the Personnel Board with instructions to answer the following questions: (1) Did the Personnel Board determine that Brackin committed the major offense of insubordination within 24 months after having been disciplined for a previous major offense on April 22, 2004? and (2) If so, was that offense sufficient to warrant Brackin's dismissal?

yes
yes

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson and Pittman, JJ., concur.

Murdock, J., concurs in part in the rationale and concurs in the result, with writing.

Bryan, J., concurs in the result, with writing.

32

2050559

MURDOCK, Judge, concurring in part in the rationale and concurring in the result.

I concur in that portion of the main opinion explaining that the conduct made the basis of the "§ 3-42(6) charge" against Brackin -- that she was "negligent" in failing to account for the Phelps ticket -- did not occur within 24 months after Brackin was disciplined for a previous major offense and therefore could not provide the basis for the Personnel Board's decision to uphold the termination of Brackin's employment. Because of this conclusion, however, that portion of the main opinion titled "The Charge of Failing to Account for a Traffic Ticket" is dictum. Because I would not reach the issue addressed in that part of the main opinion, I only concur in the result reached by the main opinion.

The Personnel Board's decision in this case does not reveal whether it found Brackin guilty of both the negligence and the insubordination offenses with which she was charged. Accordingly, we do not know which of these two alleged offenses constituted the "subsequent major offense" upon which Brackin's dismissal was upheld, or whether it was upheld based

33

2050558

on both of these alleged offenses.  Since, as noted above, the negligence charge is not available as a basis for dismissal, on remand it will fall to the Personnel Board to assess the evidence and determine whether Brackin engaged in communications with Turner that constituted the major offense of insubordination.  If it makes an affirmative determination in this regard, the Personnel Board must then make a determination as to whether Brackin's dismissal should be upheld on this basis, or whether some lesser discipline should be imposed.

2050558

BRYAN, Judge, concurring in the result.

I concur in the result because I am convinced that Judge Murdock is correct in concluding that "that portion of the main opinion titled 'The Charge of Failing to Account for a Traffic Ticket' is dictum." ___ So. 2d at ___ (Murdock, J., concurring in part in the rationale and concurring in the result).

The main opinion's treatment of the First Amendment is based upon the premise that Brackin was punished for contact with Turner that did not involve attendance at church. The main opinion should not be interpreted as sanctioning the municipal judge's prohibition of Brackin's attending the same church as Turner. That prohibition violated Brackin's right to attend the church of her choice, which is protected by the First Amendment.

**John H. Wilkerson, Jr., Clerk of the Court of Civil Appeals of Alabama**, do hereby certify the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appears of record in said court.

Witness my hand this __8th__ day of __December__, 20__

*John H Wilkerson Jr*

**Clerk, Court of Civil Appeals of Alabama**

35