# IN THE CIRCUIT COURT OF
# HOUSTON COUNTY, ALABAMA



| | |
|---|---|
| MARY BETH BRACKIN, )<br>   APPELLANT, ) | |
| | CV-05-5144  **FILED** |
| VS ) | |
| | APR 7 2006 |
| CITY OF DOTHAN, )<br>   A MUNICIPAL CORP., )<br>   APPELLEE. ) | *Judy Byrd*<br>JUDY BYRD, CLERK<br>HOUSTON CO., AL |

## FINAL DECREE

Mary Beth Brackin worked as a Magistrate for the City of Dothan from May 1992 until May 2005. In May 2005, charges of negligence and insubordination were brought against her and she was terminated by her appointing authority. Brackin appealed this decision to the Personnel Board of the City of Dothan and the Board affirmed termination. Mrs. Brackin then appealed to this Court.

It is the Court's understanding that the only evidence to be considered by it is that elicited before the Personnel Board on June 1, 2005, a transcript of which was filed with the Clerk of this Court. This Court's responsibility is to ascertain whether or not this record contains substantial evidence supporting the findings of fact made by the Personnel Board. The Board's



EXHIBIT "A"

1

findings of fact were simply that Mary Beth Brackin was negligent and insubordinate in doing her job.

Alabama law (Section 12-21-12, Code of Alabama) defines substantial evidence "...evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reasonably infer the existence of the fact sought to be proven". This Court then must determine whether or not the Personnel Board heard evidence the quality and weight of which would lead reasonable and fair-minded people to conclude that Mrs. Brackin was negligent and insubordinate.

The transcript reflects that in 2005, another Magistrate, Mary Turner, was being investigated for voiding a traffic ticket issued to Stephen Phelps. Ms. Turner was placed on leave pending the investigation; and the Judge of the City of Dothan Municipal Court, at the commencement of the investigation, met with all the magistrates (including appellant) and instructed them to have no contact with Mary Turner during the investigation. Mary Beth Brackin was assigned Mary Turner's duties and responsibilities after Turner was placed on leave. Brackin soon realized that she needed a form which Turner routinely issued to youthful offender applicants who failed to appear for Court hearing, and attempted to locate it within the office structure, but was unsuccessful. She then called Mrs.

2

Turner and asked where the form could be found. Mrs. Brackin freely admitted that she had made this contact when interviewed by Officer Keith Gray, the Investigator assigned to investigate Mary Turner. This is the sum and substance of the evidence produced from which the Board concluded that Mary Beth Brackin was insubordinate.

The second charge was one of negligence. The evidence relative to this charge is that a traffic ticket was written on November 24, 2002, by Corporal Eric Duhaime to Stephen Phelps. The traffic citation was filed on November 24, 2002, by Officer Dehaime at the City Magistrate's Office with Mary Beth Brackin, as reflected by a UTC Transmittal Form (Exhibit 2). Mrs. Brackin had no independent recollection concerning the filing of the citation or the final disposition made of that charge. After Officer Duhaime filed the citation in the Magistrate's Office, Mary Turner somehow became aware of its filing and contacted Officer Duhaime requesting that it be voided. Officer Duhaime agreed, and Ms. Turner gathered all copies and returned them to Corporal Duhaime. Then, ten days later, on December 4, 2002, Mrs. Brackin inserted the court case numbers on all the citations listed on the UTC Transmittal Form (Exhibit 2) and forwarded the citations and the transmittal form with case numbers inserted to the City Court. It was apparently at that time that she discovered the citation issued to Stephen

Phelps missing and ascertained that the issuing officer had voided it. She didn't know why it had been voided, and did not question the officer's authority to void the citation.

Evidence concerning the authority of a police officer to void traffic citations after they are issued seemed to open to various interpretations at the time of and prior to Mary Beth Brackin's termination. Most witnesses seemed to agree that the issuing officer could void a citation for any reason prior to filing with the Magistrate's Office. Officer Duhaime apparently felt that he had this authority, as did Mrs. Brackin, at any time prior to its being assigned a city court case number and being transmitted to that Court. The City of Dothan, on the other hand, insists that once a citation is filed with the Magistrate's Office that it can only be disposed of by action of the City Judge.

In the Court's opinion, the City's position is the more logical and sound policy for handling traffic citations. What is clear, however, is that no set policy was in place for Magistrates to follow in situations such as that presented to Mary Beth Brackin. What was she supposed to do when she began assigning case numbers for citations of Exhibit 2 and discovered that Corporal Duhaime and Mary Turner had voided the citation to Stephen Phelps? Should she have insisted that Duhaime return the citation? Did she

4

have that authority? Was it her responsibility to investigate what had happened and then "blow the whistle" on Mary Turner and Corporal Duhaime?

Perhaps, in hindsight, a policy should be adopted whereby every citation voided after it is filed with the City Magistrate's Office should be flagged so that it can be investigated by the City Judge. Mary Beth Brackin didn't try to conceal anything. She had not voided the citation, nor had she sought permission to void it, nor did she know why it was voided. She simply marked the record to reflect the truth of the matter as she understood it, and for this she was charged with negligence. If she was negligent, there were others higher in the chain of custody of the Transmittal Sheet who were likewise negligent in not questioning why the citation was voided. The Transmittal Sheet is an official record and was on file with the City Court for almost eighteen (18) months prior to these charges being made.

In the opinion of the Court, there was not substantial evidence of negligence on the Appellant's part. Had a firm policy been established and made known to all Magistrates beforehand, then a departure from it could be deemed negligence. That didn't happen here.

As to the charge of insubordination, she did not violate the Spirit of the City Judge's Order; that is, she didn't contact Mary Turner in an effort to

5

compromise the City's investigation of Ms. Turner in any way. To say that what she did was insubordinate stretches the meaning and intent of that term considerably.

The decision of the Personnel Board of the City of Dothan is due to be, and, hereby, is reversed. The appellant is **Ordered** to be restored to her position as Magistrate for the City of Dothan immediately. Her pay and benefits lost because of this termination shall also be restored to her.

**DONE and ORDERED** this 6th day of April, 2006.

                                                   _____
                                                 JERRY M. WHITE
                                                 CIRCUIT JUDGE