



**JUDICIAL DEPARTMENT**
City of Dothan
(334) 615-4142 – Office
(334) 615-4149 – Facsimile

## INTEROFFICE MEMORANDUM

PLAINTIFF'S
EXHIBIT
10

**TO:**     Ms. Kai Davis, Personnel Director
**FROM:**   Rose Evans-Gordon,   *Linda*
            Municipal Court Judge
**DATE:**   June 8, 2004
**SUBJ:**   Employee Counseling

___

On or about the 8th of June, 2004, I called Ms. Nancy Martin, Court Administrator into my chambers and counseled her regarding several areas of concern with the Magistrates' Office. As you are aware, having been part of the committee who interviewed candidates for the position of Court Administrator prior to Ms. Martin coming on board with the City, improving the work atmosphere in the Magistrates' Office is of utmost concern to me and this was made abundantly clear to Ms. Martin even as early as her first interview for the position. Unfortunately, far from having shown any great improvement this is an area that has deteriorated rapidly since Ms. Martin took office.

As you are aware from your conversations with Ms. Ott, the City Attorney's representative in our Court, Ms. Martin exhibits a sad inability to interact professionally with personnel from that office as well as defense attorneys which has carried over to the attitudes of the personnel under Ms. Martin's supervision. The working relationships with the Magistrates' Office personnel under Ms. Martin's supervision has deteriorated to the point that personnel from the City Attorney's Office, the various public defenders and contract personnel who work in the Court on a daily basis actually call my office to avoid having to call the Magistrates' Office saying that employees of that office are incredibly nasty to deal with. Further, several attorneys have approached me with horror stories regarding their inability to obtain the assistance needed to carryout their normal day-to-day duties on behalf of their clients in City Court. One especially troubling incident involved Ms. Martin refusing to allow an attorney to file a motion in the Magistrates' Office. Although the motion was late, the attorney should simply have been allowed to file the motion which should have then been put before me accompanied by the applicable paperwork. Ms. Martin took it upon herself to turn the attorney away, refusing to allow the motion to be filed until the attorney threatened further action. On another occasion I specifically call the Magistrates' Office, spoke with Ms. Mary Turner to have her pull the paperwork on a defendant and send that paperwork to me to ensure that a warrant would not be issued for the defendant's arrest as this gentleman was from Michigan and had sent in the requisite paperwork pursuant to his agreement with the City Prosecutor. After all of this, Ms. Martin directed that the warrant be issued contrary to my wishes because the defendant had called the Magistrates' Office and was belligerent

DOTHAN/Martin & Brackin 1140
Confidential Subject to Protective
Order

when told that his paperwork had not been received and that he would have to drive back to Dothan from Michigan or have a warrant issued for his arrest although the documents had been sent and received well in advance of his court date. The defendant did in fact drive to Dothan from Michigan as a result. Ms. Martin issued this directive without the paperwork which was in the Court's possession in an effort to prevent the erroneous issuance of this warrant. While I had dismissed Ms. Martin's actions as being a result of her newness to the position and unfamiliarity with magisterial procedure, I now perceive that it was the beginning of a pattern of behavior on her part.

As troubling as these incidents involving attorneys are, the incidents that cause me the most concern are those regarding average citizens. The attorneys at least know how to gain recourse from these arbitrary decisions; however, the average citizen might have no idea where to turn for help. The idea of public service, far from increasing in import since her hire, seems to be ever diminishing in import.

The attitudes of the employees towards one another were another major area of discussion. Again, far from improving, the back-biting that had begun to diminish while the employees had to pull together to accomplish their work after the loss of Ms. Bettye King has increased alarmingly. Rather than working together effectively it appears to be an endless parade of tattling on each other, recounting false and/or unsubstantiated and unwritten allegations being chased down by Ms. Martin.

Traditionally, I have tried to make it clear to the personnel under my supervision that an honest mistake, made through no malice on the part of the employee would not be punished if the employee in question made every effort to correct the mistake and deal with any repercussions arising from the incident. Ms. Martin herself failed to re-assign the duties of Ms. Mary Beth Brackin when Ms. Brackin was out of work for an extended period due to disciplinary measures, an oversight which caused City Court to be unable to have trials for two weeks. Because no dockets were posted while Ms. Brackin was absent, no officers were notified to be in Court. This resulted in defendants coming to Court, many of who missed work, and were unable to have trials.

The various personalities of the employees in my department are, by necessity, well-known to me. I have interacted with all of my employees on a regular basis for the close to five years of my tenure as Municipal Judge. Therefore, it is quite difficult for anyone to tell me something erroneous about the work habits of one of my employees. Ms. Martin recently completed a performance evaluation on one of our most efficient, effective and pleasant employees so negative that it would have deprived the employee in question of her step increase in pay. This immediately raised caution flags in my mind for several reasons. First, Ms. Martin has been employed by the City only a short time and six weeks of that time the employee in question was out of work for surgery giving Ms. Martin precious little time to observe her work habits. Secondly, a striking disparity between prior evaluations and the one prepared by Ms. Martin was apparent upon cursory examination of the two, as the employee had been consistently rated above average. Thirdly, a careful perusal of the evaluation prepared by Ms. Martin

DOTHAN/Martin & Brackin 1141
Confidential Subject to Protective Order

reveals that Ms. Martin, in her ignorance of magisterial procedure, has relied on information from outside sources. While her lack of knowledge is certainly understandable given her short tenure, unsubstantiated and unsupported allegations are certainly not acceptable reasons for cutting an employee's evaluation score. As an example of this, Ms. Martin cited events which occurred (if they occurred at all – these events are unsubstantiated) before her hire date, clearly something that Ms. Martin could not have had personal knowledge of. It appeared that in many instances Ms. Martin was making unsubstantiated allegations of which she had no first hand knowledge. After consulting with another department head , the Interim City Manager and a representative from the Personnel Department regarding these concerns, I called Ms. Martin into my chambers to request that she review the previous evaluations of the employee, which I provided her copies of and which she had not previously reviewed, and re-think her evaluation as the vague and unsubstantiated basis of the allegations coupled with the short time she had been able to observe the employee, the long favorable work history of the employee and the enormity  of the possible economic deprivation to the employee caused me to fear that the employee would have grounds to appeal this evaluation.

I spoke with Ms. Martin extensively about the above referenced concerns and requested that she correct the deficiencies in these areas as quickly as practicable.

DOTHAN/Martin & Brackin 1141a
CONFIDENTIAL Subject to Protective
Order