STATE OF ALABAMA )
)
COUNTY OF HOUSTON )

## AFFIDAVIT OF KAI DAVIS

1. My name is Kai Davis. I am employed by the City of Dothan as the Personnel Director. I am Caucasian and am over the age of nineteen. This Affidavit is based on my personal knowledge and/or my review of personnel records of the City of Dothan of which I have custody and control.

2. Pursuant to the Dothan Civil Service Act, and the Personnel Rules and Regulations, an employee appointed to a classified service position shall be placed under a probationary status and required to serve a working test period. In the Judicial Department this period is twelve (12) months.

3. Employees who prove unsatisfactory during the working test period may be removed from the position by the Appointing Authority or Department Head at any time during this period, subject to my approval.

4. Nancy Martin was hired on January 16, 2004. She did not actually start working as Court Administrator until February 16, 2004.

5. During Nancy Martin's employment Judge Rose Gordon, Nancy Martin and I met on more than one occasion where Nancy Martin's performance was discussed. During the course of these meetings, Judge Gordon expressed concerns about Nancy Martin's job performance and pointed out Ms. Martin's job deficiencies and inadequate progress. Judge Gordon also sent me memoranda dated June 8, 2004 and July 8, 2004, outlining Nancy Martin's deficiencies. (These are attached as Exhibits A

and B). These Exhibits reflect issues raised in conferences with me, Judge Gordon and Nancy Martin. Attached as Exhibit C which are notes I jotted down regarding my meeting with Judge Gordon and Nancy Martin on July 19, 2004. The concerns I noted were raised by Judge Gordon during this meeting and dealt with the fact that complaints against Ms. Martin were on the increase; errors in the office; policies were not being enforced; and there were inconsistencies in approving leaves of absence (Eunice Knight and Michelle Bryan) and handling job performance evaluations (LaVera McLarn and Michelle Bryan). My notes are an abbreviated version of the issues in Exhibits A and B.

6. I approved Ms. Martin's termination in October 2004 because I knew she was aware of Judge Gordon's dissatisfaction with her performance, that her inadequate job progress and deficiencies had been discussed with her, and that she had been given an opportunity to improve. Nancy Martin was a probationary employee at the time of her termination.

7. In early September 2004, Eunice Knight and LaVera McClain, two black Magistrates, came to see me to complain that Nancy Martin was discriminating against them because of their race and treating them differently than she treated the white Magistrates.

8. Nancy Martin never complained to me or informed me that Judge Gordon was discriminating against her because of her race or that Judge Gordon was discriminating against Magistrates on the basis of their race, or that her actions were racially motivated. Moreover, I never informed Judge Gordon that Nancy Martin had

complained about race discrimination or that Judge Gordon was treating any Magistrate differently because of their race or that her actions were racially motivated.

9. Pursuant to Section V of the Personnel Rules and Regulations, a classified employee who is not under initial probationary status may file a grievance or an appeal contesting a disciplinary action.

10. Mary Beth Brackin had the right to, but never filed a grievance or an appeal regarding the major offense and suspension she received on April 26, 2004 for insubordination and action(s) or lack of action(s) that could cause undue financial loss to the City.

11. Pursuant to the Personnel Rules and Regulations, subpoenas for the attendance of witnesses may be issued by the Personnel Director at the request of either party for a Personnel Board Hearing. I issued all subpoenas for witnesses to appear requested by Ms. Brackin's attorney. I provided Ms. Brackin's attorney with an informational guide on "Appearing before the Personnel Board." I also provided Ms. Brackin's attorney with the same materials that were provided to the Personnel Board and which the Board had before it in making its decision as to Ms. Brackin's termination.

12. The City does not have, and did not permit, "comp" time in 2001 or at any time thereafter. An employee is expected to accurately report time actually worked and a supervisor must certify or verify that the hours worked on a time card are true and correct. Donna Nicholson, a former Court Administrator, was terminated for deliberate falsification of an employee's time record.

13. The Personnel Department maintains a register of applicants deemed qualified for a position. When a position or positions become vacant, I certify by a

Memorandum of Certification to the Department Head a list of eligible names from the register. The Department Head does not get the actual rankings of the eligible employees. The Department Head interviews those candidates certified to them and makes a selection, subject to drug testing and other employment screening criteria.

14. Judge Gordon selected Mary Beth Brackin (white) and Michelle Bryan (white) as Magistrates on or about May of 2001, over Eunice Knight (black), even though Ms. Knight was ranked second on the Register. Ms. Brackin and Ms. Bryan were ranked lower than Ms. Knight on the Register. Ms. Knight was not hired until December 2001.

15. Wendy Waid (Jones) and LaVera McClain were equally ranked on the Magistrate register. LaVera McClain did not "bump" Ms. Waid, in the selecting process.

16. Since December 1999, when Judge Gordon was appointed as Municipal Court Judge, she has hired or selected 14 employees as Magistrates. Ten have been Caucasian and 4 have been African-American. Judge Gordon also promoted Donna Nicholson (white) to Court Administrator. In 2004, Judge Gordon hired Nancy Martin as Court Administrator. Eunice Knight (black) and Cassandra Davis (black) applied for and were interviewed by Judge Gordon for this position, but Judge Gordon selected Nancy Martin (white). Michelle Sellers (white) was selected by Judge Gordon to be Court Administrator after Ms. Martin's termination.

17. Following Mary Beth Brackin's termination of employment, she was replaced by Melanie Walsh (white).

01566158.1

I have read the foregoing affidavit and I swear and affirm under penalty of perjury that it is true to the best of my knowledge and belief.

_____
KAI DAVIS

STATE OF ALABAMA   )
                   )
COUNTY OF HOUSTON  )

Sworn to and subscribed before me this 8th day of November, 2007.

_____
Notary Public

My commission expires: 9/28/2008



**JUDICIAL DEPARTMENT**
City of Dothan
(334) 615-4142 – Office
(334) 615-4149 – Facsimile

## INTEROFFICE MEMORANDUM

TO: Ms. Kai Davis, Personnel Director
FROM: Rose Evans-Gordon,
　　　　Municipal Court Judge
DATE: June 8, 2004
SUBJ: Employee Counseling

---

On or about the 8th of June, 2004, I called Ms. Nancy Martin, Court Administrator into my chambers and counseled her regarding several areas of concern with the Magistrates' Office. As you are aware, having been part of the committee who interviewed candidates for the position of Court Administrator prior to Ms. Martin coming on board with the City, improving the work atmosphere in the Magistrates' Office is of utmost concern to me and this was made abundantly clear to Ms. Martin even as early as her first interview for the position. Unfortunately, far from having shown any great improvement this is an area that has deteriorated rapidly since Ms. Martin took office.

As you are aware from your conversations with Ms. Ott, the City Attorney's representative in our Court, Ms. Martin exhibits a sad inability to interact professionally with personnel from that office as well as defense attorneys which has carried over to the attitudes of the personnel under Ms. Martin's supervision. The working relationships with the Magistrates' Office personnel under Ms. Martin's supervision has deteriorated to the point that personnel from the City Attorney's Office, the various public defenders and contract personnel who work in the Court on a daily basis actually call my office to avoid having to call the Magistrates' Office saying that employees of that office are incredibly nasty to deal with. Further, several attorneys have approached me with horror stories regarding their inability to obtain the assistance needed to carryout their normal day-to-day duties on behalf of their clients in City Court. One especially troubling incident involved Ms. Martin refusing to allow an attorney to file a motion in the Magistrates' Office. Although the motion was late, the attorney should simply have been allowed to file the motion which should have then been put before me accompanied by the applicable paperwork. Ms. Martin took it upon herself to turn the attorney away, refusing to allow the motion to be filed until the attorney threatened further action. On another occasion I specifically call the Magistrates' Office, spoke with Ms. Mary Turner to have her pull the paperwork on a defendant and send that paperwork to me to ensure that a warrant would not be issued for the defendant's arrest as this gentleman was from Michigan and had sent in the requisite paperwork pursuant to his agreement with the City Prosecutor. After all of this, Ms. Martin directed that the warrant be issued contrary to my wishes because the defendant had called the Magistrates' Office and was belligerent

DOTHAN/Martin & Brackin 1140
Confidential Subject to Protective Order

when told that his paperwork had not been received and that he would have to drive back to Dothan from Michigan or have a warrant issued for his arrest although the documents had been sent and received well in advance of his court date. The defendant did in fact drive to Dothan from Michigan as a result. Ms. Martin issued this directive without the paperwork which was in the Court's possession in an effort to prevent the erroneous issuance of this warrant. While I had dismissed Ms. Martin's actions as being a result of her newness to the position and unfamiliarity with magisterial procedure, I now perceive that it was the beginning of a pattern of behavior on her part.

As troubling as these incidents involving attorneys are, the incidents that cause me the most concern are those regarding average citizens. The attorneys at least know how to gain recourse from these arbitrary decisions; however, the average citizen might have no idea where to turn for help. The idea of public service, far from increasing in import since her hire, seems to be ever diminishing in import.

The attitudes of the employees towards one another were another major area of discussion. Again, far from improving, the back-biting that had begun to diminish while the employees had to pull together to accomplish their work after the loss of Ms. Bettye King has increased alarmingly. Rather than working together effectively it appears to be an endless parade of tattling on each other, recounting false and/or unsubstantiated and unwritten allegations being chased down by Ms. Martin.

Traditionally, I have tried to make it clear to the personnel under my supervision that an honest mistake, made through no malice on the part of the employee would not be punished if the employee in question made every effort to correct the mistake and deal with any repercussions arising from the incident. Ms. Martin herself failed to re-assign the duties of Ms. Mary Beth Brackin when Ms. Brackin was out of work for an extended period due to disciplinary measures, an oversight which caused City Court to be unable to have trials for two weeks. Because no dockets were posted while Ms. Brackin was absent, no officers were notified to be in Court. This resulted in defendants coming to Court, many of who missed work, and were unable to have trials.

The various personalities of the employees in my department are, by necessity, well-known to me. I have interacted with all of my employees on a regular basis for the close to five years of my tenure as Municipal Judge. Therefore, it is quite difficult for anyone to tell me something erroneous about the work habits of one of my employees. Ms. Martin recently completed a performance evaluation on one of our most efficient, effective and pleasant employees so negative that it would have deprived the employee in question of her step increase in pay. This immediately raised caution flags in my mind for several reasons. First, Ms. Martin has been employed by the City only a short time and six weeks of that time the employee in question was out of work for surgery giving Ms. Martin precious little time to observe her work habits. Secondly, a striking disparity between prior evaluations and the one prepared by Ms. Martin was apparent upon cursory examination of the two, as the employee had been consistently rated above average. Thirdly, a careful perusal of the evaluation prepared by Ms. Martin

DOTHAN/Martin & Brackin 1141
Confidential Subject to Protective Order

reveals that Ms. Martin, in her ignorance of magisterial procedure, has relied on information from outside sources. While her lack of knowledge is certainly understandable given her short tenure, unsubstantiated and unsupported allegations are certainly not acceptable reasons for cutting an employee's evaluation score. As an example of this, Ms. Martin cited events which occurred (if they occurred at all – these events are unsubstantiated) before her hire date, clearly something that Ms. Martin could not have had personal knowledge of. It appeared that in many instances Ms. Martin was making unsubstantiated allegations of which she had no first hand knowledge. After consulting with another department head, the Interim City Manager and a representative from the Personnel Department regarding these concerns, I called Ms. Martin into my chambers to request that she review the previous evaluations of the employee, which I provided her copies of and which she had not previously reviewed, and re-think her evaluation as the vague and unsubstantiated basis of the allegations coupled with the short time she had been able to observe the employee, the long favorable work history of the employee and the enormity of the possible economic deprivation to the employee caused me to fear that the employee would have grounds to appeal this evaluation.

I spoke with Ms. Martin extensively about the above referenced concerns and requested that she correct the deficiencies in these areas as quickly as practicable.

DOTHAN/Martin & Brackin
CONFIDENTIAL Subject to P
Order



**JUDICIAL DEPARTMENT**
City of Dothan
(334) 615-4142 – Office
(334) 615-4149 – Facsimile

## INTEROFFICE MEMORANDUM

| | |
|---|---|
| TO: | Ms. Kai Davis, Personnel Director |
| FROM: | Rose Evans-Gordon, *[signature]* Municipal Court Judge |
| DATE: | July 8, 2004 |
| SUBJ: | Follow-Up to June 8, 2004 Employee Counseling Memo |

My concern regarding the stat of affairs at the Magistrates' Office continues to deepen steadily. I requested that Ms. Martin address the problems outlined in my memo dated June 8, 2004 with all due haste, but I have been sadly disappointed in my expectation of actions on her part.

Ms. Martin continues to apply discipline and personnel rules in an arbitrary and capricious manner. The daughter of one of our magistrates was diagnosed with a tumor which required an additional biopsy to determine the extent of surgery required to remove all of the cancerous growth. This magistrate advised Ms. Martin of the aforementioned facts and requested to be allowed to take the day of the second biopsy off from work to attend to her daughter. The employee was advised that she would have to return to work immediately upon her daughter leaving the surgical facility, and furthermore, would be required to bring a note from her daughter's surgeon advising the length of the procedure. The employee, not knowing the extent of the surgical procedure needed until after the second biopsy, advised Ms. Martin that she might not be able to work on the day following the surgery, whereupon Ms. Martin told the employee that if she was not at work on that date, she would be written up. My secretary (our payroll clerk) advised Ms. Martin that this was not acceptable according to Personnel Regulations and advised Ms. Martin of the location of the pertinent rules in our Employee Handbook. Last week another magistrate called in with the news that her husband's niece had been diagnosed with toxic shock syndrome and would need to seek treatment for this in Birmingham, AL. This magistrate was granted four (4) days of leave time to assist with the care of the niece. This one example seems to make it alarmingly clear that different magistrates are treated very differently when it comes to leave time.

Ms. Martin's ability to interact successfully with attorneys both within the City and those not employed by the City has not approved appreciably since my counseling session with her. A stand-out example of this involves an incident in which a magistrate in the Courtroom took offense at a remark made by the City Prosecutor during a trial and called Ms. Martin to complain. Ms. Martin took the magistrate's comments at face value and without any further investigation took the City Prosecutor to task for her remark. Ms. Martin's comments to the City

DOTHAN/Martin & Brackin 1142
Confidential Subject to Protective Order

Prosecutor were unprofessional enough by themselves, but Ms. Martin has consistently refused to speak to this attorney in the Courtroom or elsewhere since this incident, creating an extremely tense atmosphere for all who must work with the Court.

*Reviewed*

Ms. Martin took it upon herself to inform the employee whose evaluation she re-did at my request that she (Ms. Martin) did not appreciate having been "forced" to change this evaluation and that it would not happen again. This was something that the employee had no knowledge of and which came as quite an unpleasant shock to her. Remarks like this do not contribute to a pleasant working environment for the employees of this department and are counter-productive to the job performance that I expect from departmental employees.

7/19/04    Nancy Martin,
           Rose Jordan

Eunice Knight                    Michelle
who approves unpaid leave:

Melissa Woods — docked time

Enforcing policies
Perceptions
Complaints on increase
Errors
Inconsistencies (missing paperwork on
    Lavena's JPE & not on Michelle's)