# Dothan Police Department

## M E M O R A N D U M

FROM       :   Police Chief John C. White

TO         :   Municipal Judge Rose Gordon-Evans

DATE       :   April 8, 2004

SUBJECT    :   *INTERNAL INVESTIGATION*

Attached is the complete investigative report on the Internal Investigation of Mary Beth Brackin relating to a Damage Claim filed by Theron Fondren.   If you need any further information concerning this matter, please do not hesitate to contact me at 615-3601.


                                    JOHN C. WHITE
                                    Chief of Police

sl

DOTHAN/Martin & Brackin 1291
Confidential Subject to Protective Order

# Dothan Police Department

## M E M O R A N D U M

| | | |
|---|---|---|
| **FROM** | : | Sergeant Gary S. Coleman |
| **TO** | : | Chief John C. White |
| **DATE** | : | April 8, 2004 |
| **SUBJECT** | : | Mary Beth Brackin Investigation (Fondren Damage Claim) |

Sir,

I received a damage claim forwarded from Assistant City
Attorney Kevan Kelley's office on 01/15/2004.  The damage
claim was filed by Theron Fondren for reimbursement of
$158.90 for a tow fee that he incurred during an arrest on
01/01/2004 on an alias warrant.  Fondren states he was
arrested on an invalid warrant.  Upon examination of
Fondren's handwritten claim, he states that Mary Beth of
the magistrate's office can confirm the false arrest
accusation.  Fondren is referring to Mary Beth Brackin.
During this investigation, it was brought to my attention
by Judge Rose Gordon that Brackin had made statements in
front of two other members of the judicial staff, Lavera
McClain and Eunice Knight, that she told Fondren that the
City of Dothan would be liable for falsely arresting him.
During the course of my investigation into Fondren's
arrest, I found that he had failed to comply with the Court
Referral Program and an alias warrant was issued by Judge
Gordon on 08/12/2002.  On 01/01/2004 Mr. Fondren was
arrested by Shane Ash and booked into the Dothan City Jail
on the two-year-old warrant.

Page 1 of 3

DOTHAN/Martin & Brackin 1292
Confidential Subject to Protective
Order

Mary Beth Brackin Investigation
(Fondren Damage Claim)
April 8, 2004
Page 2 of 3

On 02/20/2004 at 1:22 p.m. I interviewed Theron Fondren
about his contact with Ms. Brackin.  When asked if she had
told him he was falsely arrested, he replied, "I don't know
if she said that."  Fondren had few recollections of his
conversation with Ms. Brackin.

On 03/16/2004 at 2:40 p.m. I interviewed Ms. Lavera McClain
of the Dothan Judicial Department in the chief's conference
room at the Dothan Police Department.  I asked Ms. McClain
if she was familiar with Mr. Fondren's case and she said
she had heard Ms. Brackin speak of it.  McClain replied
that she had when she and Eunice Knight were working in the
upstairs magistrate's office Ms. Brackin came into the
office saying that she had told Theron Fondren that he had
been falsely arrested due to the fact an invalid warrant
was issued by Magistrate Ann Baxter and that Baxter should
be punished for her incompetence.  McClain said the next
day Brackin came into the office again and made the
statement that she wasn't sorry and wasn't taking it back
and that she stood by her original statement, referring to
the statement she made in regards to Fondren's arrest.  On

03/17/2004 at 3:25 p.m. I interviewed Eunice Knight of the
Dothan Judicial Department.  She confirmed the incident
where Ms. Brackin made the statement claiming the City of
Dothan was liable.  She also remembers that Brackin said
she instructed Fondren to file suit against the City of
Dothan.

On 03/22/2004 a letter of notification signed by Judge Rose
Gordon was delivered to Mary Beth Brackin at the
magistrate's office by Administrative Assistant, Michelle
Sellers.  Brackin was instructed to meet with Sergeant Ray
Owens and myself for an administrative interview.  At
approximately 2:00 p.m. Sergeant Ray Owens and I conducted
the interview with Mary Beth Brackin in the chief's
conference room at the Dothan Police Department.  Prior to
this interview, Administrative Assistant, Michelle Sellers
Garritized Ms. Brackin in the presence of Court
Administrator, Nancy Martin, Sergeant Ray Owens, and
myself.  After the interview was underway, I asked

DOTHAN/Martin & Brackin 1293
Confidential Subject to Protective
Order

Mary Beth Brackin Investigation
(Fondren Damage Claim)
April 8, 2004
Page 3 of 3


Ms. Brackin if she had ever said anything to Fondren about
being falsely arrested.  She replied that she didn't recall
making that statement, but was not sure.  When asked the
question again later in the interview, she states that
Fondren brought up the issue of false arrest first.  I then
asked Ms. Brackin if she had ever made any statements in
front of other co-workers about telling Fondren the City of
Dothan was liable and he should file suit.  She again
answered, "I don't remember."  I then produced a copy of an
interoffice memorandum dated 01/08/2003 issued by Judge
Rose Gordon directed to all judicial department personnel
in regards to Public Relations.  It clearly states that
employees must use discretion when dealing with a citizen
wanting to file a claim or make an allegation of liability
against the City of Dothan.  Personnel are to direct the
person to the City Clerk's Office without commenting on the
possibility of liability.  I asked Ms. Brackin had she ever
seen this document before and she stated that she had and
had received a copy of it.  Judicial administrative records
show she received this document on 01/13/2003.

It appears Ms. Brackin used poor judgment when instructing
Mr. Fondren on how to file his reimbursement claim with the
City of Dothan after a written directive was issued.  She
also admitted her actions to fellow co-workers, McClain and
Knight.  Based on the evidence, Mary Beth Brackin has
possibly violated a Major Offense under the Personnel Rules
and Regulations, Section 3-42.(6) **Actions or lack of
actions that could cause undue financial loss to the City.
Negligence in carrying out assigned tasks or duties or
responsibilities of one's position.**

Upon these findings it is believed that Personnel Rule
Section 3-42.(6) was violated and this complaint is
sustained.

Sergeant Gary S. Coleman
Internal Affairs Division

GSC/pd

DOTHAN/Martin & Brackin 1294
Confidential Subject to Protective
Order

# Dothan Police Department

# M E M O R A N D U M

FROM        :   Police Chief John C. White

TO          :   City Attorney Len White

DATE        :   March 30, 2004

SUBJECT  :   *CLAIM OF THERON FONDREN*

Attached is the complete investigative report on the Claim filed by
Theron Fondren.    If you need any further information concerning
this claim, please do not hesitate to contact me at 615-3601.

_____
JOHN C. WHITE
Chief of Police

sl

DOTHAN/Martin & Brackin 1295
Confidential Subject to Protective
Order

# Dothan Police Department

## M E M O R A N D U M

| | | |
|---|---|---|
| **FROM** | : | Sergeant Gary S. Coleman |
| **TO** | : | Chief John C. White |
| **DATE** | : | March 24, 2004 |
| **SUBJECT** | : | Theron Fondren – Damage Claim |

Sir,

On 01/15/2004 I received a damage claim forwarded from Assistant City Attorney Kevan Kelley's office for investigation.  This claim was filed by Mr. Theron Fondren for the reimbursement of $185.90 towing fee that he incurred during his arrest on 01/01/2004 on a two-year old alias warrant.  Mr. Fondren also claims that he was falsely arrested.

The facts of this incident are as follows:

On 11/08/2001 Dothan Police Officer Chris Judah arrested Mr. Theron Fondren at 190 Festival Drive (fairgrounds) for public intoxication.  Fondren was allowed to bond and given a court date of 11/26/2002.  He was sentenced to complete a court referral program by 05/20/2002.  On that date he was found not to be in compliance with the program and a motion was filed to revoke him and a new court date of 08/12/2002 was given. Mr. Fondren failed to appear on 08/12/2002 and an alias warrant for his arrest was then issued by Judge Rose Gordon.

Page 1 of 2

DOTHAN/Martin & Brackin 1296
Confidential Subject to Protective
Order

Theron Fondren – Damage Claim
March 24, 2004
Page 2 of 2


    The court referral program records show that Fondren
completed the program on 12/17/2002, five months after the
alias warrant was issued.  On 01/01/2004 Mr. Fondren was
arrested by Office Shane Ash on a traffic stop.  Only after
his arrest on the alias warrant did Mr. Fondren submit his
court referral completion paperwork to the court on
01/08/2004.  All records show that Fondren was arrested on
a valid alias warrant.


Sergeant Gary S. Coleman
Internal Affairs Division

GSC/pd

DOTHAN/Martin & Brackin 1297
Confidential Subject to Protective
Order

# MEMORANDUM

**TO**      :  John White, Police Chief

**FROM**    :  D. Kevan Kelly, City Attorney

**DATE**    :  January 7, 2004

**RE**      :  Damage Claim of Theron Fondren


      Claimant alleges that on January 1, 2004 he was wrongfully arrested on a false warrant.  Claimant is also asking to be reimbursed for a towing fee in the amount of $158.90.

      Please investigate this matter and report your findings to me.  This request is made in anticipation of litigation.


DKK/jm

cc:  Larry Muench, General Services

DOTHAN/Martin & Brackin 1298
Confidential Subject to Protective
Order

**City Clerk's Department**

# Memo

**To:**     City Attorney Len White

**From:**    City Clerk Pam McCoy

**Date:**     January 7, 2004

**Re:**      **DAMAGE CLAIM – Theron Fondren**

---

Please process the attached claim.

cc: Mark Kight

cc: Larry Muench

DOTHAN/Martin & Brackin 1299
Confidential Subject to Protective
Order

1-7-04

City Clerk

Ms Ann is pulling plw - will send over ns

On ~~bee~~ Jan 1 2004 I was wrongfully arrested on a false warrant. Mary Beth at the Magistrates office can confirm this, she also said that I should see you about getting my Towing fee reimbursed $158.90   My CAO contact is Harrison Farr 677-1156 he can also confirm This.

Theron Fondren
 125 Bel Aire Dr
Dothan, AL  36303
    791-8415
    790-6898
    792-0510

Thank
you

Please contact me as soon as possible

I have included my Towing Fee Bill

DOTHAN/Martin & Brackin 1300
Confidential Subject to Protective Order

Driver _____ Unit # _53_   Invoice No. **28361**

## STORMIN'S

**COM-TEK**

**EFS**

**DAMAGE - FREE TOWING**

FUEL-ING NEWS   VISA   MasterCard

3151 E. Hwy. 27
Ozark, Alabama 36360
Telephone (334) 774-7138

105 Race Track Rd.
Dothan, Alabama 36301
(334) 671-5500

Driver's Name _Theron Joseph Fordst_   Date _2-1-04_
Location _westgate & Retail ST_
Problem W/Vehicle _0_   Tow To _105 RT Rd_
Company _____   Bill To _Retail_
Address _749 r ch 69_   City _Hartford_   State _A_
Zip _36344_ Phone _791-9415_   Odometer _175491_
Truck # _95_   Make _Volvo_   Swap # _____   Model _____   Trailer # _____   Color _Grey_
VIN # _4V4X88501165616L_   License # _781785_   St. _FL_

| | Start | Finish | Rate | Total |
|---|---|---|---|---|
| Local/Hookup Fee | | | @ | |
| Mileage | 5-3-7 | | @ | |
| Trailer Additional | | | @ | |
| Swapout Additional | | | @ | |
| Recovery/Winch | | | @ | |
| Additional Persons | | | @ | |
| Cleanup Roadway | | | @ | |
| Standby Time | | | @ | |
| Additional Equipment | | | @ | |
| Air Cushion Recovery | | | @ | |
| Storage Fee | 1-1-04 | 2 | @ 24.00 | 48.00 |

Notes:   _ADL 6352046_
_fd (95_

Tarp Fee _____
Wknd/Night Addl _____
Fuel Surcharge _____
Paid Out _____
Admin. Fee _____
Dolly Charge _____
Sub-Total _158.90_
Discount _____
**TOTAL** _158.90_

P.O. # _____

**Security Agreement**
All accounts are due and payable upon receipt and are considered delinquent after 30 days. All accounts past due will be charged a default charge of 1-1/2% per month on the past due balance. This transaction constitutes the entire agreement between buyer and seller and the signature of the buyer shows acknowledgment of same. Buyer agrees to pay all costs of collection, including a reasonable attorney fee under the Constitution and laws of the State of Alabama and any state of the Union. Buyer personally guarantees payment of debt. Buyer agrees that vehicle was checked for any towing or recovery damage and by same has determined damage free and in satisfactory condition. Buyer grants to the seller a security interest in the above merchandise until the indebtedness, including finance charges, is paid in full. Until payment in full has been made, Buyer agrees that; 1. Seller shall retain title to said merchandise; 2. Buyer will have the risk of loss or damage; 3. Buyer agrees that Stormin's Inc. will hold an express lien on any vehicle towed or recovered and will not demand release of said vehicle until all towing, recovery and storage charges are paid in full. 4. Buyer will not sell, transfer possession or remove or encumber above merchandise without seller's written consent; 5. If Buyer defaults in the payment of any installment, Seller may declare the entire balance due and payable and Seller may at its option take back the merchandise or affirm the sale and hold Buyer liable for the unpaid balance, including any reasonable attorney fees or collection charges permitted by law; 6. The Seller shall have all rights, options and duties under the Uniform Commercial Code of the state. Security interest in the goods herein described shall terminate as the unpaid balance for them are paid.

Accepted By _____   Date _____   **THANK YOU**
Mail all correspondence to 3151 E. Hwy. 27, Ozark, AL 36360, Telephone 334-774-7138.

DOTHAN/Martin & Brackin 1301
Confidential Subject to Protective Order

# ADMINISTRATIVE INVESTIGATION INTERVIEW
## WITH THERON FONDREN
### CLAIM FOR A $158.90 REIMBURSEMENT FOR TOW FEE
#### FEBRUARY 20, 2004 1:22
#### CHIEF'S CONFERENCE ROOM DOTHAN POLICE DEPARTMENT

GC: OK. WOULD YOU STATE YOUR NAME FOR ME PLEASE SIR?

TF: THERON FONDREN.

GC: OK. MR. FONDREN AH, WHAT'S YOUR HOME ADDRESS PLEASE?

TF: 125 BELAIR DRIVE, DOTHAN ALABAMA 36303.

GC: OK. AND YOUR HOME PHONE NUMBER?

TF: 791-8415.

GC: AND ARE YOU EMPLOYED?

TF: YES SIR.

GC: WITH WHOM?

TF: HOME DEPOT.

GC: ALL RIGHT AND THAT'S HERE IN DOTHAN?

TF: YES SIR.

GC: OK. AND DID YOU, HAVE YOU FILED A CLAIM WITH THE CITY OF DOTHAN FOR A REIMBURSEMENT OF A TOW FEE FOR ONE HUNDRED AND FIFTY EIGHT DOLLARS AND NINETY CENTS ($158.90)?

TF: YES SIR.

GC: OK. AND IS THIS FROM AN ARREST, WAS THIS, WAS THIS OCCURRED AFTER AN ARREST?

TF: YES SIR.

GC: ALL RIGHT. AND TELL ME ABOUT THE SITUATION OF HOW YOU CAME TO BE ARRESTED BY THE DOTHAN POLICE DEPARTMENT AND WHEN.

DOTHAN/Martin & Brackin 1301a
CONFIDENTIAL Subject to
Protective Order

1

TF: ON I BELIEVE IT WAS NEW YEARS EVE OR MAY HAVE BEEN
    AFTER TWELVE O'CLOCK NEW, ACTUALLY NEW YEARS DAY OF
    2004.

GC: OK.
TF: AND I WAS PULLED OVER FOR IMPROPER LIGHTS AND NOT
    WEARING MY SEATBELT.

GC: AND WHERE WERE YOU PULLED OVER AT?
TF: ON BELAIR DRIVE.

GC: ALL RIGHT.
TF: ABOUT A HUNDRED YARDS FROM MY HOME.

GC: OK.
TF: AND I RECEIVED A TICKET FOR THE SEATBELT AND
    IMPROPER LIGHTS. THOUGHT EVERYTHING WAS FINE AND
    THEN THE OFFICERS RUN MY, ON DRIVERS LICENSES I
    GUESS AND IT COME UP THAT I HAD AN OUTSTANDING
    WARRANT FOR NOT APPEARING IN COURT FOR A PUBLIC
    INTOXICATION CHARGE THAT I HAD TWO YEARS PRIOR FOR
    NOT TURNING IN MY COURT REFERRAL ORDERED CLASS
    CERTIFICATE BUT I HAD TURNED IN MY CERTIFICATE.

GC: OK. AH, TELL ME ABOUT THAT SITUATION.  DO YOU
    REMEMBER THE DATE THAT THAT OCCURRED?
TF: THE PUBLIC INTOXICATION?

GC: PUBLIC INTOXICATION.
TF: FEBRUARY OF 2, 2002 OR 2001 I CAN'T REMEMBER.

GC: AH, COULD IT HAVE BEEN AH, NOVEMBER 8, 2001?
TF: POSSIBLY.

GC: OK. AND WHAT HAPPENED WITH THAT ARREST FOR THE
    PUBLIC INTOXICATION IN 2001?
TF: AH, I WAS FOUND GUILTY OF PUBLIC INTOXICATION AND
    ORDER TO GO TO COURT REFERRAL.

DOTHAN/Martin & Brackin 1301b
CONFIDENTIAL Subject to
Protective Order

2

GC: UM HUM. OK YOU REMEMBER THE DATE THAT YOU WENT TO COURT REFERRAL?

TF: NO SIR. I HAD TO CHECK IN WITH THEM EVERY MONTH.

GC: ALL RIGHT.

TF: FOR, FOR THE NEXT YEAR I BELIEVE.

GC: AND WERE YOU, DID YOU GO TO, DID YOU ATTEND SOME TYPE OF SCHOOL?

TF: I WENT TO INTENSIVE OUTPATIENT LEVEL THREE TO START WITH. AND THEN I GOT MOVED TO THE MENTAL HEALTH BOARD OUT BESIDE THE OLD FARM CENTER.

GC: UM HUM.

TF: TO A CLASS CALLED DUAL DIAGNOSIS.

GC: UM HUM.

TF: AND I WENT TO THAT AND I ALSO WENT TO ALCOHOLIC ANONYMOUS MEETINGS.

GC: DID YOU COMPLETE THESE SCHOOLS?

TF: YES SIR.

GC: ALL RIGHT. DID YOU RECEIVE A CERTIFICATE?

TF: YES SIR.

GC: OK. AND WAS THAT PART OF YOUR COURT REFERRAL AH, OR PART OF YOUR SENTENCE FROM THE MUNICIPAL JUDGE TO PRESENT YOUR CERTIFICATE?

TF: I DON'T KNOW IF I ACTUALLY RECEIVED THE CERTIFICATE FROM THE FIRST CLASS SINCE I GOT MOVED FROM THE INTENSIVE OUTPATIENT THREE TO THE DUAL DIAGNOSIS, I JUST GOT SIGNED OFF BY HARRISON FARR AT COURT REFERRAL.

GC: OK.

TF: SO I DON'T KNOW IF THAT WAS THE ACTUAL CERTIFICATE BUT IT WAS SIGNED OFF BY THE COURT REFERRAL THAT I WAS OK AND FREE.

DOTHAN/Martin & Brackin 1301c
CONFIDENTIAL Subject to
Protective Order

GC: OK. BUT YOU, DID THEY EVER SAY THAT YOU HAD A
CERTIFICATE YOU HAD TO PRESENT BACK TO THE COURT?
TF: THEY SAID THAT THE PAPER FROM COURT REFERRAL THAT I
TOOK BACK TO THE COURT WOULD SERVE AS MY
CERTIFICATE.

GC: OK. AND YOU DID THAT?
TF: YES SIR.

GC: ALL RIGHT DO YOU REMEMBER WHAT DATE YOU PRESENTED
THAT PAPERWORK?
TF: I HAVE NO IDEA BECAUSE I WENT TO COURT, I HAD TO GO
TO COURT EVERY MONTH.

GC: OK.
TF: TO CHECK IN.

GC: BUT YOU DO REMEMBER TAKING A COURT REFERRAL AH,
PAPERWORK TO THE COURT?
TF: YES SIR.

GC: AND THIS WAS AFTER YOU COMPLETED YOUR CLASSES?
TF: YES SIR.

GC: ALL RIGHT.
TF: AND I TURNED IT IN AT COURT. AH, I CAN'T REMEMBER
THE JUDGE'S NAME, REAL NICE BLACK LADY. I TURNED IT
IN TO THE PERSON THAT SITS TO THE LEFT OF HER THERE
IN THE COURTROOM AND SHE SAID I WAS A FREE MAN,
DON'T DO IT AGAIN.

GC: ALL RIGHT. AND AH, DID YOU EVER RECEIVE ANY LETTERS
OR ANYTHING FROM THE COURT STATING THAT YOU WERE
NOT IN COMPLIANCE?
TF: NO SIR.

GC: AH, NO NOTIFICATION, NO PHONE CALLS, ANYTHING OF
THAT NATURE?
TF: NO SIR.

DOTHAN/Martin & Brackin 1301d
CONFIDENTIAL Subject to
Protective Order

4

GC: WERE YOU GIVEN ANOTHER COURT DATE THAT YOU, THAT
YOU EVER FAILED TO SHOW UP AT? WAS THERE ANY
CONFUSION THERE?

TF: WHAT, THAT'S WHAT I WAS ARREST FOR BUT I HAD NO
IDEA THAT I WAS GIVEN ANOTHER COURT DATE.

GC: ALL RIGHT BUT YOU NEVER RECEIVED ANY KIND OF
NOTIFICATION, PAPER?

TF: NO SIR.

GC: LETTER?

TF: NO SIR.

GC: PHONE CALL OR ANYTHING OF THAT NATURE? AH, DID YOU
EVER HAVE TO GO BACK AND RECOM...AH, RECOMPLETE THE
AH, SRO PROGRAM? AH, I'M SORRY THE CRO PROGRAM? DID
YOU EVER HAVE TO REDO IT AGAIN?

TF: AFTER THIS TIME?

GC: UM HUM.

TF: NO SIR.

GC: ALL RIGHT.

TF: HAVEN'T BEEN IN TROUBLE SINCE. EXCEPT FOR SPEEDING
TICKETS, SEATBELT TICKETS AND STUFF LIKE THAT.

GC: AH, DID YOU RESUBMIT THAT PAPERWORK AT ANY POINT IN
TIME TO THE MAGISTRATES OFFICE AFTER YOUR ARREST?

TF: I, I DIDN'T HAVE TO I JUST CALLED HARRISON FARR AT
COURT REFERRAL AND EXPLAINED THE SITUATION TO HIM
AND HE SAID HE'D MAKE A PHONE CALL TO THE
MAGISTRATES OFFICE.

GC: BUT...

TF: SOME HOW I ENDED UP AT THE MAYOR'S OFFICE AND THEN
BACK AT THE CITY CLERK'S OFFICE TO GET MY
REIMBURSEMENT SO.

GC: OK. ALL RIGHT. DID YOU DO WHAT THE AH, MAGISTRATES
OFFICE TOLD YOU THE TIME THAT YOU AH, ON THE, ON

DOTHAN/Martin & Brackin 1301e
CONFIDENTIAL Subject to
Protective Order

THE PUBLIC INTOXICATION AND THE CRO PEOPLE WERE
INVOLVED, DID YOU, DID YOU RETURN EVERYTHING THAT
THE MAGISTRATES OFFICE TOLD YOU TO DO, THE JUDGE
SAID?

TF: YES SIR.

GC: OK. AH, BUT YOU NEVER MISSED ANY COURT DATES?
TF: NEVER MISSED ANY COURT DATES.

GC: I SEE IN YOUR CLAIM HERE THAT AH, MARY BETH AH, DID
YOU, DID YOU EVER TURN ANYTHING IN TO HER? MARY, DO
YOU KNOW MS. BRACKIN, DO YOU KNOW HER?
TF: MS. BRACKIN.

GC: OR DO YOU JUST KNOW HER BY MARY BETH?
TF: I JUST KNOW HER BY MARY BETH. THAT'S WHO HARRISON
TOLD ME HE HAD TALKED TO AT THE MAGISTRATES OFFICE.

GC: OK.
TF: CAUSE I CALLED HARRISON AND HE SAID, I'M LIKE
HARRISON DON'T I NEED SOME KIND OF PAPERWORK SO
THAT THIS DON'T HAPPENED AGAIN YOU KNOW I CAN GET,
PHYSICALLY HAND THIS TO SOMEBODY. AND ~~SHE~~ HE SAID I
TALKED TO MARY BETH.

GC: UN HUH. ALL RIGHT. AND BUT YOU NEVER MET MARY BETH
BEFORE?
TF: NEVER MET MARY BETH BEFORE.

GC: HAD YOU DEALT WITH HER DURING THAT FIRST SITUATION?
TF: I CAN'T REMEMBER.

GC: DID SHE GIVE YOU ANY INFORMATION AS FAR AS HOW TO
GO ABOUT TURNING THIS IN OR FILING THIS CLAIM?
TF: I THINK SHE SAID TO GO TO THE CITY CLERK'S OFFICE.

GC: UM HUM.
TF: AND THAT'S WHERE THEY REFERRED ME TO. CAUSE SHE
GAVE ME A PIECE OF PAPER THE BOND PAPER (?).

DOTHAN/Martin & Brackin 1301f
CONFIDENTIAL Subject to
Protective Order

GC: DO YOU HAVE, YOU DON'T, THIS?

TF: YES SIR.

GC: OK. THIS WAS NOT GIVEN TO YOU WHEN YOU GOT OUT OF JAIL?

TF: MAYBE YEAH THAT WAS GIVEN TO ME WHEN I GOT OUT OF JAIL. MAYBE SHE JUST SENT ME TO THE CITY CLERK'S OFFICE. CAUSE I, WHAT WAS THE GIRL'S NAME AT THE CITY CLERK'S OFFICE. I CAN'T REMEMBER. SHE'S THE RECEPTIONIST RIGHT WHEN YOU WALK IN.

GC: ALL RIGHT AND WHEN YOU WENT TO THE CITY CLERK'S OFFICE, DID SHE GIVE YOU THE PAPERWORK TO FILE THE CLAIM OR TELL YOU HOW TO FILE THE CLAIM?

TF: FOR THE FIVE HUNDRED OR FOR THIS?

GC: ANY OF IT. HOW, HOW DID, AFTER YOU TALKED WITH MS. BRACKIN, WHAT DID SHE TELL YOU TO DO?

TF: I BELIEVE SHE TOLD ME TO GO TO THE CITY CLERK'S OFFICE. SOMEBODY TOLD ME TO GO TO THE CITY CLERK'S OFFICE.

GC: UM HUM.

TF: AND I WENT THERE AND EXPLAINED THE SITUATION. I DIDN'T HAVE TO FILL OUT ANY PAPERWORK THEY JUST KNEW ABOUT IT SOME HOW. I GUESS MARY BETH MAYBE TOLD THEM OR HARRISON HAD TOLD THEM. AND THEY TOLD ME TO CHECK BACK OR THAT I WOULD RECEIVE A CHECK IN THE MAIL WITHIN THREE WEEKS.

GC: UM HUM.

TF: SO FOUR WEEKS LATER, I WENT BACK TO THE MAGISTRATES OFFICE AND THEY REFERRED ME BACK TO THE CITY CLERK'S OFFICE AND MY CHECK WAS THERE.

GC: DID MS. BRACKIN SAY ANYTHING TO YOU ABOUT BEING FALSELY ARRESTED OR BEING ARRESTED IN ERROR OR ANYTHING OF THAT NATURE? THAT YOU WERE?

TF: I CAN'T REMEMBER. NOW HARRISON SAID THAT IT WAS JUST A COMPUTER PROBLEM OR SOMETHING LIKE THAT. THE

DOTHAN/Martin & Brackin 1301g
CONFIDENTIAL Subject to
Protective Order

RECORDS DIDN'T GET BACK TO THE POLICE DEPARTMENT OR IN THE COMPUTER SOMETHING LIKE THAT.

GC: UM HUM. OK. DID MS. BRACKIN EVER SAY ANYTHING TO YOU ABOUT AH, FILING THIS CLAIM?

TF: OTHER THAN I THINK SHE REFERRED ME TO THE CITY CLERK'S OFFICE. SOMEBODY AT THE CITY CLERK'S OFFICE GAVE ME THE NUMBER OF, OF THE, KEVIN KELLY.

GC: OK.

TF: AND I TALKED TO KEVIN KELLY AND HE REFERRED ME TO NICK MONDAY.

GC: RIGHT. OK AND BUT MS. BRACKIN NEVER SAID ANYTHING ABOUT YOU BEING FALSELY ARRESTED? SAY THAT THERE WAS, THAT YOU WERE ARRESTED IN ERROR? SHE EVER SAY THAT TO YOU?

TF: I DON'T KNOW IF SHE SAID THAT BUT THAT WAS, THAT WAS UNDERSTOOD FROM HER CONVERSATION WITH HARRISON FARR.

GC: UN HUH. OK. AH, DID SHE EVER SAY ANYTHING TO YOU ABOUT FILING A SUIT AGAINST THE CITY?

TF: NO.

GC: AND WAS ANYBODY ELSE AROUND IN THE ROOM WHEN YOU WERE TALKING WITH MS. BRACKIN?

TF: YEAH THERE WAS SOME PEOPLE IN THERE CAUSE YOU KNOW WE WERE AT THE OLD MAGISTRATES OFFICE TALKING THROUGH THE GLASS SO THERE WAS OTHER PEOPLE THERE. I DON'T KNOW WHO THEY WERE.

GC: BUILDING RIGHT HERE ON THE CORNER?

TF: YES SIR.

GC: OK. ALL RIGHT. AND AH, DID MS. BRACKIN CALL ANYBODY OTHER, DID SHE CALL MR. FARR OR ANYTHING OF THAT NATURE WHILE YOU WERE THERE?

TF: I DON'T KNOW SHE WAS IN, SHE WAS AH, COMING BACK TO THE WINDOW AND AWAY FROM THE WINDOW DURING THE

DOTHAN/Martin & Brackin 1301h
CONFIDENTIAL Subject to
Protective Order

CONVERSATION SO I DON'T KNOW IF SHE CONTACTED ANYBODY.

GC:  DO YOU KNOW MS. BRACKIN OTHER THAN THROUGH THE MAGISTRATES OFFICE?

TF:  NO I DIDN'T EVEN KNOW HER NAME WAS, I DIDN'T KNOW HER LAST NAME WAS BRACKIN.

GC:  OK MARY BETH?

TF:  I JUST KNEW MARY BETH. AND THE ONLY REASON I KNEW THAT WAS FROM HARRISON.

GC:  OK. ALL RIGHT SIR. WELL YOU HAVE ANYTHING ELSE YOU'D LIKE TO ADD TO THIS STATEMENT?

TF:  NO SIR.

GC:  ALL RIGHT THIS IS THE END OF THE STATEMENT.  THE TIME IS 135.

PRJOHNSON

DOTHAN/Martin & Brackin 1301i
CONFIDENTIAL Subject to
Protective Order

9



# The City Of Dothan
# Municipal Court



Honorable Rose Evans-Gordon
Municipal Judge

Nancy Martin
Municipal Court Administrator

**March 22, 2004**

**Ms. Mary Beth Brackin**
**Magistrates' Office**
**115 W. Adams Street**
**Dothan, AL 36303**

**Ms. Brackin:**

**This letter is formal notification of an administrative investigation into a claim of false arrest brought by Theron Fondren which allegedly occurred on January 1, 2004.**

**You are directed to report to Sgt. Gary Coleman and Sgt. Ray Owens of the Dothan Police Department for an administrative interview today, Monday March 22, 2004 at 2:00 p.m. in Chief White's conference room in the Police Department at 210 North Saint Andrews Street. You are further directed to cooperate fully in this investigation by answering the questions put to you by the investigators to the best of your ability.**

**Sincerely,**

Rose Evans-Gordon,
**Municipal Judge**

**I, Mary Beth Brackin, understand that an administrative investigation into the above referenced incident is in progress and that I am to report to the Chief of Police's conference room at 2:00 p.m. today, March 22, 2004 for an administrative interview as part of this investigation.**

_Mary Beth Brackin_     3-22-04     11:45 Am

**Mary Beth Brackin**       **Date**       **Time**

Post Office Box 2128
Dothan, Alabama 36302-2128
(334) 615-4150
(334) 615-4142
Fax (334) 615-4149

DOTHAN/Martin & Brackin 1301j
CONFIDENTIAL Subject to
Protective Order

# DOTHAN JUDICIAL DEPARTMENT

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Mary Beth Brach_

DATE/TIME: _3-22-04    14:00_

INVESTIGATING OFFICER: _Sgt Gary S Coleman_

DATE/TIME: _3-22-04  14 01._

WITNESS SIGNATURE: _Nancy C. Martin_

DATE/TIME: _3-22-04  14:02_

PD 15 B

DOTHAN/Martin & Brackin 1301k
CONFIDENTIAL Subject to
Protective Order

```
DATE:      03/22/2004
TIME:      1402 HOURS
LOCATION:  DOTHAN POLICE DEPARTMENT
           CHIEF'S CONFERENCE ROOM
```

GC:  AH, STATE YOUR FULL NAME FOR ME, PLEASE.
MB:  MARY ELIZABETH BRACKIN.

GC:  AND YOUR JOB TITLE.
MB:  MAGISTRATE.

GC:  FOR THE CITY OF DOTHAN?
MB:  YES.

GC:  ALRIGHT.  ARE YOU TAKING ANY MEDICATIONS PRESCRIBED BY A
     DOCTOR THAT WOULD AFFECT YOUR ABILITY TO THINK CLEARLY?
MB:  NO.

GC:  OKAY.  ARE YOU NOW UNDER THE INFLUENCE OF ALCOHOL OR
     ILLEGAL DRUGS?
MB:  NO.

GC:  AH..I'M SERGEANT GARY COLEMAN.  I'M CURRENTLY ASSIGNED TO
     THE INTERNAL AFFAIRS DIVISION.  AH..THIS IS SERGEANT RAY
     OWENS, ALSO ASSIGNED TO THE INTERNAL AFFAIRS DIVISION.  UM,
     YOU UNDERSTAND THIS IS AN ADMINISTRATIVE INVESTIGATION?
MB:  YES, I MEAN I WAS TOLD ABOUT THE..

GC:  YOU RECEIVED A LETTER?
MB:  11:45 THIS MORNING.

GC:  OKAY.  AH..HAS YOUR GARRITY BEEN READ TO YOU AND YOU
     UNDERSTAND WHAT IT SAYS?
MB:  YES.

GC:  IS THIS YOUR SIGNATURE?
MB:  YES, IT IS.

GC:  YOU UNDERSTAND YOUR STATEMENT IS BEING RECORDED?
MB:  SURE.

GC:  OKAY.  AH..YOU'RE FOCUS OF, OF THIS INVESTIGATION, YOU
     UNDERSTAND THAT?
MB:  NO, I MEAN I DON'T, WHAT DOES THAT MEAN?

RO:  THAT, THAT, THAT MEANS YOU'RE, YOU'RE, YOU'RE THE SUSPECT
     IN THIS INVESTIGATION.

DOTHAN/Martin & Brackin 13011
CONFIDENTIAL Subject to
Protective Order

MB:  OKAY.  NO.

RO:  DO YOU KNOW WHAT, DID THEY TELL YOU WHAT THEY BELIEVED HAD
     HAPPENED?
MB:  NO.

RO:  OKAY.
MB:  THE ONLY THING I WAS GIVEN WAS THAT LETTER THAT YA'LL WERE
     GONNA HAVE AN INTERVIEW TODAY WITH ME AT TWO, BUT..

RO:  IN REGARDS TO THERON FONDREN?
MB:  THERON FONDREN, BUT I MEAN THAT WAS IT.  IT DIDN'T SAY
     ANYTHING ABOUT ME BEING A SUSPECT.

RO:  WELL, SUSPECTS THE WRONG TERM, BUT..FOCUS OF THE
     INVESTIGATION.  YOU'RE, YOU'RE THE FOCUS, YOU'RE THE...
MB:  OKAY.

GC:  LET ME SHOW YOU A DAMAGE CLAIM HERE.  YOU EVER SEEN THAT
     BEFORE?
MB:  NO.  NOT THIS.

GC:  DO YOU KNOW THERON FONDREN?
MB:  UM, I DON'T KNOW HIM PERSONALLY, NO.

GC:  AH,...
MB:  I MEAN I KNOW HE UM, HAD A CASE IN OUR COURT.

GC:  HAVE YOU EVER DEALT WITH HIM ON A PROFESSIONAL BASIS?
MB:  YES.

GC:  WHEN WAS THAT?
MB:  UM, I'M NOT SURE OF THE DATE.  I MEAN, I WAS WORKING
     DOWNSTAIRS AT THE OFFICE WHEN HE CAME IN.

GC:  WAS IT AFTER JANUARY THE FIRST OF 2004?
MB:  I DON'T KNOW.  I MEAN, I, I COULDN'T TELL YOU THE EXACT
     DATE.

GC:  WHAT, WHAT WAS HIS PURPOSE FOR BEING THERE?
MB:  HE WAS TOLD, HE CAME TO THE WINDOW AND, UM, WANTED TO SEE
     MARY BETH BRACKIN AND I SAID THIS IS SHE.

GC:  ALRIGHT..AND HAD YOU EVER DEALT WITH HIM PRIOR TO THAT?
MB:  NOT THAT I RECALL.

GC:  YOU KNOW HOW HE KNOWS YOUR NAME?

DOTHAN/Martin & Brackin 1301m
CONFIDENTIAL Subject to
Protective Order

MB:    NO.

GC:    DID ANYBODY TELL HIM TO COME SEE YOU?
MB:    I DON'T KNOW.  NOT THAT I, YOU KNOW, RECALL.

GC:    DID YOU EVER TALK TO HARRISON PHARR ABOUT HIM?
MB:    HARRISON, THE CRO?  OKAY.  I DON'T, I DON'T RECALL.  I
       MEAN, I DON'T, I TALK WITH HARRISON AND PEOPLE FROM CRO FOR
       SEVERAL PEOPLE, BUT I DON'T RECALL ANY SPECIFIC PERSON.

GC:    DID YOU EVER TELL FONDREN THAT HE'D BEEN FALSELY ARRESTED?
MB:    UM, IF I RECALL HE SAID HE WAS THERE, HE WANTED TO UM, I
       THINK HE SAID HE WANTED HIS TOW MONEY BACK OR SOMETHING,
       SAID THAT HE WAS THERE TO SEE ME 'CAUSE HE HAD BEEN FALSELY
       ARRESTED.  AND, UM, I THINK HE HAD HIS BOND PAPERWORK AND I
       WENT TO MAKE A COPY OF THAT AND I WAS, UM, I THINK IT WAS
       MARY TURNER THAT WAS DOWN THERE 'CAUSE I WAS BACKUP THAT
       DAY.  I'M NOT SURE IF SHE WAS THERE OR NOT, I, I DON'T
       KNOW.  BUT, I REMEMBERED A, A PERSON THAT UM, I BELIEVE
       THAT WE HAD ISSUED, NOT WE, BUT I THINK IT WAS ANN BAXTER
       HAD ISSUED A WARRANT INCORRECTLY, AND UM, I WAS SPEAKING TO
       THAT PERSON ABOUT IT, BUT IT TURNED OUT THAT PERSON WAS
       JAMES PERON AND I GUESS I JUST GOT THERON AND PERON, 'CAUSE
       IT RHYMES, CONFUSED.  BUT, I TOLD HIM, HE SAID WELL I WANT
       MY TOW MONEY BACK.  I SAID, WELL YOU'LL HAVE TO FILE A
       CLAIM WITH THE CITY CLERK'S OFFICE TO DO THAT.  AND HE
       SAID, WELL WHERE DO I GO?  AND I JUST TOLD HIM WHERE TO GO
       AND HE SAID, WHAT DO I SAY?  I SAID, WELL YOU'LL JUST HAVE
       TO TELL THEM I GUESS YOU WERE FALSELY ARRESTED, BUT I
       WASN'T IMPLYING THAT HE WAS, I WAS JUST TELLING HIM THAT'S
       WHAT HE NEEDED TO TELL THEM IN ORDER TO FILE A CLAIM.

GC:    OKAY.
MB:    BUT, THAT'S ALL I REMEMBER ABOUT THAT NAME.  I MEAN THE
       NAME HAD BEEN KINDA TALKED AROUND THE OFFICE FOR A BIT, BUT
       NOT..

RO:    FONDREN'S?
MB:    YEAH.

GC:    WHY?  WHY WAS IT PASSED AROUND THE OFFICE?
MB:    OH, I DON'T KNOW.  I MEAN, JUST IN PASSING, YOU KNOW, YOU
       MIGHT HEAR SOMEBODY SAYING THE NAME OR SOMETHING.  BUT, I
       MEAN I HAD HEARD THE NAME ON MORE THAN ONE OCCASION.

GC:    WHAT WERE THOSE OCCASIONS?
MB:    OH, GOSH, GARY, I DON'T REMEMBER.  I MEAN, I DON'T..

DOTHAN/Martin & Brackin 1301n
CONFIDENTIAL Subject to
Protective Order

```
GC:  WELL, IT'S PRETTY IMPORTANT, YOU UNDERSTAND?
MB:  WELL, I MEAN, I KNOW, BUT I MEAN, I..

GC:  WELL I MEAN, DO YOU..
MB:  GOSH, I DON'T..

GC:  WAS IT, WAS IT ABOUT THE WARRANT?  OR WAS IT ABOUT HIS
     ARREST?  OR..
MB:  I, THE ONLY THING I REMEMBER I THINK IT WAS SOMETHING 'BOUT
     HE WAS TRYING TO SAY HE WAS FALSELY ARRESTED OR SOMETHING
     LIKE THAT, I DON'T KNOW, I MEAN I WASN'T IN THE
     CONVERSATION.

GC:  HOW DID HE GET THE..HOW DID HE GET THE IDEA THAT HE WAS
     FALSELY ARRESTED?
MB:  I HAVE NO IDEA.  I DON'T KNOW HOW HE GOT MY NAME TO, YOU
     KNOW, COME UP THERE AND ASK FOR ME.  WHICH, A LOT OF PEOPLE
     GIVE OUT MY NAME, BUT, YOU KNOW.

RO:  DID AH, WHENEVER HE CAME UP THERE, DO YOU, DO YOU REMEMBER
     HIM TELLING YOU THAT HE HAD BEEN FALSELY ARRESTED AND HE
     WAS TRYING TO FILE A DAMAGE CLAIM?  DO YOU REMEMBER IF
     THAT'S WHAT HE SAID TO YOU?
MB:  HE HAD MADE A STATEMENT THAT HE WAS THERE OR HE WANTED HIS
     TOW MONEY BACK BECAUSE, UM, HE SAID HE WAS FALSELY
     ARRESTED.

RO:  OKAY.
MB:  AND THAT'S, YOU KNOW.

RO:  WAS ANYBODY ELSE THERE, THIS WAS AT THE WINDOW WHEN YA'LL
     WERE AT THE OLD BUILDING?
MB:  YES, UM HM.

RO:  OKAY, WAS ANYBODY ELSE THERE?
MB:  RAY, I DON'T REMEMBER.  I COULDN'T TELL YOU.  'CAUSE I'VE
     DEALT WITH SO MANY.

RO:  I MEAN, I MEAN MAGISTRATES?
MB:  WELL NOW THERE WAS ANOTHER MAGISTRATE THERE, 'CAUSE I WAS,
     I WAS NOT THERE BY MYSELF.

RO:  REMEMBER WHO IT WAS?
MB:  I THINK IT WAS MARY, BUT I, YOU KNOW, I, I DON'T KNOW
     'CAUSE..
```

DOTHAN/Martin & Brackin 1301o
CONFIDENTIAL Subject to
Protective Order

RO:  TOO LONG?

MB:  YEAH, 'CAUSE IT HAPPENED SO LONG AGO, I DON'T REMEMBER.

RO:  OKAY.  YOU MENTIONED A MINUTE AGO ABOUT YOU REMEMBERED HIS NAME BEING DISCUSSED IN THE OFFICE.  DO YOU REMEMBER WHO THOSE DISCUSSIONS WOULD'VE BEEN WITH WHEN HIS NAME WAS BROUGHT UP?

MB:  NO.  I MEAN I REALLY DON'T, I MEAN I KNOW THAT, YOU KNOW, IT WAS JUST HIS NAME WAS BEING MENTIONED BECAUSE OF THE FACT THAT HE WAS SAYING THAT HE WAS FALSELY ARRESTED.  AND YOU KNOW WE DON'T GET THAT MANY OF THOSE SO YOU JUST, YOU KNOW WHEN SOMETHING LIKE THAT HAPPENS PEOPLE KINDA TEND TO MAYBE TALK ABOUT IT SOME, BUT, BUT NOT ANYTHING THAT YOU KNOW LIKE IF A, A ACTUAL CONVERSATION.  IT MIGHT'VE BEEN LIKE IF I WAS AT THE COPIER OR SOMETHING AND SOMEBODY MIGHT'VE SAID HIS NAME OR SOMETHING LIKE THAT.  BUT, I DON'T REMEMBER..

GC:  BUT YOU'VE NEVER SAID, YOU DIDN'T MAKE ANY ENTRIES ON HIS PAPERWORK, COURT PAPERS?

MB:  THAT MIGHT MY WRITING WHERE THE MONEY WAS PAID RIGHT THERE, BUT MAYBE THIS IS MY WRITING HERE, IS THAT WHERE YOU'RE TALKING 'BOUT UNDER CASE ACTION?  OKAY.  THAT, YOU'RE JUST TALKING ABOUT THE CASE ACTION SUMMARY?

GC:  IS ANY OF THAT..

MB:  OH, ANY OF THIS?

GC:  IS ANY OF THAT PAPERWORK, DID YOU EVER HAVE ANY DEALING WITH IT?

MB:  YOU'RE TALKING ABOUT WRITING ON IT?

GC:  ANY OF IT?  DID YOU EVER HAVE ANY CONTACT..

MB:  OH.

GC:  OR UTTER ANY OF THAT PAPERWORK?

MB:  I DON'T KNOW WHAT YOU MEAN?

RO:  DID YOU FILL OUT ANY OF THAT PAPERWORK, OR MAKE NOTES ON IT, OR ANYTHING OF THAT NATURE?

MB:  NO, NOW NONE OF THIS IS MY WRITING EXCEPT FOR MAYBE THAT MIGHT, THAT LOOKS LIKE A LITTLE BIT OF MY WRITING WHERE THE PAYMENT WAS MADE.

RO:  AND THAT WAS IN NOVEMBER 26TH OF 2001.

MB:  UM, HM.

DOTHAN/Martin & Brackin 1301p
CONFIDENTIAL Subject to
Protective Order

RO:  WOULD THAT HAVE, IF WHOEVER WROTE THIS..
MB:  HAD TO BE WORKING THE FINES ROOM.

RO:  THIS, WOULD THIS HAVE BEEN DONE A COURT DAY?  OR..
MB:  YES, HIS ARRAIGNMENT WAS NOVEMBER 26TH, 01.  AND EVIDENTLY
     HE PLED GUILTY THAT DAY.  SO HE WOULD'VE CAME DOWN TO THE
     FINES ROOM AND PAID.  I MIGHT'VE BEEN WORKING THE FINES
     ROOM.  I DON'T KNOW.  NOW THAT'S MY INITIALS THERE, THAT'S
     WHEN HE CAME TO COURT SO I PROBABLY MUST'VE BEEN WORKING
     THE FINES ROOM THAT DAY.

RO:  OKAY.
MB:  AND GAVE HIM HIS ORDERS.  THE ONLY THING THAT'S MINE IS,
     LOOKS LIKE THE PAYMENT THERE WHEN HE MADE IT AFTER HE PLED
     GUILTY AND THEN MY INITIALS ON THE ORDERS.

GC:  WHAT ALL DID YOU AND MR. FONDREN DISCUSS THAT DAY, YOU
     REMEMBER?  OR IS..
MB:  NOT REALLY EVERYTHING, GARY.  I MEAN, THAT'S BASICALLY ALL
     THAT I REMEMBER ABOUT HIM COMING TO THE WINDOW THAT DAY.

GC:  DID YOU EVER TELL HIM THAT THE CITY OF DOTHAN WAS LIABLE IF
     HE WAS FALSELY ARRESTED?
MB:  I DIDN'T HIM THAT.  I DON'T..

GC:  WHY WOULDN'T YOU?
MB:  WELL, I MEAN, I DON'T, THAT'S JUST SOMETHING THAT WE DON'T
     DO.

GC:  HAVE YOU EVER BEEN INSTRUCTED IN ANY WAY ABOUT HOW TO DEAL
     WITH A PERSON THAT HAS A COMPLAINT AGAINST THE CITY?
MB:  I THINK WE'VE HAD SOMETHING WHERE, YOU KNOW, YOU JUST, YOU
     TELL THEM THAT THEY NEED TO GO THE CITY CLERK'S OFFICE.

GC:  OKAY.  AND, HOW WAS YOU, HOW WAS THAT INFORMATION RECEIVED?
MB:  I DON'T KNOW, I MEAN, IT COULD'VE BEEN IN A MEMO OR IT
     COULD'VE BEEN VERBALLY, I, I DON'T REMEMBER..IF, YOU KNOW,
     IT'S BEEN AWHILE.

GC:  SHOW YOU A MEMO FROM THE JUDGE, YOU EVER SEEN THAT BEFORE?
MB:  UM, HM.  I THINK THAT'S WHEN WE GOT THAT, I REMEMBER THAT.

GC:  DID YOU DISCUSS THIS INCIDENT WITH ANYBODY ELSE?
MB:  WHAT INCIDENT?  YOU TALKING ABOUT WHEN HE WAS THERE?

GC:  UM, HM.

DOTHAN/Martin & Brackin 1301q
CONFIDENTIAL Subject to
Protective Order

MB:  I DON'T REMEMBER IF I DID.  I MEAN, I DON'T, YOU KNOW WE, WE TEND TO TALK ABOUT DIFFERENT THINGS IN THE OFFICE ABOUT CASES, BUT I DON'T REMEMBER THAT ONE IN PARTICULAR.

RO:  LET ME ASK YOU BEFORE, YOU MENTIONED JAMES PERON?
MB:  YEAH.

RO:  TELL ME BRIEFLY, BRIEFLY DESCRIBE THAT CASE, YOU KINDA GOT THOSE TWO MIXED UP A LITTLE BIT?
MB:  YEAH, I D..THERE WAS CASE WHERE, WHEN MARY WAS ON LEAVE, I THINK ANN BAXTER WAS DOING THE WARRANTS.  AND THERE WAS AN INCIDENT WHERE HE WAS ARRESTED AND I BELIEVE THE WARRANT, I MEAN, I, FROM WHAT I REMEMBER THAT WARRANT SHOULDN'T HAVE BEEN ISSUED, BUT.  I WAS, I KNOW THAT HIS NAME WAS BEING THROWN AROUND A LITTLE BIT, ALONG WITH MR. FONDREN AND WHEN I SAW, WHEN I, WHEN HE CAME UP THE THERON AND THE PERON KINDA SOUNDED FAMILIAR, SO I DON'T KNOW IF I WAS GETTING THEM CONFUSED OR WHAT, BUT..

RO:  ANN BAXTER ISSUED, AS YOU REMEMBER?
MB:  AS FAR AS I REMEMBER.  NOW, I DIDN'T, YOU KNOW, I, I DIDN'T GO INTO REALLY ANY DETAIL INTO INVESTIGATING ANYTHING, 'CAUSE I JUST, YOU KNOW, I FELT THAT WASN'T ANY OF MY CONCERN TO, YOU KNOW, I THOUGHT THAT WAS SOMEBODY ELSE DOING THAT.

RO:  THE REASON, THE REASON THAT YOU'RE KINDA PUTTING THESE TOGETHER IS BECAUSE OF THE THERON AND THE PERON, YOU THINK?
MB:  WELL I KINDA, YEAH.  I MEAN.

RO:  OKAY.  I JUST WANTED TO SEE WHERE WE WERE ON PERON.

GC:  AH, DID YOU EVER MAKE ANY COMMENT TO ANYBODY?  AS FAR AS, AH, AFTER THE INCIDENT WAS OVER, MR. PERON, MR. FONDREN LEFT.  DID YOU EVER SAY ANYTHING ABOUT?
MB:  UH, UH.

RO:  TO THE OTHER MAGISTRATES, COWORKERS?
MB:  NO, I DON'T REMEMBER, I MEAN, LIKE I SAID I DON'T, YOU KNOW, WE TALK SO MANY, ABOUT SO MANY DIFFERENT CASES TO EACH OTHER IT'S HARD TO SAY IF I TALKED TO ANY CERTAIN PERSON OR..

GC:  DID YOU EVER MAKE A STATEMENT, "I JUST TOLD THAT MAN WE'RE LIABLE.  I GUESS I'M IN TROUBLE."?  DID YOU EVER SAY THAT?
MB:  I DON'T RECALL THAT.  UH, UH.

DOTHAN/Martin & Brackin 1301r
CONFIDENTIAL Subject to
Protective Order

GC:  YOU NEVER TOLD ANYBODY THAT YOU TOLD HIM THE CITY WAS
     LIABLE?
MB:  I DON'T RECALL SAYING THAT, GARY, I MEAN I CAN'T SAY THAT
     I, I, I DON'T THAT WE DON'T DO THAT.  BUT, I CAN'T SAY FOR
     SURE THAT I DIDN'T, BUT I, I'M NOT GONNA THAT I DID 'CAUSE
     I DON'T, I DON'T RECALL THE WHOLE CONVERSATION.

GC:  UM, HM.
MB:  BUT, I DON'T.  I KNOW THAT THAT'S SOMETHING THAT WE DON'T
     DO.

GC:  UM, HM.  OKAY.  YOU UNDERSTAND YOU'RE STILL UNDER GARRITY?
MB:  YEAH.

GC:  IS THERE ANY TIME THAT YOU MADE ANY KIND OF STATEMENT
     AGAINST THE CITY OF DOTHAN REFLECTING, TELLING HIM THAT THE
     CITY WAS LIABLE, THE MAGISTRATES WERE INCOMPETENT, OR
     ANYTHING LIKE THAT?
MB:  GARY, I DON'T RECALL SAYING THAT, YOU KNOW, TO HIM.  I
     MEAN, I DON'T RECALL SAYING THAT.  I MEAN, I DON'T..I JUST
     DON'T REMEMBER THE WHOLE THING ABOUT THE CONVERSATION,
     'CAUSE I JUST, I TALK TO SO MANY DIFFERENT PEOPLE.

RO:  DO YOU RECALL, DO YOU RECALL SAYING ANY OF THAT TO ANYONE?
     BE IT A, A ANOTHER MAGISTRATE OR ANYBODY?
GC:  BONDSMAN? OR ANYBODY?
MB:  I, I CAN'T RECALL SAYING IT.  BUT, I MEAN, I DON'T, YOU
     KNOW WHAT I'M SAYING, I MEAN, I DON'T REMEMBER SAYING
     ANYTHING.  I MEAN, I DON'T..I DON'T KNOW IF I'M EXPLAINING
     MYSELF RIGHT.  I MEAN, I DON'T, I'M NOT..

RO:  SHOW HER THOSE STATEMENTS?
GC:  I HAVE TWO STATEMENTS HERE FROM, UM, ONE FROM LAVERA
     MCCLAIN AND ONE FROM EUNICE KNIGHT THAT YOU MADE THE
     STATEMENTS THAT YOU TOLD MR. FONDREN THAT THE MAGISTRATE,
     AH, WHAT WAS HER NAME THERE?

RO:  ANN BAXTER?
GC:  ANN BAXTER HAD ISSUED A WARRANT AND SHE WAS INCOMPETENT AND
     THEN YOU MADE THE STATEMENT, "I JUST TOLD THAT ME THAT
     WE'RE LIABLE."
MB:  I DON'T REMEMBER THEM, I DON'T REMEMBER THEM BEING DOWN
     THERE, I MEAN, YOU'RE SAYING THAT THEY WERE DOWN THERE OR
     ME JUST SAYING THAT?

GC:  I DIDN'T SAY THEY WERE DOWN THERE, YOU SAYING THAT.
MB:  OH, I DON'T RECALL SAYING THAT.

DOTHAN/Martin & Brackin 1301s
CONFIDENTIAL Subject to
Protective Order

RO:  AFTER, AFTER YOU, ALLEGEDLY YOU DEALT WITH FONDREN..
MB:  UM, HM.

RO:  YOU MADE THE STATEMENT TO ONE OF THOSE, I'M NOT SURE WHICH
     ONE, THAT ANN BAXTER SHOULD NEVER ISSUED THAT WARRANT, THAT
     SHE WAS INCOMPETENT, AND THAT IT MIGHT'VE BEEN THAT YOU
     REALIZED THAT THEN..
MB:  IT MIGHT'VE BEEN THAT I WAS THINKING MAYBE IT WAS PERON AND
     I WAS, AND IT WAS THERON, THAT I WAS GETTING THE NAMES
     CONFUSED.

RO:  THEN MAYBE YOU SAID, "WELL I DON'T CARE SHE'S STILL
     INCOMPETENT, I'M NOT SORRY FOR WHAT I SAID." OR SOMETHING
     TO THAT EFFECT.  DO YOU REMEMBER ANYTHING LIKE THAT?
MB:  I DON'T REMEMBER SAYING THAT, NO.  I DON'T, I DON'T
     SAYING..

RO:  OKAY.  LAVERA SAYS THAT YOU TOLD LAVERA THAT YOU TOLD
     FONDREN THAT HE'D BEEN FALSELY ARRESTED AND THE MAGISTRATE
     WAS ANN BAXTER AND THAT SHE NEEDED TO BE PUNISHED BECAUSE
     SHE WAS AN INCOMPETENT MAGISTRATE.
MB:  SHE'S SAYING THAT I SAID THAT I TOLD HER THAT?  OR TOLD
     FONDREN THAT?

RO:  TOLD HER THAT.
MB:  THAT I TOLD HER THAT.  I DON'T RECALL, RAY.  I MEAN, I
     DON'T RECALL THOSE, THE CONVERSATION.

RO:  OKAY.  AND I MEAN, I, WE DON'T KNOW 'CAUSE WE WEREN'T
     THERE.
MB:  I DON'T, WELL, I MEAN I'M JUST..

RO:  ..JUST CONDUCT THE..
MB:  IT'S HARD TO REMEMBER..

RO:  I UNDERSTAND.
MB:  ..SPECIFICALLY EVERYTHING THAT WAS SAID DURING
     CONVERSATION, WHEN WE TALK ABOUT SO MANY DIFFERENT THINGS
     AND CASES THAT HAPPEN.  BUT, I DO REMEMBER THAT THE PERON
     WAS ONE THAT HAD, WE HAD TALKED ABOUT THAT WAS BROUGHT UP A
     FEW, A COUPLE OF WEEKS PRIOR TO THERON FONDREN COMING IN
     AND THAT AFTER WE LOOKED AT IT, I CAN'T REMEMBER WHO FOUND
     IT, WHO IT WAS, BUT IT WAS THAT ANN HAD ISSUED THE WARRANT
     INCORRECTLY.

DOTHAN/Martin & Brackin 1301
CONFIDENTIAL Subject to
Protective Order

RO:  LET ME ASK YOU THIS.  ON JAMES PERON, DID YOU TELL JAMES PERON THAT HE'D BEEN FALSELY ARRESTED?

MB:  NAW, I DON'T REMEMBER COMING IN CONTACT WITH HIM.  I MEAN, I DON'T KNOW HIM, I DON'T, I DON'T REMEMBER..

RO:  ALRIGHT.  EUNICE KNIGHT SAYS IN HER STATEMENT THAT THE DAY THAT YOU SPOKE TO FONDREN..

MB:  UM, HM.

RO:  ..LET'S NOT GET'M CONFUSED..

MB:  I KNOW.

RO:  ..I KNOW IT'S EASILY DONE, BUT THE DAY THAT YOU SPOKE TO FONDREN, THAT AFTER YOU GOT THROUGH, YOU CAME UPSTAIRS AND SAID THAT YOU HAD SPOKEN WITH HIM AND TOLD HIM THAT HE SHOULD NOT HAVE BEEN ARRESTED AND THAT HE HAD GROUNDS FOR SUIT.  AND YOU TOLD HIM THAT HE NEEDED TO GO TO THE CITY MANAGER'S OFFICE AND SPEAK WITH THEM ABOUT THAT.  AND YOU MADE THE STATEMENT TO HER THAT YOU DIDN'T CARE IF THEY KNEW THAT YOU'D TOLD HIM THAT.  DO YOU REMEMBER SAYING THAT TO EUNICE?

MB:  AAHHH, I WOULDN'T SEND HIM TO THE CITY MANAGER'S OFFICE TO BEGIN WITH.

RO:  OKAY.  BUT, DID YOU..

MB:  I MEAN, I'LL..

RO:  ..DID YOU REMEMBER MAKING THAT STATEMENT?

MB:  NO, I DON'T REMEMBER THAT.  BUT LIKE I SAID THE PERON AND THE, THAT NAME HAD BEEN, YOU KNOW, THROWN AROUND, WE'D TALKED ABOUT THAT A COUPLE OF WEEKS PRIOR, BUT I CAN'T REMEMBER WHO INITIATED THE, OR HOW WE FIGURED OUT, YOU KNOW, THAT HE'D BEEN ARRESTED AND SHOULDN'T HAVE, I DON'T KNOW.

RO:  'CAUSE I..A LOT OF TIMES IT WILL HELP IF THE PEOPLE, IF YOU HEAR EXACTLY WHAT THEY SAY YOU SAID.

MB:  RIGHT.

RO:  AND THAT'S WHY I WANTED TO READ THAT TO YOU.

MB:  AND I DON'T, YOU KNOW, LIKE I SAID, I REALLY DON'T REMEMBER EVERYTHING THAT WAS SAID ABOUT THAT SITUATION BECAUSE IT JUST, IT..

RO:  LET ME ASK YOU THIS.  DO YOU THINK YOU MIGHT HAVE HAD A CONVERSATION LIKE THAT WITH THEM?

DOTHAN/Martin & Brackin 1301u
CONFIDENTIAL Subject to
Protective Order

MB: I MIGHT'VE TALKED TO EUNICE BECAUSE SHE KEYS IN THE
    PAPERWORK.  I MIGHT'VE JUST SAID MAYBE THAT, YOU KNOW..BUT,
    LIKE I SAID, I THINK MAYBE I GOT'EM CONFUSED WITH THE PERON
    AND THE THERON AND YOU KNOW.

RO: LET ME, LET ME ASK YOU ANOTHER HARD QUESTION.
MB: OKAY.

RO: IN FONDREN'S COMPLAINT HERE TO THE CITY CLERK, HE SAYS
    THAT, "I WAS WRONGFULLY ARRESTED ON A FALSE WARRANT.  MARY
    BETH OF THE MAGISTRATES OFFICE CAN CONFIRM THIS."  WHY
    WOULD HE SAY THAT?
MB: WELL, THE ONLY THING I CAN THINK OF THERE IS WHENEVER, LIKE
    I SAID, I WAS TELLING YOU NEEDED TO GO THE CITY CLERK'S
    OFFICE AND HE WAS MAKING A FACE, "WELL WHAT DO I TELL'EM
    WHEN I GET THERE?"  I SAID, "WELL JUST TELL'EM YOU NEED TO
    FILE A CLAIM FOR WRONGFUL ARREST."  BUT, I WASN'T TELLING
    HIM THAT HE WAS WRONGFULLY ARRESTED.  I WAS JUST SAYING
    THAT THAT'S WHAT YOU NEED TO TELL THEM, 'CAUSE I DIDN'T
    KNOW IF THEY WOULD ASK WHY OR..

GC: IN MR. FONDREN'S STATEMENT HERE HE SAYS, "SOMEHOW I ENDED
    UP IN THE MAYOR'S OFFICE AND THEN BACK AT THE CITY CLERK'S
    OFFICE."  DID YOU TELL HIM TO GO TO THE MAYOR'S OFFICE?
MB: NO, UH, UH.  I TELL'EM TO GO TO THE CITY CLERK'S, I MEAN,
    THAT'S WHAT WE WERE TOLD TO TELL'EM WHERE TO GO TO FILE,
    'CAUSE HE WAS WANTING HIS TOW MONEY BACK.

RO: WELL, THAT, THAT'S WHAT, AND YOU, YOU CAN, COURSE YOU READ
    HIS COMPLAINT..
MB: RIGHT.

RO: AND THAT'S WHY I'M ASKING YOU THESE QUESTIONS, BECAUSE HE
    MAKES IT SOUND LIKE YOU'RE THE ONE ADVISING HIM TO DO THIS,
    RATHER THAN HIM WANTING..
MB: UH, UH.

RO: ..TO KNOW HOW TO GO ABOUT GETTING HIS MONEY BACK.
MB: UH, UH.

RO: AND THAT'S THE REASON I'M ASKING YOU THAT.  BUT, HE CAME IN
    TO YOU, TO SEE YOU AND ASKED SPECIFICALLY ABOUT GETTING HIS
    TOW MONEY..
MB: RIGHT.

RO: ..REIMBURSED..
MB: RIGHT.

DOTHAN/Martin & Brackin 1301v
CONFIDENTIAL Subject to
Protective Order

RO: ..THAT IS WHAT INITIATED THIS CONTACT?
MB: RIGHT, RIGHT.

RO: OKAY.
MB: AND, WELL, HE ASKED TO SEE ME AND I TOLD HIM, "WELL, THIS IS SHE."

RO: OKAY.
MB: SO, I DON'T KNOW.

RO: NOW..
MB: I HAD NEVER MET HIM BEFORE THEN OR SEEN HIM BEFORE THEN.

RO: ..YOU REMEMBER SERGEANT COLEMAN ASKED YOU THAT, ABOUT AH, HARRISON FARR..
MB: UM, HM.

RO: AND ACCORDING TO MR. FONDREN'S DAMAGE CLAIM HERE, IT WOULD, IT WOULD SEEM LOGICAL THAT MR. PHARR HAD ALSO TALKED TO YOU OR EITHER HIM RELATIVE TO THIS..
MB: UM, HM.

RO: ..AND THAT'S WHERE WE'RE GETTING ALL THIS FROM.
MB: UM, HM. NOW HE COULD HAVE. BUT, I MEAN, I DON'T, LIKE I SAID, WE TALK TO THE CRO OFFICE ALL THE TIME. SO I COULDN'T TELL YOU..

RO: WOULD YOU HAVE TOLD MR. FARR ANYTHING TO REMOTELY SUGGEST THAT THE CITY WAS LIABLE FOR THIS ARREST, THINKING THAT IT MIGHT BE WRONG, HAVING IT CONFUSED WITH JAMES PERON?
MB: RAY, I CAN'T SAY THAT I, I SAID THAT. I DON'T REMEMBER THE, THE CONVERSATION. I DON'T EVEN REMEMBER TALKING TO HARRISON ABOUT FONDREN, BUT I'M NOT SAYING I DIDN'T, BUT I'M JUST SAYING I DON'T RECALL TALKING TO HARRISON OR ANYBODY FROM CRO ABOUT HIM.

GC: HAVE YOU TALKED TO MR. FONDREN SINCE THIS INCIDENT? SINCE HIS ARREST?
MB: UMMMM, I KNOW THERE WAS AN ISSUE ABOUT HIS CASH BOND MONEY. BUT, I THINK HIS DADDY, I THINK, OR GRANDDADDY, OR SOMETHING PUT UP HIS CASH BOND MONEY. I THINK I TALKED WITH HIM ABOUT, YOU KNOW, WHEN HE WAS GONNA GET HIS CASH BOND MONEY BACK.

GC: TALKED TO MR. FONDREN?
MB: FONDREN? I DON'T REMEMBER IF I DID. I DON'T RECALL.

DOTHAN/Martin & Brackin 1301w
CONFIDENTIAL Subject to
Protective Order

RO: SINCE FONDREN CAME TO YOUR OFFICE THE DAY INITIALLY AND
    THEN APPARENTLY GENERATED THE DAMAGE CLAIM..
MB: UM, HM.

RO: ..SINCE THAT DAY, HAVE YOU HAD VERBAL CONTACT WITH HIM?
    SINCE THAT FIRST TIME HE CAME TO THE OFFICE AND SEEN YOU?
MB: I DON'T..

RO: MR. FONDREN?
MB: THERON FONDREN.

RO: THERON FONDREN.
MB: I DON'T REMEMBER, RAY, IF I DID.  I MEAN, I DON'T..

RO: YOU WOULD, YOU WOULD PROBABLY REMEMBER IT WOULDN'T IT?  I
    MEAN, WOULDN'T YOU MAKE A NOTE SOMEWHERE OR SOMETHING?  OR
    WOULD YOU WRITE A NOTE?
MB: WELL.  I MEAN, IT JUST DEPENDS ON IF WE'RE, YOU KNOW, BUSY
    OR IF, YOU KNOW, I MEAN, I, I JUST DON'T REMEMBER.

GC: THAT'S ALL I'VE GOT.
RO: OKAY.  IN CONCLUSION, YOU DIDN'T TELL MR. FONDREN, YOU
    DIDN'T TELL THERON FONDREN THAT THE CITY WAS LIABLE?
MB: I DON'T RECALL SAYING THAT.  I DON'T..

RO: DO YOU REMEMBER TELLING HIM THAT HE WAS FALSELY ARRESTED?
MB: I SAID IT, BUT I SAID IT IN A WAY THAT, HE WAS ASKING,
    "WHAT DO I TELL THEM WHEN I GO OVER THERE TO FILE THE
    CLAIM?"  AND I SAID, "WELL, JUST TELL'EM THAT YOU WERE
    FALSELY ARRESTED."  BUT, I WASN'T IMPLYING THAT HE WAS, BUT
    JUST TELLING HIM THAT THE, YOU DON'T,..

RO: DID HE USE THE WORDS, "FALSE ARREST" BEFORE YOU DID?
MB: YES.

RO: HE DID?
MB: THAT'S, IF I CAN REMEMBER CORRECTLY, HE SAID HE NEEDED TO
    SPEAK TO MARY BETH BRACKIN.  I SAID, "THIS IS SHE, AND HOW
    CAN I HELP YOU?"  AND HE SAID, "WELL, I NEED TO BE
    REIMBURSED SOME TOWING MONEY BECAUSE I WAS FALSELY
    ARRESTED."  AND THAT'S..

RO: THE QUESTIONS ABOUT THE STATEMENT THAT EUNICE KNIGHT GAVE..
MB: UM, HM.

DOTHAN/Martin & Brackin 1301x
CONFIDENTIAL Subject to
Protective Order

RO:   WHAT SHE SAID YOU SAID.  YOU RECALL MAKING THAT STATEMENT
      TO HER?"

MB:   I DON'T RECALL THE CONVERSATION, BUT I DO REMEMBER LETTING
      HER KNOW ABOUT, BECAUSE I DON'T THINK THE PAPERWORK WAS
      WORKED YET, I MIGHT'VE, I DON'T REMEMBER.  BUT, I GUESS I
      WAS GETTING'EM CONFUSED WITH THIS PERON THINKING ABOUT THE
      FALSE ARREST.  BECAUSE PERON WAS MENTIONED A COUPLE OF
      WEEKS PRIOR TO THAT AND THAT'S MAYBE WHERE I GOT CONFUSED
      ON THAT.  BECAUSE I DO KNOW THAT ANN ISSUED THAT WARRANT
      INCORRECTLY.

RO:   OKAY.  AND, LAVERA.  YOU REMEMBER, DO YOU REMEMBER MAKING
      THAT STATEMENT THAT SHE SAID YOU MADE TO HER.  DO YOU
      REMEMBER THAT?

MB:   I DON'T REMEMBER.  NOW, YOU KNOW..

RO:   OKAY.  LET ME, LET ME ASK YOU A QUICK QUESTION, THEN WE'LL
      TERMINATE, WE'LL END THE, WE'LL END THE INTERVIEW.  YOU AND
      ANN BAXTER MAYBE HAVE SOME BAD BLOOD?  OR IS IT JUST THE
      FACT THAT SHE'S ISSUED THE WARRANT INCORRECTLY?  OR, I
      MEAN, IS THERE A CONFLICT BETWEEN YOU AND ANN BAXTER?

MB:   UH, UH.  NOT THAT I, YOU KNOW..

RO:   NOT THAT YOU'RE AWARE OF?
MB:   UH, UH, THAT I'M AWARE OF.

RO:   OKAY.  I DON'T KNOW, THAT'S WHY I'M ASKING YOU.
MB:   YEAH, I DON'T, NOT THAT I'VE BEEN TOLD, YOU KNOW.

RO:   OKAY.  YOU DON'T HAVE ANY PERSONAL FEELINGS IN A BAD WAY
      TOWARDS HER..
MB:   NO.

RO:   ..OR ANYTHING?
MB:   UH, UH.

RO:   OKAY.
GC:   HOW 'BOUT THE JUDGE, ANYBODY LIKE THAT?  YOU HAVE ANY
      PROBLEMS WITH THEM?
MB:   NO.  UH, UH.

GC:   MICHELLE SELLERS?
MB:   WHAT'S THIS GOT TO DO WITH?

GC:   I'M JUST ASKING.  DO YOU HAVE ANY PROBLEMS WITH ANYBODY
      OVER THERE?
MB:   UH, UH.

DOTHAN/Martin & Brackin 1301y
CONFIDENTIAL Subject to
Protective Order

GC:  ANY REASON THAT ANYBODY WOULD SAY SOMETHING THAT WAS, YOU
     KNOW, _____ ON YOU?
MB:  I DON'T KNOW.  I DON'T, YOU KNOW, LIKE I SAID, NOT THAT I'M
     AWARE THAT ANYBODY'S BROUGHT TO MY ATTENTION.

RO:  I DON'T HAVE ANY FURTHER QUESTIONS.
GC:  THIS IS THE END OF STATEMENT.  THE TIME IS 2:26.

DOTHAN/Martin & Brackin 1301z
CONFIDENTIAL Subject to
Protective Order

# DOTHAN POLICE DEPARTMENT

# INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Lawra McClain_

DATE/TIME: _3-16-2004_

INVESTIGATING OFFICER: _Sgt Gary L Calain_

DATE/TIME: _____

WITNESS SIGNATURE: _____

DATE/TIME: _____

DOTHAN/Martin & Brackin
1301aa
CONFIDENTIAL Subject to
Protective Order

ADMINISTRATION INVESTIGATION INTERVIEW
WITH LAVERA MCCLAIN
MARCH 16, 2004 2:40P.M.
CHIEF'S CONFERENCE ROOM DOTHAN POLICE DEPARTMENT


GC:  IF YOU WILL STATE YOUR NAME FOR ME PLEASE.
LM:  LAVERA MCCLAIN.

GC:  OK. MS. MCCLAIN WHERE ARE YOU EMPLOYED AT PLEASE?
LM:  CITY OF DOTHAN JUDICIAL DEPARTMENT.

GC:  OK. AND I'M SHOWING YOU A GARITY FORM AH, DID YOU
     HAVE AN OCCASION TO READ THIS FORM?
LM:   YES I DID.

GC:  AND IS THAT YOUR SIGNATURE ON IT?
LM:  YES.

GC:  YOU UNDERSTAND YOU'RE A WITNESS IN AN
     ADMINISTRATIVE INVESTIGATION FOR A DAMAGE CLAIM FOR
     JOSEPH FONDREN?
LM:  UM HUM.

GC:  AND SHOWING YOU SOME COURT PAPERWORK HERE AH, CASE
     ACTION SUMMARY.
LM:  UM HUM.

GC:  AH, DID YOU MAKE AN ENTRY ON THIS ON 8/12 OF 2002?
LM:  NO I DIDN'T THAT'S NOT MY SIGNATURE.

GC:  OK. ALL RIGHT. AH, CAN YOU TELL ME, DID YOU MAKE AN
     ENTRY ON THERE ANYWHERE?
LM:  YES I DID. LOOKS LIKE I WROTE PROBATION 11/24/03
     AND CRO52002.

GC:  OK. ALL RIGHT AND DO YOU KNOW WHEN YOU MIGHT HAVE
     WRITTEN THAT?
LM:  NO I DON'T.

DOTHAN/Martin & Brackin
1301ab
CONFIDENTIAL Subject to
Protective Order

1

GC: OK. AH.
LM: SOMETIME PRIOR TO THAT 8/12 DATE.

GC: OK. ALL RIGHT. AND DO YOU KNOW, WHAT CAN YOU TELL
ME ABOUT THIS?
LM: I CAN TELL YOU THAT THAT FAIL TO COMPLY WAS CRO
VERIFIED ORDERED, WAS DONE BY MARY TURNER.  IT WAS
HER JOB AT THAT TIME TO VERIFY FAILURE TO APPEARS
AND ISSUED AND ALIAS WARRANT. AND IT LOOKS LIKE SHE
DID.  SHE TOLD HIM THAT HE FAILED TO COME AND
COMPLY WITH THAT CRO AND PRE...AH, PROBATION
REVOCATION (?) AND SHE ISSUED A W NUMBER 024130.

GC: ALL RIGHT. AND DO YOU KNOW WHO MADE THESE OTHER
ENTRIES HERE?
LM: I BELIEVE THAT'S EUNICE KNIGHT. HE WAS ARRESTED
BECAUSE THAT'S HER JOB TO DO, AT THAT POINT WHEN
HE'S ARRESTED SHE HAS TO GO IN AND PREPARE
PAPERWORK FOR THE NEXT COURT DATE AND THAT'S HER
WRITING AND SHE SIGNED IT RIGHT THERE.

GC: OK. AND DID YOU HAVE AN OCCASION TO HEAR MARY BETH
BRACKIN MAKE A STATEMENT ABOUT THIS AH, SPECIFIC
INCIDENT?
LM: AH, YES SHE CAME INTO MY OFFICE AT THE END OF THE
DAY. I...

GC: YOU REMEMBER WHAT DATE THAT WAS?
LM: I DON'T REMEMBER THE DATE BUT I WAS TOLD THAT IT
WAS, SHE SAID IT WAS ON THE DATE THAT THE GUY HAD
COME IN. HE HAD COME IN, MR. FONDREN HAD COME IN
EARLIER THAT DATE AND HE WAS COMPLAINING ABOUT
BEING FALSELY ARRESTED.  AND SHE STATED THAT SHE
TOLD HIM THAT AH, HE HAD BEEN FALSELY ARRESTED AND
THE MAGISTRATE WAS ANN BAXTER AND THAT SHE NEEDED
TO BE PUNISHED BECAUSE SHE WAS AN INCOMPETENT
MAGISTRATE.  SHE ALSO STATED THAT AH, MR. FONDREN
HAD COMPLAINED TO MR. KEVIN KELLY AND KEVIN KELLY
HAD CALLED HER QUESTIONING AS TO WHY SHE DID THIS.
AND SHE SAID SHE DIDN'T CARE ABOUT HIM QUESTIONING

DOTHAN/Martin & Brackin     2
1301ac
CONFIDENTIAL Subject to
Protective Order

BECAUSE SHE FELT LIKE ANN NEEDED TO BE PUNISHED FOR WHAT SHE DID.

GC: DID SHE EVER MENTION ANYTHING AH, ABOUT TELLING MR. FONDREN TO FILE A LAWSUIT AGAINST THE CITY OR ANYTHING OF THAT NATURE?

LM: I'M NOT SURE IF SHE TOLD HIM TO FILE A LAWSUIT BUT SHE DID TELL HIM THAT HE WAS FALSELY ARRESTED. I REMEMBER DISTINCTLY IT WAS, BECAUSE HIS NAME DIDN'T MEAN ANYTHING TO ME. I JUST WONDERED WHY SHE WENT OUT ON A LIMB TELLING THIS MAN ALL THIS AND SHE WORKS FOR THE CITY OF DOTHAN. THAT'S THE ONLY THING THAT MADE IT STICK IN MY MIND WAS THAT I THOUGHT IT WAS STRANGE THAT SHE WOULD STEP OUT ON A LIMB LIKE THIS.

GC: ALL RIGHT. DID YOU FEEL LIKE AH, IF HE WERE NOT GOING TO FILE SOME KIND OF CLAIM OR LAWSUIT THAT SHE MAY HAVE TALKED HIM INTO IT?

LM: I DO.

GC: ALL RIGHT. AH, WHAT IF ANYTHING, DID SHE SAY AFTER THAT?

LM: JUST THAT SHE WASN'T SORRY AND SHE WASN'T TAKING IT BACK. I THINK THE NEXT MORNING SHE CAME IN AND STATED THAT YOU KNOW SHE STILL STOOD BY HER, HER ORIGINAL STATEMENT AND THIS WAS PROMPTED BY HER. I WASN'T ASKING HER ANYTHING ABOUT HIM BECAUSE I DIDN'T KNOW ANYTHING TO ASK HER. BUT IT WAS KIND OF LIKE BRAGGING THAT SHE HAD DONE THIS.

GC: OK. AND SHE TOLD THIS TO WHO?

LM: MYSELF AND EUNICE KNIGHT.

GC: ALL RIGHT. HAVE YOU EVER KNOWN HER TO DO THIS BEFORE?

LM: I'VE KNOWN HER TO SPEAK OUT OF ~~TERM~~ *Turn* BEFORE. SHE DOES THAT A LOT AND SHE TELLS PEOPLE THINGS ABOUT OUR OFFICE AND ABOUT OUR, OUR PROCEDURES THAT I DON'T THINK PEOPLE REALLY NEED TO KNOW. BECAUSE A

DOTHAN/Martin & Brackin
1301ad
CONFIDENTIAL Subject to
Protective Order

LOT OF TIMES PEOPLE WILL COME IN AND SAY THAT I'VE
BEEN FALSELY ARRESTED OR I SHOULDN'T HAVE BEEN
ARRESTED BECAUSE I PAID THIS AND IT WILL TURN OUT
THAT IN ACTUALITY THEY MIGHT HAVE PAID IT BUT
THEY'RE BEING ARRESTED FOR NOT DOING A CRO. THERE
IS SOMETHING ELSE GOING ON IN THAT CASE.  AND
SOMETIMES THEY'RE CONFUSED ABOUT THE CASE ITSELF.
THEY THINK THEY PAID OFF THAT CASE WHEN IN REALITY
THEY PAID OFF ANOTHER. SO IT'S BEST TO FIND OUT
WHAT IT IS YOU KNOW AND GET AS MUCH INFORMATION
FROM THEM AND THEN ANSWER THEIR QUESTION BASED ON
THAT WITHOUT SEEMING TO BE ONE WAY OR THE OTHER.

GC: UN HUH.  HAVE YOU EVER KNOWN HER TO IN NOT ONLY A
CASE LIKE THIS BUT ANY OTHER CASE TO PROMPT SOMEONE
TO FILE A CLAIM OR TO FILE A SUIT?
LM: NOT NECESSARILY TO FILE A CLAIM BUT SHE HAS SPOKEN
TO OTHER PEOPLE AT THE COUNTER AND SAID THINGS
ABOUT OTHER MAGISTRATES THAT SHE REALLY, ABOUT THE
COMPETENCY OF OTHER MAGISTRATES THAT SHE REALLY
SHOULDN'T SAY YOU KNOW OR MAKE OR WHAT IT AMOUNTS
TO IS KIND OF SLANDERING.  IF YOU DON'T CARE FOR
ANOTHER PERSON IT'S, I DON'T THINK IT'S FAIR TO
REPRESENT THEM BADLY IF YOU'RE IN THE SAME
DEPARTMENT WITH THEM TO THE PUBLIC. BUT PEOPLE
SOMETIMES TAKE THINGS OUT OF HAND.

GC: HAS SHE EVER TRIED TO SHED A BAD LIGHT ON THE CITY
IN GENERAL? OR THE JUDICIAL SYSTEM?
LM: THE JU...IT, THE JUDICIAL DEPARTMENT.

GC: AH, DO YOU KNOW IF SHE'S EVER BEEN TOLD ANY
DIFFERENT OR NOT TO DO SUCH AS?
LM: I BELIEVE WE RECEIVED A MEMO AS TO AH, I THINK THE
AH, FORMER CITY MANAGER WAS THERE ABOUT INSTRUCTING
PEOPLE TO COMPLAIN TO THE CITY MANAGER AND GIVING
THEM YOU KNOW SAYING TO, SHE SAID BEFORE GO OVER
AND COMPLAIN TO THE CITY MANAGER. AND SHE WAS
INSTRUCTED WE HAD THAT MEMO SAYING DON'T DO THAT,

DOTHAN/Martin & Brackin
1301ac
CONFIDENTIAL Subject to
Protective Order

DON'T SEND PEOPLE OVER THERE AND SAY GO COMPLAIN TO THEM.

GC: OK. ALL RIGHT. IS THERE ANYTHING IN REGARDS TO THIS CASE THAT AH, YOU'D LIKE TO ADD?

LM: JUST THAT WHEN SHE FOUND OUT THAT SHE DIDN'T AH, THAT SHE HAD SPOKEN OUT OF TURN I GUESS WHEN SHE REALIZED THAT MS. BAXTER DIDN'T ISSUE THIS WARRANT AFTER ALL THAT IT WAS INSTEAD MS. TURNER. SHE STATED THAT AH, SHE STILL DIDN'T CARE YOU KNOW BUT SHE, HE WASN'T, SHE SAID HE WASN'T FALSELY ARRESTED AFTER ALL BUT SHE DIDN'T CARE, SHE STILL FELT LIKE MS. BAXTER NEEDED TO BE PUNISHED FOR THE JOB SHE WAS DOING ALTHOUGH SHE HAD TO ADMIT THAT SHE DIDN'T DO THIS.

GC: OK. ALL RIGHT. THIS IS THE END OF THE STATEMENT WITH LAVERA MCCLAIN.  THE TIME IS 246.

PRJOHNSON

DOTHAN/Martin & Brackin 1301af
CONFIDENTIAL Subject to
Protective Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Eunice Knight_

    DATE/TIME: _3-17-04 @ 3:30 Pm_

INVESTIGATING OFFICER: _Sgt Gary S Coleman_

    DATE/TIME: _3-17-04   3:31 Pm_

WITNESS SIGNATURE: _____

    DATE/TIME: _____

DOTHAN/Martin & Brackin
1301ag
CONFIDENTIAL Subject to
Protective Order

## ADMINISTRATIVE INVESTIGATION INTERVIEW
## WITH EUNICE KNIGHT
## MARCH 17, 2004 3:25
### CHIEF'S CONFERENCE ROOM DOTHAN POLICE DEPARTMENT

GC:  IF YOU WILL STATE YOUR NAME FOR ME PLEASE.

EK:  EUNICE KNIGHT.

GC:  OK. MS. KNIGHT WHERE ARE YOU EMPLOYED PLEASE?

EK:  I'M EMPLOYED WITH THE CITY OF DOTHAN MAGISTRATE'S
     OFFICE.

GC:  ~~OK.~~ HOW LONG HAVE YOU BEEN THERE?

EK:  I BEEN THERE TWO AND A HALF YEARS.

GC:  ~~ALL RIGHT~~. I'M SHOWING YOU SOME PAPERWORK.  THIS
     WILL BE A CASE ACTION SUMMARY REGARDING A THERON
     JOSEPH FONDREN. DO YOU RECOGNIZE THAT?

EK:  I DO.

GC:  ALL RIGHT AND THERE'S ON 2/2/04, THERE'S AND ENTRY
     AH, IS, DID YOU MAKE THAT ENTRY?

EK:  I DID.

GC:  ALL RIGHT. AND CAN YOU TELL ME WHAT THAT ENTRY SAYS
     AND WHAT IT MEANS?

EK:  IT SAYS 2/2/04 WAS THE COURT AFTER THE ARREST THAT
     THE GENTLEMAN SHOULD BE IN COURT. FOR A COURT
     REFERRAL CERTIFICATE. AND A COMMENT AFTER THAT WAS
     COMPLETED ON 1/8/04 WHICH A COPY WAS RECEIVED ON
     THAT DATE.

GC:  OK. ALL RIGHT AND DO YOU KNOW FROM LOOKING AT THAT
     IF HE WAS SUPPOSE TO PRESENT THAT CERTIFICATE PRIOR
     TO THAT?

EK:  YES PRIOR TO THAT HE HAD A COURT DATE OF 8/12/02.

GC:  ALL RIGHT AND DO YOU SEE IF THERE WAS A WARRANT
     ISSUED. DID HE, DID HE SHOW UP FOR THAT COURT DATE
     YOU MENTIONED?

DOTHAN/Martin & Brackin
1301ah
CONFIDENTIAL Subject to
Protective Order

1

EK: HE DID NOT SHOW UP. THE WARRANT WAS ISSUED, I CANNOT EXACTLY READ WHAT THIS DATE WAS. LOOKS LIKE AUGUST 20, 02, THE DATE THAT THE WARRANT WAS SIGNED BY THE JUDGE.

GC: OK. ALL RIGHT AND I'LL SHOW YOU A COMPLETION FORM FROM THE COURT REFERRAL OFFICER. HAVE YOU SEEN THAT BEFORE?
EK: I HAVE.

GC: ALL RIGHT. AND THERE'S A COMPLETION DATE ON THERE.
EK: THE COMPLETION DATE IS 12/17/02.

GC: ALL RIGHT. I'M GONNA SHOW YOU A FORM CALL A GARITY NOTICE. ARE YOU FAMILIAR WITH THOSE?
EK: NO I'M NOT.

GC: OK. THAT'S JUST A NOTICE THAT AH, YOUR BEING QUESTIONED AS FAR AS, AS PART OF A AH, ADMINISTRATIVE INVESTIGATION. YOU ARE NOT THE FOCUS OF THIS INVESTIGATION. YOU ARE ONLY A WITNESS AND THIS STATES THAT AH, THIS INFORMATION COULD NOT BE USED AGAINST YOU IN A AH, CRIMINAL CASE.
EK: OK.

GC: DUE TO THE FACT THAT IT IS ADMINISTRATIVE. OK. DO YOU, DO YOU UNDERSTAND THIS?
EK: I UNDERSTAND.

GC: OK. CAN I GET YOU TO SIGN THAT?
EK: OK.

GC: EMPLOYEE. TWO THIRTY, I'M SORRY THREE THIRTY. AND YOU KNOW THE, THE NAME THERON FONDREN FROM THAT PAPERWORK IS THAT CORRECT?
EK: THAT'S CORRECT.

GC: ALL RIGHT. AH, DO YOU HAVE ANY IDEA WHAT THE DATE OR THE GENERAL TIME FRAME THAT THAT GENTLEMAN CAME TO THE MAGISTRATE'S OFFICE?

2

DOTHAN/Martin & Brackin 1301ai
CONFIDENTIAL Subject to
Protective Order

EK: I DO NOT REMEMBER THE DAY OR THE TIME.

GC: ALL RIGHT. BUT IT WAS IN 2002?
EK: IT WAS IN 2000 AND...

GC: OR 2003.
EK: THREE.

GC: 2003?
EK: (?). YEAH IT WAS 2003.

GC: HAVE YOU EVER HEARD MARY BETH BRACKIN MENTION A AH,
    A INCIDENT WHERE SHE HAD CONTACT WITH THIS
    GENTLEMAN AT THE MAGISTRATES OFFICE?
EK: I DID.

GC: OK. AND DID YOU EVER HEAR HER SPEAK DIRECTLY TO
    THIS GENTLEMAN?
EK: I DID NOT.

GC: ALL RIGHT. DID SHE EVER MAKE ANY STATEMENT TO YOU
    AFTER HER CONTACT WITH HIM?
EK: SHE DID AT, ON THE DAY SHE SPOKE WITH THIS
    GENTLEMAN, SHE CAME UPSTAIRS AND SAID THAT AH, SHE
    HAD SPOKE WITH HIM AND TOLD HIM THAT HE SHOULD NOT
    HAVE BEEN ARRESTED. THAT HE AH, HAD AH, GROUNDS FOR
    SUIT. AND THAT SHE TOLD HIM HE NEED TO GO TO THE
    CITY MANAGER'S OFFICE AND SPEAK WITH THEM ABOUT
    THAT AND SHE DIDN'T CARE IF THEY KNEW SHE HAD TOLD
    HIM THAT.

GC: OK. DID SHE EVER TELL HIM THAT HE HAD BEEN FALSELY
    ARRESTED?
EK: I DON'T KNOW THE EXACT WORDS SHE TOLD HIM BUT SHE
    TOLD ME UPSTAIRS THAT SHE TOLD HIM THAT.

GC: OK. ALL RIGHT. AND WHAT DID YOU, WHAT DID SHE THINK
    TO GAIN OUT OF THAT DO YOU HAVE ANY IDEA?
EK: I HAVE NO IDEA AND AT THE TIME SHE SAID THAT I DID
    NOT AH, HAD ACTUALLY LOOKED AT THE WARRANT TO SEE

DOTHAN/Martin & Brackin 1301aj
CONFIDENTIAL Subject to
Protective Order

WHO SIGNED THE WARRANT OR CAUSE SHE MADE THE
STATEMENT THAT SHE SAW THAT ANN BAXTER HAD SIGNED
THE WARRANT AND I DIDN'T KNOW WHO HAD ACTUALLY
SIGNED THE AW AS FAR AS BEING ISSUED.

GC: UM HUM.
EK: AND SOMETIMES THAT AH, I DON'T KNOW IF IT WAS THAT
NEXT WEEK OR SATURDAY AH, THE JUDGE HAD CALLED
ABOUT GETTING AH, A COPY OF THAT WARRANT,
PAPERWORK. AND I NORMALLY KEEP THE PAPERWORK AFTER
THAT. SO I AH, WAS LOOKING FOR IT CAUSE I KNEW I
HAD ENTERED IT ALREADY, GETTING IT READY FOR COURT
AND I COULDN'T FIND IT. AND THEN I, I WENT AND
ASKED HER IF SHE REMEMBER SEEING IT BECAUSE I KNEW
SHE HAD ASKED ME ABOUT IT AND SHE SAID NO SHE
HADN'T SEE IT. AND THEN LATER ON, I THINK IT WAS
THE NEXT DAY AH, SHE AH, BROUGHT IT TO ME SAID SHE
HAD FOUND IT DOWNSTAIRS FILED. AND AH, SO I SAID
OK. THEN I, THEN I TOOK A COPY TO THE JUDGE AND AND
LET HER SEE IT AND I NOTICE THAT AH, MARY TURNER
HAD SIGNED THE AW ON THAT PERSON.

GC: UM HUM.
EK: SO WHEN I TOOK IT BACK AND JUST MENTIONED IT TO
MARY BETH THAT AH, WAS THIS THE PERSON THAT SHE HAD
SPOKE WITH ABOUT BEING AH, FALSELY ARREST. AND SHE
SAID WELL I THINK THAT'S THE PERSON IT WAS.  AND I
SAID WELL I, MARY TURNER HAD ISSUED THIS WARRANT.
AND THEN SHE SAID WELL, WELL MAYBE THAT'S NOT WHO I
SPOKE WITH. AND SO THAT WAS THE END OF THE
CONVERSATION I HAD WITH HER ABOUT THAT.

GC: OK. AND WHO ELSE WAS WITH YOU WHEN SHE MADE THESE
STATEMENTS?
EK: AH, LAVERA MCCLAIN WAS IN THE HALLWAY WHEN SHE MADE
THE STATEMENT ABOUT TELLING HIM THAT HE WAS FALSELY
ARREST AND HE HAD GROUNDS TO SUIT AND SHE DIDN'T
CARE WHO KNEW THAT AH, SHE TOLD HIM THAT.

GC: OK. ANYBODY ELSE AROUND?

DOTHAN/Martin & Brackin
1301ak
CONFIDENTIAL Subject to
Protective Order

EK: NO WE WERE THE ONLY THREE THAT WAS LEFT AT THE OFFICE THAT DAY.

GC: ALL RIGHT. IN REGARDS TO THAT, HAVE, HAVE Y'ALL BEEN TRAINED IN ANY WAY OR DIRECTED IN ANY WAY ABOUT HOW TO DEAL WITH AH, PEOPLE THAT WE SHOULD MAKE A CLAIM AGAINST THE CITY OR AH, ANYTHING LIKE THAT?

EK: AH, AS FAR AS ACTUALLY ONE ON ONE TRAINING NO BUT IN YOUR MAGISTRATES CERTIFICATION IT TELLS YOU THAT AS FAR AS SPEAKING WITH AH, INDIVIDUALS ON CASES YOU SHOULD BE SURE THAT AH, WHAT YOU SAY IS THE TRUTH WITH OUT AH, DISCREDITING ANYONE.

GC: OK. WAS THERE, WAS YOU EVER DIRECTED IN ANY WAY AS FAR AS AH, MEMORANDUMS OR ANYTHING THAT?....

EK: THERE WAS A MEMORANDUM AS FAR AS SPEAKING WITH THE PUBLIC ON ISSUES THAT CONCERNED OUR OFFICE THAT AH, I THINK IT CAME FROM THE CITY MANAGER DENNIS RUBIN BEFORE THAT WE SHOULD NOT SPEAK WITH THE MEDIA OR ANYONE ABOUT AH, SITUATIONS THAT HAPPENS IN OUR OFFICE.

GC: OK. I'M GONE SHOW YOU A MEMORANDUM. YOU EVER SEEN THAT BEFORE?

EK: I HAVE.

GC: OK. IS THAT THE MEMORANDUM YOU'RE SPEAKING OF?

EK: IT IS.

GC: ALL RIGHT. IS THERE ANYTHING ELSE THAT YOU'D LIKE TO ADD TO THIS STATEMENT THAT AH, THE ISSUES THAT WE HAVEN'T COVERED OR ANYTHING THAT WOULD SHED A DIFFERENT LIGHT ON MR. FONDREN'S AH, ARREST OR ANYTHING?

EK: WELL ON THE WARRANT IT CLEARLY STATES THAT HE MISSED COURT ON THE DATE THAT HE SHOULD HAVE SHOWED UP AND THAT'S ACTUALLY WHEN THE WARRANT WAS ISSUED.

GC: UM HUM.

DOTHAN/Martin & Brackin 1301al
CONFIDENTIAL Subject to
Protective Order

5

EK: AND AH, EVEN THOUGH HIS COURT REFERRAL STATES THAT
    HE COMPLETED IT IN DECEMBER, WE DID NOT RECEIVE IT
    AND THAT'S WHY I PUT THAT NOTE ON THERE WHEN I
    RECEIVED IT THE FIRST TIME I RECEIVED IT AND
    ATTACHED IT TO THE PAPERWORK.

GC: OK. ALL RIGHT. THIS IS THE END OF THE STATEMENT
    WITH EUNICE KNIGHT.   THE TIME IS 340.


    PRJOHNSON

DOTHAN/Martin & Brackin
1301am
CONFIDENTIAL Subject to
Protective Order



**JUDICIAL DEPARTMENT**
**City of Dothan**
(334) 615-4142 – Office
(334) 615-4149 – Facsimile

## INTEROFFICE MEMORANDUM

| | |
|---|---|
| **TO:** | Ms. Bettye King, Court Administrator |
| **FROM:** | Rose Evans-Gordon, |
| | Municipal Court Judge |
| **DATE:** | January 8, 2003 |
| **SUBJ:** | Public Relations |

Please ensure that all personnel in the Magistrates' Office are instructed to politely direct inquiries regarding liability on the City's part to the City Clerk's Office without commenting on the possibility of fault. Please have the employee immediately notify you of the situation provoking the inquiry and bring it to my attention and that of Mr. Larry Muench, Risk Manager.

DOTHAN/Martin & Brackin
1301an
CONFIDENTIAL Subject to
Protective Order



**JUDICIAL DEPARTMENT**
City of Dothan
(334) 615-4142 – Office
(334) 615-4149 – Facsimile

## INTEROFFICE MEMORANDUM

| | |
|---|---|
| **TO:** | **Judicial Department Personnel** |
| **FROM:** | **Rose Evans-Gordon,** |
| | **Municipal Court Judge** |
| **DATE:** | **January 8, 2003** |
| **SUBJ:** | **Public Relations** |

It is of the utmost import that we as City employees use courtesy and discretion in our dealings with the public. The City Manager has stressed the significance of <u>diplomatically</u> referring those citizens making allegations of liability on the part of the City to the City Clerk's Office <u>without commenting on the possibility of liability.</u>

Again, Mr. Rubin directs that citizens inquiring about reimbursement from the City for perceived liability on the City's part be directed to the City Clerk's Office and that <u>no comment</u> be made regarding the possible liability. Immediately apprise Ms. King in writing of the situation so that appropriate action can be taken.

DOTHAN/Martin & Brackin
1301ao
CONFIDENTIAL Subject to
Protective Order