# Statement

# Of

# Mary L. Turner

DOTHAN/Martin & Brackin 1490
CONFIDENTIAL Subject to
Protective Order

# DOTHAN POLICE DEPARTMENT          **ORIGINAL**

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Mm &amp; Surner_

      DATE/TIME: _4/26/05 @ 1:30 p.m._

INVESTIGATING OFFICER: _A. Llam K. Lry_

      DATE/TIME: _4-26-05  1:20 PM_

WITNESS SIGNATURE: _Sgt Gary S Colann_

      DATE/TIME: _4-26-05  1:21 PM_

PD 15 B

DOTHAN/Martin &amp; Brackin 1491
CONFIDENTIAL Subject to
Protective Order

KG:     THIS IS SGT. GRAY. THE DATE IS APRIL THE 26TH OF 2005. THE TIME IS
        1:19 P.M. MRS. TURNER, BE ADVISED THAT THIS IS AN ADMINISTRATIVE
        INVESTIGATION IN NATURE. AH, THE NATURE OF THE ALLEGATIONS REGARDING
        THIS INVESTIGATION ARE AH TWO GENTLEMEN, ONE NAMED STEVEN PHELPS, THE
        OTHER ONE IS AH BRADLEY PHELPS. THEY BOTH RECEIVED TRAFFIC CITATIONS
        AH WITHIN THE CITY OF DOTHAN JURISDICTION. AH, AND I'LL GO OVER THE
        DATES OF THOSE CITATIONS AND AH THERE WERE ALLEGATIONS MADE BY MR.
        BRADLEY PHELPS OF POSSIBLE MISCONDUCT ON YOUR PART DEALING WITH A AH,
        HIS TRAFFIC CITATION AND AHM SOME WORK THAT HE CLAIMS THAT HE DID FOR
        YOU AH, AH, IN EXCHANGE FOR YOU TAKING CARE OF HIS TRAFFIC CITATION.
        OKAY, THAT'S JUST THE ALLEGATIONS IN REGARDS TO AH BRADLEY PHELPS. AND
        WE'RE GONNA QUESTION YOU ABOUT THAT. REFERENCE TO STEVEN ALLEN PHELPS
        AH HE RECEIVED A CITATION FROM CPL. DUHAIME AND THAT AH CITATION WAS
        VOIDED AFTER HE WAS SWORE TO BY MAGISTRATE MARY BETH AH BRACKIN, AND,
        OR MARY ELIZABETH BRACKIN, AND AH, AH, WE HAVE BEEN GIVEN SOME
        INFORMATION THAT AH YOU MAY HAVE HAD AH THIS TAKE, TICKET TAKEN CARE OF
        AND WE'RE GONNA ASK YOU QUESTIONS IN REGARDS TO THAT AS WELL. WHAT I
        HAVE BEFORE YOU IS A, AN INTERNAL AFFAIRS DIVISION GARRITY NOTICE. IF
        YOU WOULD, READ IT AND WHEN YOU UNDERSTAND, SIGN WHERE IT SAYS MEMBER
        SIGNATURE, PLEASE. PLEASE STATE YOUR FULL NAME.
MT:     MARY LEON TURNER.

KG:     OKAY. WHAT IS YOUR CURRENT ASSIGNMENT DEALING WITH THE JUDICIAL
        DEPARTMENT?
MT:     MAGISTRATE.

KG:     HOW LONG HAVE YOU BEEN EMPLOYED AS A MAGISTRATE WITH THE CITY OF
        DOTHAN?
MT:     UM, 12 YEARS AND I GUESS 4 MONTHS.

KG:     OKAY. I'M SGT. KEITH GRAY ASSIGNED TO THE INTERNAL AFFAIRS DIVISION.
        ALSO SGT. GARY COLEMAN ASSIGNED TO INTERNAL AFFAIRS DIVISION IS
        PRESENT, AH ALONG WITH YOUR ATTORNEY, MR. STEVE ETHEREDGE. FOR THE
        PURPOSE OF RECORDING, NO ONE ELSE IS PRESENT. AH, BE ADVISED THAT YOU
        ARE THE SUBJECT OF THIS INVESTIGATION AND I JUST GAVE YOU THE NATURE OF
        THE ALLEGATIONS THAT WE'RE GONNA COVER, AH, JUST A FEW MOMENTS AGO.
        AH, THE IDENTITY OF THE COMPLAINT AH REGARDING THE CITATION AH BRADLEY
        PHELPS, HIS ATTORNEY, HIS PARENTS, ALSO, AH, ARE COMPLAINING IN REGARDS
        TO, TO THAT CITATION. AH, WE WERE AH TOLD BY MRS. AH PHYLLIS PHELPS,
        THE, BRADLEY'S MOTHER, OF THE TICKET REGARDING AH STEVEN PHELPS. AH,
        SO THAT'S HOW WE CAME INTO, WAS NOTIFIED OF THAT CITATION AS WELL. ARE
        YOU UNDER THE INFLUENCE OF ALCOHOL OR DRUGS, INCLUDING PRESCRIPTION
        DRUGS?
MT:     NO.

KG:     ARE YOU CURRENTLY UNDER A DOCTOR'S CARE FOR ANY ILLNESS, DISEASE OR
        DISORDER?
MT:     NO.

KG:     OKAY. AT THE TIME THAT YOU WERE HIRED AS A MAGISTRATE AH WERE YOU AH,
        FIRST OF ALL DID YOU TAKE SOME TYPE OF OATH TO BECOME A MAGISTRATE?
MT:     YES.

KG:     OKAY. WHERE WAS THAT AT? WHAT PHYSICAL LOCATION DID YOU TAKE THAT
        OATH?
MT:     AH, IT WAS HERE, I BELIEVE IT WAS RIGHT HERE IN THE POLICE DEPARTMENT.

DOTHAN/Martin & Brackin 1492
CONFIDENTIAL Subject to
Protective Order

KG:  WHO GAVE YOU THAT OATH?  DO YOU REMEMBER?
MT:  JUDGE BROWN.

KG:  OKAY.  AH, AS, ALSO AH DURING THE COURSE OF BEING A MAGISTRATE, WERE
     YOU GIVEN ANY AH RULES, REGULATIONS OR POLICES THAT GOVERN AH YOUR JOB
     PERFORMANCE IN YOUR JOB DESCRIPTION?
MT:  WELL, WE, WE'VE HAD DIFFERENT THINGS.  I MEAN I GUESS YOU WOULD SAY IN
     THE FORM OF MEMOS, AND OF COURSE WE HAVE THE PERSONNEL RULES FOR THE
     CITY AND WE HAVE MEMOS FROM TIME TO TIME, BUT WE DO H', WE'VE BEEN
     UNDER DIFFERENT LEADERSHIP SO WE, THINGS HAVE JUST KINDA CHANGED, AND
     THERE'S A LOT OF THINGS THAT HAVE CHANGED YOU KNOW, THEY, NOT REALLY
     SPECIFICALLY IN WRITING, BUT WE JUST KINDA CHANGED THE WAY WE DO STUFF.

KG:  OKAY.
MT:  SINCE WHEN I STARTED HERE.

KG:  OKAY.  SO THE POLICIES AND PROCEDURES CHANGED.  ALSO IS IT SAFE TO SAY
     EVEN THAT THE CHANGE OF THE ADMINISTRATION FROM JUDGE BROWN TO JUDGE
     GORDON AND, AND OVER THE YEARS?
MT:  YEAH, I WOULD SAY THEY HAVE.

KG:  OKAY.  AH, HAVE AH, THERE'S A WHITE BOOK ABOUT THIS BIG, THAT'S A
     BINDER, THAT AH I RETRIEVED FROM THE MAGISTRATES' OFFICES.  HAS MEMOS,
     POLICIES, AND THINGS OF THAT NATURE IN IT.  DO YOU KNOW WHAT I'M
     TALKING ABOUT?
MT:  NOT REALLY.

KG:  NEVER SEEN IT?
MT:  I DON'T KNOW.  WE'VE, THE LAST COURT ADMINISTRATOR THAT WE HAD WE HAD A
     MEETING AND WE WERE TRYING TO, TO GET UP SOME SORT OF A BOOK SO THAT WE
     WOULD KNOW ALL THE PROCEDURES.  BACK WHEN GAYLE WAS HERE WHICH WAS I
     GUESS, PROBABLY ABOUT 5 YEARS AGO, WE WERE WORKING ON THAT AND GETTING
     SOMETHING TOGETHER, BUT AS FAR AS US BEING GIVEN ANYTHING LIKE THAT, I
     DON'T, I DON'T THINK THAT WE HAVE.  BUT LIKE I SAY NOW SOME DIFFERENT
     AH ADMINISTRATORS WE'VE HAD WE'VE BEEN GIVEN DIFFERENT THINGS.

KG:  UM, HM.  DID
MT:  AND I KNOW WE WERE WORKING ON SOMETHING WITH NANCY BUT WE NEVER DID
     FINISH IT.

KG:  THE, DID ANY OF THOSE THINGS HAVE TO DO WITH HOW YOU PERFORM YOUR
     DUTIES?
MT:  HOW DO YOU MEAN?

KG:  ANY OF THOSE AH ITEMS THAT YOU SAID THAT YOU HAVE RECEIVED FROM
     ADMINISTRATOR TO ADMINISTRATOR, DOES ANYTHING GOVERN HOW YOU PERFORM
     YOUR JOB?  UPDATES?
MT:  AH, YEAH I GUESS YOU WOULD SAY.  WELL I MEAN IF YOU COULD BE SPECIFIC.

KG:  AH, I'LL GIVE YOU AN EXAMPLE.
MT:  OKAY.

KG:  THAT MAY HELP YOU OUT.  AH, AS A POLICE INVESTIGATOR AH, I HAVE BEEN
     UNDER DIFFERENT ADMINISTRATORS AS WELL, THREE TO FOUR DIFFERENT CHIEFS,
     AH THERE ARE PROCEDURES AH THAT WE, I INITIALLY LEARNED FROM THE
     ACADEMY.  AS I CONTINUED EMPLOYMENT HERE, THERE POLICIES AND MEMOS AH
     THAT I RECEIVED AS PART OF AN UPDATE TO MY DUTIES AND HOW I PERFORM MY

DOTHAN/Martin & Brackin 1493
CONFIDENTIAL Subject to
Protective Order

JOB. SO AH THE DIFFERENT UPDATES AND THE POLICIES THAT ARE GOVERNED ME
BY A NEW ADMINISTRATOR WHICH TELLS THE ENTIRE DEPARTMENT HOW TO WORK AH
TOGETHER AH DEALING WITH THE SAME RULES AND THE UPDATED POLICIES.

MT: UM, HM.

KG: AS A MAGISTRATE YOU TOOK AN OATH AND YOU LEARNED HOW TO DO YOUR, YOUR
DUTIES. AH, AS YOU CONTINUED ON THROUGHOUT YOUR TENURE HERE, HAS THERE
BEEN ANY POLICIES, PROCEDURES THAT GOVERN HOW YOU DO YOUR JOB THAT YOU
HAVE HAD TO CHANGE AND JUST UPGRADE AS YOU CONTINUED EMPLOY?

MT: YEAH, I FEEL LIKE THERE PRO', YEAH. I MEAN I'VE TRIED TO THINK OF
SPECIFICALLY BUT I'D SAY THERE, WE'VE PROBABLY CHANGED HOW WE'VE DONE
THINGS.

KG: OKAY. ARE YOU RESPONSIBLE FOR FOLLOWING THOSE POLICIES IF THEY WERE
GIVEN TO YOU?

MT: YEAH.

GC: HAVE YOU EVER BEEN TRAINED BY THE ADMINISTRATIVE AH COURTS

MT: YES.

GC: AOC?

MT: UM, HM.

GC: AND DID YOU HAVE TO TAKE A COURSE FROM THEM?

MT: YES. WE ALL DO.

GC: OKAY. AND DID YOU RECEIVE ANY KIND OF CERTIFICATION FROM THAT?

MT: YES.

GC: ALL RIGHT.

MT: WE ALL HAVE TO DO IT FOR LIKE THREE YEARS AND THEN WE GET CERTIFIED AND
WE GO EVERY YEAR TO GET UPDATES AND RECERTIFIED I GUESS IS WHAT YOU
WOULD SAY.

KG: ARE YOU RECERTIFIED ANNUAL?

MT: YES.

KG: OKAY. DURING THAT RECERTIFICATION THEY GO OVER PROCEDURES AH THAT YOU
ALSO HAVE TO UTILIZE AS A MAGISTRATE.

MT: RIGHT.

KG: AOC AH, DO THEY GOVERN HOW YOU PERFORM YOUR JOB AS A MAGISTRATE?

MT: WELL THEY GIVE US GUIDELINES TO GO BY, BUT I MEAN THE ULTIMATE PERSON
THAT WE WOULD GO BY WOULD BE OF COURSE THE JUDGE, AND THEN THE COURT
ADMINISTRATOR. BUT THE JUDGE CAUSE SHE'S OUR DEPARTMENT HEAD.

KG: UMKAY. AH, WHEN YOU TOOK THAT OATH AH WHAT DID THAT OATH ENTAIL THAT
YOU WERE SUPPOSED TO DO AS YOUR, AS, IN THAT POSITION OFFICIALLY AS A
MAGISTRATE?

MT: I REALLY DON'T REMEMBER EXACTLY WHAT IT SAID.

KG: OKAY.

MT: I MEAN THAT WAS A LONG TIME AGO.

KG: OKAY.

MT: I MEAN I'M SURE, I DON'T, I DON'T KNOW, I COULDN'T BEGIN TO SAY. I
DON'T REMEMBER.

3

DOTHAN/Martin & Brackin 1494
CONFIDENTIAL Subject to
Protective Order

KG:    OKAY.  GIVE ME AN OVERVIEW OF YOUR DUTIES AS A MAGISTRATE.

MT:    AS A MAGISTRATE AH, I DETERMINE PROBABLE CAUSE, AH WHEN OFFICERS OR
       CITIZENS OF THE PUBLIC COME IN WANTING WARRANTS AND I DETERMINE
       PROBABLE CAUSE AND, BASED ON MY KNOWLEDGE AND WHETHER OR NOT WARRANTS
       OR SUMMONS ARE ISSUED.  WE AH HANDLE ALL THE MUNICIPAL COURT PAPERWORK
       AND ASSIST THE PUBLIC, ATTORNEYS, POLICE OFFICERS, THE JUDGE, YOU KNOW
       ANY WAY THAT, THAT WE'RE SUPPOSED TO.

KG:    WHEN A COMPLAINT COMES IN FROM A CITIZEN OR AN OFFICER AH DO YOU HAVE
       TO DETERMINE WHETHER THERE'S PROBABLE CAUSE TO BELIEVE THAT THAT
       PARTICULAR COMPLAINT OCCURRED AND IF IT IS A VIOLATION OF STATE LAW?
       OR, OR MUNICIPAL ORDINANCE, CORRECT?

MT:    RIGHT.

KG:    AH, ONCE THE PLAINT', COMPLAINT COMES IN AND A PERSON AH APPROACHES YOU
       WITH A COMPLAINT WHAT IS THE NORMAL PROCESS THAT YOU DO THERE?

MT:    WELL I WOULD AH TAKE THEIR STATEMENT AND USUALLY I MEAN OF COURSE WE,
       YOU KNOW, WE PUT 'EM UNDER OATH, AND THEY TELL US THE FACTS AND IF IT
       YOU KNOW IS ACCORDANCE WITH THE LAW AND IT APPEARS THAT SOMEONE HAS
       VIOLATED THE LAW THEN WE CAN ISSUE A WARRANT ON THEM.

KG:    WHEN YOU PLACE SOMEBODY UNDER OATH, WHAT EXACTLY DO YOU SAY?

MT:    AH, DO YOU SWEAR, OR DO YOU SWEAR THAT THE STATEMENT YOU'RE GIVING IS
       THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

KG:    OKAY.  DOES THAT STATEMENT HAVE A TITLE?  IS THAT CALLED ANYTHING?

MT:    I JUST SAY, I NEED TO PLACE YOU UNDER OATH.

KG:    OKAY.  AH, DO YOU KNOW WHAT AN OATH OF AFFIRMATION IS?

MT:    UM, I'M NOT SURE.

KG:    OKAY.  ONCE YOU PLACE THAT PERSON UNDER OATH, WHAT DOES THAT SIGNIFY TO
       YOU?

MT:    THAT THEY'RE TO TELL ME THE TRUTH.

KG:    UMKAY.  AH, AND ONCE THEY ARE UNDER OATH AND THEY TELL YOU WHAT AHM
       OCCURS, AH DO YOU AH DETERMINE IF IN FACT A LAW HAS BEEN BROKEN TO YOUR
       KNOWLEDGE?

MT:    YES.

KG:    OKAY.  AFTER YOU HAVE DETERMINED THAT THE LAW HAS BEEN BROKEN, WHAT DO
       YOU DO AFTER THAT?

MT:    THEN I WOULD FILL OUT A COMPLAINT AND THEN I WOULD READ THAT COMPLAINT
       BACK TO THE PERSON AND IF THEY SAY YES, THAT'S CORRECT, AND OF COURSE I
       WOULD REMIND THEM THEY'RE STILL UNDER OATH, AND IF THEY AGREE WITH WHAT
       I'VE WRITTEN, THEN THEY WOULD SIGN IT AND I WOULD SIGN IT.

KG:    UMKAY.  AH, IN THE CASE OF A TRAFFIC CITATION.  WHEN AN OFFICER COMES
       IN, DOES HE HAVE TO RAISE HIS HAND AND SWEAR TO AN OATH?

MT:    WE DON'T ALWAYS DO THAT.

KG:    DOES THE AOC SAY THAT AS A MAGISTRATE YOU DON'T HAVE TO ALWAYS SWEAR TO
       A TICKET WHEN THE OFFICER BRINGS THAT IN, WHICH IS A FORMAL COMPLAINT,
       RIGHT?  THE TICKET IS A COMPLAINT?

MT:    I'M NOT SURE.  I MEAN OFFICIALLY AH, ARE YOU TELLING ME EVERY TIME
       YOU'VE SWORN TO A TICKET YOU'VE ALWAYS HAD TO RAISE YOUR HAND AND BE

DOTHAN/Martin & Brackin 1495
CONFIDENTIAL Subject to
Protective Order

PUT UNDER OATH?

KG: WHAT MY QUESTION, WHAT MY QUESTION IS

MT: THEY, I'M SAYING, IT'S A, IT'S A FORMALITY. WE DON'T ALWAYS DO THAT, SAY DO YOU SWEAR THIS IS THE TRUTH, THE WHOLE TRUTH TO THE POLICE, YOU KNOW, USUALLY WE'LL SAY DO YOU SWEAR THIS IS THE TRUTH, AND THEY SAY I DO OR WHATEVER COMMENT THEY WANTA MAKE.

KG: OKAY. AH, WHAT DIRECTIONS HAVE YOU BEEN GIVEN WH', WHETHER YOU SHOULD DO THAT AS PART OF YOUR DUTIES OR NOT? HAVE YOU BEEN TOLD THAT IT'S OKAY NOT TO DO IT? OR HAVE YOU BEEN TOLD TO DO IT? WHAT, WHAT DIRECTION HAVE YOU BEEN ADVISED?

MT: JUST WHAT I WAS TOLD ORIGINALLY WHEN I BECAME A MAGISTRATE AND OF COURSE GAYLE WAS A REAL STICKLER AND WENT BY THE BOOK WITH EVERYTHING AND I MEAN, YOU KNOW SHE WOULD TELL US TO DO THAT. BUT THINGS HAVE GOTTEN A LITTLE BIT MORE LAX THROUGH THE YEARS, AND WE DON'T ALL DO THAT.

KG: OKAY. WHO DIRECTED YOU THAT YOU DIDN'T HAVE TO DO THAT?

MT: NO ONE DIRECTED ME.

KG: OKAY. WHEN A CITIZEN COMES IN OFF OF THE STREET AND HYPOTHETICALLY AND HAS A COMPLAINT, DO YOU ASK THEM TO RAISE THEIR RIGHT HAND AND AND DO YOU SWEAR THEM AT THAT TIME?

MT: YES.

KG: OKAY. AH, ALL OF THEM, OR JUST SOME OF THEM?

MT: ALL OF 'EM.

KG: UMKAY. AND WHEN YOU'RE SWEARING TO THEM, YOU'RE SWEARING THAT, THAT PARTICULAR SITUATION THAT THEY ARE TELLING YOU ABOUT WAS TRUE AND CORRECT TO THE BEST OF THEIR KNOWLEDGE?

MT: UM, HM.

KG: WHEN AN OFFICER COMES IN AND PRESENTS YOU WITH A TICKET, AH IS THE TICKET CONSIDERED A COMPLAINT?

MT: YES.

KG: AH, IN SWEARING THE OFFICER, ARE YOU STATING THAT YOU DON'T ALWAYS HAVE THEM TO RAISE THEIR HAND AND, WHILE YOU'RE SWEARING THAT OATH?

MT: HONESTLY I, NO, I DON'T ALWAYS DO THAT.

KG: DO YOU ALWAYS SWEAR THE OATH TO THEM?

MT: YES.

KG: UMKAY. SO YOU DO GIVE THEM THE OATH REGARDLESS WHETHER THEY HOLD THEIR HAND UP OR NOT?

MT: RIGHT.

KG: UMKAY. AH, AND ONCE THE OFFICER DOES TAKE THE OATH AND HE SAYS YES, I SWEAR THAT THIS IS CORRECT, AH, REGARDING A TICKET, WHAT IS YOUR PROCEDURE FOR ASKING THEM THE, THE PERTINENT INFORMATION ABOUT THE, THE TICKET, JUST IN GENERAL. I KNOW THERE'S SEVERAL DIFFERENT TR' VIOLATIONS, BUT WHAT DO YOU USUALLY HAVE THE OFFICER TO TESTIFY TO YOU THAT, TO PROVE THAT THIS CITATION, THE INFORMATION WAS TRUE AND CORRECT?

MT: WELL I DON'T INTERROGATE THEM ABOUT EVERY TICKET, YOU KNOW, WHY THEY

DOTHAN/Martin & Brackin 1496
CONFIDENTIAL Subject to
Protective Order

STOPPED 'EM AND ALL THAT KIND OF STUFF.  IN FACT YOU KNOW IF WE ASK
A WHOLE LOT, A LOT OF 'EM WILL GIVE US GRIEF.  SOME DON'T EVEN WANTA
YOU KNOW STAY THERE AND TELL YOU.  THEY'LL SAY HERE, YEAH, IT'S TRUE
AND I'LL ALWAYS SAY, NO, WAIT JUST A MINUTE, BECAUSE SOMETIMES THEY'LL
FORGET TO SIGN OR MAYBE THEY DON'T PUT THE NAME OR SOMETHING.

KG:    OKAY.  LET'S, LET'S NARROW IT DOWN AND SPECIFICALLY ANSWER THE QUESTION
       AND I'LL TELL YOU, I, I'LL TELL YOU WHAT, AND I KNOW IT'S REAL EASY TO
       TO GIVE GENERALITIES.
MT:    UM, HM.

KG:    FOR THE PURPOSES RIGHT NOW I WANTA TALK ABOUT WHAT YOU DO.
MT:    OKAY.

KG:    SPECIFICALLY, WHAT, WHAT YOU DO AND NOT WHAT OTHER MAGISTRATES OR
       WE COLLECTIVELY, THIS IS THE WAY.  I WANTA TALK ABOUT WHAT YOU DO.
MT:    OKAY.

KG:    BACK TO THAT SAME QUESTION, REGARDING THE TICKETS THAT YOU RECEIVE
       FROM AN OFFICER AFTER THEY RAISE THEIR HAND OR THEY DON'T RAISE
       THEIR HAND AND, BUT YOU DO SWEAR THEM, WHAT DO YOU AHM ASK THEM TO
       PROVIDE TO YOU IN THE FORM OF TESTIMONY AS TO WHAT THE VIOLATION WAS
       THAT THEY'RE SWEARING ON A COMPLAINT?
MT:    NORMALLY, WHAT I'LL DO IS I WOULD JUST, YOU KNOW I'D LIKE READ THE
       DATE, ON APRIL 25TH, JOHN DOE WAS SPEEDING AND THEN YOU KNOW JUST READ
       THROUGH ALL THE TICKETS AND THEY'LL SAY THAT'S CORRECT.

KG:    DO YOU, ARE YOU REQUIRED TO ASK 'EM WHAT JURISDICTION IT OCCURRED
       IN?
MT:    I DON'T BELIEVE SO.

KG:    OKAY.  SO YOU JUST ASSUME THAT IT HAPPENED IN ALABAMA OR THE CITY
       LIMITS OF WHERE YOU HAVE, WE HAVE JURISDICTION OR DO YOU, DO YOU
       EVEN ASK THEM WHERE IT OCCURRED AT OR IF IT OCCURRED WITHIN THEIR
       POLICE JURISDICTION?
MT:    I KNOW SOMETIMES I WILL SAY, THEN I'LL SAY ON THE STREETS OF DOTHAN,
       PUBLIC STREETS OF DOTHAN, AND THEY'LL SAY Y', I MAY NOT ALWAYS GO ALL
       THROUGH

KG:    RIGHT.
MT:    THAT WHEN I'M ASKING 'EM.

KG:    RIGHT.
MT:    SOMETIMES I DO.  SOMETIMES I DON'T.  IT JUST DEPENDS UPON HOW A
       BIG A HURRY THEY ARE.

KG:    OKAY.
MT:    CAUSE SOMETIMES THEY JUST WANTA, THEY GOTTA TURN 'EM IN AND GO ON
       A CALL OR SOMETHING.

KG:    OKAY.  I UNDERSTAND.  AH, ONCE THE OFFICER DOES AH GIVE YOU THE
       INFORMATION REGARDING WHAT OCCURRED AND, AND, AND THEY DID WITNESS
       IT, AH, WHAT IS DONE WITH THE CITATION?
MT:    AH, I WOULD SIGN OFF ON 'EM AND GIVE THE OFFICER A COPY OF HIS
       TRANSMITTAL AND THEN GIVE THE TICKETS TO WHOEVER'S ENTERING THE
       TICKETS.

6

DOTHAN/Martin & Brackin 1497
CONFIDENTIAL Subject to
Protective Order

KG:    ONCE YOU SWEAR THAT OFFICER IN TO THOSE TICKETS ON THERE, IS
       IT YOUR RESPONSIBILITY TO INSURE THAT YOU'RE RECEIVING THE TICKETS THAT
       SIGNED ON THE TRANSMITTAL?
MT:    YES.

KG:    UMKAY, AND IN FACT THERE'S A PLACE AT THE BOTTOM OF THE TRANSMITTAL
       THAT STATES THE ABOVE LISTED TRAFFIC TICKETS ARE RECEIVED FOR COURT
       ACTION.
MT:    YES.

KG:    IS THAT, AH, ONCE THAT CITATION IS ACCEPTED BY YOU AND SWORE TO
       DOES THE OFFICER HAVE THE DISCRETION AT THAT TIME TO REMOVE THAT
       TICKET FROM THE PROCESS THAT IT WOULD NORMALLY UNDERGO?
MT:    AH, NORMALLY I WOULD SAY YOU KNOW LIKE IF YOU SWORE TO A TICKET
       TO ME RIGHT NOW..
KG:    UM HM
MT:    ..AND THEN I THINK I'VE HAD 'EM GIVE ME SOMETHING AND
       THEY'D SAY OH WAIT A MINUTE, NO THAT ONE I'M NOT SUPPOSED TO DO THAT
       ONE.  HERE LET ME VOID THAT.  AND SO I MEAN IT'S POSSIBLE TO TAKE
       ONE BUT AS LONG AS I'VE NOT SIGNED OFF ON IT YET, THEN THAT'S, I'VE
       NEVER KNOWN OF THERE TO BE ANY PROBLEM WITH THAT.

KG:    OKAY.  THE QUESTION WAS AFTER THE OFFICER SWEARS TO YOU REGARDING
       THE CITATION DOES THAT OFFICER HAVE THE DISCRETION TO STOP THAT
       TICKET FROM GOING THROUGH ITS NORMAL JUDICIAL PROCESS?
MT:    WELL, LIKE I SAID I MEAN YEAH I WOULD THINK IT WOULD BE UP TO
       THEIR DISCRETION.  IF I'VE NOT SIGNED OFF ON THE TICKET, THAT'S MY
       UNDERSTANDING.

KG:    UMKAY.
MT:    BUT ONCE IT'S SIGNED BY A MAGISTRATE, WELL THAT'S WHAT I'M SAYING,
       THAT'S MY UNDERSTANDING SO THAT'S THE WAY

KG:    UMKAY.
MT:    YOU KNOW THAT'S ALL I CAN SAY.

KG:    LET ME REPEAT THE QUESTION BUT CHANGE IT AROUND FOR YOU, OKAY, BUT
       CHANGE IT AROUND FOR YOU.
MT:    OKAY.

KG:    OKAY, BECAUSE YOU'RE ANSWERING SOMETHING ELSE THAT I'M NOT ASKING.
       OKAY?  WHEN THE OFFICER BRINGS YOU HIS TICKETS, HE GIVES YOU THE
       TRANSMITTAL FORM.  I SWEAR TO YOU THAT ALL OF THESE TICKETS ARE
       VIOLATIONS, THEY'RE COMPLAINTS AND THEY DID HAPPEN WITHIN MY, THE
       POLICE JURISDICTION THEREOF.  YOU TAKE THE TICKETS AND YOU SIGN
       OFF ON THE TRANSMITTAL.  AFTER I HAVE SWORN MY OATH OF AFFIRMATION
       TO YOU,
MT:    UM, HM.

KG:    DO I NOW, AND YOU HAVE THEM IN YOUR POSSESSION, YOU'VE SIGNED ON
       THE BOTTOM OF THE COPY OF THE TRANSMITTAL, DO I HAVE THE ABILITY
       TO TAKE THAT CITATION BACK TO KEEP IT FROM GOING THROUGH A NORMAL
       COURT PROCESS?
MT:    IF YOU GAVE ME A TICKET AND WE HAD BEEN THROUGH THE PROCEDURE, AND
       THEN YOU WANTED IT BACK, I WOULDN'T TELL YOU NO.

KG:    OKAY.

DOTHAN/Martin & Brackin 1498
CONFIDENTIAL Subject to
Protective Order

GC: WOULD YOU ACCEPT THAT SAME TRANSMITTAL FORM?
MT: I WOULD TELL 'EM BE SURE YOU WRITE VOID ON THERE. CAUSE I MEAN I KNOW THEY, THEY'RE SUPPOSED TO BE ACCOUNTED FOR, SO I WOULD SAY YOU JUST BE SURE YOU WRITE VOID.

GC: WHEN YOU SAY ACCOUNTED FOR, WHO WOULD BE THE ONE THAT WOULD, WHO WOULD DO THE ACCOUNTING ON THAT?
MT: WELL I KNOW THAT THEY HAVE TO TURN 'EM IN. I DON'T KNOW EXACTLY WHO DOES IT OVER HERE, BUT IT'S MY UNDERSTANDING THAT THEY HAVE TO TURN THE TICKETS IN TO SOMEBODY OVER HERE AND THAT HAS CHANGED OVER THE YEARS AND I WOULD TELL 'EM ALSO THAT THEY NEED TO MAKE A COPY TO GIVE US AND THEN THEY NEED TO TURN THE REST OF THE STUFF IN TO Y'ALL, WHOEVER IT IS THAT TAKES THE TICKETS. CAUSE A LOT OF 'EM DON'T EVEN KNOW THAT.

KG: AT WHAT POINT DOES THE COMPLAINT AFTER BEING SWORN BECOME A COURT DOCUMENT?
MT: WHEN, WELL I WOULD SAY WHEN THE MAGISTRATE SIGNS IT.

KG: DOES THE MAGISTRATE HAVE THE AUTHORITY AFTER SHE SWORE THE COMPLAINT THAT WAS IT WAS TRUE AND CORRECT, AH IT WAS AN ACCURATE COMPLAINT, DOES THE MAGISTRATE HAVE THE AUTHORITY TO AH DISPOSE OF THE CITATIONS?
MT: NO.

KG: AH, DO YOU KNOW OF ANY MAGISTRATE AFTER THE AH COMPLAINT WAS SWORE TO, THAT HAS ASKED AN OFFICER OR THE COMPLAINANT NOT TO GO FORWARD WITH THE CHARGES? I CAN REPEAT THAT IF YOU
MT: YEAH, SAY IT AGAIN.

KG: DOES, DO YOU KNOW OF ANY MAGISTRATE THAT AFTER SWEARING THE OATH TO THE COMPLAINANT, WHETHER IT'S A TICKET OR ANY OTHER COMPLAINT WHICH IS VIOLATION OF LAW, DO YOU KNOW OF ANY MAGISTRATE THAT HAS ASKED THE COMPLAINANT, BE IT THE OFFICER OR A CITIZEN OFF THE STREET, TO NOT FOLLOW THROUGH WITH THE PROCESS, TO VOID THE PROCESS, TO, TO STOP THE PROCESS?
MT: ARE YOU TALKING ABOUT THE MAGISTRATE THAT WAS SWORN TO?

KG: UM, HM.
MT: OR, A MAGIS', LIKE IF SOMEBODY SWORE TO ME AND WE SWORE TO, WELL I MEAN I WOULDN'T, I'M NOT GONNA SWEAR TO IT AND THEN TURN AROUND AND ASK 'EM TO DO AWAY WITH IT.

KG: RIGHT.
MT: NO.

KG: OKAY. AH, IN REGARDS TO AH SPECIFICALLY THE STEVEN PHELPS CITATION WHICH WAS ISSUED ON NOVEMBER 24TH, 2002, CITATION # M5533359, WOULD YOU TAKE A LOOK AT THAT AND TELL ME IF YOU'VE EVER SEEN THAT TICKET BEFORE?
MT: I BELIEVE I HAVE.

KG: OKAY. IS THAT, YOU'RE NOT 100% SURE, OR YES YOU ARE SURE?
MT: YES, I'VE SEEN IT.

KG: OKAY. AH, WHEN WAS THE FIRST TIME THAT YOU, YOU SAW THAT TICKET OR HAD ANYTHING TO DO WITH IT?
MT: IT WOULD'VE BEEN, I DON'T KNOW EXACTLY WHAT DAY, BUT IT WOULD'VE BEEN PROBABLY SHORTLY AFTER HE GOT THE TICKET. AND WELL, AFTER I TALKED TO

8

DOTHAN/Martin & Brackin 1499
CONFIDENTIAL Subject to
Protective Order

THE OFFICER ABOUT IT AND HE SAID THAT HE, HE WOULD VOID THE TICKET.  HE
SAID JUST, TOLD ME TO BE SURE AND GET THE DEFENDANT'S COPY.  SO, THAT'S
WHEN I TALKED TO HIM, AND OF COURSE HE, I DON'T KNOW IF HE CALLED ME.
HE WORKED, HIS BROTHER WORKED FOR MY HUSBAND AND HE SOMETIMES WOULD
WORK FOR HIM.  BUT MY HUSBAND KNEW BOTH OF 'EM, AND THAT'S WHY HE
CALLED ME, MY HUSBAND CALLED ME WHEN HE GOT THIS TICKET.  CAN'T YOU
DO ANYTHING?  CAN'T YOU HELP HIM OUT?  AND I'M LIKE NO, ALL I CAN DO IS
JUST ASK THE OFFICER IF, IF HE HAS ANY PROBLEM WITH VOIDING IT.  WHICH
IS A VERY COMMON PRACTICE.  I KNOW OTHER MAGISTRATES DO IT, POLICE
OFFICERS DO IT.  IT'S BEEN DONE AS LONG AS I'VE BEEN HERE.

KG:    WHO SPECIFICALLY HAS DONE THAT?  AFTER, AFTER IT'S BEEN SWORE TO?
       AFTER A COMPLAINT'S BEEN SWORN TO, WHO HAS SPECIFICALLY THAT YOU CAN
       REMEMBER, ASKED THAT A COMPLAINT BE TAKEN OUT OF THE NORMAL JUDICIAL
       PROCESS?
MT:    WELL I DON'T REALLY KNOW UNLESS YOU'RE GETTING AT ME

KG:    NO, THAT
MT:    AND ALL I CAN TELL YOU IS BASICALLY WHAT I REMEMBER.

KG:    OKAY.
MT:    AFTER OFFICER ETRESS GAVE ME THIS.

KG:    OKAY.  AHM, WHAT I'M LOOKING AT IS YOU KNOW WHEN YOU SAID WELL IT'S
       NORMAL PRACTICE.  WELL IF IT'S A NORMAL PRACTICE AFTER THE OATH HAS
       BEEN GIVEN, WHICH JUST EARLIER YOU SAID THAT ONCE A, ONCE THE OATH
       IS GIVEN, AH, THAT IS A COURT DOCUMENT.  AND NO ONE
MT:    I SAID AFTER THE MAGISTRATE SIGNS IT, WHICH NORMALLY HAPPENS
       SHORTLY THEREAFTER.

KG:    OKAY.  LET ME ASK YOU A QUESTION, AND THIS IS YOUR OPINION.  ON A
       TRANSMITTAL WHEN THE MAGISTRATE SWEARS TO THE OFFICER AND THE
       MAGISTRATE SIGNS THE TRANSMITTAL ARE YOU SAYING THAT IS NOT, THAT
       MEANS THAT THIS, THIS CHARGE RIGHT HERE IS NOT A COURT DOCUMENT
       UNTIL IT, THE MAGISTRATE SIGNS ON THE T', THE COMPLAINT ITSELF?  IS
       THAT WHAT YOU'RE SAYING?
MT:    YOU KNOW I DON'T KNOW.  THAT'S A TECHNICALITY, I GUESS, THAT YOU'RE
       GETTING AT THERE.  I MEAN THIS WAS JUST A SIMPLE MATTER, LIKE I
       SAY MY HUSBAND ASKED ME TO TALK TO THE OFFICER.

KG:    UM, HM.
MT:    AND SO I'D KIND OF JUST BEEN ON THE LOOK OUT.  I WASN'T MAKING ANY
       SPECIAL POINT OF IT BECAUSE IT DIDN'T MEAN A THING IN HE WORLD TO ME.
       BUT THE PEOPLE WORK FOR MY HUSBAND, THEY WERE KIND OF POOR FOLKS.  THEY
       REALLY COULDN'T AFFORD TO BE PAYING A TICKET, SO I SAID I'LL ASK THE
       OFFICER.  I COULDN'T'VE CARED LESS IF HE WOULD DO IT OR NOT, BUT I KNEW
       AH HE TOLD ME WHO IT WAS, HE GAVE ME THE OFFICER I.D. SO I WAS JUST
       KIND OF ON THE LOOK OUT FOR DUHAIME.

KG:    RIGHT.
MT:    HE HA', I HAPPENED TO SEE HIM THE DAY THAT HE CAME IN AND I ASKED HIM
       ABOUT IT.  I SAID AH, HAVE YOU GOT A TICKET YOU KNOW ON A PHELPS?  AND
       HE SAYS YEAH I JUST TURNED 'EM IN TO MARY BETH, AND THEN, YOU KNOW I
       DON'T REMEMBER EXACTLY WHAT I SAID TO HIM, BUT I ASKED, YOU KNOW
       SOMETHING ABOUT IF HE HAD ANY PROBLEM WITH DOING, DOING, OF VOIDING IT.

KG:    OKAY, I UNDERSTAND.

DOTHAN/Martin & Brackin 1500
CONFIDENTIAL Subject to
Protective Order

MT:    LIKE I SAY I DON'T KNOW EXACTLY WHAT I SAID.

KG:    I UNDERSTAND.
MT:    AND HE SAID, I DON'T CARE.  HE SAID WELL I JUST PROBABLY, I'M JUST
       ASSUMING BUT AS BEST I REMEMBER, WELL I SAY I'M ASSUMING, BUT I, I KIND
       OF REMEMBER AFTER I'VE THOUGHT ABOUT THIS, AFTER ETRESS ASKED ME ABOUT
       IT AND AH I ASKED HIM IF HE HAD A PROBLEM.  HE SAID NO.  HE SAID I JUST
       GAVE IT TO MARY BETH.  SO, HE SAID HE HAD NO PROBLEM WITH IT.  JUST
       VOID IT.  HE SAID JUST, BUT I DO REMEMBER HIM TELLING ME JUST BE SURE
       YOU GET THE DEFENDANT'S COPY BACK.

KG:    UMKAY.
MT:    AND SO WHEN I, EVER I TALKED TO STEVEN I TOLD HIM I NEEDED TO GET THAT
       BACK AND SO I GAVE IT TO HIM.

KG:    OKAY.  WHAT, WHAT I'M TRYING TO DO AND I'M, I'M TRYING TO JUST
       UNDERSTAND FROM YOUR POINT OF VIEW, AH, WHEN A COMPLAINT BECOMES A
       COURT DOCUMENT AND WHEN A PERSON HAS THE ABILITY TO AH, AH RELEASE THAT
       COMPLAINT BY VOIDING OR WHAT HAVE YOU.  AND YOU JUST KIND OF CHIMED IN
       ON SOMETHING AND I WANTED TO, TO ASK YOU ABOUT IT BECAUSE I'M, WANT TO
       MAKE SURE I UNDERSTAND WHAT YOU UNDERSTAND.  AND YOU STATED THAT
       BECAUSE THE CITATION WASN'T SIGNED YOU FELT, AND, AND I'M NOT TRYING TO
       PUT WORDS IN YOUR MOUTH, BUT YOU MENTIONED WHEN THE CITATION WASN'T
       SIGNED BY A MAGISTRATE BUT I WANT TO UNDERSTAND WHEN THE TRANSMITTAL IS
       SIGNED BY THE MAGISTRATE AND THE OFFICER SWEARS THEIR OATH THAT THIS IS
       WHAT HAPPENED AND HE TURNS THE CITATIONS OVER TO THE MAGISTRATE.  I'M
       JUST TRYING TO UNDERSTAND WHAT YOU'RE SAYING.  ARE YOU SAYING THAT, AND
       LIKE I SAID CLARIFY IT FOR ME.  IT BECOMES A COURT DOCUMENT AND NO ONE
       CAN INTERRUPT THAT PROCEDURE ONCE THE TRANSMITTAL IS SIGNED OR ONCE THE
       CITATION IS SIGNED?  AS A MAGISTRATE WHICH ONE IS YOUR ANSWER?  WHICH
       ONE DO YOU BELIEVE?
MT:    WELL IT'S, IT'S NOT REALLY THAT CLEAR.  BECAUSE I'M SAYING WE WERE ALL
       THERE AND IT'S, IT'S TOTALLY UP TO THE OFFICER TO DO WHATEVER HE SEES
       FIT AND I KNOW, I MEAN I DIDN'T CARE.  IN FACT I REALLY RESENTED MY
       HUSBAND ASKING ME THIS, BUT HE KEPT ASKING ME AND SO I SAID OKAY, I'LL
       ASK HIM.  AND THAT'S WHAT I DID.  AND WE'RE ALL STILL THERE SO YOU KNOW
       WE DIDN'T THINK ABOUT ALL THIS YOU KNOW IS THIS AN OFFICIAL COURT
       DOCUMENT OR NOT AND WE CAN'T DO THIS NOW?  THE OFFICER WAS THERE, THE
       OFFICER HAD NO PROBLEM WITH IT AT ALL.  IF, IT WAS NO BIG DEAL.

KG:    UMKAY.
GC:    WHAT HA', WHAT HAPPENS WITH THAT TRANSMITTAL FORM ONCE IT'S SIGNED BY A
       MAGISTRATE?
MT:    IT'S FILED.

GC:    AND DO YOU EVER HAVE TO PRODUCE 'EM FOR ANY PURPOSE?
MT:    I GUESS IF PEOPLE, WELL INSTANCES LIKE THIS WHERE PEOPLE HAVE TO GO AND
       LOOK SOMETHING UP.  I KNOW WAY BACK WHEN I STARTED THEY USED TO KEEP UP
       WITH ALL THE TICKETS BY OFFICERS AND SOMEBODY HAD TO CHECK EVERY SINGLE
       ONE OF 'EM, BUT I DON'T THINK ANYBODY'S DONE THAT FOR YEARS.

GC:    OKAY, SO, AND WHERE WOULD THAT DOCUMENT BE HOUSED?
MT:    YOU TALKING ABOUT THE TRANSMITTAL?

GC:    UM, HM.
MT:    OUR COPIES.

DOTHAN/Martin & Brackin 1501
CONFIDENTIAL Subject to
Protective Order

GC:    UM, HM.
MT:    SOMEWHERE IN OUR OFFICE.

GC:    OKAY. WOULD YOU BE A, IT WOULD BE UNDER THE CONTROL OF THE COURT
       SYSTEM, IS THAT RIGHT?
MT:    AH, YEAH.  THE CLERKS WOULD FILE IT SOMEWHERE.

KG:    AH, FOR MY COMPREHENSION AND, AM I UNDERSTANDING THAT YOU, YOU'RE
       SAYING WHENEVER, YOU DON'T REALLY KNOW WHEN THE, THE, THE COMPLAINT IS
       A COURT DOCUMENT?
MT:    NO.

KG:    UMKAY.  HAVE YOU BEEN TAUGHT IN ANY RULES, REGULATIONS, POLICIES BY AOC
       WHEN A MAGISTRATE, WHEN THAT A COMPLAINT IS TO BE A COURT DOCUMENT?
MT:    I CAN'T REALLY SAY.

KG:    WHAT YOU MEAN IS YOU DON'T UNDERSTAND OR I MEAN YOU DON'T REMEMBER
MT:    I DON'T, I DON'T REMEMBER.

KG:    OKAY.  AH, DO YOU SPECIFICALLY, LET ME ASK THIS QUESTION FIRST.  AH, BY
       NATURE OF BEING A MAGISTRATE ONCE YOU GIVE THAT OATH, AH SWEAR TO A
       TICKET AND, AND THE TICKET HAS AH BEEN ACCEPTED BY THE MAGISTRATE
       DO YOU HAVE THE AUTHORITY TO AH INTERRUPT THE NORMAL JUDICIAL PROCESS
       OF THAT TICKET, OF THAT COMPLAINT?
MT:    NO.

KG:    AH, AND YOU SAID THAT AH IT'S AN ACCEPTED PRACTICE OR EVERY DOES IT
       AFTER IT'S BEEN SWORN TO, CAN YOU AH TELL ME SPECIFICALLY AH OTHER THAN
       THIS RIGHT HERE AH THE NAME OF ANY OTHER EMPLOYEE THAT HAS TAKEN CARE
       OF OR VOIDED OR STOPPED THE NORMAL JUDICIAL ACTION OF A COMPLAINT ONCE
       IT'S BEEN SWORN TO BY A MAGISTRATE?
MT:    I, THAT'S NOT REALLY PART OF THIS INVESTIGATION.  I'D REALLY RATHER NOT
       SAY ANY OTHER NAMES AT THIS POINT.

KG:    OKAY.  I'M GONNA ASK YOU TO PLEASE ANSWER THE QUESTION.  IF YOU DON'T
       AH, YOU'RE GONNA BE SUBJECT TO DISCIPLINARY ACTION UP AND INCLUDING
       TERMINATION.
MT:    WHAT, SO, WHAT EXACTLY WAS THE QUESTION?

KG:    THE QUESTION WAS YOU, YOU TOLD ME THAT IT'S JUST A COMMON PRACTICE THAT
       MAGISTRATES HAVE AH TAKEN CARE OR VOIDED COMPLAINTS AFTER IT'S BEEN
       SWORN TO.  YOU SAID IT WAS
MT:    NO, THAT,

KG:    YES, YES YOU DID.  THAT'S THE ONLY REASON I WROTE IT DOWN AND I'M
       REPEATING IT BECAUSE YOU SAID OH EVERYBODY DOES IT.  AND AHM, AFTER
       IT'S BEEN SWORN TO AND I WANT TO KNOW AHM SPECIFICALLY IF IT'S A COMMON
       PRACTICE I'D LIKE TO KNOW THE NAMES OF EVERYBODY THAT
MT:    NO.

KG:    HAS ACTUALLY SWORE
MT:    NOT

KG:    TAKEN CARE OF
MT:    WHAT I SAID WAS

KG:    SOMETHING

DOTHAN/Martin & Brackin 1502
CONFIDENTIAL Subject to
Protective Order

MT:   WAS NOT THAT, THAT IS A COMMON PRACTICE. WHAT I SAID IS A COMMON PRACTICE IS PEOPLE WILL GET A TICKET AND ANYONE KNOWS, NOW MAYBE THAT, MAYBE IT'S AGAINST SOME KIND OF POLICY. I'VE NEVER SEEN ANY POLICY OR ANYTHING BUT I KNOW THAT IF EVERYBODY, IT'S JUST KIND OF KNOWN, UNDERSTOOD IF YOU CAN GET TO THE OFFICER BEFORE HE TURNS THE TICKET IN THEN AND HE DOESN'T HAVE ANY PROBLEM WITH VOIDING IT, THEN THAT CAN BE DONE. THAT'S WHAT I ALWAYS UNDERSTOOD. I MEAN I WOULD HAVE NEVER DONE ANYTHING IF I THOUGHT THAT IT WAS AGAINST THE LAW OR THERE WAS A PROBLEM WITH IT.

KG:   UMKAY.

MT:   I MEAN I'VE NEVER HAD ANY KIND OF A ETHICAL QUESTION COME UP ABOUT ANYTHING THAT I DID, AND I TRY YOU KNOW TO BE VERY HONEST AND STRAIGHT FORWARD AND TO GO BY THE BOOK.

KG:   AND, AND, I'M NOT DEBATING THAT. I, I'M JUST TRYING TO MAKE SURE THAT I UNDERSTAND WHAT PROCESS TOOK PLACE IN THIS AND ALL OF IT IS RELATED TO AH YOUR DUTIES AND HOW YOU FUNCTION AND IF THERE IS A MISUNDERSTANDING THAT YOU HAVE ABOUT HOW YOU PERFORM YOUR DUTIES, I'D JUST LIKE TO KNOW IF IT WAS A MISUNDERSTANDING. AH, AH, IF AH, SO IN ORDER TO DO THAT I HAVE TO ASK THE QUESTIONS. I DON'T PARTICULARLY LIKE DOING IT, BUT I HAVE TO.

MT:   SURE.

KG:   OKAY. AH AFTER THE CITATION IS AH SWORN TO AND ACCEP', ACCEPTED I'VE BEEN INFORMED BY AOC THAT IT'S AN OFFICIAL COURT DOCUMENT AND A MAGISTRATE CAN NOT AH AH ASK SOMEONE TO VOID THE TICKET.

MT:   UMKAY WELL IF, YOU KNOW

KG:   AND SO I'M

MT:   IF THAT'S THE CASE

KG:   SO

MT:   I DID NOT, WAS NOT AWARE OF THAT, BECAUSE LIKE I SAY, IF I HAD KNOWN THAT THERE WAS ANYTHING WRONG WITH THAT, THAT WAS ILLEGAL OR ANYTHING LIKE THAT I WOULD HAVE NEVER DONE IT. BECAUSE LIKE I SAY, IT DIDN'T MATTER TO ME.

KG:   HAVE YOU EVER DONE IT BEFORE?

MT:   WHAT DO YOU MEAN, ASK, ASK SOMEBODY IF THEY'D VOID A TICKET?

KG:   AFTER IT WAS SWORN?

MT:   NO.

KG:   SO IS IT SAFE TO SAY THIS IS THE ONLY TIME YOU'VE ASKED AN OFFICER TO VOID A TICKET AFTER IT'S BEEN SWORN TO?

MT:   TO MY KNOWLEDGE.

KG:   OKAY. THIS TICKET TRANSMITTAL SPECIFICALLY SHOWS AH MR. STEVEN PHELPS AND IT SHOWS THERE'S A VOID HERE WHERE IT WASN'T EVER GIVEN A COURT DATE. DO YOU KNOW WHOSE HANDWRITING THIS IS?

MT:   NO, I DON'T. IT, I WOULD JUST SAY IT'S WHOEVER ENTERED THE TICKETS WOULD'VE PUT THOSE NUMBERS THERE.

KG:   UMKAY.

MT:   AND WHO WROTE VOID I DON'T KNOW.

DOTHAN/Martin & Brackin 1503
CONFIDENTIAL Subject to
Protective Order

KG:    OKAY. I UNDERSTAND.  HOW DID YOU RECEIVE AH THE COPY OF MR. STEVEN
       PHELPS'S TICKET THAT OFFICER, CPL. DUHAIME WROTE?  HOW DID YOU GET THAT
       IN YOUR POSSESSION?
MT:    HOW DID I GET THE DEFENDANT'S COPY?

KG:    RIGHT.
MT:    HE GAVE IT TO ME.

KG:    UMKAY, AHM AND IT WAS SHORTLY SOMETIME AFTER HE RECEIVED THE CITATION,
MT:    YES.

KG:    BEFORE, BEFORE THE ARRAIGNMENT DATE, I'M GOING TO ASSUME.
MT:    OH, SURELY IT WAS.  I DON'T KNOW WHEN BUT I'M SURE IT WAS, BUT I HAD
       ALREADY TALKED TO DUHAIME AND HE'S THE ONE THAT TOLD ME, I MEAN I
       WOULDN'T HAVE ASKED FOR THAT UNLESS HE, HE ASKED FOR IT.

KG:    WHAT WAS THE REASON THAT YOU AH RECEIVED AH THIS TICKET AND ASKED
       DUHAIME TO TAKE CARE OF IT, TO TAKE IT BACK?
MT:    WHAT, WHAT WAS THE REASON

KG:    WHAT WAS YOUR REASON FOR ASKING DUHAIME TO VOID THE TICKET?
MT:    BECAUSE LIKE I SAID MY HUSBAND ASKED ME IF I WOULD ASK HIM, BECAUSE HE
       KNEW THE BOY AND HE COULDN'T AFFORD TO PAY FOR IT.

KG:    UMKAY.  YOU SAID STEVEN HAS, HAS WORKED FOR YOUR HUSBAND IN THE PAST?
MT:    HE HAS.  I DON'T KNOW IF HE HAD WORKED AT THAT TIME BECAUSE THAT WAS
       PROBABLY, I DON'T THINK HIS BROTHER HAD BEEN THERE THAT LONG AND I
       THINK STEVEN DID, JUST HELPED OUT WHEN HE GOT IN A PINCH, BUT I THINK
       IT WAS PROBABLY AFTER THAT.

KG:    DID STEVEN DO ANY WORK OR AH WAS HE COMPENSATED AH, DID HE DO ANY WORK
       AS A RESULT OF YOU TAKING CARE OF HIS TICKET?
MT:    NO.

GC:    HOW LONG HAVE YOU KNOWN STEVEN?
MT:    UM, I GUESS MAYBE SINCE SOMETIME IN 2002.

GC:    YOU MET HIM THROUGH YOUR BUSINESS, THROUGH YOUR FAMILY BUSINESS?
MT:    THROUGH MY HUSBAND'S BUSINESS.

GC:    HOW ABOUT HIS BROTHER?
MT:    THROUGH THE BUSINESS.

GC:    OKAY.  JUST ROUGHLY HOW MANY OCCASIONS YOU'VE SPOKEN WITH STEVEN?
MT:    I, IT'D BE HARD TO SAY.  I MEAN IT WAS, HE'D COME AROUND THE SHOP,
       YOU KNOW, I'D SAY HI OR WHATEVER.  AND THEY USED TO GO TO MUD BOGS AND
       I THINK HE'S PROBABLY GONE A TIME OR TWO.  I COULDN'T BEGIN TO SAY.  I
       MEAN I'VE SEEN HIM.

GC:    GO TO MUD BOGS WITH YOUR HUSBAND?
MT:    NO, HE DIDN'T GO WITH HIM, BUT THEY WOULD BE AT THE SAME MUD BOG.

GC:    OKAY.  SO IT WAS MORE A, IT WAS NOT NECESSARILY ON A PROFESSIONAL BASIS
       ALL THE TIME?
MT:    NO.

GC:    IT WAS A SOCIAL BASIS ALSO.

DOTHAN/Martin & Brackin 1504
CONFIDENTIAL Subject to
Protective Order

MT:    HIS W', I GUESS YOU WOULD SAY WOULD BE SOCIAL BECAUSE HE DIDN'T, ALL HE
DID WAS HELP OUT KEVIN, JUST MAYBE A COUPLE TIMES WHEN HE WAS REAL BUSY
AND HE NEEDED SOMEBODY TO HELP OUT AND STEVEN I GUESS WASN'T WORKING.

GC:    OKAY.

KG:    HAVE YOU TALKED TO MARY BETH ABOUT THIS TICKET REGARDING STEVEN PHELPS
(UNINT) IN THAT SHE'S THE ONE THAT DID SIGN THE TRANSMITTAL?  DID YOU
TALK TO HER ABOUT THIS AH TICKET, SETTING IT ASIDE OR PUTTING IT OUT
SINCE SHE WAS THE ONE THAT RECEIVED IT?

MT:    WHEN DO YOU MEAN, AFTER SHE DID THAT?

KG:    IF YOU NOTICE HERE THE COURT CASE NUMBERS ARE WRITTEN DOWN HERE AND THE
MAGISTRATE WROTE THOSE AFTER, I'M ASSUMING, AFTER THE OFFICER WAS GONE.
AH, THERE WASN'T A COURT CASE NUMBER ASSIGNED, RIGHT HERE.  IT WAS
IMMEDIATELY AH INDICATED VOID, SO THAT MEANS THAT AH, AH BETWEEN,
SOMETIME BETWEEN THE TIME THAT THE MAGISTRATE RECEIVED THE TICKET AND
BEFORE THEY COULD WRITE THE COURT CASE NUMBER, IT WAS VOIDED AND MISS
MARY BETH BRACKIN DOES NOT KNOW MR. PHELPS.  SO DID YOU CONTACT HER AH
AND HAVE A CONVERSATION WITH HER ABOUT MR. PHELPS' CITATION?

MT:    WELL LIKE I SAY WE TALKED ABOUT IT BECAUSE ERIC WAS THERE AND HE HAD
JUST SWORN TO THE TICKET.  AND THAT'S WHEN HE TOLD ME WHO HE GAVE IT TO
AND THEN I'M THINKING WE WENT BACK AND TALKED TO HER. BUT I MEAN, YOU
KNOW, I DIDN'T GO AND TELL HER TO VOID IT.  I WOULD NEVER DO THAT.

KG:    UMKAY, SO YOU WERE PRESENT WHEN MARY BETH WAS SO, RECEIVING THE TICKETS
FROM ERIC?

MT:    NO, I WAS IN THE OFFICE AND I SAW HIM, I'M THINKING AS HE LEFT.
OBVIOUSLY THEY WOULDN'T HAVE WRITTEN THAT DOWN IN THERE AND ALL THAT IF
I WAS STANDING RIGHT THERE.  BUT I'M THINKING I JUST SAW HIM PASSING
THROUGH AND LIKE I SAY THIS IS A LONG TIME AGO.  A LOTS HAPPENED SINCE
THEN.  BUT I'M THINKING I SAW HIM AND I ASKED HIM, I SAID, OH, HAVE YOU
GOT A TICKET FOR SO AND SO, AND HE SAID YEAH I JUST GAVE THOSE TO MARY
BETH.  SO THEN I ASKED HIM ABOUT IT AND HE SAID, NO, I DON'T CARE, I
DON'T HAVE ANY PROBLEM WITH IT, SO THAT'S WHEN WE ALL TOGETHER WENT IN
THERE AND HE, HE SAID THAT IT WAS OKAY TO VOID IT.

KG:    OKAY.  SO UH EARLIER YOU SAID YOUR HUSBAND CONTACTED YOU ABOUT THE
TICKET INITIALLY?

MT:    UM, HM.

KG:    AND HE ASKED YOU IF YOU WOULD TAKE CARE OF IT.

MT:    HE DIDN'T SAY TAKE CARE OF IT, HE SAID JUST SEE IF YOU CAN DO ANYTHING

KG:    DO SOMETHING.

MT:    TO HELP HIM.

KG:    OKAY, I'M NOT TRYING TO PUT WORDS IN YOUR MOUTH, OKAY?

MT:    I UNDERSTAND.

KG:    AND AH HE TOLD YOU THAT, DID HE DO IT OVER THE PHONE?  HOW WERE YOU
PRESENT HERE TO SEE ERIC TAKE, TURN IN THE TICKETS AND EVERYTHING AND,
AND YOUR HUSBAND HAD TO NOTIFY YOU WHEN THE, WHEN STEVEN RECEIVED THE
TICKET.  HOW, HOW DID THAT HAPPEN SUCH A CLOSE TIME FRAME?

MT:    I DON'T KNOW.  MAYBE YOU'RE NOT UNDERSTAND, I DON'T KNOW WHAT THE TIME
FRAME WAS.  I WOULD IMAGINE WHEN STEVEN GOT THE TICKET KEVIN SAID HEY,
YOU KNOW, AND I DIDN'T TALK TO DUHAIME UNTIL HE CAME IN THE OFFICE.

14

DOTHAN/Martin & Brackin 1505
CONFIDENTIAL Subject to
Protective Order

KG:  RIGHT.
MT:  I HAD, YOU KNOW I JUST MADE A MENTAL NOTE, DUHAIME, BE ON THE LOOK OUT. AND WHEN HE CAME IN THERE, THAT'S WHEN I ASKED HIM.  AND YOU KNOW THAT'S WHEN IT CAME ABOUT.  IT DIDN'T ALL TAKE PLACE THE SAME DAY.

KG:  OKAY.  THANKS FOR CLARIFYING THAT UP FOR ME.
MT:  YEAH, CAUSE YOU CAN SEE THAT WAS A FEW DAYS AFTER IT.

KG:  RIGHT.  AH, GOING FORWARD TO BRADLEY PHELPS.  AH, I UNDERSTAND THAT AH AS YOU SAID BRADLEY USED TO WORK FOR YOUR HUSBAND AS WELL.
MT:  YES.

KG:  AH, BRADLEY RECEIVED A CITATION ON APRIL THE 14TH OF 2003, AH, TICKET NUMBER M5532102.  LOOK AT THAT TICKET AND TELL ME IF YOU RECOGNIZE THAT ONE.
MT:  YES.

KG:  OKAY.  AH, WHEN WAS THE FIRST AH, WHAT WAS THE FIRST POINT OF CONTACT THAT YOU HAD REGARDING THIS TICKET AND MR. BRADLEY PHELPS?
MT:  I DON'T KNOW WHAT DAY IT WAS.  I'M SURE AFTER HE GOT THAT I'M SURE KEVIN CALLED AND SAID SOMETHING ABOUT THAT, AND HE SAID, WELL I KNOW AT SOME POINT HE WANTED ME TO, TO SEE IF WE COULD CONTINUE IT BECAUSE THEY WERE WORKING AND IT WAS THE SAME COURT DATE, AND SO I SAID OKAY.

KG:  UMKAY.  AND AH REGARDING AH, SEE I'M THINKING OF ANOTHER QUESTION I'M NOT GONNA ASK IT.  REGARDING AH WHENEVER YOU DID CHECK ON THIS CITATION, SGT. WESTBERRY IS THE ONE THAT WROTE IT.  DO YOU, DID YOU MAKE ANY CONTACT WITH SGT. WESTBERRY?
MT:  HE, I THINK I SAW HIM WHEN HE HAD COME IN AND HE, I DON'T KNOW IF IT'S WHEN HE CAME IN OR NOT.  IT MAY HAVE BEEN SOMETIME AFTER THAT.  HE WRITES A LOT OF TICKETS SO HE COMES THROUGH OFTEN.  AND I MENTIONED SOMETHING TO HIM ABOUT IT AND AH HE'D ALREADY SWORN TO IT SO IT WAS OVER.

KG:  UMKAY.  SO YOU JUST ASKED HIM IF HE HAD SWORN TO IT ALREADY AND HE SAID YES?
MT:  YEAH.

KG:  YOU DIDN'T ASK HIM TO DO, TO, IF HE COULD AH HELP YOU OUT WITH THIS CITATION?
MT:  UM, UM.  NO.

KG:  UMKAY.  AH, DID BRADLEY DO ANY WORK ANY ROOFING WORK FOR YOU?
MT:  UM, WELL HE AH, I TALKED TO HIM ABOUT IT.  I HAD A TRAILER THAT HAD A LEAKY ROOF PROBLEM AND MY HUSBAND HAD SUGGESTED THAT I SEE IF HE AND HIS DAD WANTED TO DO IT CAUSE THEY COULD ALWAYS USE THE EXTRA MONEY. AND HE WAS PAYING ME FOR A TRUCK THAT MY HUSBAND HAD FINANCED FOR HIM AND I HAD THOUGHT MAYBE AS AN OPPORTUNITY TO WORK OFF SOME OF THAT, HE COULD YOU KNOW I THOUGHT HE MIGHT BE INTERESTED.  I, I JUST ASKED HIM. IF, IF HE DIDN'T WANTA DO IT, THAT WOULD'VE BEEN FINE, TOO, AND HE SAID YEAH THEY WOULD.  AND SO THEY AH CAME OVER, HE AND HIS DAD CAME OVER ONE DAY AND THEY CLEANED THE ROOF OFF AND THEY GOT, I THINK THEY DID THAT ALL ON THE SAME DAY.  THEY WENT AND GOT A TARP TO PUT OVER IT.

KG:  UM, HM.
MT:  AND THAT WAS IN THE, YOU KNOW THAT WAS BACK WHEN IT WAS QUITE RAINY IN THE SUMMER.  SO THEY, YEAH, THAT'S WHAT THEY HAD DONE.  THEY TOOK AND AH

DOTHAN/Martin & Brackin 1506
CONFIDENTIAL Subject to
Protective Order

FIXED IT SO THAT IT WOULD BE ALL RIGHT TEMPORARILY WHILE IT RAINED. BUT THEY WEREN'T ABLE TO GET BACK THERE AND IT WAS RAINY AND I NEEDED TO GET IT FIXED SO AFTER A WHILE WHEN THEY HADN'T COME BACK I CALLED 'EM ONE DAY AND TOLD 'EM THAT THEY DIDN'T HAVE TO WORRY ABOUT IT, THAT I GOT SOMEBODY ELSE THAT WAS GONNA FIX IT FOR ME AND THAT BRAD JUST NEEDED TO GO AHEAD AND MAKE HIS TRUCK PAYMENTS.  OF COURSE I DEDUCTED WHATEVER THE PRICE OF THE TARP AND TIME YOU KNOW, MONEY FOR THEIR TIME THAT THEY'D SPENT THERE.

KG:   UMKAY.  AH, REGARDING THE, THE AH TICKET AND HIS ALLEGATIONS, THE ALLEGATIONS ARE THAT YOU WERE TO AH TAKE CARE OF THE TICKET IN EXCHANGE FOR THE WORK BEING DONE ON THE TRAILER.
MT:   THAT IS NOT CORRECT AT ALL.

KG:   OKAY.  WHEN, WHEN YOU CALLED THEIR HOMES AFTER THE, THE ROOF HASN'T, HADN'T BEEN FINISHED, AH WHO DID YOU SPEAK TO?
MT:   AH, I THINK HIS SISTER MIGHT HAVE ANSWERED THE PHONE AND THEN I TALKED TO HIS DAD.  AND THAT'S WHEN I TOLD HIM THAT, THAT THEY DIDN'T HAVE TO WORRY ABOUT IT BECAUSE I WAS, I HAD SOMEBODY ELSE THAT WAS GONE FIX IT FOR ME.

KG:   DID YOU, DO YOU EVER REMEMBER TALKING TO PHYLLIS, THE MOTHER?
MT:   NO.

KG:   UMKAY.
MT:   I MEAN I'VE TALKED TO HER BEFORE BUT I DIDN'T TALK TO HER ON THAT OCCASION.

KG:   ABOUT WHEN WAS THAT?  DO YOU REMEMBER?
MT:   UM, I'M THINKING IT WAS PROBABLY SOME TIME AROUND JUNE.

KG:   UMKAY.  AH, IT'S ALLEGED THAT WHEN YOU SPOKE WITH PHYLLIS YOU TOLD HER TO AH REMIND BRADLEY ABOUT THE TICKET.  AT THIS POINT THE TICKET HAD NOT, BRADLEY HAD NOT RECEIVED ANY JUDICIAL NOTICE TO BE IN COURT, APPEAR IN COURT, OR ANYTHING, EVEN PAST THE APPEARANCE DATE.  NOW AH PHYLLIS STATED THAT AH,
MT:   I THINK HER NAME'S PATTY.

KG:   IS IT PATTY?  THAT'S WHAT YOU, OKAY.  LET'S JUST SAY BRADLEY'S MOTHER, OKAY?  AH, SHE STATED THAT AH WHEN YOU CALLED AH YOU TOLD HER TO MAKE SURE SHE TOLD BRADLEY TO REMEMBER THE TICKET.
MT:   I NEVER TALKED TO HER THAT DAY.

KG:   YOU NEVER TALKED TO HER THAT DAY?
MT:   NOW LIKE I SAY I'VE TALKED TO HER OTHER TIMES BECAUSE I WOULD OFTEN HAVE TO CALL BECAUSE HE WOULD USUALLY BE LATE WITH HIS PAYMENTS, AND I HAVE TALKED TO HER ON, USUALLY EVERY MONTH I'D HAVE TO CALL AND HAVE HER YOU KNOW REMIND HIM THAT HE NEEDED TO GET IT PAID.

KG:   UM, HM.
MT:   AND I MEAN I MAY HAVE SAID SOMETHING AT SOME OTHER TIME, BUT I DID NOT TALK TO HER ON THIS PARTICULAR OCCASION.  I TALKED TO HIS DAD.

KG:   OKAY.  AH, AND WHEN YOU TALKED TO HIM AH, WHAT WAS YOUR CONVERSATION AGAIN NOW WITH HIM?
MT:   JUST, I TOLD HIM THAT THEY DIDN'T HAVE TO WORRY ABOUT FINISHING THAT BECAUSE I HAD SOMEBODY ELSE THAT WAS GONE DO IT AND I, I NEED, WELL THE

DOTHAN/Martin & Brackin 1507
CONFIDENTIAL Subject to
Protective Order

MAIN THING WAS BECAUSE I NEEDED HIM TO FINISH PAYING HIS TRUCK PAYMENT BECAUSE I WAS HAVING TO MAKE PAYMENTS ON IT.  SO THAT WAS, YOU KNOW THAT WAS THE ONLY REASON THAT I CALLED JUST TO LET HIM KNOW HE NEEDED TO GO AHEAD AND PAY ME WHAT HE OWED.

KG:    DID YOU AH TELL BRADLEY'S FATHER THAT THE TICKET WOULD RE-APPEAR IF HE DIDN'T FINISH DOING THE ROOFING JOB?

MT:    NO.

KG:    OKAY.  AH, DID BRADLEY COME TO YOUR HOME, AH SUBSEQUENTLY SOME TIME AFTER YOU HAD THE CONVERSATION WITH HIS FATHER?

MT:    YES.

KG:    AH, DID HE DO ANY WORK FOR YOU THEN?

MT:    NO.

KG:    OKAY.  DID YOU AND HIM HAVE A CONVERSATION ABOUT THE WORK TO BE DONE ON THE ROOF?

MT:    NO.  I MEAN I HAD ALREADY TOLD HIS DAD THAT, THAT I DIDN'T NEED 'EM TO DO IT.  AND WE MAY HAVE, I DON'T KNOW IF WE DISCUSSED THAT OR NOT.  HE WAS MAINLY THERE.  HE CAME TO BRING ME SOME MONEY.

KG:    UMKAY.  THE CONVERSATION DIDN'T COME UP ABOUT THE ROOF WHEN HE CAME TO TALK TO YOU?

MT:    WELL, YEAH IT DID, BECAUSE HE WAS TELLING ME WHAT THEY PAID FOR A TARP AND WE WERE DISCUSSING YOU KNOW HOW MUCH CREDIT I SHOULD GIVE HIM FOR IT.  YEAH, AND HE MENTIONED THE PRICE ON THE TARP WHICH I THOUGHT WAS PRETTY EXPENSIVE, BUT HE HAD, STILL HAD IT IN HIS POCKET, OR IN HIS, HIS WALLET,

KG:    HAD THE RECEIPT IN HIS WALLET?

MT:    YEAH.  HE HAD THE RECEIPT AND HE SHOWED IT TO ME SO I SAID OKAY.

KG:    WHERE DID YOUR CONVERSATION WITH HIM TAKE PLACE AT?

MT:    AT MY HOUSE.

KG:    OUTSIDE, INSIDE?

MT:    OUTSIDE.

KG:    OKAY, WAS THERE ANYONE ELSE WITH HIM?

MT:    SOMEBODY WAS IN THERE, BUT I, I COULDN'T REALLY SEE IN THE TRUCK WHO IT WAS.

KG:    AH, HE, DID YOU ASK HIM FOR THE ORIGINAL RECEIPT TO KEEP FOR YOUR OWN RECORDS?

MT:    I DON'T REMEMBER.  I'M THINKING I PROBABLY DID, CAUSE I WOULD'VE WANTED IT, BUT HE MAY HAVE WANTED TO KEEP IT.  I, I REALLY DON'T REMEMBER THAT.

KG:    UMKAY.  AH, DID YOU EVER MENTION TO HIM THAT THE TICKET WAS GOING TO REAPPEAR SINCE HE DIDN'T, DID NOT FINISH THE JOB?

MT:    NO.

KG:    OKAY.  AH, CAN YOU TELL ME IF YOUR HANDWRITING'S ANYWHERE ON THIS CITATION?

MT:    OKAY.  THAT WOULD BE MINE.

DOTHAN/Martin & Brackin 1508
CONFIDENTIAL Subject to
Protective Order

KG:  THE O O T.

MT:  YEAH, THE 9/16/03, I WOULD'VE CONTINUED IT AND OF COURSE I'M FRESHER ON
THIS NOW CAUSE I'VE ALREADY BEEN OVER THIS WITH ETRESS, BUT AH, THAT
WAS PROBABLY THE DAY, I'M ASSUMING THAT, THAT WAS THE TIME THAT THEY
CALLED AND THEY WERE WORKING OUT OF TOWN AND SO I CONTINUED IT AND
ACTUALLY I PUT IT UP HERE, BUT THEN I PUT IT DOWN HERE BECAUSE THAT WAS
A TRIAL DATE.  AND THAT WAS NORMALLY FOR ARRAIGNMENT DATES.  SO THAT'S
WHY I WROTE DOWN HERE TRIAL SO THEY'D KNOW THAT IT WAS A TRIAL AND IT
WOULDN'T GET IN THE WRONG PLACE.

KG:  OKAY.  WHO SPECIFICALLY CALLED YOU AH AND TOLD YOU THAT THEY WOULD BE
OUT OF TOWN?

MT:  MY HUSBAND.

KG:  UMKAY.  OKAY.  HOW ABOUT THE OTHER WRITING HERE?  DO YOU KNOW WHO THAT
BELONGS TO?

MT:  I COULDN'T REALLY SAY FOR SURE.

KG:  TO YOUR KNOWLEDGE WAS, IS THERE ANY OTHER AH PAPERWORK THAT, LET ME GO
BACK, AFTER A PERSON DOESN'T APPEAR FOR COURT, THEIR ARRAIGNMENT, WHAT
IS THE NORMAL PROCESS THAT OCCURS?

MT:  THEY WOULD RECEIVE A, IF THEY DON'T SHOW UP ON THE FIRST ARRAIGNMENT
DAY, A 6 A NOTICE IS SENT OUT.

KG:  OKAY.  WHAT IS THAT?

MT:  THAT IS A NOTICE THAT CONTINUES IT.  IT'S KIND OF LIKE A COURTESY
NOTICE THAT WE DO.  ALL COURTS DON'T DO IT BUT OUR COURT DOES.  WE
CONTINUE IT FOR NORMALLY FOR TWO WEEKS. IT'S NOT ALWAYS TWO WEEKS NOW,
BUT NORMALLY IT'S FOR TWO WEEKS AND THE NOTICE IS SENT TO THE PERSON'S
LAST KNOWN ADDRESS.

KG:  WILL AH THE MAGISTRATE'S OFFICE RETAIN A COPY OF THAT NOTICE?

MT:  NO.

KG:  OKAY.  AH, WHY NOT?

MT:  JUST NOT, I DON'T KNOW.

KG:  OKAY.

MT:  IT'S JUST NOT SOMETHING WE KEEP A COPY OF.

KG:  WELL, HOW DO YOU KNOW THAT THE NOTICE WAS MAILED?

MT:  WELL, FROM LOOKING AT THIS, IT SAYS THAT ONE WAS MAILED ON 10/28. BUT
YOU KNOW I DON'T, I DON'T KNOW HOW THAT GOT THERE BECAUSE BACK, I KNOW
THAT HE GOT A NOTICE LAST YEAR, BECAUSE HE SPOKE TO MY HUSBAND ON THE
PHONE AND HE WAS, HE WAS MAD ABOUT THAT, AND SAYING SO', I GUESS THAT
HE THOUGHT THAT THIS TICKET WAS TAKEN CARE OF.  I DON'T KNOW WHERE HE
GOT THAT IDEA.  I NEVER TOLD HIM I WAS GONNA DO THAT.  BUT HE WAS MAD
SO, BECAUSE HE HAD JUST GOTTEN A NOTICE SAYING SOMETHING ABOUT HIS CASE
HAD BEEN CONTINUED.   AND THAT WAS THE LAST I HEARD OF IT.

KG:  UMKAY.  AHM, ISN'T IT A LITTLE BIT ODD THAT FROM JUNE, THE TICKET NEXT
COURT DATE HE WAS GIVEN WAS ALL THE WAY IN OCTOBER?  ISN'T THAT OUT OF
THE ORDINARY?

MT:  NO.

KG:  IT'S NOT.

MT:  NO, NOT AT ALL.

18

DOTHAN/Martin & Brackin 1509
CONFIDENTIAL Subject to
Protective Order

KG:    OKAY. WHY NOT?

MT:    IT'S JUST NOT OUT OF THE ORDINARY. IT'S NOT UNUSUAL. CASES, CASES GET CONTINUED ALL THE TIME.

KG:    SO YOU SAID THE NORMAL COURSE OF ACTION IS FOR THIS TO BE POSTPONED FOR TWO WEEKS AND THEY'RE GIVEN A, AH, A 6 A?

MT:    THAT'S IF THE PERSON DOESN'T COME TO COURT THEY DON'T REQUEST CONTINUANCES OR ANYTHING LIKE THAT. IF, IF WE NEVER HEARD FROM THE DEFENDANT AND THEY DIDN'T COME TO COURT, WE'D MAIL OUT A 6 A NOTICE THAT WOULD CONTINUE IT FOR TWO WEEKS. THAT'S SOMETHING ELSE THAT'S CHANGED.

KG:    AND SO FOUR MONTHS LATER HE RECEIVES HIS FIRST, HE RECEIVES A, A DATE TO APPEAR IN COURT WHICH WOULD, SHOULD HAVE BEEN HIS 6 A DATE, RIGHT?

MT:    I DON'T KNOW. I DON'T KNOW THAT HE RECEIVED THAT. THE ONLY REASON I'M SAYING I KNOW ABOUT THE ONE LAST YEAR BECAUSE MY HUSBAND TALKED TO HIM AFTER HE RECEIVED IT.

KG:    BUT YOU'RE SAYING THAT IT IS NOT ODD FOR HIM TO RECEIVE THIS DATE FOUR MONTHS AFTER WHEN THE NORMAL PROCESS IS THEY WOULD NORMALLY RECEIVE AH THIS LETTER AND GIVEN ANOTHER COURT DATE IN TWO WEEKS?

MT:    NO. THAT'S NOT AT ALL UNUSUAL. AND I THINK YOU COULD PROBABLY HAVE THE AUDITOR RUN A REPORT AND YOU COULD SEE HOW OFTEN AND HOW LONG CASES ARE CONTINUED. I MEAN THAT, THAT'S NOT ANYTHING UNUSUAL.

KG:    OKAY. WELL, I'M NOT GONNA DIFFER WITH YOU. I'VE JUST TALKED TO OTHER EMPLOYEES THAT WORK OVER THERE AND WHO'VE BEEN THERE JUST AS LONG AND THAT, IF THE NORMAL COURSE OF PR', AH OF EVENT IS SUPPOSED TO BE AFTER TWO WEEKS, AH, THEY'RE GIVEN A TWO WEEK COURT APPEARANCE IF THEY DIDN'T SHOW RIGHT THEN, AND ALL OF A SUDDEN THERE'S A FOUR MONTH DIFFERENCE, TWO WEEKS AND FOUR MONTHS IS A BIG DIFFERENCE, SO WE'LL, WE'LL GO AHEAD AND I HAVE YOUR ANSWER AND I APPRECIATE THAT. YOU HAVE ANYTHING?

GC:    JUST AH, HAVE YOU EVER KNOWN OF ANY TIME CONSTRAINT FROM A DATE OF ARRAIGNMENT FROM THE, FROM THE WHEN THE TICKET WAS ISSUED TO THE DATE OF ARRAIGNMENT, EVER?

MT:    WHAT?

GC:    HAS THERE EVER BEEN AN, A TIME CONSTRAINT? HAVE YOU EVER BEEN ADVISED OF A TIME CONSTRAINT?

MT:    YOU MEAN LIKE THERE'S A CERTAIN AMOUNT OF TIME?

GC:    YES.

MT:    NO.

GC:    OKAY.

MT:    AND IT'S DIFFERENT WITH ALL OFFICERS, CAUSE SOME OF 'EM MIGHT GIVE 'EM 2 OR 3 WEEKS. SOME OF 'EM'LL GIVE 'EM 5 OR 6 MONTHS. IT'S JUST ALL UP TO THE OFFICER.

KG:    ACCORDING TO THIS WHEN WAS THE AW ISSUED? (TURN TAPE OVER)
       WE'RE IMMEDIATELY TAKING BACK UP AH, RIGHT AT WHERE I ASKED HER AH TO TAKE A LOOK AT THE CITATION AND SEE WHEN THE AW WAS ISSUED. I'M SORRY, GO AHEAD.

MT:    LIKE I SAY I CAN'T REALLY TELL FROM LOOKING AT THIS. ALL I CAN GO BY IS THIS 7/27 DATE WHICH IS RIGHT UNDERNEATH WHERE SOMEBODY WROTE THE AW

DOTHAN/Martin & Brackin 1510
CONFIDENTIAL Subject to
Protective Order

NUMBER, BUT I CAN'T TELL BY LOOKING AT THIS.  NOW IF I SAW THE AW THEN I MIGHT BE ABLE TO TELL YOU.

KG:   OKAY.  THE CONVERSATION THAT YOU HAD AH WITH AH AH BRADLEY PHELPS'S FATHER, AH, AND HIS OTHER RELATIVE AT THE HOUSE ACCORDING TO THEIR STATEMENTS WAS ACTUALLY ON THE 4TH OF JULY WEEKEND.  AH, THE AW HERE WAS ISSUED 7/27/04.  AH, EXCUSE ME, AND WITH, AFTER THE AW WAS ISSUED, MR. AH PHELPS WAS ARRESTED, ARRESTED IN AH DECEMBER IF I'M CORRECT OF 04.  AND, AND MADE TO POST BOND.  AFTER HE, HE WAS ARRESTED HE WENT TO THE MAGISTRATE'S OFFICE AND SPOKE TO MISS MCLAIN WHO WAS AT THE FRONT WINDOW.  DO YOU REMEMBER HAVING A CONVERSATION WITH MISS MCLAIN AH AFTER MR. BRADLEY PHELPS LEFT?

MT:   I REMEMBER HEARING HIM OUT THERE AND I THINK, I DON'T REMEMBER WHAT I SAID TO HER BUT I THINK I ASKED HER, I COULDN'T HEAR ALL HE WAS SAYING, BUT I COULD HEAR HIM OUTSIDE THERE, AND I ASKED HER YOU KNOW WHAT HE WAS TRYING TO DO OR SOMETHING LIKE THAT, BUT IT, IT WAS JUST VERY BRIEF, NOTHING TO IT.  SHE CAME IN MY OFFICE AFTER THAT LOOKING FOR SOME PAPERWORK.

KG:   DID SHE TELL YOU THAT AH HE HAD STATED THAT YOU WERE SUPPOSED TO TAKE CARE OF THE TICKET AND HE DIDN'T UNDERSTAND WHY HE WAS ARRESTED?  DID MISS MCLAIN TELL YOU THAT?

MT:   I DON'T THINK SO.

KG:   OKAY.  WHAT DID SHE SAY TO YOUR KNOWLEDGE?

MT:   I DON'T REALLY REMEMBER SAYING MUCH OF ANYTHING.  I MEAN IT WAS JUST LIKE SHE CAME, SHE PASSED THROUGH THERE, SHE WAS LOOKING FOR SOME PAPERWORK AND I ASKED HER ABOUT CAUSE I HAD OVERHEARD HIM.  ACTUALLY I HAD BEEN OUTSIDE AND I SAW HIM COME IN THE DOOR, AND THEN I COULD HEAR A LITTLE BIT OF IT AND I ASKED HER, CAUSE I HEARD HIM SAYING SOMETHING ABOUT, ABOUT MARY TURNER'S ROOF OR SOMETHING LIKE THAT, BUT SHE JUST KIND OF JUST BLEW IT OFF AND DIDN'T REALLY, DIDN'T REALLY HAVE ANYTHING TO SAY ABOUT IT.

KG:   OKAY.  ACCORDING TO THIS TICKET, WHEN DID MR. PHELPS PLEAD GUILTY? TO THIS CHARGE?

MT:   ACCORDING TO THIS TICKET THERE'S NOT A GUILTY PLEA.

KG:   OKAY.  ACCORDING TO THIS CASE NUMBER WHICH IS THE SAME ONE, THERE'S A G HERE UNDER THE DISPOSITION.  WHAT DOES THAT STAND FOR? TO YOUR KNOWLEDGE?

MT:   GUILTY.  IT LOOKS ACCORDING TO THIS, SOMEONE PUT IN THERE THAT HE PLED GUILTY.

KG:   DID YOU PUT THAT IN THERE?

MT:   NO, I DID NOT.

KG:   OKAY.

MT:   BUT YOU COULD PROBABLY FIND OUT WHO DID.

GC:   DO YOU KNOW WHO PUT THAT IN THERE?

MT:   I DO NOT.

KG:   DO YOU KNOW IF AH MR. PHELPS HAD, HAD AN ATTORNEY AH REPRESENTED, TO REPRESENT HIM ON THIS CITATION?

MT:   IT IS MY UNDERSTANDING THAT HE DID.

DOTHAN/Martin & Brackin 1511
CONFIDENTIAL Subject to
Protective Order

KG: OKAY. AND HOW DO YOU UNDERSTAND THAT? EXCUSE ME.
MT: WELL I SEE THAT IT SAYS ON THERE THAT HE HAS ONE.

KG: UMKAY.
MT: AH, HE, HE MADE A CALL TO MY FATHER-IN-LAW SOMETIME I DON'T KNOW WHEN, IF IT WAS LAST YEAR, FIRST OF THIS YEAR, SOMETHING LIKE THAT, BUT HE MADE A CALL TO HIM, AND, AND HE WAS MENTIONING TO HIM THAT HE HAD AN ATTORNEY WHICH YOU KNOW I JUST THOUGHT, I DON'T KNOW IF HE'S TRYING TO, I DON'T KNOW WHAT HE'S TRYING TO DO.

KG: RIGHT.
MT: AND HE CALLED ME THE DAY BEFORE I WAS PUT ON ADMINISTRATIVE LEAVE WHICH I THOUGHT WAS RATHER UNUSUAL CAUSE I HAVEN'T, HAVEN'T TALKED TO HIM IN MONTHS. AND HE CALLED ME TO TELL ME THAT HIS ATTORNEY TOLD HIM, WHAT EXACTLY DID HE SAY? SOMETHING LIKE HIS ATTORNEY TOLD HIM TO CALL AND JUST SEE IF WE COULD WORK IT OUT. SO THAT HE WOULDN'T HAVE TO COME TO COURT.

KG: RIGHT. OKAY.
GC: WHAT WAS YOUR REPLY TO THAT?
MT: I TOLD HIM THAT I COULDN'T DO ANYTHING. THAT IT WASN'T UP TO ME. I TOLD HIM THAT WHEN THE ATTORNEY AND THE JUDGE ARE IN COURT THEY CAN, YOU KNOW THEY CAN MAKE DEALS AND STUFF. I SAID, BUT I TOLD HIM THAT THERE WAS NOTHING I COULD DO, THAT IT WAS OUT OF MY HANDS. AND HE, HE REPEATED THE SAME THING 2 OR 3 TIMES, BUT I TOLD HIM THERE WASN'T ANYTHING I COULD DO.

KG: HAVE, SINCE BEING PLACED ON ADMINISTRATIVE LEAVE, HAVE YOU HAD ANY AH CONVERSATION WITH ANY OF THE MAGISTRATES AH OR ANY OF THE MUNICIPAL COURT EMPLOYEES?
MT: I, DID TALK TO UH SARAH AND MARY BETH. THEY GOT PERMISSION TO TAKE ME TO LUNCH FOR MY BIRTHDAY.

KG: AH, PRIOR TO THAT? PRIOR TO YOUR BIRTHDAY?
MT: I'VE SEEN MARY BETH. WE GO TO THE SAME CHURCH YOU KNOW SO I'VE SEEN HER YOU KNOW ON THAT OCCASION.

KG: OKAY, YOU STILL ATTEND THE SAME CHURCH?
MT: WELL, SHE GOES TO ANOTHER CHURCH, BUT HER MOTHER-IN-LAW STILL GOES THERE SO THEY COME AND VISIT FREQUENTLY.

KG: UMKAY. HAVE YOU HAD A CONVERSATION WITH MARY BETH PRIOR TO GOING TO LUNCH WITH HER AND MRS. SARAH FOWLER?
MT: JUST I WOULD SAY PROBABLY AT CHURCH, THAT WOULD'VE BEEN IT.

KG: UMKAY. HAVE YOU DISCUSSED THIS CASE OR HAS SHE, HAVE YOU DISCUSSED AH YOUR AH, AH BEING AH PLACED ON ADMINISTRATIVE INVESTIGATION OR ANY OF THE AH ALLEGATIONS REGARDING THIS TO MARY BETH?
MT: NO, NONE OTHER THAN JUST YOU KNOW THAT I WAS OFF AND HOW WAS I DOING AND STUFF LIKE THAT? BUT I MEAN WE DIDN'T EVEN KNOW WHAT IT WAS

KG: RIGHT.
MT: UNTIL A COUPLA WEEKS AGO.

KG: RIGHT.
MT: OTHER THAN WHAT RICKY SAID.

21

DOTHAN/Martin & Brackin 1512
CONFIDENTIAL Subject to
Protective Order

KG:   DID UH WAS THAT FROM THE WEB SITE OR IN PERSON?
MT:   THE WEB SITE, NO, I HAVE NOT TALKED TO RICKY.

KG:   AH, DID, HOW MANY TIMES DID AH YOU HAVE A CONVERSATION WITH MARY BETH
      SINCE YOU'VE BEEN PLACED ON ADMIN. LEAVE PRIOR TO YOUR BIRTHDAY?
MT:   MAYBE A COUPLA TIMES.

KG:   AH, DID YOU GIVE HER INFORMATION REGARDING ANY PROCEDURES AT WORK?
MT:   INFORMATION?

KG:   UM, HM.
MT:   LIKE WHAT?

KG:   THAT'S, THAT'S, I'M LEAVING IT LIKE THAT.
MT:   WELL I MEAN I D', I'M TRYING TO, NO.

KG:   OKAY.
GC:   HOW ABOUT ANYBODY ELSE, DID YOU, DID YOU TALK WITH ANYBODY ELSE THAT
      YOU'RE EMPLOYED WITH OTHER THAN MARY BETH?
MT:   ABOUT THIS CASE?

GC:   UM, HM.

KG:   OR, I THINK SHE MENTIONED, YOU MENTIONED SARAH FOWL', WELL, I JUST
      REMEMBER YOU SAID YOU TALKED TO HER BUT I DIDN'T KNOW
MT:   AT LUNCH

KG:   IF IT WAS ABOUT, NO, PRIOR, WE UNDERSTAND, WE, Y'ALL HAD LUNCH
      TOGETHER AND EVERYTHING
MT:   YES.

KG:   BUT AH, AH, YOU DID MENTION MRS., MRS. FOWLER AND I WANTED TO MAKE SURE
      THAT,
MT:   OH, NO, I HAVEN'T TALKED TO HER.  THE ONLY TIME I TALKED TO HER WAS ON
      MY BIRTHDAY.

KG:   WAS AT LUNCH.  OKAY.  I WANTA MAKE SURE I.
GC:   OTHER THAN THOSE TWO WAS ANYBODY ELSE THERE AT YOUR
MT:   MY SISTER AND SOME FRIENDS OF HERS FROM WORK.

GC:   ALL RIGHT.
KG:   I HAVE FINISHED MY QUESTIONS.  IS THERE SOMETHING THAT I CAN ANSWER FOR
      YOU RIGHT NOW, AH, IF I CAN ANSWER THAT I'LL ANSWER IT, IF I CAN'T I'LL
      TELL YOU I CAN'T.  OKAY, IF THERE, IS THERE A QUESTION THAT YOU MAY
      HAVE FOR ME AH THAT I COULD ANSWER?
MT:   I GUESS REALLY THE MAIN THING IS IF YOU KNOW I WAS CONCERNED WHEN
      ETRESS TOLD ME THAT THERE WAS A CRIMINAL INVESTIGATION.  I MEAN CAN YOU
      TELL ME IF THERE IS

KG:   OKAY AH
MT:   I MEAN DO I NEED TO BE PREPARED FOR THE POLICE TO COME TO MY HOUSE?

KG:   LET ME SAY THIS FIRST OF ALL.  WHEN, WHENEVER THIS CASE STARTED IT
      STARTED OUT ADMINISTRATIVELY BECAUSE AH I WAS JUST TOLD THAT THERE WAS
      POSSIBLE MISCONDUCT DEALING WITH THE HANDLING OF MR. BRADLEY PHELPS'
      TICKET.  OKAY?  AFTER I CONTINUED INVESTIGATING IT, IT BEGAN TO APPEAR
      THERE COULD BE A POSSIBLE SOMETHING CRIMINAL AH REGARDING AH THE, THE,

DOTHAN/Martin & Brackin 1513
CONFIDENTIAL Subject to
Protective Order

THE SITUATION, SO AT THAT TIME I STOPPED MY ADMINISTRATIVE INVESTIGATION. AND YOU'D ALREADY RECEIVED MY NOTICE THAT THERE WAS AN ADMINISTRATIVE INVESTIGATION. AT THAT POINT I HAD NO IDEA THAT THERE COULD BE A POSSIBILITY OF AH AH CRIMINAL MISCONDUCT. ONCE THAT CAME TO ME, I TURNED THE INVESTIGATION OVER TO THE CRIMINAL INVESTIGATOR. AH, TO DO AN INDEPENDENT INVESTIGATION ON THEIR OWN AND ONCE THEY FINISHED THEIR INDEPENDENT CRIMINAL I HAD TO PROCEED ON WITH MY ADMINISTRATIVE, OKAY? AH, AND TO I GUESS AH, FOR THE RECORD, AH, THE INVESTIGATOR ETRESS IS GOING TO AH STILL BE IN AH, THAT, THAT'S HIS INVESTIGATION. I'M SUPPOSED TO GET HIS INVESTIGATIVE REPORT BUT NOTHING AH THAT I G', NOTHING THAT I HAVE TODAY AS PART OF YOUR STATEMENT WILL BE GIVEN TO HIM AS FAR AS HE'S NOT PRIVY TO AH THIS INTERVIEW.

MT:   RIGHT,

KG:   OKAY?
MT:   BUT, RIGHT. I UNDERSTAND THAT'S WHAT THAT PAPER SAID, BUT HAVE YOU NOT RECEIVED HIS INFORMATION YET?

KG:   I HAVE NOT RECEIVED HIS INFORMATION YET.
MT:   OKAY, I THOUGHT THAT HE WAS THROUGH AND HAD

KG:   HE IS FINISHED.
MT:   GIVEN THAT TO YOU.

KG:   HE IS FINISHED AND, AND UNLESS YOU WANT THIS ON RECORD I CAN END THE, END THE RECORDING, BUT I CAN TELL YOU THE PROCESS OF OUR CRIMINAL INVESTIGATION, WHAT IT GOES THROUGH, BUT IT HAS NOTHING TO DO WITH THIS, THIS INTERVIEW. THE,
MT:   WELL, JUST, I MEAN WE AS WELL JUST LEAVE IT ON.

KG:   AH, THE CRIMINAL INVESTIGATION IS TOTALLY UP TO INV. ETRESS. AH, IT'S TURNED OVER TO ME AFTER AH, AFTER I'M FINISHED. I MEAN, IT'S TURNED OVER TO ME AFTER THEY GET FINISHED WITH THE CRIMINAL INVESTIGATION. THEY HAVE STATEMENTS, THEY HAVE INTERVIEWS, THEY HAVE SO MUCH PAPERWORK TO DO AN INVESTIGATIVE REPORT FOR ME THIS THICK, SO WITH THE INVESTIGATION OVER, AH, I GUESS YOU WOULD BE MORE AH, IT WOULD BE BETTER SUITED FOR HIM TO ANSWER THE QUESTION BECAUSE AH IF AS LONG AS HIS ACTIVE LEADS ARE OVER AND HE'S FINISHED, HE MAY HAVE SUPPLEMENTS THAT HE NEEDS TO DO, AND THIS IS JUST SPECULATION. THERE MAY BE, I DON'T NOW HOW MANY PEOPLE, YOU KNOW, HE ENTERED AND EVERYTHING BUT IT WILL COME TO ME AH AS FAR AS THE CRIMINAL INVESTIGATION.
MT:   OKAY. WILL THERE BE ANY KIND OF DECISION ON YOUR PART OR ANYTHING UNTIL BEFORE YOU RECEIVE HIS INFORMATION? I MEAN DOES WHAT HE FIND,

KG:   A PART OF THIS?
MT:   YEAH.

KG:   YES. THE, THE ADMIN, OF COURSE WE'RE TALKING ABOUT YOUR PERFORMANCE FOR YOUR DUTIES DEALING WITH THE ADMINISTRATIVE INVESTIGATION. IF THERE'S A CRIMINAL ALLEGATION THAT HAS TO DO WITH YOUR PERFORMANCE FOR YOUR DU', OF DUTY AH AS BEING EMPLOYED WITH THE CITY OF DOTHAN, SO YES. AH, IS THERE, IS THERE ANYTHING YOU'D LIKE TO SAY THAT I HAVEN'T ASKED YOU ABOUT REGARDING THE QUESTIONS THAT I'VE ASKED YOU REGARDING MR. PHELPS AND THE, BOTH PHELPS, STEVEN AND BRADLEY?
MT:   I CAN'T THINK OF ANYTHING. I'LL PROBABLY THINK OF SOMETHING WHEN I GET OUT OF HERE, BUT I CAN'T THINK OF ANYTHING RIGHT NOW.

23

DOTHAN/Martin & Brackin 1514
CONFIDENTIAL Subject to
Protective Order

KG:     UMKAY.   THIS IS GONNA BE THE END OF THIS STATEMENT.   TIME IS 2:32 P.M.

DOTHAN/Martin & Brackin 1515
CONFIDENTIAL Subject to
Protective Order

MCK152                    THE CITY OF DOTHAN MUNICIPAL COURT                3/03/05
Wrnt/Case Mode: INQUIRY      NAME FILE MAINTENANCE                        11:03:11
Name Mode: INQUIRY       Seq.No.: 102465                              Juv/Youth:
NAME:(last) PHELPS .......... (first) BRADLEY ........ (middle) THOMAS ........
A.K.A.:     ..............      ..............      ..............
  )ress:    . 1204 ... PROVIDENCE ................. RD. ...........
            Str# Dir        Street Name              Sfx  Modifier
            1204 PROVIDENCE RD ................        Phone:  ...........

            SLOCOMB ............ AL . 36375 . ....    Prev Addr?  . .( ./.Y.)
Sex M   Race W   Ht 5 ft 9 in   Wt 140   Eyes GRN  Hair BRN  Birth 12/07/1985
Drivers License: St AL No. 7263105 ........... Type P .(P/C).  SSN  ..........

Employer: .................................................
          .................................................
Address:  .................................................
          .................................................
          Str# Dir        Street Name              Sfx  Modifier
                                                   Phone:  ...........
          .................................................
          .................................................
Remarks:  .................................................
          .................................................
          .................................................

F3=Exit F12=prev screen   F4=Image   F9=Balance Inq              Enter=Continue
                                                                 F21=Jail

DOTHAN/Martin & Brackin 1516
CONFIDENTIAL Subject to
Protective Order

```
MCR154                  THE CITY OF DOTHAN MUNICIPAL COURT               3/03/05
MODE: INQUIRY               CASE FILE MAINTENANCE                       11:03:19
Defendant: PHELPS, . . . . . . . . . . BRADLEY, . . . . . . . THOMAS, . . . . . . .    RMV: .
Case No.: TR 03 0043 90    1
ARREST INFORMATION Type: ___ (_/AW/AP/OB)         Original PDCN: .
  : 4/14/2003   Time: 16:19   Chg: TR SPE (?), SPEEDING (UNAGGRAVATED) . . . . . .
Warrant: ___ . . . . .   PDCN: 0103003609 T   Ofcr(?): 339 WESTBERRY . . . . . . . A
Ticket: M5532102        Appear: __ (_/Y)       Accident: __ (_/Y)
Speed/Posted: 51 / 30   Drug/Alc: __ (D/A/C)   DUI Test(?): . . . . .      Res: .00
Released: 4/14/2003     Recog: Y (_/Y)         Bond Co(?): . . . . Bond: . . . . . . .00
Veh. Tag: 38D102Z . . . St: AL Yr: 2003        Veh. Descr: 94 CHEV CAMARO . . . . .
ARRAIGNMENT/APPEARANCE INFORMATION
Cat: TA   Date/Time: 11/18/2003 10:00:00       Plea(?): ___ Original: 6/03/2003
TRIAL INFORMATION
Cat: ___  Date/Time: . . . . . . . . . .        Plea(?): ___ Original: 9/16/2003
Attny(?): KSL LANE, KALIA SPEARS . . . . . . .  Notes: . . . . . . . . . . . . . . . . . . .
DISPOSITION INFORMATION
Disp(?): ___ . . . . . . . . .  Chg(?): SPE  Y/O: __ (_/J/Y)  DPS: _  Closed: __ (_/Y)
FAILURE TO APPEAR INFORMATION
FTA(?): 6A . . . . . . . . . . .  AW Bond: . . . . . .00  AW: . . . . . . . .  6A: 10/28/2003
FFDate: . . . . . . . . . .       FF Due: . . . . . . . .  FF$: . . . . . . .00

F3=Exit      F12=Prev Scr                                      F5=Notes
F4=Image                    F13=History                        F15=Orders
F21=Jail     F16=Witnesses  F17=Sureties                       F22=Sentence
```

DOTHAN/Martin & Brackin 1517
CONFIDENTIAL Subject to
Protective Order

MCR185C1                          CASE NOTES                          14:44:55
Name: PHELPS          BRADLEY          THOMAS          Case#:    TR0300043.90
SSN:                  DOB: 12/07/1985  Sex: M   Race: W

Date                  Text

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____ +

**F3=Exit      F12=Prev Screen**

DOTHAN/Martin & Brackin 1518
CONFIDENTIAL Subject to
Protective Order

Orders of the Court                                              14:49:23

CASE NO.:   TR 03 004390

DEFENDANT:   PHELPS          BRADLEY          THOMAS

NO ORDERS EXIST FOR THIS CASE

| (X) | ORDER CODE | ORDER DESCRIPTION | CASE SUFFIX NO. | REQUIRED DATE |
|-----|-----------|-------------------|-----------------|---------------|

F3=Exit                     F12=Prev Screen

DOTHAN/Martin & Brackin 1519
CONFIDENTIAL Subject to
Protective Order

```
TKPRC4D                CITY OF DOTHAN MUNICIPAL COURT        3/03/05 MNCE18C
                          DOCKET SEARCH                      11:04:04 LSMCCLAIN
CITY      DO  COURT  MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF
```

|     |          |                    |       |         |       |      | For | Entry     |
| S#  | Dt Filed | Event Description   | Judge | Date    | Time  | Disp | All | Person    |
|-----|----------|---------------------|-------|---------|-------|------|-----|-----------|
| 1   | 12/17/04 | CASE NOTES          |       |         |       |      | *   | MWOODS    |
| 2   | 12/15/04 | CHANGE ATTORNEY     |       |         |       |      | *   | LSMCCLAIN |
| 3   | 12/15/04 | CHANGE ATTORNEY     |       |         |       |      | *   | LSMCCLAIN |
| 4   | 12/15/04 | TRAFFIC TRIAL       | JRG   | 3/02/05 | 13:00 |      | *   | LSMCCLAIN |
| 5   | 12/15/04 | TRAFFIC TRIAL       |       | 3/02/05 | 13:00 | CCT  | *   | LSMCCLAI + |

```
                    F12=Cancel                    F9=Event/Groups
F8=View Printed Docket  F10=Add Record            F15=Review Docket Verbiage




F13=Parties  F14=Charges  F16=Others         F18=Ticklers
             F3=Exit           F10=Add Record        F12=Previous
```

DOTHAN/Martin & Brackin 1520
CONFIDENTIAL Subject to
Protective Order

```
TKPRC4D                CITY OF DOTHAN MUNICIPAL COURT        3/03/05 MNCE18C
                              DOCKET SEARCH                   11:04:04 LSMCCLAIN
CITY    DO  COURT  MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES...
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF
```

```
  SECT RECORD ....  TO UPDATE                                    For    Entry
S#  Dt Filed  Event Description      Judge    Date    Time  Disp All    Person
..6  10/11/04 TRAFFIC TRIAL          JRG   12/15/04  13:00  CCT   *   LSMCCLAIN
..7   9/29/04 SURETY                                              *   MLBRYAN
..8   9/29/04 ARRAIGNMENT - CAS      JRG   10/11/04   9:00  NG    *   LSMCCLAIN
..9   9/28/04 FTA REPORTED TO DPS                          FT1   ..  DPSFTA
.10   9/11/04 ALIAS WARRANT SERVED                         AWS   ..  NMARTIN  +
```

|  | | |
|---|---|---|
| F12=Cancel | F9=Event/Groups | |
| F8=View Printed Docket  F10=Add Record | F15=Review Docket Verbiage | |

```
F13=Parties   F14=Charges   F16=Others          F18=Ticklers
              F3=Exit              F10=Add Record              F12=Previous
```

DOTHAN/Martin & Brackin 1521
CONFIDENTIAL Subject to
Protective Order

TKPRC4D                    **CITY OF DOTHAN MUNICIPAL COURT**          3/03/05 **MNCE18C**
                                **DOCKET SEARCH**                     11:04:04 **LSMCCLAIN**
CITY      DO  COURT  MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name **PHELPS, BRADLEY THOMAS**                    Prty Status CL Type DF

| ECT RECORD . . . . TO UPDATE | | | | | | | For | Entry |
|---|---|---|---|---|---|---|---|---|
| S# | Dt Filed | Event Description | Judge | Date | Time | Disp | All | Person |
| 11 | 7/27/04 | SUSPENSION NOTICE | | | | | . . | MEKNIGHT |
| 12 | 7/27/04 | SEND AWI TO POLICE | | | | | . . | MEKNIGHT |
| 13 | 7/27/04 | FAILURE TO APPEAR | | | | AWS | . . | MEKNIGHT |
| 14 | 7/16/04 | TRAFFIC ARRAIGNMENT | JRG | 7/27/04 | 9:00 | 6B2 | * | MEKNIGHT |
| 15 | 4/20/04 | TRAFFIC ARRAIGNMENT | JRG | 7/13/04 | 9:00 | 6A2 | * | MEKNIGHT + |

                         F12=Cancel                    F9=Event/Groups
**F8=View Printed Docket**  F10=Add Record           F15=Review Docket Verbiage


F13=Parties   F14=Charges  **F16=Others**              F18=Ticklers
              F3=Exit                   F10=Add Record              **F12=Previous**

DOTHAN/Martin & Brackin 1522
CONFIDENTIAL Subject to
Protective Order

TKPRC4D                  CITY OF DOTHAN MUNICIPAL COURT           3/03/05 MNCE18C
                              DOCKET SEARCH                       11:04:04 LSMCCLAIN
CITY      DO   COURT   MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF

| S# | Dt Filed | Event Description | Judge | Date | Time | Disp | For All | Entry Person |
|----|----------|-------------------|-------|------|------|------|---------|--------------|
| SELECT RECORD . . . . TO UPDATE | | | | | | | | |
| 16 | 11/02/03 | *CONV CASE* | | | | | | HTE |
| 17 | 11/02/03 | TRAFFIC ARRAIGNMENT | JRG | 11/18/03 | 10:00 | G | | LSMCCLAIN |
| 18 | 10/28/03 | TRAFFIC ARRAIGNMENT | JRG | 10/28/03 | 10:00 | CCT | | MEKNIGHT |

                          F12=Cancel          F9=Event/Groups
F8=View Printed Docket  F10=Add Record        F15=Review Docket Verbiage




F13=Parties  F14=Charges  F16=Others          F18=Ticklers
             F3=Exit              F10=Add Record           F12=Previous

DOTHAN/Martin & Brackin 1523
CONFIDENTIAL Subject to
Protective Order

```
TKPRC4D                CITY OF DOTHAN MUNICIPAL COURT          3/03/05 MNCE18C
                           DOCKET SEARCH                     11:16:08 LSMCCLAIN
CITY      DO  COURT  MC     CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF
```

```
   SECT RECORD .... TO UPDATE                           For     Entry
 S#  Dt Filed Event Description    Judge   Date   Time   Disp  All    Person
..1. 12/17/04 CASE NOTES                                        *    MWOODS
..2. 12/15/04 CHANGE ATTORNEY                                   *    LSMCCLAIN
..3. 12/15/04 CHANGE ATTORNEY                                   *    LSMCCLAIN
..4. 12/15/04 TRAFFIC TRIAL        JRG     3/02/05 13:00        *    LSMCCLAIN
..5. 12/15/04 TRAFFIC TRIAL                3/02/05 13:00  CCT   *    LSMCCLAI +
                    F12=Cancel                 F9=Event/Groups
F8=View Printed Docket  F10=Add Record        F15=Review Docket Verbiage
```

```
F13=Parties   F14=Charges  F16=Others          F18=Ticklers
              F3=Exit               F10=Add Record        F12=Previous
```

DOTHAN/Martin & Brackin 1524
CONFIDENTIAL Subject to
Protective Order

TKPRC4D            CITY OF DOTHAN MUNICIPAL COURT            3/03/05 MNCE18B
                            DOCKET SEARCH                    11:17:22 LSMCCLAIN
CITY      DO  COURT  MC     CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001   Status CL  Ticket# M  5532102   Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF

SELECT RECORD .... TO UPDATE                               For    Entry
S#  Dt Filed  Event Description    Judge    Date    Time   Disp  All   Person
. . 6. 10/11/04 TRAFFIC TRIAL        JRG   12/15/04 13:00  CCT    *.  LSMCCLAIN
. . 7.  9/29/04 SURETY                                           *.  MLBRYAN
. . 8.  9/29/04 ARRAIGNMENT - CAS    JRG   10/11/04  9:00  NG     *.  LSMCCLAIN
. . 9.  9/28/04 FTA REPORTED TO DPS                       FT1    . .  DPSFTA
. 10.   9/11/04 ALIAS WARRANT SERVED                      AWS    . .  NMARTIN  +

                              F12=Cancel          F9=Event/Groups
F8=View Printed Docket   F10=Add Record          F15=Review Docket Verbiage


F13=Parties   F14=Charges  F16=Others          F18=Ticklers
              F3=Exit                 F10=Add Record            F12=Previous

DOTHAN/Martin & Brackin 1525
CONFIDENTIAL Subject to
Protective Order

```
TKPRC4D                CITY OF DOTHAN MUNICIPAL COURT        3/03/05 MNCE18B
                            DOCKET SEARCH                    11:17:22 LSMCCLAIN
CITY     DO  COURT  MC     CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES...
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                  Prty Status CL Type DF
```

```
SELECT RECORD .... TO UPDATE                           For      Entry
S#  Dt Filed Event Description   Judge   Date   Time  Disp  All     Person
11  7/27/04 SUSPENSION NOTICE                                ..    MEKNIGHT
12  7/27/04 SEND AWI TO POLICE                               ..    MEKNIGHT
13  7/27/04 FAILURE TO APPEAR                         AWS    ..    MEKNIGHT
14  7/16/04 TRAFFIC ARRAIGNMENT  JRG    7/27/04  9:00  6B2   *.    MEKNIGHT
15  4/20/04 TRAFFIC ARRAIGNMENT  JRG    7/13/04  9:00  6A2   *.    MEKNIGHT +
                        F12=Cancel                 F9=Event/Groups
F8=View Printed Docket  F10=Add Record             F15=Review Docket Verbiage
```

```
F13=Parties   F14=Charges   F16=Others           F18=Ticklers
              F3=Exit            F10=Add Record        F12=Previous
```

DOTHAN/Martin & Brackin 1526
CONFIDENTIAL Subject to
Protective Order

```
TKPRC4D                   CITY OF DOTHAN MUNICIPAL COURT        3/03/05 MNCE18C
                              DOCKET SEARCH                     11:15:24 LSMCCLAIN
CITY      DO COURT  MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES...
Case # 03-0004390-001  Status CL  Ticket# M  5532102  Judge EVANS-GORDON
Party Name PHELPS, BRADLEY THOMAS                      Prty Status CL Type DF
```

| S# | Dt Filed | Event Description | Judge | Date | Time | Disp | For All | Entry Person |
|----|----------|-------------------|-------|------|------|------|---------|--------------|
| 1 | 12/17/04 | CASE NOTES | | | | | * | MWOODS |
| 2 | 12/15/04 | CHANGE ATTORNEY | | | | | * | LSMCCLAIN |
| 3 | 12/15/04 | CHANGE ATTORNEY | | | | | * | LSMCCLAIN |
| 4 | 12/15/04 | TRAFFIC TRIAL | JRG | 3/02/05 | 13:00 | | * | LSMCCLAIN |
| 5 | 12/15/04 | TRAFFIC TRIAL | | 3/02/05 | 13:00 | CCT | * | LSMCCLAI + |

```
TKPRC4M
  Case Notes rcvd entry of appearance from atty thomas            led 12/17/04
  smith........................................
  .............................................
  .............................................
  .............................................
                                              More...
  F9=Word Wrap        PageUp/PageDown      F20=18 Line View
  Enter=Continue          F3=Exit          F12=Previous          rs        TKPRC4J
                                                                     F12=Previous
```

DOTHAN/Martin & Brackin 152
CONFIDENTIAL Subject to
Protective Order

```
                          INQUIRY OF ALL CHARGES FOR              14:51967 IRGRAY
Name  PHELPS              BRADLEY        THOMAS      Birth Date 12/07/85  Age 19
Enter CHARGE Selection For CASE Inquiry...
Total Due All Charges            112.50
Total Due CL Charges             112.50     CHG           CITATION      BALANCE DUE
      ASE TYPE    CHARGE DESCRIPTION DSPO  TYP   DATE     OR CASE#      FOR CHARGE    ST
      DO MC IN TR SPEEDING(UNAGGRAV-O       TR  4/14/03  M 5532102             .00   CL
   2  DO MC IN TR MUNI CRT CST TRAFFI    A  4/14/03  M 5532102          112.50  CL
```

                                                                        Bottom
F3=Exit                                                              F12=Previous

DOTHAN/Martin & Brackin 1528
CONFIDENTIAL Subject to
Protective Order

CASE MASTER INQUIRY
CITY      DO COURT MC        CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES ..
Case # **03-0004390-001** Status CL      Judge EVANS-GORDON      ROSE
Party Name **PHELPS, BRADLEY THOMAS**                           Prty Status CL Type DF

\*DSINOCS

                                              # of Active Defendants .. **0**
  iling Agency DOTH  CITY OF DOTHAN
  Booking Agency # 0103003609T
                        SMITH, THOMAS, JR S              Num **ATSS**
  1st Plaintiff Attorney                                 Num .....
  Date Filed **4/14/03**   Date Closed **12/15/04**  Date Reopened **0/00/00**
   Judgement Amt ............**00** Disposition **CLP**

  Days Pending ..... **0**
  Date of Last Docket **9/28/04** FTA REPORTED TO DPS
  TOTAL CASE MONEY - all Parties        OFF LINE STORAGE LOCATION
       Paid to Court ...........
       Trust Money   ........**300.00**
       Balance Due   ........**112.50**
  F13=Parties  F14=Charges  **F16=Others**    F17=Dockets    F18=Ticklers
  Enter/Forward          F3=Exit                  F12=Previous

DOTHAN/Martin & Brackin 1529
CONFIDENTIAL Subject to
Protective Order

OTHERS INVOLVED SEARCH                                    14:39:01 IKGRAY

CITY     DO  COURT  MC      CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL      Judge EVANS-GORDON       ROSE
Party Name PHELPS, BRADLEY THOMAS                    Prty Status CL Type DF

SELECT RECORD:  . . .          Party                                  Status
    )erson                     Type  Attorney        Party #    Date
  1. LANE, KALIA SPEARS,       ATT                     000     12/15/04  IA
  2. LANE, KALIA SPEARS,       ATT                     000     12/15/04  IA
  3. WESTBERRY, ANTHONY        POL                     001     11/02/03  OT

                                                              Bottom

F13=Parties   F14=Charges              F17=Dockets F18=Ticklers
              F3=Exit F8=Jail Inq.                        F12=Previous

DOTHAN/Martin & Brackin 1530
CONFIDENTIAL Subject to
Protective Order

```
                        DOCKET SUMMARY DISPLAY                      1RGRAY
CITY      DO COURT MC    CASE TYPE IN SUB-TYPE TR CONVERTED TRAFFIC CASES
Case # 03-0004390-001  Status CL      Judge EVANS-GORDON    ROSE
Party Name PHELPS, BRADLEY THOMAS                Prty Status CL  Type DF
```
---
```
     : CONVERTED TRAFFIC CASES          STATUS: CLOSED           12/15/04
       -----------JUDGE -----------
CURRENT: EVANS-GORDON, ROSE
                                       ------------ATTORNEYS-------------
   001: NO PLAINTIFF ON FILE
              VS.
DF 001: PHELPS, BRADLEY THOMAS         SMITH, THOMAS,JR S,
        DOB: 12/07/85
   CHARGE  1: TR SPEEDING(UNAGGRAV-OJ          AL   TRSPE@9999
   ASSMNT  2: A MUNI CRT CST TRAFFIC     ASSMNT 19 MUNI CT CST TR
            TOTAL DUE:     112.50
            BALANCE DUE:   112.50
```
--------------------------------------------------------------------------
```
                             MAJOR EVENTS
12/15/04 DATE CLOSED        DISPOSITION:  CLOSED W/PENDING ORD
                                                            More...
F13=Parties  F14=Charges  F16=Others  F17=Dockets F18=Ticklers F19=Open in Word
             F3=Exit                  F7=Print Docket           F12=Previous
```

DOTHAN/Martin & Brackin 1531
CONFIDENTIAL Subject to
Protective Order