# CONFIDENTIAL



# JUDICIAL COURT DEPARTMENT INVESTIGATION

## TICKET FIXING/STEPHEN PHELPS

DOTHAN/Martin & Brackin 1375
Confidential Subject to Protective Order

# Dothan Police Department

## M E M O R A N D U M

**FROM**      :   Sergeant I. Keith Gray

**TO**        :   Chief John R. Powell

**DATE**      :   May 2, 2005

**SUBJECT**   :   **JUDICIAL COURT DEPARTMENT INVESTIGATION**
                  **UNIFORM TRAFFIC CITATION/STEPHEN ALLEN PHELPS**

This is to inform you of the results of the Internal Affairs Investigation which began on March 9, 2005 involving City of Dothan employees Corporal Eric Duhaime, Magistrate Mary Turner, and Magistrate Mary Brackin. This investigation involves allegations of "Ticket Fixing," and stems from a previous complaint of "Ticket Fixing" which was filed by Patricia Phelps and her 17 year old son Bradley Phelps on March 3, 2005. (See Internal Affairs Case Number IA-05-03-06).

During the course of the first that investigation Bradley stated that he was issued a traffic citation on April 14, 2003 by Dothan Police Sergeant Anthony Westberry for speeding. Bradley asked his employer Kevin Turner, who is Mary Turner's husband, if he could have Mary to "take care of the ticket." According to Bradley she agreed and he had not received any paperwork to the contrary. Several months later Kevin was incarcerated. In the month of June of 2004 Mary asked Bradley to repair the roof on her trailer as compensation for not being held accountable for the citation. He agreed, and began the job with the assistance of his father Robert Phelps, but they did not complete the work fast enough to suit Ms. Turner. She threatened to reinstate sanctions of the citation against him due to him not completing the job. Months later Bradley was arrested on an alias warrant as a result of the threat she had made. Bradley later complained to Municipal Court Judge Rose Evans-Gordon who continued his court case in order that the allegations may be investigated. Patricia Phelps retained an attorney, Thomas Smith, to represent Bradley. During the internal affairs investigation regarding Bradley, his mother informed me that as proof of prior impropriety on Ms. Turner's part, she explained that her other son Stephen has also had a traffic citation "fixed" by Ms. Turner which is now the focus of this investigation.

**On March 9, 2005**
I proceeded to Bradley Phelps' residence and transported him to my office in order to take a statement. After taking the statement we were traveling back to his residence and he spoke with his mother on his cellular. During their conversation she reminded him about his brother's (Stephen) citation. I spoke with Stephen on the phone and he advised me that after receiving the citation he told Bradley about it. He added that he later took the citation to Mary Turner and personally gave it to her. He has not been held

DOTHAN/Martin & Brackin 1376
Confidential Subject to Protective
Order

accountable for the ticket since giving it to her believing that it was disposed of.

**Statement of Stephen Phelps on April 29, 2005**

Mr. Stephen Phelps stated that on November 24, 2002 at 2:05 PM he was pulled over for speeding by a City of Dothan Police Officer. The officer, Corporal Eric Duhaime, stopped him on South Park Avenue. Stephen was issued a traffic ticket for speeding and was released. Stephen told his brother Bradley about the ticket and Bradley told Kevin. Stephen had worked for Kevin in the past as well, and has had conversations with Mary at their business. Stephen stated that a few weeks after receiving the ticket, Mary called him by phone and said, *"Stephen, if you bring your ticket up her I can take care of it; I need your copy of it."* Stephen stated he went to his car and took the ticket to her home. Further, he stated that Mary answered the door, stepped outside, and took possession of the ticket. She again told him that she would take care of it and they ended their conversation. He stated that Mary did not ask for anything in exchange for her favor. He has not been held accountable for the ticket since giving it to her believing that it was disposed of.

**March 9, 2005**

I (Gray) obtained from Stephen the tag number of the vehicle he was driving in order to investigate whether he was indeed issued a traffic ticket. With that tag number, I was able to determine that Duhaime indeed issued a traffic ticket to Stephen. I later called Duhaime at his residence and asked him to attempt to locate the officer's copy of the citation. He called me back a short time later and advised me that he had the "Police Record" duplicate in hand, ticket number M5533359, and recalled the circumstances surrounding the violation. The next day, Duhaime contacted me and stated that he had found the original "Complaint and Affidavit, Defendant, and Court Record" duplicates containing the same ticket number inside of a sealed envelope labeled, "City of Dothan Municipal Court, as well as his name written in red ink.

**Statement of Eric Duhaime on April 26, 2005**

Cpl. Duhaime stated that on November 24, 2002 he was on-duty and conducted a traffic stop in the vicinity of South Park Avenue in Dothan, Alabama on a vehicle for speeding. He issued Mr. Stephen Allen Phelps a traffic ticket, and released him. Further, Duhaime stated he filled out a "UTC Transmittal Form prior to his arrival at the magistrate's office. He presented the transmittal and tickets to Magistrate Mary Brackin, swore under oath to her, and left. He stated that to the best of his recollection, he was getting back into his car and he received a message via pager for him to call Mary Turner at the magistrate's office. Duhaime stated he did so via his cellular phone and she asked him if he would mind voiding Stephen's ticket out. He relied, "I don't care," or something to that effect. He added that he believed that Ms. Turner asked him if he wanted to return and pick up the copies of the tickets. He said no, and advised her to just place them inside of an interoffice mail so that he could get them all turned in. Duhaime stated that it was his intent to turn the tickets in, however, he must have forgotten due to various issues that were occurring at that point in time. Once he received the envelop containing the tickets, he took it home unopened. Duhaime admitted that it was his understanding that whenever he swears to a ticket, he no longer had authority over it, however, he did not realize it in this case. He added that after he issued the ticket, he had no intentions on voiding it. He stated that Ms. Turner told him that she knew Stephen, and he "just simply agreed to let her send the ticket back down to him." When asked if any other magistrate ever asked him to void a ticket he no. I also asked him if Ms. Brackin signed the UTC Transmittal Form that contained Stephen Phelps' name on it he stated yes, she would have signed it and given him a copy of the transmittal afterwards.

DOTHAN/Martin & Brackin 1377
Confidential Subject to Protective
Order

**Statement of Mary E. Brackin March, 26, 2005**

During Ms. Brackin's internal affairs interview, I asked her to explain the normal procedure that a magistrate goes through when an officer presents a magistrate with traffic tickets and the magistrate has the officer to swearing under oath to a ticket. She stated, **"When, like you said when an officer brings in their tickets to be sworn to a magistrate, ah, they put 'em on the transmittal. They bring them to us and we swear them to the tickets and we sign the transmittal and give a copy of the transmittal to the officer."** When I asked her what the reason for swearing the officer on their complaint she replied, **"Just swearing that they gave that ticket on that date and time and it was inside the city limits of Dothan, or on the public streets of Dothan."** I then asked her, "Once they swear to it, does that document become a court document?" and she replied, yes. I asked Ms. Brackin to explain the procedure that she follows regarding officer's tickets and transmittals. She stated that she does not review each ticket on an individual basis when an officer brings them to her to be sworn. She stated that she does not know a magistrate that does. To prove her point she informed me that Officer Ray Harris came into the magistrate's office on the day of this interview with tickets. She stated further that when swearing an oath to him, she did not make sure that each ticket matched the transmittal form. Additionally Brackin said that the magistrates don't have time to check each ticket against the transmittals. She stated that it is a practice that they should do. They just assume that what the officer has recorded on the transmittal is correct. A few days after this interview I contacted Officer Harris at his home to ascertain if he recalled this event. He stated that he did remember swearing an oath to Ms. Brackin. When I aske procedure she used when swearing the tickets he replied that she reviewed each ticket with him contradicts what she told internal affairs investigators during the interview.

Ms. Brackin stated that once a ticket is sworn by the officer, she assumes that it can be dismissed judge, and stated magistrates would send tickets such as "improper lights" to the judge and they wo nol-prossed. She stated that in the past, prior to Judge Gordon, magistrates have disposed of equi violation tickets. I asked Ms. Brackin if a speeding ticket could be handled other than through the and she said it would be entered into the computer and to through the process, including court in that it be dismissed. I showed Ms. Brackin the UTC Transmittal form with Duhaime's name on th Stephen Phelps' name under the remarks column, and the date of 12-04-02 at the bottom. She identified the signature at the bottom of the transmittal form, under the statement, "The above listed traffic tickets are received for court action, received by M. Brackin" as her signature. She also stated that the information entered under the column "Court Case Number (TR) Number," of the transmittal form also was her handwriting, to include the word "VOID." When I asked her if she had personal knowledge of any magistrate, including herself that has ever asked an officer to void or dismiss a ticket or complaint after it was sworn by the officer she would never commit to a solid answer. When asked if she had 100% knowledge of this event ever transpiring she finally said, "No 100% no, but I'm sure it has happened." This question had to be asked of Ms. Brackin several times by both Sgt. Ray Owens and myself as did other questions. Ms. Brackin continued to be evasive with regard to her answers, and at one point she refused to answer a question that Sgt. Owens asked her. I politely directed her that she was to answer all of our questions due to this being an official internal investigation. Whenever speaking in general terms regarding the duties of magistrate Ms. Brackin provided details, however, whenever asking questions as they related to her own duties and job performance, the majority of her answers were noticeable, "I don't recall."

On May 2, 2005, I spoke with each magistrate for the exception of Mary Turner and Mary Brackin. I asked them what their specific procedure for swearing an oath to officers, and taking their traffic tickets. They all stated that they review each ticket with the officer and then sign the transmittal form.

DOTHAN/Martin & Brackin 1378
Confidential Subject to Protective Order

**Statement of Officer Ray Harris May 2, 2005**
Officer Ray Harris stated in a taped interview that he had two transmittal forms that he took to the magistrate's office on April 26, 2005. Mary Brackin placed him under oath and reviewed each ticket and signed the transmittal. When asked if he was 100% certain that she covered each ticket he said yes.

**Statement of Mary Turner on April 26, 2005**
During Ms. Turner internal affairs interview, I asked her to look at citation number M5533359 and asked her if she had seen it in the past. She said that she had seen it which was shortly after Stephen Phelps received the ticket. She added that she spoke to the officer about the ticket and the officer said that he would void the ticket. He also directed her to get the defendant's copy. She stated that she did not remember if she called Stephen or if he called her. Further she remembered that his brother Bradley worked for her husband as well as Stephen. At some point her husband called her and asked her if she could do anything to help him out with the ticket. She replied to him that all she could do would be to contact the officer and ask him if he had any problem with voiding it. She added that voiding tickets is a very common practice among magistrates and other police officers as long as she has been employed with the City of Dothan. When I asked her who specifically had voided tickets after it was sworn to by a magistrate that caused it to be taken from the normal judicial process she said that she did not really know. She repeated that her husband asked her to talk to the officer so she was on the lookout for Duhaime because the Phelps were poor, could not afford to pay for a ticket, and they worked for her husband. She admitted seeing Duhaime on the day he came in and she asked him about it. She asked him if he had a ticket in the name of Phelps, and he said, yes and that he had just turned them into Ms. Brackin. Turner stated that she, Duhaime, and Brackin all spoke about the Stephens ticket, but she was not 100% sure. She stated that after talking with Duhaime, she talked to Stephen and told him that she needed to get his ticket back and he later gave it to her in person.

After a complete investigation into this case it is more likely than not that **Mary Elizabeth Brackin** has violated the following:

**MAJOR OFFENSE**
Personnel Rule, Regulation III, Sec. 3-42. (6) "Negligence in carrying out assigned tasks or duties or responsibilities of one's position."

After a complete investigation into this case it is more likely than not that **John Eric Duhaime** has violated the following:

**MAJOR OFFENSE**
1. Personnel Rules, Regulation III, Sec. 3-42. (13), "Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the city as an employer or public entity.
   **VIOLATION OF ALABAMA CODE SECTION**
   12-12-56 (A) – which states: Law enforcement officers, etc., not to dispose of uniform traffic tickets or complaints, etc., in unauthorized manner.

2. Violation of Dothan Police Department Policy Letter – Revised February 22, 2001
   Handling Uniform Traffic Citations, III – Voided UTC'S.
   A. – A legible photocopy of voided UTC's will be sent promptly to the Chief's Officer no late than three (3) working days of the incident. A legible photocopy of voided UTC's must

DOTHAN/Martin & Brackin 1379
Confidential Subject to Protective Order

also be turned in to the Magistrates Office along with the UTC 3 transmittal form.

B. – The reason for voided UTC shall be listed on its face.

D. – The Officer shall maintain all copies of the voided UTC and turn it in with their copies to Records when the UTC book is complete.

E. – No employee or official may solicit or otherwise request the voiding or dismissal of a UTC for any reason without approval of the prosecutor.

After a complete investigation into this case it is more likely than not that **Mary Leon Turner** has violated the following:

## MAJOR OFFENSES

1. Personnel Rule, Regulation III, Sec. 3-42 (13) "Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity."
   **VIOLATION OF ALABAMA CODE SECTION**
   12-12-56(A). Law enforcement officers, etc., not to dispose of uniform traffic tickets or complaints, etc., in unauthorized manner.

2. Personnel Rule, Regulation III, Sec. 3-42 (13) "Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity."
   **VIOLATION OF ALABAMA CODE OF ETHICS**
   36-25-5(a). No public official or public employee shall use or cause to be used his or her official position or obtain personal gain.

DOTHAN/Martin & Brackin 1380
Confidential Subject to Protective Order

DOTHAN POLICE DEPARTMENT
Policy Letter

February 22, 2001 Revised
July 19, 2000
December 10, 1999

I.   The purpose of this document is to establish the Policy for handling Uniform Traffic Citations.

II.  Uniform Traffic Citations (UTCs)

   A.   Upon receipt of UTCs, the Records Division shall complete the UTC Form 12 and forward it to the Administrative Office of Courts.  The UTCs will be sent to the Patrol Division.

   B.   UTCs shall be maintained under lock and key and only issued by Supervisors.

   C.   When issued, the UTC Book stub shall be completed by the Officer and forwarded to Records.  Records will enter the issue in the master UTC Form 8.

   D.   Officers shall promptly turn in their UTC copies when the UTC book is finished to Records. **Officers shall turn in only one (1) UTC Form 14 Ticket Issue Log with all UTCs issued from the UTC book.**  A legible copy of the UTC Form 14 Ticket Issue Log can be sent with the UTCs written to the Municipal Court and all UTCs from a single book can be maintained on one UTC Form 14.  Officers will swear to UTCs whenever possible within 48 hours of their issue or sooner when feasible.

   E.   When UTCs are turned in, Records shall log the information on the UTC Form 8.

   F.   Records shall maintain all copies and voided UTCs for a minimum of three (3) years or until the case is disposed.

   G.   When employment with the Dothan Police Department is terminated, Officers will turn in unused UTCs to Records.

DOTHAN/Martin & Brackin 1381
Confidential Subject to Protective
Order

Page 2
UTC Policy

III. Voided UTCs

   A.   A legible <u>photocopy</u> of voided UTCs will be sent
        promptly to the Chief's Office no later than three
        (3) working days of the incident.  A legible
        photocopy of voided UTCs must also be turned in to
        the Magistrates Office along with the UTC 3
        transmittal form.

   B.   <u>The reason for the voided UTC shall be listed on
        its face</u>, for example:  radar malfunction, false
        name, document error, warning, etc.

   C.   Voided UTCs shall not be listed upon any Local
        Impact Activity sheet.

   D.   <u>The Officer shall maintain all copies of the
        voided UTC and turn it in with their copies to
        Records when the UTC book is complete</u>.

   E.   No employee or official may solicit or otherwise
        request the voiding or dismissal of a UTC for any
        reason without approval of the prosecutor.

DOTHAN/Martin & Brackin 1382
Confidential Subject to Protective
Order

```
38C052D .............................. /.....      P  C023280247  4
........................ 11/24/02 100 SHADOWOOD DR     BLK, DOTHA         E
      434               14:05:56 S42-Traffic Stop     STAT7-Traffic Cita
38C052D ... AL ............................... /....  P  C050440227  4
........................ 2/13/05 2600 S OATES ST      BLK, DOTHA         E
      351               10:48:50 S42-Traffic Stop     STAT7-Traffic Cita
38C052D ... AL 99 MITS ...... ECLIPSE .... BLK /.....  P  C040100336  4
........................ 1/10/04 124 SEALY WELLS RD   INTERSECTN, COTTO  E
      P-CW2             14:11:32 S42-Traffic Stop     STAT7-Traffic Cita
38C052D ... AL 99 MITS ...... ECLIPSE .... BLK /.....  P  C030640635  2
........................ 3/05/03 5631 COUNTY 203 RD   REHOB, REHOBETH HI E
     3856               22:31:26 S28V-Suspicious Vehicl NR TOT ANOTHER AGE
............................... 0/00/00 .............. /.....
                        00:00:00
Options:   1=Select   6=Print  9=View Case
   F7=Scroll Back      F8=Scroll Forward      F12=Return      F15=Date/Time Window
```

DOTHAN/Martin & Brackin 1383
Confidential Subject to Protective Order

```
Call Number.: 023280247  SI  Call Type.: 101 S42-Traffic Stop........Police
Entry Day/Tm: 11/24/02 14:05:56  REVIEW 101 S42-Traffic Stop.......Police
Caller Name: Last                First                      Mid   See Caller:
 Address...:           Dr                                         Mod
 City/State:                    Phone#:                           Source: SI
Location....:       100 Dr    SHADOWOOD                     DR   Mod BLK
 City.......: DOTHAN              Block#:.     100    Loc ID:.  Mapr.: 12B
 Intersectn.: PARK                          WOODBERRY
Agency P...: 001   DOTHAN POLICE DEPART CmnN:.
Call Taker.: 0000000039 HOLLOWAY...TERM Dspcher: 0000000039 HOLLOWAY...TERM
Disposition:. 034  STAT7-Traffic Citation.......434... 01 - 02011386
 434....  D  14:05:56 AS 14:05:56 PR 14:05:56 RS 14:11:37 DUHAIME, JOHN....
.........  AV 14:14:22   00:00:00    00:00:00    00:00:00...............
F6=Add Unit F7/F8=Roll Units F9=Caller Check List F10=Print    F11=Narrative
F12=Return  F14=Addtl Disp.  F15=Addtl Locations  F16=Vehicle  F17=Persons
```

DOTHAN/Martin & Brackin 1384
Confidential Subject to Protective
Order

# Statement

# Of

# Stephen Phelps

DOTHAN/Martin & Brackin 1385
Confidential Subject to Protective
Order

KG:   THIS IS SGT. GRAY WITH THE DOTHAN POLICE DEPARTMENT. THE DATE IS APRIL
      29TH, 2005. THE TIME IS 3:55 P.M. THE PLACE OF STATEMENT'S GOING TO
      BE IN MY OFFICE. THE NAME OF PERSON GIVING STATEMENT'S GOING TO BE
      STEPHEN ALLEN PHELPS. THIS IS IN RELATION TO AN INVESTIGATION THAT'S
      GOING ON REGARDING MARY TURNER. STEPHEN, WOULD YOU STATE YOUR FULL
      NAME?
SP:   STEPHEN ALLEN PHELPS.

KG:   AND AH, IF YOU WOULD, STEPHEN, GIVE ME YOUR HOME ADDRESS?
SP:   AH, 856 D HODGES ROAD.

KG:   WHERE'S THAT AT?
SP:   IT'S IN COTTONWOOD, ALABAMA.

KG:   UMKAY. AH, ARE YOU FAMILIAR WITH AH MARY TURNER?
SP:   YES, SIR, I AM.

KG:   SPEAK UP.
SP:   AH, YES, SIR, I AM.

KG:   AHM, TELL ME APPROXIMATELY WHEN YOU FIRST MET MRS. TURNER.
SP:   UH, MY LITTLE BROTHER STARTED WORKING FOR HER HUSBAND AND PROBABLY A
      COUPLA MONTHS AFTER HE STARTED WORKING THERE, I WENT UP THERE AND WE
      ALL YOU KNOW WORKED TOGETHER AND I'D HELP 'EM OUT ON THE SIDE., WORK
      PART TIME.

KG:   OKAY. WHAT IS HER HUSBAND'S NAME?
SP:   AH, KEVIN TURNER.

KG:   AND DO YOU KNOW WHERE THEY LIVE?
SP:   YES, SIR, I DO.

KG:   WHERE'S THAT?
SP:   AH, 231 STRAIGHT ACROSS FROM OLYMPIA SPA.

KG:   OKAY, IS THAT ANYWHERE IN THE VICINITY OF WHERE YOU LIVE?
SP:   NO, SIR.

KG:   OKAY. AH, SO ROUGHLY HOW LONG HAVE YOU BEEN KNOWING THEM, THE TURNERS?
SP:   PROBABLY 2 TO 3, MAYBE 4 YEARS, I, ROUGHLY.

KG:   UMKAY. IT'S 2005, NOW AND SO APPROXIMATELY 2001
SP:   PROBABLY

KG:   2000
SP:   MORE THAN LIKELY, YEAH.

KG:   UMKAY.
SP:   IT'S BEEN A WHILE.

KG:   WHAT I WANTA DO IS AH SHOW YOU AN ALABAMA UNIFORM TRAFFIC CITATION THAT
      HAS A NUMBER ON THE TOP RIGHT OF M5533359. AH, HAVE YOU EVER SEEN AH
      THIS COPY OF THE TICKET WHICH AT THE BOTTOM IT SAYS, IT SAYS COMPLAINT
      AND AFFIDAVIT?
SP:   YES, SIR, I HAVE.

KG:   UMKAY. AH, TELL ME THE DATE THAT'S WRITTEN ON THAT TICKET.

1

DOTHAN/Martin & Brackin 1386
Confidential Subject to Protective
Order

SP:  11 2 THOU', 11/24/02.

KG:  UMKAY AND AH DOES THAT TICKET HAVE YOUR NAME ON IT?
SP:  YES, SIR, IT DOES.

KG:  LOOK AT THE INFORMATION ON THERE AHM, AND S', TELL ME IF THAT IS YOUR
     INFORMATION REGARDING THE DATE OF BIRTH, YOUR HOME AT THAT TIME AND
     EVERYTHING.
SP:  YES, SIR, IT'S MY CORRECT ADDRESS AT THAT TIME, AND MY DATE OF BIRTH,
     SOCIAL SECURITY NUMBER,

KG:  UMKAY, DO YOU REMEMBER RECEIVING A COPY OF THAT CITATION?
SP:  YES, SIR, I DO.

KG:  AH, WHERE WERE YOU AT WHEN YOU RECEIVED THAT CITATION?
SP:  SOUTH PARK AVENUE.

KG:  UMKAY.  YOU WERE PULLED OVER BY A UNIFORMED POLICE OFFICER?
SP:  YES, SIR.

KG:  HE WAS ON A DOTHAN POLICE CAR?
SP:  YES, SIR.

KG:  HAD THE UNIFORM, BADGE, GUN ON?
SP:  YES, SIR.

KG:  UMKAY.  AHM, DID THAT OFFICER ISSUE YOU THAT TICKET?
SP:  YES, SIR, HE DID.

KG:  AND WHAT WAS IT FOR?
SP:  IT WAS FOR AH SPEEDING.

KG:  UMKAY.  AND WHAT DID YOU EVENTUALLY DO WITH THAT TICKET?
SP:  HANDED IT TO MARY TURNER.

KG:  UMKAY.  AH, DO YOU KNOW HOW LONG IT WAS THAT YOU HANDED IT TO HER FROM
     THE DATE THAT IT WAS WRITTEN?
SP:  A LITTLE OVER A WEEK, MAYBE 2 OR 3 WEEKS.  IT WAS UH WITHIN A MONTH.
     IT WAS IN HER HANDS.

KG:  OKAY.  THE COURT DATE ON THIS TICKET SHOWS IN JANUARY, SO YOU RECEIVED
     THE CITATION NOVEMBER 24TH OF 02.  IT HAD A COURT APPEARANCE DATE OF
     JANUARY 7TH, OF '03, SO WAS IT SOMETIME IN BETWEEN THOSE DATES?
SP:  SOMETIME IN BETWEEN THAT DATE.

KG:  UMKAY.  AND AH TELL ME HOW, I KNOW YOU SAID YOU JUST HANDED IT TO HER
     BUT THERE HAD TO BE SOME TYPE OF AH DIALOGUE OR TALKING BEFORE YOU
     ACTUALLY PHYSICALLY HANDED IT TO HER.
SP:  RIGHT, RIGHT.  UH, ME AND MY BROTHER HAD TALKED AND HE HAD TOLD HIS
     BOSS MAN, KEVIN, AND UH THEY ALL KNEW I'D GOTTEN A TICKET.  MARY CALLED
     ME AND ASKED ME TO BRING THE TICKET TO HER.  SHE'D TAKE CARE OF IT.

KG:  UMKAY, LET'S BACK UP.  YOU AND YOUR BROTHER, WHAT'S YOUR BROTHER'S
     NAME?
SP:  BRADLEY PHELPS.

KG:  YOU HA', WERE YOU TWO LIVING TOGETHER AT THE TIME, SAME TIME?

2

DOTHAN/Martin & Brackin 1387
Confidential Subject to Protective
Order

SP:   YES, SIR.

KG:   AH, YOU INFORMED BRADLEY THAT YOU RECEIVED A TICKET?
SP:   RIGHT.

KG:   UMKAY, AND THEN NOW TELL ME A LITTLE BIT MORE DETAIL ABOUT WHAT
      HAPPENED?
SP:   HE HAD TOLD HIS BOSS MAN THAT I GOT A TICKET. HE, HE ASKED ME ABOUT
      IT, I HAD TOLD HIM I HAD GOTTEN A TICKET AND HE SAID, THEY, HE HAD
      OBVIOUSLY TALKED TO MARY ABOUT IT, BECAUSE YOU KNOW SHE CALLED ME. I
      HAD NEVER TALKED TO HER PRIOR TO IT.

KG:   UMKAY. NOW WHEN YOU SAY HE AND EVERYTHING, KEEP IN MIND WE'RE TALKING
      ABOUT
SP:   KEVIN TURNER.

KG:   UMKAY. AND SAY HER NAME. SO LET'S OR GO OVER THAT ONE MORE TIME.
      YOU ASKED YOUR BROTHER, YOU TOLD YOUR BROTHER BRADLEY ABOUT IT?
SP:   YES, SIR.

KG:   DID YOU KNOW THAT MRS., DID YOU KNOW WHERE MRS. TURNER WORKED AT?
SP:   NOT AT THE TIME I DIDN'T.

KG:   UMKAY, SO WHAT WOULD BE THE REASON FOR KEVIN, YOUR BROTHER TO TELL
      KEVIN ABOUT IT?
SP:   OBVIOUSLY BRAD KNEW ABOUT IT. SEE I DIDN'T, I DIDN'T KNOW MARY AS GOOD
      AS HE DID, I, I JUST KNEW WHO SHE WAS.

KG:   RIGHT, DID, HAD YOU DONE, HOW DID YOU KNOW WHO SHE WAS?
SP:   BECAUSE SHE WAS KEVIN'S WIFE. I HAD SEEN HER DOWN THERE AT THE SHOP
      BEFORE AND TALKED TO HER, YOU KNOW, IN THE SHOP.

KG:   UMKAY. TELL ME ABOUT THIS SHOP THING.
SP:   UH, WE, WE BUILT SIGNS AND HUNG SIGNS.

KG:   UMKAY, WHERE AT?
SP:   AH, VITAL SIGNS.

KG:   UMKAY, SO WHO'S THE OWNER OF VITAL SIGNS?
SP:   KEVIN TURNER.

KG:   OH, SO YOU USED TO WORK FOR KEVIN TURNER?
SP:   PART TIME, YES, SIR.

KG:   UMKAY, AND AH, THE, WAS THEIR SHOP ON THE PROPERTY?
SP:   YES, SIR, IT WAS.

KG:   AH, AND, AND WHEN I SAY THE PROPERTY, THE, THEIR SHOP WAS ON THE
      PROPERTY WHERE THEIR RESIDENCE IS LOCATED?
SP:   YES, SIR.

KG:   WAS THERE ANY OTHER STRUCTURES AROUND THERE THAT THEY OWN THAT YOU KNOW
      OF?
SP:   NOT THAT I KNOW OF.

KG:   UMKAY. AHM, IS THERE, TO YOUR KNOWLEDGE A TRAILER OR ANYTHING THERE?

DOTHAN/Martin & Brackin 1388
Confidential Subject to Protective
Order

SP:    YES, SIR, YES, SIR, THERE IS, I, I'D FORGOTTEN ALL ABOUT THAT.  THERE'S
       A TRAILER RIGHT BEHIND THE SHOP, RIGHT BESIDE THE HOUSE.

KG:    UMKAY.  IS IT ON THE SAME PIECE OF PROPERTY?
SP:    ON THE SAME PROPERTY.

KG:    DO YOU KNOW WHO OWNS THE TRAILER?
SP:    UH, KEVIN DOES, OR MARY DOES, ONE OF THE TWO DOES.

KG:    UMKAY.  HOW DO YOU KNOW THAT?
SP:    UH, I JUST REMEMBER SOMETHING BEING SAID ABOUT IT.  I REMEMBER BRAD OR
       KEVIN, SOMEBODY TELLING ME YOU KNOW THEY HAD THE TRAILER BACK THERE,
       AND I'D SEEN IT BEFORE.

KG:    UMKAY.  WHAT COLOR IS THE TRAILER, DO YOU REMEM'?
SP:    WHITE.

KG:    UMKAY.  NOW, AH, YOU USED TO DO SOME WORK FOR KEVIN?
SP:    YES, SIR.

KG:    UMKAY, WAS MARY TURNER EVER AROUND TO SEE YOU DO WORK?
SP:    YES, SHE COME IN THE SHOP, YOU KNOW, NOT REGULARLY, BUT SHE'D COME IN
       THERE FROM TIME TO TIME.

KG:    UMKAY, AH, SO SHE HAS SEEN YOU BEFORE, PRIOR TO YOU RECEIVING A TICKET?
SP:    YES, SIR.

KG:    UMKAY, AND SHE KNEW THAT YOU WORKED FOR HER HUSBAND?
SP:    YES, SIR.

KG:    OKAY.  NOW, YOU SPOKE TO BRADLEY, AND BRADLEY TOLD KEVIN
SP:    YES, SIR.

KG:    AND THEN WHAT HAPPENED?
SP:    AH, MARY CALLED ME AND SAID AH, STEPHEN IF YOU BRING YOUR TICKET UP
       HERE I CAN TAKE CARE OF IT.  I NEED YOUR COPY OF IT.

KG:    UMKAY.  DID AH, WAS THAT THE FIRST TIME SHE CONTACTED YOU ABOUT THE
       TICKET?
SP:    YES, SIR, THAT WAS THE FIRST TIME SHE HAD EVER CALLED ME.

KG:    UMKAY, SO WHAT DID YOU DO?
SP:    I GOT IN MY CAR AND TOOK HER THE TICKET.

KG:    UMKAY.  AH, WHEN YOU MET HER TO GIVE HER THE TICKET, WHERE WERE YOU AT?
SP:    HER HOUSE.

KG:    UMKAY.
SP:    HER FRONT DOOR.

KG:    DO YOU REMEMBER WHO CAME TO THE DOOR?
SP:    SHE CAME TO THE DOOR.  SHE ANSWERED THE DOOR AND AH SHE ASKED ME FOR
       THE TICKET AND I GAVE HER THE TICKET. SHE SAID SHE WAS GONNA TAKE CARE
       OF IT FOR ME AND THAT'S PRETTY MUCH THE END OF CONVERSATION.

KG:    UMKAY. WAS KEVIN THERE WHEN AH, THAT YOU SAW
SP:    NOT THAT I SEEN.  THE ONLY PERSON I HAD SEEN WAS HER.

4

DOTHAN/Martin & Brackin 1389
Confidential Subject to Protective
Order

KG: UMKAY. DID YOU WALK IN THE HOUSE, OR IS THIS OUT FRONT OF
SP: SHE WALKED, SHE WALKED OUT OF THE DOOR. I NEVER WALKED IN.

KG: DID SHE EVER ASK YOU TO DO ANYTHING EXCHANGE FOR AH TAKING THAT TICKET
FROM YOU?
SP: NO, SIR, SHE DIDN'T.

KG: HAVE YOU BEEN TO COURT ON THAT TICKET AT ALL?
SP: NO, SIR.

KG: HAVE YOU RECEIVED ANY NOTIFICATIONS IN THE MAIL STATING TO COME TO
COURT?
SP: NO, SIR.

KG: HAVE YOU IN FACT SEEN THIS TICKET ANY MORE SINCE THE DAY YOU GAVE IT TO
HER FROM WHEN I JUST SHOWED IT TO YOU?
SP: NO, SIR.

KG: DO YOU HAVE ANY KNOWLEDGE ABOUT AH YOUR BROTHER BRADLEY RECEIVING A
TICKET?
SP: YES, SIR, I DO.

KG: TELL ME WHAT YOU KNOW ABOUT THAT, WHAT HAPPENED?
SP: AH, I KNOW HE HAD GOTTEN A TICKET, WHAT, WHAT IT WAS FOR I'M, I CAN'T
REMEMBER. IT'S BEEN A WHILE BACK, UH, I KNEW MARY TOOK CARE OF IT FOR
HIM. AH, AND THAT WAS THE END OF HIS TICKET UNTIL WHAT'S COMING OUT
NOW.

KG: SO, AH, WAS HIS CITATION GIVEN TO HIM AFTER YOURS OR BEFORE YOURS? AND
IF YOU DON'T REMEMBER THAT'S FINE.
SP: ACTUALLY I REALLY CAN'T REMEMBER, I DON'T

KG: UMKAY.
SP: KNOW IF IT WAS BEFORE OR AFTER.

KG: UMKAY. WELL I HAVE THE ACTUAL TICKET SO I CAN TELL YOU THE DATE OF IT.
IT WAS AH ACTUALLY AFTER YOURS. IT WAS APRIL THE 14TH OF '03. SO HE DID
RECEIVE IT AFTER YOURS.
SP: RIGHT.

KG: AH, DO YOU KNOW OF KEVIN DOING, EXCUSE ME, OF BRAD DOING ANY WORK FOR
MRS. TURNER? DO YOU HAVE ANY FIRST HAND KNOWLEDGE OF THAT?
SP: UM, YEAH, YEAH I DO. YEAH I DO. HE WAS SUPPOSED TO FIX A TRAILER, THE
ROOF ON THE TRAILER.

KG: UMKAY.
SP: HIM AND MY FATHER WERE.

KG: AND HOW DO YOU HAVE THAT FIRST HAND KNOWLEDGE?
SP: BECAUSE UH I WAS SUPPOSED TO GO OVER THERE AND HELP 'EM. BUT I, I
COULDN'T CAUSE I HAD MY DAUGHTER THAT WEEKEND.

KG: UMKAY. WHO ASKED YOU TO COME HELP THEM?
SP: MY BROTHER DID.

KG: UMKAY. AH, AND HE TOLD YOU IT WAS, HE NEEDED YOUR HELP TO REPAIR

5

DOTHAN/Martin & Brackin 1390
Confidential Subject to Protective
Order

SP:   THE ROOF ON THE TRAILER.

KG:   UMKAY.  AH, WERE YOU GONNA GO WITH HE AND YOUR FATHER, OR WAS HE ASKING YOU FIRST?

SP:   HE WAS ASKING ME FIRST AND THEN WHEN I COULDN'T GO MY FATHER WAS TO GO.

KG:   UMKAY.  AND YOU KNEW THAT HE WAS TALKING ABOUT THE TRAILER AT MRS. TURNER'S HOUSE?

SP:   YES, SIR.

KG:   AND AH, DID HE TELL YOU ANYTHING ELSE ABOUT WHY HE WAS GOING TO FIX IT OR ANYTHING?

SP:   SHE, AH, NAW NOT REALLY, HE JUST SAID THAT HE WAS SUPPOSED TO GO FIX THE ROOF FOR MARY.

KG:   UMKAY.  DID YOU AH, DO YOU HAVE ANY OTHER FIRST HAND KNOWLEDGE ABOUT ANYTHING THAT HAPPENED AFTER THAT AH DEALING WITH THE REPAIR OF THE TRAILER OR ANYTHING ELSE FIRST HAND KNOWLEDGE?

SP:   UH, I WAS THERE WHENEVER SHE CALLED BACK THAT DAY AND BRAD SAID THAT WE HAVE FAMILY IN TOWN, YOU KNOW, HE WOULDN'T BE ABLE TO GO OVER THERE. THAT HE COULD DO IT THE NEXT WEEKEND.  AND UH I REMEMBER SHE CALLING BACK AND BEING MAD AND RUDE AND SAYING SHE WAS GONNA MAKE HIS TICKET REAPPEAR IF HE DIDN'T COME OVER THERE AND SHOW UP.

KG:   NOW, HOW DO YOU HAVE FIRST HAND KNOWLEDGE OF THAT?

SP:   AH, I WAS STANDING RIGHT THERE WHENEVER IT HAPPENED.  I, I COULD HEAR YELLING, OR NOT YELLING BUT TALKING LOUD ON THE PHONE BEING SNOBBY.

KG:   UMKAY.  WHO WERE YOU NEXT TO THAT WAS ACTUALLY TALKING ON THE PHONE?

SP:   UH, I'M TRYING TO THINK, I

KG:   IF YOU DON'T REMEMBER

SP:   I THINK IT, IT MIGHTA BEEN MY DAD OR IT WAS SOMEBO', SOMEBODY IN MY FAMILY, CLOSE FAMILY.  IT WAS EITHER MY DAD OR MY SISTER OR MY MOM.

KG:   UMKAY.

SP:   IT WAS, IT MIGHTA BEEN BRAD, I DON'T KNOW.  I REMEMBER JUST STANDING THERE AND I REMEMBER HER TALK AND YELL, OR AH TALKING LOUD.

KG:   HOW DID YOU KNOW THAT IT WAS MRS. TURNER ON THE OTHER END?

SP:   UH, CAUSE I KNOWED IT WAS ABOUT THE TRAILER.  IT SHOWED UP ON CALLER I.D.

KG:   UMKAY.  HER NAME OR HER NUMBER?

SP:   YEAH, THE NUMBER SHOWED UP,

KG:   UMKAY.

SP:   NUMBER AND NAME.

KG:   UMKAY, SO THE NAME AND NUMBER APPEARED ON THE CALLER I.D.?

SP:   RIGHT.

KG:   AND YOU SAW THAT?

SP:   RIGHT.

KG:   AND THEN YOU HEARD A LOUD VOICE COME

DOTHAN/Martin & Brackin 1391
Confidential Subject to Protective Order

SP:   YEAH, I COULD HEAR HE SPEAKING LOUD.  I MEAN I'M NOT GONNA SAY SHE WAS YELLING, BUT SHE WAS SPEAKING LOUD.

KG:   UMKAY.  AHM, HOW FAR WERE YOU AWAY FROM THE PHONE?
SP:   I WAS STANDING RIGHT THERE.  WE WERE BOTH IN THE KITCHEN.

KG:   UMKAY.  AND WHO, COULD YOU RECOGNIZE THE VOICE ON THE PHONE?
SP:   YES, SIR, I COULD.

KG:   AND WHO WAS IT?
SP:   IT WAS MARY TURNER.

KG:   UMKAY.  AH, WAS ANYTHING SAID AFTER THE PHONE CONVERSATION ENDED?
SP:   BETWEEN ME AND, ME AND BRAD OR

KG:   AFTER, AFTER WHOEVER HUNG UP THE PHONE, DID THEY COMMENT AS TO WHAT WAS BEING SAID?
SP:   RIGHT, THEY SAID SHE WAS RUDE, SAID THAT AH SHE SAID SHE WAS GONE MAKE THE TICKET REAPPEAR IF HE DIDN'T COME OVER THERE RIGHT THEN.

KG:   UMKAY.  BUT YOU DON'T REMEMBER WHICH SPECIFIC PER', FAMILY MEMBER IT WAS?
SP:   I DON'T REMEMBER WHO IT WAS, I MEAN UH, THERE WAS, WE HAD FAMILY IN TOWN.  I MEAN THERE WAS YOU KNOW QUITE A FEW PEOPLE IN THE HOUSE, I HAD MY DAUGHTER IN MY ARMS.

KG:   UMKAY, THAT'S BEING FAIR.  AH, AND KEEP IN MIND IT'S OKAY TO SAY EITHER I DON'T KNOW, OR I WASN'T, I MEAN
SP:   RIGHT.

KG:   IT'S, JUST TELL THE TRUTH ON HOW EVERYTHING HAPPENED.  I DON'T HAVE ANY REASON TO THINK OR BELIEVE OTHERWISE.
SP:   RIGHT.

KG:   AH, DO YOU KNOW IF ANYONE WENT TO REPAIR THE ROOF?
SP:   I KNOW MY FATHER AND MY BROTHER BRAD BOTH WENT OVER THERE AND THEY PUT A TARP ON THE ROOF UNTIL THEY COULD FIX IT.

KG:   UM, HM.
SP:   UNTIL THEY GOT THE MATERIAL.

KG:   DID YOU SEE THEM LEAVE OR DOES, IS THIS SOMETHING THAT THEY JUST DID?
SP:   YEAH, I KNOW THEY HAD LEFT AND THAT, I THINK THEY WENT TO LOWE'S TO GET A TARP AND THEN THEY WENT BACK TO HER HOUSE AND PUT THE TARP ON THE ROOF OF THE TRAILER.

KG:   UMKAY.  AH, DO YOU HAVE ANY FIRST HAND INFORMATION ABOUT ANYTHING ELSE THAT HAPPENED AFTER THAT?
SP:   UH,

KG:   OR DID BRAD TELL YOU ANYTHING OR DID ANYONE ELSE TELL YOU ANYTHING THAT MAY HAVE TRANSPIRED?
SP:   NAW, NOT, THE NEXT THING I KNEW ABOUT IT WAS AH HIM GETTING PULLED OVER SAYING THAT HIS LICENSE WERE SUSPENDED AND HIM GETTING HANDCUFFED AND TOOK TO JAIL.

DOTHAN/Martin & Brackin 1392
Confidential Subject to Protective
Order

KG:   UMKAY.  IS THERE ANYTHING THAT AH I NEED TO ASK YOU ABOUT MAYBE THAT I HAVE NOT OR ANYTHING YOU WANT TO BRING TO MY ATTENTION ABOUT YOUR TICKET AH THAT I HAVEN'T ASKED YOU ABOUT?

SP:   NO, SIR, I MEAN, PRETTY MUCH COVERED IT.

KG:   UMKAY.

SP:   I GUESS.

KG:   IS EVERYTHING YOU TOLD ME THE TRUTH?

SP:   YES, SIR, IT IS.

KG:   I WANT YOU TO TAKE A LOOK AT THE TICKET THAT HAS YOUR NAME ON IT AND LOOK AT THE SIGNATURE WHERE IT SAYS DEFENDANT'S SIGNATURE.  DO YOU RECOGNIZE THE SIGNATURE THERE?

SP:   YES, SIR, I DO.

KG:   AHM, WHOSE IS IT?

SP:   IT'S MINE.

KG:   AND THAT IS YOUR SIGNATURE?

SP:   YES, SIR, IT IS.

KG:   ALL RIGHT.  THIS IS GONNA BE THE END OF THIS STATEMENT.  TIME IS 4:09 P.M.

8

DOTHAN/Martin & Brackin 1393
Confidential Subject to Protective Order

# Statement

# Of

# Eric Duhaime

DOTHAN/Martin & Brackin 1394
Confidential Subject to Protective
Order



# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

You are being questioned as a part of an official administrative investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. If you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: *Cpl. John E D L*

DATE/TIME: *4-26-2005 / 1020*

INVESTIGATING OFFICER: *Sgt. R. Keith Gray*

DATE/TIME: *4-26-05   1020*

WITNESS SIGNATURE: *Sgt. Ray O'Meara*

DATE/TIME: *4-24-2005 / 1020*

PD 15 B

DOTHAN/Martin & Brackin 1395
Confidential Subject to Protective Order



# DOTHAN POLICE DEPARTMENT
### Notification of Charges and/or Allegations

**NAME OF MEMBER:** _Eric Duhaime_____    **Employee #** _434_

**Division Of Assignment:** _Field Operations Bureau___  **Squad:** _Fourth___

**RANK:** _Corporal___  **Case Numbers:** _____    # _____

Departmental policy provides that you have the right to be advised in writing of the complaint against you prior to your questioning concerning the allegation regardless of its nature and even if the allegation is such that it will <u>not</u> result in the filling of criminal or separation charges.

Accordingly, you are hereby advised that the following allegations have been made against you:

STATEMENT:

> 11-24-02 you issued a citation to Steven Allen Phelps for speeding (See ticket # M 5533359) and later you swore an oath of affirmation to Magistrate Mary Brackin. This citation failed to be heard in court. An administrative investigation is underway to determine the facts of this citation, and you are the subject of the investigation regarding possible misconduct. _____

I have received a copy of the allegations _Cpl. John Eric D_____    _4-26-05_
                                             Name                              Date

Witness: _Sgt. C. K. Ivey_____    Witness: _Lt. Paul Owens 513_

PD 15A

DOTHAN/Martin & Brackin 1396
Confidential Subject to Protective Order

KG:    THIS IS SGT. GRAY. THE DATE IS APRIL THE 26TH, 2005. THE TIME IS 10:22 A.M. THE LOCATION OF STATEMENT IS GOING TO BE IN THE CHIEF'S CONFERENCE ROOM. AH, ALSO PRESENT IN THIS INTERVIEW IS SGT. RAY OWENS WITH THE INTERNAL AFFAIRS DIVISION AS I AM AS WELL, SGT. KEITH GRAY. PLEASE STATE YOUR FULL NAME FOR ME.

ED:    CPL. JOHN ERIC DUHAIME.

KG:    AND WHAT IS YOUR RANK AND I.D. NUMBER?

ED:    CORPORAL WITH THE DOTHAN POLICE DEPARTMENT, AND MY I.D. NUMBER IS 434.

KG:    WHAT'S YOUR CURRENT ASSIGNMENT?

ED:    FOURTH SQUAD PATROL DIVISION.

KG:    ARE YOU TAKING ANY MEDICATIONS PRESCRIBED BY A DOCTOR THAT WOULD AFFECT YOUR ABILITY TO THINK CLEARLY?

ED:    NO.

KG:    ARE YOU NOW UNDER THE INFLUENCE OF ALCOHOL OR ILLEGAL DRUGS?

ED:    NO, SIR.

KG:    I'M SGT. GRAY. I'M A SERGEANT CURRENTLY ASSIGNED TO INTERNAL AFFAIRS DIVISION AS AH I ALREADY STATED. AH, SGT. RAY OWENS IS ALSO ASSISTING AND PRESENT DURING THIS INTERVIEW. BE ADVISED THAT THIS IS AN ADMINISTRATIVE INVESTIGATION. AH WERE YOU PRESENTED A GARRITY NOTICE?

ED:    YES, I WAS.

KG:    DID YOU READ IT?

ED:    YES, I DID.

KG:    DID YOU UNDERSTAND IT?

ED:    YES, I DID.

KG:    OKAY. WERE YOU ALSO AH GIVEN A AH COMPLAINT FORM PD 15A WHICH IS A NOTIFICATION OF CHARGES AND/OR ALLEGATIONS?

ED:    YES, SIR.

KG:    DID YOU READ THAT AS WELL?

ED:    YES, SIR.

KG:    AND DO YOU UNDERSTAND IT?

ED:    LITTLE BIT CONFUSED ABOUT THE POSSIBLE MISCONDUCT.

KG:    OKAY. THAT'LL BE CLEARED UP DURING THIS INTERVIEW.

ED:    I UNDERSTAND.

KG:    DO YOU UNDERSTAND THIS STATEMENT'S BEING RECORDED?

ED:    YES, SIR, I DO.

KG:    OKAY. AS I SAID YOU ARE THE SUBJECT AH OF THE INVESTIGATION. AH, WHEN YOU WERE HIRED, WERE YOU ISSUED A DEPARTMENT PGO MANUAL?

ED:    YES, SIR, I WAS.

KG:    AH, DID YOU RECEIVE THE REVISIONS AND THE UPDATES FOR THAT MANUAL?

ED:    YES, SIR, I DID.

KG:    ARE YOU RESPONSIBLE, ARE YOU RESPONSIBLE FOR KNOWING WHAT IT CONTAINS?

ED:    YES, SIR, I AM

1

DOTHAN/Martin & Brackin 1397
Confidential Subject to Protective Order

KG:  WERE YOU ALSO ISSUED A RULES & REGULATIONS HANDBOOK?
ED:  YES, SIR, I WAS.

KG:  AND DO YOU RECEIVE UPDATES TO THAT AS WELL?
ED:  YES, SIR.

KG:  AND YOU'RE RESPONSIBLE FOR KNOWING WHAT IT CONTAINS?
ED:  YES.

KG:  OKAY. AH AS STATED ON THE PD 15A, IT STATES THAT ON NOVEMBER 24TH,
     2004, YOU ISSUED A TRAFFIC CITATION TO STEVEN ALLEN PHELPS. THAT
     CITATION NUMBER IS M5533359. AND AH YOU SWORE AN OATH OF AFFIRMATION
     AH AND I'M GONNA SHOW YOU THE TRANSMITTAL FORM, AH, THAT AH THAT
     CORRESPONDING CITATION NUMBER AH, IT'S HERE, AND AH IT WAS SWORN TO OF
     COURSE TO THE TRANSMITTAL FORM BY MARY BETH BRACKIN. AH, DO YOU RECALL
     THIS TRANSMITTAL FORM?
ED:  YES, SIR, I DO.

KG:  AND AH, DID IN FACT MRS. BRACKIN SIGN IT AND YOU RECEIVED YOUR COPIES
     OF THE TICKET?
ED:  YES, SIR, SHE DID.

KG:  OKAY. AH, IN REFERENCE TO YOUR QUESTION THAT YOU ASKED I WANT TO COVER
     IT, WHEN YOU SAID POSSIBLE MISCONDUCT. AH ARE YOU AWARE OF A
     DEPARTMENTAL AH POLICY LETTER AH DEALING WITH UNIFORM TRAFFIC CITATIONS
     THAT WE WERE GIVEN?
ED:  I HAVE SEEN IT. I COULDN'T TELL YOU EXACTLY WHAT'S IN IT AH WORD FOR
     WORD, BUT I AM AWARE OF IT.

KG:  OKAY. AH, YOU'VE SEEN IT. HAVE YOU READ IT AND GOVERNED YOUR JOB
     ACCORDING TO THE POLICY THAT WAS
ED:  TRYING TO, YES, SIR.

KG:  OKAY. AH, WITH REGARD TO THE POLICY LETTER, IT STATES AH, AH, HOW TO
     HANDLE THE UNIFORM TRAFFIC CITATIONS AND IF THE CITATIONS WERE AH
     VOIDED WHAT THE PROCESS AH IS FOR THAT. ARE YOU AWARE OF THAT?
ED:  I KNOW THAT IT DOES COVER THAT, YES, SIR

KG:  OKAY. AH, TELL ME IN YOUR OWN WORDS WHAT YOU REMEMBER SPECIFICALLY
     REGARDING STEVEN PHELPS' CITATION?
ED:  I REMEMBER WRITING HIM A TICKET. I STOPPED HIM ON SOUTH PARK, THAT, I
     BELIEVE IT WAS WOODBERRY, SOMEWHERE IN THAT AREA. HE WAS ON A
     MITSUBISHI ECLIPSE, AH, IT WAS ON 11/24 OF 2002. THE CITATION STATES
     THAT IT WAS AT 1405. I WROTE HIM A TICKET FOR 56 IN A 40. NOTHING
     REALLY STANDS OUT ABOUT THE TRAFFIC STOP. AH, I DID REMEMBER. I
     THOUGHT IT WAS A LOCAL IMPACT THAT I WAS WORKING, BUT AFTER LOOKING AT
     THE AH TRANSMITTAL FORM IT SHOWS THAT THOSE WERE, THERE'S ONLY THREE,
     I'M SORRY, YEAH, THREE TICKETS WRITTEN ON THAT DATE, SO IT WOULDN'T
     HAVE BEEN A LOCAL IMPACT STOP, CAUSE I, I WRITE EIGHT ON THOSE DAYS.
     AH, THE REMAINING TICKETS WERE LOCAL IMPACT I, I STOPPED, THAT'S WHY I
     THOUGHT IT WAS, BUT APPARENTLY IT WAS JUST ON PATROL. AH, I REMEMBER
     HAVING THE, IF I'M NOT MISTAKEN I HAD THE TRANSMITTAL FILLED OUT WITH
     ALL THE TICKETS I WAS GONNA SWEAR TO THAT DAY BEFORE I WENT TO THE
     MAGISTRATE'S OFFICE, TURNED 'EM IN AND LEFT, OR SWORE TO 'EM, TURNED
     'EM IN AND LEFT. UH, IF I'M NOT MISTAKEN, ONCE, TO THE BEST OF MY
     RECOLLECTION IS AH I RECEIVED A PAGE FROM MARY TURNER TO CALL HER AT

2

DOTHAN/Martin & Brackin 1398
Confidential Subject to Protective
Order

THE MAGISTRATE'S OFFICE AS I WAS LEAVING, UH, OR GETTING BACK IN MY CAR. WHEN I GOT BACK IN MY CAR AND DROVE OFF I CALLED HER BACK FROM MY CELL PHONE. SHE ASKED ME IF I MINDED IF SHE OR IF THAT TICKET WAS VOIDED OUT AND I SAID, DON'T REMEMBER WORD FOR WORD, I MEAN THIS WAS 2002 SO I CAN'T TELL YOU WORD FOR WORD, BUT BASICALLY I SAID I, YOU KNOW, THAT'S FINE, I DON'T CARE.

KG: UM, HM. AND WHAT HAPPENED AFTER THAT?
ED: I, I BELIEVE THAT I TOLD HER, SHE ASKED, I DO BELIEVE THAT I REMEMBER HER ASKING IF I WANTED TO COME BACK AND GET A COPY OF IT, OR THE COPIES, I SAID NO, AH, JUST INTEROFFICE, UH, SEND 'EM TO ME THROUGH INTEROFFICE MAIL SO THAT I HAVE ALL THE COPIES. THAT WAY I CAN GET 'EM TURNED IN. AND THEN I, TO BE HONEST WITH YOU, NEVER SAW THE THING AGAIN OR, OR I MEAN I DIDN'T SEE THE THING AGAIN AND I, UNTIL YOU BROUGHT IT UP, AND I GOT TO LOOKING FOR THE COPY THAT I WROTE, FOUND IT, AND THEN GOING THROUGH SOME OF MY PERSONAL RECORDS FOUND THE ENVELOPE THAT HAD MY NAME ON IT IN RED INK, EXCUSE ME, AND IT WAS STILL SEALED AND AH, IMAGINE MY SURPRISE UPON OPENING IT, FINDING ALL THE TICKETS. SO THAT'S PRETTY MUCH IT IN A NUTSHELL.

KG: OKAY, SO AH WHEN YOU OPENED THE ENVELOPE, DID IT HAVE AH, ALL THE COPIES FOR THE EXCEPTION OF THE OFFICER'S COPY IN IT?
ED: IT HAD ALL THE EX', AH COPIES, WITH THE EXCEPTION OF THE POLICE RECORD COPY WHICH IS MINE THAT I'M SUPPOSED TO KEEP, THAT I BROUGHT UP HERE TO YOU THAT PRIOR, OR THAT EVENING BEFORE.

KG: RIGHT
ED: AND AS SOON AS I FOUND THE, FOUND THAT I, I IMMEDIATELY CALLED THE CAPTAIN AND SAID EH, YOU KNOW I'M NOT TRYING TO HIDE ANYTHING OR, LIKE I FOUND THIS AND, AND I NEED TO GET IT TO YOU. AH,

KG: DO YOU REMEMBER IF THE ENVELOPE WAS STILL SEALED?
ED: IT WAS STILL SEALED.

KG: OKAY. SO, YOU DIDN'T ACTUALLY KNOW WHAT WAS INSIDE THE ENVELOPE.
ED: I ACTUALLY HAD NO IDEA IT WAS IN THERE.

KG: OKAY.
ED: AND THE, I MEAN THE ONLY REASON THAT, THAT I CAN I DIDN'T LOOK AT IT, DURING THAT TIME, I KNOW THIS IS NO EXCUSE BUT AH, DURING THAT TIME I WAS GOING THROUGH A TRANSITION FROM, I WAS STILL IN A BIKE UNIT, TRANSITIONING FROM BIKES TO CAR. I BELIEVE I WAS STILL ON THE BIKE UNIT, I, THAT, I MAY BE WRONG. A LOT OF THINGS GOING ON. I HAD RECENTLY COME OUT OF NARCOTICS, AH, I WAS GOING THROUGH A WHOLE LOT OF STUFF FOR THE MOVE AND THE HOUSE AND THE ONLY THI', ONLY EXCUSE I COULD PROBABLY HAVE WAS THAT ENVELOPE GOT LOST IN SOME PAPERWORK AND SHUFFLED AROUND. THAT'S WHY IT WASN'T TURNED IN. BUT, I MEAN I KNOW IT'S NOT AN EXCUSE. THAT'S THE ONLY, YOU KNOW, THE ONLY, AH, I DON'T KNOW WHAT'S THE WORD I'M LOOKING FOR.

RO: REASON.
ED: REASON THAT I COULD, YOU KNOW, COULD GIVE YOU FOR THAT.

KG: IF YOU WOULD, EXPLAIN TO ME THE POLICY AS YOU KNOW IT DEALING WITH HANDLING AH VOIDED CITATIONS.
ED: IT'S CHANGED A COUPLA TIMES, BUT AH AS I KNOW IT, WE WERE TO, IF, IF WE DID VOID A CITATION OUT, AH, NUMBER ONE, YOU KNOW WRITE IN BIG BOLD

DOTHAN/Martin & Brackin 1399
Confidential Subject to Protective Order

PRINT VOID ACROSS THE TICKET. I NORMALLY, WHATEVER REASON I VOID IT OUT FOR PUT A LITTLE SMALL REASON UNDER THE WARNING ONLY NORMALLY OR FOUND INSURANCE OR SOMETHING OF, OF THAT NATURE. WHEN YOU GO TO SWEAR TO IT, AH, I NEVER EVEN WRITE ANYBODY'S NAME DOWN IN THE AH REMARKS WHERE YOU SUPPOSED TO PUT THEIR NAME. I ALWAYS JUST PUT VOIDED. BUT AH,

KG: NOW ON THE TICKET OR THE TRANSMITTAL?
ED: I'M TALKING ABOUT, I'M REFERRING TO THE TRANSMITTAL FORM

KG: OKAY.
ED: THE LAST COLUMN WHERE IT SAYS REMARKS WHERE YOU WRITE EVERYBODY'S NAME IN THAT YOU WROTE A TICKET TO. I DON'T EVEN WRITE THEIR NAME ON THERE IF I VOID A TICKET. I JUST YOU KNOW I PUT VOIDED, V O I D E D. AND THE MAGISTRATE'S OFFICE GETS A COPY, AND THEN TURN IN A COPY TO THE CHIEF'S OFFICE. AND THAT'S THE WAY I'VE DONE 'EM.

KG: WHAT WOULD HAPPEN TO THE TICKETS THEMSELVES PHYSICALLY ONCE YOU WRITE VOID ON THEM?
ED: UH, THEY'RE SUPPOSED TO BE TURNED IN TO, I BELIEVE EVERYTHING'S SUPPOSED TO BE TURNED IN ON A, I DON'T REMEMBER THE, THE AH FORM NUMBER. IT'S AH, VERY SIMILAR TO THE TRANSMITTAL FORM FOR COURT SYSTEM AND UH WELL I MEAN NORMALLY THE TICKETS ARE KEPT BY THE MAGISTRATE'S OFFICE, BUT ON A VOIDED TICKET I'M ASSUMING THAT THEY GET TURNED IN TO SGT. HENDERSON. BUT EVERY TIME I'VE COME UP HERE AND TRIED TO TURN 'EM, UH IT'S EITHER HE'S NOT HERE OR THERE. KNOWING THESE ARE, YOU KNOW WE'RE RESPONSIBLE FOR THESE I'VE GOT, A FILE THAT I KEEP ALL MY TICKETS IN THAT I'M RESPONSIBLE FOR, POLICE RECORD TICKETS.

KG: OKAY. THAT IS THE OFFICER'S COPY OR
ED: YEAH.

KG: OR THE VOIDED COPIES AS WELL?
ED: VOIDED COPIES, I, FROM MY UNDERSTANDING I THOUGHT WE WERE SUPPOSED TO ONLY TURN A COPY TO THE CHIEF'S OFFICE IN.

KG: OKAY. AND THEN THE, ALL OF THE ORIGINALS AH, CAME, CONTAINS IN THAT WHICH WERE FOR, FOUR I GUESS LACK OF A BETTER WORD, FOUR ORIGINALS SINCE WE'RE USING COPY
ED: RIGHT.

KG: AS (UNINT) PHOTOSTAT COPY.
ED: RIGHT.

KG: THE FOUR ORIGINALS WOULD THEN BE TURNED INTO SGT. HENDERSON?
ED: THAT'S UH FROM MY UNDERSTANDING.

KG: OKAY. AH WAS THAT DONE IN THIS CASE?
ED: NO, IT WAS NOT.

KG: AH, WHEN YOU RECEIVED A CALL FROM MRS. TURNER WAS THAT ON THE SAME DAY?
ED: SAME DAY AS WHAT, THE SAME DAY THAT I, THAT I SWORE TO THIS?

KG: SWORE TO THESE TICKETS?
ED: YES, IT WAS. AS I STATED, WHEN I WALKED OUT AND WAS GETTING INTO MY CAR THAT'S WHEN I GOT THE PAGE. WHEN I LEFT THE MAGISTRATE'S OFFICE AFTER SWEARING TO THESE, TO THESE TICKETS, THAT'S WHEN I GOT THE PAGE.

DOTHAN/Martin & Brackin 1400
Confidential Subject to Protective Order

KG:  OKAY.

ED:  AND I, LIKE I SAID, I DROVE OFF, GOT ON THE PHONE AND, AND CALLED HER FROM MY CELL PHONE.

KG:  DO YOU REMEMBER WHEN YOU RECEIVED THE ORIGINAL COPIES OF THE

ED:  I HAVE ABSOLUTELY NO IDEA.

KG:  DO YOU KNOW HOW YOU RECEIVED THEM?

ED:  IT WOULD'VE HAD TO HAVE BEEN THROUGH INTEROFFICE, INTEROFFICE MAIL, UH, SENT TO MY SQUAD, BECAUSE I MEAN THE LETTER THAT IT WAS IN IS A CITY OF DOTHAN MUNICIPAL COURT LETTER AND THE ONLY THING, OTHER THING ON THERE IS MY NAME WRITTEN IN RED INK.  THERE'S NO, YOU KNOW SEND TO ADDRESS OR, OR ANYTHING LIKE THAT, SO IT WOULD'VE HAD TO BEEN THROUGH INTEROFFICE MAIL, AND THAT'S, THAT'S THE ONLY WAY I CAN SAY THAT I GOT IT.

KG:  IS THERE A TIME LIMIT OR A DISTINCTION BETWEEN AH YOUR AUTHORITY TO VOID THE TICKET AND PERHAPS YOUR AUTHORITY NOT TO VOID THE TICKET?

ED:  NOTHIN'

KG:  I'LL, I'LL REWORD…

ED:  SEE IF YOU CAN CLARIFY THAT, CAUSE I, MAYBE I'M NOT UNDERSTANDING.

KG:  IS THERE, IS THERE A POINT IN TIME WHERE YOU HAVE FULL CONTROL OVER VOIDING A TICKET VERSUS IT BEING GONE TOO FAR THROUGH THE PROCESS WHERE YOU CAN'T ACTUALLY DO THAT ON YOUR OWN INDEPENDENCE?

ED:  IN MY UNDERSTANDING, IT'S MY DISCRETION AS TO WHETHER OR NOT I SWEAR TO A TICKET.  FROM MY UNDERSTANDING AND MY, THE WAY I'VE ALWAYS BEEN TAUGHT, ONCE A TICKET IS SWORN TO THEN IT'S NOTHING I CAN DO ABOUT IT.  SO THAT'S FROM MY UNDERSTANDING.

KG:  ALL RIGHT.  IN THIS PARTICULAR CASE, AH THE TICKET HAS BEEN SWORN TO AND YOU HAD NO INTENTIONS OF

ED:  I HAD NO INTENTIONS OF, NO,

KG:  OF VOIDING IT.

ED:  OF VOIDING IT OUT, NO.

KG:  AND AH, IF YOU WOULD STATE THE REASON AGAIN WHY YOU DECIDED TO VOID THAT WHEN ASKED BY MRS. TURNER?

ED:  SHE SAID SHE KNEW THE GUY, AH, I SIMPLY AGREED TO LET HER SEND THE TICKET BACK TO ME.  AH,

KG:  DID SHE SAY HOW SHE KNEW HIM OR

ED:  SHE DIDN'T TELL ME ANYTHING ABOUT HOW SHE KNEW HIM, NO.  I MEAN IT'S, I'M NOT TRYING TO GET ANYBODY IN TROUBLE BUT IT'S, YOU KNOW, I, SOMEBODY, ESPECIALLY A PROFESSIONAL COLLEAGUE ASKS ME, I BELIEVE IN PROFESSIONAL COURTESY.  AH, BUT I JUST DIDN'T REALIZE IT HAD GONE, I MEAN IT WAS UNDER THAT POINT THAT OKAY IT'S BEEN SWORN TO, THAT WAS, WHERE I MEAN, I JUST DIDN'T REALIZE.

KG:  OKAY.  SO AFTER YOU SWORE TO IT, DID YOU STOP TO THINK WHEN YOU WERE APPROACHED TO IT, BECAUSE YOU EARLIER STATED IN THIS (UNINT) THAT ONCE YOU SWORE TO IT, YOU DON'T HAVE THE AUTHORITY TO

ED:  RIGHT.

DOTHAN/Martin & Brackin 1401
Confidential Subject to Protective Order

KG:  TAKE IT BACK.  DID YOU THINK AT ANY POINT WHEN SHE CALLED YOU THAT YOU
     DON'T HAVE THAT AUTHORITY TO TAKE IT BACK?
ED:  I, I HONESTLY DIDN'T GIVE IT A, I DIDN'T THINK ABOUT IT ANY MORE TO BE
     HONEST WITH YOU.

KG:  HAD YOU EVER BEEN FACED WITH A SITUATION LIKE THIS
ED:  I HAD NEVER BEEN FACED WITH A SITUATION LIKE THIS, NOT, NO, SIR.

KG:  AH, HAVE YOU VOIDED AH TICKETS THE WAY THE POLICY DICTATES THAT, THAT
     BEFORE IT'S SWORN TO, WHICH YOU STILL HAVE THE DISCRETION TO DO, YOU
     CAN DO THAT AND TURN THE TICKETS IN (UNINT)
ED:  I HAVE VOIDED TICKETS IN THE PAST, YES, SIR, PRIOR TO THEM BEING SWORN.

KG:  OKAY.
RO:  WHEN MARY TURNER CALLED YOU, PAGED YOU AND YOU CALLED HER AND Y'ALL
     CONVERSED ABOUT THAT TICKET, DID SHE OFFER TO YOU ANY AH REASONING FOR
     THE TICKET, I MEAN YOU'D ALREADY TURNED IT IN.  YOU'D ALREADY SWORE TO
     IT.  DID SHE OFFER ANYTHING ABOUT SHE WOULD TAKE CARE OF IT FROM THERE
     OR GET THE COPIES BACK TO YOU?  DID SHE SAY ANYTHING OF THAT NATURE TO
     YOU?
ED:  SERGEANT, I HONESTLY CAN'T REMEMBER THE EXACT WORDS IN, IN THE
     CONVERSATION.

RO:  I UNDERSTAND.
ED:  I BELIEVE SHE DID YOU KNOW, I SAID IF SHE'D JUST MAKE SURE I GET THE
     COPIES.  I BELIEVE SHE DID SAY THAT SHE WOULD DO THAT, BUT I, I DON'T
     REMEMBER EXACTLY HOW IT WAS.

RO:  OKAY.  WHEN YOU SAID EARLIER THAT SHE JUST, HER EXPLANATION TO YOU WAS
     THAT THIS WAS ONE OF HER FRIENDS AND THAT WAS PRETTY MUCH IT AS FAR AS
     THAT?
ED:  I'M TRYING TO REMEMBER EXACTLY WHAT SHE SAID.

RO:  IT'S BEEN 3 YEARS, I REALIZE THAT.
ED:  YEAH.  IT'S BEEN A WHILE.  SHE SAID SOMETHING TO THE EFFECT OF YOU KNOW
     I KNOW THE GUY.  HE'S A GOOD KID, AND, THAT, THAT'S ABOUT ALL I CAN
     REALLY REMEMBER.

RO:  OKAY.  IN THE PAST YOU SAID THAT YOU HAVE ON OCCASION VOIDED A TICKET
     FOR WHATEVER REASON.  UH, DID YOU AT THAT TIME, YOU WOULD, THAT
     WOULD'VE BEEN BEFORE YOU SWORE TO IT.  YOU WROTE VOID ON IT AND
     FOLLOWED THE PROCEDURES AS ACCORDINGLY.
ED:  YES, SIR.

RO:  KEPT ALL THE TICKETS.
ED:  YES.

RO:  TURNED 'EM IN WHEN YOU TURNED IN THE BOOK OR SOMETHING.
ED:  RIGHT.

RO:  OKAY.  AH, DID MARY TURNER EVER ASK YOU TO DO THIS BEFORE?
ED:  NO, SIR.

RO:  FIRST TIME?
ED:  FIRST TIME.

RO:  HAS ANY OTHER MAGISTRATE EVER ASKED YOU TO DO THIS BEFORE?

6

DOTHAN/Martin & Brackin 1402
Confidential Subject to Protective
Order

ED:    NOT THAT I RECALL.

RO:    AND YOU WOULD RECALL IF SOMEBODY'D ASKED YOU?
ED:    YES.

RO:    OKAY.
KG:    AH, IT'S WRITTEN VOID AH ON THE TRANSMITTAL FORM RIGHT HERE.  IS THIS
       YOUR HANDWRITING?
ED:    NO, SIR, THAT'S NOT.

KG:    OKAY, AND YOU STATED THAT IF IN FACT, WELL I GUESS THAT'S A MOOT
       POINT CAUSE YOU'VE ALREADY STATED THAT, WHAT
ED:    THE, THE COLUMN YOU'RE POINTING TO IS THE COURT CASE NUMBER COLUMN.
       THAT'S WHERE THE MAGISTRATES PUT IN WHATEVER THE COURT CASE NUMBER
       ASSIGNED TO TICKET IS GONNA BE.  AH, I'M ASSUMING.  THAT, THAT'S HOW I,
       WE DON'T, AS, AS POLICE OFFICERS FILL OUT ANYTHING IN THAT TRANS',
       OR ON THAT TRANSMITTAL IN THAT COLUMN.  THE COLUMN THAT I WAS REFERRING
       TO THAT UH IF I DID ON OCCASION VOID A TICKET FOR WHATEVER REASON WOULD
       BE IN THE REMARKS COLUMN WHICH IS RIGHT NEXT TO THAT.  THAT'S WHERE I
       WOULD WRITE IT.  AH, VOID, AND THAT'S NOT HOW I WRITE VOID EITHER.  I
       DON'T USE ANY DASHES OR ANYTHING LIKE THAT, AND THAT, I MEAN THAT'S NOT
       MY HANDWRITING.  AH, IT'S WRITTEN IN A SEPARATE COLUMN AND MR. PHELPS'
       NAME IS ALREADY IN THE REMARKS COLUMN. SO THAT'S NOT HOW (UNINT) NO,
       SIR, THAT, THAT'S NOT MY, MY HANDWRITING.

RO:    BASED ON YOUR PREVIOUS EXPERIENCE, WHEN YOU TURN IN A TRANSMITTAL FORM,
       DO THEY USUALLY TAKE THE TIME AND WRITE THOSE CASE NUMBERS THERE WHILE
       YOU'RE THERE
ED:    NO.

RO:    OR DO THEY IT LATER?
ED:    NO, SIR, THEY DO IT LATER.

RO:    OKAY, BECAUSE THEY HAVE TO LOOK UP THE CASE
ED:    THEY, THE

RO:    COMPUTER STUFF.
ED:    IF YOU'VE EVE', AND I MEAN YOU TWO HAVE, BEING HERE AS LONG AS YOU
       HAVE, I KNOW YOU WORK LOCAL, YOU GO TURN IN YOUR TICKETS, IT'S ALWAYS
       RAISE YOUR RIGHT HAND, DO YOU SWEAR?  THEY LOOK AT YOUR TICKETS REAL
       QUICK, OKAY.  HAVE A NICE DAY.  THEY SIGN UP, AND OR SIGN THE
       TRANSMITTAL AND GIVE YOU YOUR YELLOW COPY AND YOU'RE OUT THE DOOR.

KG:    LET ME ASK YOU SOMETHING ABOUT THAT.  AH, SPECIFICALLY DO THE
       MAGISTRATES SWEAR YOU TO EACH AND EVERY INDIVIDUAL, THEY GO TO THE
       TICKETS, TURN THEM OVER AND SAY SWEAR YOU TO EACH INDIVIDUAL TICKET OR
       DID, WERE YOU
ED:    MOST OF THE MAGISTRATES WILL, I MEAN, AND, (UNINT) LOOK AND ONCE AGAIN
       I'M NOT TRYING TO GET THESE PEOPLE IN TROUBLE.

RO:    WE UNDERSTAND.
ED:    BUT THEY'LL LOOK AT AND THEN THEY'LL GO DO YOU SWEAR TO ALL THESE?
       YES, I DO.  AND THAT'S PRETTY MUCH HOW IT'S DONE.

KG:    OKAY.  SPECIFICALLY IN REGARDS TO THIS TICKET AND MR. PHELPS, DO YOU
       REMEMBER IF MARY BETH SWORE EACH INDIVIDUAL TICKET IN THE CITY LIMITS
       OF DOTHAN, COVERED EACH CHARGE

7

DOTHAN/Martin & Brackin 1403
Confidential Subject to Protective
Order

ED:   ARE YOU TALKING ABOUT EACH ONE?

KG:   INCLUDING
ED:   I, I CAN'T, YOU KNOW I'D BE, YOU KNOW I DON'T WANTA MISLEAD YOU IN ANY
      WAY.  I CAN'T TELL YOU 100% IF SHE DID THAT.  I'VE SWORN TO SO MANY
      TICKETS THAT

KG:   YOU CAN'T DISTINGUISH HER (UNINT)
ED:   I CAN'T DISTINGUISH, YEAH, IT'S, I'VE HAD TO RACK MY BRAIN TO TRY TO
      REMEMBER THIS ONCE SINCE YOU TALKED TO ME, YOU KNOW ABOUT IT.

RO:   DO YOU STILL HAVE YOUR COPY OF THIS TRANSMITTAL FORM?
ED:   NO, SIR.  I LEARNED A LESSON ABOUT AH KEEPING MY COPIES, UH, AFTER
      JOHN, OR JASON PENN HAD A INCIDENT WHERE HIS TRANSMITTAL, NORMALLY MY,
      MY THING WAS I'D JUST TAKE IT AND THROW IT AWAY.  I DIDN'T THINK I
      NEEDED IT.  WELL HE HAD ONE THAT AH CAME UP TO WHERE THEY WERE SAYING
      HE DIDN'T SWEAR TO ONE AND HE HAD HIS TRANSMITTAL FORM SHOWING THAT HE
      DID.  IT WAS SHORTLY AFTER THIS THAT I STARTED KEEPING 'EM.

RO:   PRIOR TO THAT THOUGH YOU DID NOT?
ED:   PRIOR TO THAT I DID NOT.  IT'S NOT UNCOMMON, BUT NO SIR, I DID NOT.

RO:   OKAY.
KG:   AH, DID YOU WITNESS MRS. BRACKIN SIGN HER NAME HERE AND, AND GIVE YOU
      YOUR COPY?
ED:   SHE, YES, SHE, SHE WOULD'VE SIGNED IT IN FRONT OF ME AND GAVE ME MY
      COPY.

KG:   I WANT TO MAKE THIS STATEMENT TO MAKE SURE THAT I'VE ANSWERED YOUR
      QUESTION REGARDING THE ALLEGATIONS OF MISCONDUCT.  UH, CAN YOU
      UNDERSTAND NOW THE ALLEGATIONS OF MISCONDUCT THAT WE'RE COVERING
      REGARDING
ED:   I UNDERSTAND WHAT YOU'RE, WHERE YOU'RE GOING.

KG:   OKAY.  I JUST WANT TO MAKE SURE THAT, THAT I ANSWERED THAT QUESTION FOR
      YOU.  AND YOU SAY TO YOUR KNOWLEDGE NO OTHER MAGISTRATE HAS EVER CALLED
      YOU AFTER YOU HAVE SWORE TO THE TICKET AND ASKED YOU TO AH VOID IT?
ED:   TO MY KNOWLEDGE NOBODY'S EVER DONE THAT.

KG:   YOU MAY OR MAY NOT KNOW THE ANSWER TO THIS QUESTION.  HAS ANY OTHER
      OFFICER AH TOLD YOU THAT A MAGISTRATE HAS COME AND ASKED THEM TO VOID A
      CITATION AFTER THEY'VE SWORN TO IT?
ED:   NO, SIR.

RO:   ANYTHING ELSE THAT YOU CAN THINK OF RELATIVE TO THIS SPECIFIC TICKET
      CITATION OR ANYTHING THAT HAS HAPPENED THAT'S VERY SIMILAR TO THIS THAT
      YOU SHOULD TELL US ABOUT THAT WE HAVEN'T ASKED YOU ABOUT OR THAT WE
      DON'T HAVE ANY KNOWLEDGE ABOUT THAT YOU THINK WE SHOULD KNOW ABOUT
      BASED ON THIS QUESTIONING TODAY?  THAT WAS A MOUTHFUL, DID YOU
      UNDERSTAND THAT?
ED:   YEAH.  UH, I CAN'T THINK OF ANYTHING, NO, SIR.

RO:   OKAY.
ED:   CAN I

KG:   IS THERE ANYTHING YOU WANTA SAY?

8

DOTHAN/Martin & Brackin 1404
Confidential Subject to Protective
Order

ED:    WELL THERE'S ONE THING, I THINK I UNDERSTAND WHICH WAY YOU'RE GOING
       WITH THIS AS FAR AS THE POSSIBLE ALLEGATIONS ABOUT ME AND MISCONDUCT.
       UH IS IT THE FACT THAT I ALLOWED HER TO VOID OUT A TICKET OR THAT I
       SPECIFICALLY VOIDED OUT A TICKET AFTER IT WAS BEING SWORN TO?  IS THAT
       WHAT IT IS?

KG:    AH, WE'RE LOOKING AT AH TWO, SEVERAL DIFFERENT ISSUES.  ONE IS HOW THE
       POLICY
ED:    RIGHT.

KG:    WHAT THE POLICY STATES.
ED:    I UNDERSTAND THAT.

KG:    AH, TWO IS WHERE THE COURT HAS JURISDICTION OVER IT AND AH FROM WHAT
       I'VE LEARNED SO FAR AS SOON AS YOU SWORE TO THIS TRANSMITTAL THE
       MAGISTRATE DIDN'T HAVE THE AUTHORITY, NEITHER DID YOU
ED:    RIGHT.

KG:    TO, TO
RO:    ACT ON IT.

KG:    RIGHT, TO ACT ON THAT AT ALL.  IT COULD'VE BEEN DISMISSED THROUGH THE
ED:    THROUGH THE COURT SYSTEM
KG:    YOU DIDN'T, EXACTLY, SO THAT'S EVERYTHING WE'RE LOOKING AT.
RO:    ANYTHING ELSE YOU WANTA ADD FOR WHATEVER, HOWEVER?
ED:    THERE'S APPARENTLY NOTHING REALLY TO ADD THAT I HAVEN'T ALREADY SAID.
       AH,

KG:    THANK YOU FOR COOPERATING AND BRINGING US THE COPY BECAUSE WE DIDN'T
       HAVE (UNINT)
ED:    I WASN'T TRYING TO HIDE ANYTHING FROM ANYBODY.  I, I HONESTLY DON'T
       (UNINT) SEEING AS THIS TICKET WAS NOT TURNED IN, WHICH AS I, AS I SAID,
       I, I HAVE NO, NO EXCUSE, YOU KNOW, OTHER THAN I JUST DIDN'T REALIZE
       THAT I HAD IT.   AND I, OTHER THAN THAT I, I TRULY DON'T FEEL LIKE I'VE
       SHORT OF A POLICY VIOLATION, I DIDN'T VOID THE TICKET OUT.  I JUST SAID
       HEY, WHATEVER.  AND YOU KNOW IF, IF THE CASE IS THAT IT, THAT I DON'T
       HAVE THAT AUTHORITY, THERE'S NOTHING THAT COULD'VE BEEN DONE ABOUT IT
       ANYWAY.  SO, EVEN IF I'D A SAID, YEAH, VOID OUT EVERY TICKET I'VE EVER
       WROTE TO AND SWEAR TO, SWORN TO, IT, IT'S NOT POSSIBLE.

KG:    BUT IT IS TRUE THAT YOU DID AGREE TO
ED:    I DID SAY, YOU KNOW WHATEVER, THAT'S.

KG:    UMKAY.
RO:    ANYTHING ELSE?
ED:    NO, SIR.

RO:    OKAY.  THAT'LL BE THE END OF THE STATEMENT.  THE TIME'S APPROXIMATELY
       1045.  SORRY I DIDN'T MEAN TO TAKE THAT FROM YOU.  I'M JUST IN A HABIT
       OF DOING IT.  THAT'LL BE THE END OF THE STATEMENT.
-------------------·

KG:    THIS IS SGT. GRAY.  WE'RE, THIS IS GONNA BE A CONTINUATION OF THE
       INTERVIEW.  ALL THE SAME PERSONS ARE PRESENT.  THIS IS THE SAME DATE,
       THE TIME IS
RO:    THE TIME IS 1050 HOURS.

DOTHAN/Martin & Brackin 1405
Confidential Subject to Protective
Order

KG:    AH, JUST CONTINUING, WE WANT TO AH DIRECT YOU, CPL. DUHAIME, TO NOT
       DISCUSS THIS CASE WITH ANYONE.  AH, IT IS AN ONGOING ADMINISTRATIVE
       INVESTIGATION AND AT IT'S COMPLETION YOU'LL BE NOTIFIED AND AT WHICH
       TIME IT'S COMPLETE YOU CAN DISCUSS WHATEVER YOU NEED TO WITH ANYONE,
       BUT I THINK WE NEED YOU TO REFRAIN FROM TALKING ABOUT IT SO WE CAN
       FINISH THE INVESTIGATION.

ED:    I UNDERSTAND.

RO:    THAT'LL BE THE END OF THE SECOND INTERVIEW.  AND THE TIME IS STILL
       APPROXIMATELY 1051 HOURS.

DOTHAN/Martin & Brackin 1406
Confidential Subject to Protective
Order

# Statement

# Of

# Mary E. Brackin

DOTHAN/Martin & Brackin 1407
Confidential Subject to Protective
Order



# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

You are being questioned as a part of an official administrative investigation
of the Dothan Police Department. You will be asked questions specifically
directed and narrowly related to the performance of your official duties or
fitness for office. You are entitled to all of the rights and privileges
guaranteed by the laws and the Constitution of the State of Alabama and the
Constitution of the United States, including the right not to be compelled to
incriminate yourself. If you refuse to testify or to answer questions related
to your official duties or fitness for duty, you will be subject to departmental
charges, which could result in your dismissal from the Dothan Police *[Judicial]*
Department. If you do answer, neither your statement nor any information
or evidence which is gained by reason of such statements can be used
against you in any subsequent criminal proceeding, <u>except for Perjury or
Obstruction of Justice charges</u>. However, these statements may be used
against you in relation to subsequent departmental charges.


MEMBERS SIGNATURE: _Mary Ann Head_

     DATE/TIME: _April 26, 2005 @ 12:00_

INVESTIGATING OFFICER: _Sgt. C. Keith Gray_

     DATE/TIME: _4-26-05     12:00_

WITNESS SIGNATURE: _Sgt. Ray Owen_

     DATE/TIME: _4-26-05     1200_


PD 15 B

DOTHAN/Martin & Brackin 1408
Confidential Subject to Protective
Order

KG: THIS IS SGT. GRAY. THE DATE IS APRIL THE 26TH, OF 2005. THE TIME IS 11:58 A.M. THE PLACE OF STATEMENT IS GOING TO BE THE CHIEF'S CONFERENCE ROOM. GO AHEAD, THE NAMES OF THE PERSONS ALSO PRESENT IS GOING TO BE SGT. RAY OWENS, ASSIGNED TO THE INTERNAL AFFAIRS DIVISION, SGT. KEITH GRAY, MYSELF, I'M ASSIGNED TO THE INTERNAL AFFAIRS DIVISION, AH, MARY ELIZABETH BRACKIN. AH, SHE IS ASSIGNED TO THE MUNICIPAL COURT, AH, AND WORKS UNDER THE AUTHORITY OF JUDGE GORDON, AND WHICH IS HER DEPARTMENT HEAD. AH, ALSO PRESENT IS JOSEPH ALLEN BRACKIN, WHICH IS MARY BETH'S HUSBAND. WOULD YOU PLEASE STATE YOUR FULL NAME?
MB: MARY ELIZABETH BRACKIN.

KG: AH, DO YOU HAVE A, WHAT'S YOUR TITLE, AH FOR THE MAGISTRATE'S OFFICE?
MB: MAGISTRATE.

KG: OKAY, AH, DO Y'ALL HAVE ANY SEPARATE ASSIGNMENTS THAT YOU, THAT GOES WITH YOUR TITLE, SUCH AS I'M IN INTERNAL AFFAIRS AND YOU KNOW I'M AN OFFICER, ANYTHING LIKE THAT? DO YOU HAVE ANY SPECIFIC ASSIGNMENT SUCH AS CHIEF MAGISTRATE OR ANYTHING LIKE THAT?
MB: NO. UH, NO, WE ALL PERFORM MAGISTRATE DUTIES.

KG: OKAY. ARE YOU TAKING ANY MEDICATIONS PRESCRIBED BY A DOCTOR THAT WOULD AFFECT YOUR ABILITY TO THINK CLEARLY?
MB: NO.

KG: ARE YOU NOW UNDER THE INFLUENCE OF ANY ALCOHOL OR ILLEGAL DRUGS?
MB: NO.

KG: BE ADVISED THAT THIS IS AN ADMINISTRATIVE INVESTIGATION IN NATURE. WE WANT TO PROVIDE YOU WITH GARRITY.
RO: YOU'VE READ ONE OF THESE BEFORE, I THINK, HAVEN'T YOU?

KG: YES, YOU HAVE, UNDER THE PREVIOUS INVESTIGATION. BUT AT THE BOTTOM OF IT WHERE IT SAYS AH DEPARTMENTAL, DOTHAN POLICE DEPARTMENT, THAT'S GONNA BE THE JUDICIAL DEPARTMENT.
RO: AH, OKAY. LET ME, OKAY. AS SUCH, OKAY. I NEED YOU TO READ THAT. IF YOU READ IT AND YOU UNDERSTAND IT, I NEED YOU TO SI', DATE IT AND PUT A TIME ON IT FOR ME.

KG: DO YOU FULLY AND COMPLETELY UNDERSTAND YOUR GARRITY NOTICE?
MB: YES.

KG: DID YOU SIGN YOUR GARRITY NOTICE FREELY AND VOLUNTARILY?
MB: YES.

KG: DO YOU UNDERSTAND THAT THIS STATEMENT'S BEING RECORDED?
MB: YES.

KG: AH, ALLEN, BECAUSE AH YOU'RE HERE AS A WITNESS, AH, ANYTHING THAT WE DISCUSS AND YOU'RE TO REMAIN NEUTRAL, NOT HAVE ANY INPUT INTO THE CONVERSATION UNDER THE STATUTE. I JUST WANT TO DIRECT YOU OF THAT. REGARDING THE INVESTIGATION AH AT THIS TIME AH IT IS AH FROM WHAT I KNOW UNTIL I TALK TO YOU, YOU MAY IN FACT BE ONE OF THE SUBJECTS OF THE INVESTIGATION OR IT COULD TURN IT THAT YOU ARE A WITNESS BUT I DON'T KNOW UNTIL I ASK YOU QUESTIONS, OKAY? SO LET'S JUST ASSUME THAT YOU'RE AH A PARTY AS FAR AS THE SUBJECT OF THE INVESTIGATION. ONE OF THE MAIN FOCUSES OF. OKAY?

DOTHAN/Martin & Brackin 1409
Confidential Subject to Protective Order

MB:   WELL IF I'M A MAIN FOCUS, CAN I HAVE, DO I NOT HAVE, AH DO I NEED LEGAL ATTORNEY REPRESENTATION?

KG:   AH, THAT IS NOT A DECISION THAT I CAN MAKE. AH WHAT THE GARRITY STIPULATES IS THAT WHENEVER WE ARE AH INTERVIEWING YOU AS A PART OF YOUR JOB, YOUR DUTIES AND YOUR OFFICIAL OFFICE, YOU ARE COMPELLED TO ANSWER THE QUESTIONS. THERE'S NO AH, WITHIN THIS INVESTIGATION, THERE'S NO POSSIBILITY OF ANY TYPE OF CRIMINAL

MB:   OKAY.

KG:   AH RESULTS WITHIN AN ADMINISTRATIVE INVESTIGATION WHICH THIS, WHICH THIS IS. WE'RE JUST ASKING YOU REGARDING YOUR AH DUTIES

MB:   OKAY.

KG:   AT WORK.

RO:   IF, IF THERE WOULD BE, IF THERE WERE TO EVER BE CRIMINAL CHARGES, NOTHING THAT YOU SAY IN HERE DURING THIS INVESTIGATION CAN BE USED AGAINST YOU.

MB:   UMKAY.

RO:   OKAY.

KG:   AH, THE FOCUS OF THIS INVESTIGATION DEALS WITH A TRAFFIC CITATION THAT AH CPL. DUHAIME WROTE. ARE YOU FAMILIAR WITH THAT?

MB:   THE ONE THAT ETRESS SHOWED ME LAST WEEK.

KG:   YES.

MB:   YES.

KG:   UH, I'M SHOWING YOU THE CITATION SO YOU CAN TAKE A LOOK AT IT

MB:   OKAY.

KG:   AND WHAT I WANT TO DO IS SHOW YOU THE TRANSMITTAL FORM AS WELL.

MB:   UH HUH.

KG:   CAN YOU IDENTIFY THOSE?

MB:   YES. THAT'S THE ONES HE SHOWED ME.

KG:   OKAY.

MB:   UM, HM.

KG:   AH, WAS THIS YOUR SIGNATURE ON THE

MB:   YES.

KG:   TRANSMITTAL?

MB:   UM, HM.

KG:   IF YOU WOULD AH JUST AH EXPLAIN TO ME WHAT IS THE NORMAL AH PROCESS WHENEVER AN OFFICER BRINGS CITATIONS IN AND WHEN THEY SWEAR TO IT TO A MAGISTRATE. EXPLAIN THAT PROCESS.

MB:   UM, HM. AH, WHEN, LIKE YOU SAID WHEN AN OFFICER BRINGS IN THEIR TICKETS TO BE SWORN TO A MAGISTRATE, AH, THEY PUT 'EM ON THE TRANSMITTAL. THEY BRING THEM TO US AND WE SWEAR THEM TO THE TICKETS AND WE SIGN THE TRANSMITTAL AND GIVE A COPY OF THE TRANSMITTAL TO THE OFFICER.

KG:   AS A MAGISTRATE WHAT IF YOU CAN EXPLAIN, WHAT IS THE REASON BEHIND YOUR SWEARING THE OFFICERS TO AH THEIR COMPLAINT?

2

DOTHAN/Martin & Brackin 1410
Confidential Subject to Protective
Order

MB:  JUST SWEARING THAT THEY GAVE THAT TICKET ON THAT DATE AND TIME AND IT WAS INSIDE THE CITY LIMITS OF DOTHAN, OR ON THE PUBLIC STREETS OF DOTHAN.

KG:  ONCE THEY SWEAR TO IT, AH, DOES THAT DOCUMENT BECOME A COURT DOCUMENT?
MB:  ONCE THEY SWEAR TO IT?

KG:  UM, HM.
MB:  YES.  IF IT, WELL I MEAN YOU KNOW YEAH ONCE IT'S SWORN TO IT'S,  THAT, THAT'S WHAT YOU'RE ASKING.

KG:  OKAY.
MB:  DID I ANSWER IT RIGHT?  I MEAN I, I'M TRYING TO FIGURE OUT HOW YOU'RE ASKING THAT.  YEAH, I MEAN, YEAH, IF WE SWEAR TO 'EM.

KG:  OKAY.
MB:  YOU KNOW.

KG:  AH, IF THE OFFICER HAS A TICKET THAT HE HAS WRITTEN AND AH DECIDES TO VOID THAT TICKET BEFORE HE SWEARS TO THAT, ACCORDING TO AH YOUR JOB AND YOUR POSITION, CAN THAT OFFICER DO THAT?
MB:  CAN THEY VOID A TICKET?

KG:  RIGHT.  PRIOR TO SWEARING TO YOU?
MB:  SURE.

KG:  OKAY.  AFTER THEY RAISE THEIR HAND AND TAKE THAT OATH OF AFFIRMATION AH AS YOU STATED EARLIER IT BECOMES A COURT DOCUMENT
MB:  UM, HM.

KG:  AT WHAT POINT CAN THAT DOCUMENT BE, BE DISMISSED?
MB:  WELL I ASSUME IT WOULD BE BY THE JUDGE.  AH, WE HAVE TICKETS YOU KNOW FOR LIKE IMPROPER LIGHTS OR SUCH AS THAT, YOU KNOW WHERE THEY GIVE 'EM AND THEN WE YOU KNOW SEND 'EM OVER TO THE JUDGE AND SHE'LL NOL PROS 'EM.  IN THE PAST AS A MAGISTRATE WE HAVE BEEN ABLE AH TO NOL PROS TICKETS AS FAR AS INSPECTION TICKETS AND AH YOU KNOW IF IT, THEY PRODUCE PROOF OF A TAG THAT WASN'T EXPIRED AT THE TIME THAT THEY GOT THE TICKET.

KG:  SO THE EQUIPMENT VIOLATION TYPE OF TICKETS AH THOSE CAN BE DISPOSED OF AH, IT, ARE YOU SAYING THEY CAN BE DISPOSED OF WITHOUT THE JUDGE'S CONSENT?
MB:  IN PRIOR YEARS, YOU KNOW, BEFORE WE HAD JUDGE GORDON, YES, WE HAVE DONE THAT.

KG:  OKAY.  AND THAT WAS FOR AH EQUIPMENT TYPE OF VIOLATIONS SPECIFICALLY?
MB:  WELL OR A TAG TICKET, AH, IF THEY PRODUCE LIKE, IF THEY DIDN'T HAVE THEIR DRIVER'S LICENSE IN POSSESSION, YOU KNOW AND THEY PROVED THAT THEY HAD AN ALABAMA LICENSE AND JUST DIDN'T HAVE IT ON 'EM, YOU KNOW WE COULD, WE WOULD GET DISPATCH TO RUN IT AND THAT SORT OF THING AND MAKE SURE IT WAS IN THAT TIME FRAME.

RO:  WRITTEN FOR NO INSURANCE AND THEY PROVIDE TO YOU PROOF THAT THEY HAD INSURANCE.
MB:  WE DIDN'T HAVE INSURANCE BACK THEN.

RO:  OKAY.

3

DOTHAN/Martin & Brackin 1411
Confidential Subject to Protective Order

MB:   BUT WE WERE ABLE TO DO THAT.

RO:   OKAY.
MB:   BUT

RO:   WELL THAT'S, I'M,
MB:   YEAH.

RO:   THAT'S 2002, I'M SORRY.
MB:   AH, BUT NOW I, YOU KNOW WHEN AN OFFICER SWEARS TO 'EM IF THEY WERE TO
      SAY OH I, YOU KNOW THIS GUY DID PROVIDE ME WITH INSURANCE OR YOU KNOW
      SOMETHING LIKE I HAVE, NO, IF THEY SAID WELL I NEED THAT BACK OR
      SOMETHING, YOU KNOW.

KG:   HAS THAT BEEN DONE SPECIFICALLY AND IF
MB:   OH, GOSH.

KG:   BY WHO?
MB:   OH, WELL I DON'T KNOW.  I CAN'T TELL YOU.  I'M JUST GIVING YOU AN
      EXAMPLE THAT YOU KNOW IF THAT, THAT COULD'VE THAT COULD HAPPEN.  I
      DON'T KNOW IF IT HAS HAPPENED.  BUT WHAT I'M SAYING, IF THEY, IF YOU'RE
      SWEARING TO IT AND THEY SAY, IF YOU SAY SO AND SO NO INSURANCE, OH,
      WELL I, THEY DID PROVIDE ME WITH PROOF OF SOMETHING, GIVE THAT BACK OR
      SOMETHING LIKE THAT.

KG:   OKAY.
MB:   BUT YOU KNOW THAT WOULD BE.  I DON'T KNOW IF IT'S HAPPENED.

KG:   OKAY, THAT'S WHAT I WAS WANTING TO KNOW IF IT
MB:   RIGHT

KG:   SPECIFICALLY
MB:   I DON'T KNOW.

KG:   HAS HAPPENED, DO YOU HAVE FIRST KNO…
MB:   I DON'T KNOW.

KG:   DO YOU HAVE ANY FIRST HAND KNOWLEDGE THAT THAT HAS HAPPENED?
MB:   UM, UM.

KG:   WHAT WOULD, IS A SPEEDING TICKET, WOULD YOU CONSIDER THAT THE, THE
      TO TAKE THE SAME PROCESS THAT THE EQUIPMENT TICKETS WOULD TAKE THAT IT
      COULD JUST BE HANDLED OTHER THAN THROUGH THE JUDGE?
MB:   IF WE SWEAR TO IT AND IF WE SIGN IT AND IT GETS INTO THE COMPUTER AND
      IT GOES THROUGH THAT PROCESS IT SHOULD GO, YOU KNOW, TO THE JUDGE.
      THEY WOULD HAVE TO COME TO COURT I WOULD THINK TO GET THAT DISMISSED.

KG:   UMKAY.  DO YOU KNOW OF ANY MAGISTRATE SPECIFICALLY THAT HAS AH ASKED AN
      OFFICER TO AH VOID A TICKET OR DROP A CHARGE, HAVE YOU ASKED THAT OF
      ANYONE, DO YOU KNOW OF ANY MAGISTRATE THAT MAY HAVE ASKED THAT OF ANY
      OFFICERS THAT THEY EITHER AFTER IT
MB:   EITHER THAT MAGISTRATE HAS TOLD ME OR IF I'M RUMORED OR, I MEAN

KG:   SPECIFICALLY.
MB:   SPECIFICALLY MYSELF?

KG:   YOU OR

DOTHAN/Martin & Brackin 1412
Confidential Subject to Protective
Order

MB:    OR HAS SOMEBODY TOLD ME THAT THIS MAGISTRATE HAS DONE THIS?

KG:    LET ME REPEAT THE QUESTION AGAIN TO MAKE SURE THAT I SAID IT RIGHT.
MB:    OKAY.

KG:    DO YOU HAVE FIRST HAND KNOWLEDGE OF ANY MAGISTRATE INCLUDING YOURSELF
       THAT HAS AFTER AN OFFICER SWORE A TICKET OTHER THAN LET'S SAY YOUR,
       YOUR TAG
MB:    UM, HM.

KG:    OR, THE ONES BY LAW THAT CAN GO THROUGH THAT PROCESS, DO YOU HAVE ANY
       FIRST HAND KNOWLEDGE OF ANY MAGISTRATE THAT HAS ASKED AN OFFICER TO AH
       VOID OR DROP CHARGES AFTER THE COMPLAINT WAS SWORN TO?
MB:    I, IF I, I DON'T REMEMBER.  I MEAN I BEEN DOING THIS FOR 13 YEARS.

KG:    RIGHT.
MB:    I MEAN THERE'S, THERE'S A POSSIBILITY THAT IT COULD'VE HAPPENED.  AH,
       BUT I CAN'T SPECIFICALLY SAY, CAUSE I DON'T, YOU KNOW I CAN'T RECALL
       EVERY TICKET THAT I HAVE SWORN TO FOR THE PAST 13 YEARS.

KG:    OKAY.  DO YOU KNOW FOR A FACT THAT IT HAS BEEN DONE? 100% FACT, DO YOU
       KNOW FOR A FACT THAT A MAGISTRATE HAS ASKED AN OFFICER TO TAKE CARE OF
       OR VOID A COMPLAINT REGARDLESS WHETHER IT WAS AN ARREST OR A TICKET?
MB:    OH, GOSH, I CAN'T, I CAN'T SAY 100%, BUT I CAN'T SAY THAT IT HASN'T
       NEVER HAPPENED.  I MEAN YOU KNOW I,

KG:    TO YOUR KNOWLEDGE?
MB:    TO MY KNOWLEDGE?

KG:    TO YOUR KNOWLEDGE?
MB:    NO 100% NO, BUT I'M SURE IT HAS HAPPENED.

RO:    MAY I ASK?
KG:    GO AHEAD.

RO:    DO YOU HAVE ANY RECOLLECTION OF ANY EVENT WHERE A MAGISTRATE HAS EVER
       ASKED AN OFFICER TO DISMISS A TICKET?  DO YOU HAVE ANY RECOLLECTION OF
       ANY EVENT, SPECIFIC EVENT WHERE A SPECIFIC OFFICER HAS
MB:    I THINK THAT'S WHERE I'M GETTING CONFUSED.  I MEAN I CAN'T SPECIFICALLY
       SAY ON THIS CERTAIN DATE AND TIME THIS HAPPENED.

RO:    NO, WE'RE,
MB:    BUT I'M JUST SAYING THAT I'M SURE IT HAS HAPPENED.

RO:    BUT, OKAY, LET ME
MB:    IS THAT

RO:    HAVE YOU EVER HEARD AN AH A MAGISTRATE OR HAS A MAGISTRATE EVER TOLD
       YOU OR HAS A POLICE OFFICER EVER TOLD YOU THAT THEY HAVE DONE THAT?
MB:    I DON'T RECALL, BUT I'M NOT SAYING THAT IT HASN'T.  I MEAN I CAN'T,

RO:    I UNDERSTAND
MB:    I DON'T REMEMBER.  I CAN'T 100%.

KG:    RIGHT, I, I UNDERSTAND WHAT YOU'RE SAYING, BUT WE'RE ASKING YOUR
       KNOWLEDGE, IF, IF YOU, IF YOU HAVE A, BARRING THAT YOU CAN'T REMEMBER A
       SPECIFIC DATE THAT IT HAPPENED, AND I CAN UNDERSTAND THAT, BARRING A

DOTHAN/Martin & Brackin 1413
Confidential Subject to Protective
Order

```
                SPECIFIC DATE, CAN YOU TELL ME OF AN INCIDENT THAT YOU CAN RECALL THAT
                A MAGISTRATE
MB:     UM, UM.

KG:     HAS ASKED AN OFFICER TO VOID
MB:     NO, I CAN'T RECALL, BECAUSE I MEAN IT, IT'S HAPPENED BEFORE, I MEAN
        BUT I CAN'T TELL YOU

RO:     LET ME ASK YOU
MB:     BUT I MEAN, NOT

RO:     HOW DO YOU KNOW IT'S HAPPENED?
MB:     HOW DO I KNOW IT'S HAPPENED?

RO:     UM, HM.
MB:     TALKING ABOUT TICKETS GETTING VOIDED?

RO:     BY MAGISTRATES NOW?
MB:     OH, BY MAGISTRATES.

RO:     THE QUESTIONS THAT WE'RE ASKING YOU NOW.
MB:     NO, I'M JUST SAYING OFFICERS VOIDING A TICKET.

RO:     NO, NO, NO,
MB:     OH.

RO:     I'M SAYING A MAGISTRATE
MB:     A MAGISTRATE.

RO:     ASKING AN OFFICER TO VOID A TICKET?
MB:     OH, I DON'T KNOW.  I MEAN IT COULD'VE HAPPENED.  I MEAN I DON'T
        KNOW.

RO:     YOU SAID YOU'RE SURE, OR YOU, OKAY YOU WERE REFERRING TO VOIDED
        TICKETS.
MB:     RIGHT.

RO:     OKAY.
MB:     THAT'S WHAT I WAS,

RO:     LET ME ASK YOU
MB:     THAT'S WHAT I THOUGHT YOU WERE SAYING.

RO:     LET ME ASK YOU THIS.
MB:     I'M JUST GETTING CONFUSED I GUESS.

RO:     HAVE YOU, DO YOU HAVE ANY DIRECT KNOWLEDGE EITHER BY HEARING IT, SEEING
        IT OR HAVING SOMEONE TELL YOU THAT A MAGISTRATE ASKED AN OFFICER TO
        VOID A TICKET AT ANY TIME?
KG:     AFTER IT'S BEEN SWORN TO?

RO:     OKAY, AFTER IT'S BEEN SWORN TO?
MB:     OH, I DON'T KNOW IF IT'D BEEN SWORN TO.  I KNOW THAT A MAGISTRATE WAS
        LOOKING FOR AN OFFICER AT ONE POINT IN TIME FOR A TICKET THAT HE HAD
        WRITTEN.

RO:     OKAY.  TELL ME ABOUT IT.
```

6

DOTHAN/Martin & Brackin 1414
Confidential Subject to Protective Order

MB:   I THINK IT WAS OFFICER, IS IT MCMAHON, OR MCMAHON?  HOW DO YOU
      PRONOUNCE IT?

RO:   YEAH, AH, YEAH.
MB:   VALERIE WAS YOU KNOW

RO:   OKAY, WHAT
MB:   KIND OF ADAMANT ABOUT HUNTING HIM DOWN ONE TIME BUT I MEAN I DON'T KNOW
      WHEN THAT HAPPENED.  YOU SEE WHAT I'M SAYING?  I CAN REMEMBER THAT,
      CAUSE SHE WAS LIKE.

RO:   DO YOU KNOW, DO YOU KNOW WHY SHE WAS HUNTING HIM?
MB:   ABOUT A TICKET THAT HE HAD WRITTEN, BUT I MEAN I DON'T KNOW.

RO:   OKAY BUT DO YOU KNOW WHY?
MB:   UM, UM.

RO:   HE MAY HAVE NOT FILLED IT OUT COMPLETELY.
MB:   RIGHT, THAT'S TRUE.

RO:   OKAY.
MB:   THAT'S TRUE.

RO:   SO YOUR ANSWER THEN WOULD BE NO?  YOU DON'T HAVE ANY DIRECT KNOWLEDGE
MB:   RIGHT, OKAY.

RO:   IS THAT CORRECT?
MB:   THAT HELPS, THAT HELPS.

RO:   IS THAT CORRECT?
MB:   YEAH.

RO:   I'M NOT TRYING TO TRICK YOU.
MB:   I DON'T KNOW.

RO:   THE, THE, WHAT WE'RE, LET ME ASK YOU, WOULD IT BE WRONG IF A MAGISTRATE
      AFTER A TICKET WAS SWORN CAME AND ASKED AN OFFICER TO DISMISS IT?
MB:   I CAN'T ANSWER THAT NOW.

RO:   WHY NOT?
MB:   BECAUSE I THINK THAT'S ALMOST LIKE LEGAL ADVICE AND I'VE ALREADY BEEN
      TOLD I'M NOT AN ATTORNEY, AND I CAN'T GIVE OUT THAT INFORMATION.

RO:   LET ME ASK YOU
MB:   SO I'M NOT TOUCHING THAT ONE.

RO:   LET ME ASK YOU THIS.
MB:   I MEAN I CAN'T

RO:   IF I CAME TO YOU AND I SWORE TO SOME TICKETS AND LATER AFTER THAT I
      CAME BACK TO YOU AND SAID I WANT TO DISMISS THIS ONE, WOULD YOU DO
      THAT?
MB:   I'D TELL YOU GO TO COURT.

RO:   OKAY.  SO YOUR ANSWER IS NO YOU WOULDN'T DO IT?  YOU WOULD SAY,
      YOU WOULD SAY THAT NEEDED TO BE DONE IN COURT.  THIS IS, THIS IS NOT A,
      RELAX, THIS IS

DOTHAN/Martin & Brackin 1415
Confidential Subject to Protective
Order

MB:   WELL

RO:   NOT A TRICK.
MB:   LOOK, I'M THE, DO YOU KNOW HOW MANY TIMES I'VE BEEN IN HERE?

RO:   WELL, THAT'S
MB:   I'M TIRED OF THIS

RO:   BUT, BUT IT'S JUST LIKE ME. IF, IF AH, IF I'M, IF THEY ASK ME, IF YOUR
      SUPERVISOR TELLS YOU TO ARREST HIM FOR A MISDEMEANOR OFFENSE AND I
      DIDN'T SEE THE OFFENSE, I'M GONNA TELL HIM NO, BECAUSE I KNOW I DON'T
      HAVE THE RIGHT TO DO THAT.
MB:   OKAY. ALL RIGHT.

RO:   OKAY? I'M NOT TRYING TO TRICK YOU. I PROMISE
MB:   WELL.

RO:   THIS, THIS IS, THE QUESTION THOUGH IT'S JUST, IF, IF I CAME TO YOU, AND
      I SWORE TO THESE TICKETS AND YOU SIGNED YOUR NAME HERE,
MB:   UM, HM.

RO:   AND THEN I WALK OUT THE DOOR, AND I SAY UMH, AND I COME BACK IN, I
      DIDN'T MEAN TO TURN THAT ONE IN. I WANT, I WANT TO VOID THAT ONE.
      WHAT ARE YOU GONNA DO?
MB:   I DON'T, WELL, I MIGHT ASK YOU WHY.

RO:   OKAY.
MB:   I MEAN

KG:   DO YOU HAVE THAT AUTHORITY TO?
MB:   I DON'T KNOW. DO I?

KG:   WE'RE ASKING THE QUESTION BECAUSE YOU'RE THE MAGISTRATE.
MB:   WELL I KNOW THAT.

KG:   LET ME, LET ME FINISH, LET ME FINISH. AND YOU'RE GOVERNED BY THE STATE
      OF ALABAMA DEALING WITH PROCEDURES AND RULES OF MAGISTRATES. IS THAT
      CORRECT?
MB:   UM, HM.

KG:   DID YOU AS A MAGISTRATE TAKE AN OATH OF CERTAIN THINGS THAT YOU WILL
MB:   YES.

KG:   DO?
MB:   YES.

KG:   OKAY. SO AS A MAGISTRATE YOU WOULD KNOW YOUR JOB MORE SO THAN WE
      WOULD.
MB:   MORE SO THAN YOU WOULD, YES.

KG:   EXACTLY. SO THE QUESTIONS THAT WE'RE ASKING, SOME OF THE ANSWERS I
      KNOW BUT I WANT TO UNDERSTAND FROM YOUR POINT OF VIEW BECAUSE YOU MAY
      HAVE SOMETHING TO ADD TO IT THAT I MAY NOT BE AWARE OF. OKAY? SO WHEN
      I'M ASKING A LOT OF THESE QUESTIONS, IT'S BECAUSE AH AOC HAS CERTAIN
      GUIDELINES THAT A MAGISTRATE HAS, JUST LIKE WHEN WE SWEAR AN OATH OF
      OFFICE WE HAVE CERTAIN THINGS, RULES, REGULATIONS, LAWS THAT WE HAVE TO
      ABSOLUTELY GO BY, AND WE KNOW WHAT THEY ARE, SO WHEN WE'RE ASKING YOU

8

DOTHAN/Martin & Brackin 1416
Confidential Subject to Protective
Order

THE QUESTIONS WE'RE JUST WANTING YOU TO INFORM US AS IT RELATES TO YOUR RULES, REGULATIONS AND YOUR POLICES, OKAY? AH, I WANT TO GO BACK INTO ONE QUESTION THAT HE ASKED YOU, AND I WANT TO. ALL OF THE QUESTIONS ARE IMPORTANT AND WE'RE TRYING TO GET AN UNDERSTANDING SO WE CAN END AH END THE INVESTIGATION WITH ALL THE KNOWLEDGE THAT WE NEED TO DO IT. AH, WHENEVER YOU'RE ASKED A QUESTION, AH, IF YOU DON'T MIND, WE NEED YOU TO ANSWER THE QUESTION. DON'T SAY WELL I'M NOT GOING THERE BECAUSE I WAS, THIS IS AN OFFICIAL INVESTIGATION AND EVERY QUESTION THAT WE ASK NEEDS TO BE ANSWERED. PERIOD. OKAY? THIS, WE

MB:    YES, SIR.

KG:    YOU'RE GONNA HELP US TO DO OUR JOB, BUT WHEN YOU SAY WELL I'M NOT GOING THERE, I WAS TOLD I CAN'T DO THIS, WE JUST NEED THE QUESTION ANSWERED BECAUSE WE HAVE TO FIND OUT THE FACTS. THAT'S ALL WE'RE TRYING TO DO.

RO:    AND THEN WHATEVER THE ANSWER IS, THAT IS THE ANSWER, THAT, NO, I, I CAN'T DO THAT THEN TELL US WHY. OR WE'LL ASK WELL WHY NOT. AND THAT'S IF SOMEBODY'S TOLD YOU NOT TO DO SOMETHING, THEN THAT'S WHAT WE'RE WANTING TO KNOW. AH, AND AGAIN, THIS, NOBODY, I PROMISE THERE ARE NO TRICKS HERE. WE'RE TRYING GET TO, TO A CERTAIN ISSUE, BUT THAT'S THE BEST I CAN SAY AT

MB:    WELL I'M DOING THE BEST I CAN, TOO.

KG:    THAT'S FINE. I ASKED YOU IF YOU WERE AWARE OF ANY OTHER MAGISTRATES THAT HAD ACTUALLY AH VOIDED A COMPLAINT AFTER ITS BEEN SWORN TO AND YOU GAVE YOUR ANSWER. HAVE YOU, HAVE YOU EVER VOIDED A COMPLAINT THAT WAS SWORN BY AN OFFICER, EXCUSE ME. HAVE YOU EVER ASKED AN OFFICER TO VOID A COMPLAINT, A TICKET THAT HE HAS SWORN TO OR A CHARGE THAT HE HAS SWORN TO WHICH HAS BEEN A VIOLATION OF LAW? HAVE YOU EVER ASKED AN OFFICER TO GET RID OF A COMPLAINT AFTER HE HAS SWORN TO IT?

MB:    I MIGHT HAVE, BUT NOT TO MY KNOWLEDGE, SPECIFICALLY. I MEAN I, YOU KNOW, NOT TO MY KNOWLEDGE.

KG:    OKAY. TAKE A LOOK AT THIS TRANSMITTAL, AH, AND YOU ALREADY STATED THAT THIS IS YOUR SIGNATURE.

MB:    YES.

KG:    IS THIS YOUR WRITING HERE?

MB:    YES.

KG:    WHEN YOU RECEIVED THIS TRANSMITTAL, DID IT HAVE THESE NUMBERS ON IT ALREADY PREVIOUSLY WRITTEN?

MB:    NO, NO.

KG:    DID IT HAVE THIS LINE MARKED OUT AH WHICH IS STEVEN PHELPS ALREADY WHEN YOU RECEIVED IT?

MB:    I DON'T KNOW.

KG:    OKAY.

MB:    I MEAN I, I KNOW THAT THAT'S MY WRITING.

KG:    OKAY.

MB:    BUT (UNINT)

KG:    OKAY. THE COURT CASE NUMBERS ARE YOURS?

MB:    YES.

9

DOTHAN/Martin & Brackin 1417
Confidential Subject to Protective
Order

KG:   AH, DO YOU REMEMBER, I THINK YOU SAID YOU DIDN'T REMEMBER IF THAT WAS
        STRICKEN OUT OR NOT.
MB:   RIGHT.

KG:   AH, BUT YOU HAVE WRITTEN VOIDED RIGHT HERE.
MB:   UH HUH.

KG:   AH, WOULD YOU, DO YOU REMEMBER WHY THAT WAS VOIDED AT ALL?
MB:   UM, HM.

KG:   DO YOU REMEMBER SWEARING HIM SPECIFICALLY TO THIS TRANSMITTAL AS WELL?
MB:   NO.

KG:   OKAY.  I KNOW THAT WAS A FAIR ANSWER AND I WANT TO GET THAT OUT AS
        WELL.  AH, IN THAT THIS DOES NOT HAVE A COURT CASE NUMBER WOULD THAT
        PRETTY MUCH INDICATE THAT AH WHATEVER REASON IT WAS VOIDED WAS PRIOR TO
        THE COURT CASE NUMBER BEING ASSIGNED TO IT?
MB:   YES.

KG:   OKAY.  DO YOU REMEMBER WHO ASKED YOU TO WRITE THE VOID THERE OR WHY YOU
        WROTE VOID THERE?
MB:   NO.

KG:   AH, HAS ANYBODY TO YOUR KNOWLEDGE CALLED OR CONTACTED YOU TO ASK YOU TO
        VOID THAT CITATION OR WRITE VOID ON THIS TRANSMITTAL
MB:   NO, NOT TO MY KNOWLEDGE, NO.

KG:   AH, THE TICKETS YOU WOULD'VE RECEIVED WOULD'VE BEEN THESE RIGHT HERE,
        WHICH ARE CORRESPONDING WITH THE AH CITATION NUMBER HERE.  DO YOU KNOW
        HOW THESE TICKETS GOT BACK INTO THE POSSESSION OF AH OFFICER DUHAIME,
        CPL. DUHAIME?
MB:   NO.

KG:   DO YOU RECOGNIZE THE HANDWRITING ON THAT ENVELOPE?
MB:   IT LOOKS LIKE MAYBE MARY'S, COULD BE (UNINT) AH, SOME OF US KIND OF
        WRITE SIMILAR.

KG:   OKAY.  AH, WOULD IT BE SAFE TO SAY THAT YOU, AND YOU'RE TALKING ABOUT
        MARY TURNER?  MA'AM?
MB:   YEAH.

KG:   UH, I'M SORRY, I DIDN'T.
MB:   THAT'S WHAT I SAID DIDN'T I?

RO:   I DIDN'T HEAR YOU.
KG:   YOU JUST SAID MARY.  YOU DIDN'T GIVE A LAST NAME
MB:   OKAY.

KG:   JUST, AH, YOU SAID IT APPEARS TO BE MARY'S BUT IS IT, YOU KNOW THAT
        IT'S NOT YOURS.
MB:   IT'S NOT MINE.

KG:   AH, DO YOU HAVE ANY KNOWLEDGE OF MARY AH BEING ASSOCIATED OR ACQUAINTED
        WITH STEVEN PHELPS?
MB:   NO.

KG:   NONE AT ALL.

DOTHAN/Martin & Brackin 1418
Confidential Subject to Protective
Order

MB:   NO.

KG:   DO YOU HAVE ANY KNOWLEDGE WHETHER MARY CALLED YOU AND ASKED YOU TO WRITE VOID ON THIS TRANSMITTAL?
MB:   I DON'T RECALL.  THAT HAPPENED 2 ½ YEARS AGO, FROM THE DATE ON THE TRANSMITTAL.  I MEAN I DON'T, I DON'T KNOW.

KG:   RIGHT, RIGHT.
MB:   IF WE'RE MISSING A, A, WHEN WE'RE KEYING IN CASES, YOU KNOW WHEN WE SWEAR TO THESE TICKETS I DON'T GO TICKET BY TICKET TO LOOK AND MAKE SURE THAT, THAT MATCHES THAT TRANSMITTAL.  I DON'T KNOW OF A MAGISTRATE THAT DOES.

KG:   SAY THAT AGAIN.
MB:   WHEN WE SWEAR TO A TICKET.

KG:   RIGHT.
MB:   LIKE RAY HARRIS SWORE TO ME A WHILE AGO BEFORE I CAME OVER HERE.  I MAKE SURE THAT HIS TWO TRANSMITTALS, EVERY TICKET THAT I HAD MATCHED THAT TRANSMITTAL.  WE TRUST WHAT THE OFFICER HAS ON THERE IS WHAT WE'VE GOT IN OUR HANDS.  AND I DO KNOW THAT WE'RE SUPPOSED TO MAKE SURE THAT WE GET THAT.

KG:   RIGHT, I WAS GONNA, THAT'S WHAT I WAS GONNA BRING UP NEXT.
MB:   NOW WHEN WE GO INTO KEYING IN A CASE AND WE'RE GOING BY THIS TRANSMITTAL AND WE HAVE ONE THAT WE DON'T HAVE A TICKET FOR, WE GO IN THE COMPUTER TO SEE IF IT'S BEEN KEYED IN OR NOT, BECAUSE IT'S POSSIBLE THAT THE PERSON MIGHT HAVE ALREADY PAID THAT TICKET.

KG:   RIGHT.
MB:   AND IT'S BEEN PULLED.  IT'S POSSIBLE IF IT'S A DUI IT'S GONNA GET HANDLED DIFFERENTLY, SO YOU KNOW AT THAT POINT, I, YOU KNOW SOMETIMES WILL PAGE THE OFFICER AND SAY, YOU KNOW WE'RE MISSING THIS TICKET OR SOMETHING.  DO YOU KNOW WHAT MIGHT'VE HAPPENED TO IT?  THAT'S, YOU KNOW THERE'S JUST DIFFERENT SCENARIOS.

KG:   IS IT NOT A PART OF YOUR, YOUR JOB DESCRIPTION AS A MAGISTRATE THAT WHEN THEY BRI', THE OFFICERS BRING TO YOU A COMPLAINT THAT YOU AH INDIVIDUALLY GO OVER EACH COMPLAINT, IN THIS CASE, A TICKET AND GO BY THE NAME ON THE COMPLAINT WHEN YOU'RE SWEARING TO THE OFFICER
MB:   UM, HM.

KG:   INSTEAD OF JUST DO IT AS A GROUP.  DO YOU SWEAR THAT, INSTEAD OF SAYING DO YOU SWEAR TO THIS
MB:   RIGHT, WE GO, WE GO THROUGH EACH TICKET, AND MAKE SURE THAT THEY'VE GOT, YOU KNOW THE CHARGE WRITTEN ON THERE AND MAKE SURE THERE'S A COURT DATE OR YOU KNOW THAT'S, AND THEY'VE SIGNED THE TICKET AND MAKE SURE THAT SORT OF THING.

KG:   SO WHEN THEY SWEAR TO YOU, YOU KNOW THAT EACH ONE OF THESE DOCUMENTS ARE PHYSICALLY PRESENT?
MB:   WE TRUST THAT THE OFFICER HAS GIVEN US WHAT'S ON THERE, YES.  BUT I'M NOT SAYING THAT WE DON'T GO BY THEIR, WHEN, LIKE I SAID, WHEN I SWORE TO RAY'S, I DIDN'T GO THROUGH AND COUNT EACH ONE AND MAKE SURE THAT, THAT'S WHAT WAS ON THAT TRANSMITTAL.  WE DON'T, I MEAN WE JUST

11

DOTHAN/Martin & Brackin 1419
Confidential Subject to Protective
Order

KG: SO YOU'RE SAYING THAT, THERE COULD'VE BEEN A TICKET MISSING BUT YOU WOULD'VE SWORN TO THE TRANSMITTAL ANY WAY? YOU WOULD'VE SWORN TO IT WRITTEN HERE ON THE TRANSMITTAL ANYWAY?

MB: I'M TELLING YOU THAT WHENEVER WE SWEAR TO SOME TICKETS, IF YOU BRING ME A WHOLE, IF YOU BRING ME IN SOME TICKETS AND YOU'VE GOT A TRANSMITTAL, OF COURSE IF YOU'VE GOT ONE TICKET AND THERE'S ONE NAME WRITTEN ON HERE, I ASSUME THAT'S ALL THAT THERE IS. THAT'S ALL I GOT.

KG: RIGHT.

MB: I DON'T MAKE SURE THAT MARY MCBRIDE IS THE TICKET I'VE GOT. WE DON'T HAVE TIME TO CHECK THOSE. WE DON'T DO THAT. I MEAN THAT'S JUST, YOU KNOW, I DON'T KNOW A MAGISTRATE THAT DOES. MAYBE THERE'S ONE THAT DOES THAT. I DON'T KNOW. BUT IF YOU'VE GOT SOMEBODY THAT BRINGS LIKE RAY HARRIS BROUGHT IN A WHOLE TRANSMITTAL TO ME. DID I GO BY AND MAKE SURE THAT I HAD EACH ONE OF THOSE? NO.

KG: THAT ISN'T PART OF YOUR JOB, THOUGH?

MB: WELL

KG: TO MAKE SURE THAT THE COURT

MB: IT MIGHT BE

KG: INFORMATION IS (UNINT)

MB: BUT THAT'S THE OFFICER'S WRITING ON THERE, AND I, YOU KNOW, HOPE THAT THE OFFICER'S GIVEN ME WHAT HE'S GOT ON THERE. AND IF I DON'T HAVE IT, THEN I'LL PAGE HIM AND FIND OUT WHY I DON'T HAVE IT.

KG: OKAY.

MB: BUT I MEAN IT'S, YOU KNOW. IT'S, IT'S A PRACTICE THAT WE PROBABLY N', SHOULD DO, BUT YOU KNOW IT, IT'S SOMETHING THAT, SOMETIMES I'VE DONE IT AND SOMETIMES I HADN'T. LIKE I SAID IF THERE'S ONLY A FEW TICKETS I MIGHT GLANCE AT 'EM, BUT THERE ARE TIMES WHEN I DON'T.

KG: ACCORDING TO AOC, WHAT ARE YOU SUPPOSED TO DO? THEIR, THEIR POLICY, THEIR RULES

MB: I'M NOT, I DON'T KNOW, I'M NOT SURE AS FAR AS THE TRANSMITTAL. I MEAN I KNOW THAT WHATEVER YOU KNOW, COMMON SENSE WOULD TELL YOU IF IT'S ON THE TRANSMITTAL I MEAN YOU SHOULD HAVE THE TICKET. BUT THAT, YOU KNOW, THAT MAY NOT HAPPEN. I MEAN IF I DIDN'T HAVE IT AT THE TIME EVIDENTLY IT WAS MISSING WHEN I KEYED IT IN OR SOMETHING.

KG: WHEN YOU'RE INITIALLY TAUGHT TO SWEAR OFFICERS AH TO THEIR COMPLAINTS WHAT IS THE PROCESS THAT YOU'RE SUPPOSED TO DO AS A MAGISTRATE?

MB: YOU TELL 'EM TO RAISE YOUR RIGHT HAND AND ASK 'EM IF THEY SWEAR TO TELL THE TRUTH.

KG: OKAY, AND THEN WHAT AFTER THAT SPECIFICALLY RELATED TO THE COMPLAINT?

MB: RELATED TO THE TICKET.

KG: ANY COMPLAINT.

MB: YOU JUST GO, YOU GO THROUGH AND, WELL A TICKET'S HANDLED DIFFERENTLY THAN AN ACTUAL MISDEMEANOR COMPLAINT.

KG: OKAY. THE TICKET IS THE COMPLAINT

MB: RIGHT.

KG: WHEREAS, OKAY

DOTHAN/Martin & Brackin 1420
Confidential Subject to Protective
Order

MB:   BUT IF YOU'VE GOT A DOMESTIC VIOLENCE CHARGE OVER HERE YOU'VE GOT YOUR
      PROBABLE CAUSE WRITTEN ON THE NARRATIVE, YOU MAKE SURE THAT PROBABLE
      CAUSE FITS THE CHARGE.  AND THEN YOU MAKE SURE YOU HAVE YOUR WITNESSES
      AND ALL AT THE BOTTOM.  BUT ON TRAFFIC TICKETS, THAT OFFICER'S WRITTEN
      THAT TICKET AND WE ASSUME THAT OFFICER WROTE THAT TICKET FOR SPEEDING
      YOU KNOW IT'S, WE'RE NOT HERE TO TRY THE CASE.

KG:   RIGHT.
MB:   ALL WE'RE HERE TO DO IS JUST TO, YOU KNOW MAKE SURE THAT THAT OFFICER
      YOU KNOW HAS THAT WRITTEN DOWN AND THEN WE SWEAR IT TO 'EM AND WE GO
      FROM THERE.

KG:   OKAY, BUT AH, IT WOULD BE THE RESPONSIBILITY OF THE MAGISTRATE TO AH
      LISTEN TO THE COMPLAINT AS IT IS A VIOLATION OF THE LAW AND THEN HAVE
      THEN TO SWEAR AN OATH OF AFFIRMATION THAT THAT PARTICULAR PERSON
      VIOLATED THAT LAW WHICH YOU'RE NOW AFFIRMING TO BE A COURT ACTION?
MB:   UM, HM.

KG:   OKAY.  AH, LET'S TALK SPECIFICALLY ABOUT THIS ONE.
MB:   OKAY.

KG:   AND THANKS FOR FILLING ME IN ON AN AREA THAT I MAY BE A LITTLE BIT LAX
      IN.  AH, THIS ONE DID NOT RECEIVE A COURT AH CASE NUMBER.
MB:   RIGHT.

KG:   SO THIS WOULD INDICATE THAT IT WAS SOME TYPE OF PROCESS, SOMETHING I
      GUESS CAME INTO PLAY WHICH AH PREVENTED YOU FROM GIVING IT A COURT
MB:   RIGHT.

KG:   CASE NUMBER?
MB:   RIGHT.

KG:   WHAT WOULD'VE THAT HAVE BEEN?
MB:   WELL JUST LIKE I SAID EARLIER IT COULD'VE BEEN DIFFERENT YOU KNOW,
      DIFFERENT THINGS.  COULD'VE BEEN EITHER PAID, AND SOMEBODY HAD TAKEN IT
      OUT, CHECKING THE COMPUTER.

KG:   YOU DON'T SPECIFICALLY REMEMBER?
MB:   NO.

KG:   THAT'S WHAT YOU'RE SAYING?
MB:   NO, UM, UM.

KG:   OKAY.
MB:   NO.

KG:   OKAY.
RO:   DO YOU HAVE TO DO THAT ON A LOT OF THE TRANSMITTALS?
MB:   WE DON'T KEY 'EM IN ANY MORE.

RO:   OKAY.  WHEN YOU DID, DID YOU KEY THOSE IN?
MB:   YEAH.

RO:   OKAY.  WHEN YOU DID THAT, DID YOU HAVE AN OCCASION WHERE YOU WERE
      MISSING TICKETS LIKE THAT?
MB:   YEAH, UH HUH, YEAH.  IT'S NOT UNCOMMON TO HAVE A TICKET MISSING ON A
      TRANSMITTAL.

DOTHAN/Martin & Brackin 1421
Confidential Subject to Protective
Order

RO:    OKAY.  THAT'S THE WAY YOU HANDLE IT IF THERE'S ONE MISSING?
MB:    RIGHT.

RO:    YOU GO BACK
MB:    YOU GO THROUGH SOME DIFFERENT STEPS.

RO:    YOU, YOU UNDER, YOU SEE THAT
MB:    YOU BACK, UM, UM.

RO:    YOU SEE THAT YOU'RE MISSING AND YOU GO TO THE TRANSMITTAL AND YOU VOID
       THAT OUT THAT WAY?
MB:    NO, YOU DON'T VOID IT OUT.  I MEAN YOU JUST GO, YOU LOOK AND SEE IF
       IT'S AH BEEN PAID OR WHATEVER AND THEN YOU WRITE THE CASE NUMBER ON
       THERE, CAUSE IT WOULD'VE HAD A CASE NUMBER BY THEN.  AH, OR IF IT'S
       MISSING, YOU PAGE THE OFFICER, AND THE OFFICER MIGHT'VE SAID, OH, WELL
       I VOIDED THAT ONE.  I MEAN IT

RO:    OKAY, I'M WITH YOU.
MB:    THAT COULD'VE BEEN WHAT HAPPENED.  YOU KNOW I'M NOT SAYING THAT THAT'S
       WHAT HAPPENED, I'M JUST SAYING THAT THAT'S, CAUSE I DON'T REMEMBER
       SPECIFICALLY.

KG:    RIGHT.  I UNDERSTAND.  DO YOU REMEMBER SPECIFICALLY RECEIVING THE
       TICKET OF STEVEN PHELPS
MB:    NO.

KG:    ON THE DAY?
MB:    NO.  I CAN'T EVEN REMEMBER MUCH WHAT HAPPENED LAST WEEK.

RO:    WHEN YOU GET MY AGE, YOU'LL HAVE WORSE PROBLEMS.
MB:    I GOT A LONG WAY TO GO (UNINT)

RO:    I KNOW.  THAT HURT ME.
KG:    LAST QUESTION ABOUT THIS.  I WANTA MAKE SURE I'M CLEAR ON IT.  I, I
       AND CORRECT ME IF I'M WRONG.  I UNDERSTAND THAT THIS OFFICER CAME IN
       AND SWORE AN OATH OF AFFIRMATION TO ALL THESE TICKETS.  IN HIS
       INTERVIEW HE SAID THAT THIS TICKET WAS INCLUDED WITHIN AH, WHEN HE
       TURNED THEM IN TO YOU AND YOU WERE THE ONE THAT SIGNED IT AND, AND THIS
       WAS HERE.  HE HAD NOT VOIDED AH THIS TICKET, AH, AT THE TIME THAT IT
       WAS TURNED IN TO, TO YOU.  AH, SO ON, THIS DATE AND TIME, AH I KNOW YOU
       DON'T SPECIFICALLY REMEMBER IT, BUT YOU DO AGREE THAT THE NUMBERS HERE
       WHICH WERE ISSUED AH, COURT CASE NUMBERS WERE WRITTEN BY YOU AND THIS
MB:    UM, HM.

KG:    COMPLAINT WAS AH THE, THE OATH OF AFFIRMATIVE YOU
MB:    RIGHT.

KG:    GAVE THAT TO HIM PROPERLY
MB:    UM, HM.

KG:    LIKE YOU WERE SUPPOSED TO?
MB:    UM, HM.

KG:    AH, YOU DON'T HAVE ANY KNOWLEDGE ABOUT THIS PARTICULAR AH CITATION
       SINCE THE DATE THAT AH CPL. DUHAIME STATED
MB:    NO,

14

DOTHAN/Martin & Brackin 1422
Confidential Subject to Protective
Order

```
KG:   HE TURNED IT IN?
MB:   UM, UM.

KG:   OKAY.
MB:   I DON'T REMEMBER.

KG:   AH, AND YOU'RE ALSO SAYING THAT YOU DON'T KNOW WHAT HAPPENED TO THE
      CITATION AFTER AH IT CAME INTO THE OFFICE.  IS THAT SAFE TO
MB:   WELL I DON'T EVEN KNOW IF IT GOT TO ME.

KG:   OKAY.
MB:   CAUSE I MEAN I, I DON'T EVEN, I DIDN'T EVEN SIGN THE TICKETS.

KG:   OKAY.
MB:   SO YOU KNOW I'M NOT EVEN SURE THAT IT CAME TO ME.

KG:   OKAY.  YOU READ WHAT THAT STATES RIGHT THERE?
MB:   UM, HM.  THE ABOVE LISTED TRAFFIC TICKETS ARE RECEIVED FOR COURT
      ACTION.

KG:   OKAY, SO THIS IS YOUR SIGNATURE THAT YOU RECEIVED THESE TICKETS.
MB:   THAT'S RIGHT.  THAT'S RIGHT.

KG:   OKAY.
MB:   THAT'S RIGHT.  I CAN SAY THAT THERE HAVE BEEN, ALSO WHERE WE'VE HAD TO
      ADD TICKETS ON THE TRANSMITTAL BECAUSE THE OFFICER DIDN'T PUT IT DOWN.
      I'D LIKE TO ADD THAT, TOO.

KG:   WERE THEY SWORN TO?
MB:   YEAH.

KG:   AT THE SAME TIME?
MB:   YEAH.

KG:   OR JUST
MB:   YEAH, THEY JUST FORGOT TO WRITE 'EM ON THE TRANSMITTAL.

KG:   OKAY.
MB:   SO IT HAPPENS.

KG:   BUT THE MAIN ISSUE IS SWEARING AN OATH OF AFFIRMATION, SWEARING THAT
      YOU DID RECEIVE THESE TICKETS AND THEY BE PROPERLY LISTED AND YOU HAVE
      TO SWEAR AN OATH TO EACH AND EVERYONE OATH AS MANDATED BY AOC.
MB:   UM, HM.

KG:   OKAY.  AND AH YOU SAY YOU DON'T SPECIFICALLY REMEMBER THIS ONE ACTUALLY
      BEING HERE.
MB:   I DON'T REMEMBER ANY OF THOSE.

KG:   UMKAY.  BUT BY YOUR SIGNATURE ON HERE SAYING YOU RECEIVED THEM, MORE
      THAN LIKELY YOU DID, OR I WOULD (UNINT) THAT YOU DID.
MB:   I DON'T KNOW BECAUSE MY SIGNATURE'S NOT ON THAT TICKET.  I CAN'T SAY
      THAT I RECEIVED IT.  OTHER MY NAME, I DO NOT RECALL.

KG:   BUT ACCORDING TO THE TRANSMITTAL YOU DID RECEIVE IT, WHERE YOUR
      SIGNATURE'S THERE, IS THAT CORRECT?
```

15

DOTHAN/Martin & Brackin 1423
Confidential Subject to Protective
Order

MB:   MY SIGNATURE IS ON THE TRANSMITTAL.

KG:   AND IT STATES THAT THE ABOVE LISTED TRAFFIC TICKETS ARE RECEIVED FOR
      COURT ACTION.
MB:   THAT'S WHAT IT SAYS ON THE TRANSMITTAL.

KG:   OKAY.  HAS MRS. TURNER, AHM DIRECTED YOU IN ANY WAY TO AH DISMISS A
      TICKET?
MB:   NO, NOT THAT I RECALL.  UM, UM.

KG:   OKAY.
RO:   YOU SAY THAT IT'S NOT UNCOMMON WHEN YOU GET, WHEN ANY MAGISTRATE GETS A
      TRANSMITTAL THAT HAS MULTIPLE CITATIONS ON IT FOR THEM TO SWEAR TO THE
      ENTIRE GROUP WITHOUT GOING THROUGH EACH ONE?
MB:   YES.

RO:   IS THAT CORRECT?
MB:   YES.

RO:   OKAY.  NO ONE, NONE OF YOUR SUPERVISORS HAVE EVER DIRECTED YOU
      OTHERWISE THAT YOU SHOULD GO OVER EACH ONE NO MATTER HOW BUSY YOU ARE?
      IS THAT CORRECT?
MB:   I DO NOT RECALL IF THEY'VE SAID THAT.

RO:   OKAY.  I DON'T HAVE ANY MORE QUESTIONS.
KG:   AH, IS IT NOT A PART OF THE MAGISTRATE'S DUTIES TO INDIVIDUALLY SWEAR
      TO EACH ONE OF THE COMPLAINTS THAT ARE BROUGHT BEFORE YOU?
MB:   YES.

KG:   WHERE DID YOU, WHO, WHO GAVE YOU THE, THE INITIAL POLICY OR WHO GAVE
      YOU DIRECTIONS ON HOW YOU'RE SUPPOSED TO RECEIVE COMPLAINTS?  YOU BEEN
      HERE FOR 13 YEARS.  SOMEONE TAUGHT YOU OR A POLICY OR AOC WHICH GIVES
      YOU THE AUTHORITY TO SWEAR TO THESE THINGS.  HOW DID YOU FIRST COME IN
      CONTACT WITH THE PROCESS OF SWEARING AND ACCEPTING A COMPLAINT AS A
      MAGISTRATE?
MB:   BY THE MAGISTRATE.

KG:   OKAY.  BY THE SENIOR MAGISTRATES THAT WERE THERE WHENEVER YOU WERE
      HIRED
MB:   UH HUH

KG:   SUCH AS GAYLE SCHWARZ?
MB:   UM, HM.

KG:   OKAY.  AH, WITH, DO YOU REMEMBER OR NOT, AND YOU MAY OR MAY NOT, YOU
      SAID IT WAS A LONG TIME AGO AND I UNDERSTAND THAT.  IF THE POLICY BACK
      THEN WAS TO SWEAR TO EACH INDIVIDUAL COMPLAINT OR TO GROUP
MB:   YES

KG:   COLLECTIVELY, COLLECT 'EM AS A GROUP?
MB:   YES.

KG:   HAS ANYONE SINCE THEN OR AOC OR A CHANGE IN THE LAW AH STATED THAT NO
      LONGER DO YOU HAVE TO SWEAR TO THESE TICKETS INDIVIDUALLY, OR THESE
      COMPLAINTS INDIVIDUALLY?
3:    NO.

16

DOTHAN/Martin & Brackin 1424
Confidential Subject to Protective
Order

KG:     AND DO THEM AS GROUP?
MB:     NO.  DID I UNDERSTAND YOU RIGHT?

KG:     YES, I THINK YOU DID.  YOU ANSWERED THE QUESTION PROPERLY.
MB:     UM, HM.

KG:     OKAY.  DO YOU HAVE ANYTHING THAT YOU'D LIKE TO ADD?
MB:     NO.

KG:     HAS DUHAIME CONTACTED YOU IN REFERENCE TO THIS?
MB:     NO.

KG:     TICKET?  OKAY.  AH, BE DIRECTED THAT THIS IS AN ONGOING AH
        ADMINISTRATIVE INVESTIGATION AND NOT TO SPEAK ABOUT IT TO, TO ANYONE.
        IT'S GONNA BE THE END OF STATEMENT.  TIME IS 12:35 P.M.

DOTHAN/Martin & Brackin 1425
Confidential Subject to Protective
Order

Police Officer's Name: _____

| | State of Alabama<br>Unified Judicial System<br>FORM UTC 3 Rev 3/82 | UTC TRANSMITTAL FORM<br>FOR MUNICIPAL COURTS | UTC Control<br>Page ____ of ____ pages |
|---|---|---|---|

**TO: (Court Name & Address)**

Court Name: City of Dothan Municipal Court    793-0284

Address: 210 N. Saint Andrews Street

Dothan, Alabama  36303

**FROM: (Law Enforcement Name & Address)**

Agency Name: City of Dothan Police Department    793-0100

Address: 210 N. Saint Andrews Street

Dothan, Alabama  36303

| SER | UTC NUMBER | DATE ISSUED | D.L. ATTACH | COURT CASE NUMBER (TR) YEAR | NUMBER | REMARKS |
|---|---|---|---|---|---|---|
| | 7286 | 4-23-05 | no | | | SHIVES |
| " | 7 14 | 4-23-05 | no | | | LONG |
| " | 13 | " | " | | | READY |
| " | 12 | " | " | | | DIX |
| " | 09 | " | " | | | MACK |
| " | 07 | " | " | | | MARTIN |
| " | 7829283 | " | " | | | BRACKEN |
| " | 82 | " | " | | | SAMPSON |
| " | 8.1 | " | " | | | FERRELL |
| " | 80 | " | " | | | FERRELL |
| " | 79 | " | " | | | LASSITER |
| " | 78 | " | " | | | HARRISON |
| " | 77 | " | " | | | TEAL |
| " | 76 | " | " | | | HARRIS |
| " | 7828025 | " | " | | | PASCUA |
| " | 24 | " | " | | | WIDEMAN |
| " | 23 | " | " | | | GETCH |
| | | | | | | |
| | | | | | | |

| | MONTH | DAY | YEAR |
|---|---|---|---|
| DATE: | 0 4 | 2 6 | 0 5 |

The above listed traffic tickets are received for court action.

DOTHAN/Martin & Brackin 1426
Confidential Subject to Protective Order

COURT ID: AL 0 3 8 0 2 1 J

Received by _____

Original - Court        Copy - Police Agency

Police Officer's Name: _Ray Maury_

| State of Alabama<br>Unified Judicial System<br>FORM UTC 3 Rev 3/82 | UTC TRANSMITTAL FORM<br>FOR MUNICIPAL COURTS | UTC Control<br><br>Page __1__ of __1__ pages |
|---|---|---|

**TO: (Court Name & Address)**

Court Name: City of Dothan Municipal Court   793-0284

Address: _210 N. Saint Andrews Street_

_Dothan, Alabama  36303_

**FROM: (Law Enforcement Name & Address)**

Agency Name: City of Dothan Police Department

Address: _210 N. Saint Andrews Street_

_Dothan, Alabama  36303_

| SER | UTC NUMBER | DATE ISSUED | D.L. ATTCH | COURT CASE NUMBER (TR) YEAR | NUMBER | REMAR |
|---|---|---|---|---|---|---|
| M | 74 29026 | 4-24-05 | NO | | | Mantee |
| " | 74 29300 | 4-24-05 | NO | | | ELKO |
| " | 299 | " | " | | | ELKO |
| " | 99 | " | " | | | SMITH |
| " | 97 | " | " | | | KAY DEL |
| " | 96 | " | " | | | SINGLETON |
| " | 95 | " | " | | | JOHNSON |
| " | 94 | " | " | | | DAWSEY |
| " | 93 | " | " | | | MITCHELL |
| " | 92 | " | " | | | HALL |
| " | 91 | " | " | | | THIERRY |
| " | 90 | " | " | | | STONE |
| " | 99 | " | " | | | BUTLER JR |
| " | 88 | " | " | | | SPEARS |
| " | 87 | " | " | | | TICE |
| " | 86 | " | " | | | TICE |
| " | 85 | " | " | | | MACK |
| " | 84 | " | " | | | EDGE |
| F | 1215 | 4-23-05 | " | | | McCORD |

DATE:

| MONTH | DAY | YEAR |
|---|---|---|
| 4 | 26 | 05 |

The above listed traffic tickets are received for court action.

COURT ID: | AL | 0 | 3 | 8 | 0 | 2 | 1 | J |

Received by _Jr Sn_

DOTHAN/Martin & Brackin 1427<br>Confidential Subject to Protective Order

Original - Court          Copy - Police Agency