# CONFIDENTIAL



# JUDICIAL COURT DEPARTMENT INVESTIGATION

## UNAUTHORIZED RELEASE OF INFORMATION

DOTHAN/Martin & Brackin 1302
Confidential Subject to Protective
Order

# Dothan Police Department

## M E M O R A N D U M



| | | |
|---|---|---|
| **FROM** | : | Sergeant I. Keith Gray |
| **TO** | : | Chief John R. Powell |
| **DATE** | : | April 27, 2005 |
| **SUBJECT** | : | **JUDICIAL COURT DEPARTMENT INVESTIGATION** <br> **UNAUTHORIZED RELEASE OF INFORMATION** |

This is to inform you of the results of the Internal Affairs Investigation which began on March 17, 2005 that involves employees of the City of Dothan Judicial Court Department.

The City of Dothan Municipal Court Judge, Rose Evans-Gordon met with Captain Steve Parrish on March 3, 2005 in reference to possible misconduct involving one of her staff members Mary Turner. Judge Gordon placed Turner on administrative leave, and held a meeting with all of her staff, for the exception of Turner and Ms. Tonya Minnifield on March 10, 2005. The employees were advised by Judge Gordon that Turner was on administrative leave, and that an internal affairs investigation was being conducted by the Dothan Police Department. All employees were directed to, *"Strictly refrain from any contact with Ms. Turner while the internal investigation by the Dothan Police Department was underway."* She also directed them not to enter Turner's office nor access any computes for her. Further, employees were also instructed that, *"No discussion with anyone regarding this matter was to take place," and the employees of my department were to respond truthfully to any questions put to them by the investigating officer(s)"*. Judge Gordon had documents removed from Turner's office which were time sensitive and had them reassigned. She also instructed employees to make contact with her (Judge Gordon) if anything arose regarding Turner's normal duties and she (Judge Gordon) would see that it was handled.

On or about March 16, 2005 it was discovered that details of the investigation surrounding the Judicial Court Department had been compromised. Website http://www.rickystokesnews.com contained information regarding details of the investigation. I informed Captain Parrish, who in turn informed Chief John Powell of the story on the website. I was directed to launch an independent investigation solely to identify who may have released any information regarding the investigation of the Judicial Department.

On March 17, 2005 Judge Gordon and I met with the employees of the Judicial Department for the exception of Mary Turner and Michelle Bryan. Judge Gordon passed out a document entitled, "ETHICS, Employees Can Be Fired For Lying," and explained to them that I would be conducting an independent investigation into the release of information. I explained the document as well as the possibility of the polygraph instrument being used within this investigation. Immediately after this meeting I began to

DOTHAN/Martin & Brackin 1303
Confidential Subject to Protective
Order

interview the employees. All employees signed a copy of the Garrity Notice prior to their interviews and answered my questions. When I asked them if they had spoken to anyone since the meeting with Judge Gordon they said yes, for the exception of Minnifield, and Ms. Lavera McClain. Most employees stated that they had told their spouse, and/or a close relative that there was an investigation involving their department, however, they did not know what it was about. Minnifield was absent during the employee meeting and was never directed by Judge Gordon not to discuss it, nor was she told about the meeting. When Minnifield came to the office she asked Ms. McClain where everybody was. Due to Minnifield's absence during the meeting, Ms. McClain advised her that Turner was on administrative leave and that per Judge Gordon's directions, she was not to discuss the matter with anyone.

**Statement of Tonya Minnifield on March 18, 2005**
Ms. Minnifield stated that on March 15, 2005 she was working at the front window inside of the magistrate's office and bondsman Tim Dickerson, employee of Advantage Bonding Company, approached her and asked her where Turner was. She advised him that Turner was off. He then asked for Ms. Sarah Fowler. Minnifield called Fowler to the window and Dickerson asked her where Turner was. Fowler stated that she was not at liberty to say. They spoke briefly and both of them parted ways. Shortly thereafter, Minnifield had to leave the office briefly, and when she exited the front door of the building she saw Fowler and Dickerson having a conversation at the back door. Minnifield did not hear what they were saying, but stated that Melanie Walsh was outside in the parking lot at her car smoking while Fowler and Dickerson were talking.

**Statement of Melanie Walsh on March 17, 2005**
Ms. Walsh stated, she did see Fowler standing at the back door talking with Mr. Dickerson, however, she did not hear the conversation.

**Statement of Valarie Savage on March 18, 2005**
Ms. Savage stated that a co-worker told her that Fowler had just entered the building after being out in the parking lot talking to Dickerson. Savage asked what the subject of their conversation was, and the co-worker did not know. Savage then called Dickerson on the phone and jokingly said, *"You know I'm appalled that you come up her and you don't speak to us whenever you come to the office."* and he said, *"Oh, I was just speaking to Ms. Sarah."* Savage replied, *"That's fine I was just picking on you."* Dickerson replied, *"We were discussing Mary Turner."* She replied, *"Well that's not something that we need to be talking about, and I appreciate it."* The phone conversation ended.

**Statement of Sarah Fowler March 17, 2005**
Ms. Fowler stated that during a meeting, Judge Gordon informed employees of an investigation regarding Turner, and directed them not to have contact or see her, not to enter into her office, not to access any cases that Turner was working on, and not to call her and ask her any questions. She added that Dickerson asked her where Turner was, and she told him that she was not there. He then asked why she was not there and Fowler replied that she could not discuss it. Dickerson then said to her that Turner is usually up front at the window. He left after approximately 15 minutes. Fowler stated that she had a feeling that Dickerson was asking the whereabouts of Turner for a specific reason. When I asked her if she had talked with him outside after their initial conversation she said no. Later I asked her again if she had another conversation outside and she said yes. It was clear to me that Fowler was not being forthcoming with her answers, and contradicted herself.

DOTHAN/Martin & Brackin 1304
Confidential Subject to Protective
Order

**Statement of Mary E. Brackin March, 17, 2005**
Ms. Brackin (Marybeth) stated, that she was made aware of an investigation regarding Turner whenever Judge Gordon had a meeting with the judicial employees on March 10, 2005. Ms. Brackin said that the employees were directed **not to talk with Ms. Turner**, not to make any comment about the investigation, not to enter Turner's office, not to print anything on the computer, nor speak to anyone about the investigation. When I asked her if she had talked with Turner about anything since the employee meeting she stated that she (Brackin) was given an assignment that Turner usually handled regarding a "Show Cause" letter. She (Brackin) contacted Turner and asked her, how to get the setup on the "Show Cause" letter. Turner explained to her the procedure that Betty King had done in the past. It is known within the magistrate's office that Turner and Brackin are close friends.

**Statement of Michelle Sellers April, 28, 2005**
Ms. Sellers is Judge Gordon's Administrative Assistant/Acting Court Clerk and was present during the meeting as well. She stated that after the employee meeting was finished, Brackin advised Sellers that she (Brackin) needed to get some information off of Turner's computer which was a "Show Cause" letter. Sellers told Brackin to obtain a copy of the letter from another file and use it as a guideline. Brackin told Sellers that she did not have time for that, so Sellers volunteered to obtain a copy of the letter for her. Sellers in turn, directed Ann Baxter to obtain a copy of the "Show Cause" letter for her. Baxter sent Sellers the letter, and Sellers called Brackin and directed her to receive the copy from the fax machine. Sellers stated that there was no reason for Brackin to have contacted Ms. Tuner for this information.

**Statement of Mary Turner on April 26, 2005**
Ms. Turner stated that prior to her birthday, she has had, "a couple" of conversations with Ms. Brackin since being placed on administrative leave. When asked if the subject of their conversations were work related, she said no. This contradicts Ms. Brackin's above statement.

There was nothing significant to report from the other employees that were interviewed, however, their statements will be made a part of this report. Since Brackin admitted to speaking with Turner after being directed not to by Judge Gordon, I polled all other employees and asked them a hypothetical question. This was done to ensure that Judge Gordon's directives were clear to all employees. I asked them, *"Hypothetically speaking, taking into account the directives that Judge Gordon gave during the employee meeting. If you had a question that only Mary Turner could answer that was work-related. Would you contact her and ask her advice?"* All employees responded, "NO". Fowler added that if she herself absolutely had to speak with Turner, she would have asked Judge Gordon's permission first.

After a complete investigation, it is unknown who released information regarding the Turner investigation. However, during the course of this investigation it was discovered Mary Elizabeth Brackin has violated the following:

## MAJOR OFFENSES
Personnel Rule, Regulation III, Sec. 3-42. (14) "Insubordination."

Mary Elizabeth Brackin admittedly disobeyed a directive from her Department Head, Judge Rose Evans-Gordon, which was given on March 10, 2005, to refrain from any contact with Mary Turner during the ongoing Police Department investigation of Ms. Turner.

DOTHAN/Martin & Brackin 1305
Confidential Subject to Protective Order




# The City Of Dothan
# Municipal Court

Honorable Rose Evans-Gordon
Municipal Judgte

Nancy Martin
Municipal Court Administrator

*March 17, 2005*

*On or about March 10, 2005 at approximately 1100 hours I met with the staff of the Magistrates' Office in the presence of Michelle Sellers. All employees were present except Ms. Mary Turner, who was on administrative leave at the time. I instructed these employees to strictly refrain from any contact with Ms. Turner while the internal investigation conducted by the Dothan Police Department was underway. I further instructed that no discussion with anyone regarding this matter was to take place. I made no mention of what the allegations might be, nor did I mention any investigator by name, saying merely that investigators from the Police Department would be conducting the inquiry and that the employees of my department were to respond truthfully to any questions put to them by the investigating officer(s).*

*Michelle and I removed case files for open Municipal Court cases from Ms. Turner's office so that Court operations could continue smoothly. These files were then assigned to other magistrates for processing. All employees were instructed not to enter Ms. Turner's office for any reason.*

*Rose Evans-Gordon,*
*Municipal Judge*

Post Office Box 2128
Dothan, Alabama 36302-2128
(334) 615-4150
(334) 615-4142
Fax (334) 615-4149

DOTHAN/Martin & Brackin 1306
Confidential Subject to Protective
Order

Judicial Department Under Investigation

# Judicial Department Under Investigation

(2005-03-16)

*Dothan Police Internal Affairs Conducting Investigation*

---

DOTHAN: Unconfirmed - the Dothan Police Department is currently conducting internal affairs investigation into the Judicial Department of the City of Dothan. Unconfirmed information is that Sgt. Keith Gray is conducting the investigation.

NOTE: Gray recently made racial discrimination allegations against the City of Dothan. Confidential sources have indicated some reverse racial discrimination might be on going within the Judicial Department.

Sources have said the investigation is concerning allegations that a ticket was dismissed in exchange for some work to be done on a municipal court employee's residence. When the work was not performed, warrants were issued and the person arrested.

Judge Gordon nor the employee which is under investigation has been asked about this. Dothan Police Chief John Powell was just sworn in on Tuesday afternoon and we have not spoken with him concerning the investigation. Dothan City Manager Mike West is in Washington D.C. this week and we have not contacted him concerning this investigation. However, unnamed sources have confirmed that the investigation is on-going.

The Judicial Department is under the supervision and control of Dothan Municipal Judge Rose Gordon. The department has been the center of problems over the past couple of years. The department has been unable to keep someone as the Municipal Court Administrator for any period of time.

The most recent Municipal Court Administrator was Dothan resident Nancy Martin. She came to the magistrate office from Legal Services. Martin remained in her position for six months and, according to sources, was making very significant progress in the Dothan Magistrate's Office. The office was becoming efficient and organized. When the six months was up, Gordon gave Martin a unsuccessful review and Martin's employment was terminated. Sources have said Gordon's review was that Martin made decision's without consultation and input from Gordon. Some sources say that Martin was putting Gordon's pet employees to work and they were constantly complaining to the Judge, and that is the reason for the bad review and termination.

Keep watching for more articles as the information develops.

DOTHAN/Martin & Brackin 1307
Confidential Subject to Protective
Order

http://www.rickystokesnews.com/news/print.php?newsid=193

3/16/05

# ETHICS

## EMPLOYEES CAN BE FIRED FOR LYING

Supreme Court Decision
High court settles issue of employee lies
*Citation: LaChance V. Erickson, No.96-1395 (Supreme Court) 1998*

The U.S. Supreme Court recently ruled **public employers can punish employees who falsely deny an accusation of misconduct or who lie about underlying facts related to misconduct.** The decision should increase the ability of municipalities to investigate employee misconduct.

The case heard by the Supreme Court was a consolidated appeal involving six federal employees. The employees had been charged with misconduct and had lied to investigators. The agencies where the employees worked ultimately punished the employees for the misconduct and for making false statements during an agency investigation. In some cases, the punishment was dismissal.

The employees individually appealed to the Merit Systems Protection Board, which overruled the punishments for the false statements. The Director of the Office of Personnel Management appealed all six decisions to the U.S. Court of Appeals for the Federal Circuit.

The Court of Appeals affirmed the board's decisions, ruling that the employees had a property interest in their jobs and so were entitled to due process. The Court of Appeals said the right to due process included a right to notice and a meaningful opportunity to be heard, which it said included the right to make false statements related to the misconduct.

The director appealed to the Supreme Court. The Supreme Court reversed, holding the agencies could separately punish the employees for falsely denying the charges against them and for lying about facts underlying the misconduct they were charged with. **IT RULED THE MEANINGFUL OPPORTUNITY TO BE HEARD DIDN'T INCLUDE THE RIGHT TO MAKE FALSE STATEMENTS.**

The Supreme Court said people under oath, such as witnesses in a criminal trial, could be punished for lying and there was no reason to distinguish the employees simply because they weren't under oath when they lied. The Court pointed out that the employees could have exercised their right to remain silent if answering the investigator's question would have exposed them to criminal liability. However, the agencies could consider the employees' silence in determining the truth of the allegations of misconduct.

DOTHAN/Martin & Brackin 1308
Confidential Subject to Protective
Order

# Statement

# of

# Tonya D. Minnifield

DOTHAN/Martin & Brackin 1309
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Tonya Mannifield_

    DATE/TIME: _3-18-05 / 3:04 PM_

INVESTIGATING OFFICER: _Lt. R.K. Gray_

    DATE/TIME: _3/18/05   3:05 PM_

WITNESS SIGNATURE: _____

    DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1310
Confidential Subject to Protective
Order

KG:   THIS SGT. GRAY.  THE DATE IS MARCH THE 18TH OF 2005.  THE TIME IS 3:05
      P.M.  THE PLACE OF STATEMENT IS THE MAGISTRATE'S OFFICE.  THIS IN
      REFERENCE CASE NUMBER 05-03-08.  COULD YOU PLEASE STATE YOUR FULL NAME?
TM:   TONYA DENISE MINNIFIELD.

KG:   AH, DID YOU READ YOUR GARRITY NOTICE THAT I JUST PROVIDED?
TM:   YES, I DID.

KG:   AND DID YOU UNDERSTAND IT?
TM:   YES, I DID.

KG:   DID YOU SIGN IT WHERE IT SAID MEMBER'S SIGNATURE?
TM:   YES, I DID.

KG:   HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
TM:   A YEAR.

KG:   AND WHAT IS YOUR TITLE?
TM:   MAGISTRATE.

KG:   OKAY.  BE ADVISED THAT THIS IS AN ADMINISTRATIVE INVESTIGATION AND THIS
      INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY HAVE
      RELEASED ANY INFORMATION REGARDING THE INVESTIGATION OF MARY TURNER.
      WHEN YOU WERE FIRST MADE AWARE THAT THIS INVESTIGATION IN REFERENCE
      MRS. TURNER WAS ONGOING?
TM:   AH, FRIDAY, AH MARCH THE 11TH.

KG:   OKAY.  AH, AND WOULD THAT HAVE BEEN THE, DAY THAT YOU HAD A MEETING
      WITH
      (UNINT)
TM:   NO, I WASN'T HERE THAT DAY.

KG:   OKAY.  OKAY.  WHO ADVISED YOU ABOUT THE INVESTIGATION?
TM:   MRS. MCLAIN.

KG:   OKAY.  DID YOU EVER TALK TO JUDGE AH GORDON ABOUT IT?
TM:   NO.

KG:   DO YOU KNOW IF SHE WAS ADVISED TO AH TALK TO YOU ABOUT IT BY THE JUDGE?
TM:   NO.

KG:   OKAY.  NO, YOU DON'T KNOW OR NO SHE WASN'T?
TM:   I DON'T KNOW, I DON'T.

KG:   TOLD THIS, OKAY.  OKAY.  WHAT WAS, WHAT WAS TOLD TO YOU?
TM:   I WAS COME IN THAT FRIDAY, WE CAME BACK FROM OUR TRIP, AND AH SHE JUST
      TOLD ME THAT SHE WAS NOT THERE, THAT SHE WAS ON ADMINISTRATIVE LEAVE.

KG:   OKAY.  DID SHE SAY WHY?
TM:   NO, SHE SAID SHE DIDN'T KNOW.

KG:   OKAY.  DID YOU EVER TALK TO THE JUDGE ANY FURTHER ABOUT IT?
TM:   NO.

KG:   WERE YOU EVER DIRECTED NOT TO TALK ABOUT IT OR ANYTHING BY ANYBODY?
TM:   NO, (UNINT)

DOTHAN/Martin & Brackin 1311
Confidential Subject to Protective
Order

KG:   HAVE YOU SEEN THE, THE ARTICLE THAT CAME FROM RICKY'S WEB SITE, RICKY
       STOKES'S WEB SITE ABOUT THE INVESTIGATION?
TM:   YES, SIR.

KG:   OKAY, DO YOU KNOW, WERE YOU, OR DID YOU CONTRIBUTE IN ANY WAY ANY OF
       THE INFORMATION THAT'S CONTAINED ON THAT?
TM:   NO, SIR.

KG:   STORY, OKAY.  HAS ANYBODY APPROACHED YOU AND TALKED TO YOU ABOUT OTHER
       THAN MRS. MCLAIN ABOUT THE INVESTIGATION OF MRS. TURNER?
TM:   NO, SIR.

KG:   DID YOU SEE MRS. FOWLER HAVING A CONVERSATION WITH BONDSMAN OUTSIDE AH
       ON OR ABOUT THE 15TH OF MARCH?
TM:   YES, SIR.

KG:   WAS THAT IN FACT ON THE 15TH?  DO YOU REMEMBER?
TM:   IT WAS TUESDAY (UNINT)

KG:   OKAY.  AH, DID SHE HAVE A CONVERSATION WITH HIM UP FRONT?
TM:   HE CAME IN, HE HAD ASKED ME WHERE WAS MARY AT.  I TOLD HER HE WAS OFF
       TODAY.  AND HE SAID HE NEEDED TO SPEAK TO SARAH, SO I CALLED SARAH UP
       AND THEY JUST SPOKE AT THE WARRANT WINDOW.  HE ASKED HER WHERE, WHERE
       WAS MARY AT AND SHE SAID I'M NOT ALLOWABLE TO SAY.  AND HE GOT UP, THEY
       TALKED ABOUT SOMETHING  I DON'T KNOW WHAT THEY TALKED ABOUT, AND SO SHE
       GOT UP AND HE GOT UP AND I HAD TO LEAVE BECAUSE MY SON CALLED AND TOLD
       ME THAT HE GOT LOCKED OUT OF THE HOUSE SO I WALKED OUT THE FRONT DOOR
       AND THEY WAS AT THE BACK DOOR TALKING.

KG:   UMKAY.  DO YOU KNOW HOW LONG THEY WERE THERE OR DID YOU PULL OFF AS
       THEY WERE STILL TALKING?
TM:   I PULLED OFF.  I PULLED OFF.

KG:   OKAY.  DID ANYBODY ELSE SEE THEM OUT THERE THAT YOU KNOW OF?
TM:   MELANIE.  SHE WAS IN THE PARKING LOT.

KG:   WAS SHE COMING IN OR GOING?
TM:   I THINK SHE WAS OUT THERE SMOKING.  SHE WAS OUT FRONT.

KG:   UMKAY.  DID YOU HEAR WHAT THEY WERE TALKING ABOUT?
TM:   NO, SIR.

KG:   UMKAY.  SINCE YOU WERE ACTUALLY NOT DIRECTED BY THE JUDGE NOT TO TALK
       ABOUT IT, AH, THE OTHER QUESTIONS THAT I HAVE WOULDN'T ACTUALLY APPLY
       TO YOU.  SO I'LL GO AHEAD AND DIRECT YOU NOW, AH, THE JUDGE DIRECTED AH
       ALL THE OTHER MAGISTRATES FOR THE EXCEPTION OF MRS. TURNER THAT THERE
       WAS AN ADMINISTRATIVE INVESTIGATION GOING ON AND AH MRS. TURNER WAS THE
       SUBJECT OF THE INVESTIGATION.  SHE ALSO DIRECTED EVERYONE NOT TO TALK
       WITHIN THIS OFFICE, ACTUALLY SHE SAID DON'T SPEAK TO ANYONE ABOUT IT,
       AH, WHATSOEVER.  SHE ALSO DIRECTED EVERYONE NOT TO ANSWER ANY QUESTIONS
       FROM MRS. TURNER, DON'T PROCESS ANYTHING, DON'T GO INTO HER OFFICE,
       DON'T ACCESS THE COMPUTER SYSTEMS OR ANYTHING FOR HER OR CHANGE
       ANYTHING IN ANY WAY.  AHM, AND THAT'S BASICALLY, BASICALLY THE
       DIRECTIONS SHE GAVE AH, EVERYBODY AND I DIDN'T KNOW THAT YOU WEREN'T
       INCLUDED ON THAT.  AH, SO, JUST BE ADVISED AH NOT TO TALK ABOUT IT AND
       AH IN REFERENCE TO THIS INVESTIGATION AS I SAID THIS ONE IS TOTALLY
       SEPARATE FROM THAT ONE.  THIS ONE IS JUST TO DETERMINE HOW INFORMATION

DOTHAN/Martin & Brackin 1312
Confidential Subject to Protective
Order

```
        UH LEAKED OUT ABOUT IT.  AH, IS THERE ANYTHING ELSE YOU CAN TELL ME
        ABOUT THE, THIS AH INCIDENT?
TM:     I DON'T KNOW ANYTHING ELSE.

KG:     OKAY.  AH, THIS IS GONNA BE THE END OF STATEMENT.  THE TIME IS 3:11
        P.M.
```

DOTHAN/Martin & Brackin 1313
Confidential Subject to Protective
Order

# Statement

# of

# Melanie Walsh

DOTHAN/Martin & Brackin 1314
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

# INTERNAL AFFAIRS DIVISION

# GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the ~~Dothan Police Department~~. CITY OF DOTHAN If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE X _Mulanda Walsh_

    DATE/TIME: _3-17-05    2:40 pm_

INVESTIGATING OFFICER: _Alfred K. Long_

    DATE/TIME: _3-17-05    2:41 pm_

WITNESS SIGNATURE: _____

    DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1315
Confidential Subject to Protective
Order

KG:    THIS IS SGT. GRAY.  THE DATE IS MARCH THE 17TH OF 2005, 2005, THE TIME
       IS 2:43 P.M.    THE PLACE OF STATEMENT'S GONNA BE THE MU', THE
       MAGISTRATE'S OFFICE.  THE NAME OF THE PERSON GIVING THE STATEMENT IS
       MELANIE WELCH.
MW:    WALSH.

KG:    WALSH?  OKAY, SPELL THAT, WELL STATE YOUR FULL NAME FOR ME.
MW:    MELANIE YVONNE WALSH.

KG:    SPELL YOUR LAST NAME.
MW:    W A L S H.

KG:    UMKAY.  AH, DID YOU UNDERSTAND YOUR GARRITY NOTICE AND YOU SIGNED WHERE
       IT SAYS MEMBER'S SIGNATURE?
MW:    UM, HM, YES, SIR.

KG:    OKAY.  SO YOU WON'T HAVE TO YELL TOO LOUD, I UNDERSTAND YOU HAVE A
       THROAT OR SINUS INFECTION.  AHM, HOW LONG HAVE YOU BEEN EMPLOYED WITH
       THE CITY OF DOTHAN?
MW:    THE CITY ITSELF FOUR YEARS.

KG:    UH, HOW LONG HAVE YOU BEEN, ARE YOU A MAGISTRATE?
MW:    UM, UH, I'M A CLERK.

KG:    UMKAY.  HOW LONG HAVE YOU BEEN WORKING OVER HERE?
MW:    UH, SATURDAY'LL BE SIX MONTHS.

KG:    UMKAY.  AH, THIS INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY
       WHO MAY HAVE RELEASED ANY INFORMATION REGARDING MRS. MARY TURNER.  WERE
       YOU MADE AWARE, EXCUSE ME WHEN WERE YOU MADE AWARE OF THE INVESTIGATION
       REGARDING MRS. TURNER?
MW:    I DON'T REMEMBER THE DATE.  IT WAS THE DAY THAT THE JUDGE CAME OVER
       HERE AND TOLD US WHAT WAS GOING ON, OR THAT SHE WAS ON LEAVE.

KG:    OKAY, THAT WAS MARCH THE 10TH.
MW:    YES.

KG:    AND YOU HAD NOT HEARD OF ANYTHING PRIOR TO THAT DATE?
MW:    NO, SIR.

KG:    OKAY.  SO THE JUDGE WAS THE ONE IN FACT THAT TOLD YOU ABOUT IT.  HAVE
       YOU SPOKEN TO MRS. TURNER ABOUT IT?
MW:    NO, SIR.

KG:    AH, WERE YOU PRESENT ON MARCH THE 10TH, 2005 WHEN JUDGE GORDON HAD A
       MEETING WITH ALL MUNICIPAL COURT EMPLOYEES EXCEPT FOR MRS. TURNER?
MW:    YES.

KG:    AH, WHAT DID SHE SAY TO YOU?
MW:    SHE TOLD US THAT THERE WAS AN INVESTIGATION THAT WAS ONGOING AND THAT
       MARY WAS ON LEAVE WHILE THE INVESTIGATION WAS GOING ON, THAT THERE WAS
       SOME KIND OF AN ALLEGATION MADE AGAINST MARY.  AND THAT WE WEREN'T
       SUPPOSED TO TALK ABOUT IT WITH ANYBODY.

KG:    DID SHE MENTION ANYTHING ABOUT NOT GOING INTO HER OFFICE OR GOING
MW:    YEAH,  I'M SORRY SHE TOLD US WE COULDN'T GO IN HER OFFICE, GO THROUGH
       ANY OF HER THINGS OR ANYTHING LIKE THAT.

1

DOTHAN/Martin & Brackin 1316
Confidential Subject to Protective
Order

KG:   OKAY.  HOW ABOUT ACCESSING COMPUTER FOR MRS. TURNER OR ANYTHING LIKE
      THAT?
MW:   YES, WE'RE NOT ALLOWED TO DO THAT.

KG:   OKAY.  DID YOU DISCUSS IN ANY WAY INFORMATION THAT JUDGE GORDON TOLD
      YOU NOT TO WITH ANYONE?
MW:   I SPOKE WITH MY HUSBAND ABOUT IT.

KG:   OKAY.  WHAT'S HIS NAME?
MW:   RONNIE.

KG:   AND WHAT DID YOU TELL HIM?
MW:   JUST THAT THERE WAS AN INVESTIGATION GOING ON AND THAT MARY HAD BEEN
      PUT ON LEAVE AND THAT WE WEREN'T SUPPOSED TO DO ANYTHING FOR HER  OR GO
      ANYWHERE NEAR HER THINGS IN HER OFFICE.

KG:   OKAY.  ANYTHING ELSE?
MW:   THAT WAS ALL I KNEW AT THE TIME WAS THAT SHE WAS ON LEAVE.

KG:   UMKAY.  DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO TALKED ABOUT
      THIS CASE SINCE BEING DIRECTED NOT TO?
MW:   IN WHAT CONTEXT?

KG:   AT ALL I THINK, THE, THE DIRECTION BY THE JUDGE WAS NOT TO TALK,
      DISCUSS THE INVESTIGATION.
MW:   THE ONLY THING I KNOW IS THAT I SPOKE WITH MY HUSBAND ABOUT IT AND I
      BELIEVE MELISSA MENTIONED IT TO HER HUSBAND, BUT THAT'S ALL THAT I KNOW
      OF.

KG:   UMKAY.  IT HASN'T BEEN A COMMON SUBJECT AROUND THE OFFICE?
MW:   UM, UM.

KG:   OKAY.  AH, SO OTHER THAN YOUR HUSBAND AND, HOW DID YOU KNOW MELISSA
      TOLD HER HUSBAND ABOUT IT?
MW:   SHE TOLD ME.

KG:   OKAY.  WHEN DID SHE DO THAT?
MW:   TODAY.

KG:   UMKAY.  UH, IS THERE FOR', ANY MORE INFORMATION REGARDING THE, THIS
      INVESTIGATION ABOUT THE RELEASE OF INFORMATION THAT YOU WOULD LIKE TO
      SHARE WITH ME?
MW:   I DON'T KNOW WHAT WAS SAID.  I DON'T KNOW IF IT WAS IN REFERENCE TO
      MARY OR NOT.  NOT FIRST HAND KNOWLEDGE, OKAY.  BUT I DID SEE A
      MAGISTRATE SPEAKING WITH A BONDSMAN OUTSIDE THE BACK DOOR.

KG:   SARAH?
MW:   UM, HM.  I DON'T, I DID NOT HEAR THE CONVERSATION SO I CAN NOT SAY FOR
      SURE THAT THAT'S WHAT THEY WERE TALKING ABOUT.

KG:   UM, HM.
MW:   BUT I SAW HER STANDING OUT BACK TALKING TO HIM.

KG:   UMKAY.  AH, HIS NAME WAS TIM
MW:   I DON'T KNOW HIS LAST NAME.  I JUST KNOW TIM.

DOTHAN/Martin & Brackin 1317
Confidential Subject to Protective
Order

KG:    OKAY.
MW:    I DIDN'T EVEN KNOW HIS NAME AT THE TIME.

KG:    RIGHT, WHEN WAS THAT?
MW:    THIS WEEK.

KG:    YOU REMEMBER WHAT DAY?
MW:    AH, MONDAY OR TUESDAY, MAY HAVE BEEN TUESDAY.

KG:    OKAY.  ABOUT WHAT TIME?
MW:    IT WAS IN THE AFTERNOON, AH, I WENT OVER TO THE OLD CENTRAL AROUND 3.
       SO IT WAS PROBABLY AROUND 3:15, 3:30 ISH, SOMEWHERE AROUND IN THERE.
       I HAD TO GO PULL FILES FROM THE OLD FIRE STATION.

KG:    OKAY.
MW:    AND IT WAS WHEN I WAS COMING BACK FROM THERE.

KG:    UMKAY,
MW:    THAT I SAW.

KG:    AH, WHAT MAKES YOU THINK THAT SHE MAY HAVE TALKED ABOUT MRS. TURNER?
MW:    IT WAS INDICATED TO SOMEBODY ELSE THAT IT WAS ABOUT MRS. TURNER.

KG:    OKAY.  I KNOW WHAT YOU'RE SAYING, BUT YOU'RE GONNA HAVE TO TELL ME.
MW:    ANOTHER MAGISTRATES TALKED TO TIM AND HE TOLD HER THAT.

KG:    UMKAY.
MW:    IT WAS ABOUT MARY.

KG:    TIM TOLD THE, THIS MAGISTRATE THAT THE CONVERSATION THAT HE HAD WITH
       SARAH WAS ABOUT MARY?
MW:    UM, HM.

KG:    WHO WAS THE MAGISTRATE?
MW:    VALARIE.

KG:    UMKAY.  DID THEY SAY WHAT WAS THE
MW:    UM, UM.  ALL HE DID WAS TELL HER THAT IT WAS ABOUT MARY AND THEY DIDN'T
       TALK ANY FURTHER THAN THAT.

KG:    UMKAY.  ARE YOU RECORDING THIS INTERVIEW NOW?
MW:    NO.

KG:    DID YOU RECORD THE INTERVIEW WE JUST HAD EARLIER?
MW:    NO.

KG:    IS EVERYTHING YOU JUST TOLD ME THE TRUTH?
MW:    YES, SIR.

KG:    BE DIRECTED NOT TO DISCUSS AH THIS, THE NATURE OF THIS INVESTIGATION
       AND JUST TO REAFFIRM THE JUDGE'S AH DIRECTIONS NOT TO SPEAK ABOUT THIS
       TO ANYONE ELSE
MW:    OKAY.

KG:    AH, UNTIL AT LEAST IT'S OVER.  OKAY?
MW:    UMKAY.

DOTHAN/Martin & Brackin 1318
Confidential Subject to Protective
Order

```
KG:    THAT'S
MW:    ARE WE GONNA BE IN TROUBLE FOR TALKING TO OUR HUSBAND'S?

KG:    THAT I CAN'T DETERMINE RIGHT NOW.
MW:    YOU GOTTA BE KIDDING ME.  OKAY.

KG:    UMKAY.  IT'S GONNA BE, IT'S GONNA BE END OF STATEMENT.  TIME IS 2:45
       PM.
```

4

DOTHAN/Martin & Brackin 1319
Confidential Subject to Protective
Order

# Statement

# of

# Valarie Savage

DOTHAN/Martin & Brackin 1320
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _____

          DATE/TIME: ___3|18|05___3:16 pm___

INVESTIGATING OFFICER: _____

          DATE/TIME: ___3|18|05___3:17 PM.___

WITNESS SIGNATURE: _____

          DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1321
Confidential Subject to Protective Order

KG:    THIS IS SGT. GRAY.  THE DATE IS MARCH THE 18TH OF 2005.  THE TIME IS
       3:19 P.M.  THE PLACE OF STATEMENT'S GONNA BE THE MAGISTRATE'S OFFICE.
       THE NAME OF THE PERSON GIVING STATEMENT'S GONNA BE VALARIE SAVAGE,
       SAVAGE.  AH, THIS IS GONNA BE IN REFERENCE TO CASE NUMBER 05-03-08.
       COULD YOU PLEASE STATE YOUR FULL NAME?
VS:    VALARIE SAVAGE.

KG:    DID YOU READ YOUR GARRITY NOTICE THAT I PROVIDED YOU?
VS:    YES, I DID.

KG:    DID YOU UNDERSTAND IT?
VS:    YES, SIR.

KG:    DID YOU SIGN WHERE IT SAID MEMBER SIGNATURE?
VS:    YES, I DID.

KG:    HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
VS:    MAY WILL MAKE 5 YEARS.

KG:    AND WHAT IS YOUR TITLE?
VS:    MAGISTRATE.

KG:    AH, THIS INVESTIGATION IS ADMINISTRATIVE IN NATURE AND THIS
       INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY HAVE
       RELEASED ANY INFORMATION REGARDING THE INVESTIGATION OF MARY TURNER.
       WHEN WERE YOU FIRST MADE AWARE OF AN INVESTIGATION REGARDING MRS.
       TURNER?
VS:    WHEN THE JUDGE CAME AND HAD A MEETING THAT DAY.

KG:    THAT'S MARCH 10TH?
VS:    I GUESS SO.  IT WAS ON A THURSDAY I BELIEVE.

KG:    UM, HM.  AND WHAT DID THE JUDGE TELL YOU SPECIFICALLY, EVERYONE THAT
       WAS IN THE MEETING?
VS:    THAT MORNING SHE SAID THAT AH WE HAD AN UNFORTUNATE SITUATION.  WE HAVE
       ONE THAT'S BEEN PLACED ON LEAVE, THAT WILL BE MARY.  SHE SAID WE ARE
       UNDER A PENDING INVESTIGATION REGARDING THE MATTER.  WE ARE NOT TO
       DISCUSS THE MATTER REGARDING ANY ELEMENTS OUTSIDE OF THIS OFFICE.

KG:    OKAY.  AH, DID SHE NOT TO DISCUSS IT OUTSIDE OF THE OFFICE BUT THAT YOU
       CAN DISCUSS IT INSIDE?
VS:    NO, I THINK I, WELL WHAT I RECALL WAS YOU KNOW YOU ARE NOT TO DISCUSS
       THIS, THIS SITUATION OR THE ELEMENTS, AND IF I'M NOT MISTAKEN IT WAS
       WITH ANYONE OUTSIDE OF THE OFFICE OR WITHOUT, YOU KNOW, OUTSIDE THE, IF
       I'M NOT MISTAKEN, BUT

KG:    OKAY.  AH, WAS THERE ANY OTHER DIRECTIONS?
VS:    AH, WE ARE TO ANSWER ANY QUESTIONS.  WE ARE TO COOPERATE WITH AH I.A.
       AND ANY, ANYONE SPEAKING OF THE ELEMENTS WERE UP FOR IMMEDIATE
       DISMISSAL.

KG:    UMKAY.  DID SHE SAY ANYTHING IN REFERENCE, TO REFRAINING ENTERING HER
       OFFICE, MRS. TURNER'S OFFICE?
VS:    OH YES, SHE DID.  SHE SAID WE ARE NOT TO AH ACCESS ANY FILES FOR MRS.
       TURNER.  WE ARE NOT TO SPEAK TO MRS. TURNER.  WE ARE TO HAVE NO
       COMMUNICATION WITH MRS. TURNER.  WE ARE NOT TO ENTER HER OFFICE.  WE
       ARE NOT TO TAKE ANYTHING FROM HER OFFICE WITHOUT PERMISSION.

DOTHAN/Martin & Brackin 1322
Confidential Subject to Protective
Order

KG:   OKAY.  HAVE YOU SPOKEN TO MRS. TURNER ABOUT THIS INVESTIGATION SINCE
      BEING DIRECTED NOT TO BY THE JUDGE?
VS:   NO, SIR.

KG:   AH, DO YOU KNOW OF ANY AH EMPLOYEE WITHIN THIS OFFICE THAT HAS BEEN
      TALKING ABOUT THIS INVESTIGATION SINCE THE JUDGE DIRECTED THEM NOT TO?
VS:   I DO NOT KNOW PERSONALLY THAT IT WAS ABOUT THE INVESTIGATION.  I DO
      KNOW THAT AH I HAD WALKED OUTSIDE THE OTHER DAY AND SOMEONE HAD SAID
      SOMETHING ABOUT SARAH, HAD COME IN THE BUILDING AND SHE HAD BEEN IN THE
      PARKING LOT, AND I SAID I'M, SOMEBODY SAID THAT SHE WAS TALKING TO TIM
      WITH ADVANTAGE WHICH I'VE KNOWN HIM FOREVER, AND AH I WAS PICKING AT
      'EM.  I SAID WELL, I SAID WHAT ABOUT AND THEY SAID THEY DON'T KNOW, AND
      I SAID WELL I'LL ASK.  SO I PICKED UP THE PHONE AND I CALLED.  I
      WASN'T, I DID NOT EVEN ASK HIM.  I SAID UH.

KG:   YOU CALLED WHO?
VS:   TIM DICKERSON.

KG:   UM, HM.
VS:   I SAID YOU KNOW I'M APPALLED THAT YOU COME UP HERE AND YOU DON'T SPEAK
      TO US WHENEVER YOU COME TO THE OFFICE, AND HE SAID OH WELL I WAS JUST
      SPEAKING TO MRS. SARAH, AND I SAID THAT'S FINE, I'M JUST PICKING ON
      YOU.   AND HE SAID WE WERE DISCUSSING MARY TURNER.

KG:   UM, HM.
VS:   AND I DID NOT ASK ANY OTHER QUESTIONS.  I JUST SAID WELL THAT'S NOT
      SOMETHING THAT WE NEED TO BE TALKING ABOUT AND I APPRECIATE IT AND I
      HUNG THE PHONE UP.

KG:   RIGHT.  I UNDERSTAND.  AH, OTHER THAN THE POSSIBILITY OF MRS. SARAH HAS
      ANYONE ELSE APPROACHED YOU ABOUT MRS. TURNER SINCE THE JUDGE SAID NOT
      TO?
VS:   UM, UM.

KG:   UMKAY.  AND THAT WAS A NO?
VS:   THAT'S A  NO.

KG:   OKAY.  AH, DID YOU IN ANY WAY CONTRIBUTE TO ANY OF THE INFORMATION THAT
      IS CONTAINED WITHIN THE ARTICLE THAT WAS ON RICKY STOKES'S WEB SITE
      ABOUT THE INVESTIGATION?
VS:   NO.

KG:   DO YOU KNOW ANYBODY THAT, DO YOU HAVE PERSONAL KNOWLEDGE OR FIRST HAND
      KNOWLEDGE OF ANYONE THAT DID?
VS:   NO.

KG:   AH, WE HAD A DISCUSSION YESTERDAY WHERE I WAS PRESENT WITH THE JUDGE.
      AH DID YOU RECORD THAT INTERVIEW OR THAT MEETING THAT WE HAD YESTERDAY?
VS:   DID I RECORD IT?  NO, I DID NOT.

KG:   ARE YOU RECORDING IT TODAY?
VS:   NO, SIR.  I BELIEVE YOU RECORDED THAT MEETING.

KG:   I DID.
VS:   OKAY.

2

DOTHAN/Martin & Brackin 1323
Confidential Subject to Protective
Order

KG:   AH IS THERE ANYTHING ELSE REGARDING THE INVESTIGATION OF MRS. TURNER AS IT RELATES TO THE LEAK OF INFORMATION ABOUT HER THAT YOU WOULD LIKE TO ADD THAT I HAVEN'T ASKED YOU ABOUT? NOT THE INVESTIGATION, PER SE, IF YOU KNOW WHAT IT'S ABOUT, NOT THAT BECAUSE THAT'S A DIFFERENT INVESTIGATION, JUST THE RELEASE, UNAUTHORIZED RELEASE OF ANY INFORMATION WHERE YOU WERE DIRECTED BY THE JUDGE NOT TO?

VS:   NO, SIR.

KG:   UMKAY. WHAT'S TIM'S LAST NAME?

VS:   DICKERSON.

KG:   DO YOU KNOW HOW LONG AH SHE WAS IN, MRS. SARAH FOWLER WAS IN THE PARKING LOT WITH TIM?

VS:   NO, SIR, I DID NOT SEE HER IN THE PARKING LOT. I, JUST WHEN I CAME OUT SOMEONE SAID THEY HAD SAW HER AND (UNINT) I DON'T LIKE, I MEAN I'M I LIKE THINGS TO STAY WITHIN THE OFFICE.

KG:   UM, HM. OKAY. AH, BE ADVISED NOT TO DISCUSS THIS INVESTIGATION AS WELL AS THE OTHER INVESTIGATION WHICH THE JUDGE HAS ALREADY DIRECTED ALL EMPLOYEES NOT TO.

VS:   YES, SIR.

KG:   THIS IS GONE BE THE END OF STATEMENT. TIME IS, (UNRELATED DICTATION) THIS IS SGT. GRAY, THE DATE IS MARCH THE

DOTHAN/Martin & Brackin 1324
Confidential Subject to Protective
Order

# Statement

# of

# Sarah H. Fowler

DOTHAN/Martin & Brackin 1325
Confidential Subject to Protective
Order

03/17/2005   13:29    3346153629              POLICE RECORDS                        PAGE  01

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

### GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official
investigation of the Dothan Police Department. You will be asked questions
specifically directed and narrowly related to the performance of your official
duties or fitness for office. You are entitled to all of the rights and privileges
guaranteed by the laws and the Constitution of the State of Alabama and the
Constitution of the United States, including the right not to be compelled to
incriminate yourself. I further wish to advise you that if you refuse to testify
or to answer questions related to your official duties or fitness for duty, you
will be subject to departmental charges, which could result in your dismissal
from the Dothan Police Department. If you do answer, neither your
statement nor any information or evidence which is gained by reason of such
statements can be used against you in any subsequent criminal proceeding,
except for Perjury or Obstruction of Justice charges. However, these
statements may be used against you in relation to subsequent departmental
charges.


MEMBERS SIGNATURE: _Sarah Fowler_____

     DATE/TIME: _3/17/05_____ _3:22 pm_

INVESTIGATING OFFICER: _Sgt. Dan K. Brg___

     DATE/TIME: _3/17/05_____ _3:22 PM_

WITNESS SIGNATURE: _____

     DATE/TIME: _____


PD 15 B

DOTHAN/Martin & Brackin 1326
Confidential Subject to Protective
Order

KG: THIS IS SGT. GRAY. THE DATE IS MARCH THE 17TH OF 2005. THE TIME IS 3:19, EXCUSE ME 3:24 P.M. THE PLACE OF STATEMENT'S GONNA BE IN THE MAGISTRATE'S OFFICE. THE NAME OF PERSON GIVING STATEMENT IS SARAH FOWLER. THIS IS IN REFERENCE CASE NUMBER 05-03-08. CAN YOU STATE YOUR FULL NAME, PLEASE?
SF: SARAH HELEN FOWLER.

KG: OKAY. DID YOU READ YOUR GARRITY NOTICE?
SF: YES.

KG: DID YOU UNDERSTAND IT?
SF: I THINK SO, YES.

KG: DID YOU SIGN WHERE IT SAYS MEMBER SIGNATURE?
SF: YES, I DID.

KG: OKAY. HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
SF: ABOUT 12 YEARS I THINK, KEITH.

KG: HAVE YOU BEEN A MAGISTRATE, A MAGISTRATE SINCE THEN?
SF: UH HUH.

KG: THIS INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY HAVE RELEASED ANY INFORMATION REGARDING THE INVESTIGATION OF MRS. MARY TURNER. WHERE WERE YOU FIRST MADE AWARE OF AN INVESTIGATION REGARDING MARY TURNER?
SF: WELL THE DAY SHE WENT HOME AH, WE, WE KINDA FIGURED, YOU KNOW, BECAUSE OF THE WAY SHE WENT HOME.

KG: OKAY.
SF: BUT I WAS NOT IN, DID NOT KNOW WHAT IT WAS ABOUT OR KNOW THAT THERE WAS AN INVESTIGATION TILL THE JUDGE TOLD US.

KG: OKAY, AH THAT WAS ON THE SAME DATE THAT THE JUDGE TOLD YOU THAT, THAT THERE WAS
SF: IT WAS IN THE AFTERNOON, I REMEMBER, I DON'T, I THINK IT WAS THE SAME DAY.

KG: OKAY. AND TO MAKE SURE THAT I HAVE IT, THE ANSWER CORRECT, ARE YOU SAYING YOU BELIEVE IT WAS THE SAME DAY THE JUDGE TOLD YOU OR WAS IT SOME OTHER TIME?
SF: WELL I THINK IT WAS THE SAME DATE. SEE, MARY WENT HOME IN THE MORNING, LIKE THE FIRST THING. SOMEBODY SAID SHE HAD GONE WITH THE PRISONER PAPERWORK, AND I SAID WELL THAT'S KINDA UNUSUAL CAUSE USUALLY THE JUDGE CALLS ME FOR PRISONER PAPERWORK. AND THEN WHEN SHE COME BACK, I DIDN'T EVEN SEE HER AND SHE LEFT AND AH, SOMEBODY COME TELLING ME THAT SHE WAS GONE.

KG: UM, HM.
SF: AND THAT SHE WAS KINDA ESCORTED OUT. SO I SAID OH, GOODNESS, WHAT'S GOING ON NOW? YOU KNOW, AND THEN SEEM LIKE WE, I WANTA THINK IT WAS AT LUNCH TIME OR IT WAS LATER ANYWAY WHEN, WHEN THE JUDGE TALKED WITH US.

KG: SO IT WAS ON THE SAME DAY?
SF: YEAH, I, I DON'T REMEMBER THE TIME EXACTLY.

1

DOTHAN/Martin & Brackin 1327
Confidential Subject to Protective Order

KG:  OKAY, AND INITIALLY FROM THE ONSET WHO WAS THE VERY FIRST PERSON THAT
     TOLD YOU THAT MARY WAS UNDER INVESTIGATION?  HOW DID YOU FIND THAT OUT?
SF:  I DIDN'T FIND IT OUT UNTIL THE JUDGE REALLY TOLD US.  I MEAN LIKE I
     SAID WE KINDA FIGURED AFTER WHEN SHE WAS GONE LIKE THAT, THAT SOMETHING
     WAS GOING ON, BUT WE DIDN'T KNOW THERE WAS AN INVESTIGATION TILL THE
     JUDGE TOLD US.

KG:  OKAY.
SF:  OR I DIDN'T.

KG:  OKAY.  HAVE YOU SPOKEN TO MRS. TURNER ABOUT THIS INVESTIGATION?
SF:  I HAVE NOT SPOKEN TO MRS. TURNER SINCE SHE LEFT.

KG:  OKAY.  WERE YOU PRESENT ON MARCH THE 10TH, 2005
SF:  (UNINT)

KG:  WHEN JUDGE GORDON HAD A MEETING
SF:  YEAH

KG:  WITH ALL THE MUNICIPAL COURT EMPLOYEES WITH THE EXCEPTION OF MRS.
     TURNER?
SF:  YES, I WAS.

KG:  OKAY.  AND WHAT DID SHE SAY TO YOU?  THE JUDGE.
SF:  SHE TOLD US THAT THERE WAS AN ONGOING INVESTIGATION AS, AS NEAR AS I
     CAN REMEMBER IS WHAT YOU'RE TALKING ABOUT?

KG:  UM, HM.
SF:  THAT THERE WAS ONGOING INVESTIGATION, IT WAS JUST THAT, IT WAS AN
     INVESTIGATION AND THAT AH MARY WAS ON ADMINISTRATIVE LEAVE.  AH, WE
     DIDN'T NEED TO HAVE TO CONTACT WITH HER, DIDN'T NEED TO GO, YOU KNOW,
     SEE HER OR ANYTHING LIKE THAT, CAUSE I DID MENTION TO HER, I SAID WELL
     I THINK MARY BETH GOES TO HER SAME CHURCH, AND MARY BETH SPOKE UP AND
     SAID NO, WE, I GO TO A DIFFERENT CHURCH NOW.  AND AH SEE, WHAT ELSE?
     THAT'S THE GIST OF IT I GUESS.

KG:  DID SHE MENTION ANYTHING ABOUT AH NOT ENTERING INTO MRS. TURNER'S
     OFFICE?
SF:  YEAH, SHE DID.

KG:  DID SHE SAY ANYTHING ABOUT NOT AH PULLING UP COMPUTER PAPERWORK OR
     PRINTING OUT ANYTHING FROM THE COMPUTERS FOR HER, FOR MRS. TURNER?
SF:  UM, SHE SAID NOT TO GO INTO ANY CASES THAT SHE WAS WORKING ON OR
     WHATEVER.  I, I DIDN'T REALLY UNDERSTAND THAT BECAUSE YOU KNOW IT'S NOT
     LIKE YOU CAN ALWAYS TELL WHAT MRS. TURNER'S BEEN WORKING ON YOU KNOW.

KG:  UNDERSTOOD.
SF:  YEAH.

KG:  AH
SF:  AND I ACTUALLY WENT INTO HER OFFICE ACCIDENTALLY THAT AH, THAT DAY,
     THAT AFTERNOON CAUSE WE HAD PROBABLY SOMEBODY OUT IN FRONT AH AND
     WHEN THEY LEFT THEY WERE TALKING. SOMEBODY SAID I THINK THEY'RE ARGUING
     BACK AND FORTH YOU KNOW AND I RAN IN THERE AND LOOKED OUT THE WINDOW.
     SOMEBODY SAID YOU'RE NOT SUPPOSED TO BE IN THERE, AND I COME OUT. SO

KG:  OKAY, BUT YOU DIDN'T TOUCH ANYTHING.

DOTHAN/Martin & Brackin 1328
Confidential Subject to Protective
Order

SF:  NO, I DIDN'T TOUCH ANYTHING.  I DIDN'T TOUCH ANYTHING.

KG:  OKAY.  AH, WHEN YOU SAID THE JUDGE ASKED YOU NOT TO HAVE ANY CONTACT
     WITH HER WOULD THAT BE AH, TALKING TO HER AS WELL?
SF:  I WOULD THINK THAT IT WOULD BE LIKE, LIKE YOU DON'T CALL HER AND ASK
     HER QUESTIONS OR WHATEVER.

KG:  UM, HM.  AH, JUST TRYING TO GET FOR THE RECORD (UNINT)
SF:  OR GO SEE HER OR ANYTHING LIKE THAT.

KG:  RIGHT, SO, I'M JUST TRYING TO GET FOR THE RECORD WHAT EVERYBODY THERE
     AH, A UNDERSTANDING OF WHAT THE JUDGE SAID AND HOW IT WAS CLEAR, AND
     THAT'S WHY I'M TRYING TO BE SO SPECIFIC.
SF:  YEAH, I GUESS EVERYBODY INTERPRETS THINGS A LITTLE BIT DIFFERENT, TOO,
     AND THEN, WE WAS ALL KIND OF STUNNED, TOO, SO, I DON'T THINK IT REALLY
     ALL SUNK IN.  IT, THE WAY IT HAPPENED.

KG:  UMKAY.  AH, DID YOU DISCUSS IN ANY WAY WITH ANYBODY INFORMATION THAT
     JUDGE GORDON TOLD YOU NOT TO?
SF:  NO.  UH, LET'S SEE, WELL, NOW I TOLD MY SISTER THAT WE'D HAD A SHAKE-UP
     AT THE OFFICE.

KG:  DID YOU
SF:  AND I, I DIDN'T KNOW WHAT IT WAS ABOUT, AH, I WOULD'VE PROBABLY
     MENTIONED MARY'S NAME, BECAUSE MY SISTER HAS MET HER, BUT I WOULDN'T OF
     TOLD HER ANYTHING ELSE ABOUT IT.

KG:  OKAY, SO OTHER THAN T'
SF:  OTHER THAN TELLING HER SHE WAS GOING HOME, HAD BEEN SENT HOME OR
     SOMETHING, YEAH, THAT WAS IT.

KG:  DID YOU TELL ANYBODY INCLUDING YOUR SISTER ANYTHING ELSE OTHER THAN THE
     FACT THAT MARY HAD BEEN SENT HOME?  WAS THERE MORE TO THE CONVERSATION
     THAN ACTUALLY
SF:  WELL, NO.  CAUSE I DIDN'T HAVE ANY, I DIDN'T KNOW ANYTHING WHEN I, WHEN
     I TALKED TO HER.  WE DON'T KNOW WHY SHE WENT HOME.  I STILL DON'T KNOW
     WHY SHE WENT HOME.

KG:  OKAY.  HAVE YOU SPOKE, I THINK I'VE ASKED YOU THAT ONE TIME.  HAVE YOU
     SPOKEN TO MARY TURNER AFTER THE JUDGE DIRECTED YOU NOT TO?
SF:  NO, I HAVEN'T.  HEY, SOMEBODY ELSE DID MENTION SOMETHING ABOUT IT.

KG:  OKAY.
SF:  AH, TIM, FROM ADVANTAGE BONDING

KG:  OKAY.
SF:  CAME AND PICKED UP SOME FORFEITURES, PROCESSES AH, I KINDA LOSE TRACK
     OF DAYS BUT I THINK IT WAS LIKE TUESDAY AND HE SAID AH WHERE IS MARY
     TURNER.  I SAID SHE'S NOT HERE.  HE SAID WHY.  I SAID WELL WE CAN'T
     DISCUSS THAT, YOU KNOW, WE DON'T DISCUSS THAT.

KG:  UM, HM.
SF:  AND UH HE JUST KINDA SMILED, YOU KNOW, WE DIDN'T LIKE GO INTO ANYTHING.

KG:  OKAY.
SF:  I ASKED HIM WHY HE ASKED ABOUT HER AND HE SAID SHE'S USUALLY UP FRONT.

DOTHAN/Martin & Brackin 1329
Confidential Subject to Protective
Order

KG: WAS THERE ANYTHING ELSE SAID?
SF: NOT THAT I CAN RECALL. ANYTHING, CONCERNING THAT, UH UH.

KG: OKAY.
SF: MATTER OF FACT I THINK ANN WAS UP THERE THEN OR ONE OF THE GIRLS
    WAS UP THERE SO THEY COULD PROBABLY VERIFY THAT.

KG: UMKAY. DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO HAS TALKED
    ABOUT THIS CASE SINCE BEING DIRECTED NOT TO?
SF: YOU MEAN WITH SOMEBODY OUTSIDE OR LIKE WITH EACH OTHER OR WHAT?

KG: LET ME READ THE QUESTION AGAIN.
SF: WELL

KG: DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO HAS TALKED ABOUT THIS
    CASE SINCE BEING TOLD NOT TO?
SF: WOULD THAT COUNT LIKE IF, LIKE IF I TALKED TO MARY BETH? CAUSE WE'RE
    IN, INSIDE THE OFFICE.

KG: UM, HM.
SF: WELL I MEAN AH I'VE ASKED HER RECKON WHAT IT'S ABOUT AND STUFF LIKE
    THAT. BUT I HADN'T, I DON'T, I HAVEN'T EVEN TALKED TO ANY OF THE OTHER
    GIRLS ABOUT THAT. THAT'S JUST BECAUSE ME AND MARY BETH GO TO LUNCH
    TOGETHER YOU KNOW.

KG: OKAY. NOW
SF: NOT OUTSIDE, THOUGH.

KG: FOR THE EXCEPTIONS OF YOURSELF
SF: UM, HM.

KG: DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE OTHER THAN YOURSELF WHO HAS
    TALKED ABOUT THIS CASE SINCE BEING TOLD NOT TO?
SF: WELL I GUESS THAT WOULD PUT MARY BETH IN THERE SINCE I'M TALKING TO
    HER, OR SHE AND I'VE SPOKEN.

KG: DID YOU INITIATE EACH ONE OF THOSE CONVERSATIONS OR THAT CONVERSATION
    OR DID SHE INITIATE?
SF: NO, I KNOW ONE TIME I JUST KINDA KIDDED WITH HER AND SAID I HOPE MARY'S
    ENJOYING HER PAID VACATION, SOMETHING LIKE THAT, CAUSE AH, MARY BETH'S
    BEEN HAVING TO DO HER WORK. AND THEN SHE WOULD COME ASK ME THINGS
    THAT, HOW DOES MARY BETH, I MEAN HOW DOES MARY USUALLY DO THIS, AND AH
    YOU KNOW IT'S JUST GENERAL. IT'S NOTHING.

KG: AH, LET ME ASK YOU A QUESTION IN REGARD TO THAT. YOU'VE BEEN HER HOW
    MANY YEARS?
SF: GOING ON 12 I THINK.

KG: AND MARY BETH HAS BEEN HERE HOW MANY YEARS?
SF: WELL YOU KNOW SHE WAS IN THE POLICE DEPARTMENT FOR A WHILE BUT OTHER
    THAN THAT SHE WAS HERE LIKE A COUPLA YEARS BEFORE ME.

KG: AS A MAGISTRATE?
SF: YEAH, SHE WAS A MAGISTRATE, YOU KNOW, AND THEN SHE WENT TO THE POLICE
    DEPARTMENT

KG: UM HM

4

DOTHAN/Martin & Brackin 1330
Confidential Subject to Protective
Order

SF: AND THEN SHE COME BACK. SO ACTUALLY I'VE GOT MORE TIME IN AS A
MAGISTRATE THAN SHE DOES.

KG: AH
SF: AND MARY'S BEEN HERE LIKE A YEAR AND A HALF LONGER THAN I HAVE.

KG: OKAY. WHAT WOULD MARY BETH HAVE TO ASK YOU THAT SHE WOULDN'T KNOW?
SHE'S BEEN HERE ABOUT AS LONG AS YOU'VE BEEN
SF: WELL IT'S BECAUSE OF FORFEITURES. I DO FORFEITURES NOW.

KG: UM, HM.
SF: AND AH SOME THINGS HAVE CHANGED, SEE. IT, HAVING TO, HOW TO FILE
FORFEITURES, WHETHER SHE FILES THEM OR I FILE 'EM.

KG: UM, HM.
SF: AND UH WHO SENDS 'EM OUT, WHO SENDS OUT THE CASH BOND FORFEITURES, JUST
LITTLE STUFF THAT JUST ME AND MARY KNEW ABOUT THAT, BECAUSE MARY DID
THE AW'S.

KG: OKAY. WHAT SPECIFICALLY DID MARY BETH, MARY BETH ASK YOU ABOUT?
SF: WELL SHE ASKED ME ABOUT THE FORFEITURES, SHE

KG: I MEAN WHAT, WHAT WHAT ABOUT 'EM (UNINT)
SF: WELL SHE ASKED ME ABOUT WHO, WHO FILED 'EM AFTER THEY WERE DONE. SHE
ASKED ME ABOUT AH, AH WHO SENT NOTICES OUT TO, TO BE SERVED, THE
FORFEITURES TO BE SERVED.

KG: UM, HM.
SF: AND AH I TOLD HER HOW THAT WAS DONE.

KG: OKAY. NOW LETS, CHANGE MODIFY THAT QUESTION TO INCLUDE WHAT MRS.
TURNER WOULD HAVE TO DO WITH THAT IN THE CONVERSATION.
SF: WELL SHE WOULD COME BACK, WELL I MEAN SHE'D SAY YOU KNOW LIKE AH I'VE
GOT THIS TO DO, THIS TO DO, HOW DO I DO THIS? IS THIS THE WAY MARY
USUALLY DOES IT? WHO USUALLY FILES THIS? AND THEN I SAY SOMETHING
LIKE, WELL I HOPE MARY'S ENJOYING THE PAID VACATION.

KG: UMKAY.
SF: LIKE I SAID IT'S REALLY NOTHING. IT'S JUST, WE BROUGHT HER NAME UP A
TIME OR TWO, BUT YOU KNOW.

KG: OKAY.
SF: GET THE HARD DOWN AND DISCUSS WHAT THE BONES OF IT WE HAVEN'T.

KG: OKAY. OTHER THAN ASKING ABOUT AND OF COURSE YOU CAN SEE I'M TRYING TO
BE VERY SPECIFIC CAUSE I HAVE TO BE
SF: I SEE YOU ARE AND I, I HOPE I'M NOT

KG: NO, NO, I'M JUST, I'LL ASK YOU, YOU KNOW IF I'M NOT CLEAR I'LL ASK YOU
THE QUESTION.
SF: OKAY. WELL I'M TRYING TO AH THINK OF ANYTHING THAT COULD'VE BEEN SAID.

KG: OTHER THAN THE CONVERSATION WITH MARY BETH ABOUT FORFEITURES AND HOW
MRS. TURNER WOULD DO IT
SF: DO CERTAIN THINGS, YEAH.

KG: WHAT, YOU'VE DONE FORFEITURES.

5

DOTHAN/Martin & Brackin 1331
Confidential Subject to Protective
Order

SF:   NO, I DO THE COLLECTING OF THE MONEY. I DO FORFEITURE COURT.

KG:   UM, HM.

SF:   I DO 'EM AFTER MARY HAS ALREADY INITIATED THEM. SHE SENT OUT THE FORFEITURES TO BE SERVED.

KG:   HAVE YOU EVER INITIATED THEM?

SF:   JUST ONE OR TWO WHEN I WOULD SEE THAT SHE HAD MISSED ONE OR FOR SOME REASON IT DIDN'T COME BACK TO ME BECAUSE THEY TEND TO GO TO THE POLICE DEPARTMENT AND DON'T GET SERVED. AND AFTER A PERIOD OF TIME IF I SEE IT HADN'T BEEN SERVED, I REPRINT IT AND SEND IT, SO SOMETIMES WE WIND UP WITH TWO BUT THAT'S BETTER THAN WINDING UP WITH NONE.

KG:   SO.

SF:   NO I DON'T USUALLY INITIATE 'EM. SHE USUALLY DOES.

KG:   UMKAY. IS, IS MRS. TURNER THE ONLY ONE THAT KNOWS HOW TO DO THAT HERE IN THIS OFFICE?

SF:   NO, I, LIKE I SAID I CAN DO IT, BUT IT'S USUALLY DONE WHEN YOU'RE DOING A STACK OF AW'S. YOU, YOU'RE PICKING OUT WHOSE GONE HAVE FORFEITURES AND WHO, WHO DOESN'T.

KG:   AH, COULD SHE HAVE ASKED YOU HOW YOU DID IT?

SF:   WHO?

KG:   COULD MARY BETH HAVE ASKED YOU HOW YOU DID IT INSTEAD OF HOW MRS. TURNER DID IT?

SF:   NO, BECAUSE THIS WAS STUFF THAT SHE USUALLY DID, MARY TURNER DID.

KG:   OKAY.

SF:   BUT I KNEW HOW SHE DID IT BECAUSE I WOULD HAVE TO PULL THE FILES.

KG:   I UNDERSTAND. OTHER THAN THE INFORMATION ABOUT FORFEITURES, HAVE YOU HAD ANY CONVERSATION BETWEEN YOU AND MARY BETH ABOUT MRS. TURNER REGARDING THIS?

SF:   NOT THAT I CAN THINK OF

KG:   REGARDING THIS INVESTIGATION?

SF:   JUST A, A WORD HERE AND THERE LIKE I SAID, BUT NOTHING SPECIAL LIKE, I HOPE SHE'S ALL RIGHT OR SOMETHING LIKE THAT.

KG:   OKAY.

SF:   YOU KNOW NOTHING, JUST IN GENERAL.

KG:   OKAY, BUT I WANT YOU TO DO IS BE AS SPECIFIC. I KNOW IN GENERAL AND BUT OTHER THAN JUST THE FORFEITURES AND I HOPE YOU ENJOYED, SHE'S ENJOYED HER PAID VACATION, I MEAN THAT WAS A GOOD QUOTE

SF:   UH HUH.

KG:   AND YOU REMEMBERED WHAT YOU SAID.

SF:   YEAH, I REMEMBERED SAYING THAT.

KG:   WHAT ELSE, WHAT ELSE DID YOU SAY AND BE AS SPECIFIC AS THAT QUOTE WAS IF YOU CAN.

SF:   OH MY GOSH, KEITH, I DON'T,   I DON'T REMEMBER CAUSE WE HADN'T HAD THAT MANY OF 'EM, YOU KNOW, HADN'T, HADN'T MENTIONED HER THAT MUCH. MAYBE YOU COULD ASK MARY BETH, MAYBE SHE COULD REMEMBER.

DOTHAN/Martin & Brackin 1332
Confidential Subject to Protective Order

KG:    UMKAY.
SF:    HAVE YOU INTERVIEWED HER YET?

KG:    UH, YES.  AH, BUT I'LL ASK HER AGAIN.  SO, TO YOUR KNOWLEDGE THE ONLY
       CONVERSATION YOU REMEMBER SPECIFICALLY ABOUT MARY TURNER WAS SAYING YOU
       HOPED SHE ENJOYED HER VACATION AND MARY BETH JUST ASKED YOU HOW MRS.
       TURNER INITIATED THE FORFEITURE.  OTHER THAN THAT THERE'S NEVER,
       THERE'S NO OTHER DISCUSSION YOU'VE HAD WITH MARY BETH OR ANY OTHER
       MUNICIPAL COURT EMPLOYEE ABOUT MRS. TURNER?
SF:    WELL, WHEN SHE FIRST, WHEN SHE FIRST GOT GONE, I KNOW UH, IT'S BEFORE
       THE JUDGE TALKED TO US AND ALL WE WERE SPECULATING ON WHAT WAS GOING ON
       AND I DON'T REALLY REMEMBER WHAT WAS SAID THEN.  I'M SORRY, I JUST
       DON'T REMEMBER.  UH, LET ME THINK ABOUT IT AND I CAN PROBABLY REMEMBER.
       THERE WAS SOMETHING THAT WAS, THAT FIRST DAY AND I DON'T REMEMBER WHAT
       WAS SAID THEN.

KG:    WHO WAS THAT EMPLOYEE?
SF:    I THINK IT WAS BETWEEN ME AND MARY BETH BECAUSE I, I THINK THAT SHE
       WAS, I THINK SHE WAS THE ONE AH THAT TOLD ME, OR WAS IT ANN.  ONE OF
       'EM CAME AND TOLD ME THAT MARY WAS GONE, AND I THINK I TALKED TO AH
       MARY BETH AFTER THAT, WHAT YOU RECKON'S GOING ON, YOU KNOW.  THIS WAS
       BEFORE WE

KG:    WERE DIRECTED BY THE JUDGE?
SF:    RIGHT, UH HUH, SOMEWHERE ABOUT THAT TIME.

KG:    BEFORE THE JUDGE
SF:    YEAH, BEFORE WE HAD BEEN TOLD THAT THERE WAS THE INVESTIGATION GOING
       ON.

KG:    OKAY.  HAVE YOU HAD ANY OTHER DISCUSSIONS WITH MARY BETH OR ANY OTHER
       AH MUNICIPAL COURT EMPLOYEE ABOUT MRS. TURNER OTHER THAN WHAT YOU'VE
       DISCUSSED WITH ME?
SF:    NOT THAT I CAN THINK OF RIGHT NOW.

KG:    OKAY.
SF:    BUT LIKE I SAID I WASN'T REALLY, I KNOW I HADN'T TALKED TO ANYBODY
       ELSE, CAUSE IF I TALKED TO ANYBODY IT WOULD'VE BEEN MARY BETH.  I DON'T
       THINK I'VE EVEN HEARD ANYBODY ELSE SAY ANYTHING.

KG:    OKAY.  SO ANY CONVERSATION THAT YOU WOULD HAVE HAD, YOU, YOU INITIATED
       IT AND I THINK YOU SAID THAT MARY BETH
SF:    WELL I DON'T REMEMBER IF I INITIATED IT.  I KNOW I MADE THE COMMENT
       ABOUT THE PAID VACATION, YOU KNOW, I, I KNOW I INITIATED THAT ONE.

KG:    OKAY.  DID MARY BETH COME TO YOU AND INITIATED ANY CONVERSATION ABOUT
       MARY TURNER SINCE THE DRUG DIRECTED Y'ALL NOT TO?
SF:    I DON'T, I DON'T THINK SHE DID.  AH, MAYBE I DID INITIATE 'EM.  I DON'T
       KNOW.  CAUSE LIKE I SAID WASN'T UH PAYING THAT MUCH ATTENTION AS TO WHO
       STARTED THE CONVERSATION.

KG:    OKAY.
SF:    CAUSE I MEAN WE'VE BEEN FRIENDS SO LONG, YOU KNOW.  IT'S ONE OF THOSE
       THINGS YOU JUST DON'T, DON'T NOTICE I GUESS.

DOTHAN/Martin & Brackin 1333
Confidential Subject to Protective
Order

KG:  OKAY.  AH, WAS THAT ON OR ABOUT THE DATE THAT THE JUDGE GAVE YOU OR A
     LITTLE BIT LATER ON IN THE WEEK?
SF:  WHICH ONE?

KG:  AH, THE CONVERSATION WITH MARY BETH ABOUT MRS. TURNER?
SF:  ABOUT THE PAID VACATION?

KG:  UM, HM.
SF:  IT WAS LIKE A, IT WAS LIKE A DAY OR SO LATER.

KG:  OKAY.  THE NOTICE WAS ON THURSDAY SO IT WOULD'VE BEEN FRIDAY AND YOU
     WERE OFF SATURDAY AND SUNDAY.
SF:  PROBABLY.  PROBABLY FRIDAY BECAUSE I WAS HEARING PRISONERS AND I
     USUALLY ENTER PRISONERS ON FRIDAY FOR MONDAY AND SHE COULDN'T HELP ME
     BECAUSE SHE WAS DOING AW'S.  IT'S PROBABLY FRIDAY.

KG:  OKAY.  HAVE YOU TWO HAD ANY DISCUSSION AT HOME ON THE TELEPHONE OR
SF:  NO.

KG:  ANYWHERE ON THE TELEPHONE ABOUT THIS INVESTIGATION?
SF:  NO. (PHONE RINGING)  THAT'S THE JUDGE'S PHONE.

KG:  OKAY.
SF:  UNLESS SOMEBODY'S ESPECIALLY CALLING YOU.  YOU WANT ME TO ANSWER IT?

KG:  UM, HM.
SF:  IT'S PROBABLY FOR THE JUDGE.

KG:  AH, HAVE YOU HAD ANY CONVERSATION ABOUT THIS CASE SINCE THIS PAST
     MONDAY?
SF:  SINCE THIS PAST MONDAY?

KG:  YEAH, TODAY'S THURSDAY.
SF:  WELL I TOLD YOU THE, ADVANTAGE ASKED ABOUT HER WAS ALL.

KG:  THAT WAS (UNINT)
SF:  NO, THAT WASN'T, YEAH.

KG:  AND THAT WAS TIM?  WHAT'S TIM'S LAST NAME?
SF:  I DON'T KNOW I'LL HAVE TO LOOK ON MY LIST.

KG:  OKAY.  AH,
SF:  HE JUST COME TO PICK UP FORFEITURES.

KG:  OKAY.  DID YOU HAVE A CONVERSATION WITH HIM AHM ANY TIME AFTER HE, HE
     LEFT THE BUILDING?
SF:  UM, NO, JUST HE CAME TO FORFEITURE COURT, BUT, WELL, I DIDN'T TALK TO
     HIM THOUGH OTHER THAN JUST IN THE GROUP WITH EVERYBODY ELSE.

KG:  WHEN
SF:  NOTHING WAS MENTIONED ON THAT.

KG:  OKAY.  WHEN IS FORFEITURE COURT?
SF:  AH, WEDNESDAY, 10:00.

KG:  AH, WERE YOU WORKING THE WINDOW WHEN HE CAME IN AND ASKED TO

DOTHAN/Martin & Brackin 1334
Confidential Subject to Protective
Order

SF:    NO, THEY CALLED FOR ME.  THEY ALWAYS CALL FOR ME CAUSE I GOT THE
       FORFEITURE AH PROCESSES BACK THERE.

KG:    UMKAY.
SF:    WHEN THE BONDSMAN COMES IN THEY ALWAYS CALL FOR ME.

KG:    HOW LONG WAS HE INSIDE THE BUILDING?
SF:    HE WAS THERE AT THE WINDOW.  HE WASN'T IN THE BUILDING.  HE WAS JUST
       THERE.  WE DON'T LET HIM INSIDE.  HE'S JUST AT THE WINDOW UP THERE
       WHERE THE WARRANT WINDOW IS, INSIDE THERE.

KG:    RIGHT HERE IN THIS BUILDING?
SF:    YEAH.

KG:    HE HAS TO BE INSIDE OF THE
SF:    WELL, I'M TALKING ABOUT HE'S NOT INSIDE.

KG:    NO, I MEAN INSIDE THE BUILDING,
SF:    OKAY.

KG:    INSIDE THE FRONT DOOR.
SF:    YOU MEAN HOW LONG WAS HE IN THE LOBBY THERE?

KG:    YEAH.
SF:    OH, UH, GOSH I DON'T KNOW.  HE SIGNED ABOUT, PROBABLY ABOUT 15 MINUTES.

KG:    UMKAY, AND UH
SF:    HE COULD'VE BEEN THERE AH FEW MINUTES LONGER IF YOU KNOW BUT WHEN, BY
       THE TIME I SAT DOWN WITH HIM HE WAS THERE LIKE 15 MINUTES.

KG:    OKAY.  AND THE ONLY CONVERSATION YOU HAD WITH HIM WAS AH WHEN HE ASKED
       YOU WHERE SHE WAS AT AND YOU SAID THAT SHE WASN'T THERE
SF:    YES.

KG:    AM I SAYING THAT CORRECTLY?
SF:    SHE'S NOT.  I DON'T REMEMBER IF I SAID SHE WASN'T, SHE'S NOT THERE,
       SHE'S NOT HERE TODAY OR WHAT.

KG:    UMKAY.
SF:    AH, BUT THEN HE, AND THEN I ASKED HIM WHY HE ASKED ABOUT HERE, AND HE
       SAID WELL SHE'S USUALLY UP FRONT.

KG:    UMKAY.  AND WAS THERE ANY OTHER REPLY?
SF:    NO, I JUST HAD A FEELING THAT, YOU KNOW, THAT, HE ASKED SPECIFICALLY ON
       PURPOSE.

KG:    UMKAY.
SF:    BUT NOW THAT'S JUST ME.

KG:    AND AH, AFTER, YOU HAD NO MORE CONVERSATIONS WITH HIM AND AFTER HE
       SIGNED HIS STUFF HE LEFT?
SF:    UM, HM.

KG:    OKAY DID YOU SEE ANY MORE
SF:    WELL I SAW HIM AT THE, I SAW HIM AT THE BACK DOOR.

KG:    OKAY.

DOTHAN/Martin & Brackin 1335
Confidential Subject to Protective
Order

SF:    BUT THAT WAS ABOUT SOMETHING. HE'S TALKING TO ME ABOUT GET OUT BONDING,
       IT'S SOMETHING ELSE.

KG:    UMKAY.  YOU SAID THAT HE DIDN'T, OR WHEN HE WAS AT THE BACK DOOR, HE
       WAS TALKING ABOUT GET OUT BONDING  AND NOTHING ELSE?
SF:    YEAH, WELL YEAH, MOSTLY.

KG:    OKAY.  AH LET ME ASK YOU DIRECTLY.
SF:    UH HUH.

KG:    DID YOU HAVE A CONVERSATION ABOUT MARY TURNER AFTER HE LEFT THE INSIDE
       OF THE BUILDING ON THE SIDE OF THE BUILDING?  AH, DID YOU HAVE A
       LENGTHY DISCUSSION WITH HIM IN REFERENCE TO MARY TURNER?
SF:    NO.

KG:    YES, OR NO?
SF:    NO, WE HAD A CONVERSATION.  MARY TURNER WAS MENTIONED AGAIN AND I TOLD
       HIM THAT WE DIDN'T KNOW WHY SHE WAS OUT CAUSE HE ASKED ME ABOUT THAT.
       AND

KG:    HE, AFTER YOU HAD ALREADY TOLD HIM THAT SHE WAS NOT
SF:    AFTER I HAD ALREADY TOLD HIM, YES.  I TOLD HIM AGAIN THAT WE DIDN'T
       KNOW WHY SHE WAS OUT.  I SAID I DOUBT SHE EVEN KNOWS WHY SHE'S OUT.

KG:    AND THAT'S THE END OF THE CONVERSATION?
SF:    HE SAID SOMETHING ABOUT, HE MADE SOME LITTLE SOMETHING LIKE WELL IT'LL
       ALL COME OUT OR SOMETHING LIKE THAT. I FORGET JUST HOW HE PUT IT BUT
       IT, WELL IT'LL ALL COME OUT.  LIKE HE KNEW SOMETHING.

KG:    UMKAY, AND YOU HAD
SF:    AND AT THAT TIME I DIDN'T EVEN KNOW THAT WAS ON THE WEB SIT.  IF IT
       WAS.

KG:    UMKAY.  IF TIM SAYS THAT YOU TOLD HIM INFORMATION ABOUT THIS
       INVESTIGATION
SF:    HE WOULD BE LYING, CAUSE I DON'T KNOW ANYTHING ABOUT THIS
       INVESTIGATION.

KG:    UMKAY.  IN REFERENCE TO THE UH THE DOCUMENT I HAVE HERE WHICH IS ON
       RICKY STOKES'S WEB SITE,
SF:    UM, HM.

KG:    AND THINGS THAT WERE PRINTED ON THERE, DID YOU IN ANY WAY TO CONTRIBUTE
       TO ANY OF THE INFORMATION THAT MAY BE ON THIS DOCUMENT OR THAT WAS ON
       THIS WEB SITE?
SF:    NO.

KG:    OKAY.  AH, DID YOU RECORD AH ANY OF THE AH INTERVIEW THAT WE HAD
       EARLIER AH OF THE MEETING WE HAD?
SF:    DID I RECORD IT?  NO.

KG:    AH, ARE YOU RECORDING IT NOW?
SF:    NO.

KG:    AH, AND I'M GONNA, VISIT THE SAME QUESTION ONE MORE TIME AND WE'RE
       GONNA BE FINISHED AND I WANTA MAKE SURE I HAVE IT CLEAR.  YOU HAVE NOT
       CONTACTED MRS. TURNER SINCE SHE WAS PLACED ON LEAVE.  IS THAT CORRECT?

DOTHAN/Martin & Brackin 1336
Confidential Subject to Protective
Order

SF:     THAT'S CORRECT.

KG:     IN REFERENCE TO SPEAKING WITH ANOTHER EMPLOYEE AH YOU DID SPEAK WITH
        MARY BETH, YOU HAD ONE OR MORE CONVERSATIONS AH, ONE SPECIFICALLY'S
        WHERE YOU MADE YOUR, YOUR COMMENT, HOPE SHE'S ENJOYING HER PAID LEAVE
        AND THE OTHER WAS ABOUT AH FORFEITURES.
SF:     WELL WE TALKED ABOUT FORFEITURES, YEAH, AND LIKE I SAID WE'VE, YOU KNOW
        WE'VE BEEN FRIENDS WITH MARY A LONG TIME.  IF ANYTHING ELSE WAS
        MENTIONED I DON'T, RECALL IT OFF HAND, CAUSE IT WOULD JUST BE A PART OF
        CONVERSATION.

KG:     OKAY.  AH, IS THERE ANYTHING ELSE YOU'D LIKE TO AH SHARE ABOUT THIS
        INVESTIGATION THAT I HAVEN'T ASKED YOU ABOUT?
SF:     NO, I DON'T KNOW ANYTHING ABOUT THIS INVESTIGATION.

KG:     OKAY.  BE DIRECTED NOT TO SPEAK TO ANYONE ABOUT THIS INVESTIGATION
        AND/OR THE INVESTIGATION THAT THE JUDGE HAS ALREADY ADVISED AND
        DIRECTED EVERYBODY ELSE NOT TO SPEAK ABOUT.
SF:     UM, OKAY.  I'M SORRY I EVEN TOLD MY SISTER NOW.

KG:     THIS IS GONNA BE THE END OF CONVERSATION.
SF:     IS THIS MY COPY?

KG:     TIME IS GONNA BE 3:49 P.M.

DOTHAN/Martin & Brackin 1337
Confidential Subject to Protective
Order

# Statement

# of

# Mary E. Brackin

DOTHAN/Martin & Brackin 1338
Confidential Subject to Protective
Order

03/17/2005  13:29   3348153629                POLICE RECORDS                    PAGE  8

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Mary Beth Beach_

     DATE/TIME: _March 17, 2005 @ 14:50_

INVESTIGATING OFFICER: _Lt. Ll. H. Dry_

     DATE/TIME: _3-17-05 @ 1:50 PM_

WITNESS SIGNATURE: _____

     DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1339
Confidential Subject to Protective
Order

KG:  THIS IS SGT. GRAY.  THE DATE IS MARCH THE 17ᵀᴴ 2005.  TIME IS 2:52 P.M. THE PLACE OF STATEMENT'S THE MAGISTRATE'S OFFICE.  THE NAME OF PERSON GIVING STATEMENT IS MARY ELIZABETH BRACKIN.  CASE NUMBER IS IA 05-03-08.  AH, THIS IS, I'M WANNA EXPLAIN TO YOU WHAT THE INVESTIGATION IS ABOUT BUT WITHIN THE CONTEXT OF THE QUESTIONS.  STATE YOUR FULL NAME.

MB:  MARY ELIZABETH BRACKIN.

KG:  DID YOU UNDERSTAND YOUR GARRITY AS YOU READ IT?
MB:  YES.

KG:  AND YOU SIGNED YOUR SIGNATURE THAT YOU DID UNDERSTAND?
MB:  YES.

KG:  HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
MB:  AH, MAY 1ˢᵀ WILL BE 13 YEARS.

KG:  WHAT IS YOUR TITLE?
MB:  MAGISTRATE.

KG:  THIS INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY HAVE RELEASED ANY INFORMATION REGARDING THE INVESTIGATION OF MARY TURNER. THIS IS AN ADMINISTRATIVE INVESTIGATION IN NATURE.  AH, WHEN WERE YOU FIRST MADE AWARE OF THE INVESTIGATION REGARDING MRS. TURNER?
MB:  AH, WHEN JUDGE GORDON HAD A MEETING WITH US LAST THURSDAY AND TOLD US.

KG:  OKAY.  THAT WAS THE FIRST THING YOU EVER HEARD ABOUT ANY INVESTIGATION REGARDING HER?
MB:  UM, HM.

KG:  AH, AND SHE IN FACT TO YOU HERSELF, THE JUDGE THAT
MB:  WELL SHE, WHATEVER SHE SAID IN THAT MEETING WAS THAT SHE WAS ON ADMINISTRATIVE LEAVE AND THAT IT WAS BEING INVESTIGATED.

KG:  OKAY.  WHAT ELSE DID SHE SAY IN REGARDS TO...
MB:  OH GOSH
KG:  ...THE DIRECTIONS THAT SHE GAVE THE EMPLOYEES?
MB:  ABOUT WHAT WAS BEING DONE OR WHAT SHE SAID?

KG:  **THE INVESTIGATION.  UM, HM, WHAT DID, WHAT DID SHE, WHAT DIRECTION DID SHE GIVE EVERYBODY WITHIN THAT MEETING ON MAY THE 10ᵀᴴ OF 2005?**
MB:  **SHE JUST SAID NOT TO TALK TO MARY OR AH MAKE ANY COMMENT ABOUT THE INVESTIGATION, IF I REMEMBER CORRECTLY.**

KG:  DID SHE DIRECT YOU NOT TO GO INTO HER OFFICE?
MB:  INTO

KG:  MARY'S OFFICE.
MB:  MARY'S OFFICE?  UH HUH.

KG:  OKAY, AH DID SHE DIRECT YOU NOT TO AH PRINT ANYTHING ON THE COMPUTER WITH HER OR HAVE ANY CONVERSATION WITH HER REFERENCE TO THE INVESTIGATION?
MB:  RIGHT.

KG:  DID SHE ADVISE YOU THAT SHE WAS AH CONFIRMED TO BE ON LEAVE OR I MEAN HALF OF ADMIN LEAVE?
MB:  I THINK SHE DID.  I THINK SHE SAID ADMINISTRATIVE LEAVE OR SOME, I'M

1

DOTHAN/Martin & Brackin 1340
Confidential Subject to Protective
Order

NOT, I'M NOT REAL SURE.

KG:     OKAY.  AND DID SHE ALSO AND ADVISE YOU NOT TO SPEAK WITH ANYONE
        REGARDING THE MATTER THAT WAS TAKING PLACE?
MB:     RIGHT.

KG:     WHICH WAS
MB:     UM, HM.

KG:     HAVE YOU SPOKEN TO MRS. TURNER ABOUT THE INVESTIGATION?
MB:     NO.

KG:     DID YOU DISCUSS IN ANY WAY ANY OF THE INFORMATION THAT JUDGE GORDON
        TOLD YOU NOT TO DISCUSS AH AS OF MARCH THE 10TH WITH ANYONE?
MB:     I'VE TALKED TO MY HUSBAND AND MY MOTHER-IN-LAW.  TOLD THEM, WE WERE AT
        THE TABLE TOGETHER EATING SUPPER.

KG:     WHAT'S YOUR HUSBAND'S NAME?
MB:     ALLEN.

KG:     MOTHER-IN-LAW?
MB:     SHIRLEY.

KG:     WHAT'S HER LAST NAME?
MB:     BRACKIN.

KG:     WHERE DOES SHE WORK?
MB:     SHE DOESN'T.  SHE'S RETIRED.

KG:     OKAY.  WHAT WAS THE GIST OF THE CONVERSATION YOU HAD WITH THEM?
MB:     JUST THAT WHAT JUDGE GORDON HAD TOLD US THAT SHE WAS ON LEAVE AND
        WE REALLY DIDN'T KNOW WHY AND THAT SHE (UNINT) ON LEAVE.

KG:     OKAY.  DID YOU HAVE ANY IDEA WHAT IT COULD BE ABOUT?
MB:     NO.  UH UH.

KG:     AND YOU HAD', HAVE YOU TALKED TO HER SINCE THEN ABOUT ANYTHING?
MB:     I HAD ASKED HER ABOUT A SHOW CAUSE LETTER THAT, THAT'S ONE OF THE
        THINGS THAT I WAS GIVEN TO DO OF HER JOB DUTIES.

KG:     UM, HM.
MB:     AND I WAS ASKING HER HOW SHE GOT THE SET UP ON IT.  AND SHE SAID
        THAT WAS SOMETHING BETTY HAD DONE, SO, BUT THAT WAS THE EXTENT OF
        IT WAS WHAT, YOU KNOW HOW SHE DID ON SOME OF THE PROCEDURES.

KG:     OKAY.  UH, HAS SHE ASKED YOU ANYTHING ABOUT THIS INVESTIGATION?
MB:     NO.  UH, UH.

KG:     OKAY.  I'M GONNA ASK YOU TO, THE SAME QUESTION, BUT I'M GOING TO
        AH WORD IT HOW IT IS HERE ON THE LIST, BECAUSE I'M GOING OVER ALL
        THE QUESTIONS WITH EVERYONE.
MB:     OKAY.

KG:     AH, OTHER THAN THE SHOW CAUSE LETTER HAVE YOU SPOKEN WITH MRS. TURNER
        AFTER THE JUDGE DIRECTED YOU NOT TO, OTHER THAN THAT SHOW CAUSE LETTER
        CONVERSATION HAVE YOU SPOKE WITH HER ABOUT ANYTHING ELSE AH, AH IN
        REGARDS TO WHAT THE JUDGE ASKED YOU NOT TO TALK TO HER ABOUT?

DOTHAN/Martin & Brackin 1341
Confidential Subject to Protective
Order

MB:   NO, NONE OF THAT.

KG:   DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO HAS TALKED ABOUT THIS
      CASE SINCE BEING TOLD NOT TO?
MB:   NO.

KG:   AH, I PROVIDED THE AH, INFORMATION THAT WAS PLACED ON AH RICKY STOKES'
      WEBSITE.  HAVE YOU SEEN THAT BEFORE, BEFORE SEEING IT TODAY?
MB:   I SAW IT YESTERDAY.

KG:   OKAY.  HOW DID YOU KNOW IT WAS THERE ON THE WEB SITE?
MB:   I HAD WALKED UP AND ANN HAD IT ON HER PC.

KG:   UM, HM.
MB:   YESTERDAY AFTERNOON AND I JUST, YOU KNOW, A LOT OF TIMES WHEN YOU
      SEE SOMEBODY READING SOMETHING YOU SAY WELL GOSH THERE MUST BE
      SOMETHING ON THERE, SO I JUST GOT ON THERE AND READ IT.

KG:   DID ANYBODY TALK ABOUT IT?
MB:   NO.

KG:   DID YOU CONTRIBUTE ANY OF THE INFORMATION THAT WAS CONTAINED WITHIN
      THIS AH DOCUMENT THAT WAS ON THE WEBSITE TO ANYBODY IN ANY FORM?
MB:   UM, UM.

KG:   OKAY.  ARE YOU RECORDING THIS, ARE YOU RECORDING THIS INTERVIEW NOW?
MB:   NO.

KG:   DID YOU RECORD THIS INTERVIEW, EXCUSE ME, DID YOU RECORD THE
      MEETING THAT WE JUST HAD EARLIER?
MB:   NO.

KG:   IS THERE ANYTHING ELSE YOU'D LIKE TO ADD TO THIS INVESTIGATION THAT
      HASN'T BEEN ASKED?
MB:   NO.

KG:   OKAY.  BE DIRECTED NOT TO TALK TO ANYBODY INCLUDING YOUR HUSBAND OR
      ANYTHING ABOUT THIS INVESTIGATION WHICH IS ONGOING.  ALSO AH
      REAFFIRMING THE FACT THAT THE JUDGE ASKED EVERYONE NOT TO TALK ABOUT
      THIS INVESTIGATION BACK ON MARCH 10TH WITH ANYONE.  AH, BE ADVISED NOT
      TO DO SO.  OKAY?  YOU UNDERSTAND?
MB:   UM, HM.

KG:   THIS IS GONNA BE THE END OF THIS STATEMENT.  TIME IS 2:59 P.M.

3

DOTHAN/Martin & Brackin 1342
Confidential Subject to Protective
Order

# Statement

# of

# Lavera McClain

DOTHAN/Martin & Brackin 1343
Confidential Subject to Protective
Order

03/17/2005  13:39   3346153629          POLICE RECORDS          PAGE  01

# DOTHAN POLICE DEPARTMENT

# INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information of evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Lavere McClain_

    DATE/TIME: _3-17-05 @ 3:10_

INVESTIGATING OFFICER: _Sgt. Ga K. Gray_

    DATE/TIME: _3-17-05   3:14 pm_

WITNESS SIGNATURE: _____

    DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1344
Confidential Subject to Protective Order

KG:    THE DATE IS MARCH THE 17TH, THE, OF 2005.  THE TIME IS 3:12 P.M.  THE
       NAME OF PERSON GIVING STATEMENT IS LAVERA MCCLAIN.  THE PLACE OF
       STATEMENT'S GONNA BE THE MAGISTRATE'S OFFICE.  AH, THIS IS GONNA BE
       REFERENCE CASE NUMBER 05-03-08.  STATE YOUR FULL NAME, PLEASE.
LM:    LAVERA MCCLAIN.

KG:    HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
LM:    FOR 17 YEARS APPROXIMATELY.

KG:    HOW LONG HAVE YOU BEEN A MAGISTRATE?
LM:    FOUR APPROXIMATELY.

KG:    AH, THIS INVESTIGATION IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY
       HAVE RELEASED ANY INFORMATION REGARDING THE INVESTIGATION OF MARY
       TURNER.  WHEN WERE YOU, DID, DID I READ YOU YOUR GARRITY, EXCUSE ME YOU
       READ YOUR GARRITY NOTICE AND DID YOU UNDERSTAND IT?
LM:    YES.

KG:    OKAY.  AND YOU SIGNED WHERE IT SAYS MEMBER'S SIGNATURE?
LM:    YES.

KG:    WHEN WERE YOU MADE AWARE OF AN INVESTIGATION REGARDING MARY TURNER?
LM:    AH, ROUGHLY A WEEK OR SO AGO.

KG:    OKAY.  AND WHO MADE YOU AWARE OF, OF IT?
LM:    JUDGE GORDON.

KG:    OKAY.  AND WHAT DID SHE TELL YOU ABOUT THE
LM:    SHE QUESTIONED ME AS TO AH WHAT STATEMENT IF ANY THE YOUNG MAN INVOLVED
       THAT HAD GOTTEN A TICKET WHAT HE HAD SAID TO ME.

KG:    OKAY.  AH, AND IN REFERENCE TO AH WHAT YOU'RE TALKING ABOUT WHICH IS
       THE REASON WHY AH THIS ADMINISTRATIVE INVESTIGATION IS BEING CONDUCTED
       IS THAT AH MR. BRADLEY PHELPS AH MADE A STATEMENT TO YOU AH AFTER HIS
       ARREST IN REGARDS TO WHAT?
LM:    IN REGARDS TO HIS TICKET.  HE, UH, HE'D BEEN ARRESTED AND HE WANTED TO
       KNOW WHY HE HAD BEEN ARRESTED ON I BELIEVE IT WAS A SPEEDING TICKET.
       AND I CHECKED THE COMPUTER TO FIND OUT THAT HIS FINE HADN'T BEEN PAID
       ON IT AND I TOLD HIM HIS FINE HADN'T BEEN PAID.

KG:    UMKAY.  SO THAT'S HOW YOU WERE MADE AWARE OF THIS?
LM:    YES.

KG:    OKAY.  SO IN ACTUALITY YOU CAME ON BOARD REGARDING AH MR. PHELPS BEFORE
       THIS INVESTIGATION
LM:    YES.

KG:    BEGAN?
LM:    YES.

KG:    AH, HAVE YOU SPOKEN TO MRS. TURNER ABOUT THIS INVESTIGATION?
LM:    ABOUT THE INVESTIGATION, NO.

KG:    RIGHT.  UH, WERE YOU PRESENT ON MARCH THE 10TH, 2005 WHEN JUDGE GORDON
       HAD A MEETING WITH ALL MUNICIPAL COURT EMPLOYEES EXCEPT FOR MRS.
       TURNER?
LM:    YES.

DOTHAN/Martin & Brackin 1345
Confidential Subject to Protective
Order

KG:  WHAT DID SHE SAY TO Y'ALL?  WHAT DID SHE DIRECT Y'ALL TO DO?
LM:  SHE DIRECTED US THAT UNDER NO CIRCUMSTANCES WERE TO HAVE ANY CONTACT
     EITHER VERBAL OR PHYSICALLY WITH MRS. TURNER, NOT TO TALK TO HER, NOT
     TO MEET WITH HER, NOT TO GIVE HER ANY UH COPIES OF ANYTHING OUT OF THE
     OFFICE.  UH, NOT TO GO INTO HER OFFICE, NOT TO TAKE ANYTHING OUT OF HER
     OFFICE OR PUT ANYTHING INTO HER OFFICE.  IF WE WANTED TO MEET WITH HER
     AFTER HOURS WE NEEDED TO CONFER WITH HER FIRST AND SHE WOULD UH CHECK
     WITH THE INVESTIGATORS TO SEE IF THAT WOULD BE OKAY.

KG:  UMKAY.
LM:  IT WOULD RESULT IN DISCIPLINARY ACTIONS OF POSSIBLY BEING FIRED.

KG:  UMKAY.  DID EVERYBODY UNDERSTAND THE ORDER?
LM:  YES.

KG:  AH, DID YOU DISCUSS IN ANY WAY INFORMATION THAT JUDGE GORDON TOLD YOU
     NOT TO AS OF MARCH THE 10TH OF 2005 WITH ANYONE?
LM:  NO, ONE BUT YOUR OFFICE AND HER.

KG:  DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEES WHO HAVE TALKED ABOUT THIS
     CASE SINCE BEING TOLD NOT TO?
LM:  NO, I DON'T.

KG:  ARE YOU RECORDING THIS INTERVIEW NOW?
LM:  NO.

KG:  DID YOU RECORD THIS, THE MEETING THAT WE JUST HAD EARLIER?
LM:  NO.

KG:  IS THERE ANYTHING ELSE IN REFERENCE TO THE CONFIDENTIALITY OF THIS, LET
     ME CHANGE THAT.  I WANTA SHOW YOU THE DOCUMENT THAT WAS ON RICKY
     STOKES'S WEB SITE AND ASK DID YOU CONTRIBUTE TO ANY OF THE INFORMATION
     BEING PUT ON THAT WEB SITE OR THE INFORMATION CONTAINED IN THAT
     DOCUMENT BEFORE YOU?
LM:  NO I DID NOT CONTRIBUTE TO THE INFORMATION.

KG:  AH, DO YOU HAVE ANYTHING THAT YOU WOULD LIKE TO SAY THAT WOULD AH, THAT
     I HAVEN'T ASKED YOU ABOUT IN REFERENCE TO THIS INVESTIGATION AS FAR AS
     THE INFORMATION BEING LEAKED?
LM:  JUST THAT AH TIM FROM AH ADVANTAGE BONDING ASKED MRS. FOWLER, ANOTHER
     MAGISTRATE WHERE, ABOUT MRS. TURNER'S WHEREABOUTS THE DAY BEFORE, IT
     WAS THE DAY BEFORE THIS ARTICLE APPEARED ON THE INTERNET AND SHE TOLD
     HIM SHE WAS NOT AT LIBERTY TO SAY.  AND SHE WAS SEEN ABOUT 30 MINUTES
     LATER IN OUR PARKING LOT BY AH TWO OTHER MAGISTRATES HAVING A QUIET
     DISCUSSION WITH TIM I BELIEVE HIS NAME IS DICKERSON FROM ADVANTAGE
     BONDING.

KG:  WHAT TWO MAGISTRATES WERE THEY?
LM:  THAT WAS TONYA MINNIFIELD AND THE OTHER ONE WASN'T A MAGISTRATE, IT WAS
     AH MELANIE WALSH.  SHE'S A CLERK.  AND THE ARTICLE APPEARED ON THE
     INTERNET THE NEXT MORNING.

KG:  OKAY.  IS EVERYTHING YOU TOLD ME TODAY THE TRUTH?
LM:  YES.

DOTHAN/Martin & Brackin 1346
Confidential Subject to Protective
Order

KG:  OKAY.  THIS IS GONE BE THE END OF STATEMENT.  THE TIME IS 3, NO, FIRST
     OF ALL LET ME AH DIRECT YOU AH NOT TO SPEAK WITH ANYBODY REGARDING THIS
     INVESTIGATION THAT'S GOING ON RIGHT NOW AND REITERATE THE FACT THAT THE
     INVESTIGATION THAT JUDGE GORDON DIRECTED EVERYONE NOT TO SPEAK ABOUT UH
     MAKE SURE YOU DON'T SPEAK ABOUT THAT AS WELL.

LM:  OKAY.

KG:  THIS IS GONNA BE, LET ME ASK YOU ONE OTHER QUESTION.  HAVE YOU SPOKEN
     UH WITH CPL. MIKE ETRESS ABOUT

LM:  YES, IN YOUR OFFICE.

KG:  OKAY.  AND IT WAS IN REFERENCE TO THIS AS WELL?

LM:  YES.

KG:  SO YOU'VE SPOKEN TO MYSELF, THE JUDGE AND ETRESS IN REFERENCE TO THIS?

LM:  YES.

KG:  AT THE DIRECTION OF THE JUDGE?

LM:  YES.

KG:  OKAY.  THIS IS GONNA BE THE END OF THE STATEMENT.  TIME IS 3:16 P.M.

3

DOTHAN/Martin & Brackin 1347
Confidential Subject to Protective
Order

# Statement

# of

# Ann Baxter

DOTHAN/Martin & Brackin 1348
Confidential Subject to Protective
Order

03/17/2005  15:29    3346153629    POLICE RECORDS    PAGE  01

# DOTHAN POLICE DEPARTMENT

# INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the ~~Dothan Police Department.~~ CITY OF DOTHAN If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _____

        DATE/TIME: _03-17-05 @ 2.24 pm_

INVESTIGATING OFFICER: _____

        DATE/TIME: _03-17-05 @ 2:25 Pm_

WITNESS SIGNATURE: _____

        DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1349
Confidential Subject to Protective
Order

SG:    THIS IS SGT. GRAY.  THE DATE IS MARCH THE 17TH OF 2005.  THE TIME IS
       2:26 P.M.  THE PLACE OF STATEMENT IS AT THE MAGISTRATE'S OFFICE. THE
       NAME OF PERSON GIVING STATEMENT IS ANN BAXTER.  THIS IS IN REFERENCE TO
       AH INVESTIGATION REGARDING THE LEAK OF THE INFORMATION AH, CASE NUMBER
       05-03-08.  AH, WOULD YOU STATE YOUR FULL NAME, PLEASE?
AB:    SHARON ANN BAXTER.

SG:    AND HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF DOTHAN?
AB:    FIVE YEARS.

SG:    AND WHAT IS YOUR TITLE?
AB:    MAGISTRATE.

SG:    OKAY.  AH, THIS INVESTIGATION IS AN ADMINISTRATIVE INVESTIGATION AND IT
       IS BEING CONDUCTED SOLELY TO IDENTIFY WHO MAY HAVE RELEASED ANY
       INFORMATION REGARDING THE INVESTIGATION OF MRS. MARY TURNER.  AH, WHEN
       WERE YOU MADE AWARE OF AN INVESTIGATION REGARDING MARY TURNER?
AB:    AH, I DON'T REMEMBER THE DATE.  I THINK IT WAS THE 10TH WHEN THE JUDGE
       HAD THE MEETING WITH THE STAFF.

SG:    OKAY.  THAT WAS THE FIRST YOU HEARD ABOUT IT.
AB:    THAT'S THE FIRST I HEARD ABOUT IT.

SG:    OKAY.  WHO TOLD YOU ABOUT THE INVESTIGATION?
AB:    THE JUDGE.

SG:    AH, WHAT DID SHE SAY?
AB:    AH, THAT THERE WAS A INVESTIGATION GOING ON, NOT TO GO INTO MARY'S
       OFFICE, NOT TO PRINT ANYTHING FROM THE COMPUTER FOR MARY, AND NOT TO
       AH SAY ANYTHING ABOUT THE CASE TO I GUESS ANYBODY THAT WOULD BE HARMFUL
       TO US, IS THE WAY I TOOK IT.

SG:    UMKAY.  IS THAT WHAT SHE SAID, THOUGH?
AB:    WELL

SG:    I KNOW IT'S NOT WORD FOR WORD BUT WAS THAT THE INSTRUCTION THAT SHE
       GAVE?
AB:    YES.

SG:    OKAY.  SO SHE SAID DON'T SAY ANYTHING TO ANYONE ABOUT IT?
AB:    YEAH.

SG:    OKAY.  AH HAVE YOU SPOKEN TO MRS. TURNER ABOUT IT?
AB:    NO.

SG:    WERE YOU PRESENT ON, YOU JUST ANSWERED THAT QUESTION THAT YOU WERE
       PRESENT WHEN, WELL LET ME ASK IT ANYWAY.  WERE YOU PRESENT ON MARCH
       10TH, 2005 WHEN JUDGE GORDON HAD A MEETING WITH ALL OF THE MUNICIPAL
       COURT EMPLOYEES EXCEPT FOR MRS. TURNER?
AB:    YES.

SG:    AH, DID YOU DISCUSS IN ANY WAY INFORMATION THAT JUDGE GORDON TOLD YOU
       NOT TO DISCUSS WITH ANYONE?
AB:    REPEAT THAT QUESTION.

SG:    DID YOU DISCUSS IN ANY WAY WITH ANYONE THE INFORMATION THAT JUDGE
       GORDON TOLD YOU NOT TO?

                                        1

DOTHAN/Martin & Brackin 1350
Confidential Subject to Protective
Order

AB:   I THINK I DID AH SPEAK TO MY HUSBAND ABOUT IT.

SG:   AND WHAT DID YOU TELL HIM?
AB:   AH, IT WAS, IT WAS IN REFERENCE TO MARY THAT I WAS CONCERNED ABOUT OTHER THINGS THAT WERE GOING ON, NOT THIS INVESTIGATION BUT AH RELATIVE TO A CASE HER HUSBAND HAS AND I WAS CONCERNED FOR HER HEALTH AND SAFETY, AND HER WELL BEING, I, YOU KNOW.

SG:   UMKAY.
AB:   AND I JUST FELT THAT THIS WAS JUST BAD, YOU KNOW, FOR HER.

SG:   OKAY.  SO WAS THE GIST OF THE CONVERSATION ABOUT HER HEALTH OR WELL BEING OR DID YOU
AB:   YES.

SG:   MENTION TO YOUR HUSBAND THE INVESTIGATION DEALING WITH HER, THE PRESENT ONE?
AB:   WHAT, WHAT HAD WENT ON?

SG:   RIGHT.
AB:   YES, I DID TELL HIM.

SG:   UMKAY.  AH, WHAT DID YOU TELL HIM I GUESS SPECIFICALLY THAT RELATES TO THIS AND NOT HER HEALTH?
AB:   JUST THAT SHE WAS UNDER INVESTIGATION AND THAT YOU KNOW I HOPE NOTHING BAD CAME OUT OF IT BECAUSE SHE JUST, LIKE I SAID SHE'S GOT SOMETHING ELSE GOING ON IN HER LIFE AND IT'S JUST BAD TIMING.  SO WE WERE GONNA PRAY FOR HER.

SG:   OKAY, WAS THERE ANY PARTICULARS OTHER THAN THAT THAT YOU SHARED WITH HIM?
AB:   NO.

SG:   UMKAY.  DID HE ASK YOU WHAT SHE'S UNDER, WHAT SHE'S UNDER INVESTIGATION FOR?
AB:   HE DIDN'T CARE.  HE COULD CARE LESS.

SG:   OKAY.  HAVE YOU SPOKEN WITH MRS. TURNER AFTER THE JUDGE DIRECTED YOU NOT TO?
AB:   NO.

SG:   HAVE YOU SPOKEN WITH ANYONE OTHER THAN YOUR HUSBAND ABOUT THIS INVESTIGATION SINCE MARCH 10TH?
AB:   NO.

SG:   DO YOU KNOW ANY MUNICIPAL COURT EMPLOYEE WHO HAS TALKED ABOUT THIS CASE SINCE BEING TOLD NOT TO SPECIFICALLY?
AB:   OUTSIDE THE OFFICE OR INSIDE THE OFFICE?

SG:   SINCE MARCH THE 10TH, 2005?
AB:   AH, I DON'T KNOW IF, MAYBE EUNICE AND LAVERA AND I SAID SOMETHING TO EACH OTHER IN RELATIONSHIPS, BUT NO, I, I DON'T EVEN THINK THAT THAT'S WORTHY OF THAT.  NO.

SG:   UMKAY.
AB:   I'M GONNA ANSWER NO.

DOTHAN/Martin & Brackin 1351
Confidential Subject to Protective Order

SG:   OKAY.
AB:   AND I THINK I CAN CLEARLY SAY THAT.

SG:   OKAY.  KIND OF EXPLAIN THAT TO ME.
AB:   WELL, I MEANT, YOU KNOW, THE ADDED AH WHAT GOES AROUND COMES AROUND.

SG:   UM, HM.
AB:   HAS PROBABLY BEEN IMPLIED.

SG:   OKAY.
AB:   YOU KNOW.

SG:   THERE WASN'T ANY PARTICULAR
AB:   BUT, NO, NOT, NOT LIKE DETAILS AND STUFF LIKE THAT NO.

SG:   OKAY.  AH,
AB:   AND GOD DON'T LIKE

SG:   RIGHT.
AB:   LET'S SEE, GOD DON'T, WHAT DID WE SAY?  GOD DON'T LIKE AH, GOD
      DON'T LIKE UGLY.

SG:   UM, HM.  OKAY.  ARE YOU RECORDING THIS INTERVIEW NOW TODAY?
AB:   NO, SIR.

SG:   DID YOU RECORD THE MEETING THAT WE JUST HAD EARLIER?
AB:   NO, SIR.

SG:   IS THERE ANYTHING ELSE YOU'D LIKE TO ADD ABOUT, TO THIS STATEMENT?
AB:   NO, SIR.

SG:   IS EVERYTHING YOU TOLD ME THE TRUTH?
AB:   YES, SIR.

SG:   THIS IS GONNA BE THE END OF STATEMENT.  TIME IS 2:26 P.M.

------
SG:   THIS IS SGT. GRAY AGAIN.  THE TIME IS STILL 2:26 P.M. AH, I'M STILL
      SPEAKING WITH MRS. BAXTER.  AH, I NEED TO GO AHEAD AND ADVISE YOU NOW
      DON'T AH SAY ANYTHING ABOUT THE ONGOING INVESTIGATION ABOUT MRS. TURNER
      OR ABOUT THIS PRESENT INVESTIGATION ABOUT THE LEAK OF INFORMATION.
AB:   OKAY.

SG:   UMKAY.  THAT'S GONNA BE END OF STATEMENT.  TIME IS 2:27 P.M.

3

DOTHAN/Martin & Brackin 1352
Confidential Subject to Protective
Order

# Statement

# of

# Melissa Woods

DOTHAN/Martin & Brackin 1353
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Melissa Woods_

DATE/TIME: _3/18/05   2:51 pm_

INVESTIGATING OFFICER: _____

DATE/TIME: _3/18/05   2:52_

WITNESS SIGNATURE: _____

DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1354
Confidential Subject to Protective Order

DATE:  03/18/2005

TIME:  2:53 P.M.

LOCATION:  MAGISTRATES OFFICE

CASE:  05-03-08

INTERVIEWER:  SERGEANT KEITH GRAY

STATEMENT GIVEN BY:  MELISSA WOODS


KG:  STATE YOUR FULL NAME FOR ME.
MW:  MELISSA LEIGH WOODS.

KG:  WAS YOUR MAIDEN NAME DAVIS?
MW:  NO.

KG:  OKAY.
MW:  WATSON.

KG:  WATSON, OKAY.  UM, DID YOU READ YOUR GARITY NOTICE I JUST
     PROVIDED FOR YOU?
MW:  YES.

KG:  DID YOU UNDERSTAND IT?
MW:  YES.

KG:  DID YOU SIGN IT?
MW:  YES.

KG:  UM, HOW LONG HAVE YOU WORKED FOR THE CITY OF DOTHAN?
MW:  I STARTED DECEMBER OF..ACTUALLY A YEAR AND FEW MONTHS.

KG:  OKAY.  RIGHT.  UM, WHAT'S YOUR TITLE?
MW:  STAFF ASSISTANT OR CLERK.

KG:  OKAY.  THIS INVESTIGATION IS AN ADMINISTRATIVE
     INVESTIGATION.  THIS INVESTIGATION IS BEING CONDUCTED
     SOLELY TO IDENTIFY WHO MAY HAVE RELEASED ANY INFORMATION
     REGARDING THE INVESTIGATION OF MRS. MARY TURNER.  UM, WHEN
     WERE YOU FIRST MADE AWARE OF THE, AH, INVESTIGATION
     REGARDING MRS. TURNER?
MW:  I BELIEVE IT WAS LAST WEEK, THE JUDGE HAD A MEETING WITH
     US.

DOTHAN/Martin & Brackin 1355
Confidential Subject to Protective
Order

KG: OKAY, MARCH THE 10TH?
MW: YES.

KG: OKAY. THAT'S THE FIRST TIME YOU EVER HEARD ABOUT IT?
MW: UM, HM.

KG: OKAY. UM, IF YOU COULD, TELL ME, UM, WHAT WAS THE
    SUBSTANCE OF THAT MEETING THAT YOU HAD WITH THE JUDGE?
MW: UM, SHE CAM, CALLED US ALL IN, AH, TOLD US THAT MARY WAS
    PUT ON ADMINISTRATIVE LEAVE, THAT THERE WERE ALLEGATIONS
    MADE AGAINST HER AND THERE WAS AN INVESTIGATION ONGOING,
    UM, THAT WE WERE NOT TO SPEAK TO ANYONE ABOUT IT, UM, BUT
    THAT, NON, WE DIDN'T KNOW WHAT THE ALLEGATIONS WERE.

KG: OKAY. UM, DID SHE GIVE ANY OTHER DIRECTIONS OTHER THAN
    SPEAKING, NOT SPEAKING TO ANYONE ABOUT IT?
MW: UM, SHE SAID, YOU KNOW, NOT TO TALK TO ANYONE ABOUT IT,
    UM, JUST ON THE CASE.

KG: HOW ABOUT ACCESSING HER OFFICE?
MW: OH YES, AND NOT TO GO INTO HER OFFICE.

KG: HOW ABOUT ACCESSING INFORMATION ON THE COMPUTER FOR..
MW: SPEAKING WITH HER, WE'RE NOT ALLOWED TO HAVE CONTACT WITH
    HER ON THE PHONE PERSONALLY, UM, ENTERING HER OFFICE, OR
    ACCESSING COMPUTER FILES FOR HER.

KG: OKAY. UM, SINCE THAT MEETING WITH THE JUDGE, HAVE YOU
    SPOKE TO ANYONE IN REFERENCE TO THE TURNER INVESTIGATION?
MW: YES.

KG: OKAY. WHO WAS THAT?
MW: MY HUSBAND.

KG: WHAT DID YOU TELL HIM?
MW: I TOLD HIM THAT, UM, ONE OF THE MAGISTRATES, MARY, HAD BEEN
    PUT ON ADMINISTRATIVE LEAVE BECAUSE THERE WERE ALLEGATIONS
    MADE AGAINST HER AND THEY WERE INVESTIGATING IT.

KG: BUT YOU DIDN'T KNOW WHAT THEY WERE?
MW: I DIDN'T KNOW WHAT THEY WERE.

KG: OKAY. HAS MRS. TURNER TRIED TO CONTACT YOU?
MW: NO.

KG: HAVE YOU SPOKEN WITH ANYONE OTHER THAN YOUR HUSBAND ABOUT
    IT?

DOTHAN/Martin & Brackin 1356
Confidential Subject to Protective
Order

MW:  WITHIN THE OFFICE..

KG:  OKAY.
MW:  ..THERE'S BEEN COMMENTS MADE.

KG:  SUCH AS?  AND I'VE HEARD SOME OF'EM BEFORE, BUT TELL ME
     WHAT YOU'VE HEARD.
MW:  UM, WELL, YEAH ONE OF THE BIG THINGS IS THAT, YOU KNOW, WE
     WERE ALL WONDERING WHAT IT WAS..

KG:  UM, HM.
MW:  ..WHAT'S GOING ON, UM, AND WE DID HEAR THAT IT HAD TO DO
     OVER (UNINTELLIGIBLE) A TICKET OR FIXING A TICKET,
     WHATEVER.  HOWEVER, YOU WANTA PUT THAT.

KG:  THAT'S ALRIGHT, I UNDERSTAND.  UM, WHO GAVE YOU THE
     INFORMATION ON WHAT IT WAS ABOUT?
MW:  UM, IT WAS IN THE EMAIL OR NOT THE EMAIL, BUT RICKY
     STOKES..

KG:  OKAY.
MW:  ..I SAW IT ON THE RICKY STOKES THING.

KG:  OKAY.  SO THE MEETING WAS ON THE 10TH..
MW:  UM, HM.

KG:  ..AND THE ARTICLE CAME OUT ON THE 16TH, ALRIGHT SO YOU
     DIDN'T KNOW ABOUT IT UNTIL THE 16TH?  THAT IT WAS ABOUT A
     TICKET?
MW:  WELL NO, I HAD HEARD THE RUMORS, I GUESS, BEFORE THEN.

KG:  UM, HM.  AND THAT'S WHAT MY QUESTION IS.  WHO GAVE, WHO
     TOLD YOU ABOUT THE RUMORS?
MW:  I COULDN'T, WELL, I HAD HEARD IT IN THE OFFICE, UM, I THINK
     MELANIE HAD TOLD ME..

KG:  UM, HM.
MW:  ..WHAT IT WAS, WHAT SHE HAD HEARD IT WAS ABOUT.

KG:  UM, HM.
MW:  UMM...

KG:  BECAUSE ONE OF MY QUESTIONS ARE GONNA BE DO YOU KNOW OF ANY
     MUNICIPAL COURT EMPLOYEES WHO TALK ABOUT THIS CASE, UM,
     SINCE BEING TOLD NOT TO BY THE JUDGE?
MW:  RIGHT, AH, I BELIEVE THAT, I BELIEVE MELANIE HAD TOLD ME
     WHAT SHE HAD HEARD IT WAS ABOUT.

DOTHAN/Martin & Brackin 1357
Confidential Subject to Protective
Order

KG:  OKAY.
MW:  IT'S JUST THAT THERE HAVE BEEN SO MANY RUMORS FLYING.

KG:  RIGHT.
MW:  YOU KNOW.

KG:  I UNDERSTAND.  YOU SAID YOU HAVEN'T SPOKEN WITH MRS. TURNER
     ABOUT IT?
MW:  NO.

KG:  UMM...IN SHOWING YOU THE ACTUAL, UM, STORY THAT WAS PLACED
     ON RICKY STOKES' WEBSITE, UM, DID YOU CONTRIBUTE IN ANY WAY
     TO ANY OF, AH, INFORMATION, AH, THAT'S CONTAINED ON THAT..?
MW:  CERTAINLY NOT.

KG:  OKAY.  UM..
MW:  I DIDN'T EVEN KNOW WHO RICKY STOKES WAS.

KG:  OKAY.  UM, ARE YOU RECORDING THIS INTERVIEW TODAY?
MW:  I'M NOT.

KG:  DID YOU RECORD IT WHEN, THE MEETING WE HAD..
MW:  NO.

KG:  ..YESTERDAY.  OKAY.  UM, IS THERE ANYTHING ELSE THAT YOU
     CAN ADD TO, UM, THIS INVES, THIS INVESTIGATION ABOUT, UM,
     WHO MAY HAVE LEAKED OUT INFORMATION?
MW:  I DON'T KNOW WHO WOULD'VE.  I MEAN, I KNOW THERE WERE, YOU
     KNOW, COMMENTS MADE JUST WITHIN THE OFFICE, BUT I DIDN'T
     THINK ANYONE WAS..

KG:  ABOUT A CONVERSATION SOMEONE OR WHO THEY SEEN OUTSIDE
     TALKING ABOUT, OR LET ME SEE HOW I CAN PUT THIS, YOU'RE
     JUST SAYING THE RUMORS WITHIN THIS..
MW:  RIGHT, WITHIN THESE WALLS.

KG:  RIGHT.
MW:  YES, BETWEEN PEOPLE JUST WITHIN THESE WALLS.

KG:  UM, HM.
MW:  AHM, AS FAR AS, TALKING OUTSIDE I DON'T KNOW WHO WOULD'VE.

KG:  OKAY.  OKAY, THAT'S GONNA BE, UM, THE END OF THIS
     STATEMENT.  AH, BE ADVISED NOT TO SPEAK WITH ANYBODY
     PERIOD, YOUR HUSBAND, WHATEVER, ABOUT, UM, THIS
     INVESTIGATION AND/OR MRS. TURNER'S INVESTIGATION AS THE

DOTHAN/Martin & Brackin 1358
Confidential Subject to Protective
Order

JUDGE ALREADY DIRECTED, UM, IF ANYONE ASKS YOU ABOUT IT,
JUST SAY I'M NOT TALKING ABOUT IT AND TURN AROUND AND WALK
AWAY.

MW:    OKAY.

KG:    THAT'S GONNA BE THE END OF STATEMENT.    TIME IS 3:02
P.M.

DOTHAN/Martin & Brackin 1359
Confidential Subject to Protective
Order

# Statement

# of

# Michelle Bryan

DOTHAN/Martin & Brackin 1360
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

### GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Michelle Bryn_

DATE/TIME: _3|18|05    2:37 pm_

INVESTIGATING OFFICER: _Lt. ____ Lamy_

DATE/TIME: _3|18|05    1438_

WITNESS SIGNATURE: _____

DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1361
Confidential Subject to Protective Order

STATEMENT GIVEN BY:  MICHELLE BRYAN

DATE:  03/18/2005

TIME:  2:40 P.M.

LOCATION:  MAGISTRATES OFFICE

RE:  CASE #05-03-08

INTERVIEWER:  SERGEANT KEITH GRAY


KG:  MICHELLE STATE YOUR FULL NAME PLEASE.
MB:  MICHELLE LYNN BRYAN.

KG:  AND DID YOU READ YOUR GARITY NOTICE AND SIGN WHERE IT SAYS
     MEMBER SIGNATURE?
MB:  YES.

KG:  DO YOU UNDERSTAND WHAT IT MEANT?
MB:  YES.

KG:  OKAY.  HOW LONG HAVE YOU BEEN EMPLOYED WITH THE CITY OF
     DOTHAN?
MB:  FOUR YEARS IN MAY.

KG:  OKAY.  WHAT'S YOUR TITLE?
MB:  MAGISTRATE.

KG:  AND THIS INVESTIGATION IS BEING CONDUCTED SOLELY TO
     IDENTIFY WHO MAY HAVE RELEASED ANY INFORMATION REGARDING
     THE INVESTIGATION OF MARY TURNER.  WHEN WERE YOU MADE AWARE
     OF THE INVESTIGATION REGARDING MARY TURNER?
MB:  IN A MEETING HELD BY THE JUDGE.

KG:  OKAY, THAT WAS ON MARCH THE 10TH OF 2005 WHERE ALL THE, UM,
     MUNICIPAL EMPLOYEES WAS HERE FOR THE EXCEPTION OF MRS.
     TURNER?
MB:  CORRECT.

KG:  UM, AND WAS THE JUDGE THE ONE THAT TOLD YOU ABOUT IT?
MB:  UM, HM.

KG:  OKAY.  UM, WHAT DID SHE SAY, AS MUCH AS YOU REMEMBER, TELL
     ME WHAT DID SHE SAY DURING THE MEETING?
MB:  JUST FOR, I MEAN SHE JUST SAID THAT IF WE WERE UNDER,

DOTHAN/Martin & Brackin 1362
Confidential Subject to Protective
Order

THERE WAS AN ALLEGATION MADE FOR MS. TURNER..

KG: UM, HM.
MB: ..THAT, AH, SHE DIDN'T, WE JUST NEEDED TO KEEP IT QUIET AND BECAUSE ANYBODY CAN MAKE ALLEGATIONS, UM, AND NOT TO DISCUSS IT OUTSIDE OF THIS OFFICE.

KG: OKAY. UM, ANYTHING ELSE YOU REMEMBER?
MB: NOT THAT I RECALL.

KG: HUM?
MB: NOT THAT I KNOW OF, I MEAN.

KG: I'LL HELP YOU OUT. DID SHE MENTION ANYTHING REGARDING, UM, NOT TALKING TO MRS. TURNER?
MB: OH, YEAH. DON'T TALK TO HER, AH, DON'T HAVE ANY CONTACT WITH HER, DON'T DO ANYTHING FOR HER, IF YOU DID HAVE ANY CONTACT WITH HER, JUST AVOID HER AND THE SITUATION.

KG: OKAY. DID, DID SHE SAY WHETHER OR NOT IF YOU HAD, IF THIS CON, IF MRS. TURNER TRIED TO CONTACT YOU OR IF YOU HAD ANY CONTACT WITH HER TO NOTIFY THE JUDGE. DID SHE SAY ANYTHING LIKE THAT? I MEAN WHETHER YOU REMEMBER OR NOT JUST..?
MB: I DON'T REMEMBER THAT.

KG: OKAY. OKAY. DID SHE, AH, AND YOU SAID EARLIER THAT SHE SAID DON'T TALK ABOUT IT OUTSIDE OF THIS OFFICE. WAS IT THAT OR DID SHE SAY DON'T TALK ABOUT IT AT ALL?
MB: IF I REMEMBER CORRECTLY, I, ALL I KNOW IS (UNINTELLIGIBLE) FROM TO TALK ABOUT IT, ESPECIALLY OUTSIDE OF HERE, OR (WHISPERING - "I DON'T KNOW IF SHE SAID THAT OR NOT")

KG: YEAH?
MB: ..I KNOW SHE SAID NOT TO OUTSIDE OF HERE.

KG: OKAY.
MB: ..IT MAY HAVE.

KG: OKAY. THAT, THAT'S FINE I'M JUST ASKING WHAT YOU RECALL. DID SHE MENTION ANYTHING ABOUT NOT LOOKING UP ANY INFORMATION FOR HER ON HER COMPUTER OR NOT ENTERING INTO HER OFFICE?
MB: RIGHT.

KG: OKAY. UM, AH, AH, I'M GONNA READ A, A LETTER THAT JUDGE, UM, PREPARED DEALING WITH THE INSTRUCTION THAT SHE GAVE, MAYBE THIS WILL HELP YOU, YOU OUT, UM, IT SAYS, "ON MARCH

DOTHAN/Martin & Brackin 1363
Confidential Subject to Protective Order

THE 10TH, 2005 AT APPROXIMATELY 1100 HOURS I MET WITH THE
STAFF OF THE MAGISTRATES OFFICE IN THE PRESENCE OF MICHELLE
SELLERS.  ALL EMPLOYEES WERE PRESENT, WERE PRESENT FOR THE
EXCEPTION OF MARY TURNER WHO WAS ON ADMINISTRATIVE LEAVE AT
THE TIME.  I INSTRUCTED THESE EMPLOYEES TO RESTRICT, TO
STRICTLY REFRAIN FROM ANY CONTACT WITH MRS. TURNER WHILE
THE INVESTIGATION CONDUCTED BY THE POLICE DEPARTMENT WAS
UNDERWAY.  I FURTHER INSTRUCTED THAT NO DISCUSSIONS WITH
ANYONE REGARDING THIS MATTER WAS TO TAKE PLACE.  I MADE NO
MENTION OF WHAT THE ALLEGATIONS MIGHT BE NOR DID I MENTION
ANY INVESTIGATOR BY NAME.  SAYING MERELY THAT AN
INVESTIGATOR FROM THE POLICE DEPARTMENT WAS CONDUCTING AN
INQUIRY AND THAT THE EMPLOYEES OF MY DEPARTMENT WERE TO
RESPOND TRUTHFULLY TO ANY QUESTIONS PUT TO THEM BY THE
INVESTIGATING OFFICER."  IS THAT PRETTY MUCH THE GIST OF..?

MB:  YEAH.

KG:  OKAY.  UM, HAVE YOU SPOKEN TO ANYONE, UM, ABOUT THE TURNER
     INVESTIGATION?  SINCE NOTIFIED BY THE JUDGE?
MB:  I TOLD MY HUSBAND ONLY BECAUSE HE'S A, HIS BUSINESS, SHE'S
     CALLED HIM BEFORE SO I JUST TOLD HIM IF SHE CALLS, DON'T DO
     ANYTHING FOR HER.  I DID 'CAUSE I DIDN'T KNOW, I
     FIGURED HE WOULD CONNECT IT TO ME..IT WAS BEST TO AVOID IT.

KG:  OKAY.  UM, DID YOU TELL HIM ANY SUBSTANCE OF WHAT WAS GOING
     ON WITH HER OR JUST NOT TO ACCEPT CALLS?
MB:  JUST NOT TO ACCEPT IT, I MEAN..

KG:  DID HE ASK..?
MB:  ..'CAUSE I DON'T KNOW, I MEAN.

KG:  RIGHT.  OKAY.
MB:  HE JUST, "OKAY."

KG:  WERE YOU PRESENT ON, YOU ALREADY SAID THAT YOU WERE PRESENT
     DURING THE EMPLOYEE MEETING.  UM, OTHER THAN YOUR HUSBAND,
     DID YOU DISCUSS IN ANY WAY ANY INFORMATION THAT JUDGE
     GORDON TOLD YOU NOT TO?
MB:  NO.

KG:  I DIDN'T HEAR YOU?
MB:  TALKING ABOUT TO ANYONE?

KG:  RIGHT.
MB:  AS FAR AS, IN THE OFFICE, OUT OF THE OFFICE, I MEAN I
     HAVEN'T, I MEAN I JUST TOLD, I DON'T, I TOLD MY HUSBAND AND

DOTHAN/Martin & Brackin 1364
Confidential Subject to Protective
Order

THAT WAS IT.

KG:  RIGHT.  I MEAN, OTHER THAN THAT PERSON..
MB:  NO.

KG:  ..YOU KNOW.  AND I GUESS, LET ME CLEAR THIS UP FOR POINT OF
     CLARIFICATION, UM, THE, THE JUDGE STATED IN, AND SO FAR THE
     OTHER MAGISTRATES STATED, THAT, UM, IT WAS DIRECTED NOT TO
     TALK ABOUT IT PERIOD.  AND I KNOW YOU MENTIONED YOUR
     HUSBAND AND YOU, YOU, YOU SAID OUT OF THE OFFICE, HAVE YOU
     TALKED TO ANYBODY INSIDE OF THE OFFICE ABOUT IT OTHER THAN
     YOUR HUSBAND?
MB:  YEAH, THERE'S BEEN TALK IN HERE.

KG:  OKAY.  UM, WAS THAT AFTER THE JUDGES'..?
MB:  YEAH.

KG:  OKAY.  DIRECTION, I'M SORRY, I'LL SOMETIMES LEAVE A WORD
     OFF.  HAVE YOU SPOKEN WITH MRS. TURNER AFTER THE JUDGE
     DIRECTED YOU NOT TO?
MB:  NO.

KG:  THAT WAS A NO?
MB:  NO.

KG:  DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO TALKED
     ABOUT THIS CASE, UM, SINCE BEING TOLD NOT TO, YOU ALREADY
     SAID YOU DID, BUT I MEAN YALL'VE TALKED AMONG YOURSELVES,
     SO THE QUESTION WOULD BE WHO?
MB:  WHO HAVE I TALKED TO ABOUT IT OTHER THAN..?  I MEAN, I'VE,
     AS FAR AS YOU SAYING TALKED ABOUT IT ALL, I MEAN, WE DIDN'T
     REALLY TALK ABOUT IT OTHER THAN WE DON'T KNOW WHAT'S GOING
     ON, I MEAN, WE'VE KINDA MADE COMMENTS LIKE WE HATE THAT IT
     HAPPENED, I DON'T KNOW WHAT'S GOING ON, STUFF LIKE THAT, IS
     THAT WHAT YOUR SAYING?

KG:  RIGHT.
MB:  I MEAN, THAT'S WHAT ALL WE'VE SAID.

KG:  RIGHT.
MB:  I MEAN, JUST TO..

KG:  SO ARE YOU SAYING IN GENERAL, AH, YOU'RE ASKING, YOU
     KNOW,..
MB:  WHY, WHAT WAS SAID, I MEAN, THE ONLY THING WE'VE SAID IS,
     YOU KNOW, WE'RE JUST FLOORED THAT THIS HAS HAPPENED, I
     MEAN, MADE COMMENTS LIKE, YOU KNOW, WE HATE THAT THIS

DOTHAN/Martin & Brackin 1365
Confidential Subject to Protective
Order

SITUATION HAPPENED, YOU KNOW, WE JUST WANT IT TO BE OVER, STUFF LIKE THAT, I MEAN, THAT'S THE ONLY THINGS THAT'S BEEN SAID.

KG: RIGHT. WAS ANYBODY ASKING WHAT'S GOING ON? WAS ANYBODY ASKING TO BE ENLIGHTENED ABOUT WHAT IT WAS?

MB: NO.

KG: OKAY. HAS ANYBODY WITHIN THIS OFFICE APPROACHED YOU TO ASK YOU ABOUT THIS CASE?

MB: NO.

KG: OKAY. SO WOULD IT BE SAFE TO SAY THAT, WITHIN THE CONTEXT OF, OF THE QUESTION, IF NOBODY ACTUALLY CAME TO YOU AND SAID, "HEY, YOU KNOW, WHAT'S GOING ON" OR, YOU KNOW, WHAT HAVE YOU, UM, HAVE YOU ASKED SOMEONE ELSE, YOU KNOW?

MB: NO, 'CAUSE I DON'T WANTA KNOW.

KG: OKAY. SO, IT WAS JUST A COMMENT THAT YOU MADE SAYING YOU, YOU HATE THAT THE DEPARTMENT'S UNDER INVESTIGATION, YOU HATE THAT..

MB: YEAH.

KG: ..THAT SHE WAS, UM, PUT ON ADMINISTRATIVE LEAVE.

MB: IT DOESN'T, REGARDLESS OF WHO IT IS, I JUST, I, I HATE THAT ANYTHING LIKE THIS WOULD HAPPEN.

KG: RIGHT. OKAY. UM, YOU WEREN'T IN THE INTERVIEW THE OTHER DAY, UM, AND YOU ARE TODAY AND I'M ASKING EVERYBODY THIS QUESTION, ARE YOU WEARING A TAPE RECORDER DURING THIS INTERVIEW TODAY?

MB: NO.

KG: UM, DID YOU CONTRIBUTE IN ANY WAY TO THE, UM, INFORMATION THAT IS, WAS POSTED ON RICKY STOKES', UM, WEBSITE..

MB: NO.

KG: ..I'M SHOWING YOU HERE?

MB: NO.

KG: OKAY. DO YOU KNOW WHO DID?

MB: NO.

KG: OKAY. IS THERE ANYTHING ELSE THAT, AH, YOU'D LIKE TO TELL ME THAT I MAY NOT HAVE ASKED YOU ABOUT THIS ISSUE?

MB: NO.

DOTHAN/Martin & Brackin 1366
Confidential Subject to Protective
Order

KG:   OKAY.  BE DIRECTED NOT TO TALK TO ANYBODY, UM, AS THE JUDGE
      STATED INSIDE OF THE OFFICE, OUTSIDE OF THE OFFICE, IT'S
      JUST AN ISSUE THAT COULD BE TALKED ABOUT AFTER THE
      INVESTIGATION'S OV, IS OVER, BUT WHILE IT'S ONGOING IF
      ANYONE APPROACHES YOU..

MB:   WALK AWAY (UNINTELLIGIBLE)

KG:   ..OKAY, UM, AND INCLUDING THIS INQUIRY, AS I SAID, THIS IS
      AN ADMINISTRATIVE AND IT'S JUST, JUST TO DETERMINE IF
      THERE'S A LEAK FROM THIS DEPARTMENT AFTER THE JUDGE
      DIRECTED EVERYBODY NOT TO TALK TO ANYBODY.

MB:   EXACTLY.

KG:   OKAY.  THIS IS GONNA BE THE END OF STATEMENT.  TIME IS 2:50
      P.M.

DOTHAN/Martin & Brackin 1367
Confidential Subject to Protective
Order

# Statement

# of

# Eunice Knight

DOTHAN/Martin & Brackin 1368
Confidential Subject to Protective
Order

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

### GARRITY NOTICE

I wish to advise you that you are being questioned as a part of an official investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to disciplinary action, which could result in your dismissal from the City of Dothan. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _Eunice Knight_

DATE/TIME: 3-18-05     3:39 Pm

INVESTIGATING OFFICER: _Sgt. W. L. Gray_

DATE/TIME: 3-18-05     3:40 PM

WITNESS SIGNATURE: _____

DATE/TIME: _____

PD 15 B

DOTHAN/Martin & Brackin 1369
Confidential Subject to Protective Order

STATEMENT GIVEN BY:   EUNICE KNIGHT

DATE:   03/18/2005

TIME:   3:41 P.M.

LOCATION:   MAGISTRATES OFFICE

RE:   CASE #05-03-08

INTERVIEWER:   SERGEANT KEITH GRAY

BE ADVISED THIS IS AN ADMINISTRATIVE INVESTIGATION

KG:   STATE YOUR FULL NAME PLEASE.
EK:   MAE EUNICE KNIGHT.

KG:   MS. MAE, I MEAN MS. KNIGHT, IF YOU COULD TELL ME HOW LONG
      YOU'VE BEEN EMPLOYED WITH THE CITY.
EK:   I'VE BEEN EMPLOYED FOR THREE YEARS.

KG:   OKAY.   DID YOU READ YOUR GARITY NOTICE THAT I JUST PROVIDED
      FOR YOU?
EK:   I DID.

KG:   DO YOU UNDERSTAND IT?
EK:   I DO.

KG:   DID YOU SIGN IT WHERE IT SAID MEMBER SIGNATURE?
EK:   I DID.

KG:   CAN YOU TELL ME WHAT YOUR TITLE IS?
EK:   MAGISTRATE.

KG:   UM, BE ADVISED THAT THIS INVESTIGATION IS BEING CONDUCTED
      SOLELY TO IDENTIFY WHO MAY HAVE RELEASED ANY INFORMATION
      REGARDING THE INVESTIGATION OF MARY TURNER.   UM, WHEN WERE
      YOU FIRST MADE AWARE OF AN INVESTIGATION REGARDING MRS.
      TURNER?
EK:   UMM, I THINK ABOUT A WEEK AGO WHEN THE, THE JUDGE CAME IN
      AND HAD A MEETING.

KG:   OKAY.   WOULD THAT BE ON MARCH THE 10TH WHEN THE JUDGE HELD A
      MEETING WITH ALL THE EMPLOYEES WITH THE EXCEPTION OF MRS.
      TURNER AND MRS. MENEFIELD?
EK:   THAT'S CORRECT.

DOTHAN/Martin & Brackin 1370
Confidential Subject to Protective
Order

KG:   WHAT DID THE JUDGE SAY?

EK:   SHE ADVISED US THAT THERE WAS AN INVESTIGATION GOING ON AND
      THAT WE DIDN'T KNOW EXACTLY WHAT IT WAS BUT IT WAS JUST
      ALLEGATIONS THAT WERE MADE AND THAT WE SHOULD NOT SAY
      ANYTHING ABOUT IT TO, AH, ANYONE.

KG:   OKAY, TO ANYONE.  UM, DID SHE GIVE FURTHER INSTRUCTIONS AS
      TO NOT TO ENTER HER OFFICE?

EK:   SHE DID.  SHE SAID WE WERE NOT TO, AH, ENTER HER OFFICE OR
      REMOVE ANYTHING FROM HER OFFICE.

KG:   DID SHE STATE FURTHER ABOUT, AH, ENTERING THE COMPUTER FOR
      MRS. TURNER OR ANYTHING LIKE THAT?  OR REFRAINING FROM NOT
      GIVING HER ANY DOCUMENTS OR ENTERING..?

EK:   SHE DID SAY THAT IF SHE REQUEST ANYTHING FROM THIS OFFICE
      THAT WE SHOULD NOT GIVE HER ANYTHING.

KG:   OKAY.  UM, SINCE THE JUDGE GAVE EVERYONE THE DIRECTION NOT
      TO TALK ABOUT IT TO ANYONE, UM, HAVE YOU MENTIONED IT, THE
      INVESTIGATION TO ANYONE?

EK:   I DID MENTION IT TO A FAMILY MEMBER.

KG:   OKAY.  WHO WAS THAT MEMBER?

EK:   AHH, MELISSA WHITE.

KG:   WHO?

EK:   MELISSA WHITE.

KG:   HOW IS SHE RELATED TO YOU?

EK:   JUST A FRIEND.

KG:   OKAY.  WHAT CONTACT, WHAT, WHAT DID YOU SAY?

EK:   AHM, I SAID THAT, AH, THERE WAS AN INVESTIGATION GOING ON
      AND IT'S ABOUT MARY TURNER IN OUR OFFICE BECAUSE SHE..HAD
      DID SOMETHING, WE WASN'T SURE WHAT IT WAS YET.

KG:   UM, DOES MS. WHITE KNOW MRS. TURNER?

EK:   NO.

KG:   OKAY.  UM, DID YOU, UM SAY ANYTHING TO ANYBODY ELSE?

EK:   I THINK I MENTIONED IT TO MY DAUGHTER.

KG:   HOW OLD'S YOUR DAUGHTER?

EK:   HOW OLD, AH, THIRTY.

KG:   WHAT'S YOUR DAUGHTER'S NAME?

EK:   CLAUDETTE HAWTHORNE.

DOTHAN/Martin & Brackin 1371
Confidential Subject to Protective
Order

KG:  AND WHAT'D YOU TELL HER?
EK:  I JUST TOLD HER THAT WE WERE HAVING SOME PROBLEMS IN THE
     OFFICE.  I DIDN'T MENTION ANY NAMES.

KG:  OKAY.  ANYONE ELSE?
EK:  THAT'S IT.

KG:  HAVE YOU SPOKEN TO MRS. TURNER SINCE YOU WERE ADVISED ABOUT
     THIS INVESTIGATION?
EK:  NO I HAVEN'T.

KG:  OKAY.  DID YOU DISCUSS IT WITH ANYONE INSIDE OF THIS OFFICE
     SINCE DIRECTED BY, UM, THE JUDGE NOT TO?
EK:  DISCUSSING HER..?

KG:  THE INVESTIGATION, MRS. TURNER, ANYTHING ABOUT IT.
EK:  THE ONLY THING THAT WE, AH, DISCUSSED WAS THE LETTER THAT
     WE SAW ON THE COMPUTER.

KG:  OKAY.  AND WHEN DID YOU SEE THAT?
EK:  UM, I THINK IT WAS THURSDAY.

KG:  OKAY.  POSSIBLY THE 16TH?
EK:  RIGHT.

KG:  OKAY.  UM, I'M SHOWING YOU THE LETTER THAT CAME, UM, OFF OF
     THE INTERNET AT RICKYSTOKES.COM,  DID YOU CONTRIBUTE IN ANY
     WAY TO ANY OF THE INFORMATION THAT'S CONTAINED ON THAT
     LETTER?
EK:  I DID NOT.

KG:  OKAY.  DO YOU KNOW OF ANY EMPLOYEE THAT DID?
EK:  I DO NOT.

KG:  DO YOU KNOW OF ANY MUNICIPAL COURT EMPLOYEE WHO HAS TALKED
     ABOUT THIS CASE SINCE BEING DIRECTED TO NOT, SINCE BEING
     DIRECTED NOT TO BY THE JUDGE?
EK:  I'M NOT AWARE OF ANYONE.

KG:  OKAY.  UM, ARE YOU RECORDING THIS INTERVIEW AT THIS TIME?
EK:  I AM NOT.

KG:  DID YOU RECORD THE INTERVIEW THAT WE HAD YESTERDAY?
EK:  I DID NOT.

KG:  AND I'M GONNA JUST ASK THIS QUESTION I KNOW I'VE, I'VE

DOTHAN/Martin & Brackin 1372
Confidential Subject to Protective
Order

ASKED IT, I WANTA ASK IT AGAIN AND, AND PUT IT IN A MORE, UM, DEFINED TERM.  HAS ANYONE INSIDE OF THE MAGISTRATES OFFICE, UM, TOLD YOU ABOUT THE NATURE OF THE INVESTIGATION ABOUT MRS. TURNER AFTER THE JUDGE DIRECTED YOU NOT TO, EVERYONE NOT TO?

EK:  ACTUAL?

KG:  UM, HM.

EK:  WELL WE, I THINK WE TALKED ABOUT IT.  AH...

KG:  IN, IN BROAD TERMS OR IN SPECIFIC TERMS?

EK:  NO.  SPECIFIC TERMS, JUST...

KG:  DID ANYBODY KNOW WHAT IT WAS ABOUT?

EK:  NOT REALLY.  NO, NOT REALLY.

KG:  OKAY.  IS THERE ANY SPECULATION?

EK:  WELL THERE WAS SOMETHING THAT WAS PRINTED OFF OF THE PRINTER THAT, UM, WHEN I WAS GETTING MY WARRANTS OFF OF AND IT WAS A CASE THAT, AH, WE THINK THAT WAS THE INVESTIGATION.  AND IT HAD MY NAME ON IT, SO I WAS WONDERING WHY IT WAS PRINTED OFF THE PRINTER.  AND, AH, THAT WAS THE NATURE OF THAT.

KG:  OKAY.  DID, DO YOU KNOW WHO PRINTED IT?

EK:  NO.  BECAUSE ON THAT PRINTER YOU CAN'T TELL WHO PRINTED IT. BUT IT WAS JUST THAT, AH, I CAN'T EVEN REMEMBER THE GUYS NAME, BUT IT WAS, AH, A CASE WHERE IT HAD MY NAME ON IT AND..

KG:  DO YOU KNOW WHO PICKED IT UP?

EK:  NO.  BECAUSE WHEN I DIDN'T, WHEN I WENT TO GET MY WARRANTS AND IT WASN'T MINE, YOU KNOW, I JUST (UNINTELLIGIBLE)

KG:  OKAY.  UM, IS THERE ANYTHING ELSE THAT YOU COULD ADD TO THIS INVESTIGATION ABOUT WHERE THE INFORMATION MAY HAVE LEAKED OUT AT?

EK:  IF I DO IT WOULD ONLY BE SPECULATIVE, SO I DON'T KNOW.

KG:  ALRIGHT.  OKAY.  UM, DO YOU KNOW ANYTHING ABOUT A RUMOR, AND I, I'VE HEARD THIS DURING THE INVESTIGATION, THAT MRS. FOWLER WAS TALKING TO A GENTLEMAN NAMED TIM ABOUT THE INVESTIGATION?

EK:  I DON'T KNOW ANYTHING ABOUT IT.  I WASN'T HERE BUT, I, I DID HEAR SOMETHING LIKE A RUMOR ABOUT THAT, BUT I WASN'T EVAN AWARE OF IT HAPPENING.

DOTHAN/Martin & Brackin 1373
Confidential Subject to Protective
Order

KG:   OKAY.  UM, BE DIRECTED NOT TO SPEAK ABOUT THIS
        INVESTIGATION TO ANYONE NOR THE INVESTIGATION THAT THE
        JUDGE HAS ALREADY DIRECTED EVERYONE NOT TO TALK ABOUT TO
        ANYONE ELSE UNTIL AT LEAST IT'S OVER.

EK:   OKAY.

KG:   THIS IS GONNA BE THE END OF STATEMENT.  TIME IS 3:49 P.M.

DOTHAN/Martin & Brackin 1374
Confidential Subject to Protective
Order