## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| NANCY MARTIN and, | ) |
| MARY BETH BRACKIN, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:05-CV-1172-MEF |
| | ) |
| CITY OF DOTHAN and JUDGE | ) |
| ROSE EVANS-GORDON, | ) |
| | ) |
|     Defendants. | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF BRACKIN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants City of Dothan and Judge Rose Evans-Gordon (collectively "Defendants"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Plaintiff Brackin's Motion for Partial Summary Judgment.

## I.    INTRODUCTION

On November 16, 2007, Defendants filed a Motion for Summary Judgment on all claims filed against them by Plaintiff Mary Beth Brackin and Nancy Martin, and Plaintiff Brackin filed a motion for Partial Summary Judgment, focused on her freedom of speech, freedom of association, procedural due process and substantive

due process claims.   Defendants respectfully submit this response to Plaintiff's motion. [1]

Plaintiff's claims fail as a matter of law and summary judgment should be granted in favor of Defendant. The undisputed evidence shows:[2]

- Brackin received a memo stressing the importance of diplomatically referring citizens making allegations of liability on the part of the City to the City Clerk's Office without commenting on the possibility of liability (Brackin depo., p. 143:10-14, Def. Ex. 21) (emphasis added);

- Brackin admits she referred Fondren to the City Clerk and told him to tell the City Clerk that he was wrongfully arrested and why (Pl. Br., p. 3; Brackin Aff., ¶ 11);

- Brackin admits the City Attorney requested that the Police Chief investigate Fondren's claims (Pl. Brief, p. 4);

- During the course of this Internal Affairs investigation, the investigator learned from two witnesses that Brackin had told Fondren that the City would be liable for falsely arresting him.  (Gordon Aff. Ex A) (Fondren Investigation, Bates Page No. 1293);

- The investigator who interviewed Brackin noted that Brackin did not recall making a statement to Fondren about being falsely arrested, "but was not sure." (Gordon Aff. Ex. A, Bates Page No. 1294);

- When asked later in the interview whether she had made any statements in front of co-workers about telling Fondren the City was liable and he should file suit, Brackin answered "I don't remember." (Gordon Aff. Ex. A, Bates Page No. 1294);

---

[1] Per the Court's Scheduling Order, the parties are required to cite to the deposition page and line. In her brief, Plaintiff Brackin fails to comply with this Order.  Accordingly, Plaintiff's references should not be considered by the Court.

[2] Exhibits cited are found in Defendants' Evidentiary Submission filed with their Brief in Support of their Summary Judgment on November 16, 2007.

- On April 21, 2004, Brackin received Notice of a Determination Hearing and Possible Disciplinary Action setting forth the charges against her. On April 22, 2004, a Determination Hearing was held and on April 23, 2004, discipline was administered. (Brackin depo. p. 151:1-23; p. 152:1-11; Def. Exs. 23, 24 and 25)

- Brackin had the right to grieve or appeal her suspension, but did not do so. (Davis Aff. ¶ 9-10);

- Eleven months after the Fondron incident, in March 2005, Internal Affairs initiated an investigation into a ticket fixing scheme by Mary Turner, another Magistrate in the Department (Gordon Aff., ¶ 5, Ex. B, Bates Page No.);

- In conjunction with their investigation into possible criminal conduct, the investigators asked Judge Gordon that no one contact Turner while the investigation was pending. (Gordon depo., p. 311:11-12; Gray depo., p. 105:3-15; 112:9-15);

- Judge Gordon informed the Judicial Department staff on March 10, 2005, that they were not to contact Turner while the investigation was being conducted. (Brackin depo., p. 208:22-209:19; Gordon depo., p. 329:15-17, Pl. Ex. 7; Smith Affidavit, ¶ 3);

- The 'no-contact' prohibition was not expected to last indefinitely and that if they wanted to contact Turner after hours, to let Judge Gordon know. (Gordon depo., p. 342:2-4, 330:11-15, 335:15-18).

- Brackin admitted that she understood the restriction "to be while we were at work or while I was working." (Brackin depo., p. 316:2-3);

- Brackin ignored this clear restriction from Judge Gordon and called Turner on the telephone from work. (Brackin depo., p. 210:20-211:18). (Gordon Aff., Ex. D, Bates Page No. 1305, 1341) (Pl. Brief, p. 12);[3]

- The Court of Civil Appeals, in an appeal of Brackin's termination decision, held that "Brackin was insubordinate by conversing with Turner in violation

---

[3] Plaintiff complains that Judge Gordon adopted Sergeant Gray's findings that Brackin had violated her "no-contact" directive with no further review or an examination of the record. Such an argument makes no sense - there was no need for further review and/or investigation because Brackin *admitted* she violated the "no-contact" directive.

of Judge Evans-Gordon's order." *City of Dothan v. Brackin,* 2006 WL 3526741 at *10 (Ala. Civ. App. 2006). Brackin admits that this decision is the law of this case. (Pl. Brief, p. 9);

- With regards to the impropriety of the voiding a traffic ticket, Brackin admits she was responsible for processing traffic tickets (Pl. Br., p. 7)

- During a ticket fixing investigation of Mary Turner, another magistrate in the office, it was discovered that Brackin had lined out a traffic ticket on a ticket transmittal sheet, hand writing "void" over the ticket. Brackin does not dispute that she committed this act.

- The Alabama Court of Civil Appeals, in what Plaintiff has admitted is the law of this case, found that there was "substantial evidence indicating that Brackin was negligent in failing to account for a traffic ticket issued by a Dothan Police officer." *City of Dothan v. Brackin,* 2006 WL 3526741 at *7 (Ala. Civ. App. 2006). Based on Plaintiff's act and the Appeals Court's finding, it cannot be disputed that Plaintiff violated the following Personnel Rule: MAJOR OFFENSE, Personnel Rule, Regulation III, Sec. 3-42(6), "Negligence in carrying out assigned tasks or duties or responsibilities of one's position." (Gordon Aff. Ex. C, Bates Page No. 1379), (Pl. Br., p. 8).[4]

- Brackin appealed her termination to the City's Personnel Board, who upheld her termination. (Brackin depo., p. 225:21-226:5);

- Brackin then appealed her termination to the Circuit Court of Houston County. (Brackin depo. p. 226:16-18).;

- The Circuit Court reversed the decision, and the City appealed the reversal to the Alabama Court of Civil Appeals. (Brackin depo., p. 227:7-11; Def. Ex. 36; *City of Dothan v. Brackin,* 2006 WL 3526741 (Ala. Civ. App. 2006));

- The Court of Civil Appeals reversed the Circuit Court's decision, finding that there was "substantial evidence indicating that Brackin was negligent in failing to account for a traffic ticket issued by a Dothan Police officer," and

---

[4] Plaintiff, in her brief, does not dispute that she committed this act. She only disputes whether or not this offense occurred within a 24 month time period from the last offense she committed (*i.e.* the offense arising from the Fondren investigation). This is immaterial, and has no relevance in regards to Plaintiff's motion.

that "[t]he Circuit Court erred in concluding otherwise." *Brackin*, 2006 WL 3526741 at *7;

- Brackin admits the Alabama Court of Appeals decision is the law of the case. (Pl. Br., p. 9).

For the reasons discussed in their summary judgment brief and below, Defendants are entitled to summary judgment in its favor and Plaintiff's Motion for Partial Summary Judgment is due to be denied.

## II.    STATEMENT OF UNDISPUTED FACTS

Defendant hereby incorporates by reference undisputed facts (and supporting evidence) set forth in its November 16, 2007 Brief in Support of their Motion for Summary Judgment.  To avoid duplication, Defendants respectfully direct the court to their Brief.

Much of Plaintiff's brief is based on evidence that should not be considered, and therefore is wholly lacking in legitimate support.  First, as noted in the Motion to Strike filed contemporaneously with this response, Plaintiff's self-serving affidavit is due to be struck as both hearsay and information which is not based on her personal knowledge.  Second, this Court's Initial Order of July 9, 2007 directed that, "In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition . . . . Failure to make such specific reference will result on the evidence not being considered by

the court." Uniform Initial Order, July 9, 2007, p. 1-2. Plaintiff made no attempt

in her Brief to identify the source of her citations by page and line, and therefore,

in accordance with the clear language of the Order, any such references should not

be considered by the Court.

## III.    ARGUMENT

### A.    Defendants Are Entitled to Summary Judgment as to Brackin's First Amendment Freedom of Speech Claim (Count One) Because Brackin Did Not Engage in Protected Speech[5]

"[A] public employee's right to freedom of speech is not absolute." *Bryson*

*v. Cuty of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989)(citation omitted).

Brackin's speech is constitutionally protected only if it satisfies both elements of

the test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and

refined in *Connick v. Myers*, 461 U.S. 138 (1983)(the "*Pickering-Connick* test")."

*Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000). Plaintiff attempts to

characterize her speech as a matter of public concern by describing it as advising a

citizen as to how to file a grievance against the City. However, as this Court aptly

---

[5] Brackin asserted claims against Judge Gordon in her individual capacity under Counts One, Two, Three, Four, Five, Seven, Eleven, Twelve, Sixteen and Seventeen. However, as pled in Judge Gordon's defenses and explained in Defendants' summary judgment brief, Judge Gordon is entitled to qualified immunity with respect to the claims against her. Thus, not only would summary judgment against Judge Gordon be improper, the claims against her are actually due to be dismissed. While Plaintiff is not clear as to whether she is seeking summary judgment against both Judge Gordon and the City, or just the City, there can be no dispute that Judge Gordon is entitled to qualified immunity and all claims asserted against her are due to be dismissed.

noted in it's Order on Defendants' Motion to Dismiss, in determining whether the purpose of her speech was to raise issues of public concern "the topic of the employee's speech is one in which the public might or would have had a great interest is of little or no moment." (Doc. # 42, Memorandum Opinion and Order, p. 11). Regardless of how Plaintiff chooses to describe her statements, her claim fails because the purpose of her speech was not to raise issues of public concern, but rather, was simply speech by an employee pursuant to her official duties, and therefore not protected. *D'Angelo v. School Bd. of Polk County, Fla.* 497 F.3d 1203, 1210 (11th Cir. 2007).

It is undisputed that in the course of his investigation into the citizen's (Fondren) complaint, the investigator learned from two witnesses that Brackin had told Fondren that the City would be liable for falsely arresting him. (Gordon Aff.; Ex. A, Fondren Investigation, Bates Page Nos. 1031ac, 1031ad, and 1031ak). Putting aside that when interviewed only two months after the event with Mr. Fondren occurred Brackin said she did not recall making a statement to Fondren about being falsely arrested, "but was not sure," and also stated she could not remember whether she had made any statements in front of co-workers about telling Fondren the City was liable and he should file suit,[6] but then amazingly recalled with certainty during her deposition three and a half years later that she

---

[6] (Gordon Aff.; Ex. A, Fondren Investigation, Bates Page Nos. 1294).

supposedly did not tell Fondren he had been wrongfully arrested, the evidence collected in the investigation reasonably determined that Brackin <u>had</u> told Fondren that the City would be liable for falsely arresting him. (Gordon Aff. Ex A) (Fondren Investigation, Bates Page No. 1293).[7]  Because the evidence indicated that Brackin had made statements to Fondren suggesting the City was liable in direct violation of the directive not to comment on such liability, Judge Gordon, after presenting Brackin with a Notice of charges against her, completed a Disciplinary Action Report on Brackin's conduct, and presented it to her on April 22, 2004.  After a Determination Hearing was held, discipline was implemented. (Brackin depo., pp. 151:1-23; 152:1-11; Def. Exs. 23, 24 and 25).  Ignoring that it was reasonable for the investigator and Judge Gordon to conclude that Brackin had commented on the City's liability, and ignoring that for purposes of Plaintiff's motion all disputed issues of fact, such as whether or not she told Fondren the City

---

[7] Plaintiff wrongly claims in her Brief that Fondron *was* wrongfully arrested. (Pl. Brief, p. 3) However, the only citation Plaintiff offers for her position are statements by Mr. Fondren himself given in his interview during the investigation of this incident, and she conveniently ignores that conclusions of the investigation to the contrary found in the same report. While whether Mr. Fondren had or had not been wrongly arrested is immaterial to Plaintiff's claim, it should be noted that the investigator found that Fondren had <u>not</u> been wrongly arrested. The warrant had been issued for Fondren's failure to complete a court referral program he had been sentenced to following a previous arrest. The investigation revealed that Fondren did not complete the program until five months <u>after</u> the arrest warrant was issued, and did not submit the referral completion paperwork to the court until a week after the arrest that led to this incident. (Gordon Aff. Ex. A, Bates Page No. 1297; Kevan Kelly Aff. ¶ 3; Ex. B.)

was liable, are to be taken in Defendants' favor, Brackin's claim fails because the speech at issue was simply made as an employee in carrying out her duties.[8]

However, even if she had spoken as a citizen on a matter of public concern, her claim would still fail as the City had an adequate justification for treating Brackin differently than a member of the general public. "Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006). Nowhere in her brief does Brackin dispute that her comments had the potential of causing the City to incur legal and financial liability, and had the potential to affect the City's operations (which, in fact, it did, as evidenced by the complaint filed by Fondren). (Gordon Aff.; Ex. A). As such, the City certainly had adequate justification for treating Brackin differently than the general public. Accordingly, not only should Brackin's request for summary judgment on this claim be denied, the claim itself fails as a matter of law.

---

[8] Brackin's statements to Fondren are no different than her alleged work-related phone call to Mary Turner which this Court has already held was not a matter of public concern because the purpose in the speech was related to Brackin's performance of her job duties. (See Doc. # 42, Memorandum Opinion and Order, p. 11).

**B.    Brackin's Relationship with Turner Is Not Protected by the Constitution, Thus, Defendant, Not Plaintiff, Is Entitled to Summary Judgment on Her First Amendment Freedom of Association Claim (Count Three)**

In its summary judgment brief, Defendants cited copious legal authority that establishes that Plaintiff's freedom of association claim is without merit. Plaintiff, on the other hand, without citing a single case in support, arrives at the blanket conclusion that her friendship with Turner should be protected under the Constitution. As detailed beginning on page 41 of Defendants' Brief in Support of their Motion, Brackin's association with Turner is not a relationship protected by the Constitution. Although Plaintiff Brackin and Turner admittedly became close friends after they began working together, this is not the type of "intimate relationship" that is protected by the First Amendment.[9]  *See Brown v. Pulaski County Bd. of Educ.,* 2007 U.S. Dist. LEXIS 12258, *28-29 (M.D. Ga. 2007) (holding that the friendship between plaintiff, a resource coordinator for the school district, and a school board member was not protected under the First Amendment and therefore plaintiff failed to establish a freedom of association claim); *Asko v. Bartle,* 762 F.Supp. 1229, 1232 (E.D. Pa. 1991) ("retaliation based on friendship and professional association "may be reprehensible, but it does not impair a constitutional right"); *Ortiz v. San Miguel County,* 955 F.Supp. 1338 (D.N.M.

---

[9] Brackin does not allege that her association with Turner was an "expressive relationship," the other type of relationship protected by the Constitution.

1996) (holding county employee's personal friendship with former members of the County's Commissioners Board was not the type of intimate relationship protected by the First Amendment and granting summary judgment on plaintiff's freedom of association claim); *Rode v. Dellarciprete,* 845 F.2d 1195, 1204-1205 (3rd Cir. 1988) (friendship between brother-in-law and sister-in-law not protected as intimate human relationship); *Cipp v. Unified School Dist. No. 501,* 882 F.2d 1547 (10th Cir. 1989) (holding head custodian's close personal relationship with school principal was not the type of association that the First Amendment shelters from government action and reasoning that the "intimate human relationships" protected by the Constitution "have [generally] involved familial settings not present in the case before us.").

Brackin's relationship with Turner is one of "'casual, social interaction,' which is the type of 'generalized social association' <u>that is not protected by the First Amendment</u>. *McKinney v. Orange County, Florida* 2007 WL 2119388, *6 (M.D.Fla. 2007)(citing *City of Dallas v. Stanglin,* 490 U.S. 19, 25 (1989) (Freedom of association is defined as something more than "generalized ... 'social association.'").    Brackin's social relationship with Turner is simply not a relationship that would qualify as an "expressive relationship."

Because Brackin's relationship was neither an intimate nor an expressive relationship, the relationship at issue is not one covered within the protections of

the First Amendment, and her claim must fail as a matter of law. *Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994).

Even assuming *arguendo* that the relationship was a protected intimate relationship, the only question before the court is whether the City's interest in preventing collusion between a suspect and potential witnesses during an investigation of criminal activity occurring within the Judicial Department outweigh Brackin's personal association interests. *Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir. 1997). Plaintiff states that Judge Gordon's directive is subject to a strict scrutiny review. (Pl. Brief, p. 27). She is incorrect, and ignores the clear law of the Eleventh Circuit which specifically states that a strict scrutiny review of a government employee's freedom of intimate association claim is <u>not</u> the appropriate standard. *Shahar v. Bowers*, 114 F.3d 1097, 1102 (11th Cir. 1997). Rather, the appropriate test is the *Pickering* balancing test. *Id.* at 1103.[10] As noted in Defendants' Brief on page 35, the question at issue is therefore "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos* 126 S.Ct. 1951, 1958 (2006)(citations omitted). Clearly, the City's interest in preventing collusion during a criminal investigation was an adequate justification

---

[10] The two U.S. Supreme Court cases Plaintiff relies on in taking her position are not relevant to the case at hand- both deal with prohibitions on the freedom to associate for the advancement of political beliefs and the freedom to associate as a political party. *See Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 666 (1990); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (U.S. 1979). Obviously, neither applies in this situation.

for treating her differently than a member of the general public, and outweighed Brackin's desire to socialize with Turner.[11]

For the above reasons, and for the reasons detailed beginning on page 41 of Defendants' Brief in Support of their Motion, Plaintiff's request for summary judgment is due to be denied.

### C.    Brackin Failed to Establish a Deprivation of a Property Interest and, Therefore, Defendants Are Entitled To Summary Judgment on Her Procedural Due Process Claim (Count Four)

Again, in a conclusory fashion, without any legal or evidentiary support, Brackin contends that, with regards to her 10-day suspension in April 2004, because she was in the City's classified service at the time of her termination she was "entitled to some measure of due process prior to the loss of a job related benefit." (Pl. Br., p. 30). To make a procedural due process claim, however, Brackin must show a deprivation of a property interest, and that such a deprivation occurred without a proper procedure. Her claim fails because she cannot show a deprivation of a property interest. As detailed in Defendants' Brief, pp. 47-49, "Under Alabama law, a state employee [and similarly, a City employee] must demonstrate that his employment is "permanent" or terminable only "for cause" to demonstrate a constitutionally cognizable property interest." *Shows v. Morgan*, 40

---

[11] It should also be noted that Plaintiff cannot show any harm or injury from this directive. She does not claim that she was prevented from socializing with Turner, that the directive influenced her behavior in any way, or that she was ever disciplined for associating with Turner. Without a harm or injury, her claim has no merit.

F.Supp.2d 1345, 1356 (M.D. Ala. 1999).    Brackin's employment was not terminable only for cause.  Ala Code § 11-44E-180 states that "Subject to the provisions of any civil service or merit system applicable to the City . . . any officer or employee or a head of any office, department or agency, may be removed by the city manager or other appointing officer at any time . . . ."  "A state [or City] employee that may be discharged at will under state law has no property interest in his or her job."  *Nicholson v. Gant*, 816 F.2d 591, 597 n.8 (11th Cir. 1987)(quoting *Thompson v. Bass*, 616 F.2d 1259, 1265 (11th Cir. 1980).  Because she has no property interest, she cannot maintain a claim for violation of procedural due process.

However, even assuming for the sake of argument that she can show a property interest in her employment, her procedural due process claim pertaining to the investigations still fails.   Plaintiff contends that "[s]ince the City provided Brackin no additional meaningful review beyond the Appointing Authority stage, the procedure offered Brackin prior to placing her on 10-day suspension and two year probation was woefully inadequate."  The evidence establishes otherwise. It is undisputed that Brackin was given notice and an opportunity to be heard with regards her suspension and probation.

On April 21, 2004, Brackin received a Notice of Determination Hearing and Possible Disciplinary Action setting forth the charges against her.    A

Determination Hearing was conducted on April 22, 2004 and on April 23, 2004, discipline was implemented. (Brackin depo. p. 151:1-18; p. 152:1-7; Def. Exs. 23, 24 and 25)  Her suspension notice clearly stated "you are hereby advised that if you are dissatisfied with this decision to discipline, you have available to you the procedures for review and/or appeal as provided by the Civil Service Act of Dothan, as amended, and the Personnel Rules and Regulations." (Brackin depo., Def. Ex. 25).  Further, Brackin signed a certification stating that,

> I hereby certify I have received a copy of this decision to discipline from my department head or his/her designated representative.  I understand that should I wish to appeal my department head's disciplinary decision I must file a written notice with my department head and the Personnel Board within the time period specified in the Personnel Rules and Regulations, Section 3-50, Appeal of Disciplinary Action.  Personnel Form # 152 – City of Dothan Appeal Form may be used to initiate an appeal of disciplinary action.

*Id.*  Brackin **chose** not to contest her suspension via grievance or appeal, which she clearly had a right to do. (Davis Aff. ¶ 10).  She cannot now claim her rights were violated because she made no effort to take advantage of the opportunity to be heard.

Plaintiff also contends that her due process rights were violated because the City supposedly failed to follow its regulations.  (Pl. Brief, p. 35-36.)  However, the case law cited by Plaintiff does not support her argument.  The cited cases all deal with following regulations in the conduct of the hearing or opportunity to be

heard.[12]  In other words, were the rules followed in the notice and opportunity to be heard.  That is not the case here - Plaintiff does not dispute that the rules were followed with regards to conducting the notice and an opportunity to be heard pertaining to her suspension.  What she is alleging is that the City did not follow its rules in initiating the investigation that identified Plaintiff's misconduct, and even if true (which it is not), does not impact her procedural due process rights.

Plaintiff's request for summary judgment on this claim is due to be denied, and this claim should be dismissed as a matter of law.

**D.      Brackin's Substantive Due Process Claims (Count Five and Seven) Fail as a Matter of Law**

The lack of merit to Plaintiff's substantive due process claims are fully explained on pages 52-53 and 56-57 of Defendants' Brief.  Plaintiff argues that the interviews conducted during the investigations violated her substantive due process rights.  However, as stated in Defendants' brief, there is no constitutional right to be free from being questioned during an investigation, much less a 'fundamental right.'  *See e.g. Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation of City of New York*, 392 U.S. 280 (1968).

---

[12] In fact, most of the cases deal with situations that are so distinguishable from the present situation as to be completely irrelevant.  For example, *Yesler Community Counsel v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) deals with whether the U.S. Department of Housing Urban Development's determination, without providing notice and an opportunity to be heard, that Washington State's Court eviction procedure satisfied due process, violated the Administrative Procedure Act; *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) deals with whether an Administrative Law Judge properly applied the regulations in making a determination of disability for social security benefits; and *Abdulai v. Ashcroft*, 239 F.3d 542 (3d Cir. 2001), deals with whether the INS's Board of Immigration Appeals properly applied its own rules in denying Plaintiff's application.

Plaintiff also contends that she has a substantive due process claim with respect to her termination because the reasons advanced by the City justifying her termination—a phone call to Mary Turner (in direct violation of a no-contact prohibition), is so arbitrary as to implicate substantive due process.[13]  This Court has already held that that the speech at issue (*i.e.* contacting Turner) was not protected by the first amendment.  (Doc. # 42, Memorandum Opinion and Order, p. 11).  Because the speech was not protected, she cannot claim a violation of a fundamental right, which is required to show a substantive due process violation. *Shows v. Morgan*, 40 F.Supp.2d 1345, 1356 (M.D. Ala. 1999)(citations omitted).

## IV.    CONCLUSION

As explained above, and for all of the reasons set forth in Defendants' Brief in Support of its Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment is due to be denied, and Defendants are entitled to summary judgment on all Counts.

---

[13] Additionally, it is amazing that Plaintiff is calling an act (termination for what Plaintiff alleges was a single job related telephone call, but in reality was an act of insubordination), "so arbitrary that . . . substantive due process is implicated and she is entitled to relief on this basis alone," (Pl. Brief, p. 39) in light of the fact that the Alabama Court of Civil Appeals found that this act <u>was</u> the major offense of insubordination that the Personnel Board considered it.  *City of Dothan v. Brackin,* 2006 WL 3526741 * 10, 12-13 (Ala. Civ. App. 2006))  Plaintiff's claim fails for this point alone.

Respectfully submitted,


/s/ Carol Sue Nelson
Carol Sue Nelson
Audrey Dupont
Theodore P. Bell
Attorneys for Defendants

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 2400 AmSouth Harbert Plaza
Birmingham, Alabama 35203
(205) 254-1000


## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ishmael Jaffree, Esq.
951 Government Street
Mobile, AL 36604-244


/s/ Carol Sue Nelson
OF COUNSEL