EX "/2"

# Dothan Police Department

## MEMORANDUM

**FROM** : Sergeant I. Keith Gray

**TO** : Chief John R. Powell

**DATE** : May 2, 2005

**SUBJECT** : JUDICIAL COURT DEPARTMENT INVESTIGATION
UNIFORM TRAFFIC CITATION/BRADLEY THOMAS PHELPS



This is to inform you of the results of the Internal Affairs Investigation which began on March 3, 2005 involving City of Dothan employees Mary L. Turner. Municipal Court Judge Rose Evans-Gordon initially met with Captain Steve Parrish when she learned of allegations of misconduct, and Parrish assigned me the case. Judge Gordon later informed me of the complaint and requested it be investigated.

The complainants Patricia Phelps and her son juvenile Bradley Phelps alleged that Ms. Turner "fixed" a ticket for him, and later threatened him with the reappearance of the ticket when he failed to complete repairs to Turner' personal property. Bradley Phelps was once employed by Mary Turner's husband Kevin Turner. Further Bradley stated that he was issued a traffic citation on April 14, 2003 by Dothan Police Sergeant Anthony Westberry for speeding. Bradley asked Kevin if he could have Mary to "take care of the ticket." According to Bradley she agreed and he had not received any paperwork to the contrary. Several months later Kevin was incarcerated. In the month of June of 2004 Mary asked Bradley to repair the roof on her trailer as compensation for not being held accountable for the citation. He agreed, and began the job with the assistance of his father Robert Phelps, but they did not complete the work fast enough to suit Ms. Turner. She threatened to reinstate sanctions of the citation against him due to him not completing the job. Months later Bradley was arrested on an alias warrant as a result of the threat she had made. Bradley later complained to Municipal Court Judge Rose Evans-Gordon who continued his court case in order that the allegations may be investigated. Patricia Phelps retained an attorney, Thomas Smith, to represent Bradley. During this investigation Ms. Phelps informed me that as proof of prior impropriety on Ms. Turner's part, she explained that her other son Stephen has also had a traffic citation "fixed" by Ms. Turner. (See Internal Affairs Case Number IA-05-03-07).

**Statement of Patricia Phelps on March, 8 2005**
Ms. Phelps stated that her son Bradley received a traffic ticked while employed at "Vital Signs" which is Kevin Turner's business. She said that Kevin and Bradley were due to leave town on business and she reminded Bradley about the ticket. Patricia was told by Bradley and Kevin that Mary Turner was going to "take care of the ticket." Patricia called the magistrate's office and checked to see if Bradley was on the docket for court appearance date sited on the ticket which was June 3, 2003, he was not. She then assumed that the ticket was, "taken care of" since the person she talked to could not find the ticket entered into the computer. She stated that she never thought anything else about the ticket, nor did she ever

DOTHAN/Martin & Brackin 1429
Confidential Subject to Protective Order

receive any notices to appear in court for Bradley. Patricia further stated her husband Robert and son Bradley went to Mary's rental property and worked on the roof sometime around the first of July 2004. They explained to her (Patricia) that they put a tarp and bricks on the roof temporarily until the rain stopped. Approximately one week later, around July 4th, the Phelps' were having a birthday party and cooking out when Mary called to talk to Patricia at her residence. She could not answer the phone and told a family member to tell Mary she would call her back. Mary called again, spoke with Patricia, and asked for Bradley. She told her that Bradley was not home and Mary told Patricia that Bradley had better come finish her roof, "or else" and hung up the phone. Mary called back a third time and spoke with Robert to tell Bradley that the ticket would resurface. Bradley later told his mother after talking with Mary that she (Mary) again said that the she was going to bring the ticket back up. Ms. Phelps began to question Bradley about the ticket, because she thought that it was paid. As I questioned Patricia further, she stated that she was not sure if Mary said the word "resurfaces" directly to her, because her husband has repeatedly said that it was what Mary told him. Patricia is certain that Mary told her something like, "remind him about the ticket, or tell him about the ticket." She remembered that Mary was angry when they had their conversation. It was Patricia's understanding also that Mary was going to pay Bradley for the work on the roof. Patricia stated that Bradley was arrested after Mary made her comments about the ticket.

**Statement of Bradley Phelps on March 9, 2005**
Mr. Phelps stated he was speeding on South Oates Street on April 14, 2003 and was given a ticket by a Dothan Police Officer (Sgt. Westberry). Bradley went to work for Kevin and told him about the ticket and Kevin told him that Mary said she would see if she could take care of it. Bradley later spoke with Mary about the ticket and she told him that she would keep continuing it, and would take care of it after it was continued.

While Bradley was employed for Vital Signs, Kevin financed a vehicle for him, and he was to make payments to Kevin on the first of each month. He did so until Kevin was arrested. He was unsure how much he had paid Kevin, but estimates that the balance was approximately $1,200.00. He stated that he began giving Mary the payment up until July 4th. Bradley explained after receiving the traffic ticket he went to Kevin's business and showed him the ticket. Further Bradley stated Kevin called Mary, who was inside of the house, and told her about the ticket. She came from the house and told Bradley that she would see what she could do about it. She had to talk to the sergeant/police officer. Approximately two weeks after this, he was working at the business and Mary told him not to worry about the ticket because it would be taken care of. Months late after Kevin's arrest, Mary called Bradley at home and asked him if he could come to her residence and bush hog and fix the roof on the trailer. He and his father went to Mary's house the week prior to July 4, 2004 and cleaned the roof off. Mary and Bradley had discussed and agreed that as compensation for all of the work, they would deduct the month's vehicle note, and she would pay him as well. He bush hogged on or around June 23rd 2004, and did not receive payment. The following week, June 27, 2004, is when he purchased tarp from Lowe's and cleaned the roof. They had planned to patch the roof on the following weekend which was the July 4th weekend, but they were preoccupied. The following weekend Mary called the Phelps' residence and told his father that she was going to make the ticket re-appear because he (Bradley) did not go and finish the roof. Bradley's father told him what Mary threatened to do, so he and a friend went to her house and Bradley spoke with her. She told him that the ticket was going to reappear, and that she wanted full payment for the vehicle. He told her that his labor was not free, and she told him that she did not think that the work that he had done was worth it. He showed her a receipt where he had purchased the tarp, and gave her eighty or ninety dollars towards the normal monthly payment of $175.00 on the vehicle, and considered their agreement

DOTHAN/Martin & Brackin 1430
Confidential Subject to Protective Order

settled. Mary wanted more money and began to get aggravated and said again that he could just look forward to the ticket reappearing. He replied, "okay do what you gotta do Mary," and as he was preparing to leave, his friend told him that he had given her the receipt and he told Bradley to get it back. After some disagreement of who was to keep the original receipt Mary gave it back to Bradley, and they left. Bradley stated that he has never received anything from the magistrate's office, nor the court regarding his appearance for the ticket. He stated he was arrested for failure to appear in court, but does not understand how he could have been arrested without receiving a notice. Later after making bond, Bradley went to the magistrate's office and spoke with Ms. Lavera McClain, in an attempt to pay the ticket. She told him that he could not pay the ticket, but must appear in court. He told McClain what Mary had told him regarding the ticket had been taken care of. McClain reiterated that he had to appear in court.

**Statement of Robert Phelps on March 9, 2004**
Mr. Phelps stated that Bradley was working for Kevin Turner at his sign company. Robert said that his son and Mary Turner evidentially became friends, because after Kevin was incarcerated Bradley would occasionally do some work for her. Additionally he stated that Mary has a little trailer behind the shop and it had an addition made onto it. From the roof Robert could see that the wood was rotted away, and water was leaking between the addition where she had just put new carpet. Mary wanted to see if they could fix the leak. He told her that they could not fix it due to other obligations, but could come back the next weekend, and she agreed. He and Bradley however, did go to Lowe's and purchased some tarp and covered the roof temporarily. On July 4th weekend, Mary called his residence and wanted them to finish the repairs. Robert told her that he was not home and she sounded as if she was mad. Mary said to Robert, "Well, you tell him to forget about the roof here, I'm gonna get somebody else and tell him a speeding ticket is gonna reappear." He told Bradley what she said, and told him that they can't go over to her house now due to the barbeque and other things they had going on. He told Bradley to call her and tell her that they may be able to come on the next day. Robert could not understand how Mary could make the speeding ticket reappear one year later. Robert said that Mary also told his wife about the ticket reappearing, stating that Mary was calling their residence constantly to make sure she got her point across.

**Statement of Lavera McClain on or about March 10, 2005**
Ms. McClain stated that Bradley Phelps came into her office and asked why an alias writ was issued for his arrest. She looked into the computer and told him that the ticket was not paid. He stated that he did not understand why it had not been taken care of because he had an agreement with Mary Turner about her "taking care of the ticket," in exchange for him fixing her roof. She told him that any agreement he had with Ms. Turner was between he and her. I showed McClain uniform traffic citation number M5532102 and asked her to look at the court dates that were recorded, and asked if anything appeared out of the ordinary. She stated, "First of all on a minor charge such as speeding; unless something out of the ordinary happens, it's not normally continued this many times." When asking her what is specifically odd about Bradley's ticket she replied, "It's continued a lot of times, shorter periods, over a longer period of time." McClain identified handwriting on the back of the citation as belonging to Turner, "09/16/03 OOT." After Bradley exited the magistrate's office, McClain said that Turner approached her and asked what he wanted. When McClain told her, Turner replied that he was just crazy and went back to her office. On October 11, 2004, the date of his arraignment, Bradley spoke with McClain again and repeated the agreement that he had with Turner. Again, McClain told him to talk to the judge on his court date.

**Statement of Stephen Phelps on April 29, 2005**
Mr. Stephen Phelps stated he received a traffic ticket in the past by a City of Dothan Police Officer and

DOTHAN/Martin & Brackin 1431
Confidential Subject to Protective Order

Mary Turner asked him to bring his copy to her. He did so and she told him that she would take care of it. He has not seen it since, nor has he been held accountable to it. He also knows that his brother Bradley received a ticket by a City of Dothan Police Officer and he showed it to him. Later on Bradley asked Stephen to help him fix the roof on Mary's trailer, but Stephen could not go. Robert went with Bradley to assist him with the repairs. Stephen stated that he was at home when Mary called their house mad, rude being snobby. Further he stated that he saw her name and phone number on their caller ID box, and could hear Mary on the phone. He said that Mary was talking loud to one of his relative as they were standing in their kitchen area.

**Statement of Sgt. Anthony Westberry on April 29, 2005**
Sgt. Westberry stated that he wrote a traffic ticket to Mr. Bradley Phelps for speeding, ticket number M5532102 on April 14, 2003. He stated that he gave a copy of the citation to Bradley and on the next day he took the citation to the magistrate's office and swore an oath to Ms. Lavera McClain. She stated he had never met Bradley prior to the traffic stop. Westberry did recall that Bradley told him that he was related to Mary Turner. Further, Westberry stated that during his conversation with Turner she did not ask him to "take care" of the citation, but she stated that Bradley was employee by her husband.

**Statement of Mary Turner on April 26, 2005**
Ms. Turner stated that she was sure that her husband called her and asked her to continue Bradley's ticket because they were working and she did. I asked her if she contacted Sgt. Westberry, and she said that at some point she did speak to him about the ticket, but he had already sworn to the ticket. She did not ask him if he could help her out with the ticket. I asked her if Bradley worked for her and she stated that she had a trailer that had a leaky roof and she asked Bradley if he and his father wanted to repair it. Her husband Kevin had recommended that she contact Bradley. She felt that Bradley might be interested because he was making payments to her on a vehicle that her husband had finance for him and she thought he might was to work the payment off. He told her that he was interested, and both Bradley and Robert cleaned the roof off, and obtained a tarp to temporarily repair her trailer due to rain. Time past by and they did not finish the repairs, so she called their residence and informed them that they did not need to finish the job because she had hired someone else to fix the roof. She also told Bradley not to forget the monthly vehicle payment less the expenses for materials and labor. Mary denied the allegations that the work was in exchange for taking care of the ticket. She stated further that when she called their residence, she spoke with Bradley's sister and father, however she did not recall speaking to Patricia on that occasion. She also denied telling Robert that the ticket would reappear if Bradley did not finish the job. She stated that Bradley came to her residence, showed her a receipt for the tarp, and they discussed the job that he and his father had done as well as the vehicle payment. Mary adamantly denied discussing that the ticket would reappear during this meeting as well.

After a complete investigation, Investigator Michael Etress, of the Criminal Investigation Division of the Dothan Police Department, obtained an arrest warrant for Mary Turner based on probable cause for the crime of Extortion in the Second Degree on April 26, 2005. It is more likely than not that Mary Turner violated the following:

**MAJOR OFFENSES**
Personnel Rule, Regulation III, Sec. 3-43. (12) "Acceptance of gratuities for personal favors or personal gain as defined by the ethics laws of the State of Alabama.
**VIOLATION OF ALABAMA CRIMINAL CODE SECTION**
13A-8-15 Extortion in the Second Degree.

DOTHAN/Martin & Brackin 1432
Confidential Subject to Protective Order