<u>Attachment 2</u>

*As of this date, July 8, 2004, my concern regarding the state of affairs at the Magistrates' Office continues to deepen steadily. On or about June 8, 2004 I met -with Ms. Martin in my chambers and requested that she address the problems outlined in Attachment 1 -with all due haste. I have been sadly disappointed in her response, or rather, the lock thereof,  further, additional problems have Become apparent since the aforementioned missive was penned. I out line those problems below.*

- *i. It appears that Ms. Martin applies discipline and personnel rules in an arbitrary and capricious manner. One example occurred when the daughter of one of our magistrates (-who had ample accrued leave time) 'was diagnosed with a tumor - which required an additional Biopsy to determine the extent of surgery required to remove all of the cancerous growth. This magistrate advised Ms. Martin of the aforementioned facts and requested to Be allowed to take the day of the second Biopsy off from -work to attend to her daughter. The employee -was advised that she would have to return to work immediately upon her daughter leaving the surgical facility, and furthermore, that she would Be required to Bring a note from her daughter's surgeon advising the length of the procedure and at what time the employee left the facility. The employee, not knowing the extent of the surgical procedure needed until after the second Biopsy, advised Ms. Martin that, depending on the results of the procedure and her daughter's mental and physical state, she might not Be able to work on the day following the surgery, 'whereupon Ms. Martin told the employee that if she was not at work on that date, she would be written up. Ms. Martin has confirmed the majority of these allegations. My secretary (our payroll clerk) advised Ms. Martin that this was not acceptable according to Personnel Regulations and advised Ms. Martin of the location of the pertinent rules in our 'Employee Handbook. Last week another magistrate called in -with the news that her husband niece had Been diagnosed with toxic shock syndrome and would need to seek treatment for this*

**DOTHAN/Martin & Hratkin 1093**
**, Confidential Subject to Protective Order**

*malady in Birmingham, AJL. This magistrate (-who did not have accrued leave to cover this absence) -was granted four (4) days of leave By Ms. Martin to assist -with the care of the niece. This contradicted Personnel rules and 'Regulations •which require a department head to approve leave requests involving an employee - without accrued leave time and-which restrict use of sick (eave to the care of immediate family members. The disparity Between the treatment received By the first employee and that received By the second employee seems to make it alarmingly clear that different magistrates are treated very differently when it comes to leave time.*

2. *Ms. Martin's ability to interact successfully -with attorneys Both -within the City and those privately employed has not improved appreciably since my counseling session -with her. A. stand-out example of this involves an incident in -which a magistrate in the Courtroom took offense at a remark allegedly made By the City Prosecutor during a trial and called Ms. Martin to complain.  Ms. Martin took the magistrate's comments at face value and-without any further investigation "took the City Prosecutor to task" for her remark, resulting in a verbal altercation.  It should first Be noted that I -was present -when the problem arose and the "Prosecutor's remark -was not out of line, But even if it had Been, Ms. Martin should have addressed' this through me, not directly -with the Prosecutor.  Ms. Martins comments to the City Prosecutor -were unprofessional enough By themselves, But at one point Ms. Martin consistently refused to speak to this attorney in the Courtroom or else-where after this incident, creating an extremely tense atmosphere for ad-who -work -with the Court.*

3. *Ms. Martin took it upon herself to inform an employee -whose evaluation she reviewed at my request that she (Ms. Martin) did not appreciate having Been "forced' to change this evaluation and that it -would not happen again.  This -was something that the employee had no knowledge of and-which came as quite an unpleasant shock to her.  "Remarks like this do not contribute to pleasant -working environment for the employees of this department and are Both unprofessional*

*and counter-productive to the job performance that I expect from departmental employees and supervisors. following this incident Ms. Martin alleged to me that I had "threatened' her -with firing if she did not give the employee in Question a favorable evaluation, I vehemently deny this allegation and aver that I only exercised my authority as department head to ask Ms. Martin to review-w prior evaluations of the employee and review the evaluation.*

2
**DOTHAN/Martin & Brackin 1094**
**Confidential Subject to Protective Order**