## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **NANCY MARTIN and,** | ) | |
| **MARY BETH BRACKIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:05-CV-1172-MEF** |
| | ) | |
| **CITY OF DOTHAN and JUDGE** | ) | |
| **ROSE EVANS-GORDON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MEMORANDUM  IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF BRACKIN'S AFFIDAVIT

Generally, affidavits submitted in connection with a motion for summary judgment should be based upon the affiant's personal knowledge Fed.R.Civ.P. 56(e), *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986) and should  set forth such facts as would be admissible in evidence" Fed.R.Civ.P. 56(e),)[1].

Lay opinion evidence is permissible if it is (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and, (c) not based on

---

[1] However, the nonmoving party, , need not "produce evidence in a form that would be admissible at trial . . . to avoid summary judgment," Celotex,  supra at  324,  instead, their  evidence must be "reduc[ible] to admissible evidence," id. at 327.

scientific, technical, or other specialized knowledge. Fed. R. Evid.   701. See also *Hall v. United Insurance Co. of America,* 367 F.3d 1255, 1259 (11th Cir. 2004). Questions concern the weight to be given the affiant's testimony, are not matters for consideration by the court on summary judgment. This is for the fact-finder at trial. *City of Tuscaloosa v. Harcros Chemicals Inc*., 158 F.3d 548, 560 (11th Cir. /1998).

Finally, hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). *Harcros Chemicals Inc* supra at 557.  Opinion and reputation evidence of character is not hearsay provided; (1) the evidence is  offered  to show  truthfulness or untruthfulness, and (2) the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. Fed. R. Evid  **608.**

Defendants' first seek to strike those portions of paragraph 6 on Brackin's Affidavit insofar as this paragraph alleges Lavera propensity for making data entry errors while employed for the City Police Department prior to her employment with the Judicial Department. Defendants' additionally challenge Brackin's assertion that Lavera may have been disciplined for such errors.

Within the confines of paragraph 6 of Brackin's affidavit is the following additional statement "I know this for a fact**,** for when I worked as a secretary

for the City Police I had to input into the computer Lavera's arrest reports and noted a large amount of errors". This knowledge, which is based upon personal observations, can be a suitable basis for the statement which Defendants' seek to have stricken. Further, Brackin's affidavit was given after Plaintiffs' counsel was provided long sought after production, included among which was a disciplinary notice directed to Lavera's data entry errors while she was employed with the City Police Department. See Attachment "A"[2].

Even if considered hearsay, Brackin's comments satisfies the residual exception to the hearsay rule found at Federal Rule of Evidence 807 in that: "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence". As part of their disparate treatment case, the Plaintiffs' proffered that Lavera, had made, and had a proclivity for making, substantial errors in the processing of court documents. Defendants have been less than forthcoming in their response to acknowledging the existence of Lavera's processing errors.

Paragraph 78, of Plaintiffs' Second Amended Complaint, alleges, in part, that "Mrs. Martin brought to Defendant Gordon's attention on several

---

[2] This document satisfies the Federal Rule of Evidence 803 (6) exception to the hearsay rule.

occasions that Ms. McClain (Lavera) and Ms. Knight (Eunice) were making numerous computer errors on court cases causing the other Magistrates to spend hours correcting the same.  Defendant Gordon has never initiated any disciplinary or other adverse administrative action saying simply that "every one make mistakes". The Defendants, in their Answer, denied these allegations,  and did so without  qualification.

Additionally, in interrogatory responses, Defendants' denied knowledge of Lavera making entry errors associated with processing writs of arrest:

> **INTERROGATORY NO 7.**
>
> **Were you aware and/or were you made aware during any time between January 1, 2002 and the date that Mrs. Brackin was terminated by the City of Dothan that Magistrate McClain had entry errors associated with the processing of Writ of Arrest?**
>
> **RESPONSE:**
>
> **No. I was not aware of such errors.**
>
> **INTERROGATORY NO. 8**
>
> **If your response to interrogatory number 7, above is affirmative than detail all steps you took and identify all memos, notes and/or other written notification you gave to Ms. McClain to correct the problem.**
>
> **RESPONSE**
>
> **Not applicable.[3]**

---

[3] The same questions were asked and the same responses were given with respect to Ms. Knight.

Finally, Gordon, in her deposition, was less than equivocal in her

response to the same line of questioning:

```
19    Q. Well, okay.  Fine.
20       She also testified that she talked to you
21       about the numerous mistakes that Eunice and
22       Lavera makes, and I think she misspoke talking
23       about a hundred times more than.  But that was
0253
1        sort of a term of emphasis as opposed to a
2        term of fact.  But numerous times about the
3        errors that they made, and you indicated that
4        everybody makes mistakes.
5          MS. NELSON: Object to the form.
6    Q.  Did you ever have that conversation with her
7        about not wanting to hear about mistakes that
8        Eunice and Lavera makes because everybody
9        makes mistakes?
10   A.  I don't remember specifically.
11   Q.   Do you remember the discussion that she had
12       with you about she felt that Eunice and Lavera
13       were being insubordinate because she did a
14       memo telling them not to use a certain door
15       for security reasons and they continued to do
16       it; and she discussed this with you as
17       insubordinate and you thought it was silly and
18       not insubordinate.
19        Did you have that discussion with her
20       about the use of the wrong door?  Did you have
21       that discussion?
22   A.  I want to answer truthfully.  Yes, I had a
23       discussion with her about the door.  And I
0254
1        told her to write them up if they continued to
2        go out the door, but she also had to write all
3        the other magistrates up that were going out
4        the door.
5    Q. You didn't tell her that you thought --
6    A.  No.
7    Q.   -- this was silly?
8    A.  I -- I thought it was silly, but I supported
9        her in it.  No, I did not tell her that.
10   Q.  Well, you didn't tell her it was silly but you
11       thought it was silly?
12   A.  I supported her in her rule about not going
13       out the back door. disciplinary or other adverse
```

**Gordon's depo pp. 252-254[4].**

Given the uncertainty concerning what position Defendants' take on whether they knew whether Lavera was mistake prone, and whether such propensity was made known to them, Brackin's statement, even if tainted with hearsay elements, may be the best evidence available to Plaintiffs, who through due diligence attempted to discover the truth of the matter[5] Under the circumstances of this case, paragraph 6 should remain in its entirety.

Defendants also challenge parts of paragraphs 11 and 12 of Brackin's Affidavit. They challenge Brackin's statement that Lavera did not get any better with her propensity to make data errors. Defendants claim that Brackin does not provide any vantage point from which se can make such statements. However, in paragraph 16 of her Affidavit she provides the basis of her knowledge;

> **16.    I had multiple jobs, principally imputing information into the computer, processing trial paperwork, preparing trial dockets, processing appeals and reconciling refunded cash bond repayments. I also assisted with the processing of jail bond paperwork. I was responsible for the daily deposits, and worked the court room. It is through these vantage points that I was able to observe the numerous mistakes that Lavera and Eunice made (most usually the former). I frequently had to correct their errors in order to complete my paperwork.**

---

[4] Gordon's complete deposition has been provided to the Court as an exhibit to Plaintiffs' response to Defendants' Motion for Summary Judgment.
[5] Defendants did not provide any production which would have put light on this issue.

The mere fact that Brackin did not know everyone's job performance did not mean that she was not in a position to observe Lavera's and/or Eunice's error making. Indeed, Gordon's own testimony during her deposition provides a potential basis for Brackin's knowledge of Magistrate errors.

> 15 Q.  Well, what did she tell you -- what  did
> 16        Ms. Knight tell you that Mary -- I'm sorry.
> 17      What did Mary tell you that Ms. Knight had
> 18      done?
> 19  A.  Well, it wasn't just Ms. Knight.  Those were
> 20      the -- the reversals.  Mary Beth was the
> 21      cashier.  She did all the reversals.  And
> 22      every time she did a reversal, she would fill
> 23      out a form and -- on every magistrate and send
> 0305
> 1      it over.
> 2   Q.  So are you saying that Mary never told you
> 3            anything specific about Ms. Knight?
> 4   A.  She might have but also specific to other
> 5      magistrates.
> 6   Q.  I wasn't asking you about --
> 7   A.  Not in a vacuum.
> 8   Q.  I wasn't asking you about other magistrates.
> 9      I was just talking about Ms. Knight.
> 10  A.  Well, I -- I would still have to say -- if I
> 11    said, no, I might be lying because she told me
> 12      about everybody's reversals.
> 13 Q.  So you don't remember what she may have told
> 14      you -- you don't remember what she    may have
> 15    told you about Ms. Knight; is that correct?
> 16    MS. NELSON:    What was your question?

17   Q.  Well, what did she tell you, and you said she
18    tell you about everybody.
19   Do you remember anything specific that she
20  told you about Ms. Knight making data entry
21   errors on the computer?
22    A.  Not specifically, no.

**Gordon's depo pp.  304-305**

The fact that Gordon doesn't acknowledge that complaints were made, belie that any administrative action was taken. This being the case, Brackin's comment that  no administrative action was taken is premised upon facts implicitly  admitted by Gordon. There is no basis to strike these paragraphs.

Defendants' next challenge paragraphs 8 and 9 of Brackin's Affidavit on the basis of relevance. Paragraphs 8 and 9 are part of the *res gesta* intended  show the pattern and practice of Gordon's resort to  the Internal Affairs Division to investigate white employees engaged in ruled infraction. Specifically, as mentioned in Plaintiffs brief in opposition to Defendant's Motion for Summary Judgment,  If, as Gordon claims,  that the  Investigations were  a direct result of citizen complaints, why then did  Ricky Stokes' complaint not result in an investigation by Internal Affairs?

Unlike a jury, this Court can sort out the paragraph's relevance and give to them what weight it chooses. It is unlikely that Brackin's Affidavit will be submitted to the jury and if it is then any prejudicial or otherwise objectionable portions can be redacted. Paragraphs 8 and 9 should remain.

No such res *gesta* argument  can be made with respect to paragraph 4 of Brackin's Affidavit; therefore, Plaintiffs raise no challenge to Defendants' motion to have this paragraph stricken.

Defendants next challenges portions of paragraphs 7 and 20 of Brackin's Affidavit. Specifically questioned is Brackin statement concerning the friendship between Gordon, Lavera and Eunice, and their frequent luncheon dates together. Of course, since each of these individuals  worked in the same department, they could have been in a position to observe who went to lunch with each other. This is especially true when the Judicial Department, where the Magistrates were housed, and the building where Gordon maintained her office, were adjacent to each other. Additionally, counsel for the Plaintiffs, and their agent[6], has provided Brackin with the results of Eunice's deposition where she admits that Lavera, Gordon and herself lunched together, she wouldn't commit to  how frequently:

> Q.  Did you ever go to lunch with Judge Gordon?
> 15    A.   Sometimes.
> 16    Q.   Between February of 2005 and October -- wait a
> 17          minute.  Between February 2004 and October of
> 18          2004, how frequently do you think you went to
> 19          lunch with Judge Gordon?
> 20    A.   Do not recall.
> 21    Q.   Let's me ask you this:  Did you and Lavera
> 22          ever go to lunch with Judge Gordon, just the

---

[6] There is some authority that statements that Plaintiffs' counsel made to them based upon information that he has personal knowledge of  gained within the course of the litigation and shared with his principles are not hearsay.  A "statement by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," however, is deemed an admission by a party opponent and is excluded from the definition of hearsay. Fed.R.Evid. 801(d)(2)(D); *see* <u>Zaben v. Air Prods. & Chems., Inc.</u>, 129 F.3d 1453, 1456 (11th Cir.1997).

23      two of you alone with Judge Gordon?
0037
1   A.   That occasionally has happened.
2   Q.   So, occasionally, the three of you would go to
3        lunch together?
4   A.   That has happened.
5   Q.   And did y'all have discussions while you were
6        at lunch?
7   A.   Discussion?
8   Q.   Yeah, discussions.
9   A.   Clarify.
10  Q.   Did you talk about anything?
11  A.   We talk about the weather.  We talk about our
12       hair.  We talk about clothes, just regular
13       women conversation.
14  Q.   Did you ever talk about the office?
15  A.   We were at lunch.
16  Q.   Did you ever talk about the office?
17  A.   I do not recall.
18  Q.   You could have?
19  A.   I do not recall.
20  Q.   Do you recall not talking about the office?
21  A.   I do not recall the exact conversation.
22  Q.   Give me a ballpark guess.  How frequently do
23       you think that the three of you went to lunch
0038
1        together?
2   A.   Not frequently.
3   Q.   More than ten times?
4   A.   Not frequently.  I do not have a number.
5   Q.   Can you tell me that it's more than ten times?
6        MS. NELSON:  She's asked and answered.
7        MR. JAFFREE:  I'm asking her a specific
8           question.
9   A.   I do not have a number.
10  Q.   Can you tell me whether you think it's been
11       more than ten times?
12       MS. NELSON:  Asked and answered.
13       MR. JAFFREE:  It hasn't been answered.
14          It's been avoided.
15       MS. NELSON:  She says, she does not
16          remember.  And you are badgering.
17  A.   I don't know.
18  Q.   Well, do you realize the difficulty in this
19       line of inquiry when you won't give me some
20       idea of how frequently the three of you went
21       to lunch together?
22       MS. NELSON:  She's answered your question.
23  Q.   Do you understand my question now, the

```
0039
1      difficulty?
2   A.  It's not difficult.
3   Q.  It's not?
4   A.  I answered your question by saying, I do not
5       know.
6   Q.  Do you understand that I'm trying to narrow
7       the range so that we could get some idea?
8        MS. NELSON:  You're trying to get her to
9           testify to something that she does not
10          remember.
11  Q.  I'm trying to get you to come up with a
12      range.  Do you understand that?
13       MS. NELSON:  And I'd ask her not to guess
14          if she does not know.
15  A.  I'm not going to guess.
```

**Knight's depo  pp. 36-39[7]**

It is not a stretch to infer that if Gordon and the two black Magistrates go to lunch together, to the exclusion of all other employees, that they are friends. These two paragraphs also should remain intact.

Defendants' challenge to paragraph 13 of the affidavit is without merit. Brackin's statement about Lt. Cliff Jarrett and Capt Bivens are not being offered for the truth of the matter asserted, only as background for an investigation requested by Gordon. What Gordon, a party to this action, stated to Brackin after she was provided the results of the investigation is not hearsay but either an admission by a party, or alternatively, a statement against interest both of which are exceptions  to hearsay.  See Federal Rules of Evidence 804 (3).

---

[7] Eunice's complete deposition has been provided to the Court as an exhibit to Plaintiffs' response to Defendants' Motion for Summary Judgment.

Defendants challenge paragraph 18 of Brackin's complaint alleging that black Magistrates gets a pass. Defendants claim that this statement is speculation. However, is based upon Brackin's bringing performance based complaints, concerning these two black magistrates, Lavera and Eunice, to Gordon's attention, and the response that she( Brackin) received from Gordon. Brackin's comments regarding Martin was not offered in support of the truth of the matter asserted. She only spoke to Martin, as her immediate supervisor, to confirm whether she should delete a record. Any difference in her deposition testimony is semantics and not intended to change testimony. Both statements confirm that Gordon desired information, which presumably could have been used as evidence in a disciplinary action, to be deleted. There is no allegation that Gordon had a nefarious intent.

Defendants next challenge paragraph 21 concerning Mr. Fondren's statement to her. These statements provide background explaining the circumstances surrounding how Fondren came to Brackin's attention. This also is part of the *res gesta and* as such is not offered as proof of the matter asserted relating to a critical issue. The critical issue in this litigation is what Brackin said to Fondren, not what Fondren said to Brackin.

Defendants challenge statements in paragraph 22 concerning what Brackin learned after the litigation was filed concerning statements made by Lavera and Eunice. Again, this is background and not hearsay because it is

not offered as proof of an issue. Even if is, it is a statement against Brackin's interest and therefore a Rule 804 (2) exception.

Defendants take issue with paragraph 27 because Brackin claims that Gordon was aware of the friendship between her and Turner. Defendants question how Brackin would have knowledge of what Gordon knew with respect to their friendship. However, by Gordon's own admission, she was aware of such friendship.

> 6      And your client, Mary Beth Brackin, said,
> 7      why are you looking at me?
> 8      I said, because I know that you and she
> 9      are friends, and if you want to contact her,
> 10     let me know.  I told Mary Beth that in front
> 11     of every magistrate.  And every one of them
> 12     will tell you that I told her that because she
> 13     was the only one that spoke out and said, why
> 14     are you looking at me.
> 15      I said, because I know you and Mary are
> 16     friends.  And if you want to contact her, let
> 17     me know.

**Gordon's depo p. 335**

Plaintiffs have no response to Defendants challenge to paragraph 29 of Brackin's affidavit to the extent that it refers of officers' behavior with respect to traffic tickets and other magistrates' behavior with respect to these same tickets.

With respect to Defendants' challenge to paragraph 31, Brackin is competent to state whether, in her opinion she was compliant with Gordon's

do not contact directive. She does not claim in her Complaint that she was being intentionally disobedient when she made contact with Turner. To this extent her statement complies with Federal Rules of Evidence 701 in that they are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Finally, Defendants' challenge Brackin's statement in paragraph 32 that she and Turner shared intimate details of their lives. Of course Brackin was aware of her feelings and whether the details given were of an intimate nature. How else would Brackin ever establish the nature of her relationship with Turner which is a critical element in free association employment litigation?

Respectfully submitted, this 17th day of December 2007..

s/Ishmael Jaffree_____
ISHMAEL JAFFREE ( IXJ 1791)
800 Downtowner Blvd. Ste 106 B
Mobile Alabama 36609
251-694-9090 ishjaff@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 17th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Theodore P. Bell
Carol Sue Nelson
Audrey Dupont
Maynard Cooper & Gale
1901 Sixth Avenue North
Birmingham Alabama 35203-2618

<u>/s/Ishmael Jaffree</u>
Ishmael Jaffree