# EX. "A"   Dothan Police Department

## M E M O R A N D U M



**FROM:** Sergeant I. Keith Gray.

**TO :** Chief John R. Powell

**DATE:** April 27, 2005

**SUBJECT :** JUDICIAL COURT DEPARTMENT INVESTIGATION

UNAUTHORIZED RELEASE OF INFORMATION

This is to inform you of the results of the Internal Affairs Investigation which began on March 17, 2005 that involves employees of the City of Dothan Judicial Court Department.

The City of Dothan Municipal Court Judge, Rose Evans-Gordon met with Captain Steve Parrish on March 3, 2005 in reference to possible misconduct involving one of her staff members Mary Turner. Judge Gordon placed Turner on administrative leave, and held a meeting with all of her staff, for the exception of Turner and Ms. Tonya Minnifield on March 10,2005. The employees were advised by Judge Gordon that Turner was on administrative leave, and that an internal affairs investigation was being conducted by the Dothan Police Department. All employees were directed to, *"Strictly refrain from **any** contact with Ms. Turner while the internal investigation by the Dothan Police Department was underway. "* She also directed them not to enter Turner's office nor access any computes for her. Further, employees were also instructed that, *"No discussion with anyone regarding this matter was to take place,"* and the employees *of my department were to respond truthfully to any questions put to them by the investigating qfficer(s) "*. Judge Gordon had documents removed from Turner's office which were time sensitive and had them reassigned. She also instructed employees to make contact with her (Judge Gordon) if anything arose regarding Turner's normal duties and she (Judge Gordon) would see that it was handled.

On or about March 16, 2005 it was discovered that details of the investigation surrounding the Judicial Court Department had been compromised. Website http://www.rickystokesnews.com contained information regarding details of the investigation. I informed Captain Parrish, who in turn informed Chief John Powell of the story on the website. I was directed to launch an independent investigation solely to identify who may have released any information regarding the investigation of the Judicial Department.

On March 17, 2005 Judge Gordon and I met with the employees of the Judicial Department for the exception of Mary Turner and Michelle Bryan. Judge Gordon passed out a document entitled, "ETHICS, Employees Can Be Fired For Lying," and explained to them that I would be conducting an independent investigation into the release of information. I explained the document as well as the possibility of the polygraph instrument being used within this investigation. Immediately after this meeting I began to

DOTHAN/Martin & Brackin 1303
Confidential Subject to Protective Order

interview the employees All employees signed a copy of the Garrity Notice prior to their interviews and answered my questions When I asked them if they had spoken to anyone since the meeting with Judge Gordon they said yes, for the exception of Mintiifieid, and Ms. Lavera McClain. Most employees stated that they had told their spouse, and/or a close relative that there was an investigation involving their department, however, they did not know what it was about. Minnifield was absent during the employee meeting and was never directed by Judge Gordon not to discuss it, nor was she told about the meeting When Minnifield came to the office she asked Ms. McClain where everybody was Due to Minnifield's absence during the meeting, Ms. McClain advised her that Turner was on administrative leave and that per Judge Gordon's directions, she was not to discuss the matter with anyone

**Statement of Tonya Minnifield on March 18, 2005**
Ms. Minnifield stated that on March 15, 2005 she was working at the front window inside of the magistrate's office and bondsman Tim Dickerson, employee of Advantage Bonding Company, approached her and asked her where Turner was. She advised him that Turner was off. He then asked for Ms. Sarah Fowler Minnifield called Fowler to the window and Dickerson asked her where Turner was. Fowler stated that she was not at liberty to say. They spoke briefly and both of them parted ways. Shortly thereafter, Minnifield had to leave the office briefly, and when she exited the front door of the building she saw Fowler and Dickerson having a conversation at the back door. Minnifield did not hear what they were saying, but stated that Melanie Walsh was outside in the parking lot at her car smoking while Fowler and Dickerson were talking.

**Statement of Melanie Walsh on March 17, 2005**
Ms. Walsh stated, she did see Fowler standing at the back door talking with Mr. Dickerson, however, she did not hear the conversation.

**Statement of Valarie Savage on March 18, 2005**
Ms. Savage stated that a co-worker told her that Fowler had just entered the building after being out in the parking lot talking to Dickerson. Savage asked what the subject of their conversation was, and the co-worker did not know Savage then called Dickerson on the phone and jokingly said, *"You know I'm appalled that you come up her and you don't speak to us whenever you come to the office."* and he said, *"Oh, I was just speaking to Ms. Sarah."* Savage replied, *"That[1]* fine I was just picking on you."* Dickerson replied," *We were discussing Mary Turner."* She replied, *"Well that's not something that we need to be talking about, and I appreciate it"* The phone conversation ended

**Statement of Sarah Fowler March** 17, **2005**
Ms. Fowler stated that during a meeting, Judge Gordon informed employees of an investigation regarding Turner, and directed them not to have contact or see her, not to enter into her office, not to access any cases that Turner was working on, and not to call her and ask her any questions. She added that Dickerson asked her where Turner was, and she told him that she was not there. He then asked why she was not there and Fowler replied that she could not discuss it. Dickerson then said to her that Turner is usually up front at the window He left after approximately 15 minutes. Fowler stated that she had a feeling that Dickerson was asking the whereabouts of Turner for a specific reason. When I asked her if she had talked with him outside after their initial conversation she said no. Later I asked her again if she had another conversation outside and she said yes. Ft was clear to me that Fowler was not being forthcoming with her answers, and contradicted herself.

DOTHAN/Martin & Brackin
1304
Confidential Subject to
Protective
Order

**Statement of Mary E. Brackin March, 17, 2005**
Ms Brackin (Marybeth) stated, that she was made aware of an investigation regarding Turner whenever Judge Gordon had a meeting with the judicial employees on March 10, 2005 Ms Brackin said that the employees were directed **not to talk with Ms. Turner,** not to make any comment about the investigation, not to enter Turner's office, not to print anything on the computer, nor speak to anyone about the investigation When I asked her if she had talked with Turner about anything since the employee meeting she stated that she (Brackin) was given an assignment that Turner usually handled regarding a "Show Cause" letter. She (Brackin) contacted Turner and asked her, how to get the setup on the "Show Cause" letter. Turner explained to her the procedure that Betty King had done in the past. It is known within the magistrate's office that Turner and Brackin are close friends.

**Statement of Michelle Sellers April,** 28, 2005
Ms. Sellers is Judge Gordon's Administrative Assistant/Acting Court Clerk and was present during the meeting as well. She stated that after the employee meeting was finished, Brackin advised Sellers that she (Brackin) needed to get some information off of Turner's computer which was a "Show Cause" letter. Sellers told Brackin to obtain a copy of the letter from another file and use it as a guideline Brackin told Sellers that she did not have time for that, so Sellers volunteered to obtain a copy of the letter for her. Sellers in turn, directed Ann Baxter to obtain a copy of the "Show Cause" letter for her. Baxter sent Sellers the letter, and Sellers called Brackin and directed her to receive the copy from the fax machine Sellers stated that there was no reason for Brackin to have contacted Ms. Tuner for this information.

**Statement of Mary Turner on April 26, 2005**
Ms. Turner stated that prior to her birthday, she has had, "a couple" of conversations with Ms. Brackin since being placed on administrative leave. When asked if the subject of their conversations were work related, she said no. This contradicts Ms Brackin's above statement.

There was nothing significant to report from the other employees that were interviewed, however, their statements will be made a part of this report. Since Brackin admitted to speaking with Turner after being directed not to by Judge Gordon, I polled <u>all other employees</u> and asked them a hypothetical question. This was done to ensure that Judge Gordon's directives were clear to all employees. I asked them, *"Hypothetically speaking, taking into account the directives that Judge Gordon gave during the employee meeting. If you had a question that <u>only</u> Mary Turner could answer that was work-related. Would you contact her and ask her advice? "* All employees responded, "NO". Fowler added that if she herself absolutely had to speak with Turner, she would have asked Judge Gordon's permission first.

After a complete investigation, it is unknown who released information regarding the Turner investigation. However, during the course of this investigation it was discovered Mary Elizabeth Brackin has violated the following:

**<u>MAJOR OFFENSES</u>**
<u>Personnel Rule. Regulation III, Sec 3-42 (14)</u> "Insubordination."

Mary Elizabeth Brackin admittedly disobeyed a directive from her Department Head, Judge Rose Evans-Gordon, which was given on March 10, 2005, to refrain from any contact with Mary Turner during the ongoing Police Department investigation of Ms Turner.

**DOTHAN/Martin & Brackin 1305**
**Confidential Subject to Protective Order**