IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NANCY MARTIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 1:05-cv-1172-MEF |
| | ) | |
| CITY OF DOTHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER ON PRETRIAL HEARING**

COME NOW the Plaintiffs and the Defendants and jointly submit this proposed Pretrial Order. There is currently pending before the Court Defendants' Motion for Summary Judgment on all of the Plaintiffs' claims and Plaintiff Brackin's Motion for Partial Summary Judgment. The Motions could result in some or all claims being dismissed. In the event of such dismissals, it may be necessary to revise this proposed Order.

A pretrial hearing was held in this case on February 14, 2008, wherein the following proceedings were held and actions taken.

**1. PARTIES AND TRIAL COUNSEL:**

For the Plaintiffs Nancy Martin and Mary Beth Brackin:

   Ishmael Jaffree, Esq.
   800 Downtowner Blvd., Suite 106 B
   Mobile, Alabama

For the Defendants City of Dothan and Judge Rose Evans-Gordon:

Carol Sue Nelson, Esq.
Chris Mitchell, Esq.
Maynard, Cooper & Gale, PC
1901 6th Avenue North, Suite 2400
Birmingham, Alabama 35203

F. Lenton White, Esq.
City Attorney's Office
City of Dothan
P. O. Box 2128
Dothan, Alabama 36302

Counsel Appearing at Pretrial Hearing:

For the Plaintiffs:        Ishmael Jaffree, Esq.
                           800 Downtowner Blvd., Suite 106 B
                           Mobile, Alabama

For the Defendants:  Carol Sue Nelson, Esq.
                           Audrey Dupont, Esq.
                           Maynard, Cooper & Gale, PC
                           1901 6th Avenue North, Suite 2400
                           Birmingham, AL 35203

                           F. Lenton White, Esq.
                           City Attorney's Office
                           City of Dothan
                           P. O. Box 2128
                           Dothan, Alabama 36302

**2. JURISDICTION AND VENUE:**

This is a civil action authorized and instituted under 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 1988, 28 U.S.C. § 1651, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and under Alabama law. This Court has supplemental jurisdiction over Plaintiffs' state claims. Jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a) and the First and

Fourteenth Amendments to the United States Constitution. Jurisdiction is also present under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b). Personal jurisdiction and venue are not contested.

### 3. PLEADINGS:

The following pleadings were allowed: Plaintiffs' Complaint; Defendants' Motion to Dismiss; Plaintiffs' Amended Complaint; Defendants' Motion to Dismiss; Plaintiffs' Second Amended Complaint; and Defendants' Answer.

### 4. CONTENTIONS OF THE PARTIES:

A.    PLAINTIFFS' CONTENTIONS:

**1. Brackin's Contentions:**

(a.) Without any given authority to do so, Defendant Gordon implemented a pattern and practice of using the Internal Affairs Division of the Dothan City Police to interrogate Brackin for alleged personnel rule infractions and using their findings as the sole articulated basis for her (Gordon's) decision to discipline Brackin.

(b) Defendant Gordon did not employ the Internal Affairs Division of the Dothan City Police to interrogate alleged personnel rule infractions committed by black Magistrates.

(c)    The City's Personnel Rules and Regulations permit, in limited circumstances (none applicable here) Internal Affairs investigations of employees stationed in City departments other than the City police but only upon the approval of the City Manager. There is no evidence that Defendant Gordon, and/or the Internal Affairs Division of the City Police Department requested or received the formal (or informal) approval of the City Manager to conduct any of the investigations that this department conducted with respect to Mrs. Brackin.

(d)    As a direct or proximate result of the Internal Affairs investigation conducted by the City Police and Brackin accepting their rule violation determination, Mrs. Brackin was suspended from her employment and upon her return was placed on two (2) years administrative probation.

(e)  As a direct or proximate result of the Internal Affairs investigation conducted by the City Police and Brackin accepting their rule violation determination, Mrs. Brackin was terminated from her employment with the City.

(f)  Defendant Gordon permitted an Internal Affairs investigation of Mrs. Brackin for allegedly informing a citizen that he had been wrongfully arrested, that the Magistrate who caused his wrongful arrest was negligent, and that he could seek recourse to recover any loss that he suffered by filing a claim with the City Clerk.

(g) As a direct or proximate result Defendant Gordon's belief that Brackin had provided to a citizen the information referenced in sub-paragraph (f.) above Mrs. Brackin was suspended for ten (10) days and placed on two year probation. The suspension was violative of free speech rights protected by the First and Fourteenth Amendments to the United States Constitution for which 42 U.S.C. 1983 provides a remedy.

(h)  Yet again Defendant Gordon permitted an Internal Affairs investigation to insure first that no staff member make contact with a suspended Magistrate and then to determine if someone disclosed to a local web cite the fact that the suspended Magistrate was under investigation by the City's Internal Affairs Division. As a result of these investigations it was discovered that Mrs. Brackin had contacted the suspended Magistrate and had written "Void" on a traffic ticket transmittal slip almost two years prior. This internal affairs investigation reveled that one black Magistrate had also written "void" on a transmittal slip more recently. Also reveled was yet another black magistrate, contrary to Defendant Gordon's directive had discussed with a third party the facts concerning the suspended employee's internal affairs investigation. However, only Brackin was disciplined (fired) for the negligent "void" and contacting the suspended magistrate in violation of Gordon's directive.

(i)  As a direct or proximate result Defendant Gordon's initiating or otherwise permitting the Internal Affairs investigation referenced in sub-paragraph (h.) above, Mrs. Brackin was summarily terminated from her position. This termination premised upon Brackin's insubordinate violation of Gordon's overbroad "no contact" directive was a sweeping prior restraint of speech and association in violation of rights protected by the First and Fourteenth Amendments of the United States for which 42 U.S.C. § 1983 provides a remedy.

(j) The coercive police interrogations referenced in the above paragraphs violated the City's published Personnel Rules and Regulations divining when such investigations may be instituted and which were conducted as a chill to Mrs. Brackin's free speech and free association rights and therefore implicated the substantive and procedure due process clause of the Fourteenth Amendment to the United States Constitution and for the resulting loss of pay and employment 42 U.S.C. § 1983 provides a remedy.

(k) It is the City's position that the internal affairs investigation initiated or permitted by Defendant Gordon was a result of a third party complaint. However, when a third party (Rickey Stokes) complained about a black Magistrate's response to a citizen's inquiry no investigation was initiated. Further the discovery of Brackin's "void" written on a ticket transmittal document warranted another internal affairs investigation yet the discovery of a black magistrate's "void" on a ticket transmittal document did not warrant an investigation. Additionally, Brackin was terminated for insubordination for not following a no contact directive yet a black magistrate was not disciplined at all for not following the "do not discuss the investigation" issued in the same directive. Indeed Defendant Brackin had a policy and practice of not disciplining black Magistrates or permitting others to discipline them regardless of what personnel rules and policies they have breeched. This disparate treatment between the way white and black Magistrates are disciplined is violative of 42 U.S.C. § 1981 for which 42 U.S.C. § 1983 provides a remedy and violative Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e.

(l) Brackin's suspension and termination was in retaliation of her exercise of free speech and/or free association, rights protected by the First and Fourteenth Amendment to the United States Constitution the breech of which 42 U.S.C. § 1983 provides a remedy.

(m) The closed room unwelcome police interrogations under the implied threat of force constituted false imprisonment under state law for which a remedy will lie.

2. **Martin's Contentions:**

(a) When Nancy Martin was hired to be the Administrator of the Magistrates Office of the Judicial Department for the City of Dothan it was with the

understanding that she would be hands on administrator and would be free to make those administrative and personnel decisions which she thought best for the office and the City.

(b) Beginning during Martin's initial interview for the position of Administrator and continuing afterwards she was instructed by Defendant Gordon that there were certain Magistrates (which she later learned were all white) that she had to watch out for and be prepared to discipline. Indeed, shortly after the onset of her employment, Martin was given by Defendant Gordon the names of two Magistrates, Mary Brackin and Ann Baxter, which she was to administer discipline even thought the acts for which they were to be disciplined occurred much prior to Martin's employment.

(c) Notwithstanding the promise of administrative discretion in the running of her office Defendant Gordon interceded in insuring that a newly hired black Magistrate received a more suitable office even though a more senior white Magistrate was left without an office.

(d) Within a few months after her hire Martin was instructed by Defendant Gordon to perform the evaluations of at least two Magistrates, one black, the other white. Defendant Gordon did not intercede in Martin's evaluation of the white magistrate but insisted that Martin do over her evaluation of the black Magistrate. When Martin expressed reluctance to changes her evaluative comments and ratings she was threaten by Defendant Gordon with job loss unless the evaluation was made more favorable. Martin redid the evaluation to give the Magistrate a more favorable rating.

(e) Prior to the above exchange concerning the do-over evaluation, Martin own evaluation was done on the regular three month schedule. However, subsequent to the exchange Martin received no subsequent evaluation prior to her discharge.

(f) Thought Martin was encouraged and mandated by Defendant Gordon to discipline white Magistrates she was not permitted by her to discipline black Magistrates regardless of the rule infraction or insubordinate conduct. Martin was instructed by Defendant Gordon that if she proceeded with discipline of the black Magistrates she might be subject to a charge of race discrimination. Indeed when Martin did attempt to change certain black Magistrates' job assignment she was accused of racial discrimination and discharged shortly thereafter.

(g)  In view of the above referenced contentions she was discharged because she would not demonstrate partiality towards the black Magistrates but insisted in treating black Magistrates impartially. This discharge premised upon Martin's refusal to engage in preferential treatment towards black employees violated her rights to be free form discrimination protected by 42 U.S.C. § 1981 for which 42 U.S.C. § 1983 provides a remedy and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e.

(h) During one of Martin's discussions with Defendant Gordon concerning the disparate and more favorable treatment she (Gordon) showed to black Magistrates Gordon responded that any complaint to the City would be unavailing because she was both black and a woman and that the City would not take any action against her.

(i)  By Defendant Gordon's own admission she had notice of Martin's claims that she showed racial favoritism with respect to discipline and office assignment toward the black Magistrates. After such notice Martin was discharged for changing the office assignments of two black Magistrates and they charged her with discrimination.  By protesting that which was made unlawful by the Title VII of the Civil Rights Act of 1964, (discrimination in employment) Martin suffered retaliation for which both the Act and 42 U.S.C. § 1983 provides a remedy.

(j) By the City's own admissions, Sec. 2-80 of the City's Personnel Rules and Regulations states that, "Employees who prove unsatisfactory during the working test period may be removed from the position by the Appointing Authority at any time during this period, subject to the approval of the Personnel Director; however, inadequate job progress and/or deficiencies must be pointed out to the employee and the employee must be given the opportunity to improve and/or correct the inadequacies and/or deficiencies before being removed from the position."  No inadequacies were pointed out to Martin prior to her termination. Further the regulation provide for regular evaluations (in Martin's case, every three months).

(k) The City's failure to abide by its own regulations as referenced in paragraph (h.) above prior to the discharge of Martin was negligence per se. Again, as the City has discussed in its brief in support of its summary judgment motion: "Martin has brought this count (Count Sixteen) against both Judge Gordon and the City. She alleges that Judge Gordon owed her "a duty to point out her deficiencies and provide her a reasonable opportunity to cure those

deficiencies" pursuant to Sec. 280 of the City's Personnel Rules and Regulations. In other words, Martin is alleging negligence per se. "This Court has stated that four elements are required for violation of a statute [or regulation] to constitute negligence per se: (1) The statute must have been enacted to protect a class of persons, of which the plaintiff is a member; (2) the injury must be of the type contemplated by the statute; (3) the defendant must have violated the statute; and (4) the defendant's statutory violation must have proximately caused the injury." *Parker Bldg. Services Co., Inc. v. Lightsey ex rel. Lightsey,* 925 So.2d 927, 931 (Ala. 2005)(citing *Fox v. Bartholf,* 374 So.2d 294, 295 (Ala.1979)). Martin satisfies each to the conditions and therefore has satisfied Alabama's tort of negligence.

    3.    All acts complained in their pleadings and proof was done under the color of State authority.

If they are successful on their claims, or a portion of them, then they should be entitled to attorney fees.

B.    DEFENDANTS' CONTENTIONS:

Defendants contend they are entitled to summary judgment in their favor on all claims. Defendants further contend they are entitled to attorney's fees. To the extent any claims remain, Defendants contend that Plaintiffs' claims are due to be severed and that separate trials be held, one for Brackin and one for Martin. Without such severance, Defendants will be prejudiced.

Defendants further restate and incorporate all arguments made in their briefs and submissions on the Motions for Summary Judgment herein and all of their Defenses raised in their Answer to the Second Amended Complaint, including but not limited to:

    1.    Plaintiffs have failed to state a claim for which relief can be granted.

    2.    Plaintiffs' claims are barred by estoppel, *res judicata*, collateral estoppel, unclean hands and law of the case.

    3.    Plaintiffs' claims are barred by the statute of limitations.

    4.    Plaintiffs' claims are barred by absolute, sovereign, state agency immunity and substantive immunity.

5. Plaintiffs' claims are barred by qualified immunity, judicial immunity and/or quasi-judicial immunity.

6. Plaintiffs' claims are barred by good faith.

7. Plaintiffs' claims are barred by Ala. Code §§ 11-47-190 and 11-93-2.

8. Plaintiffs have no protectable proprietary property or liberty interest protected by the Constitution.

9. Plaintiffs were at-will employees.

10. Defendant Gordon is not subject to suit under Title VII.

11. Defendant Gordon is entitled to qualified immunity on all claims against her. As Department Head of the Judicial Department, she was acting within her discretionary authority regarding all actions which Plaintiffs challenge.

12. Plaintiffs' claims are barred to the extent they are based on the doctrine of *respondeat superior*, including all claims brought under 42 U.S.C. §§ 1981 and 1983 against the City. No acts complained of were in furtherance of any official policy or custom of the City.

13. Plaintiffs' claims are barred to the extent they exceed the scope of their underlying EEOC Charges.

14. Plaintiffs' claims are barred to the extent they failed to exhaust their administrative prerequisites or conditions precedent.

15. Plaintiffs engaged in contributory negligence.

16. Plaintiffs are not entitled to any damages, including punitive damages under 42 U.S.C. § 2000(e), *et seq.*; 42 U.S.C. § 1981a(b); § 1981; § 1983; the First or Fourteenth Amendments; or any state, federal or common law claim.

17. Plaintiffs have failed to mitigate their damages.

18. Punitive damages are violative of federal law, the U.S. Constitution and the Constitution of Alabama.

19. No policy or custom proximately violated any alleged constitutional right and no policy or custom was the moving force behind any alleged constitutional violation.

20. Defendants were not deliberately indifferent to Plaintiffs' constitutional rights.

21. Plaintiff Martin's claims are barred by lack of consideration.

22. Plaintiffs' claims are barred by the Dothan Civil Service Act.

23. Plaintiffs cannot establish a *prima facie* case for any of their claims.

24. Neither race nor any alleged complaints of discrimination or alleged exercise of constitutional rights were factors in any of Defendants' decisions regarding Plaintiffs.

25. All actions taken by Defendants towards Plaintiffs were based on legitimate, non-discriminatory, non-retaliatory reasons which were not pretextual.

26. All actions taken by Defendants were for good cause and made in good faith based on factors other than race or retaliation.

27. Defendants made all decisions herein based on business justifications.

28. Defendants did not engage in force or threat of force, express or implied.

29. To avoid waiver, Defendants would have made the same decisions regardless of Plaintiffs' race or alleged complaints of discrimination or alleged exercise of constitutional rights.

30. No directive or request by Defendants was overly broad, constituted a prior restraint on Plaintiffs' constitutional rights, or violated any of their constitutional rights.

31. Plaintiffs did not engage in protected speech or association.

32. The Internal Affairs investigations herein were not initiated by Defendant Gordon and did not invade upon any fundamental right and did not violate Brackin's substantive or procedural due process.

33. Defendants did not engage in negligence or negligence *per se.* Defendants complied with all Personnel Rules and Regulations.

<u>Defendants' Response to Brackin's Contentions</u>:

1.  Defendants deny each and every contention by Brackin set forth above.

2.  Defendant Gordon recommended Brackin for selection as a Magistrate in 2001 over a black applicant, Eunice Knight.

3.  Brackin had a history of performance issues at the City of Dothan in how she interacted with people and the public.

4.  Based on a claim against the City by a citizen (Mr. Fondren) who claimed he had been falsely arrested, the City Attorney's office in early 2004 requested the Internal Affairs Department of the Police Department to investigate the claim.

5.  Based on this investigation, it was learned that Brackin had told Fondren that he had been falsely arrested and the City would be liable. In doing so, Brackin commented on liability to the citizen in direct contravention to a request by the City Manager not to comment on the possibility of liability against the City. In April 2004, Brackin was suspended for 10 days for committing a Major Offense in violation of the Personnel Rules, *i.e.,* insubordination (Section 3-42(14)) and actions that could cause undue financial loss to the City and negligence in carrying out assigned tasks or duties or responsibilities of one's position. (Section 3-42(6)). Brackin did not appeal this suspension. This directive was not overly broad and was not a prior restraint of speech. Brackin's suspension was not a violation of Brackin's free speech.

6.  Mr. Fondren was not falsely or wrongfully arrested.

7.  In 2005, in conjunction with ticket fixing allegations involving the Magistrate's office and citizens Bradley and Stephen Phelps, Internal Affairs conducted a series of investigations. Magistrate Mary Turner was implicated and suspended. She was later terminated and indicted. Many Magistrates were interviewed as a part of these investigations.

8.  Judge Gordon learned of this ticket fixing allegation when Bradley Phelps and his lawyer appeared in Municipal Court and brought it to the Judge's attention. Judge Gordon consulted with the City Attorney's office; the Acting Police Chief and the Personnel Director.

9.  While Ms. Turner was being investigated (an investigation which involved possible criminal misconduct), the investigators asked Judge Gordon to notify her staff that

they did not want anyone in the Magistrate's office contacting or colluding with Ms. Turner while the investigation was pending. This directive was not overly broad and was not a prior restraint on Brackin's constitutional rights, and was not a violation of Brackin's free speech and free association. During the course of the investigation, it was learned that Brackin had violated the directive by calling Mary Turner. As a result, she violated Personnel Rule 3-42(14) Insubordination. She received Notice of this Disciplinary Action on April 29, 2005.

10.     It was also learned during the investigation that Brackin had stricken through and voided an entry of a traffic ticket to Stephen Phelps on a Uniform Traffic Citation "UTC" form which she had signed. The UTC form lists all tickets turned in to the Magistrate and sworn to by an officer. The Magistrate signs the form at the bottom certifying that the tickets reflected on the form had been sworn to. By striking through the entry and hand writing "void" over it, Brackin violated state law. Her conduct also constituted a Major Offense, "negligence in carrying out assigned tasks or duties or responsibilities of one's position" in violation of Personnel Rule Section 3-42(6). She received Notice of this Disciplinary Action on April 29, 2005.

11.     No other Magistrate engaged in similar conduct of striking through and voiding a ticket entry of a ticket that had been sworn to by a Police Officer. No other Magistrate called Mary Turner in violation of the directive.

12.     The questioning of Brackin during the Internal Affairs investigations did not constitute false imprisonment. The investigations and questioning were not coercive and Brackin cannot show any threat of force.

13.     Because Brackin had committed two Major Offenses within a 24-month period (one in April 2004 and one in April 2005), she was recommended for dismissal and her employment was terminated in accordance with the Personnel Rules and Regulations.

14.     Brackin was provided with procedural due process. Brackin had no property interest in her job or her employment. Moreover, Brackin had the right to grieve her complaints to the State's Circuit Court, which she did. Brackin cannot establish a violation of a fundamental right which is required for a substantive due process claim.

15.     Following her termination, Brackin appealed her termination to the Dothan Personnel Board, which upheld her termination. The Circuit Court of Houston County reversed this ruling, but the Alabama Court of Civil Appeals determined that Brackin had been insubordinate and negligent in failing to account for the ticket.

16. Because Brackin had committed two Major Offenses within a 24-month period, the Personnel Board upheld the termination.

17. No similarly situated black employee engaged in conduct similar to that of Brackin.

18. No similarly situated black employee engaged in conduct warranting an investigation by Internal Affairs.

19. Brackin was replaced by a white employee, Melanie Walsh.

20. Brackin did not engage in protected speech and Defendants did not violate her right of free speech or her freedom of association. Brackin's relationship with Mary Turner is not a constitutionally protected relationship.

21. The investigations by Internal Affairs did not violate Brackin's rights of free speech and association and did not violate her substantive or procedural due process.

22. Brackin was not retaliated against based on her allegations of free speech and association.

23. Brackin was terminated from her employment for legitimate, non-discriminatory, non-retaliatory reasons which were not pretextual.

24. Following her termination, Brackin filed an EEOC Charge alleging race discrimination. A right-to-sue letter was issued at Brackin's request before a decision was made as to the merits of her Charge.

Defendants' Response to Martin's Contentions:

1. Defendants deny each and every contention by Martin set forth above.

2. Nancy Martin was hired as Municipal Court Administrator by the City of Dothan in January 2004 on the recommendation of Judge Rose Evans-Gordon. Martin's employment actually began on February 16, 2004

3. Martin was selected over two African-American candidates.

4. By statute, Martin was hired subject to a twelve-month probationary period.

5. It soon became apparent that Martin was deficient in her duties. She displayed an inability to establish and maintain a working relationship with the Judge, City Prosecutors, public defenders, other attorneys in the City, City employees and officials and the public.

6. Martin was unable to interact with and engaged in verbal altercations with the City Prosecutor, Ashton Ott (white).

7. Lawyers practicing in Dothan's Municipal Court complained about Nancy Martin.

8. Magistrates, both black and white, complained about Martin.

9. Complaints about Nancy Martin were made by the Dothan Police Department.

10. Black Magistrates felt that Martin was being racially discriminatory toward them.

11. Martin applied rules disparately in favor of white Magistrates.

12. Martin unfairly and critically evaluated a black Magistrate, LaVera McClain, when she had minimal time to personally observe and evaluate her performance.

13. Judge Gordon never threatened Martin with job loss unless she made the job evaluation more favorable.

14. Judge Gordon, the Personnel Department and the Chief of Police were all concerned when Martin gave long-term employee LaVera McClain an unsatisfactory evaluation with no meaningful opportunity to even observe her work.

15. Martin applied Personnel Rules in an arbitrary manner and treated employees differently.

16. Employees, black and white, complained about Martin.

17. Judge Gordon discussed Martin's deficiencies with her and gave her an opportunity to improve.

18. Judge Gordon and Personnel Director Kai Davis met with Martin and discussed her deficiencies. Martin was given an opportunity to improve.

19. When Martin's performance did not improve, Martin was not recommended for further employment based on Rule 3-43(17)–"unsatisfactory work performance during the probationary period." Martin was provided with a due process hearing and was terminated effective October 18, 2004.

20. Martin did not complain of race discrimination by Judge Gordon. Martin did not engage in any protected activity.

21. Judge Gordon was never told by anyone nor was she ever provided notice that she showed favoritism to black employees.

22. Neither Judge Gordon nor the City of Dothan retaliated against Martin in any way.

23. Defendant Gordon was never aware of any protected activity by Martin.

24. Martin's retaliatory termination claim fails in that she failed to plead it in any of her Complaints.

25. Martin's Second Amended Complaint only reflected that she was retaliated against by <u>not</u> being able to perform her job or make job assignments after making a complaint of discrimination. Defendants deny that Martin was retaliated against.

26. Defendant Gordon did not assign magistrate offices based on race.

27. Following her termination, Martin filed an EEOC Charge alleging race discrimination. The EEOC dismissed the Charge finding no violation of Title VII and no evidence of discrimination.

28. Neither Judge Gordon nor the City discriminated against Martin because of her race.

29. Martin cannot establish a *prima facie* case of discrimination or retaliation. No similarly situated employee engaged in conduct that Martin engaged in. Moreover, Martin was terminated for legitimate, non-discriminatory and non-retaliatory reasons which were not pretextual.

30. Martin was replaced by a white employee, Michelle Sellers.

31.     Neither Judge Gordon nor the City of Dothan were negligent or negligent *per se* in counseling Martin and terminating Martin's employment. Martin was made aware of her deficiencies and given an opportunity to improve, which she failed to do.

32.     Judge Gordon and the City's hiring and selection record in the Judicial Department is non-discriminatory. Judge Gordon has hired many more white employees than black employees. Over 75% of the individuals hired or selected to jobs in the Judicial Department were white.

33.     The City has an EEO policy which prohibits employment decisions based on race or retaliation.

**5.  STIPULATIONS BY AND BETWEEN THE PARTIES:**

1.     Brackin, who is white, was initially hired as a Magistrate for the City of Dothan on May 1, 1992. In August 1995, she was transferred to the City of Dothan Police Department. In April 2001, she transferred to the Magistrate's office for the City of Dothan.

2.     In December 1999, Judge Rose Evans-Gordon was appointed as the Municipal Court Judge for the City of Dothan. Judge Gordon is black. Judge Gordon is also the Department Head of the Judicial Department.

3.     In January 2004, Martin, who is white, was hired as the Municipal Court Administrator. Martin actively began her full time employment with the City in February 2004.

4.     Kai Davis, who is white, is the Personnel Director for the City of Dothan. Davis has been the Personnel Director during the entire time at issue in this litigation.

5.     The City has issued rules and regulations entitled "City of Dothan Personnel Rules and Regulations."

6.     Employees are expected to comply with the provisions of the Rules and Regulations.

7.     Insubordination is identified as a Major Offense. (Personnel Rules, Section 3-42(14)).

8. Action(s) or lack of action(s) that could cause undue financial loss to the City or negligence in carrying out assigned tasks or duties or responsibilities of one's position is identified as a Major Offense. (Personnel Rules, Section 3-42(6)).

9. Two Major Offenses in a 24-month period warrants termination of employment.

10. In April 2004, Brackin was suspended without pay for ten (10) days.

11. In May 2005, Brackin's employment was terminated.

12. Martin's employment was terminated in October 2004.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last five (5) days, are set for March 17, 2008, at 10:00 a.m. at the United States Courthouse in Dothan, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3) The parties are to file their pre-trial briefs, if any, by March 10, 2008;

(4) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(5) All deadlines not otherwise effected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #62) entered by the court on July 9, 2007;

(6) All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

DONE this the 25th day of February, 2008.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE